**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS**

Pursuant to Rule 37(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, submits this motion for sanctions based upon plaintiff, Precision Pine & Timber, Inc.'s ("Precision Pine's"), violation of the Court's July 15, 2003 order.

**INTRODUCTION**

On July 15, 2003, the Court granted the United States' motion to compel, ordering Precision Pine to provide proper answers to the United States' first set of interrogatories concerning damages within 45 days. Disregarding the Court's order, Precision Pine has served answers that are blatantly deficient in numerous respects: (1) they contain objections that have already been heard and rejected by the Court; (2) they abuse the option of producing specific business records in lieu of a narrative response, see RCFC 33(d), by simply referring the United States generally to numerous boxes of documents; and (3) they frequently are non-responsive or incomplete. Additionally, since servings its answers, Precision Pine has impeded efforts to obtain copies of the documents it offered to "make available" in lieu of written answers. Precision Pine's conduct, taken as a whole, demonstrates a deliberate effort to frustrate the United States' efforts to obtain timely discovery. Given that the Court has already ordered

Precision Pine to produce proper and complete interrogatory answers, Precision Pine's misconduct warrants sanctions pursuant to RCFC 37(b).

**BACKGROUND**

On May 21, 2003, the Court directed that formal discovery concerning Precision Pine's alleged damages should commence. Accordingly, the United States served interrogatories, requests for production, and requests for admission upon Precision Pine. On June 25, 2003, Precision Pine filed a motion for protective order in which it argued, among other things, that the United States' discovery requests were overly broad and unduly burdensome. See Pl.'s Mot. for Protective Order Limiting or Disallowing Def.'s Interrogs. and Requests for Production of Docs. (filed June 25, 2003). On July 9, 2003, the United States responded to Precision Pine's motion and filed a cross-motion to compel answers to our discovery requests pursuant to RCFC 37(a). Def.'s Resp. to Pl.'s Mot. For Protective Order and Cross-Motion to Compel (filed July 9, 2003).

The Court held a hearing to address Precision Pine's motion and the United States' cross-motion on July 15, 2003. See Transcript of July 15, 2003 Hearing at 2-3 ("Tr. at __.") (attached as Exhibit A). During the hearing, Precision Pine proposed that it make available business records in lieu of providing written interrogatory answers. Tr. at 11. Expressing concern that Precision Pine simply intended to dump a mass of documents upon the United States, the United States objected to this proposal. See Ex. A (Tr. at 12-13). The Court likewise did not accept Precision Pine's proposal and, ruling upon the pending motions, rejected Precision Pine's argument that the United States' discovery interrogatories were unduly burdensome, allowed Precision Pine 45 days to serve interrogatory answers, and granted the United States' motion to compel. Order of Chief Judge Damich (July 15, 2003); see also Ex. A (Tr. at 13). Lastly, the

Court noted that Precision Pine had waived objections that it could have but did not raise in its motion for protective order. See Ex. A (Tr. at 14-15).

On August 25, 2003, Precision Pine served its response to the United States' interrogatories and requests for production of documents regarding damages. See Pl.'s Response to Def.'s First Set of Interrogatories and Requests for Production of Documents Regarding Damages (attached as Exhibit B). On August 26, 2003, the United States apprized Precision Pine of numerous deficiencies in its response, requested that the deficiencies be corrected immediately, and informed Precision Pine that a motion for sanctions pursuant to RCFC 37(b) would be filed if Precision Pine was unable or unwilling to correct its interrogatory answers. Letter from David A. Harrington to Richard W. Goeken at 1-2 (Aug. 26, 2003) (attached as Exhibit C). Precision Pine declined to serve supplemental answers to correct the cited deficiencies.

## ARGUMENT

### I. Standard Of Review

Pursuant to RCFC 37(b)(2), the Court may impose sanctions upon a party for failure to comply with an order, including an order related to discovery. The rule provides a range of sanctions that may be imposed for violation of a court order concerning discovery. See RCFC 37(b)(2) (authorizing default judgment, the striking of claims or defenses and evidentiary sanctions). There are two basic limitations upon the Court's discretion in imposing sanctions pursuant to Rule 37(b): first, that the sanction be "just;" and second, that "the sanction relate to the particular claims to which the discovery order was addressed." Alaska Pulp Corp. v. United States, 41 Fed. Cl. 611, 614 (1998) (citing Insurance Corp. of Ireland v. Compagnie des Bauxites

de Guineee, 456 U.S. 694, 707 (1982), Cochran Consulting, Inc. v. Uwatec USA, Inc., 102 F.3d 1224, 1231-32 (Fed. Cir. 1996), and Morris v. United States, 37 Fed. Cl. 207, 213 (1997)). As we demonstrate below, Precision Pine has violated the Court's July 15, 2003 order which denied Precision Pine's motion for protective order and granted the United States' motion to compel proper answers to our discovery requests. Moreover, we demonstrate that sanctions are appropriate, and propose sanctions that are just and that relate to the particular claims to which the discovery order was addressed. Accordingly, we respectfully request that the Court grant our motion.

