# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 98-720C (Chief Judge Damich) |

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS REGARDING DAMAGES

Introduction

In answering defendant's discovery requests regarding damages, which are extremely broad both as to time frame and information sought, it became apparent to plaintiff that virtually all records of Precision Pine between June 24, 1991 and August 1, 2000 might be deemed to be responsive. For example, defendant's definition of "document" can be read to include essentially all information produced or received by Precision Pine over this nearly 10-year period. Additionally, given the broad and overlapping nature of defendant's requests for production of documents, defendant would seemingly have Precision Pine copy, organize and produce virtually all of the corporate files of Precision Pine several times over.

Assuming that defendant does not truly want or need to inspect every piece of paper in Precision Pine's files (and knowing that no such discovery request would, in any event, be appropriate under the rules of the Court of Federal Claims), Precision Pine has utilized its best efforts to review, segregate and produce those responsive, non-privileged materials which most

readily provide the information sought by defendant's discovery requests.[1] In this request, Precision Pine is prepared to produce 30 boxes of responsive documents at the former corporate headquarters of Precision Pine in Heber, AZ. The 30 boxes are comprised of:

10 - Boxes of Financial Records;

7 - Boxes of Logging and Hauling Records;

11 - Boxes of Timber Sale Contracts and related documents; and

2 - Boxes of Timber Sale Statements of Account.

Precision Pine is also producing additional responsive materials, including materials which support the damages Precision Pine seeks to recover which, it should be recalled, should properly be the focus of the current discovery. These materials are contained approximately eight boxes at the Washington, D.C. law offices of Saltman & Stevens, P.C. As set forth in greater detail below, these materials are also currently available for inspection by defendant.

Nevertheless, to the extent that defendant actually wishes to inspect such documents as individual check stubs, employee time records, and diesel fuel purchases (which are captured in monthly or semi-monthly aggregate reports being produced in the boxes identified above), such supporting documents are available for inspection in an additional 147 boxes of material identified in the Index of Supporting Materials, attached hereto as Exhibit 1. These boxes are

[1]In this regard, two lawyers for Precision Pine spent seven days from August 2 to August 8, 2003 at the former corporate headquarters of Precision Pine in Heber, AZ reviewing hundreds of boxes of documents and seeking answers to defendant's interrogatories. Comparable time and effort has been spent in reviewing and preparing for production of those records of Precision Pine that are already in the custody of Saltman & Stevens, P.C.

also maintained at the former corporate headquarters of Precision Pine in Heber, AZ. and will be made available for inspection to defendant at a mutually agreeable time.[2]

**INTERROGATORY NO. 1.**

Identify all witnesses, including experts, that Precision Pine anticipates will offer testimony at trial in this matter.

**ANSWER:**

1. Lorin Porter

| | |
|---|---|
| Present Address: | 3340 Buckskin Canyon Rd., Heber, AZ 85928 |
| Home Phone: | 928-535-4811 |
| Current Employer: | Precision Pine & Timber, Inc. |
| Address: | P.O. Box 70, Heber, AZ 85928 |
| Phone: | 928-535-9112 |
| Job Title: | President |
| Employer at time of event: | Same as current. |

2. Stephen Reidhead

| | |
|---|---|
| Present Address: | 140 S. Otto Drive, Snowflake, AZ 85937 |
| Home Phone: | 928-536-2479 |
| Current Employer: | Tri-Star Logging, Inc. |
| Address: | 140 S. Otto Drive, Snowflake, AZ 85937 |
| Phone: | 928-536-7848 |
| Job Title: | President |
| Employer at time of event: | Tri-Star Logging, Inc. as subcontractor to Precision Pine. |

[2] It should be noted, however, that Precision Pine does not currently rely on any documents in these boxes in support of its claim for damages in this matter.

