# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Docket No.: 78-720C |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Pages: 1 through 18

Place: Washington, D.C.

Date: July 15, 2003

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC., )
Plaintiff, )
v. ) Docket No.: 78-720C
UNITED STATES, )
Defendant. )

National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Tuesday,
July 15, 2003

The parties met, pursuant to notice of the Court, at 10:00 a.m.

BEFORE: HONORABLE EDWARD J. DAMICH
Chief Judge

APPEARANCES: (via telephone)

For the Plaintiff:

RICHARD W. GOEKEN, Esquire
Saltman & Stevens
1801 K Street, N.W., M-110
Washington, D.C. 20006
(202) 452-2140

For the Defendant:

DAVID A. HARRINGTON, Esquire
United States Department of Justice
1101 L Street, N.W.
Washington, D.C.

P R O C E E D I N G S

(10:00 a.m.)

THE COURT: This is the case of Precision Pine & Timber, Inc. v. United States, Docket No. 98-720C.

Representing the Plaintiff is Mr. Richard W. Goeken.

MR. GOEKEN: Good morning, Your Honor.

THE COURT: Good morning, Mr. Goeken. Anyone else there with you?

MR. GOEKEN: I have people who can hear the conversation but will not be participating in our conference.

THE COURT: Okay.

And representing the United States is Mr. David Harrington. Mr. Harrington, are you there?

MR. HARRINGTON: I am, Your Honor.

THE COURT: Anyone there with you?

MR. HARRINGTON: No one is with me, Your Honor.

THE COURT: Okay. Thanks.

Now, the purpose of the status conference is to discuss the Plaintiff's motion for a protective order. The Plaintiff asserts three grounds: (1) The interrogatories received by the Plaintiff 31 days

before the deadline for written discovery; (2) The number of interrogatories, including the subparts, exceeds 50; and (3) The interrogatories and requests for production of documents are unduly burdensome.

I have a question for Mr. Goeken on these points.

I was under the impression that the 30 days was the 30 days. How did you get under the impression that it was 45 days to answer them, Mr. Goeken?

MR. GOEKEN: It was my understanding, based on the agreement in our status report, that 45 days was going to be necessary; and, as we discussed at the status conference, the reason for that additional time was that we anticipated that there were likely to be, in addition, more interrogatories than the typical 25 that are allowed for by the Court rules.

In fact, Your Honor, while not giving the government the several hundred that they thought they might need, did limit or provide an additional 25 on top of the normal 25 for a total of 50 interrogatories, so it was our understanding that the 45 days would remain in effect.

THE COURT: I believe we discussed 45 days, but the order of May 21, 2003 never mentioned 45 days; and the rules of the Court say 30 days and that would

have been the default unless you brought up to the Court that the order did not reflect what the Court's decision was at the time.

MR. GOEKEN: I might add, Your Honor, we did propound interrogatories to the government and on the first page of those interrogatories indicated that we were abiding by the 45-day agreement; and the government has, in fact, taken the full 45 days to respond to those interrogatories.

THE COURT: Is that correct, Mr. Harrington?

MR. HARRINGTON: Your Honor, the first page of the interrogatories does mention 45 days and I blame myself for this somewhat. I focused on the 45-day language that they were asking for the responses in 45 days, I didn't focus on the language saying that there was a stipulation, which, if I had focused on it, I would have recognized that that was incorrect.

So I will not make the mistake of not reading that sort of thing more carefully again. I regret that that happened. And Your Honor should note also that we have served our responses to Precision Pine's interrogatories.

THE COURT: But you took the 45 days that Mr. Goeken is saying?

MR. HARRINGTON: I did take 45 days, Your Honor. Part of that, Your Honor, was when I looked at the interrogatories and they said 45 days, we had, as Mr. Goeken notes, proposed in the status report 45 days.

During our status conference, Your Honor may recall that Mr. Saltman said that Precision Pine was not anticipating needing discovery in the case; and we didn't request, in light of that, that the Court actually give 45 days to respond to interrogatories.

