No. 98-720C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PRECISION PINE & TIMBER, INC.

Plaintiff,

v.

THE UNITED STATES

Defendant.

---

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION FOR DISCOVERY SANCTIONS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

Patricia L. Disert
Lori Polin Jones
Office of the General Counsel
U.S. Department of Agriculture
1400 Independence Ave., SW
Washington, DC 20250

September 29, 2003

**TABLE OF CONTENTS**

ARGUMENT . . . . . . . . . . 1

I. The United States' Motion For Sanctions Pursuant To RCFC 37(b) Is Properly Before The Court . . . . . . . . . . 1

II. Precision Pine's Objections Have Either Been Rejected By The Court Or Waived . . . . . . . . . . 3

III. Precision Pine Has Abused RCFC 33(d) . . . . . . . . . . 5

A. Precision Pine Invokes Rule 33(d) Without Regard To Whether The Documents It Offers To Make Available Fully Answer The United States' Interrogatories . . . . . . . . . . 5

B. Precision Pine Disregards The Requirement That The Burden Of Deriving An Answer Be No Greater For The United States Than For Precision Pine . . . . . . . . . . 7

C. Each Time Precision Pine Invokes RCFC 33(d), It Simply Dumps A Mass Of Undifferentiated Documents Upon The United States . . . . . . . . . . 8

IV. Precision Pine's Interrogatory Answers Contain Numerous Specific Deficiencies . . . . . . . . . . 10

A. Interrogatory No. 27 . . . . . . . . . . 10

B. Interrogatory No. 9 . . . . . . . . . . 13

C. Interrogatory No. 12 . . . . . . . . . . 13

D. Interrogatory No. 22 . . . . . . . . . . 14

E. Interrogatory No. 34 . . . . . . . . . . 14

F. Interrogatory No. 35-37 . . . . . . . . . . 14

G. Interrogatory No. 41 . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Capacchione v. Charlotte-Mecklenburg Schools,
182 F.R.D. 486 (W.D.N.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Colorado v. Schmidt-Tiago Constr. Co.,
108 F.R.D. 731 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Govas v. Chalmers,
965 F.2d 298 (7th 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Tutu Wells Contamination Litig.
162 F.R.D. 46 (D.V.I 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Oleson v. Kmart Corp.,
175 F.R.D. 650 (D. Kan. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 10

Petroleum Ins. Agency, Inc. v. Hartford Accident & Indemnity Co.,
111 F.R.D. 318 (D. Mass. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Securities & Exchange Comm'n v. Elfindepan,
206 F.R.D. 574 (M.D.N.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

## OTHER AUTHORITY

8A Charles Alan Wright, et al., Federal Practice &
Procedure § 2178 (2d ed. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Advisory Committee Note to Federal Rule of Civil
Procedure 33 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

RCFC 7.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RCFC 33(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-11

RCFC 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**ITS MOTION FOR DISCOVERY SANCTIONS**

Pursuant to Rules 7.1(b) and 37(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, submits this reply in support of its motion for discovery sanctions.

**ARGUMENT**

**I. The United States' Motion For Sanctions Pursuant To RCFC 37(b) Is Properly Before The Court**

A motion for sanctions pursuant to RCFC 37(b) is properly brought when a party has failed to comply with an order of the Court. RCFC 37(b)(2) ("If a party . . . fails to obey an order to provide or permit discovery, including an order under subdivision (a) of this rule . . . the court may make such orders in regard to the failure as are just"). On July 15, 2003, the Court granted the United States' motion to compel answers to its interrogatories. Order of Chief Judge Damich (July 15, 2003); see also Mot., Ex. A (Tr. at 13).[1] The United States has moved for sanctions based upon Precision Pine's violation of the Court's July 15, 2003 order.

[1] In this reply, the United States' motion for discovery sanctions is cited as "Mot. at __", and Precision Pine's response in opposition to the motion is cited as "Opp. at __."

Precision Pine contends that it did not violate the Court's July 15, 2003 order because the Court simply ordered Precision Pine to respond to the United States' interrogatories by August 28, 2003 and it served interrogatory answers prior to that date. Opp. at 4. Precision Pine maintains that the Court's July 15, 2003 order was nothing more than a scheduling order. However, the Court did not merely require Precision Pine to serve answers to the United States' interrogatories by a certain date; by granting the United States' motion to compel, it required that Precision Pine's answers be responsive, complete and in compliance with the RCFC. See Order of Chief Judge Damich (July 15, 2003) (changing the date when interrogatory answers were due and granting the United States' motion to compel). As demonstrated in our motion for sanctions, many of Precision Pine's answers are not responsive, are incomplete or otherwise fail to comply with the RCFC. Consequently, they constitute a violation the Court's order.

