# In the United States Court of Federal Claims

No. 98-720 C

(Filed October 9, 2003)

**********************************

| | |
|---|---|
| **PRECISION PINE & TIMBER, INC.**, | * |
| Plaintiff, | * |
| v. | * |
| **THE UNITED STATES**, | * |
| Defendant. | * |

**********************************

**OPINION**

Pursuant to the hearing on Defendant's Motion for Discovery Sanctions and Plaintiff's Response to Defendant's Motion for Sanctions and Cross-motion for Fees and Expenses, held October 1, 2003, and for the reasons discussed below, the Court ORDERS the following regarding Plaintiff's use of Rules of the United States Court of Federal Claims (RCFC) 33(d) to answer interrogatories 6-9, 13-21, 23-27, 29-30, and 32:

> **Interrogatories 6-9, 14-21, 23-25, 29-30, and 32:** Plaintiff shall specify with greater precision the location of responsive documents that it made available to Defendant in the Washington, D.C., offices of Saltman & Stevens, P.C. Plaintiff shall specify the precise file in which each document is located, so that Defendant can have "the same direct and economical access" to the records as Plaintiff does.
> **Interrogatory 15:** Plaintiff shall make a good faith effort to obtain the requested information from its executives or former executives. To the extent that there is any information that Plaintiff is unable to get from its executives or former executives, Plaintiff shall use the RCFC 33(d) option to produce records in lieu of a narrative answer.
> **Interrogatory 27:** Plaintiff shall answer interrogatory 27 fully, in narrative form, without using the RCFC 33(d) option of producing documents in lieu of a written response.

## I Background

This set of Defendant's interrogatories was brought to the Court's attention on June 25, 2003, when Plaintiff filed a motion for a protective order. On July 9, 2003, Defendant filed a motion to compel. On July 15, 2003, the Court held a hearing regarding these motions. The Court then issued an Order, granting Plaintiff 45 days, instead of 30 days, to respond to the interrogatories, but stating that "[t]he interrogatories served by Defendant were within the limit of 50 . . . and consequently are not unduly burdensome to Plaintiff." The Court also granted Defendant's motion to compel and revised the schedule for discovery.

Plaintiff served its answers on Defendant on August 25, 2003. In Plaintiff's answers, it invoked RCFC 33(d) and produced 8 boxes of "responsive documents," which were made available at the office of Saltman & Stevens in Washington, DC, and 30 boxes of "responsive documents" that were made available at Plaintiff's former corporate headquarters in Heber, AZ. Plaintiff produced an additional 147 boxes of documents as "supporting documents," which were indexed for use by Defendant in Heber, AZ.

Defendant then sent a letter to Plaintiff on August 26, 2003, stating, in part, that Plaintiff's use of RCFC 33(d) to produce documents instead of giving written answers was improper. Plaintiff responded to the August 26 letter by a letter dated September 3, 2003, in which Plaintiff stated that its use of RCFC 33(d) to produce documents was proper.

Defendant filed a Motion for Discovery Sanctions on September 11, 2003, alleging violations of the Court's July 15, 2003, Order. The next day it filed a motion for expedited consideration of that motion, which the Court granted on September 15, 2003. Plaintiff denied Defendant's allegations and counter-moved for an award of reasonable expenses under RCFC 37(a)(4)(B). The parties were ordered to appear for a hearing on September 18, 2003. Due to Hurricane Isabel, the hearing was rescheduled for, and held on, October 1, 2003. On October 2, 2003, Plaintiff was ordered to supplement many of its answers to Defendant's interrogatories by October 10, 2003. On October 8, 2003, Plaintiff filed its Motion for a One Day Enlargement of Time to Complete Revised Discovery Requests. The Court granted said motion on October 8, 2003, and Plaintiff's revised interrogatories are now due on October 14, 2003.

