# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S STATUS REPORT

Pursuant to the Court's October 9, 2003 order, defendant, the United States, submits this status report regarding the level of compliance of plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), with the Court's October 2, 2003 and October 8, 2003 orders.

## INTRODUCTION

In compliance with the Court's October 8, 2003 order, Precision Pine served by hand delivery supplemental answers to the United States' first set of interrogatories regarding damages on October 14, 2003.[1] See Pl.'s Supp. Answers to Def.'s First Set of Interrogatories (included, in pertinent part, in the appendix to this report). However, as set forth below, many of Precision Pine's supplemental answers are incomplete or suffer from other shortcomings. Consequently, Precision Pine has not fully complied with the Court's orders.

---

[1] Precision Pine provided supplemental answers to interrogatories 9-13, 18-22, 27, 28, 30, 34-37 and 41.

## DISCUSSION

### I. Precision Pine's Introduction Statement

In its introductory statement, Precision Pine asserts the right to modify "the factual assertions and/or the mathematical calculations" in its supplemental answers in light of newly discovered evidence, or upon review by its damages expert. App. 2. The United States is concerned by this statement.

Since filing this action more than five years ago, Precision Pine has had ample opportunity to review its own documents and to seek discovery from the United States. Indeed, Precision Pine compiled and produced what purports to be a comprehensive statement of alleged damages on February 26, 2003. Precision Pine should thus have no need to modify its supplemental interrogatory answers as a result of "newly discovered evidence."

In addition, Precision Pine has retained its expert on damages, who by this time should have completed his report. See Order of Chief Judge Damich (July 15, 2003) (establishing September 26, 2003 as the date for issuance of expert reports). Indeed, Precision Pine's expert has already had an additional three weeks to refine his report as a result of Precision Pine's failure to provide proper answers to the United States' interrogatories. See Order of Chief Judge Damich (Sept. 17, 2003) (changing the date for issuance of expert reports in order to entertain the United States' motion for sanctions). In drafting its supplemental answers, Precision Pine has thus had the opportunity to take into account its expert's conclusions. Consequently, Precision Pine should have no need to modify its supplemental interrogatory answers following review by its expert.

Simply put, at this point, Precision Pine should not be changing its factual allegations or damages calculations. Precision Pine's interrogatory answers should be accurate and complete, and the United States should be able to rely upon them in preparing its own expert reports and at trial.

## II. Interrogatory No. 9

Precision Pine's supplemental answer to interrogatory 9 does not comply with the Court's orders. In addressing interrogatory 9, the Court stated that Precision Pine "shall list each contract, agreement or arrangement" responsive to interrogatory no. 6. Order of Chief Judge Damich at 1 (Oct. 2, 2003). Precision Pine provides a table that lists only those contracts held on the date of the suspension. See App. 4. Because Precision Pine fails to identify some contracts, agreements and arrangements responsive to interrogatory no. 6, its answer to interrogatory 9 is incomplete.[2]

Additionally, interrogatory 9 seeks, and the Court specifically directed Precision Pine to provide, information concerning Precision Pine's plan for operating each of the mills at issue. See Order of Chief Judge Damich at 1 (Oct. 2, 2003) (requiring to Precision Pine to provide information that it could obtain from "any goal reports and . . . through due diligence from any other source"). Precision Pine provides no information about plans for mill operations and makes no reference to its goal reports. Instead, Precision Pine merely identifies the mills to

---

[2] Precision Pine presumably had no plan for harvesting these contracts as of August 24, 1995, either because they had been completed or had not yet been entered into. If this is in fact Precision Pine's answer, it should say so.

which timber was to be hauled.[3] See App. 3-4. The answer to interrogatory 9 is deficient for this additional reason.

Lastly, interrogatory 9 seeks information about Precision Pine's plan for harvesting all "timber and other materials." Thus, the interrogatory seeks information not only about Precision Pine's plans for harvesting "saw timber" (i.e., trees 9 inches or greater in diameter at breast height), but also about Precision Pine's plans for harvesting "roundwood" (i.e., trees less than 9 inches in diameter at breast height). Precision Pine's answer provides no information about plans for harvesting roundwood.[4]

For these reasons, Precision Pine's answer to interrogatory 9 is incomplete and does not comply with the Court's October 2, 2003 order.

