**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 98-720C (Chief Judge Damich) |

**PLAINTIFF'S STATUS REPORT**

## I. Introduction.

Pursuant to the Court's order of November 4, 2003, plaintiff submits this status report setting forth its response to defendant's claim for costs along with an itemization of plaintiff's costs incurred in defending against defendant's September 11, 2003 Motion for Sanctions.

The sole basis for defendant's Motion for Sanctions was Rule 37(b) of the Rules of the United States Court of Federal Claims ("RCFC"), which provides for the imposition of a sanction for violation of an order from the Court. However, defendant's motion came in direct response to Precision Pine's initial answers to the defendant's first set of interrogatories,[1] i.e., before defendant had filed any motion challenging the adequacy of those responses or obtained any order mandating any further action by plaintiff.

[1]Defendant served 45 interrogatories, 27 requests for the production of documents and 10 requests for admissions. In preparing these initial responses, plaintiff conservatively estimates that it expended 300 attorney hours, including an entire work week spent in Arizona by two attorneys, at a total cost of approximately $65,000.00.

Moreover, the Court's order dated October 9, 2003, briefly addresses sanctions, stating that "[t]he Court's determination of sanctions in this mater (if any) depends on the degree of good faith shown by Plaintiff in complying with this Order and the Orders dated October 2, 2003, and October 8, 2003." It is well established that "[RCFC 37(b)(2)] expressly requires that the sanctions must be 'just;' and the sanction must relate to the particular claims to which the discovery order was addressed." Morris v. U.S., 37 Fed. Cl. 207, 213 (1997) (citing Insurance Corp. of Ireland v. Campagnie des Bauxites, 456 U.S. 694, 707 (1982)). In this regard, Precision Pine timely complied with the specified orders and indeed all orders from the Court, and has made its best, good faith effort to provide the defendant the information it sought, once it was made clear the exacting detail and specific formats in which the defendant sought this information. At most, assuming that defendant's motion is deemed to be a motion to compel in response to Precision Pine's initial interrogatory answers, defendant might be entitled to recovery of certain expenses offset by the expenses incurred by the plaintiff on that portion of the motion upon which Precision Pine prevailed. See Rule 37(a)(4)(C) (Court may apportion reasonable expenses incurred in relation to a motion to compel in a just manner).

## II. Precision Pine's Actions Did Not Violate A Court Order And Therefore Do Not Warrant Sanctions Under RCFC 37(b).

As the Court acknowledged at the October 1, 2003 hearing, the defendant's motion was effectively a mixed motion for sanctions and a motion to compel. The defendant's motion essentially made three complaints about Precision Pine's responses to interrogatories: (1) that objections Precision Pine made in its answers to defendant's interrogatories were improper; (2) that Precision Pine abused the option provided by RCFC 33(d); and (3) that answers to some of

the interrogatories were incomplete or non-responsive. Of these three issues prior to October 1, 2003, the Court had only made a ruling with regard to a portion of the first, addressing Precision Pine's objections to specific interrogatories. That ruling was made during the July 15, 2003 telephonic hearing on plaintiff's Motion for Protective Order.

The Court's ruling regarding plaintiff's objections that certain interrogatories were overly broad and unduly burdensome was not memorialized in its order following the July 15, 2003 hearing. The plaintiff made its best interpretation of the Court's intention based on its reading of the transcript of that hearing. As such, plaintiff's counsel believed it was still entitled to make such objections, especially after reviewing Precision Pine's documents in Heber, Arizona and realizing the overwhelming burden that would be involved in sorting through Precision Pine's documents and answering certain of the interrogatories. In this regard, counsel for Precision Pine notes (1) that although it had fully examined defendant's interrogatories, it did not know the full extent of the burden of answering these interrogatories until it reviewed the documents in Heber, Arizona, and (2) that for the majority of the interrogatories to which Precision Pine objected as being overly broad and unduly burdensome, it properly invoked RCFC 33(d). The objections set out in plaintiff's answers to interrogatories were not made in bad faith, as defendant asserts, rather, they were made after two attorneys for Precision Pine spent a full work week, working 11 and 12 hours days, at the plaintiff's former corporate headquarters reviewing the client's documents and attempting to answer defendant's interrogatories.[2] Moreover,

