# UNITED STATES
# COURT OF FEDERAL CLAIMS

PRECISION PINE AND TIMBER, )
)
Plaintiff, )
)
v. ) Docket No.: 98-720C
)
UNITED STATES, )
)
Defendant. )

Pages: 1 through 224

Place: Washington, D.C

Date: October 1, 2003

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PRECISION PINE AND TIMBER, Plaintiff, | ) |
| v. | ) Docket No.: 98-720C |
| UNITED STATES, Defendant. | ) |

Courtroom 4, Room 501
National Courts Building
717 Madison Street, N.W.
Washington, D.C. 20005

Wednesday
October 1, 2003

The parties met, pursuant to notice of the Court, at 3:05 p.m.

BEFORE: HONORABLE EDWARD J. DAMICH
Chief Judge

APPEARANCES:

For the Plaintiff:

ALAN I. SALTMAN, Esquire
RICHARD W. GOEKEN, Esquire
DAVID J. CRAIG, Esquire
Saltman & Stevens, P.C.
1801 K Street, N.W., Suite M-110
Washington, D.C. 20006
(202) 452-2140

For the Defendant:

DAVID ALLEN HARRINGTON, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

motion for sanctions or whether there should be a motion to compel, and I looked at the previous order, and I also looked at the transcript because, again, I think the order has to be seen in the context of what we did last time, and I think that it's very clear to me that with regard to the objection of being unduly burdensome or overly broad, et cetera, that that was dealt with already, and so it seems to me that clearly it is a motion for sanctions with regard to that objection having been raised by the Plaintiff.

With regard to some of the other points that were made in the Defendant's brief on the motion for sanctions, it seems to me that there is at least an argument that really it could be a motion to compel because I don't believe that the Court completely closed the door to any objections on the part of the Plaintiff. But I think that having gone through a motion to compel, that the Plaintiff in this case should at least have felt that they were in terrorem regarding making any objections after what had transpired at that particular hearing. So I hope that, as we go through this, I hope that the Court does not identify anything that it feels should not have been argued, given that particular context, on the part of the Plaintiff. So really it turns out to

be kind of a mixed motion for sanctions and also a motion to compel, it seems to me, if you want to be really strict about it.

The threshold question I have with regard to this issue is that I have been told repeatedly that the government, as a matter of policy, never files motions for sanctions. So, Mr. Harrington, if you could just satisfy my curiosity. Is that true, and, if so, why are you filing this?

MR. HARRINGTON: It is extraordinarily rare, Your Honor. It is something that requires explicit authorization, and it is something that I have never done, either as an attorney in private practice or as an attorney at the Justice Department, before this motion. So it is something that we do only in unusual and extreme circumstances.

Here, we felt that, given that there had already been a motion to compel that Your Honor granted and that we were not able to get answers to very significant interrogatories that we had posed to the Plaintiff, answers that we needed to get to defend this case, a case where they are seeking $13 million, that the only alternative we had was to file another motion and that, given that the Court had already granted a motion to compel, a motion pursuant to Rule

37(b) was the appropriate way to go.

THE COURT: Okay. With regard to, then, the overly broad, unduly burdensome issue, which, again, I think is proper material for a motion for sanctions, given what happened in the previous hearing, I noticed, though, that the Plaintiff has, or at least claims that it has, withdrawn its objections that were based on those grounds. Let me first verify that with the Plaintiff. Is Mr. Goeken on?

MR. GOEKEN: Yes, Your Honor. That's correct. Upon receiving Mr. Harrington's letter, both Mr. Saltman and I were out of the office. Upon our return, we conferred, agreed that while we still believed that the interrogatories were, shall we way, extremely cumbersome and overlapping, interwoven, very difficult to respond to, that we would, since we had responded to the best of our ability in response to those interrogatories, that we would withdraw those objections in an effort to try and compromise and avoid the very motion that we're now in front of Your Honor on, and that happened before the motion was filed.

THE COURT: Okay. But notice -- it happened before the motion was filed. I was going to say, because it doesn't really help too much if the

government felt that it had to prepare this motion and use the time and resources because you objected, making an objection that the Court had already ruled you should not have made. Yes, Mr. Goeken. Go ahead.

MR. GOEKEN: If I might respond to that, Your Honor. It's an interesting point, in that one day after we served our answers to the interrogatories, Defendant served a letter on us essentially threatening a motion for sanctions, particularly with respect to the use of Rule 33(d), which I'm sure we'll get to, before Defendant had seen a single document that we were to produce to them.

From my perspective, it seems to me that this has been something that has been on the agenda perhaps even before our responses were filed.

THE COURT: Okay. We will get to 33(d). The only thing that I'm concerned about now is the Plaintiff making objections that, again, I believe the Court had dealt with before. I'm happy to see that there has been this withdrawal because it shortens this particular proceeding, but, again, if that objection was, in fact, made, it would be natural for the Defendant to say, wait a minute, this was already taken care of, and prompt a motion for sanctions, and, again, I'm repeating myself, but sometimes it's

useful, cause them, of course, to expend time, energy, money, et cetera, in order to deal with that issue, whereas if that had not been said and withdrawn, that would have not been a cost to the government.

MR. GOEKEN: I can only reiterate, Your Honor, that upon receiving the Defendant's letter and upon returning to the office, we did respond promptly, within a week, I believe, of -- certainly within a week of receiving the letter and within a day or two of returning to the office, to the issue.

THE COURT: Okay. Let's go on further. That means, then -- I want to verify this -- that means, then, as far as I can tell, what I did is I looked at, and I was surprised, I guess, that you didn't do this, Mr. Harrington, in the sense that once you got the word from the Plaintiff that it had withdrawn its objections, to go through, interrogatory by interrogatory, and simply cross out the objection, which is what I did, and these are the numbers I came up with: 6 through 8, 15 through 17, 19, 23, 24, and 30. Is that correct, Mr. Goeken?

MR. GOEKEN: I would have to go back through myself to confirm that.

THE COURT: Okay. Mr. Harrington, do you have a list?

MR. HARRINGTON: Your Honor, I believe that my concern was the use of the word, "state," in their letter, that there are interrogatories that have what are objections, but they don't actually state "unduly burdensome" or "overly broad" in the answer, and I think it's at least questionable whether those interrogatories are something that's been withdrawn or not.

THE COURT: I agree with you. I have given you only the numbers of those interrogatories in which the Plaintiff has stated the exact phrase, "overly broad and unduly burdensome." That doesn't mean that an interrogatory is off the table for consideration today because of that fact. It means that particular objection, if you will, on your part to their objection is no longer necessary because there has been this withdrawal.

MR. HARRINGTON: Well, let me put it this way. I certainly agree with Your Honor that where those objections have been, in fact, withdrawn, that's not something we need to deal with today.

THE COURT: Good. That's all I want.

Okay. Let's look at a couple of others here that are in the same vein. I'm looking at actually 13, 14, and 38. Notice, 13, for example, there is an

## REPORTER'S CERTIFICATE

DOCKET NO.: 98-720C

CASE TITLE: Precision Pine v. United States

HEARING DATE: October 1, 2003

LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before the United States Court of Federal Claims.

Date: October 1, 2003

______________________________

Renee Miskell
Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018