**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-720C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S JULY 30, 2001 RULING UPON LIABILITY**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140
(202) 775-8127 – facsimile

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
David J. Craig
Suite M-110
Washington, D.C. 20006
(202) 452-2140
(202) 775-8127 – facsimile

Dated: December 15, 2003

# TABLE OF CONTENTS

**PAGE**


Table of Authorities ........................................................................................................ ii

Introduction........................................................................................................................1

Standard Of Review ...........................................................................................................2

I. The Federal Circuit's Decision In Scott Timber Is Not An "Intervening Change In The Controlling Law" Which Requires Reliance On An Express Warranty. .......................................................................................................................3

A. The Court Properly Applied the Law of Warranty. ................................................3

B. In Properly Ruling That Actual Reliance Was Not Required To Show A Breach Of Warranty, This Court Found The Situation To Be Directly Comparable To Defective Specifications Cases. ....................................................7

C. In any event, Scott Timber Does Not Hold That Reliance Is Necessary For A Finding Of A Breach Of Express Warranty..........................................................9

D. The Federal Circuit's Discussion Of The Warranty In Clause C6.25 Is Within The Context Of Section 318 And The Unique Facts of Scott Timber.........12

E. The Federal Circuit's Ruling With Respect To Misrepresentation Was Also Made Within The Context Of Section 318...................................................15

F. Even Assuming That The Federal Circuit's Ruling On Misrepresentation Was Made In The Context Of Its Discussion of Breach of Warranty And Does Not Depend On The Fact That The Sales Were Offered Pursuant To Section 318, That Ruling Is Still Consistent With This Court's Ruling.................16

II. Even Assuming That Reliance Is Required, Precision Pine Provided Unrebutted Facts At Summary Judgment Demonstrating That It Reasonably Relied On The Warranty Contained In Clause CT6.25.......................................................................................19

III. Even If The Court Where Inclined To Amend Its Opinion, This Could Be Readily Accomplished. ...........................................................................................................22

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

Bishop v. United States,
26 Cl. Ct. 281 (1992) .....2, 10, 15

Brock v. United States,
84 Ct. Cl. 453 (1937) .....11

Dale Constr. Co. v. United States,
168 Ct. Cl. 692 (1964) .....5, 7, 10, 11, 22

Dunbar and Sullivan Dredging Co. v. United States,
65 Ct. Cl. 567 (1937) .....10

Everett Plywood & Door Corp. v. United States,
419 F.2d 425 (1969).....6, 9, 10, 11

General Elec. Co. v. United States,
416 F.2d 1320 (Ct. Cl. 1969) .....2

George E. Warren Corp. v. United States,
341 F.3d 1348 (Fed. Cir. 2003).....7

Gregory Lumber Co., Inc. v. United States,
11 Cl. Ct. 489 (1986) .....10

Hercules, Inc. v. United States,
516 U.S. 417, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996).....4, 5, 7

Hollerbach v. United States,
233 U.S. 165 (1914).....6, 8, 9

Kolar, Inc. v. United States,
650 F.2d 256 (Ct. Cl. 1981) .....11

Newell Cos. v. Kenney Mfg. Co.,
864 F.2d 757 (Fed. Cir.1988).....7

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) ..... *passim*

Public Service Company of New Hampshire v. Public Service Company of New Hampshire,
879 F.2d 987 (1st Cir. 1989) .......... 19

Scott Timber Co. v. United States,
333 F.3d 1358 (Fed. Cir. 2003) .......... *passim*

Scott Timber Co. v. United States,
44 Fed. Cl. 170 (1999) .......... 13, 16, 17, 18

Stelco Holding v. United States,
45 Fed. Cl. 541 (2002) .......... 15

Synanon Church v. United States,
820 F.2d 421 (D.C. Cir. 1987) .......... 19

United States v. Spearin,
248 U.S. 132 (1918) .......... 8, 9

Walter Dawgie Ski Corp. v. United States,
30 Fed. Cl. 115 (1993) .......... 21

Womack v. United States,
389 F.2d 793 Ct. Cl.(1968) .......... 6

**STATUTES AND REGULATIONS**

Department of Interior and Related Agencies Appropriations Act of 1990,
Pub. L. No. 101, Tit. III, 103 Stat. 745 (1989) .......... 12

Endangered Species Act,
16 U.S.C. § 1531 *et seq*. .......... 12

Rule of the Court of Federal Claims

Former RCFC 56(e) .......... 21

Former RCFC 56(g) .......... 21

RCFC 59(a)(1) .......... 2

**MISCELLANEOUS**

Uniform Commercial Code
Section 2-313 .......... 7

**Introduction**

On November 14, 2003, i.e., more than two years after this Court issued its opinion on liability in this case, defendant once again sought reconsideration of the Court's ruling that Precision Pine did not have to show reliance on defendant's express warranty in clause CT6.25. Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 66 (2001). As demonstrated below, however, defendant has failed to demonstrate any intervening change in the law of express warranty which requires reconsideration of the Court's ruling. Indeed, the Court properly applied the law of warranty and, in any event, Precision Pine provided unrebutted facts in support of its motion for summary judgment demonstrating that it had in fact relied on the Forest Service's statements in clause CT6.25, that in the absence of new scientific information, no additional measures were necessary for the protection of species listed under the Endangered Species Act of 1973 or on the Region 3 sensitive plant and animal species list in order for Precision Pine to perform the contract as specified. Accordingly, as set forth in greater detail below, defendant's motion should be denied.[1]

