IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PRECISION PINE & TIMBER, INC.<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant. | No. 98-720C<br>(Judge George Miller) |

Declaration of David P. Harris

I, David P. Harris, declare as follows:

1. I am a Supervisory Forester in the Region 3, Regional Office of the U.S. Department of Agriculture Forest Service ("Forest Service") located in Albuquerque, New Mexico. Region 3 covers the states of Arizona and New Mexico.

2. As a Supervisory Forester, I am responsible for regional oversight of all sale preparation and sale administration aspects of timber sale contracts in Region 3. I am responsible for the training and certification of timber sale administrators and Contracting Officers in Region 3. In this role I am responsible for providing the necessary training opportunities and testing required for meeting the national standards established for certified sale administrators and Contracting Officers. I have held my current position since December 1, 2002.

3. Previously, I served as a Timber Specialist and Contracting Officer on the Kaibab National Forest in Williams, Arizona. I served in that position from January 1994 to November 2002. As timber specialist and Contracting Officer for the Kaibab National Forest, my responsibilities included oversight of the Forest timber management program, including but not limited to, timber sale preparation, appraisal, contract formulation, and contract administration.

4. While on the Kaibab National Forest, I served as Contracting Officer for two of the contracts at issue in Precision Pine & Timber, Inc. v. United States, No. 98-720C (Fed. Cl.): the Brann Timber Sale Contract No. 006577; and the Saginaw-Kennedy Timber Sale, Contract No. 006585.

5. Precision Pine & Timber, Inc. ("Precision Pine") was awarded the Brann Timber Sale contract on September 29, 1994, and the Saginaw-Kennedy Timber Sale contract on September 29, 1994.

6. I have thoroughly reviewed all correspondence for both of these timber sales, including all correspondence received from Precision Pine, all correspondence written by me to Precision Pine, and all correspondence written by me to other Forest Service personnel. There is nothing within either contract file which indicates that Precision Pine notified the Forest Service, either prior to, or at the time of contract award, of concerns or

information regarding special circumstances affecting their operations; nor was I, as Contracting Officer, aware of any special circumstances unique to Precision Pine's operations.

7. There is nothing within the contract files which indicates Precision Pine advised the Forest Service, either prior to or at the time of Contract award, of any unique harms or effects that would result from the suspension or delay of harvesting on either the Brann or Saginaw-Kennedy timber sale contract.

8. Nothing in those two contract files indicates that Precision Pine advised the Forest Service, either prior to, or at time of contract award, that a suspension of either contract would result in: increased hauling expenses; increased logging expenses; increased sawmill costs; increased interest payments on corporate debt, or a loss of profits.

9. Nothing in the contract files indicates that Precision Pine advised the Forest Service, either prior to or at the time of contract award, that it planned to utilize revenues from either of these contracts to pay down its company loans.

10. In my current position as Supervisory Forester in charge of sale preparation and timber sale contract administration for Region 3, I have reviewed all of the contract files for each of the following timber sales at issue in

Precision Pine & Timber, Inc. v. United States, No. 98-720C (Fed. Cl.): Hutch-Boondock Multi-Product Timber Sale Contract No. 005465, awarded to Precision Pine on June 29, 1994; U-Bar Timber Sale Contract No. 005051, awarded to Precision Pine on October 5, 1992; Monument Multi-Product Timber sale Contract No. 005564, awarded to Precision Pine on September 28, 1994; Mud Multi-Product Timber Sale Contract No. 005556, awarded to Precision Pine on September 14, 1994; St. Joe Timber Sale Contract No. 001582, acquired by Precision Pine on October 16, 1992 via Third Party Agreement with Grand Canyon Forest Industries; Kettle Multi-Product Timber Sale Contract No. 001830, awarded to Precision Pine on July 20, 1995; Brookbank Multi-Product Timber Sale Contract No. 001822, awarded to Precision Pine on April 13, 1995; Hay Timber Sale Contract No. 001152,acquired by Precision Pine via Third Party Agreement on January 17, 1990; O.D. Ridge Timber Sale Contract No. 001574, awarded to Precision Pine on August 14, 1992; Jersey Horse Timber Sale Contract No. 001756, awarded to Precision Pine on December 13, 1993; Salt Timber Sale Contract No. 005937, awarded to Precision Pine on February 28, 1994 and Manaco Timber Sale Contract No. 004625, awarded to Precision Pine on January 17, 1995.