## II. Precision Pine Has Violated The Court's July 15, 2003 Order

### A. Precision Pine's Objections To The United States' Interrogatories Are Without Merit

Precision Pine asserts objections to twenty of the United States' interrogatories. See Ex. B at 7-23, 25-27, 30-31, 33-36, 46-47 & 49-51 (answers to interrog. nos. 5-11, 13-17, 19, 23-24, 30, 34-35, 38 & 42). Each of these objections has either been raised by Precision Pine and rejected by the Court, see Ex. A (Tr. at 13), or waived by Precision Pine's failure to assert the objection as part of its motion for protective order, see Ex. A (Tr. at 15).

#### 1. The Court Has Ruled Upon And Rejected Precision Pine's Objections That The United States' Interrogatories Are Overly Broad and Unduly Burdensome

In its motion for a protective order, Precision Pine argued that "the majority of defendant's interrogatories and document requests are unduly burdensome." Pl.'s Mot. for Protective Order at 1. Specifically, Precision Pine asserted that interrogatories 6-11, 14-24, 26-27, 29, 35-37 and 42 were "overly broad," "duplicative" and "unduly burdensome." See Pl.'s

Mot. for Protective Order, Ex. 4. The Court, in denying Precision Pine's motion, rejected these objections. See Ex. A (Tr. at 13) ("After hearing arguments, . . . I don't think there is an undue burden on the plaintiff.").

In the answers served on August 25, 2003, Precision Pine reasserts these objections in response to interrogatories 6-11, 13-17, 19, 23-24, 30, 35, 38 and 42. See Ex. B at 7-23, 25-27, 30-31, 33-36, 46-47 & 49-51. For instance, in response to interrogatory number 6, Precision Pine states that upon reviewing various documents "it became clear that the sought after information is both overly broad and unduly burdensome." Ex. B at 8 (answer to interrog. no. 6). In addition, Precision Pine asserts that interrogatory number 6 is unduly burdensome because most "responsive information" is "already in the possession of defendant." Id. The Court has already considered and rejected Precision Pine's objection that interrogatory number 6 is unduly burdensome. See Pl.'s Mot. for Protective Order, at 8-9 & Ex. 4, at 11 (asserting that interrogatory no. 6 is "unduly burdensome" because "the number of contracts asked about is excessive and the timeframe is overly broad"); Order of Chief Judge Damich (July 15, 2003) (rejecting Precision Pine's argument). Furthermore, Precision Pine's contention that a party may not properly ask for additional information, where it already possesses some information, is misplaced. See, e.g., S.E.C. v. Cymaticolor Corp., 106 F.R.D. 545, 549 (S.D.N.Y. 1985) (finding that it is irrelevant that a party seeking discovery already knows the facts it seeks because one purpose of discovery is determining what the adverse party contends the facts are).

Likewise, in its answer to interrogatory number 7, Precision Pine asserts, without explanation, that the interrogatory is "overly broad and unduly burdensome." Ex. B at 9 (answer to interrog. no. 7). This same objection was asserted by Precision Pine in its motion for a

protective order, see Pl.'s Mot. for Protective Order, Ex. 4 at 12 (asserting that this interrogatory is "unduly burdensome" and that its request for information "over [a] ten year period" is overly broad), and denied by the Court in its July 15, 2003 ruling, see Ex. A (Tr. at 13).

In sum, each of Precision Pine's objections that the United States' interrogatories are "overly broad," "duplicative" or "unduly burdensome" have already been heard and rejected by the Court. Precision Pine's reassertion of these objections is contrary to the Court's order and indicative of bad faith by its efforts to frustrate discovery.[1]

## 2. Precision Pine Waived The Other Objections It Now Asserts

Additionally, Precision Pine attempts to interpose objections that have been waived. In ruling upon Precision Pine's motion for protective order, the Court explained that Precision Pine had waived the right to assert any objection that would have been apparent "to a person who had looked at the interrogatories with care." Ex. A (Tr. at 15). Precision Pine now objects that interrogatory number 10 is ambiguous,[2] that interrogatory number 11 is "unclear," and that the premise of interrogatory number 34 is incorrect. See Ex. B at 14-16, 34 (answers to interrog.

---

[1] On September 3, 2003, Precision Pine stated that it "will withdraw those objections (and only those objections) . . . which state that an interrogatory is 'overly broad and unduly'" burdensome. Letter to David A. Harrington from Richard W. Goeken, at 1 (Sept. 3, 2003). However, Precision Pine fails to identify which objections it is withdrawing, and in any event, provides no additional information in response to any of the United States' interrogatories.