3. Mel Bowers

| | |
|---|---|
| Present Address: | P.O; Box 223, Heber, AZ 85928 |
| Home Phone: | Unlisted |
| Current Employer: | Precision Pine & Timber, Inc. |
| Address: | P.O. Box 70, Heber, AZ 85928 |
| Phone: | 928-535-9112 |
| Jōb Title: | Bookkeeper |
| Employer at time of event: | Same as above. |

4. Lewis Tenney

| | |
|---|---|
| Present Address: | P.O. 219 Heber, AZ 85928 |
| Home Phone: | 928-535-3212 |
| Current Employer: | Precision Lumber & Hardware, Inc. |
| Address: | P.O. Box 953, Showlow, AZ 85902 |
| Phone: | 928-537-0526 |
| Job Title: | President |
| Employer at time of event: | Precision Pine & Timber, Inc. |
| Address: | P.O. Box 70, Heber, AZ 85928 |
| Phone: | 928-535-9112 |
| Job Title: | Vice-President |

5. Nancy Kehret

| | |
|---|---|
| Present Address: | Pinetop, AZ 85935 |
| Home Phone: | 928-367-0359 |
| Current Employer: | Precision Lumber & Hardware, Inc. |
| Address: | P.O. Box 953, Showlow, AZ 85902 |
| Phone: | 928-537-0526 |
| Job Title: | Accountant |
| Employer at time of event: | Precision Pine & Timber, Inc. |
| Address: | P.O. Box 70, Heber, AZ 85928 |
| Phone: | 928-535-9112 |
| Job Title: | Accountant |

6. Ronda Ryan

| | |
|---|---|
| Present Address: | 5990 Queenston St., Springfield, VA 22152 |
| Home Phone: | 703-912-9389 |

| | |
|---|---|
| Current Employer: | Saltman & Stevens, P.C. |
| Address: | 1801 K Street, N.W., Suite M-110, Washington, D.C. 20006 |
| Phone: | 202-452-2140 |
| Job Title: | Office Manager |

7. Forest Service Contracting Officers – Precision Pine intends to depose some or all of the Contracting Officers for the timber sales that are the subject of this litigation and reserves the right to call the CO's at trial.

Precision Pine has not yet retained a testifying expert witness.

**INTERROGATORY NO. 2.**

With respect to each witness identified in response to interrogatory no. I, describe in detail his or her proposed testimony.

**ANSWER:**

Although Precision Pine has made no final decision as to whom it will call as testifying witness, or the exact testimony each witness will offer, the following individuals have some knowledge about matters relevant to Precision Pine's damage claim and Precision Pine currently anticipates that some or all of these individuals may be called to testify at trial:

1. Lorin Porter: Timber acquisition, anticipated performance, mill operations, mitigation, product sales, general corporate operations, claim history, various items of damage, claim preparation time, increased cost of unemployment insurance, company history, mill acquisitions

2. Stephen Reidhead: Pulpwood logging and hauling, timber logging and hauling.

3. Mel Bowers: Increased cost of unemployment insurance, out-of-pocket costs to financial institutions, preparation and storage of corporate records in the usual course of business.

4. Lewis Tenney: Logging and hauling operations, mill acquisitions, timber acquisitions, general corporate operations, claim history, company history .

5. Nancy Kehret: Preparation and storage of corporate records in the usual course of business.

6. Ronda Ryan: Precision Pine's legal fees in this matter.

7. Forest Service Contracting Officers: Precision Pine intends to depose some or all of the Contracting Officers for factual information about the timber sale contracts that are the subject of this litigation. Precision Pine reserves the right to call the CO's at trial.

**INTERROGATORY NO. 3.**

For each request for admission in defendant's first set of requests for admissions on damages that you deny, deny in part, or decline to admit without qualification, describe in detail the basis for your answer.

**ANSWER:**

The basis for each such denial and qualification is set forth in Precision Pine's responses to the defendant's requests for admissions.

**INTERROGATORY NO. 4.**

Identify each person with knowledge or information about, or that Precision Pine consulted in preparing its answers to, these discovery requests or defendant's first set of requests for admission on damages.

**ANSWER:**

Lorin Porter, Lewis Tenney, Mel Bowers, Stephen Reidhead. Detailed information about the identity of each is set forth in response to interrogatory no. 1.

**INTERROGATORY NO. 5.**

For each person identified in response to interrogatory no. 4, describe in detail the nature of the person's knowledge with respect to the interrogatory, request for production or request for admission.