When a week and a half later, Precision Pine, nevertheless, served interrogatories on us and requested documents be produced, I looked at the 45 days and I mistakenly was of the view that they had set 45 days, recognizing that they had said that they wouldn't want any discovery and that that was why we dropped our request for 45 days.

So, I did make an error there and I regret that. And, for that matter, Your Honor, if Precision Pine believes it needs 45 days to respond, I would not object to the additional time, but, of course, I would need the time, the full month, to provide our expert reports if they wanted the 45 days.

THE COURT: Okay.

Mr. Goeken, what is your response to that?

MR. GOEKEN: Several points. I sense a little bit of revisionist history going on here.

In any event, this idea that we waived or said we weren't going to serve any interrogatories is incorrect on the record; and based on the Court's order of May 21, which I have in front of me, Point 6 states clearly: each party may serve up the 50 interrogatories, including subparts. There was no objection from the government at that time, so plainly they knew that we could file interrogatories. We filed interrogatories, specifically referencing the stipulation and they never raised any objection to that. So I fail to see how the stipulation somehow vanished with no reference in the Court's order to that.

THE COURT: Well, regardless of that, what about Mr. Harrington's offer that he would not object to allowing 45 days to respond?

MR. GOEKEN: Well, we are where are, unfortunately, but I think we have been put there by the government's actions again. We are trying to the greatest extent possible to move this case forward. We tried to raise this issue expeditiously; and now the government is essentially going to get more time on a very tight order that Your Honor quite correctly

imposed on everyone.

THE COURT: By the same token, Mr. Goeken, the Court, I guess, believed originally that the informal discovery would take care of all these issues and was surprised that we had to go into formal discovery, but now we are there.

MR. GOEKEN: Yes, I understand that and I am disappointed at what has taken place with the informal discovery. And, frankly, as Your Honor knows, we provided the government back in February with extensive, extensive documentary support for our damages to which they have asked virtually no interrogatories, but instead want every contract that we had for the last ten years and every subcontractor for the last ten years.

The issues could be joined and have been joined from the Plaintiff's side; and the government is engaging in what I see is a fishing expedition and is now getting more time to accomplish that very goal.

THE COURT: Well, of course, you are going to get more time, too.

MR. HARRINGTON: Your Honor, yes, I would --

THE COURT: Mr. Harrington, go ahead.

MR. HARRINGTON: I would object to Mr. Goeken's characterization that we are getting more

time. I suggested that if he required an additional 15 days that that would be acceptable to me. I did not ask the Court to provide us additional time to provide an expert report or do anything of that sort.

THE COURT: Okay. Let's move on to the next two issues. The number of interrogatories.

It seems to me, Mr. Goeken, that when I see the parts and the subparts that they are permissible because they request information concerning "communications of a particular type," which the comments to our rules indicate would fit within that numbering system.

Do you have a comment on that, Mr. Goeken?

MR. GOEKEN: Well, I guess maybe a specific example might help. If we look at Interrogatory 6, for example. I don't know if you have the interrogatories.

THE COURT: Yes, I do.

MR. GOEKEN: There are multiple, multiple subparts here. And then, from that point, they tier any number of subsequent interrogatories, the Interrogatory 6, and then ask multiple, multiple subparts of these same subparts.

For example, if you go on to Interrogatory 7, they want every contract that we had

over a ten-year period; they ask excruciatingly detailed questions; and then they ask follow-up interrogatories on every one of those contracts.

THE COURT: Well, there are two issues, though, here, Mr. Goeken: No. 1 is the number and No. 2 is the undue burden.

MR. GOEKEN: I understand.

THE COURT: It seems to me that your burden, excuse me for using it twice, your burden to prove undue burden is that you have to say more than just you think there is an excessive number because the excessive number, of course, ties into simply whether or not there are 50 or not.

I was looking at the interpretation of the Federal Rules, which ours based on, the advisory committee there says that: Questions about communications of a particular type should be treated as a single interrogatory even though it requests time, place, persons present, contents be separately stated, which it is my inclination to believe what Interrogatory 6 is.

I didn't see really a detailed argument that, in addition to the number, that there was some irrelevance of the actual content of the interrogatories.