Precision Pine also argues that the United States' motion for sanctions is not properly before the Court because the deficiencies in Precision Pine's August 25, 2003 answers were not specifically addressed in the July 15, 2003 order. This argument, if accepted, would lead to absurd results. For instance, sanctions would be unavailable if a party served deficient interrogatory answers, was ordered to provide proper answers, and then knowingly served answers that were deficient for different reasons. Here, the fact that the Court's order did not address specific deficiencies does not change the fact that, by granting the United States' motion to compel, the Court ordered Precision Pine to serve complete, responsive interrogatory answers that comply with the RCFC. See RCFC 37(b)(2) (requiring only the violation of a court order as a predicate to a motion for sanctions). Precision Pine failed to provide such answers. Consequently, it has violated the Court's order regardless of whether the specific deficiencies in

its answers were previously addressed by the Court. The United States' motion for sanctions is, therefore, properly before the Court.[2]

## II. Precision Pine's Objections Have Either Been Rejected By The Court Or Waived

On July 15, 2003, the Court rejected Precision Pine's argument that the United States' interrogatories were unduly burdensome and further determined that Precision Pine had waived any objections that would have been identified by a person who had reviewed the interrogatories with care. Mot., Ex. A (Tr. at 13, 15). Precision Pine has nevertheless persisted in asserting such objections.

In its response, Precision Pine concedes that it objected to interrogatories as unduly burdensome even though the Court had explicitly rejected that objection. See Opp. at 8. Precision Pine states, however, that subsequently it "voluntarily withdrew all of its objections based upon undue burden and undue breadth." Id. (citing Ex. 2).

The letter cited by Precision Pine, which states that "those objections (and only those objections) . . . which state that an interrogatory is overly broad and unduly burdensome" were being withdrawn, does far less than meets the eye. See Opp., Ex. 2 (emphasis added). As an

---

[2] Precision Pine contends that United States' motion for sanctions should be deemed a motion to compel pursuant to RCFC 37(a). Precision Pine is incorrect. But even if the United States' motion were deemed a motion to compel, Precision Pine's argument that the United States failed to consult in good faith prior to filing its motion would be incorrect. As Precision Pine concedes, the United States wrote to Precision Pine on August 26, 2003 identifying problems with Precision Pine's interrogatory answers. See Mot., Ex. C at 1-2. Counsel for the United States subsequently contacted Precision Pine's attorney, Richard W. Goeken, to discuss the issues raised in the August 26, 2003 letter. Mr. Goeken stated that Precision Pine believed that its interrogatory answers were appropriate. Mr. Goeken subsequently wrote a letter confirming that the parties had reached an impasse. See Opp., Ex. 2. Accordingly, the United States did confer with Precision Pine in good faith prior to filing its motion for sanctions.

initial matter, Precision Pine's letter fails to identify any specific objection that was being withdrawn. Moreover, in its interrogatory answers, Precision Pine objects to numerous interrogatories on the ground that the United States already possesses responsive documents or information. See, e.g., Mot., Ex. B at 8-10, 14-15, 17 & 26 (interrogatory nos. 6-8, 10–11, 13-14 & 24). These objections appear to be based upon undue burden, but do not "state" such a basis for the objection. Consequently, these objections were not withdrawn. In any event, Precision Pine provided no additional information to the United States in light of its withdrawal of objections.

Precision Pine also argues that it has properly objected to interrogatories 10 and 11. Opp. at 9-10. As explained in our principal brief, Precision Pine's objection that these interrogatories are "unclear" is based upon their plain language. Mot. at 6-7. Consequently, because the objection would have been apparent to a person who had diligently reviewed the interrogatories, it has been waived. See Mot., Ex. A (Tr. at 15). Moreover, the interrogatories are not unclear. Each asks about differences between the Precision Pine's plan for harvesting timber on August 24, 1995, which was to be set forth in Precision Pine's answer to interrogatory 9, and certain plans that Precision Pine had previously submitted to the Forest Service pursuant to the contracts at issue.[3] Precision Pine's problem in responding to these interrogatories comes not from a lack of clarity, but from its own failure to provide a proper, narrative answer to interrogatory number 9, which in turn made it impossible for Precision Pine to answer interrogatories 10 and 11. Precision Pine's objections to interrogatories 10 and 11 are, thus, without merit.