## II. Discussion

The underlying purpose of Rule 33(d) of the Federal Rules of Civil Procedure, which is identical to RCFC 33(d), is "to place the 'burden of discovery upon its potential benefitee.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 357 (1978). However, "where the burden of deriving the answer would not be 'substantially the same,' and the task could be performed more efficiently by the responding party, the discovery rules normally require the responding party to derive the answer itself." *Id*. (footnotes omitted). It is the balance of these two ideals that necessitates the ruling here.

Under RCFC 33(d), there are four basic requirements: (1) it must be possible for the answer to be "derived or ascertained" from the documents produced; (2) the documents must be the party's business records; (3) the burden must be substantially the same for one party as for the other; and (4) specification must allow for location and identification that is no more difficult for the interrogating party than it is for the producing party.

As for the first requirement, Plaintiff, by invoking the RCFC 33(d) option of producing business records in lieu of a narrative answer, is deemed to have made a representation that the information sought can be "derived or ascertained" from the documents produced. *R.W. Thomas Constr. Mgmt. Co. v. Corrugated Servs., Inc.*, No. 95-CV-2131, 1995 WL 592539, at *2 (E.D. Pa. Oct. 2, 1995) ("Rule 33(d) . . . does not shift to the interrogating party the obligation to find out whether sought after information is ascertainable from the files tendered, but only permits a shift of the burden to dig it out *once the respondents have specified the records from where the answer an be derived or ascertained*.") (emphasis added); *see also In re Master Key*, 53 F.R.D. 87, 90 (D. Conn. 1971). In addition, Defendant is free to later raise issues about the content of the documents produced, once it has had a chance to review all of the documents. With regard to the second requirement, there has been no allegation that the documents Plaintiff has produced are not business records.

The last two requirements require further examination. RCFC 33(d) states that "the burden of deriving or ascertaining the answer [must be] *substantially the same* for the party serving the interrogatory as for the party served," and that "specification shall be in sufficient detail to permit the interrogating party to locate and to identify, *as readily as can the party served*, the records from which the answer may be ascertained." RCFC 33(d) (emphasis added). On its face, the language of RCFC 33(d) indicates that the underlying inquiry is one of comparative burden, and that the two requirements of specificity and burden are actually merged into one requirement.

This conclusion is further buttressed by the 1980 amendment to Rule 33(d), in which the last sentence, the specification requirement, was added. The Advisory Committee Note to that amendment states that the specification requirement of Rule 33(d) was added to prevent abuse of the option by parties producing masses of records. The Committee elaborated on the overall purpose of the Rule: "A party who is permitted by the terms of this subdivision to offer records for inspection in lieu of answering an interrogatory should offer them in a manner that permits *the same direct and economical access* that is available to the party . . . . The final sentence is added to make it clear that a responding party has the duty to specify, *by category and location*, the records from which answers to interrogatories can be derived."" (emphasis added). Where the respondent himself has only limited and uneconomical access, he does not have to go to such lengths to improve that access for his opponent as to place a substantially greater burden of ascertaining the answer to an interrogatory on him. However, some specification is required irrespective of how well organized the records are, since the second sentence of Rule 33(d) must have some independent meaning, but nothing in Rule 33(d) or in the Advisory Committee Note suggests that the 1980 Amendment diminished the overall

purpose of burden balancing.

**A. Records Produced for Review in Heber, AZ**

Plaintiff's use of the RCFC 33(d) option of directing Defendant to documents in Arizona was generally proper. Plaintiff used 33(d) regarding records in Heber in 3 ways: (1) directing Defendant to 7 boxes of logging and hauling records, allegedly organized by contract and subcontractor, in response to interrogatories 8, 15-17, and 23-24; (2) directing Defendant to 11 boxes of timber sale contract files, allegedly organized according to contract, in answering interrogatories 6-9, 14-18, 23-24, 29, and 32; and (3) directing Defendant to 10 boxes of financial records in response to interrogatories 25-26 and 30.

These records are part of a large number of allegedly unorganized documents at Plaintiff's former corporate offices, documents that are not being relied on by Plaintiff in preparation for this litigation. As a result, Plaintiff would have had a similar work investment as Defendant in determining which particular records could be used to answer Defendant's interrogatories. Thus Defendant has "the "same direct and economical access" that is available to Plaintiff, meaning that Plaintiff has satisfied the specificity and burden requirements of RCFC 33(d). In addition, Plaintiff did provide some level of specificity, by organizing responsive documents into boxes and by providing an index to the 147 boxes of less responsive documents.