## III. Interrogatory No. 11

Interrogatory 11 requests, among other things, that Precision Pine "explain in detail" the reasons for any failure to submit a revised plan of operations to the Government. App. 5. In its answer, Precision Pine states that it failed to submit to the Forest Service a revised plan of operations for the Hutch-Boondock, Saginaw-Kennedy, Mud, U-Bar, Brookbank, Jersey Horse, St. Joe, Hay, Kettle and O.D. Ridge contracts. App. 5-7, 9-11. However, Precision Pine provides no explanation for this failure. Id. Consequently, Precision Pine's answer to interrogatory 11 is incomplete and fails to comply with the Court's October 2, 2003 order. See

---

[3] In contrast to the limited information provided about plans for operating its mills, Precision Pine's supplemental answer provides detailed information about plans for harvesting saw timber on contracts at issue.

[4] Because interrogatories 10-12 depend upon the answer to interrogatory 9, Precision Pine's failure to provide information about its plan for harvesting roundwood results in incomplete answers to interrogatories 10-12.

Order of Chief Judge Damich at 2 (Oct. 2, 2003) ("In addition, Precision Pine shall provide any other information that is responsive to interrogatory no. 11.").

**IV. Interrogatory No. 13**

Interrogatory 13 is incomplete for the reason that Precision Pine provides no information about the status of timber harvesting upon the Monument and Brann timber sale contracts. As a result, Precision Pine's answer does not comply with the Court's October 2, 2003 order. See Order of Chief Judge Damich at 2 (Oct. 2, 2003) ("Plaintiff shall list each contract in issue and, next to each, describe in detail the status of timber harvesting as of August 24, 1995.").

**V. Interrogatory No. 20**

Interrogatory 20 asks about periods when the mills at issue were closed. In its answer, Precision Pine provides various dates when its mills were closed. App. 17. However, Precision Pine states that it does not provide information on closings due, for instance, to "maintenance" or "equipment breakdowns of very limited duration." App. 17 & 19-20. The closure of mills as a result of equipment breakdowns or for maintenance can be significant.[5] Because the United States cannot know what, if any, mill closings Precision Pine declined to identify, the United States cannot state whether the supplemental answer to this interrogatory complies with the Court's October 2, 2003 order.[6] See Order of Chief Judge Damich at 2 (Oct. 2, 2003) ("Plaintiff shall answer interrogatory no. 20 fully.").

---

[5] Indeed, in response to interrogatory 22, Precision Pine indicates that its own mills closed for a week or more as a result of maintenance.

[6] Because interrogatory 22 seeks greater detail about the periods when the mills at issue were closed, the supplemental answer to interrogatory 22 may also be incomplete.

## VI. Interrogatory No. 27

The table designated Chart 1, which provides lumber prices for ponderosa pine wood products, is incomplete. For example, in its August 1993 entry, Precision Pine provides no information with respect to products described as "5/4 x RWL Radius Edge," "#3 Common Utility," and "Timbers." App. 23. Similar omissions occur in other months.[7] Id. Consequently, Precision Pine's answer is incomplete and does not comply with the Court's October 2, 2003 order. See Order of Chief Judge Damich at 2-3 (Oct. 2, 2003) ("Plaintiff shall answer interrogatory no. 27 fully.").

## VII. Interrogatory No. 28

Interrogatory 28 asks Precision Pine to describe in detail the methodology and any sources of information used in determining the sales prices provided in interrogatory 27. App. 30. In its answer, Precision Pine states that, in most instances, it averaged the prices on its sales invoices to come up with the prices set forth in its supplemental answer to interrogatory 27. Id. However, Precision also states that it "excluded" invoice prices for products produced from unspecified "low quality timber" during the period of the suspension. Id. This would appear to have the effect of inflating alleged sales prices during the period of the suspension. More significantly, Precision Pine provides no information on the methodology used to determine when a given sales invoice was "excluded" from its calculations. As a result, Precision Pine's

---

[7] In its supplemental answer to interrogatory 19, Precision Pine states that it "seeks recovery of lost profits only with respect to finished lumber products." If so, Precision Pine's contentions with respect to the sale price for rough cut products, such as the "rough" and "timbers" categories, are irrelevant. However, if not, the supplemental answer to interrogatory 19 is incomplete because it fails to address the volume of such rough cut products that were produced for sale by Precision Pine. See Order of Chief Judge Damich at 2 (Oct. 2, 2003) (stating that Precision Pine "shall provide the information sought by interrogatory no. 19").

answer is incomplete and does not comply with the Court's order. See Order of Chief Judge Damich at 3 (Oct. 2, 2003) ("Plaintiff shall answer interrogatory no. 28 fully.").

**VIII. Interrogatory No. 34**

Interrogatory 34 asks Precision Pine to explain in detail why it did not harvest timber after the suspensions of the contracts at issue were lifted. App. 35. The Court ordered Precision Pine to "answer interrogatory no. 34 fully, including, but not limited to, providing a list of the 14 contracts at issue and making a relevant detailed statement regarding each, and providing all information requested through the end of each contract." Order of Judge Damich at 3 (Oct. 2, 2003). Precision Pine's answer contains numerous, significant gaps, that is, it frequently does not address the full period between the lifting of a contract's suspension and the end the contract.

For instance, with respect to the Brookbank sale, Precision Pine does not explain why it did not harvest in 1997. See App.39-43. While Precision Pine notes that the June 2, 1997 injunction in the "Forest Guardian's litigation" prevented harvesting of some contracts for part of that year, work upon the Brookbank contract was never enjoined. App. 40. Precision Pine also asserts that in September 1997 the Forest Service restricted logging on two of the contract's six payment units. App. 39 However, this also fails to explain Precision Pine's decision not to operate this contract during a year when other contracts were suspended and, by Precision Pine's own admission, prices were higher than during the contract's 1995-96 suspension.

Similar gaps exist in Precision Pine's answers regarding the Brann, Hutch-Boondock, Jersey Horse, Manaco, Monument and Mud contracts. Consequently, Precision Pine's answer does not fully comply with the Court's order.

**IX. Interrogatory No. 37**

Interrogatory 37 ask Precision Pine to explain in detail the basis for the increased logging and hauling component of its claim by contract year. App. 73. Precision Pine's supplemental answer provides no information concerning its demand for damages for increased hauling costs for the Hay and O.D. Ridge contract during 1996. App. 74-75. In addition, Precision Pine fails to explain the basis for its damage claim for that part of 1997 (February through August) when the Eagar mill was open and could have accepted timber from the Hay and O.D. Ridge contracts. Accordingly, Precision Pine's answer is incomplete and does not comply with the Court's order. See Order of Chief Judge Damich at 3 (Oct. 2, 2003) ("Plaintiff shall answer interrogatory no. 37 fully.").

**X. Interrogatory No. 41**

Interrogatory 41 asks Precision Pine to state, with respect to its February 26, 2003 damages calculations, all facts upon which it bases its assertions about the products it would have obtained from the timber that it anticipated harvesting pursuant to the contracts at issue. App. 77. For instance, Precision Pine had asserted in its calculation binder that the harvest of timber upon the Brann contract would have produced, among other things, 47.96 mbf of "Moulding & Better," 12.56 mbf of "5/4 #1 Shop," and 85.07 mbf of "5/4 #2 Shop." See PP&T Calculation Binder, at C-0072 (Feb. 26, 2003). Thus, in interrogatory 41, the United States requested that Precision Pine explain the basis for these assertions.

In its supplemental answer, Precision Pine states that various "documents demonstrate" that it would in fact have produced the kinds of products listed in its damage binder, e.g., moulding & better, 5/4 #1 shop, and 5/4 #2 shop. App. 77. However, other than the general

statement that it has "determined that [it] would have manufactured the lumber products for which it has claimed damages from each of the contracts at issue," Precision Pine fails to explain the basis for its assertion that it would have obtained, for example, 47.96 mbf of moulding & better from the Brann sale.

Precision Pine does identify pages from its calculation binder in its interrogatory answer. See App. 78. However, these pages contain only Precision Pine's contentions – not an explanation of the basis for these contentions. Indeed, Precision Pine has simply pointed the United States to the very pages of the calculation binder that prompted its interrogatory in the first place.

Because Precision Pine has not fully answered this interrogatory, its answer does not comply with the Court's order. See Order of Chief Judge Damich at 3 (Oct. 2, 2003) ("Plaintiff shall answer interrogatory no. 41 fully.").

**XI. Other Issues**

Precision Pine's factual answers are not verified as required by RCFC 33(b). See RCFC 33(b) ("Each interrogatory shall be answered fully, completely and under oath").

**CONCLUSION**

While Precision Pine has provided significantly more information than in its initial interrogatory answers, it not provided complete interrogatory answers as required by the Court's October 2, 2003 and October 8, 2003 orders.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

Patricia Disert
Lori Polin Jones
Office of the General Counsel
U.S. Department of Agriculture

October 16, 2003