---

[2]It is important to recall that the majority of defendant's interrogatories focused on matters not related to Precision Pine's damage calculations, but rather raised matters that are not part of Precision Pine's case in chief. Thus, until counsel for Precision Pine traveled to Heber,

notwithstanding the huge burden that the interrogatories imposed,[3] Precision Pine went on to provide an answer to each and every interrogatory to which it made the unduly broad or overly burdensome objection. As such, these objections were only objections in form and not in substance. More importantly, any issue concerning these particular objections was mooted by Precision Pine's withdrawal of these objections, in an effort to avoid a protracted discovery dispute over them, in a letter dated September 3, 2003, over a week prior to the defendant's filing of its motion for discovery sanctions. A point defendant conceded in its motion. Defendant's Motion at 6.

With regard to the other issues raised in the defendant's Motion for Discovery Sanctions, the Court had not made a prior ruling on any of them. Indeed, because Precision Pine had not yet answered any of the interrogatories at the time of the July 15, 2003 telephonic conference, no such ruling could have been made. These complaints thus were brought to the Court's attention for the first time in the defendant's Motion for Discovery Sanctions of September 11, 2003. Necessarily, therefore, the Court's orders following the hearing on the motion were the first orders to address these complaints. Simply put, Precision Pine could not have violated an order that had not yet been issued.

In its Motion for Sanctions, defendant first complains that Precision Pine waived the objections it asserted with respect to Interrogatory Nos. 10, 11 and 34. However, the objections Precision Pine made with respect to these interrogatories were not addressed by the Court during

---

Arizona and discovered the extent of the task that defendant sought to impose upon it, Precision Pine was not fully aware of just how broad and burdensome defendant's requests were.

[3]See note 1 supra.

the July 15, 2003 status conference. Therefore, the defendant does not have a valid argument with respect to the objections to these interrogatories that Precision Pine violated any order of the Court. Moreover, the objections that Precision Pine made with regard to Interrogatory Nos. 10 and 11 simply stated that Precision Pine did not understand certain "differences" to which the interrogatory referred and sought a clarification which defendant did not provide. As the Court noted, the defendant could easily have clarified its intent with regard to these interrogatories. Precision Pine's objection to Interrogatory No. 34 simply stated that the premise behind the interrogatory was incorrect. As it had done with respect to those interrogatories to which it objected on the grounds that they were overly broad and unduly burdensome, Precision Pine nevertheless answered Interrogatory Nos. 10, 11, and 34 to the best of its ability with its understanding of the interrogatory at the time.

The next matter raised in defendant's Motion for Sanctions is that Precision Pine "disregarded the Court's rejection" of its use of RCFC 33(d). What defendant fails to note is that the Court did not make any such ruling regarding RCFC 33(d) during the July 15, 2003 status conference, therefore, Precision Pine, by subsequently invoking RCFC 33(d) in response to certain interrogatories did not violate any Court order. The defendant premises its complaint on the fact that during the July 15, 2003 telephonic hearing on plaintiff's Motion for Protective Order, counsel for plaintiff suggested directing defendant to certain business records in lieu of providing narrative answers to certain interrogatories, and counsel for defendant voiced certain concerns regarding plaintiff's possible use of RCFC 33(d). This notwithstanding, the fact remains that the Court <u>did</u> <u>not</u> address or rule on the use of RCFC 33(d) during the July 15 hearing. The defendant somehow has simply jumped to the conclusion that the Court's silence

on this point amounted to a court order forbidding Precision Pine from using an option provided by the Rules ("Precision Pine has disregarded the Court's rejection of its proposal [to provide access to business records in lieu of a narrative answer.]" Defendant's Motion at 10.). As the Court stated during the October 1, 2003 hearing, it never made any such ruling. To the contrary, the Court's October 9, 2003 opinion made clear that Precision Pine's use of Rule 33(d), especially with respect to documents located in Arizona, had been generally proper. Therefore, Precision Pine did not violate a court order in its use of RCFC 33(d).

Finally, the defendant argues that Precision Pine violated the Court's order by providing incomplete or non-responsive answers to certain interrogatories. As Precision Pine had not provided its answer to these particular interrogatories prior to the July 15, 2003 hearing on its Motion for a Protective Order, the Court necessarily had not addressed any such answers in any order. The defendant appears to argue that because its response to plaintiff's Motion for a Protective Order was styled as a Motion to Compel, that the Court's denial of the Protective Order requested by the plaintiff was a blanket order to compel specific answers to interrogatories. However, the facts are simply that as of July 15, 2003, Precision Pine had not submitted any answers to any interrogatories and, therefore, the Court did not find (indeed could not have found) that Precision Pine had submitted any inadequate answers. The defendant's complaint regarding the alleged inadequacy of answers to specific interrogatories was raised for the first time in the defendant's Motion for Discovery Sanctions, therefore, Precision Pine could not have possibly violated a court order regarding these interrogatories prior to September 11, 2003.

A large part of the defendant's "Motion for Discovery Sanctions" addresses other issues that were placed before the Court for the first time in that motion. In fact, during the hearing on defendant's motion, the court recognized that this motion was a combined motion for sanctions and a motion to compel discovery under RCFC 37(a). As has been discussed, the only action of Precision Pine that was arguably in violation of any order by the Court was its assertion of objections on the basis that certain interrogatories were overly broad and unduly burdensome. However, these objections were all withdrawn well before the defendant filed its Motion for Discovery Sanctions, they were made in good faith and not clearly in violation of the Court's order, and they had no prejudicial effect because Precision Pine went on to answer the interrogatories anyway. Therefore, Precision Pine should not be sanctioned for failing to comply with a court order under RCFC 37(b).[4]

As is discussed above, the greater part of the defendant's Motion for Discovery Sanctions was in reality a motion to compel more complete responses to specific interrogatories under RCFC 37(a). Although a party moving to compel may be awarded reasonable expenses under RCFC 37(a), Precision Pine believes such an award is unjust in the facts and circumstances of

[4]Defendant's Motion for Discovery Sanctions also complained that "Precision Pine Has Deliberately Impeded the United States' Concerted Effort to Review and Copy the Documents that Precision Pine Offered to 'Make Available.'" Defendant's Motion at 11. The defendant devoted approximately three full pages of its 25-page motion arguing that Precision Pine put up "roadblock after roadblock" in an effort to thwart the defendant's copying and review of documents. This complaint was utterly baseless and the Court simply ignored defendant's unfounded and petty accusations. The fact is that Precision Pine went to tremendous effort and expense to produce documents to the government in an extremely expeditious manner. Such efforts are set forth in plaintiff's Response to Defendant's Motion at 21-30. Of course, Precision Pine took this accusation of bad faith very seriously and was forced to make a detailed response set forth in 10 pages of its 40-page brief.

this case. Although Precision Pine may not have originally provided the defendant with perfect answers written in the exact words that defendant would have liked, Precision Pine did provide answers to all of the defendant's interrogatories. The defendant's motion to compel discovery was premature and was not necessitated by a refusal by Precision Pine to answer any interrogatories, many of which are poorly worded and extremely confusing. Rather, the defendant made no serious effort to provide Precision Pine with a clarification as to how Precision Pine could reasonably expand its answers.[5] Perhaps it was because of this that the defendant never submitted a certification that it conferred in good faith with Precision Pine in attempting to obtain the information it sought without court action, as required by RCFC 37(a).[6]

**III. Plaintiff's Supplemental Responses To Certain Interrogatories And Its Proper Invocation of RCFC 33(d).**

Assuming that the defendant's motion to compel was necessary and proper despite the fact that it lacked the required certification of having made good faith efforts to obtain the information, Precision Pine complied in good faith and in a timely manner with the Court's orders. Moreover, Precision Pine also prevailed on a large part of the issues surrounding the defendant's complaints involving RCFC 33(d).

---

[5]It appears that the driving force behind the defendant's Motion for Discovery Sanctions may have been a desire to prevent Precision Pine from invoking RCFC 33(d), as was Precision Pine's right. The defendant may well have recognized the considerable burden involved in answering its own interrogatories and wanted to prevent Precision Pine from shifting this burden. This possibility is supported by the fact that the defendant complained about Precision Pine's use of RCFC 33(d) in a letter dated August 26, 2003, just one day after Precision Pine submitted its answers, and before the defendant had reviewed even a single document.

[6]As Precision Pine argued in its response to Defendant's Motion For Discovery Sanctions, at 5-6, such a certification is required for a motion to compel under RCFC 37(a)(2)(b). Courts have denied motions to compel where the requisite certification is missing. See, e.g., Ross v. Citifinancial, Inc., 203 F.R.D. 239, 240 (S.D. Miss. 2001).

**A. The October 2, 2003 Order**

By order dated October 2, 2003, the Court directed Precision Pine to answer 17 specific interrogatories by October 10, 2003. In accordance with the Court's order, and assisted by the clarification it received from the defendant for the first time during the October 1, 2003 hearing as to the specific deficiencies defendant believed existed in Precision Pine's interrogatory responses, Precision Pine timely provided defendant with an extensive set of supplemental answers to these 17 interrogatories.

**B. The October 9, 2003 Order**

In a second order dated October 9, 2003, the Court addressed Precision Pine's use of RCFC 33(d) to answer Interrogatory Nos. 6-9, 13-21, 23-27, 29-30 and 32. In this order, the Court examined the case law dealing with RCFC 33(d) and considered whether Precision Pine had properly invoked the rule in response to defendant's interrogatories. The Court ruled that Precision Pine's use of RCFC 33(d) to direct defendant to documents in Heber, Arizona was generally proper. This was a clear ruling in Precision Pine's favor.

The Court did rule that Precision Pine had not fully complied with RCFC 33(d) with regard to certain interrogatories where it directed the defendant to documents located at the offices of Saltman & Stevens in Washington, D.C. However, even in these instances, the Court did not find that Precision Pine had not improperly invoked RCFC 33(d), rather, the Court simply concluded that Precision Pine had not specified the location of such documents with the necessary precision. The Court's order thus directed Precision Pine to specify with greater precision the location of the responsive documents in Washington, D.C. Upon receiving this

order clarifying the required level of specificity, Precision Pine promptly complied with the Court's order, provided the defendant with supplemental responses stating the precise location of the responsive documents and delivered the responses to the defendant before any deadline had even been established for doing so. The defendant's status report of October 30, 2003 acknowledged that Precision Pine's responses fully complied with the Court's order.

## IV. <u>Five Additional Supplemental Responses</u>

On October 20, 2003, the Court held a telephonic status conference to address Precision Pine's compliance with its order of October 2, 2003. Following this status conference, the Court issued two orders, dated October 20 and 23, 2003, directing Precision Pine to further supplement five of the 17 interrogatories (<u>i.e.</u>, Interrogatory Nos. 9, 27, 28, 34 and 41). Precision Pine believed in good faith that it had complied with the Court's order of October 2, 2003 when it provided its first supplemental answer to these five interrogatories, and the further supplemental answers were essentially clarifications or matters of interpretation or, in one case, a voluntary additional response by Precision Pine. Set forth below is a description of Precision Pine's good faith effort to comply with Court's October 2, 2003 order for each of these five interrogatories, and the reasons that led to Precision Pine's further supplementation:

### <u>Interrogatory No. 9</u>

Interrogatory No. 9 asked about Precision Pine's plan for operating its mills and harvesting remaining timber as of August 24, 1995. It asked for this information with respect to every contract identified in Interrogatory No. 6. The Court's order of October 2, 2003 directed Precision Pine to supplement its original answer by listing each contract identified in response to

Interrogatory No. 6 and describing its plan for operating each mill. The Court also stated that such plans should include any goal reports that Precision Pine could acquire through due diligence.

In its original answers to Interrogatory No. 9, Precision Pine provided the defendant with a comprehensive spreadsheet listing the anticipated dates for harvesting all timber that Precision Pine had under contract as of August 24, 1995. Precision Pine did not list the contracts that had been either completed or not yet purchased by that date because it seemed obvious to plaintiff that, as of August 24, 1995, Precision Pine did not have (and indeed could not have had) any plan to harvest these completed or yet to be acquired contracts. More importantly, Precision Pine had not made a list of contracts in response to Interrogatory No. 6, because in its answer to Interrogatory No. 6, Precision Pine had directed the defendant to its contract files pursuant to RCFC 33(d), a response that was found to be sufficient by the Court over defendant's objection.

With regard to the "goal reports" that the defendant continually asserts somehow constitute a mill operating plan, Precision Pine maintains that they merely represent "goals" for production in the month subsequent to issuance. Reports dated after July 30, 1995 did not exist as of the date of suspension and, by definition, they do not constitute a "plan for operating each mill at issue . . . as of August 24, 1995" as Interrogatory No. 9 requests. Moreover, in its first supplemental response to Interrogatory No. 9, Precision Pine did not believe it made sense to reference these goal reports because it was providing a narrative response to the interrogatory, rather than invoking the option of RCFC 33(d). More importantly, all such goal reports that Precision Pine is aware of had already been produced to the defendant, either in Heber, Arizona

or Washington, D.C., pursuant to the defendant's request for production of documents and had been marked for copying by defendant at both locations. Thus, Precision Pine believed it had already complied with the Court's order regarding goal reports because, to the best of its knowledge, the defendant was already in possession of all such reports.

These facts notwithstanding, the defendant's October 16, 2003 status report complained that Precision Pine's supplemental answer was still not sufficient. Pursuant to the Court's order of October 20, 2003, Precision Pine again provided the defendant with a complete set of all the goal reports that it could acquire through due diligence.[7] Precision Pine also provided the defendant with a complete list of the status of timber harvesting as of August 24, 1995 for every contract on which it had the right to harvest timber at any time between June 24, 1991 to August 1, 2000. Precision Pine created this list in response to the Court's October 20, 2003 order because, as noted, such a list did not exist previously, as Precision Pine had properly responded to Interrogatory No. 6 by invoking RCFC 33(d). (As also noted above, this use of RCFC 33(d) had been approved by the Court and the burden was properly and should have remained on the defendant to create such a list if one was truly desirable.) Nevertheless, for the sole purpose of creating this list, an attorney for Precision Pine traveled from Washington, D.C. to Heber, Arizona and spent approximately three, eleven-hour days reviewing Precision Pine's contract files to determine the status of every contract Precision Pine held during this ten-year period.[8]

---

[7]As noted above, Precision Pine believed, and still believes, that defendant already possessed these goal reports.

[8]As the spreadsheet provided in support of the supplemental response demonstrates, some 81 contracts were ultimately listed. However, many additional contracts had to be reviewed at

The total amount of fees and expenses incurred in doing so was $9,709.17. It was exactly this type of burden, which resulted in irrelevant information that has nothing to do at all with Precision Pine's contentions in this case, that the Court previously found RCFC 33(d) properly attempts to shift onto the interrogating party.

**Interrogatory No. 27**

Interrogatory No. 27 asked about Precision Pine's "contentions" as to the prices for the products for which it seeks recovery of lost profits for every month from August 1993 to December 1998. In response to the Court's October 2, 2003 order, Precision Pine provided a narrative response to this interrogatory indicating the prices of products for which it sought lost profits. It did so for the extensive period requested. With regard to lumber products, Precision Pine provided defendant with a spreadsheet listing every lumber product and every month during the specified time period. In determining prices for Ponderosa Pine products during the suspension period, Precision Pine used averages of invoices from actual lumber sales. For the months outside the suspension period, Precision Pine used average prices by product from the company's monthly sales ledger. For certain products during certain months, Precision Pine did not, however, have any pricing information available, generally because Precision Pine did not sell that product in a particular month. Because Precision Pine had used actual prices for making its contentions regarding Ponderosa Pine products in its first supplemental answer to this interrogatory, Precision Pine did not list prices for those products and months where there was no actual information available. Precision Pine did this for the sake of consistency and accuracy.

---

least until it was determined that they fell outside of responsive time period in order to compile the list of 81 applicable contracts.

In its October 16, 2003 status report, however, the defendant complained that Precision Pine left these gaps. This was merely an issue of clarification and interpretation. Defendant appeared to want completeness for the sake of completeness without regard to consistency or the lack of hard data upon which to base an answer. Provided with this clarification and in response to the Court's October 20, 2003 order, Precision Pine filled the gaps in its spreadsheet, by having Precision Pine's president simply estimate the prices that might have been received. This approach satisfied the defendant.

**Interrogatory No. 28**

Interrogatory No. 28 asked about the methodology used in determining the prices provided in Interrogatory No. 27. Necessarily, the Court ordered Precision Pine to supplement its answer to Interrogatory No. 28 when it ordered Precision Pine to supplement Interrogatory No. 27. Likewise, Precision Pine further supplemented its response to this interrogatory to explain how it determined prices to fill in the gaps, discussed above under Interrogatory No. 27.

The defendant's October 16, 2003 status report complained, however, that Precision Pine did not explain the methodology as to 31 invoices (of more than 1,100 invoices used) that had been excluded when it determined price averages for Interrogatory No. 27. When Precision Pine provided its first supplemental response to this interrogatory, it did not think to explain this, because an explanation of information not used in determining lumber prices, did not seem necessarily responsive to an interrogatory inquiring about how Precision Pine determined prices. Upon receiving defendant's first status report, Precision Pine promptly sent defendant a list of the 31 invoices which were not used, all of which had previously been produced to defendant.

Upon further clarification provided during the October 20, 2003 status conference, and pursuant to the Court's order of the same date, Precision Pine provided the defendant with an explanation as to each of the 31 invoices.

**Interrogatory No. 34**

Interrogatory No. 34 asked for the reasons why the contracts at issue were not harvested after the suspensions were lifted. Precision Pine provided the defendant with a 38-page supplemental answer to this question, providing a detailed statement for each contract as to the general reasons why it was not harvested after the suspension was lifted. Reasonable minds can differ as to what qualifies as an adequate response to such an open-ended question. Precision Pine believed that by stating the events which economically, legally, physically, logically or otherwise affected harvesting, it had provided a complete response. Precision Pine also made the erroneous assumption that it stands to reason that plans to harvest a timber sale cannot be made overnight and that loggers cannot be switched between sales on a moment's notice.[9] These are facts about which the Forest Service is already keenly aware.

After receiving a clarification as to what exactly the defendant wanted answered, Precision Pine promptly provided the defendant with a second extensive supplemental answer to this interrogatory. Once again, Precision Pine believed it had clearly explained the post-suspension situation for each contract, however, reasonable minds differed again. During the

[9]Indeed, following the October 20, 2003 telephonic status conference the Court reviewed Precision Pine's supplemental response and seems not to have discerned any meaningful gaps. Nevertheless, defendant sought further supplementation, sometimes inquiring into why work was not commenced on a portion of a sale with only a few days left in the Normal Operating Season.

November 4, 2003 status conference, the parties clarified any remaining differences (which largely were due to defendant's wanting the plaintiff to use a specific word formulation to answer the interrogatory), with the court granting Precision Pine the option to supplement statements made during the status conference.[10]

**Interrogatory No. 41**

Interrogatory No. 41 asked Precision Pine to state all facts on which it bases its assertions about the products it would have been able to produce from the timber from the contracts at issue. The Court's October 2, 2003 order directed Precision Pine to enumerate the precise page numbers in its damages binder to which Precision Pine directed the defendant in its original response to this interrogatory. Precision Pine fully complied with this order in its first set of supplemental responses.

However, in its October 16, 2003 status report, the defendant essentially complained that Precision Pine did not provide it with information regarding how it determined the quantity of each particular product that it could have produced. During the October 20, 2003 status conference, the Court agreed with Precision Pine that Interrogatory No. 41 did not request this information and that the defendant was attempting to alter the question. Nevertheless, Precision Pine volunteered to answer the defendant's altered question. The Court memorialized this offer in its October 20, 2003 order and Precision Pine timely complied.

[10]Precision Pine has taken advantage of the option provided by the Court to memorialize the three responses, as identified in the Court's November 4, 2003 scheduling order.

**V. Precision Pine's Fees and Expenses Incurred In Opposing the Defendant's Motion.**

Pursuant to RCFC 37, Precision Pine is entitled to all, or a portion of, its costs in opposing the defendant's motion and submitting this Status Report. The defendant was not substantially justified in moving for sanctions against Precision Pine, because Precision Pine did not fail to comply with a court order as asserted by the defendant. A motion for sanctions is one to be taken very seriously, and Precision Pine was forced to incur great expense to oppose the motion. As set forth in the attached declaration of counsel, the total fees and costs incurred in opposing the defendant's Motion for Sanctions was $27,566.59. The total cost of attending the November 4, 2003 status conference and submitting this Status Report was $12,670.00, for a total of $40,236.59. Plaintiff urges the court to award it this sum.

Moreover, assuming that the Court treats defendant's motion as a motion to compel, the Court may deny all of the movant's expenses where, as here, the movant has failed to make a good faith effort to obtain discovery without court action. RCFC 37(a)(4)(A). Additionally, to the extent that it is not awarded all fees and expenses incurred in opposing the defendant's motion, where Precision Pine has clearly prevailed, as it did on a large portion of its use of RCFC 33(d), especially with respect to the documents in Arizona, the Court may award it reasonable expenses. RCFC 37(a)(4)(C). As set forth in the attached declaration, plaintiff's calculates that the portion of the fees and expenses associated with all of those matters involving Rule 33(a) on which Precision Pine prevailed was $8,515.45. Precision Pine is also entitled to recover a proportional amount of the fees and expenses incurred in attending the November 4, 2003 status conference and submitting this Status Report. As set forth in the attached declaration, that amount is $3,877.76. Conversely, the defendant is not entitled to the recovery

of its costs that represents that part of the RCFC 33(d) issues upon which Precision Pine prevailed.

Additionally, to the extent that it is not awarded all fees and expenses incurred in opposing defendant's Motion for Sanctions, Precision Pine is also entitled to recover expenses for the time and effort it put into responding to that portion of the defendant's Motion for Discovery Sanctions that accused Precision Pine of impeding the defendant's effort to review and copy documents. As discussed above, the defendant devoted three full pages of its motion to accusing Precision Pine of acting in bad faith throughout the document production process. This in turn forced Precision Pine to devote nearly a quarter of its 40-page response to defending itself against this serious, but wholly unfounded, accusation. Precision Pine believes it is entitled to recovery of the expense of responding to this accusation, particularly as defendant did not prevail on this issue. As set forth in the attached declaration of counsel, Precision Pine estimates that 15% of its total effort was devoted to this portion of its response, the fees and expenses for responding to defendant's motion totaled $27,566.59, 15% of that amount is $4,134.98. Precision Pine is also entitled to recovery of an equivalent portion of its fees and expenses incurred in submitting this Status Report, i.e., 15% of $12,670.00, or $1,900.50. Necessarily, where Precision Pine is entitled to recover for this portion of its expense, the defendant cannot recover the costs for that portion of its motion devoted to its accusation.

Additionally, if the Court treats defendant's motion as a motion to compel, Precision Pine believes that it is entitled to that portion of its fees and expenses incurred in arguing that the defendant's motion was a motion to compel. All or at least a portion of defendant's motion was

improperly characterized, and Precision Pine had to expend time and effort in rebutting this and arguing that the motion was a motion to compel. As set forth in the attached declaration, plaintiff calculates that the fees and expenses associated with this issue to be 5% of its total, i.e., $1,378.33. Precision Pine is also entitled to recover 5% of its total fees and expenses incurred in attending the November 4, 2003 status conference and submitting this Status Report, as set forth in the attached declaration, which is $633.50.

Finally, Precision Pine is entitled to recover the fees and expenses incurred when it was required to send an attorney to Heber, Arizona in order to review Precision Pine's 11 boxes of contract files in order to further supplement Interrogatory No. 9 by creating a list of essentially all timber contracts that Precision Pine had entered into over a ten-year period. As discussed above, this list is essentially a partial response to Interrogatory No. 6, to which the Court ruled Precision Pine had successfully answered by invoking RCFC 33(d) with respect to the contracts in storage in Heber. Therefore, the Court had already ruled that the burden of creating the list was properly on the defendant. Although ordering Precision Pine to make this list was well within the Court's power, Precision Pine believes it is entitled to reimbursement for shouldering what should have been the defendant's burden. Such a ruling would also be within the Court's power. As is made clear by the Advisory Committee Notes to Federal Rule 33(c) (the predecessor to 33(d)) which states:

> And even when the respondent successfully invokes the subdivision, the court is not deprived of its usual power, in appropriate cases, to require that the interrogating party reimburse the respondent for the expense of assembling his records and making them intelligible.

FRCP 33(c) Advisory Committee Notes to the 1970 Amendment. (Emphasis supplied). Precision Pine's situation is directly analogous to the one described in this Advisory Committee Note. Precision Pine, the respondent, after successfully invoking RCFC 33(d), was required to go to great expense to create this list of contracts, which is a step beyond "assembling . . . records and making them intelligible" as discussed in the Note. As set forth in the attached declaration, Precision Pine incurred fees and expenses of $9,709.17 in this endeavor. Even if the court does not agree that Precision Pine is entitled to this expense, Precision Pine believes that any expense levied against it should be reduced by the cost of creating this list because Precision Pine has saved the defendant the expense of doing so, an expense which the defendant should have borne. As set forth in the attached declaration of counsel, the fees and expense for doing so totals $9,709.17.

In sum, Precision Pine believes that it is entitled to $49,945.76, the fees and expenses incurred in responding to the defendant's motion, having to send an attorney to Arizona to supplement Precision's entirely appropriate answer to Interrogatory No. 9 and the cost of attending the status conference on November 4, and preparing this status report ($27,566.59 + $9,709.17 + $12,670.00) and correspondingly that the defendant is entitled to none of its costs. Alternatively, Precision Pine is entitled to $30,149.69, i.e., fees and expenses incurred in responding to the defendant's motion in an amount commensurate with its prevailing on issues raised in that motion (i.e., 50.89%), a like percentage of the cost of attending the status conference on November 4, 2003 and preparing this status report and the fees and expenses associated with having to send an attorney to Arizona to supplement Precision's entirely appropriate answer to Interrogatory No. 9 ($14,028.76 + $9,709.17 + $6,411.76) and

correspondingly that the defendant is entitled to no more than an amount commensurate with its prevailing on issues raised in that motion.

In the latter regard, since Precision Pine calculates that it prevailed with respect to 50.89% of the issues raised in defendant's motion, the defendant is entitled to no more than 49.11% of the amount ($17,418.46) which it seeks, i.e., $8,554.21.

Respectfully submitted,

s/ Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: November 7, 2003