---

[1]Even if defendant were to prevail in its motion, the "victory" would be without practical significance in this case because defendant's unreasonable suspension also breached the implied duty not to hinder Precision Pine's operations on eleven contracts, including all seven of the contracts on which defendant seeks reconsideration. Precision Pine, 50 Fed. Cl. at 73-74. Therefore, the instant motion appears to be calculated merely to delay and further drive-up the cost of the instant proceedings rather than to meaningfully resolve any issue. Further, defendant does not offer any explanation for its failure to move for reconsideration on the purported "intervening change in the law" in a timely fashion after the issuance of Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003) on June 26, 2003. In a footnote, defendant seems to suggest that it was awaiting the outcome of its petition for panel rehearing in Scott Timber before bringing the instant motion. Defendant's Motion for Partial Reconsideration ("Reconsid.") at 3 n.3. Defendant, however, neglects to inform this Court that the government's petition for rehearing did not involve the "issue" it now raises in its motion for reconsideration. Defendant has offered no reasoned explanation for its over 4-month delay in seeking reconsideration based on Scott Timber.

**Standard Of Review.**

In support of its motion, defendant cites Rule of the Court of Federal Claims ("RCFC") 59(a)(1) which allows for reconsideration "for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." In this Circuit, it is well settled that post-opinion motions are not favored. Bishop v. United States, 26 Cl. Ct. 281, 286 (1992) citing General Elec. Co. v. United States, 416 F.2d 1320, 1321 (Ct. Cl. 1969). As this Court stated the last time it denied defendant's motion for reconsideration of the Court's ruling on express warranty:

> The decision to grant a motion for reconsideration is found within the scope of [the Court's] sound discretion. . . . The movant must show either that: (a) an intervening change in the controlling law has occurred, (b) evidence not previously available has become available, or (c) that the motion is necessary to prevent manifest injustice. . . . A court will not permit a party to use a motion for reconsideration for the purposes of rearguing positions that have already been rejected.

Order dated September 25, 2001 at 2. The sole basis of defendant's present motion is its claim that the Federal Circuit's decision in Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003) is contrary to the Court's July 31, 2001 ruling that clause CT6.25 contains an express warranty. Reconsid. at 3. As demonstrated below, however, defendant misreads both Scott Timber and this Court's opinion on liability. In the absence of such an intervening change in the controlling law, given defendant's original briefing on liability and its initial motion for reconsideration on the issue of warranty, defendant's present motion represents a third bite at the apple. Such continuing attempts to reargue a position already rejected should not be sanctioned by this Court.

## I. The Federal Circuit's Decision In Scott Timber Is Not An "Intervening Change In The Controlling Law" Which Requires Reliance On An Express Warranty.

### A. The Court Properly Applied the Law of Warranty.

All of the contracts at issue in defendant's motion contained clause CT6.25, which provides that:

> CT6.25# - Protection of Habitat of Endangered Species. (7/86) Location of areas needing special measures for protection of plants or animals listed as threatened or endangered under the Endangered Species Act of 1973 and R-3 Sensitive Plant and Animal Species List are shown on Sale Area Map and identified on the ground. Measures needed to protect such areas have been included elsewhere in this contract or are as follows:
>
> If protection measures prove inadequate, if other such areas are discovered, or if new species are listed on the Endangered Species List, Forest Service may either cancel under CT8.2 or unilaterally modify this contract or provide additional protection regardless of when such facts become known. Discovery of such areas by either party shall be promptly reported to the other party.
>
> In the event of contract modification under this Subsection, Purchaser shall be reimbursed for any additional protection required by the modification, provided that any work or extra protection required shall be subject to prior approval by the Forest Service. Amount of reimbursement shall be determined by Forest Service using standard Forest Service rate redetermination methods in effect at time of agreed change and shall be in the form of a reduction in Current Contract Rates unless agreed otherwise in writing. However, in no event may Current Contract Rates be reduced below Base Rates.[2]

In its ruling on liability, this Court held that the natural reading of clause CT6.25 disclosed an express warranty that:

> [A]t the time the contracts were entered into, the Forest Service had identified special measures necessary to protect species under the ESA, that it identified

---

[2]The contents of clause CT6.25 contained in each of the contracts at issue in this motion are se forth in the Proposed Findings of Fact ("PFOF") submitted with Precision Pine's Motion for Summary Judgment on September 11, 2000 as follows: Mud: PFOF 105, Monument: PFOF 106, Saginaw-Kennedy: PFOF 107, Brann: PFOF 108, Manaco: PFOF 109, Brookbank: PFOF 110, and Kettle: PFOF 111.

> these measures based on analysis of reasonably available information, and that, based on the information reasonably available, the special measures disclosed were adequate for the protection of endangered species.

Id. at 66-67. Specifically, the Court concluded that the government breached its warranty that it had disclosed the measures necessary for the protection of the Mexican spotted owl when, in fact, the Forest Service simply did not know whether or not it had included all such necessary measures in the contracts due to the fact that it had failed to consult on the Land and Resource Management Plans (LRMPs) in Region 3, after it knew or should have known that it was required to do so. See id. at 69-70.

It was in this context that the defendant argued that Precision Pine had a duty to investigate whether the express warranty in clause CT6.25 had a reasonable basis. Id. at 69. This Court properly rejected defendant's contention that Precision Pine had a duty to investigate because:

> In order to recover, on a breach of an express warranty claim, the plaintiff is not required to show that it relied on the warranty. Hercules, Inc. v. United States, 516 U.S. 417, 425, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). ("When the government provides specifications directing how a contract is to be performed, the Government warrants that a contractor will be able to perform the contract satisfactorily if it follows the specifications.")

Id. at 65-66.

Incredibly, in seeking reconsideration based on "new" Federal Circuit precedent, defendant does not even mention, let alone discuss, this Court's reliance on the Supreme Court's opinion in Hercules nor has defendant identified any intervening Supreme Court precedent overturning Hercules. Moreover, the Federal Circuit in Scott Timber did not discuss Hercules in

the context of reliance, nor distinguish the Supreme Court's decision from the situation in Scott Timber on this point. In short, defendant has offered no argument or authority demonstrating that this Court's reliance on Hercules was misplaced.[3]

This omission is most probably due to the fact that, as the law of this Circuit has long recognized, as the Supreme Court did in Hercules, that through the creation of an express warranty the promissor intends the promisee to rely on the warranty and the promissee is thereby relieved of any obligation to investigate the reasonableness of the warranty. E.g., Dale Constr. Co. v. United States, 168, Ct. Cl. 692 (1964). Indeed, as cited by defendant the last time it sought to relitigate this Court's finding of an express warranty in clause CT6.25, the law of this Circuit with respect to express warranty was and remains as follows:

> In Dale Constr. Co. v. United States, 168 Ct. Cl. 692, 699 (1964), the Court of Claims defined warranty as "an assurance by one party to an agreement of the existence of a fact upon which the other party may rely; it is intended precisely to relieve the promisee of any duty to ascertain the facts for himself."

Defendant's Motion for Reconsideration and Clarification filed August 13, 2001 at p. 3.[4] This view of an express warranty remains good law in the Federal Circuit and was employed by the Court in the instant case. That is, here the Court determined that, in clause CT6.25, the Forest Service stated that it had identified the areas needing special protective measures for species

---

[3]The Federal Circuit in Scott Timber quotes the lower court's opinion quoting Hercules with respect to the issue of a "meeting of the minds" in the context of implied warranty. Scott Timber, 333 F.3d at 1370-1371. Defendant does not raise this issue of a "meeting of the minds" in its motion.

[4]The concluding sentence of this passage states: "Thus, a warranty amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." Dale Constr., 168 Ct. Cl. 692.

listed under the ESA, including the Mexican spotted owl. From this, the Court properly concluded:

> Further, a contractor would assume that the Forest Service had a reasonable basis for its disclosures and would not reasonably believe it was assuming the risk that the Government might not have a reasonable basis.

Precision Pine, 50 Fed. Cl. at 66 (emphasis supplied), citing Hollerbach v. United States, 233 U.S. 165 (1914); Everett Plywood & Door Corp. v. United States, 419 F.2d 425 (Ct. Cl. 1969); Womack v. United States, 389 F.2d 793 (Ct. Cl.1968).

In this regard, this Court also specifically held that in light of the statements in CT6.25 that "the plaintiff had a fundamental expectation that the Forest Service had a reasonable basis for disclosing the special protective measures that were contained in clause CT6.25." Precision Pine, 50 Fed. Cl. at 65, citing Womack v. United States, 389 F.2d 793 (Ct. Cl. 1968)(emphasis supplied). The Court also found that:

> Similarly, another fundamental expectation of a contractor at the time of the bargain, relevant to this case, is that when the Government discloses certain restrictions placed on the performance of the contract and discloses that further restrictions may be imposed in the future based on changed circumstances or more complete information, the Government had a reasonable basis for its disclosure.

Precision Pine, 50 Fed. Cl. at 65 (emphasis supplied).[5] These rulings demonstrate that this Court correctly ascertained that CT6.25 contained a warranty upon which Precision Pine could rely

[5]Significantly, the Uniform Sales Act, which was the predecessor to the Uniform Commercial Code ("U.C.C."), specifically required a showing of reliance before a finding of an express warranty could be made. However, Section 2-313 of the U.C.C. which addresses express warranties instead utilizes the "basis of the bargain" test. In essence, the Court held that where, as in clause CT6.25, the government has stated facts that are uniquely within the government's control or obligation to investigate are determined by the government and

without conducting any further investigation. See Precision Pine, 50 Fed. Cl. at 66, citing Hercules, 516 U.S. at 425. Scott Timber does not discuss or distinguish, and certainly does not overrule the long-standing statement of the law in this Circuit in Dale Constr.[6] Moreover, contrary to defendant's suggestion, Scott Timber does not (nor could it) undermine this Court's proper reliance on Hercules, and this Court's holding that a contractor is not obliged to independently ascertain the correctness of an express warranty, because it is entitled to rely on such a warranty, was and remains correct.

B. In Properly Ruling That Actual Reliance Was Not Required To Show A Breach Of Warranty, This Court Found The Situation To Be Directly Comparable To Defective Specifications Cases.

In addition to being a sale of goods in which an express warranty can arise, a timber sale contract is also much like a construction contract in which road building and timber harvesting operations are conducted pursuant to detailed contract specifications. In this regard, contract clause CT6.25 is set forth within the "Operations" portion of the timber sale contract, the clauses of which specify how work on the timber sale area is to be carried out and which this Court held is designed to advise a contractor as to the location of areas reasonably known to the Forest Service prior to award that need special measures for the protection of plant and animal species so that the contract may be performed. Precision Pine, 50 Fed. Cl. at 66.

---

conveyed to the contractor, the contractor has a right to rely on those statements of fact as true. See U.C.C. Section 2-313.

[6]It is black letter law that one panel of the Federal Circuit could not overrule the precedent of Dale Constr. as doing so would require the issuance of an *en banc* opinion from the Federal Circuit. See e.g., George E. Warren Corp. v. United States, 341 F.3d 1348, 1351-1352, (Fed. Cir. 2003), *citing* Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed.Cir.1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*.").

In rejecting defendant's arguments that clause CT6.25 did not contain an express warranty, this Court also relied on the seminal government contracts case dealing with defective specifications, United States v. Spearin, 248 U.S. 132 (1918), wherein the Supreme Court held that:

> [T]he insertion of articles prescribing the character, dimensions and location of the sewer imported a warranty that if the specifications were complied with, the sewer would be adequate. This implied warranty is not overcome by the general clauses requiring the contractor to examine the site, check up the plans, and to assume responsibility for the work until completion and acceptance. The obligation to examine the site did not impose upon him the duty of making a diligent inquiry into the history of the locality with a view to determining at his peril whether the sewer specifications prescribed by the government would prove adequate. The duty to check plans did not impose the obligation to pass upon their adequacy to accomplish the purpose in view. And the provision concerning contractor's responsibility cannot be construed as abridging rights arising under specific contract provisions.

Id. at 137.[7] Similarly, in its liability ruling, this Court held that the Forest Service's insertion of clause CT6.25 warranted that the Forest Service had identified special measures necessary to

---

[7] In this regard the Supreme Court has also held:

> [T]he specifications assured [the contractor] of the character of the material, -- a matter concerning which the government might be presumed to speak with knowledge and authority. We think this positive statement of the specifications must be taken as true and binding upon the government, and that upon it, rather than upon the claimant, must fall the loss resulting from such representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the government as a basis of the contract left in no doubt. If the government wished to leave the matter open to the independent investigation of the claimants, it might easily have omitted the specification . . . . In its positive assertion of the nature of this much of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity.

Hollerbach v. United States, 233 U.S. 165, 172 (1914) (emphasis supplied). This Court also relied upon this binding Supreme Court precedent in its ruling on liability (Precision Pine, 50 Fed. Cl. at 66), yet defendant has not seen fit to discuss it or explain how the Federal Circuit

protect species listed under the ESA based on a reasonable analysis of available information and that the measures disclosed were adequate for the protection of the species so that the contracts could proceed. Precision Pine, 50 Fed. Cl. at 66-67. Accordingly, applying Spearin and several other defective specifications cases, this Court found that Precision Pine had a right to rely on this warranty without further investigation. Id. at 67. Yet, despite this Court's reliance on Spearin and its progeny, the defendant in its present motion for reconsideration fails to even discuss Spearin (or Hollerbach) or how the Federal Circuit's decision in Scott Timber could somehow relieve this Court of its obligation to follow those Supreme Court precedents. In light of the foregoing, this Court properly considered and applied the law of defective specifications in determining that clause CT6.25 contains a warranty upon which Precision Pine could rely without further investigation. Accordingly, defendant's argument that Precision Pine must show that it relied on the warranty contained in CT6.25 is incorrect as a matter of law and must be rejected.

C. In any event, Scott Timber Does Not Hold That Reliance Is Necessary For A Finding Of A Breach Of Express Warranty.

Defendant claims, without citation, that Scott Timber found that "justifiable reliance is required to recover upon a breach of warranty claim." Reconsid. at 4. This is not correct. Rather, the Federal Circuit's discussion of reliance being required was only in the context of misrepresentation, not express warranty: "Furthermore, 'liability stemming from a misrepresentation in contract documents will be found only where the misrepresentation is one on which the contractor justifiably relies.'" Scott Timber at 1370, quoting Everett Plywood and

---

ruling in Scott Timber, which does not even discuss Hollerbach, relieves the Court of its obligation to follow this binding Supreme Court precedent.

Door Corp. v. United States, 419 F.2d 425, 431 (Ct. Cl. 1969)(emphasis supplied). In short, the passage relied on by defendant does not impose any reliance requirement *vis-à-vis* express warranties.[8]

Moreover, not even in the context of a misrepresentation claim (let alone on a claim of express warranty) does Scott Timber purport to establish a new legal standard requiring the plaintiff to show reliance in order to prevail. Indeed, the single case upon which Scott Timber relies for this proposition, Everett Plywood, was decided in 1969 and thus should have been raised in defendant's initial briefing on liability or its earlier motion for reconsideration.[9] In short, there is nothing new in Scott Timber and it, therefore, cannot be an "intervening change in the controlling law" as required for a motion for reconsideration.

In Everett Plywood, upon which Scott Timber exclusively relies, the court twice describes a warranty as an assurance upon which a contracting party can rely without further investigation. Id. at 431 (citing Dale Constr. Co.), and 433 (citing Dunbar and Sullivan Dredging

---

[8]The legal doctrines of express warranty and misrepresentation are distinct, and in the law of misrepresentation, it is clear that reasonable reliance must be shown. See e.g., Gregory Lumber Co., Inc. v. United States, 11 Cl. Ct. 489, 503 (1986)(One of the central elements of the doctrine of misrepresentation is that the injured party's reliance on the statement must have been innocent or reasonable from the perspective of what the reasonable contractor would have done when charged with knowledge common within the industry). Indeed, the discussion of misrepresentation in Scott Timber relied upon by defendant is categorized under a headnote for "fraud", separately from the case headnotes dealing with the court's discussion of warranty law.

[9]Of course, a motion for reconsideration is not to be used as a means to give an unhappy litigant an additional chance to sway the court. Bishop v. United States, 26 Ct. Cl. 281, 286 (1992).

Co. v. United States, 65 Ct. Cl. 567 (1937)). This is wholly in keeping with this Court's ruling.[10] The court in Everett Plywood also found that material representation regarding the volume of timber on the sale which was set forth in the specifications was one "upon which the contractor justifiably relie[d]," see id. at 431, in the very next paragraph, the court quoted approvingly the portion of Dale Constr. which indicated that a warranty is an assurance by one party "upon which the other party may rely." Dale Constr. 168 Ct. Cl at 699 (emphasis added). The latter citation notwithstanding, it appears the reference to the fact that the contractor had relied on the representation may have injected an ambiguity as to whether such reliance was being posed as a requirement. This ambiguity may be attributable to the fact that, in Everett Plywood, the court felt obliged to distinguish a closely analogous volume underrun case, Brock v. United States, 84 Ct. Cl. 453 (1937), in which it was clear that plaintiff could not have justifiably relied on the government's estimate. See id. at 432-33.

However, regardless of the existence of any ambiguity in Everett Plywood, the tests for ascertaining the existence of a warranty in Dale Constr. (and Kolar, Inc.) remain good law and, of course, the Supreme Court's holdings in this area of the law, which this Court properly applied in its ruling on liability, remain valid and binding.

---

[10]Other courts have formulated the test for express warranty somewhat differently still. In Kolar, Inc. v. United States, 650 F.2d 256, 258 (Ct. Cl. 1981) the elements for breach of warranty were defined as: (1) the Government assured plaintiff of the existence of a fact; (2) the Government intended the plaintiff to be relieved of the duty to ascertain the existence of the fact for itself; and (3) the Government's assurance of that fact proved untrue. Nevertheless, even under this formulation of the test requiring a finding of government intent, this Court's ruling remains correct, because as this Court noted, defendant had conceded that "[T]he plain language of the clause [CT6.25] indicates that the clause was intended to place the purchaser on notice of any current restriction on operations on the timber sale area . . . ." Precision Pine, 50 Fed. Cir. at 67 n.36, quoting Defendant's Opposition to Precision Pine's Motion for Summary Judgment at 4.

D. The Federal Circuit's Discussion Of The Warranty In Clause C6.25 Is Within The Context Of Section 318 And The Unique Facts of Scott Timber.

It is plain on the face of the Federal Circuit's decision in Scott Timber that its ruling in that instance that clause C6.25 did not contain a warranty was based on the fact that all of the contracts at issue in Scott Timber were offered and awarded pursuant to Section 318 of the Department of Interior and Related Agencies Appropriations Act of 1990, Pub. L. No. 101-121, Tit. III, 103 Stat. 745 (1989) ("Section 318"). Section 318 directed the Forest Service and the Bureau of Land Management to offer a certain volume of timber from federal lands in the Pacific Northwest. In so directing the agencies, Congress also relieved these agencies of their environmental obligations under the National Environmental Policy Act ("NEPA") and the National Forest Management Act ("NFMA") with respect to the Section 318 contracts, i.e., as the Federal Circuit found, the Forest Service was relieved of its obligation under these statutes to protect sensitive species. Scott Timber, 333 F.3d at 1370. However, Section 318 expressly retained the agency's obligations to comply with the Endangered Species Act, 16 U.S.C. § 1531 *et seq*. ("ESA") i.e., to protect species listed under the ESA. Id.

In Scott Timber, the species at issue was the marbled murrelet, a sea bird, which at the time that the Section 318 sales at issue in that case were offered and awarded had not yet been listed as threatened or endangered under the ESA. Therefore, at the time the sales were offered and awarded, the species was only subject to management under the Forest Service's sensitive species program, which stems from the agency's obligations under NEPA and NFMA. See Scott Timber, 333 F.3d at 1370. In light of these unique facts, the Federal Circuit determined that due to the provisions of Section 318 the Forest Service had no pre-award legal obligations to provide

special protective with respect to the "sensitive" marbled murrelet. ("Because of Section 318, no measures were necessary to protect the murrelet until it became listed as threatened or endangered under the ESA." Id. at 1371). Accordingly, the Federal Circuit ruled that the Forest Service's statement in C6.25 that no special measures were necessary for the protection of the sensitive murrelet was in that context "absolutely true," i.e., that at the time of award no protective measures were legally required because Section 318 had relieved the timber agencies of all obligations to manage for sensitive species pursuant to NEPA and NFMA.[11] Id. at 1370.

In contrast, in the instant case the Forest Service was at all times legally obligated to comply with its duties under the ESA (i.e., duties which it indicated in CT6.25 that it had complied with, when in fact it had not done so). Accordingly, this Court properly found that the Forest Service continued to offer and award sales well after it knew or should have known that it was required to reinitiate consultation on its LRMPs. Precision Pine, at 69-70. By continuing to offer and award the sales, despite the fact that it had not engaged in the consultation required by the ESA, the Forest Service simply had no idea whether or not it had included all protective measures necessary for the Mexican spotted owl in clause CT6.25 and ultimately had to suspend the sales while it went back and engaged in the consultations that it should have already performed. Therefore, due to the crucial factual difference between Scott Timber and the instant case, defendant's argument that its statements in CT6.25 of Precision Pine's contracts, like similar ones contained in Scott Timber were "absolutely true" (Reconsid. at 6) is absurd.

---

[11]The Federal Circuit also went on to adopt the reasoning of the trial court in Scott II, holding that due to Section 318 there could have been no "meeting of the minds" with respect to an implied warranty. Scott Timber at 1370-71. As noted above, defendant has not made any contention with respect to this aspect of Scott Timber in its motion for reconsideration.

Moreover, this very argument has already been considered and rejected by this Court:

> Specifically, because the LRMPs constituted "agency action," the Forest Service could not accurately represent that "measures needed to protect [threatened or endangered species under the ESA in] such areas have been included" since it had not consulted with FWS as it was required to do by statute.

Precision Pine, 50 Fed. Cl. at 65.[12] Unlike the factual situation in Scott Timber where Section 318 had relieved the Forest Service of all of its pre-award duties under NEPA and NFMA toward the sensitive murrelet, here, defendant was subject to no similar dispensation. Rather, as this Court found, defendant failed to comply with its pre-award statutory duties and, therefore, simply had no idea whether or not the statements that it made in CT6.25 were true. Id. at 69-70. The Forest Service's failure to comply with its pre-award obligations and, therefore, to know the true facts, resulted in the suspension of the seven sales at issue in defendant's motion.

Defendant's contention, in a footnote, that none of the sales were amended as a result of the Forest Service's belated and protracted consultation is of no moment. See Reconsid. at 6 n.6. As this Court has already held in denying defendant's previous motion for reconsideration:

> The Defendant's argument that there can be no violation of a warranty in CT6.25 because no additional protective measures were imposed after consultations were finished was not argued in its dispositive motions. In any event, the fact that no

---

[12] In this same regard the Court also stated:

> Specifically, the Forest Service breached an express warranty that clause CT6.25 of these contracts disclosed the protective measures which were necessary to comply with the ESA by including misrepresentations in the warranty and suspending those contracts in order to correct the misrepresentation contained in the warranty. The misrepresentation contained in the warranty was that the Forest Service had no reasonable basis to know whether its warranty was true, due to its unreasonable failure to submit its Region 3 LRMPs for consultation with the FWS. . . . .

Precision Pine, 50 Fed. Cl. at 69-70.

> additional protective measures were imposed after the completion of consultations was completely fortuitous in light of the fact that the Forest Service had no basis for its warrant that "measures needed to protect such area" were disclosed in CT6.25.

Order dated September 25, 2001 at 4. A motion for reconsideration is not intended to give an unhappy litigant an additional chance to sway the court (Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)) nor is it to be used to relitigate positions that have already been rejected. See Stelco Holding v. United States, 45 Fed. Cl. 541, 542 (2002). Defendant's weak argument on this point should be rejected again.[13]

E. The Federal Circuit's Ruling With Respect To Misrepresentation Was Also Made Within The Context Of Section 318.

Moreover, it is clear that the Federal Circuit's discussion of misrepresentation in Scott Timber was also within the unique context of the Section 318 contracts there in issue and, therefore, has no application to the instant case. The Federal Circuit in discussing misrepresentation found that:

> In light of that clear language [i.e., "regardless of when such facts become known"] Scott could not reasonably rely on the assumption that no further protective measures would ever be needed in the areas covered by the § 318 contracts.
>
> Because of § 318, no measures were necessary to protect the murrelet until it became listed as threatened or endangered under the ESA. That listing occurred after the award of the § 318 contracts.

[13]Even if the Court were inclined to consider the factual evidence which defendant improperly seeks to introduce for the first time in Ex. B to its motion (which has been available to defendant since 1996), Ex. B lacks any probative value because the excerpt proffered relates to the implementation of the forest plans as amended and does not discuss the consultation on the existing forest plans which governed the offer and award of the sales at issue in this case and which were the subject of a separate consultation. Nevertheless, defendant's repeated attempts to introduce "new" evidence and reargue lost points lays bare defendant's ongoing attempt to try to relitigate this court's ruling on liability at every turn.

Scott Timber, 333 F.3d at 1371. Scott Timber's treatment of the phrase "regardless of when such facts become known" is clearly within the context of Section 318. That is, under the unique facts of Scott Timber and due to Section 318, the court found that Scott could not assume that the Forest Service had taken any action with respect to the murrelet prior to award and, further, that the language cited from C6.25 left open the possibility that future protective measures based on post-award events (including the listing of the murrelet under the ESA).[14] Nothing in this passage suggests that the Federal Circuit's treatment of the misrepresentation should be viewed as applying outside of the context of Section 318.

In the instant case, however, this Court held that the Forest Service offered and awarded all seven of the timber sales at issue in defendant's motion after it knew or should have known that it had not complied with its obligations under the ESA. Accordingly, because nothing relieved the Forest Service of its duty to comply with the ESA prior to award, Scott Timber's discussion of misrepresentation in the context of Section 318 (which had relieved the Forest Service of its pre-award duties for sensitive species) has no application to this Court's ruling that the Forest Service breached its express warranty to Precision Pine.

F. Even Assuming That The Federal Circuit's Ruling On Misrepresentation Was Made In The Context Of Its Discussion of Breach of Warranty And Does Not Depend On The Fact That The Sales Were Offered Pursuant To Section 318, That Ruling Is Still Consistent With This Court's Ruling.

Defendant also argues that, in Scott Timber Co. v. United States, 44 Fed. Cl. 170 (1999) ("Scott II"), the lower court's "holding rested on an analysis of the language of clause CT6.25

[14]Even then, this did not provide the Forest Service with authority to suspend Scott's contracts. Id. at 1367.

apart from any legislation." Reconsid. at 5, quoting Precision Pine, 50 Fed. Cl. at 67. The reasoning of the lower court in Scott II was as follows:

> The language [contained in clause C6.25] "regardless of when such facts become known" casts serious doubts upon plaintiff's contention that the Forest Service warranted that its representations in the contract documents concerning protective measures were based on all available information. Contrary to plaintiff's position, this provision of clause C6.25 alludes to continued information gathering by the Forest Service and possible suspension of the sales, if necessary. In light of this provision, Scott Timber could not have reasonably expected breach damages for the subsequent suspension of its contracts.

Scott II, 44 Fed. Cl. at 181. This ruling of Scott II is unclear as to whether it means that only future information obtained after contract award may be used as a basis to cancel or modify the contract ("clause C6.25 alludes to continued information gathering") or that even information reasonably available to the Forest Service prior to award may be properly ignored by the agency in its preparation of the sale and contract documents and subsequently invoked as a basis for cancellation or modification of the contract (representations in the contract "may not be based on all available information").[15]

In any event, this Court, without directly addressing this aspect of the court's ruling in Scott II, correctly found that CT6.25 contained an express warranty that additional measures would only be imposed due to causes that were not known or could not reasonably have been discovered at the time the contract was entered into, but that the clause did not generally warrant against the imposition of additional protective measures based on new information obtained subsequent to the award of the contract. Precision Pine, 50 Fed. Cl. at 66-67. This Court concluded that the language "regardless of when such facts become known" refers to this

[15] At no point does the Federal Circuit quote or otherwise expressly endorse the language of Scott II on this latter point.

additional information. Id. The decision of the Federal Circuit is not contrary to this Court's analysis:

> In light of that clear language [i.e., "regardless of when such facts become known"] Scott could not reasonably rely on the assumption that no further protective measures would ever be needed in the areas covered by the § 318 contracts.
>
> Because of § 318, no measures were necessary to protect the murrelet until it became listed as threatened or endangered under the ESA. That listing occurred after the award of the § 318 contracts. Clause C6.25 expressly anticipates such an event. The court, therefore, affirms the decision of the Court of Federal Claims that clause C6.25 did not create a warranty that the Forest Service breached by not providing protective measures for the murrelet in the § 318 contracts.

Scott Timber, 333 F.3d at 1371 (emphasis supplied). This passage deals squarely with the possibility that the Forest Service might have to impose additional restrictions based on events that occurred post-award. This is understandable as that was the factual occurrence at issue in Scott Timber. Nothing in this passage suggests, however, that the Forest Service was free to ignore information reasonably in its possession at the time of award or fail to comply with its pre-award environmental obligations. Rather, the Federal Circuit only held that: (1) Section 318 relieved the Forest Service of any obligation to plan for the sensitive murrelet under NEPA and NFMA; it did not relieve the Forest Service of its ESA obligations; (2) the listing of the murrelet under the ESA occurred post-award; and, (3) therefore, Scott could not have relied on the language of C6.25 at the time of award to as applying to the post-award listing of the murrelet under the ESA. Indeed, due to these holdings, the Federal Circuit simply had no reason to go on to sort-out the court's alternative ruling in Scott II. Even had it done so, in light of the unique facts before it in which Section 318 relieved the Forest Service of its obligations under NEPA and NFMA to protect the murrelet pre-award, the Court's decision on this point would have been

mere dicta.[16] Scott Timber, 333 F.3d at 1371 ("Because of § 318, no measures were necessary to protect the murrelet until it became listed as threatened or endangered under the ESA."). Accordingly, this Court's ruling that the warranty in clause CT6.25 applies to information known or knowable to the Forest Service prior to award, but not to new information discovered after award, is consistent with the Federal Circuit's decision in Scott Timber.[17]

**II. Even Assuming That Reliance Is Required, Precision Pine Provided Unrebutted Facts At Summary Judgment Demonstrating That It Reasonably Relied On The Warranty Contained In Clause CT6.25.**

Even assuming that this Court were to conclude that due to the Federal Circuit's decision in Scott Timber, reasonable reliance has, for the first time, been made an element of a breach of warranty claim in this Circuit, it is clear that Precision Pine provided unrebutted facts of record demonstrating that it had relied on the Forest Service's statements and assurances contained in clause CT6.25. That is, in the sworn declaration of its President, Lorin D. Porter, dated September 6, 2000 and submitted with Precision Pine's Motion For Summary Judgment, Mr. Porter testified that:

* * *

14. It is my understanding that prior to offering a timber sale for competitive bidding the Forest Service conducts a number of analyses, including a

---

[16]Similarly, where an alternative ruling of a trial court is not expressly affirmed on appeal, the alternative ruling is not considered to have been affirmed. See, e.g., Public Service Company of New Hampshire v. Public Service Company of New Hampshire, 879 F.2d 987, 990 (1st Cir. 1989)("if a trial court decides a matter on alternative grounds, and an appellate court affirms only on one of those grounds, the preclusive effect is limited to the ground of affirmance"), citing Synanon Church v. United States, 820 F.2d 421, 425 (D.C. Cir. 1987).

[17]Moreover, the Federal Circuit in Scott Timber was aware of this Court's ruling and cited it with approval. See, e.g., Scott Timber, 333 F.3d at 1369. At no point did the Federal Circuit suggest that its opinion overruled this Court's decision on the issue of reliance.

thorough evaluation of the proposed sale to ensure, among other things, operations permitted under the contract that will not have any adverse effects on threatened, endangered or sensitive animal species or their habitat.

15. In my experience, whenever the Forest Service has information which indicates that a threatened, endangered, or sensitive animal and/or its habitat is present on a proposed sale area and that special measures are necessary for the protection of the species or its habitat, the Forest Service so indicates in the prospectus for the particular sale and notes the protective measures that are required on the sale area map and in standard contract clause C(T)6.25.

16. The requirement for special measures to protect threatened, endangered, or sensitive plants or animals or their habitat affects our analysis of the value of the sale and the amount that we are willing to bid for a particular timber sale contract. This is because such protective measures usually entail operating restrictions which often preclude operations at certain times of the year and/or make operating the sale more expensive than would be the case without such protective measures. Accordingly, it is Precision Pine's practice to review each prospectus, sale area map, and sample contract including clause C(T)6.25 carefully prior to calculating what we are willing to bid for Forest Service timber sale contracts.

17. In the contract documents for all of the sales that are the subject of this suit, the Forest Service represented what if any protective measures required for the protection of threatened, endangered, or sensitive species or their habitat. We considered this information in determining the value of each of the sales to Precision Pine.

18. In this regard, we relied on the Forest Service's representations with respect to the protection measures required when calculating our price for each of the sales. We believed that the Forest Service's personnel had considered all relevant information and performed all of the analyses required in stating in C(T)6.25 of each contract what special measures for the protection of threatened and endangered were needed or that no such special measures were needed.

* * *

Appendix to Precision Pine's Motion For Summary Judgment at Pl. App. 610-611. (Excerpts from this declaration are attached hereto as Exhibit 1). Although the declaration of Mr. Porter is couched in the language of misrepresentation, for which reliance is an element, this declaration

nevertheless presents unrebutted facts demonstrating that Precision Pine did actually consider and rely on the statements made by the Forest Service in clause CT6.25 of each of the contracts that are at issue in defendant's motion. Though it might have done so, the Forest Service did not seek any discovery on this issue prior to the filing of cross-motions for summary judgment, nor did it indicate that it required discovery on Mr. Porter's declaration once the motion for summary judgment had been filed. See former RCFC 56(g). There being no facts of record in rebuttal to the facts set forth in Mr. Porter's declaration, the "issue" of reliance is properly decided in favor of Precision Pine. See former RCFC 56(e).

For these same reasons, defendant's unsupported and wholly undeveloped assertion that this Court should grant its motion for reconsideration "upon the ground that a genuine issue of material fact as to whether Precision Pine reasonably relied upon clause CT6.25 of the respective contracts precludes summary judgment" should be also rejected. Indeed, this argument again betrays a fundamental misapprehension of the law of warranty. For example, it has been held that "Therefore, despite the parole evidence proffered by the plaintiff of warranty, an express warranty exists only by reference to sources within the terms of the contract or contracts at issue." Walter Dawgie Ski Corp. v. United States, 30 Fed. Cl. 115, 126 (1993).[18] Defendant has provided no argument or evidence suggesting what aspects of the contracts at issue give rise to a factual dispute precluding summary judgment regarding the warranty contained in clause

[18]This holding further demonstrates that actual reliance, i.e., a fact existing outside of the contract, is not properly an element of an express warranty claim.

CT6.25. Accordingly, on this basis alone, defendant's "alternative ground" for its motion must be rejected.[19]

**III. Even If The Court Where Inclined To Amend Its Opinion, This Could Be Readily Accomplished.**

In light of the foregoing, it should be clear that the Court's rulings were correct and proper under binding Supreme Court precedent and the law of this Circuit, however, if, out of an abundance of caution, this Court were inclined to exercise its discretion and amend its ruling, it might simply do so by deleting the sentence "In order to recover on a breach of express warranty claim, the Plaintiff is not required to show that it relied on the warranty" (Precision Pine, 50 Fed. Cl. at 66) and in its place substitute:

> An express warranty has been defined as "an assurance by one party to an agreement of the existence of a fact upon which the other party may rely; it is intended precisely to relieve the promisee of any duty to ascertain the facts for himself. Thus, a warranty amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." Dale Constr. Co. v. United States, 168 Ct. Cl. 692, 699 (1964). In this case, Precision Pine was entitled to rely on the Forest Service's warranty in CT6.25 without further investigation.

In this way the Court can resolve defendant's motion without further ado.[20]

---

[19]Like many of the arguments presented by defendant, this contention seems to be an attempt to sneak the proverbial "nose of the camel" into the tent. To the extent that there is an actual "camel" in the form of additional facts, legal authority or other support yet to be revealed behind any of the several undeveloped and/or unsupported arguments advanced by defendant, Precision Pine respectfully requests that the Court refuse to address them in the context of what purports to be a motion for reconsideration based on single "new" Federal Circuit case. Alternatively, Precision Pine respectfully requests that it be given the opportunity to file a sur-reply with respect to any such facts or authority proffered by defendant for the first time in its reply brief.

Respectfully submitted,

s/ Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140
(202) 775-8217 – facsimile

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
David J. Craig
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Washington, D.C. 20006
(202) 452-2140
(202) 775-8217 – facsimile

Dated: December 15, 2003

[20]Regardless of the outcome of this motion, all seven of the contracts at issue, will still have been breached on the grounds of this Court's ruling that the Forest Service had breached its implied duty not to hinder Precision Pine's operations.

**F:\PRECISION\MUECKE\reconsideration\Response to Reconsideration-final.doc**