11. I have specifically reviewed all correspondence sent by Precision Pine to the various Contracting Officers, sent by the

Contracting Officers to Precision Pine, and correspondence between Contracting Officers and other Forest Service personnel.

12. Nothing in the contract files indicates that Precision Pine notified the Forest Service, either prior to, or at the time of, contract award or acquisition by Third Party Agreement, of concerns or information regarding special circumstances affecting their operations.

13. There is nothing within the contract files which indicates that Precision Pine advised the Forest Service, either prior to, or at the time of, contract award or acquisition by Third Party Agreement, of any unique harms or effects that would result from the suspension or delay of harvesting on any of the timber sale contracts at issue.

14. Nothing in these contract files indicates that Precision Pine notified the Forest Service, either prior to, or a the time of, contract award or acquisition by Third Party Agreement, that a suspension of any of the contracts at issue would result in: increased hauling expenses; increased logging expenses; increased sawmill costs; increased interest payments on corporate debt, or any loss of profits.

15. Nothing in the contract files indicates that Precision Pine advised the Forest Service, either prior to or at the time of contract award or acquisition by Third Party Agreement, that

it planned to utilize revenues from any of these contracts to pay down its company loans.

16. Based on all of my experience with Precision Pine, I would say that it was not their practice to inform the Forest Service of special circumstances regarding their operations prior to, or at the time of, award of a contract.

17. There is nothing in the Hay Timber Sale contract files at the time of its acquisition by Third Party Agreement, that indicates Precision Pine planned to haul timber from the Hay sale to the Eager Mill.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 14th day of April 2004.

David P. Harris

David P. Harris
Supervisory Forester

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) ) | No. 98-720C (Chief Judge Damich) |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS REGARDING DAMAGES**

Introduction

In answering defendant's discovery requests regarding damages, which are extremely broad both as to time frame and information sought, it became apparent to plaintiff that virtually all records of Precision Pine between June 24, 1991 and August 1, 2000 might be deemed to be responsive. For example, defendant's definition of "document" can be read to include essentially all information produced or received by Precision Pine over this nearly 10-year period. Additionally, given the broad and overlapping nature of defendant's requests for production of documents, defendant would seemingly have Precision Pine copy, organize and produce virtually all of the corporate files of Precision Pine several times over.

Assuming that defendant does not truly want or need to inspect every piece of paper in Precision Pine's files (and knowing that no such discovery request would, in any event, be appropriate under the rules of the Court of Federal Claims), Precision Pine has utilized its best efforts to review, segregate and produce those responsive, non-privileged materials which most



154-98-720

also maintained at the former corporate headquarters of Precision Pine in Heber, AZ. and will be made available for inspection to defendant at a mutually agreeable time.[2]

**INTERROGATORY NO. 1.**

Identify all witnesses, including experts, that Precision Pine anticipates will offer testimony at trial in this matter.

**ANSWER:**

1. Lorin Porter

| | |
|---|---|
| Present Address: | 3340 Buckskin Canyon Rd., Heber, AZ 85928 |
| Home Phone: | 928-535-4811 |
| Current Employer: | Precision Pine & Timber, Inc. |
| Address: | P.O. Box 70, Heber, AZ 85928 |
| Phone: | 928-535-9112 |
| Job Title: | President |
| Employer at time of event: | Same as current. |

2. Stephen Reidhead

| | |
|---|---|
| Present Address: | 140 S. Otto Drive, Snowflake, AZ 85937 |
| Home Phone: | 928-536-2479 |
| Current Employer: | Tri-Star Logging, Inc. |
| Address: | 140 S. Otto Drive, Snowflake, AZ 85937 |
| Phone: | 928-536-7848 |
| Job Title: | President |
| Employer at time of event: | Tri-Star Logging, Inc. as subcontractor to Precision Pine. |

[2]It should be noted, however, that Precision Pine does not currently rely on any documents in these boxes in support of its claim for damages in this matter.

3. Mel Bowers

| | |
|---|---|
| Present Address: | P.O; Box 223, Heber, AZ 85928 |
| Home Phone: | Unlisted |
| Current Employer: | Precision Pine & Timber, Inc. |
| Address: | P.O. Box 70, Heber, AZ 85928 |
| Phone: | 928-535-9112 |
| Job Title: | Bookkeeper |
| Employer at time of event: | Same as above. |

4. Lewis Tenney

| | |
|---|---|
| Present Address: | P.O. 219 Heber, AZ 85928 |
| Home Phone: | 928-535-3212 |
| Current Employer: | Precision Lumber & Hardware, Inc. |
| Address: | P.O. Box 953, Showlow, AZ 85902 |
| Phone: | 928-537-0526 |
| Job Title: | President |
| Employer at time of event: | Precision Pine & Timber, Inc. |
| Address: | P.O. Box 70, Heber, AZ 85928 |
| Phone: | 928-535-9112 |
| Job Title: | Vice-President |

5. Nancy Kehret

| | |
|---|---|
| Present Address: | Pinetop, AZ 85935 |
| Home Phone: | 928-367-0359 |
| Current Employer: | Precision Lumber & Hardware, Inc. |
| Address: | P.O. Box 953, Showlow, AZ 85902 |
| Phone: | 928-537-0526 |
| Job Title: | Accountant |
| Employer at time of event: | Precision Pine & Timber, Inc. |
| Address: | P.O. Box 70, Heber, AZ 85928 |
| Phone: | 928-535-9112 |
| Job Title: | Accountant |

6. Ronda Ryan

| | |
|---|---|
| Present Address: | 5990 Queenston St., Springfield, VA 22152 |
| Home Phone: | 703-912-9389 |

| | |
|---|---|
| Current Employer: | Saltman & Stevens, P.C. |
| Address: | 1801 K Street, N.W., Suite M-110, Washington, D.C. 20006 |
| Phone: | 202-452-2140 |
| Job Title: | Office Manager |

7. Forest Service Contracting Officers – Precision Pine intends to depose some or all of the Contracting Officers for the timber sales that are the subject of this litigation and reserves the right to call the CO's at trial.

Precision Pine has not yet retained a testifying expert witness.

**INTERROGATORY NO. 2.**

With respect to each witness identified in response to interrogatory no. I, describe in detail his or her proposed testimony.

**ANSWER:**

Although Precision Pine has made no final decision as to whom it will call as testifying witness, or the exact testimony each witness will offer, the following individuals have some knowledge about matters relevant to Precision Pine's damage claim and Precision Pine currently anticipates that some or all of these individuals may be called to testify at trial:

1. Lorin Porter: Timber acquisition, anticipated performance, mill operations, mitigation, product sales, general corporate operations, claim history, various items of damage, claim preparation time, increased cost of unemployment insurance, company history, mill acquisitions

2. Stephen Reidhead: Pulpwood logging and hauling, timber logging and hauling.

3. Mel Bowers: Increased cost of unemployment insurance, out-of-pocket costs to financial institutions, preparation and storage of corporate records in the usual course of business.

4. Lewis Tenney: Logging and hauling operations, mill acquisitions, timber acquisitions, general corporate operations, claim history, company history .

5. Nancy Kehret: Preparation and storage of corporate records in the usual course of business.

6. Ronda Ryan: Precision Pine's legal fees in this matter.

7. Forest Service Contracting Officers: Precision Pine intends to depose some or all of the Contracting Officers for factual information about the timber sale contracts that are the subject of this litigation. Precision Pine reserves the right to call the CO's at trial.

**INTERROGATORY NO. 3.**

For each request for admission in defendant's first set of requests for admissions on damages that you deny, deny in part, or decline to admit without qualification, describe in detail the basis for your answer.

**ANSWER:**

The basis for each such denial and qualification is set forth in Precision Pine's responses to the defendant's requests for admissions.

**INTERROGATORY NO. 4.**

Identify each person with knowledge or information about, or that Precision Pine consulted in preparing its answers to, these discovery requests or defendant's first set of requests for admission on damages.

**ANSWER:**

Lorin Porter, Lewis Tenney, Mel Bowers, Stephen Reidhead. Detailed information about the identity of each is set forth in response to interrogatory no. 1.

is contained in the binders of documents supporting the damage calculations, which have already been produced to the government. Additional responsive documents are available for inspection at the Washington, D.C. law offices of Saltman & Stevens and the former corporate headquarters of Precision Pine in Heber, AZ.

**DOCUMENT REQUEST NO. 27:**

Produce all documents or other evidence that Precision Pine will use or rely upon to support its claim for damages at trial in this action.

**RESPONSE:**

No final decision has been made as to what evidence to offer at trial. The documents already provided to defendant as well as those documents identified in response to the foregoing interrogatories and requests for production are likely sources of documentary evidence to be offered at trial. See response to Document Request No. 26.

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 98-720C
(Chief Judge Damich)

**PLAINTIFF'S SUPPLEMENTAL ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 9**

With respect to each contract, agreement or arrangement identified in response to Interrogatory No. 6, describe in detail Precision Pine's plan for operating each mill at issue and harvesting remaining timber and other material as of August 24, 1995, including, but not limited to, the months in which Precision Pine anticipated to harvest and, for each month in which harvesting was anticipated, the species and size class of timber or other material that Precision Pine expected to harvest, the volume of each species and size class of timber or other material that Precision Pine expected to harvest, and the mill at which Precision Pine expected to process the timber or other material that it harvested.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 9**

Each uncompleted contract that Precision Pine held on the date of the suspension is set forth on the table below. In that table, Precision Pine has indicated for each such sale the anticipated harvest by species by month, and the mill to which the timber from the sale would have been delivered (i.e., where it would have been processed into rough cut/green lumber.) (Precision Pine does not maintain records as to the volume of timber by size class and the recollections of relevant officials of Precision Pine are insufficient to provide an answer in this regard.) All of the rough cut/green lumber produced at the various plants indicated would, in turn, also have been transported to the Winslow planer and made into finished lumber products.

Anticipated Quantity of Wood per contract (in MBF (log scale))

| | | | 1995 | | | 1995 | | | | 1996 | | | | 1996 | | | | 1996 | | | | 1996 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 3rd Quarter | | total for 3rd Q '95 | 4th Quarter | | | total for 4th Q '95 | 1st Quarter | | | total for 1st Q '96 | Second Quarter | | | total for 2nd Q '96 | Third Quarter | | | total for 3rd Q '96 | Fourth Quarter | | | total for 4th Q '96 |
| Sale | mill to which sale was planned to go | Species | Aug | Sep | | Oct | Nov | Dec | | Jan | Feb | Mar | | Apr | May | Jun | | Jul | Aug | Sep | | Oct | Nov | Dec | |
| Brann | Winslow | PP | | | | | | | | | | | | | | | | | | | | 304.5 | 304.5 | 304.5 | 913.5 |
| Hutch-Boond. | Winslow | PP | | 2236.0 | 2236.0 | | | | | | | | | | | | | | | | | | | | |
| Monument | Winslow | PP | | | | | | | | | | | | | | | | | | | | 365.3 | 365.3 | | 730.5 |
| Mud | Winslow | PP | | | | 1033.2 | 1033.2 | 1033.2 | 3099.5 | | | | | | | | | | | | | | | | |
| Saginaw-Kenn. | Winslow | PP | | | | | | | | | | | | | | | | 378.0 | 378.0 | 378.0 | 1134.0 | | | | |
| U-Bar | Winslow | PP | | | | | | | | 917.0 | 917.0 | | 1834.0 | | | | | | | | | | | | |
| | | DF&O | | | | | | | | 680.5 | 680.5 | | 1361.0 | | | | | | | | | | | | |
| Hualapai | Winslow | PP | | | | | | | | | | | | 226.0 | 226.0 | 226.0 | 678.0 | | | | | | | | |
| Park | Winslow | PP | | | | | | | | | | | | | | | | | 471.0 | 471.0 | 942.0 | | | | |
| McGaffey Parcel | Winslow | PP | | | | | | | | | | | | | 864.0 | | 864.0 | | | | | | | | |
| Barber | Winslow | PP | | | | | | | | | | | | 800.0 | | 800.0 | 1600.0 | 575.0 | 325.0 | 250 | 1150.0 | | | | |
| | Total for Winslow | | 0.0 | 2236.0 | 2236.0 | 1033.2 | 1033.2 | 1033.2 | 3099.5 | 1597.5 | 1597.5 | 0.0 | 3195.0 | 1026.0 | 1090.0 | 1026.0 | 3142.0 | 953.0 | 1174.0 | 1099.0 | 3226.0 | 669.8 | 669.8 | 304.5 | 1644.0 |
| Brookbank | Heber | PP | 342.5 | | 342.5 | | | | | | | | | | 544.8 | 544.8 | 1089.5 | | | | | | | | |
| Jersey Horse | Heber | PP | 352.0 | | 352.0 | 323.0 | 161.5 | | 484.5 | 143.0 | 143.0 | | 286.0 | | | | | 179.5 | 179.5 | 179.5 | 538.5 | | | | |
| Manaco | Heber | PP | | 2224.0 | 2224.0 | | | | | | | | | | | | | | | 258.0 | 258.0 | | | | |
| Salt | Heber | PP | | 688.0 | 688.0 | | | | | | | | | | | | | 385.5 | 385.5 | 771.0 | 1542.0 | | | | |
| St. Joe | Heber | PP | | | | | | | | | | | | | | | | | | 343.0 | 343.0 | 1559.5 | 1559.5 | | 3119.0 |
| | Total for Heber | | 694.5 | 2912.0 | 3606.5 | 323.0 | 161.5 | 0.0 | 484.5 | 143.0 | 143.0 | 0.0 | 286.0 | 0.0 | 544.8 | 544.8 | 1089.5 | 565.0 | 565.0 | 1551.5 | 2681.5 | 1559.5 | 1559.5 | 0.0 | 3119.0 |
| ay | Eagar | PP | | 404.1 | 404.1 | | 757.6 | 757.6 | 1515.2 | 314.5 | | | 314.5 | | 744.1 | | 744.1 | | | | | | | | |
| | | DF&O | | 24.1 | 24.1 | | 45.1 | 45.1 | 90.2 | 18.7 | | | 18.7 | | 44.3 | | 44.3 | | | | | | | | |
| Kettle | Eagar | PP 9"+ Weighted Average | | | | | | | | | 277.5 | | 277.5 | | | 631.0 | 631.0 | 300.0 | 766.7 | 766.7 | 1833.5 | | | | |
| O.D. Ridge | Eagar | PP | | | | 859.0 | | | 859.0 | | | | | | 329.5 | 329.5 | 659.0 | 403.0 | | | 403.0 | | | | |
| | | DF&O | | | | 222.7 | | | 222.7 | | | | | | 76.7 | 76.7 | 153.3 | 94.0 | | | 94.0 | | | | |
| | | Spruce | | | | 111.3 | | | 111.3 | | | | | | 38.3 | 38.3 | 76.7 | 47.0 | | | 47.0 | | | | |
| Ramah | Eagar | PP | | | | | | | | | 423.5 | 423.5 | 847.0 | | | | | | | | | | | | |
| Campbell | Eagar | PP | | | | | | | | | 600.0 | 600.0 | 1200.0 | | | | | | | | | 840.0 | 840.0 | | 1680.0 |
| | Total for Eagar | | 0.0 | 428.1 | 428.1 | 1193.0 | 802.7 | 802.7 | 2798.4 | 333.2 | 1301.0 | 1023.5 | 2657.7 | 0.0 | 1232.8 | 1075.5 | 2308.3 | 844.0 | 766.7 | 766.7 | 2377.5 | 840.0 | 840.0 | | 1680.0 |

* operations in progress at time of suspension