[2] Precision Pine's contention that interrogatory number 10 is ambiguous is unintelligible. Interrogatory number 10 simply asks Precision Pine to explain any differences between its plan for harvesting timber as of August 24, 1995 (i.e., the day before the suspensions), and the plan for harvesting timber in the "operating schedules" that Precision Pine had submitted to the Forest Service pursuant to the respective contracts earlier in 1995. Of course, given that Precision Pine refused to describe its plan for harvesting timber as of August 24, 1995 in response to interrogatory no. 9, it is not surprising that Precision Pine also was unwilling to provide a responsive answer to interrogatory no. 10.

nos. 10, 11 & 34). These objections are based upon the plain language of the respective interrogatories. Consequently, they would have been apparent to a person reviewing the interrogatories with care and, because they were not raised in Precision Pine's motion for protective order, have been waived. See Ex. A (Tr. at 15).

### B. Precision Pine's Interrogatory Answers Abuse The Option Afforded By RCFC 33(d)

#### 1. The Option Of Producing Business Records In Lieu Of A Narrative Interrogatory Answer Is Strictly Limited

Interrogatories must be answered separately, fully and in writing, RCFC 33(b)(1), and the "party answering [the] interrogatories has an affirmative duty to provide any and all information available to the party." 7 Moore's Federal Practice § 33.102[1] (3d ed. 2003). However, in limited circumstances, a party may respond to an interrogatory by specifying particular business records from which the answer may be derived. See RCFC 33(d).[3]

The option afforded by RCFC 33(d) is carefully circumscribed. First, the producing party must show that the documents will in fact reveal answers to the interrogatories. S.E.C. v. Elfindepan, 206 F.R.D. 574, 577 (M.D.N.C. 2002) ("the producing party must show that the named documents contain all of the information requested by the interrogatories") (emphasis added). Second, the documents cited must be "business records" of the responding party. See 7 Moore's Federal Practice § 33.105[2] (3d ed. 2003). Third, business records may be produced in lieu of a narrative answer only if the burden of deriving the answer from such records is substantially the same for both parties. RCFC 33(d). Fourth, a party that opts to produce

---

[3] RCFC 33(d) is identical to Rule 33(d) of the Federal Rules of Civil Procedure. See RCFC 33 (Rules Committee Note).

business records must specify the records in sufficient detail that the propounding party can identify the records as readily as can the responding party. See, e.g., Colorado v. Schmidt-Tiago Constr. Co., 108 F.R.D. 731, 735 (D. Colo. 1985) (requiring the party invoking Rule 33(d) "to list the specific documents provided the other party and indicating the page or paragraphs that are responsive to the interrogatory"); S.E.C. v. Elfindepan, 206 F.R.D. at 576 ("Document dumps or vague references to documents do not suffice."); Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 489 (W.D.N.C. 1998) ("A party that responds to an interrogatory under the provisions of Rule 33(d) abuses this option when the responding party simply directs the interrogating party to a mass of business records or offers to make all of their records generally available."). See generally 7 Moore's Federal Practice § 33.105[3] (3d ed. 2003) ("The specificity requirement is intended to guard against misuse of the option to produce business records."). Lastly, Rule 33(d) may not be invoked to respond to an interrogatory that seeks information about a party's contentions. See Elfindepan, 206 F.R.D. at 577 (explaining that contention interrogatories "do not lend themselves to answer by use of Rule 33(d)," because "documents themselves rarely, if ever, reveal contentions of fact or law"). Yet, in its interrogatory answers, Precision Pine consistently ignores these limitations upon the use of RCFC 33(d).

### 2. Precision Pine Has "Dumped" Approximately 185 Boxes Of Documents Upon The United States Without Regard To The Requirements Of RCFC 33(d)

In response to nearly half of the United States' interrogatories, rather than provide narrative answers, Precision Pine offers to make documents available for review and copying pursuant to RCFC 33(d). See Ex. B at 8-14, 17-28 & 30-33 (answering interrogatories 6-9, 13-

21, 23-27, 29-30 and 32). Precision Pine invokes Rule 33(d) without regard to whether the documents being made available fully answer the interrogatory. See, e.g., Ex. B at 21 (asserting only that "responsive material" was being made available in response to interrogatory 18); Ex. B at 13 (offering to make available Forest Service TSSA forms, which contain no information on plans for scheduling, in response to interrogatory 9). Precision Pine disregards the requirement that the burden of deriving an answer be no greater for the United States than for Precision Pine. See, e.g., Ex. B at 27 (suggesting in response to interrogatory 25 that the United States review 18 boxes of unindexed documents to determine the equipment used at each sawmill, when Precision Pine could readily obtain this information from the mills' owners and employees); Ex. B at 23 (suggesting in response to interrogatory 20 that the United States review 8 boxes of unindexed documents to determine what sawmills were purchased and sold by Precision Pine, when Precision Pine could simply ask the persons who made these decisions). And in none of Precision Pine's answers does it specify the particular documents from which the answer can be derived, see, e.g., Ex. B at 8 (making available 19 boxes of undifferentiated documents in lieu of an answer to interrogatory 6); Ex. B at 30-31 (making available 165 boxes of documents in lieu of an answer to interrogatory 30).[4] Indeed, Precision Pine has dumped nearly 200 boxes of documents upon the United States and said, in effect, go find the answers yourself.

This is precisely the concern raised by counsel for the United States during the July 15, 2003 hearing. At that hearing, one of Precision Pine's attorneys, Richard W. Goeken, proposed

---

[4] Every invocation of RCFC 33(d) in Precision Pine's answers suffers from one or more of the three problems.

that Precision Pine make business records available for review instead of providing narrative answers. Ex. A (Tr. at 11). The discussion continued:

> THE COURT: Your reaction to that, Mr. Harrington?
>
> MR. HARRINGTON: Your Honor, I don't want to [get] in a situation where they simply say here are Precision Pine's files, knock yourself out figuring out what's in them. . . . I guess Rule 33(d) provides that you can produce documents in certain instances. And if Precision Pine can meet the requirements of that rule, it can respond in that manner. But you can't, even under Rule 33(d), simply dump a mass of documents on a person and say: Figure out what the answer to your interrogatory is.
>
> THE COURT: Okay.
>
> MR. HARRINGTON: So I would be concerned that we could be getting ourselves into that sort of a situation.

Ex. A (Tr. at 12-13). At the conclusion of this discussion, the Court declined to accept Mr. Goeken's proposal, instead ordering Precision Pine to answer the United States' interrogatories within 45 days. See Order of Chief Judge Damich (July 15, 2003); Ex. A (Tr. at 13).

Thus, Precision Pine has disregarded the Court's rejection of its proposal and clear caselaw. E.g., In re Tutu Wells Contamination Litig., 162 F.R.D. 46, 68 (D.V.I.) (ruling that a party does not satisfy Rule 33(d) "by dumping several volumes of unspecified raw data on opposing counsel); Govas v. Chalmers, 965 F.2d 298, 301-02 (7th Cir. 1992) (affirming sanctions against a plaintiff that produced approximately 9,000 pages of unlabeled and unorganized documents); Oleson v. Kmart Corp., 175 F.R.D. 650, 654 (D. Kan. 1997) (holding that defendant's reference to a 307 page personnel file was insufficient to comply with Rule 33(d), because the responding party may not simply refer to a mass of records, but must specifically identify, in the interrogatory answer, which documents contain the requested

information). In these circumstances, Precision Pine's decision to dump a mass of documents – approximately 185 boxes of documents – upon the United States is further evidence of a calculated effort to prevent the United States from obtaining needed factual discovery.

Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a complete narrative answer to interrogatories 6-9, 13-21, 23-27, 29-30 and 32, allow the United States adequate time to analyze Precision Pine's supplemental answers prior to serving expert reports, and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of preparing this motion.

### 3. Precision Pine Has Deliberately Impeded The United States' Concerted Effort To Review And Copy The Documents That Precision Pine Offered To "Make Available"

Precision Pine's abuse of RCFC 33(d) is exacerbated by its lack of cooperation in making documents available for review and copying. Indeed, over the last two and one-half weeks, Precision Pine has thrown up roadblock after roadblock to prevent the efficient review and copying of documents by the United States.

On Friday, August 22, 2003, Mr. Goeken informed undersigned counsel that Precision Pine would be serving responses to the United States' discovery requests on Monday, August 25, 2003.[5] Mr. Goeken further stated that Precision Pine would be making available for review and copying about 8 boxes of documents in Washington, D.C., and about 180 boxes of documents in Heber, Arizona. Upon learning this, undersigned counsel explained to Mr. Goeken that, as time

[5] Previously, Mr. Goeken had indicated that responses to the United States' discovery would be served no later than August 22, 2003.

was of the essence, the United States would seek to review the documents maintained in Washington, D.C., as soon as possible, and intended to review documents in Heber, Arizona, at the beginning of the following week, i.e., beginning on Tuesday, September 2, 2003.

On Tuesday, August 26, 2003, counsel for the United States sent what was believed to be a routine letter confirming that the review of the documents being made available in Washington, D.C., would commence at 9:00 a.m. on August 27, 2003. Despite being told the week before that the United States intended to review documents in Washington, D.C., as soon as possible, Precision Pine refused to allow the review of documents on August 27, 2003.

Ultimately, Precision Pine allowed the United States to begin reviewing documents on Thursday, August 28, 2003. The review was completed and all documents marked for copying that day. On Friday, August 29, 2003, the United States requested that Precision Pine commence copying the documents. Despite the relatively small volume of documents, and despite the fact that Precision Pine knew the importance of a quick turnaround, a full week passed before Precision Pine delivered any documents. Moreover, as Precision Pine was aware, delaying the delivering of the documents until midday Friday, September 5, 2003, virtually assured that no use could be made of the documents for an additional week, because counsel for the United States was scheduled to be in Albuquerque, New Mexico, to defend depositions in this case during the week of September 8, 2003.[6]

---

[6] On Monday, September 8, 2003, while counsel was in transit to Albuquerque, Mr. Goeken left a voicemail message stating that Precision Pine had failed to make available all documents during the August 28, 2003 document review. The United States has requested that Precision Pine promptly provide a copy of all documents that were not made available. However, as counsel is out of town, review of the withheld documents will not likely be possible before Monday, September 15, 2003, assuming they are, in fact, provided to us.

The problems manufactured by Precision Pine to prevent the efficient reviewing and copying documents in Heber, Arizona, were even more disruptive. Upon arrival, on September 3, 2003, the United States' four reviewers learned that Precision Pine had placed 30 boxes of documents in one room, had placed 147 boxes of documents in a different room, and would not permit the reviewers to look at both sets of documents at the same time. The purported reason for this restriction was the fact that the one individual on site, an attorney from Saltman & Stevens, could not directly observe the document review in both rooms at the same time. After discussions, and after more than half a day had passed, Precision Pine relented. When review of the 147 boxes finally commenced, it was determined that the "index" to these boxes that Precision Pine had provided with its interrogatory answers was useless.[7]

The next problem, which arose almost immediately, involved copying. The United States anticipated a rolling process where copies of documents marked for copying were made while the review of other documents continued. Consequently, the United States had arranged for three high-speed copiers to be available in the Forest Service's office in Heber. Precision Pine would not allow these copiers to be used, asserting once again that this would require documents to be taken out of the sight of the one Saltman & Stevens' attorney. To address this concern, the United States arranged for a copier to be transported to the site of the review. Despite the fact

---

[7] None of the boxes made available by Precision Pine was numbered. Consequently, it was not possible to determine which box actually corresponded to a box listed on the index. Additionally, the boxes were mislabeled (with relevant documents being found in the bottom of boxes that supposedly contained trivial material) and significant, inexplicable gaps were found in the documents produced. For instance, only corporate minutes through 1993 were made available.

that this resolved Precision Pine's purported concern, Precision Pine still refused to allow any copies to be made.

The next day a Saltman & Stevens' paralegal arrived and began making copies at the Forest Service office in Heber. However, despite the fact that three copiers were available, and despite the fact Forest Service personnel were available to assist with copying in the presence of the paralegal, Precision Pine took the position that only its paralegal could copy any documents.

On Friday, the last day scheduled for review of documents, Precision Pine proposed a "compromise." The proposal involved shipping documents to a third party copier (where they would be copied outside the presence of the Saltman & Stevens' attorney and paralegal) and allowing the United States to "sign out" for two weeks any of the 147 boxes of so-called trivial documents we wished to copy (notwithstanding that Precision Pine originally refused to allow the United States to look at these documents without an attorney being present in the room). This "compromise" was not implemented by Precision Pine until late Friday, September 5, 2003.

### C. Precision Pine's Answers To Numerous Other Interrogatories Are Incomplete Or Non-Responsive

#### 1. Precision Pine's Non-Responsive Answer To Interrogatory No. 27 Is A Deliberate Attempt To Withhold Essential Information That Warrants Strong Sanctions Pursuant To RCFC 37(b)

Interrogatory number 27 states: "For each product for which Precision Pine seeks the recovery of lost profits (i.e., "lost market opportunity" damages), identify the price at which Precision Pine contends that it could have sold the product in each month between August 1993 and December 1998." Ex. B at 28. In response, Precision Pine provides no information whatsoever about the prices at which it claims products could be sold. Instead, Precision Pine

simply states that it will provide "lumber price invoices." Ex. B at 28 (answer to interrogatory no. 27). This answer is not responsive.

Precision Pine's non-answer to this interrogatory is particularly egregious. First, because the interrogatory asks about Precision Pine's contentions, the information is uniquely within Precision Pine's control. Plainly, no analysis of invoices or other documents can suffice, because only Precision Pine can state what it contends in this litigation. See, e.g., Elfindepan, 206 F.R.D. at 577 (offering to produce documents in response to a contention interrogatory is not proper because "documents themselves rarely, if ever, reveal contentions of fact or law"). Second, information about the price at which Precision Pine claims its products could be sold is central to Precision Pine's lost profits claim. Without monthly information about sales prices, the United States is, for example, unable to analyze the effect of changes to the harvesting schedule on Precision Pine's lost profits claim. In short, the information sought by this interrogatory is essential to the United States' defense of this action. Lastly, it appears that Precision Pine has compiled for its own use information about changes in sales prices; it simply refuses to provide this information to the United States in discovery. This is demonstrated by Precision Pine's answer to a different interrogatory – interrogatory number 34 – in which Precision Pine states: "the lumber market for most of the products manufactured by Precision Pine declined dramatically in early and mid-1997, and remained relatively flat (and well below their levels during the suspensions) through 1998." Ex. B at 35. Precision Pine's deliberate withholding of information that it has already compiled, coupled with its flagrant disregard of the Court's July

15, 2003 order compelling proper interrogatory answers, warrants sanctions pursuant to RCFC 37(b)(2).[8]

As discussed above, RCFC 37(b)(2) provides a range of sanctions that may be imposed for violation of a court order concerning discovery, including default judgment, the striking of claims or defenses and evidentiary sanctions. The sanction must be "just" and "relate to the particular claims to which the discovery order was addressed." Alaska Pulp Corp. v. United States, 41 Fed. Cl. at 614 (citations omitted).

Precision Pine's failure to provide information uniquely in its possession was deliberate, was in flagrant disregard of the Court order granting the United States' motion to compel, and involves information central to Precision Pine's lost profits claim. Put differently, Precision Pine has acted in bad faith to frustrate the United States' efforts to obtain basic information needed to defend the lost profits claim in this action. A strong sanction is, therefore, appropriate, with regard to interrogatory 27, in particular. See Alaska Pulp Corp., 41 Fed. Cl. at 615 (explaining that the outright dismissal of an action may be warranted where a party's failure to comply with a discovery order "is attributable to willfulness, bad faith, or fault"); In re Fine Paper Antitrust Litig., 685 F.2d 810, 823 (3d Cir. 1982), cert. denied, 459 U.S. 1156 (1983) (ruling that the district court could exclude evidence relating to information sought by interrogatories, where the plaintiff ignored a motion to compel and failed to specify exact records from which the answer could be derived).

---

[8] On August 26, 2003, the United States specifically apprized Precision Pine that the answer to interrogatory number 27 was deficient and not responsive. See Ex. C. Precision Pine nonetheless refused to correct its answer.

Accordingly, the United States respectfully requests that the Court preclude Precision Pine from introducing evidence about the price at which it contends it could have sold products between August 1993 and December 1998, i.e., the evidence that Precision Pine has wrongfully withheld from the United States.[9] Additionally, the United States respectfully requests that the Court direct Precision Pine to pay additional costs incurred as a result of its failure to comply with its discovery obligations, including, but not limited to, the cost of preparing this motion.

**2. Precision Pine's Answer To Interrogatory No. 9 Is Evasive And Incomplete**

Interrogatory 9 asks Precision Pine to "describe in detail [its] plan for operating each mill at issue."[10] Ex. B at 11. In the definition section of the United States' interrogatories, the phrase "mills at issue" was defined as the "Precision Pine's Eagar, Heber and Winslow sawmills, Precision Pine's pellet mill, and any other facility with respect to which Precision Pine seeks to recover damages in this action."

In response, Precision Pine states that "[t]here is no operating plan for the mills, *per se*." Ex. B at 12. Precision Pine is playing a game of semantics. As part the material produced by Precision Pine on February 26, 2003, Precision Pine provided the United States – perhaps inadvertently – a single monthly "goal report" for its mills. See Ex. D. This report, which

[9] In interrogatory 28, the United States asks Precision Pine to describe the methodology and any sources of information or market data used to determine the prices provided in response to interrogatory number 27. In the event that the Court does not impose an evidentiary sanction upon Precision Pine for its misconduct, the Court should order Precision Pine to provide a complete, responsive answer to both interrogatories 27 and 28.

[10] Interrogatory 9 also seeks information with respect to Precision Pine's plan for harvesting the contracts at issue as of August 24, 1995. As explained above, Precision Pine's response to this part of interrogatory 9 improperly invokes RCFC 33(d).

describes operating goals for Precision Pine's mills, demonstrates both that Precision Pine had a plan for operating its mills and has failed to fully and complete answer interrogatory 9.

Precision Pine, by failing to provide a responsive answer concerning plans for operating its mills, has violated the Court's July 15, 2003 order. Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a complete and responsive answer to interrogatory number 9, allow the United States adequate time to analyze Precision Pine's answer prior to serving expert reports, and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of this motion.

**3. Precision Pine's Answer To Interrogatory No. 12 Is Non-Responsive**

In interrogatory 12, Precision Pine was asked to "describe in detail each change to its plan for harvesting timber and other material" as of August 24, 1995, that Precision Pine contends was "caused by suspension of the O.D. Ridge, Kettle, Hay, Brookbank, Jersey Horse, Salt, Manaco, Mud, Saginaw-Kennedy, Brann, U-Bar or Monument contracts." Ex. B. at 16.[11] In its response, Precision Pine states generically that its plans for harvesting timber changed, but identifies no actual changes to its plans that resulted from suspension of one or more of the listed contracts. Ex. B at 16. Precision Pine also incorporates by reference its answers to interrogatories 9 and 31, but these answers contains no information about changes to Precision Pine's "plan for harvesting." See Ex. B at 12-13 (answer to interrogatory no. 9); Ex. B at 31-32 (answer to interrogatory no. 31). Precision Pine's answer is, therefore, not responsive.

[11] "Describe in detail" is defined in the United States' interrogatories as seeking "disclosure of each and every fact, circumstance, condition and thing you know about the subject of" the interrogatory.

Precision Pine's non-responsive answer regarding changes to its harvesting plans is a violation of the Court's July 15, 2003 order. Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a complete and responsive answer to interrogatory number 12, allow the United States adequate time to analyze Precision Pine's answer prior to serving expert reports, and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of this motion.

**4. Precision Pine's Answer To Interrogatory No. 22 Is Incomplete**

In interrogatory 22, Precision Pine was asked to "describe in detail" the reasons for the opening and closing of each sawmill that Precision Pine opened or closed between June 1991 and July 2000. In response, Precision Pine states only that each opening or closure of a mill was done by Precision Pine's Vice President, Lewis Tenney, and Precision Pine's President, Lorin Porter, in order "to enhance Precision Pine's profitability." Precision Pine's answer does not discuss – much less discuss in detail – any particular mill openings or mill closures and, notably, does not assert that any mill was closed as a result the suspension of the contracts at issue.

By failing to identify and discuss the circumstances of each particular mill opening and closing, Precision Pine has not adequately answered this interrogatory. Moreover, given that Precision Pine has indicated that it intends to argue that certain sawmills were closed as a result of contract suspensions, Precision Pine's answer is woefully incomplete.

Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a complete, responsive answer to interrogatory number 22, allow the United States adequate time to analyze Precision Pine's supplemental answer prior to serving expert reports,

and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of this motion.

### 5. Precision Pine's Answer To Interrogatory No. 34 Is Incomplete

In interrogatory 34, Precision Pine was asked to explain, with respect to each of the contracts at issue, why it failed to harvest timber after the suspensions were lifted that it supposedly planned to harvest during the period of suspension.[12] Ex. B at 33. In response, Precision Pine states that it did harvest some timber, that some contracts were suspended again in May 1997 and that the lumber market declined in 1997 and 1998 changing the "economic situation." See Ex. B. at 34-35. While Precision Pine provides some limited information, its answer is nevertheless incomplete and inadequate.

First, Precision Pine fails to answer the interrogatory "with respect to each of the contracts at issue." Indeed, Precision Pine's answer never once mentions the Kettle, Brookbank, Jersey Horse, Manaco, St. Joe, Hutch-Boondock, Mud or Monument contracts. Second, Precision Pine fails to explain its failure to harvest contracts between December 4, 1996 and May 1997. Third, Precision Pine fails to explain why any changed "economic situation" prevented harvesting upon the contracts. If Precision Pine is contending that as of 1997, some or all of its contracts were unprofitable, it should say so. Fourth, Precision Pine fails to explain its failure to harvest timber after 1998. See Ex. B at 35 (stating that the market declined "through 1998").

Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a complete, responsive answer to interrogatory number 34, allow the United States

[12] In response to the United States' requests for admissions, Precision Pine admitted that it harvested no timber on the Salt, Saginaw-Kennedy and Monument contracts before, during or after the suspension at issue.

adequate time to analyze Precision Pine's supplemental answer prior to serving expert reports, and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of this motion.

### 6. Precision Pine's Answer To Interrogatory No. 35 Is Incomplete

In interrogatory 35, Precision Pine was asked to "specify the amount of damages attributable to each contract that was found to have been breached in the Court's July 30, 2001 opinion." Ex. B at 36. This interrogatory is simple and straightforward. It asks for nothing more than the total that Precision Pine contends it is entitled to recover for breach of the respective contracts.

Precision Pine's answer, which refers to an attached exhibit addressing certain categories of damages and to unidentified documents in which "virtually" all of "the items of damages had been computed on a contract bases," does not adequately respond to this interrogatory. See 7 Moore's Federal Practice § 33.103 (3d ed. 2003) ("Answers to interrogatories must be responsive to the question, complete in themselves, and should not refer to pleadings, depositions, other documents, or other interrogatories," especially the reference to other documents "makes it difficult to ascertain if the original interrogatory has been answer completely without a detailed comparison.") (citing cases). Indeed, Precision Pine's assertion that "virtually" all items of damages have been computed on a contract-by-contract basis implicitly concedes that the answer is incomplete.[13]

---

[13] Among other things, Precision Pine provides no contract-by-contract breakdown of the alleged increases in logging and hauling costs that it seeks to recover. Consequently, the United States cannot add all "items of damage together as readily as can Precision Pine." See Ex. B at 36.

Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a specific answer to interrogatory number 35 stating for each contract the amount that Precision Pine seeks to recover in this action, allow the United States adequate time to analyze Precision Pine's supplemental answer prior to serving expert reports, and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of this motion.

**7. Precision Pine's Answer To Interrogatory No. 36 Is Incomplete**

In interrogatory 36, Precision Pine was asked, with respect to each subcategory in its February 26, 2003 damages calculations, to identify the contractual breach that Precision Pine contends led to the damages and to explain how each contractual breach caused the damages sought. Ex. B at 36. One subcategory of damages in Precision Pine's February 26, 2003 damages calculations is for "increased logging and hauling costs." See Ex. B at 37-44. Precision Pine's answer to interrogatory number 36 fails to address its demand to recover additional logging and hauling costs. Precision Pine's answer is, therefore, incomplete.

Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a complete, responsive answer to interrogatory number 36, allow the United States adequate time to analyze Precision Pine's supplemental answer prior to serving expert reports, and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of this motion.

**8. Precision Pine's Answer To Interrogatory No. 37 Is Non-Responsive**

In interrogatory 37, Precision Pine was asked to identify each contractual breach that resulted in the increased hauling and logging costs set forth at page C-0041 of its damages

calculations and, for each alleged breach, to explain in detail how damages resulted. Page C-0041 asserts that Precision Pine incurred increased logging and hauling costs in connection with 5 contracts: Hay, O.D. Ridge, Brewer, Delgado and Highway Salvage. Precision Pine did not allege, and the Court did not find, a breach of the Brewer, Delgado or Highway Salvage contracts. In addition, page C-0041 asserts that Precision Pine incurred increased logging and hauling costs on the Hay and O.D. Ridge contracts while those contracts were suspended.

Precision Pine's answer neglects to explain how it can recover damages upon contracts that were not breached, does not address how increased costs could be incurred upon suspended contracts, and fails to identify any contractual breach that caused any increase in hauling or logging costs. Accordingly, Precision Pine's answer is non-responsive.

Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a complete, responsive answer to interrogatory number 37, allow the United States adequate time to analyze Precision Pine's supplemental answer prior to serving expert reports, and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of this motion.

**9. <u>Precision Pine's Answer To Interrogatory No. 41 Is Incomplete</u>**

In interrogatory 41, the United States asks Precision Pine to state all facts upon which it bases its assertions about the products it would have been able to produce from the timber it anticipated harvesting on the contracts at issue. In the definition section of the United States interrogatories, the phrase "state all facts" was defined as the "disclosure of each and every fact, circumstance, condition, and thing you know about the subject of the interrogatory . . . including,

but not limited to, identification of each person having knowledge of, and each document containing information, relating to such fact, circumstance, condition, or thing."

In response to interrogatory number 41, Precision Pine states that the products it anticipated producing during the suspension are based upon those products that Precision Pine produced historically, as reflected in invoices produced in a binder on February 26, 2003. Upon information and belief, Precision Pine has not disclosed in its answer to interrogatory 41 all facts that it intends to introduce into evidence regarding the products it expected to produce from the timber it anticipated harvesting during the suspension of the contracts at issue, has not disclosed all documents upon which it intends to rely, and has not disclosed all persons possessing knowledge. Precision Pine's answer to interrogatory number 41 is, therefore, incomplete.

Accordingly, the United States respectfully requests that the Court direct Precision Pine to provide a complete and responsive answer to interrogatory number 41, allow the United States adequate time to analyze Precision Pine's supplemental answer prior to serving expert reports, and direct Precision Pine to pay the costs incurred as a result of its failure to provide a proper interrogatory answer, including, but not limited to, the cost of this motion.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court: (i) grant this motion for sanctions; (ii) bar Precision Pine from presenting evidence about the price at which it contends it could have sold products between August 1993 and December 1998 or, in the alternative, direct that Precision Pine provide responsive and complete narrative answers to interrogatories 27 and 28; (iii) direct that Precision Pine provide complete narrative answers to interrogatories 6-11, 13-21, 23-26, 29-30 and 32; (iv) direct that Precision Pine provide

responsive and complete answers to interrogatories 9, 12, 22, 34-37 and 41; (v) permit the United States to submit expert reports 21 days after receipt of Precision Pine's supplemental interrogatory answers; (vi) order Precision Pine to pay all costs incurred as a result of its failure to provide proper interrogatory answers, including, but not limited to, the cost of this motion; (vii) allow the United States 30 days from the date of the Court's order to submit documentation of the costs incurred as a result of Precision Pine's failure to provide proper interrogatory answers; and (viii) order such other relief as the Court deems appropriate.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

Patricia L. Disert
Lori Polin Jones
Office of the General Counsel
U.S. Department of Agriculture

September 11 , 2003

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 11th day of September 2003, I caused to served by hand delivery a copy of Defendant's Motion for Discovery Sanctions, addressed as follows:

Alan I. Saltman
Saltman & Stevens
1801 K Street, N.W., Suite 110
Washington, D.C. 20006

______________________________________