**ANSWER:**

Objection. The "detailed nature" of the responses provided by these persons in the preparation of defendant's discovery requests is subject to the attorney-client and attorney-work product privileges. Without waiving these objections, Precision Pine states that the individuals identified in response to Interrogatory No. 4 have knowledge within their anticipated areas of testimony as identified in response to Interrogatory No. 2 and were consulted with respect to information within their specific areas of knowledge.

**INTERROGATORY NO. 6.**

Describe in detail each contract, agreement or other arrangement by which Precision Pine purchased or was entitled to procure timber, from whatever source, public or private, between June 24, 1991 and August 1, 2000, including but not limited to: the date that the contract, agreement or other arrangement was entered into or acquired by Precision Pine; the date that the contract, agreement or other arrangement terminated or was transferred, assigned or sold by Precision Pine; any name commonly used to identify the contract, agreement or arrangement (*e.g.*, O.D. Ridge); the identity of the seller of the timber; the location of the timber; the total volume of timber available for purchase; the species of timber available for purchase (*e.g.*,

Ponderosa Pine); the volume of each species and size class of timber available for purchase; and the price to be paid for each species and size class of timber available for purchase.

**ANSWER:**

Objection. Upon review of the materials related to the numerous contracts by which Precision Pine secured timber for its operations from June 24, 1991 to August 1, 2000, it became clear that the sought after information is both overly broad and unduly burdensome. Moreover, the great majority of the responsive information relates to Forest Service timber sale contracts and is, therefore, ascertainable from documents which are already in the possession of defendant. Without waiving these objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its timber sale contract files, which Precision Pine will make available for inspection. Such files which relate to the contracts that are the subject of this litigation are currently available for inspection and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens, P.C. The remaining contract files are contained in 11 numbered boxes labeled: "Timber Sale Contracts." These contract files are currently available for inspection and will be produced at a mutually agreed upon time at the former corporate headquarters of Precision Pine in Heber, AZ.

**INTERROGATORY NO. 7.**

If any contract, agreement or other arrangement identified in response to interrogatory no. 6 was sold, assigned or otherwise transferred by Precision Pine, describe the transaction in detail, including, but not limited to, the transaction's date, the identity of the purchaser, assignee or transferee, the sale price, the amount of timber or other material that remained to be harvested

at the time of the transaction, and the identity of all persons who negotiated, approved or were otherwise involved with the transaction on behalf of Precision Pine or otherwise.

**ANSWER:**

Objection. Upon review of the materials related to the numerous contracts by which Precision Pine secured timber from June 24, 1991 to August 1, 2000, it became clear that the sought after information is both overly broad and unduly burdensome. Moreover, the great majority of the responsive information relates to Forest Service timber sale contracts and is therefore ascertainable from documents which are already in the possession of defendant, indeed, all sales, transfers and assignments of Forest Service timber sales are subject to the written approval of the Forest Service. Without waiving these objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its timber sale contract files, which Precision Pine will make available for inspection. Such files which relate to the contracts that are the subject of this litigation are currently available for inspection and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens. The remaining contract files are contained in 11 numbered boxes labeled: "Timber Sale Contracts". These contract files are currently available for inspection and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

Individuals with authority to negotiate a transfer of contract obligations on behalf of Precision Pine during the specified time period were its President, Lorin Porter and until March, 2000 its Vice President, Lewis Tenney.

**INTERROGATORY NO. 8.**

With respect to each contract, agreement or other arrangement identified in response to interrogatory no. 6, describe in detail the actual harvest of timber or other material obtained by Precision Pine, including, for each month in which any timber or other material was harvested, the total volume of timber or other material harvested, the species and size class of timber or other material harvested, the volume of each species and size class of timber or other material harvested, and the mill or other facility to which the harvested timber or other material was shipped for processing.

**ANSWER:**

Objection. Upon review of the materials related to the numerous contracts by which Precision Pine secured timber from June 24, 1991 to August 1, 2000, it became clear that the sought after information is both overly broad and unduly burdensome. Moreover, the great majority of the responsive information relates to Forest Service timber sale contracts and is therefore ascertainable from documents which are already in the possession of defendant. Without waiving these objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its timber sale contract files, which Precision Pine will make available for inspection. Such files which relate to the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens. The remaining contract files are contained in 11 numbered boxes labeled: "Timber Sale Contracts". These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

Information responsive to this interrogatory with respect to Forest Service timber sale contracts is also contained in the Timber Sale Statement of Account ("TSSA") for each Forest Service sale and therefore is already in the possession of defendant. Precision Pine has also retained many such TSSAs for many of its Forest Service timber sale contacts. TSSAs for the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

Harvest records, including Forest Service TSSAs for the remaining contract files are contained in the individual contract files contained 11 numbered boxes labeled: "Timber Sale Contracts." Additionally, TSSAs for completed Forest Service contacts are contained in two boxes labeled "Timber Sale Contracts, TSSAs." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

Responsive information identifying the logging entity and the work performed on behalf of Precision Pine is also contained in 7 numbered boxes labeled "Logging and Hauling Records." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

**INTERROGATORY NO. 9.**

With respect to each contract, agreement or arrangement identified in response to interrogatory no. 6, describe in detail Precision Pine's plan for operating each mill at issue and harvesting remaining timber and other material as of August 24, 1995, including, but not limited

to, the months in which Precision Pine anticipated to harvest and, for each month in which harvesting was anticipated, the species and size class of timber or other material that Precision Pine expected to harvest, the volume of each species and size class of timber or other material that Precision Pine expected to harvest, and the mill at which Precision Pine expected to process the timber or other material that it harvested.

**ANSWER:**

There is no "operating plan" for the mills, *per se*.

With respect to those contracts at issue in this litigation, Precision Pine has already provided defendant with information as to the quarter(s) in which timber from each sale would be used (see Damage Binder at C-0072-C0089), and identified the mills to which timber from each of the sales would have been milled into lumber. See Damage Binder at C0071. Precision Pine objects to providing information regarding the "species and size class of timber" available on these Forest Service Timber Sales as this information is already in the possession of the defendant. Without waiving this objection, however, information responsive to this interrogatory is contained in its timber sale contract files, which Precision Pine will make available for inspection. Such files which relate to the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

Information responsive to this interrogatory with respect to Forest Service timber sale contracts is also contained in the TSSA for each Forest Service sale and therefore is already in the possession of defendant. Precision Pine has retained many such TSSAs for many of its Forest Service timber sale contacts. TSSAs for the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

Harvest records, including Forest Service TSSAs for the remaining contract files are contained in the individual contract files contained 11 numbered boxes labeled: "Timber Sale Contracts." Additionally, TSSAs for completed Forest Service contacts are contained in two boxes labeled "Timber Sale Contracts, TSSAs." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

Additionally, as of August 24, 1995, Precision Pine's sources of timber that remained available for harvest also included:

| Contract | Volume | Mill |
|---|---|---|
| Hualapai | 678 M | Winslow |
| Park | 942 M | Winslow |
| Ramah | 847 M | Eagar |
| McGaffey Parcel (Fee timber) | 864 M | Winslow |

Responsive information relating to these contracts and the McGaffey Parcel is also contained in 11 numbered boxes labeled: "Timber Sale Contracts." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

**INTERROGATORY NO. 10.**

Describe in detail the reason for each difference between the annual "operating schedules" for 1995 (see, e.g., Brookbank Contract § BT6.31) that Precision Pine submitted to the Government pursuant to the contracts at issue, and the plan for harvesting timber and other material pursuant to the contracts at issue set forth in response to interrogatory no. 9, including, but not limited to, the date that each change in operating schedule occurred, the reason the change was made, and the identity of each person proposing, approving or otherwise involved in the decision to make the change.

**ANSWER:**

Objection. It is unclear to Precision Pine exactly what are the purported "differences" to which defendant refers, i.e., does defendant mean differences in annual operating schedules provided to the government and operating plans provided to the government; or annual operating plans provided to the government and anticipated harvest dates provided to the government as part of the damage calculations? In any event, all of the relevant documents appear to be in the custody of defendant. However, if defendant will specify the purported "differences" to which it refers, Precision Pine will attempt to respond. Moreover, without waiving the objection, Precision Pine states that the interrogatory seems to assume that the annual operating schedules

were, in some way, binding which, of course, they were not. Such schedules were frequently amended for any number of reasons, including, as stated in the clause, on account of weather, markets and other unpredictable circumstances.

**INTERROGATORY NO. 11.**

Describe in detail the reason for each difference between the "plan of operation" (see, e.g., Brookbank Contract § CT6.3) that Precision Pine submitted to the Government pursuant to each of the contracts at issue, and the plan for harvesting timber and other material pursuant to the contracts at issue set forth in response to interrogatory no. 9, including, but not limited to, the date on which Precision Pine decided to change its plan of operations, the reason that Precision Pine decided to change the planned operations, the identity of each person proposing, approving or otherwise involved in the decision to make the change in planned operations, and the date on which Precision Pine provided the Government a revision of its plan of operations reflecting the change in planned operations, or, to the extent that Precision Pine failed to provide the Government with a revision of its plan of operations, explain in detail the reasons for this failure.

**ANSWER:**

Objection. It is unclear to Precision Pine what are the purported "differences" to which defendant refers. In any event, all of the relevant documents appear to be in the custody of defendant. However, if defendant will specify the purported "differences" to which it refers, Precision Pine will attempt to respond. Moreover, without waiving the objection, Precision Pine states that the interrogatory seems to assume that a general plan of operations was in some way binding, which, of course, it was not. Such plans were frequently amended for any number of

reasons, including, as stated in the clause, on account of weather, markets and other unpredictable circumstances.

**INTERROGATORY NO. 12.**

Describe in detail each change to the plan for harvesting timber and other material described in response to interrogatory no. 9 that Precision Pine contends to have been caused by suspension of the O.D. Ridge, Kettle, Hay, Brookbank, Jersey Horse, Salt, Manaco, Mud, Saginaw-Kennedy, Brann, U-Bar or Monument contracts.

**ANSWER:**

Due to the suspension, Precision Pine harvested other available timber (see, e.g., response to Interrogatory No. 9 for information about some of this timber) and was unable to harvest the suspended timber as anticipated. See Damage Binder at C-0072-C0089. Accordingly, Precision Pine also sought out other sources of timber and took steps to consolidate its operations. See Response to Interrogatory 31 for information about these efforts.

**INTERROGATORY NO. 13.**

Describe in detail the status of timber harvesting on each of the contracts at issue as of August 24, 1995, including, but not limited to, the volume of each species and size class of timber or other material that had been cut, and that remained to be cut, on each payment unit of the contract.

**ANSWER:**

Objection. All of the responsive information relates to Forest Service timber sale contracts and is already in the possession of defendant. Moreover, defendant itself has produced TSSAs for each for each the sales containing much of this information in response to plaintiff's initial discovery in this matter. Without waiving this objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in file folders labeled "Timber Sale Status Reports" which is currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

**INTERROGATORY NO. 14.**

Describe in detail the status of timber harvesting on each of the contracts at issue as of termination of the contract, including, but not limited to, the volume of each species and size class of timber or other material that had been cut, and that remained to be cut, on each payment unit of the contract.

**ANSWER:**

Objection. All of the responsive information relates to Forest Service timber sale contracts and is already in the possession of defendant. Without waiving this objection, Precision Pine states that pursuant to RCFC 33(d) information responsive to this interrogatory is contained in its timber sale contract files, which Precision Pine will make available for inspection. Such files which relate to the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

Information responsive to this interrogatory with respect to Forest Service timber sale contracts is also contained in the TSSA for each Forest Service sale and therefore is already in the possession of defendant. Precision Pine has retained such TSSAs for many of its Forest Service timber sale contacts. Pursuant to RCFC 33(d), TSSAs for the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

**INTERROGATORY NO. 15.**

For each contract, agreement or other arrangement identified in response to interrogatory no. 6, identify each contractor, subcontractor, subsidiary or other person that performed or was engaged to perform any logging or timber harvesting work on behalf of Precision Pine.

**ANSWER:**

Objection. Upon review of the materials related to the numerous contracts by which Precision Pine secured timber from June 24, 1991 to August 1, 2000 identified in response to Interrogatory No. 6, it became clear that the sought after information is both overly broad and unduly burdensome. Without waiving these objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its timber sale contract files, which Precision Pine will make available for inspection. Such files which relate to the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens. The remaining contract files are contained in 11 numbered boxes labeled: "Timber Sale Contracts." These files are currently available for review and will be produced at the former

corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

Responsive information identifying the logging entity that performed work on behalf of Precision Pine is also contained in 7 numbered boxes labeled "Logging and Hauling Records." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

**INTERROGATORY NO. 16.**

For each contractor, subcontractor, subsidiary or other person identified in response to interrogatory no. 15, describe in detail all work performed on behalf of Precision Pine, including, but not limited to, the contract, agreement or other arrangement upon which work was performed, the periods during which work was performed on each contract, and for each month in which work was performed, the nature of the work and the amount owed by Precision Pine for such work.

**ANSWER:**

Objection. Upon review of the materials related to the numerous contracts by which Precision Pine secured timber from June 24, 1991 to August 1, 2000 identified in response to interrogatory no. 6 (which serves as the predicate for interrogatory no. 15, which serves as the predicate for this interrogatory), it became clear that the sought after information is both overly broad and unduly burdensome. Without waiving these objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its timber sale contract files, which Precision Pine will make available for inspection. Such files which

relate to the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens. The remaining contract files are contained in 11 numbered boxes labeled: "Timber Sale Contracts." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

Responsive information identifying the logging entity that performed work on behalf of Precision Pine is also contained in seven numbered boxes labeled "Logging and Hauling Records." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

**INTERROGATORY NO. 17.**

For each contractor, subcontractor, subsidiary or other person identified in response to interrogatory no. 15, describe in detail their capacity to harvest timber on behalf of Precision Pine, including, but not limited to, a description of all equipment and personnel assigned or dedicated to harvest the contracts at issue in each month between August 1993 and December 1998.

**ANSWER:**

Objection. With respect to that portion of interrogatory no. 17 that seeks information about the capacity of logging subcontractors, Precision Pine objects on the grounds that the request is both overly broad and unduly burdensome. Moreover, detailed documentary information about the timber harvesting capacity of Precision Pine's logging subcontractors,

other than Precision Pine's own logging arm, Precision Forest Management, Inc. ("PFMI"), in some cases from more than 13 years ago is not in Precision Pine's possession. Pursuant to RCFC 33(d), Precision Pine states that responsive information about PFMI is located in the Box 1 of the Logging and Hauling Records and that such information as is available regarding logging subcontractors is contained in the other six boxes of Logging and Hauling Records, all of which are currently available for review at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

Pursuant to RCFC 33(d), Precision Pine states that, with respect to the work performed by specific loggers on the contracts which are the subject of this litigation, responsive information is contained in the timber sale contract files which are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

**INTERROGATORY NO. 18.**

For each of the mills at issue, state the total volume of timber or other material from each source that was processed by the facility during each month between June 1991 and July 2000.

**ANSWER:**

Pursuant to RCFC 33(d), Precision Pine states that responsive material is contained in the mill production records, which are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

Additional responsive information about the "total volume of timber or other material from each source" is contained in the timber contract files. Such files which relate to the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens. The remaining contract files are contained in 11 numbered boxes labeled: "Timber Sale Contracts." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

Pursuant to RCFC 33(d), information responsive to this interrogatory with respect to Forest Service timber sale contracts is also contained in the TSSA for each Forest Service sale and therefore is already in the possession of defendant. Precision Pine has retained such TSSAs for many of its Forest Service timber sale contacts. TSSAs for the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens. Additionally, TSSAs for completed Forest Service contacts are contained in two boxes labeled Timber Sale Contracts, TSSAs. These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

**INTERROGATORY NO. 19.**

For each of the mills at issue, identify the volume of each product for which Precision Pine seeks the recovery of lost profits that was produced during each month between June 1991 and July 2000.

**ANSWER:**

Objection. Upon review of the materials related to the monthly production of the 13 lumber products at three mills from June 24, 1991 to August 1, 2000, it became clear that the sought after information is both overly broad and unduly burdensome. Without waiving these objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its mill production files, which Precision Pine will make available for inspection. Such files are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

**INTERROGATORY NO. 20.**

For each sawmill that Precision Pine bought, sold, opened or closed between June 1991 and July 2000, identify that date on which the mill was bought, sold, opened or closed.

**ANSWER:**

Pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its mill purchase records and mill production records, which Precision Pine will make available for inspection. Such files are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

**INTERROGATORY NO. 21.**

Describe in detail each purchase and each sale identified in response to interrogatory no.

20, including, but not limited to, the identity of the purchaser/seller, the price of the purchase/sale, the date of the purchase/sale, the reasons that Precision Pine entered into the purchase/sale, and the identity of all persons that negotiated, approved or were otherwise involved in the mill's purchase or sale.

**ANSWER:**

Pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its mill purchase documents, which Precision Pine will make available for inspection. Such documents are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

Each mill was purchased in an effort to enhance Precision Pine's profitability.

**INTERROGATORY NO. 22.**

For each opening or closure of a mill identified in response to interrogatory no. 20, describe in detail the reasons for Precision Pine's action, including, but not limited to, the identity of all persons that proposed, approved, or were otherwise involved in making the decision and the date on which the decision was made.

**ANSWER:**

Each mill was opened or closed to an effort to enhance Precision Pine's profitability. Precision Pine's Vice President, Lewis Tenney, and President Lorin Porter made the decision with respect to each mill, they do not recall the date that the decisions were made.

**INTERROGATORY NO. 23.**

For each contract, agreement or other arrangement identified in response to interrogatory no. 6, identify each contractor, subcontractor, subsidiary or other person that hauled timber or other material on behalf of Precision Pine.

**ANSWER:**

Objection. Upon review of the materials related to the numerous contracts by which Precision Pine secured timber from June 24, 1991 to August 1, 2000 identified in response to interrogatory no. 6, it became clear that the sought after information is both overly broad and unduly burdensome. Without waiving these objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its timber sale contract files. Such files which relate to the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

The remaining contract files are contained in 11 numbered boxes labeled: "Timber Sale Contracts." Additionally, responsive information identifying the hauling entity which performed work on behalf of Precision Pine is also contained in seven boxes labeled "Logging and Hauling Records." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

**INTERROGATORY NO. 24.**

For each contractor, subcontractor, subsidiary or other person identified in response to interrogatory no. 23, describe in detail the services provided to Precision Pine, including, but not limited to, the months in which work was performed, and for each contract serviced in a given month, the distance that timber or other material from the contract was hauled, the volume of timber or other material hauled, and the sum paid by Precision Pine.

**ANSWER:**

Objection. Upon review of the materials related to the numerous contracts by which Precision Pine secured timber from June 24, 1991 to August 1, 2000 identified in response to interrogatory no. 6 (which serves as the predicate for interrogatory no. 24, which serves as the predicate for this interrogatory), it became clear that the sought after information is both overly broad and unduly burdensome. Moreover, the great majority of the responsive information relates to Forest Service timber sale contracts and, therefore, information about the months in which work was performed, the volume of timber removed, and haul distances to Precision Pine's mills, are ascertainable from documents which are already in the possession of defendant. Without waiving these objections, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its timber sale contract files, which Precision Pine will make available for inspection. Such files which relate to the contracts that are the subject of this litigation are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens.

The remaining contract files are contained in 11 numbered boxes labeled: "Timber Sale Contracts." Additionally, responsive information identifying the hauling entity which performed work on behalf of Precision Pine is also contained in seven boxes labeled "Logging and Hauling Records." These files are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.

**INTERROGATORY NO. 25.**

With respect to each of the mills at issue, describe in detail the equipment used at or dedicated to the mill, including, but not limited to, the equipment manufacturer's name, any model name, number and/or model year, whether the equipment was new or used when purchased by Precision Pine, the purchase price, the purchase date, and the equipment's depreciated value as of August 24, 1995.

**ANSWER:**

Pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is contained in its mill purchase documents. Such documents are currently available for review and will be produced at a mutually agreed upon time at the Washington, D.C. offices of Saltman & Stevens. Also, pursuant to RCFC 33(d), Precision Pine states that information responsive to this interrogatory is found depreciation schedules contained in the boxes 1-10 of the "Financial Records," which are currently available for review and will be produced at the former corporate headquarters of Precision Pine in Heber, AZ at a mutually agreeable time.