---

[3] In order to be absolutely clear, the interrogatories identify the specific contractual section pursuant to which Precision Pine's plans were to be submitted to the Forest Service. See Mot., Ex. B at 14-15.

## III. Precision Pine Has Abused RCFC 33(d)

Precision Pine opens its discussion about the use of RCFC 33(d) by quoting the rule and the Advisory Committee Note to the 1970 amendment of the analogous Federal Rule of Civil Procedure. Opp. at 11. Notably absent from Precision Pine's discussion is any mention of the subsequent Advisory Committee Note.[4] It reads, in pertinent part:

> The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by the subdivision. Such practices are an abuse of the option.

Advisory Committee Note (1980 Amendment).[5] The abusive practice described by the Advisory Committee is exactly what Precision Pine has done in this action. See Mot., Ex. B at 2 (referring the United States generally to 8 boxes of documents in Washington, D.C. and 10 boxes of "financial records," 7 boxes of "logging and hauling records," 11 boxes of "timber sale contracts and related documents," 2 boxes of "timber sale statements of account," and "an additional 147 boxes of material" in Heber, Arizona).

### A. Precision Pine Invokes Rule 33(d) Without Regard To Whether The Documents It Offers To Make Available Fully Answer The United States' Interrogatories

The party invoking RCFC 33(d) must satisfy a number of factors to justify the production of documents in lieu of a narrative answer. "First, it must first show that a review of the

---

[4] In 1980, the rule that is now Rule 33(d) was codified as Rule 33(c). It was renumbered in 1993.

[5] As a result of this abusive practice, the requirement that the party invoking Rule 33(d) specify the documents from which the answer can be derived was added.

documents [proffered] will actually reveal answers to the interrogatories." Securities & Exchange Comm'n v. Elfindepan, 206 F.R.D. 574, 576 (M.D.N.C. 2002) (citing 8A Charles Alan Wright, et al., Federal Practice & Procedure § 2178, at 330 (2d ed. 1994)). "In other words, the producing party must show that the named documents contain all of the information requested by the interrogatories." Id. (citing Oleson v. Kmart Corp., 175 F.R.D. 560, 564 (D. Kan. 1997).

Precision Pine does not satisfy this requirement. Precision Pine's answers to interrogatories 6-9, 13-21, 23-27, 29-30 and 32 state only that "information responsive" to the interrogatory is contained in documents that it will "make available." See Mot., Ex. B at 8-14, 17-28 & 30-33. Indeed, in some of its answers, Precision Pine admits that the referenced documents fail to provide a full answer. See Mot., Ex. B at 17-18, 22 (stating in response to interrogatories 14 and 18 that responsive information was contained in Timber Sale Statements of Account ("TSSAs"), some of which had not been retained by Precision Pine and could not be made available). Because Precision Pine does not aver that the documents being made available provide a full and complete answer – much less demonstrate the fact by identifying specific documents that contain all of the information sought – Precision Pine's answers do not comply with the requirements of RCFC 33(d). See Elfindepan, 206 F.R.D. at 577 (ruling that the plaintiff could not invoke Rule 33(d) where it had failed to show "the Court that the documents, in fact, contain all of the information sought by the interrogatories" where it "simply . . . declared such").

Precision Pine responds that the United States does not contend that any responsive documents were not made available. See, e.g., Opp. at 17. Precision Pine misses the point. It is not a sufficient answer to an interrogatory to make documents available for review. Precision

Pine can produce documents in lieu of a narrative response only if the prerequisites in RCFC 33(d) are satisfied. In any event, Precision Pine's assertion that it has made available all responsive documents is not accurate. Illustrative examples of missing documents include accounts payable records, see Mot., Ex. B at 55 (document request no. 4), and the timber sales invoices that were to be made available in response to interrogatory 27, see pp. 10-12, infra.

### B. Precision Pine Disregards The Requirement That The Burden Of Deriving An Answer Be No Greater For The United States Than For Precision Pine

Precision Pine may properly invoke RCFC 33(d) only if the burden of deriving answers is no greater for the United States than for Precision Pine. See RCFC 33(d). However, answers to most, if not all, of the United States' interrogatories could have readily been obtained by speaking to Precision Pine's owners and employees. See Mot., Ex. B at 5 (stating in response to interrogatory 3 that Precision Pine's President, Lorin Porter, has knowledge concerning "timber acquisition, anticipated performance, mill operations, mitigation, product sales, general corporate operations, claim history, various items of damages, claim preparation time, increase costs of unemployment insurance, company history, and mill acquisitions,"and that Precision Pine's Vice President, Lewis Tenney, has knowledge concerning "logging and hauling operations, mill acquisitions, timber acquisitions, general corporate operations, claim history [and] company history"). In addition, counsel for Precision Pine carefully reviewed the boxes maintained in Washington, D.C. in preparing Precision Pine's February 26, 2003 claim and, according to Precision Pine, spent a week reviewing and organizing the documents in Heber, Arizona in August 2003. Opp. at 13. As a result, the burden of deriving answers from the documents made available is not substantially the same for Precision Pine and the United States – it would be

much easier for Precision Pine. See Petroleum Ins. Agency, Inc. v. Hartford Accident & Indemnity Co., 111 F.R.D. 318, 322 (D. Mass. 1983) (defendants were not entitled to answer interrogatories by specifying business records where defendants admitted having already gone through the business records, and found information necessary to answer plaintiff's interrogatories, because it was therefore not equally burdensome for parties to search records to come up with answers). Consequently, Precision Pine's use of RCFC 33(d) is improper.

### C. Each Time Precision Pine Invokes RCFC 33(d), It Simply Dumps A Mass Of Undifferentiated Documents Upon The United States

It is well-established that a party cannot properly respond to an interrogatory by dumping a mass of documents upon the interrogating party. E.g., Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 490 (W.D.N.C. 1998) ("A party that responds to an interrogatory under the provisions of Rule 33(d) abuses this option when the responding party simply directs the interrogating party to a mass of business records."); Oleson v. Kmart Corp., 175 F.R.D. 560, 564 (D. Kan. 1997) ("The responding party may not simply refer to a mass of documents."); Elfindepan, 206 F.R.D. at 577 (same). Rather, "[t]o rely on Fed.R.Civ.P. 33(d), the responding party must specifically identify which documents contain the requested information in its answer to the interrogatory. If the party cannot comply with these requirements, it must otherwise answer the interrogatory fully and completely." Oleson, 175 F.R.D. at 564 (emphasis in original).

Without exception, Precision Pine’s answers fail to satisfy RCFC 33(d)’s specificity requirement. See, e.g., Colorado v. Schmidt-Tiago Constr. Co., 108 F.R.D. 731, 735 (1985) (ruling that the party invoking Rule 33(d) was required to list the specific documents which

would answer the interrogatory, indicating the page or paragraphs that were responsive). Instead, Precision Pine refers the United States generally to numerous boxes of documents to be made available. See Mot., Ex. B at 17, 23-24 & 30 (referring the United States to 8 boxes of documents in response to interrogatory nos. 13, 19, 20, 21 & 29); Mot., Ex. B at 28 (referring the United States to 10 boxes of documents in response to interrogatory no. 26); Mot., Ex. B at 20-21 (referring the United States to 15 boxes of documents in response to interrogatory no. 17); Mot., Ex. B at 27 (referring the United States to 18 boxes of documents in response to interrogatory no. 25); Mot., Ex. B at 8-9, 17-18 & 32-33 (referring the United States to 19 boxes of documents in response to interrogatory nos. 6, 7, 14 & 32); Mot., Ex. B at 12-14 & 21-22 (referring the United States to 21 boxes of documents in response to interrogatory nos. 9 & 18); Mot., Ex. B at 18-20 & 25-27 (referring the United States to 26 boxes of documents in response to interrogatory nos. 15, 16, 23 & 24); Mot., Ex. B at 10-11 (referring the United States to 28 boxes of documents in response to interrogatory no. 8); Mot., Ex. B at 30-31 (referring the United States to 165 boxes of documents in response to interrogatory no. 30); Mot. Ex. B at 28 (referring the United States to 185 boxes of documents in response to interrogatory no. 27). Because Precision Pine's answers fail to specify individual documents from which answers can be derived, state only in the most general terms what is in the boxes being provided, and provide no index to the "material being made available," Precision Pine has abused RCFC 33(d).[6]

Remarkably, in its response to the motion for sanctions, Precision Pine states for the first time that it organized logging and hauling records by the entity performing the work, that TSSAs

---

[6] The only index provided by Precision Pine was to the 147 boxes of additional material made available in Heber. However, this "index" proved useless because Precision Pine failed to place any numbers upon the boxes being made available.

were grouped by contract, and that documents in the timber sales contract file boxes were organized by contract. See Opp. at 13. Precision Pine's failure to provide this information to the United States before now is inexplicable – unless it deliberately intended to make the United States' review of documents more difficult.

But regardless, the fact that Precision Pine may have organized documents unbeknownst to the United States is irrelevant. The fact remains that its answers referred the United States generally to eight or more boxes of documents. Such answers do not comply with the specificity requirement of RCFC 33(d). Capacchione, 182 F.R.D. 486, 489 (W.D.N.C. 1998) ("By providing only vague references to categories of files, [the plaintiff] appears to be sending [the defendant] on a fruitless and diversionary fishing expedition" in violation of Rule 33(d).); see also Oleson v. Kmart Corp., 175 F.R.D. 650, 654 (D. Kan. 1997) (holding that a general reference to a 307 page personnel file constituted an abuse of Rule 33(d)); In re Tutu Wells Contamination Litig., 162 F.R.D. 46, 68 (D.V.I. 1995) (ruling that an answer referring to "several volumes of raw data" did not satisfy Rule 33(d)'s specificity requirement); Govas v. Chalmers, 965 F.2d 298, 301-02 (7th Cir. 1992) (affirming sanctions against a party that had produced approximately 9,000 pages of unlabeled and unorganized documents in response to an interrogatory).

## IV. Precision Pine's Interrogatory Answers Contain Numerous Additional Deficiencies

### A. Interrogatory No. 27

Interrogatory 27 asks Precision Pine to identify the price at which it contends that it could have sold its products in each month between August 1993 and December 1998. Precision Pine

did not provide a narrative response to this interrogatory, but instead stated only that it would produce its "lumber price invoices."[7] Mot., Ex. B at 28.

Precision Pine attempts to distract from this non-answer to interrogatory 27 by asserting, in its response to the motion for sanctions, that its February 26, 2003 damages binder provided information about product sale prices. See Opp. at 31. Precision Pine's interrogatory answer, however, makes no reference to the damages binder. Mot., Ex. B at 28. Moreover, the damages binder does not address the full August 1993 to December 1998 time period, nor does it contain monthly data. See Opp. at 31 (conceding that the damages binder contains no data for sales before or after the suspension); Mot., Ex. B at 29 (noting that the damages binder provides pricing information on a quarterly – not monthly – basis). Consequently, even if Precision Pine's answer had cited the previously-produced damages binder, the answer would have been incomplete.

Precision Pine also asserts in response to the motion for sanctions that it "makes no contention about the prices at which it could have sold lumber products" outside the period of suspension. Opp. at 31 (emphasis added). Precision Pine's assertion is belied by its own answer to interrogatory 34, which, in an attempt to explain Precision Pine's failure to harvest timber after the suspension was lifted, states that "the lumber market for most of the products manufactured by Precision Pine declined dramatically in early and mid-1997, and remained relatively flat . . . through 1998." Mot., Ex. B at 35. Of course, if Precision Pine is, by its answer, making a

---

[7] Precision Pine's answer is presumably pursuant to RCFC 33(d). However, Precision Pine does not satisfy the prerequisites, discussed above, for producing documents in lieu of a narrative response. For instance, Precision Pine's answer refers the United States generally to 185 boxes of documents. See discussion pp. 5-10, supra.

binding commitment to present no evidence about the price at which it could have sold products before and after the suspension (i.e., before August 25, 1995, and after December 4, 1996), the United States' request for sanctions as to those time periods is moot. See Mot. at 17 (requesting that the Court bar Precision Pine from presenting evidence about the price at which it could have sold its products).[8]

Lastly, Precision Pine leaves the impression that it has produced all "actual lumber sale invoices" for sales between August 1993 and December 1998. This is not correct. More than 70 invoices for sales during the suspension were omitted from the documents produced with Precision Pine's February 26, 2003 damages binder.[9] Additionally, the United States has completed its preliminary review of the 185 boxes of documents made available by Precision Pine in Washington, D.C. and Heber, Arizona, and no new lumber sales invoices (i.e., no invoices other than those produced with the damages binder) were found. Thus, Precision Pine has failed even to produce the documents from which it claims the answer can be derived.

---

[8] As the Court is aware, the contracts at issue were suspended for as long as 16 months, but were not canceled by the Forest Service. (Indeed, the Forest Service extended period for performance of each contract.) As a result, Precision Pine was able to harvest timber pursuant to the contracts after the suspension was lifted and cannot show that lost profits resulted from the suspension unless it demonstrates, among other things, that it would have earned less from timber harvested after the suspension. See Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 73 (2001) (questioning whether the suspension may have been "a '*felix culpa*' for the Plaintiff"). Consequently, the commitment, discussed above, is tantamount to a waiver of Precision Pine's demand for lost profits

[9] Precision Pine consecutively numbered its invoices, making missing invoices easy to identify.

**B. Interrogatory No. 9**

Interrogatory 9 asks, in pertinent part, for a detailed description of "Precision Pine's plan for operating each mill at issue." Mot., Ex. B at 11. In its response to the United States' motion for sanctions, Precision Pine continues the gamesmanship in its original answer asserting that it does not "as a matter of practice" establish a "plan of operations" for each mill. See Opp. at 33. Yet one of the documents produced with Precision Pine's damages binder demonstrates that Precision Pine had set "goals" for each mill's production, costs and performance and was carefully tracking whether these goals were met. Mot., Ex. D at 1. Precision Pine's refusal to describe its plan for operating the mills, when some plan for mill operations plainly existed, is contrary to the Court's July 15, 2003 order.[10]

In response to the motion for sanctions, Precision Pine also states that the "defendant seems to have forgotten" that Precision Pine previously "provided goal reports [from March 1994] through March 1997." Opp. at 34. This is incorrect. While Precision Pine produced other reports covering this period, for instance, so-called "cost comparison reports," only one "goal report" was produced with the February 26, 2003 damages binder.

**C. Interrogatory No. 12**

Precision Pine states generally that, due to the suspension, it was unable to harvest timber as anticipated. See Mot., Ex. B at 16. However, Precision Pine refused to identify a single change to its plans for harvesting that resulted from the suspensions. Id. Thus, the answer to interrogatory 12 is non-responsive and contrary to the Court's July 15, 2003 order.

[10] Precision Pine also suggests that the United States seeks information in some particular form. See Opp. at 33. This is nonsensical – the United States served an interrogatory, not a request for production of particular documents.

**D. Interrogatory No. 22**

In response to the motion for sanctions, Precision Pine asserts that it misunderstood interrogatory 22 – interpreting it as applying only to the permanent closure of a mill. The plain language of the interrogatory contains no such limitation. See Mot., Ex. B at 24.

Precision Pine also asserts that the answer to interrogatory 36 provides information about the temporary closure of its mills. Opp. at 35-36. However, the answer to interrogatory 36 does not provide all of the information requested by interrogatory 22. Accordingly, Precision Pine should be directed to provide a complete, narrative answer to this interrogatory.

**E. Interrogatory No. 34**

Interrogatory 34 asks Precision Pine to explain why it did not complete the harvesting of timber on the contracts at issue. Precision Pine implicitly admits that its response to interrogatory 34 is incomplete. Indeed, Precision Pine does not dispute that its interrogatory answer does not provide information on a contract-by-contract basis and fails to account for all periods between the lifting of the suspension in 1996 and the termination of the contracts by the Forest Service in 1999. See Opp. at 36 (asserting that Precision Pine had discussed "factors" that had impeded harvesting "through 1998"). Precision Pine should be required to provide a complete answer to this interrogatory.

**F. Interrogatory Nos. 35-37**

In its response to the motion for sanctions, Precision Pine treats these three interrogatories as if they seek the same information. Opp. at 37-38. Considered separately, it becomes clear that the Precision Pine's answers are incomplete and inadequate. See Mot. at 21-23.

**G. Interrogatory No. 41**

Interrogatory 41 asks Precision Pine to "state all facts" on which it bases its assertion about the products it would have produced from the timber it anticipated harvesting. "State all facts" is specifically defined to request, among other things, the identity of all persons with knowledge and all documents relating to the subject matter of the interrogatory. Precision Pine's answer refers only to historical production "as reflected in its sales invoices." Mot., Ex. B at 36.

Precision Pine responds to the United States' motion for sanctions by asserting that its answer "is complete." Opp. at 38. Based upon this representation, at trial, Precision Pine should be precluded from using other evidence to establish the products that would have been produced from the timber it anticipated harvesting during the suspension.

## CONCLUSION

For the foregoing reasons, and for the reasons in its principal brief, the United States respectfully requests that the Court grant its motion for sanctions.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 307-0277
Fax: (202) 307-0972

Attorneys for Defendant

September 29, 2003