**B. Records Produced for Review in Washington, DC**

Plaintiff improperly used the RCFC 33(d) option of producing documents in lieu of narrative answers regarding records at Saltman & Stevens, in Washington, DC, in 3 instances: (1) directing Defendant to unspecified timber sale contract files in interrogatories 6-9, 14-18, 23-24, and 29; (2) directing Defendant to mill production records and mill purchase records in response to interrogatories 18-21, 25, and 32; and (3) directing Defendant to information on sales of by-products in response to interrogatory 30.

These uses of RCFC 33(d) were not specific enough, and the burden to examine the documents was greater on Defendant than it would have been on Plaintiff because (1) the documents were at a law firm, where lawyers likely reviewed them in preparation for litigation; and (2) as these documents were in the offices of Saltman & Stevens for the purpose of litigation, Plaintiff had most likely reviewed or assembled the information when it prepared its February 26, 2003, damages calculation binder. Therefore, the burden of discerning the answer was heavier on the government than it would have been on Plaintiff. *See Petroleum Ins. Agency v. Hartford Accident & Indem. Co.*, 111 F.R.D. 318, 322 (D. Mass. 1984).

Because Plaintiff was familiar with the documents kept in Washington, DC, and Defendant was not familiar with Plaintiff's records, there is an inequality between the

parties when it comes to reviewing the records. In *T.N. Taube Corp. v. Marine Midland Mortgage Corp.*, 136 F.R.D. 449 (W.D.N.C. 1991), Plaintiff was seeking a wide range of factual information available in micro-filmed and micro-fiched loan documents. The court found that Defendant's familiarity with its records was a "critical factor," stating: "It is evident Defendant's familiarity with its records and methods of organization will facilitate the necessary review of those records in ways unavailable to Plaintiff. As such, it is equally evident that the respective burdens of the parties are not substantially the same." *Id.* at 455. The same reasoning applies here, as Plaintiff is more familiar than Defendant with the organization and content of its records kept in Washington, DC.

However, Plaintiff did properly use RCFC 33(d) when directing Defendant to Timber Sale Status Reports file folders in response to interrogatories 13 and 32. Plaintiff was sufficiently specific in its references to these documents, as folder were identified instead of boxes. This identification of "category and location" therefore caused no greater burden on Defendant than it would have caused if Plaintiff had searched for the documents.

**C. More Convenient Sources of Information**

During the hearing held on October 1, 2003, Plaintiff admitted that it could have asked its executives or former executives about interrogatory 15, but that it failed to do so. Therefore, since Plaintiff could have gotten the information from a more direct source, and Defendant did not have that option, the burden would be greater on Defendant to find the information requested. Thus, since there is a more convenient and specific format that contains the information requested, Plaintiff is required to furnish the information in that format, before resorting to the use of RCFC 33(d). *See Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 226 (10th Cir. 1976); *see also Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 109 F.R.D 263, 265 (E.D.N.C. 1985).

**D. Contention Interrogatories**

Plaintiff's use of the RCFC 33(d) option to produce business records in lieu of a narrative answer to interrogatory 27 was not proper because Defendant was asking for Plaintiff's contentions, not for facts or data. This contention information is not the type of information for which RCFC 33(d) was intended; instead, RCFC 33(d) was intended to aid parties in ascertaining certain facts for which numerous documents must be consulted. *See SEC v. Elfindepan*, 206 F.R.D 574, 577 (M.D.N.C. 2002). Therefore, Plaintiff is required to answer interrogatory 27 without using the RCFC 33(d) option of producing business records.

**E. Sanctions**

The Court's determination of sanctions in this mater (if any) depends on the degree

of good faith shown by Plaintiff in complying with this Order and the Orders dated October 2, 2003, and October 8, 2003.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge