**INTERROGATORY NO. 18**

For each of the mills at issue, state the total volume of timber or other material from each source that was processed by the facility during each month between June 1991 and July 2000.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 18**

**Heber Sawmill**

Precision Pine does not keep track of the volume of timber or other material that is processed by this mill from each source on a monthly basis. Therefore, to the extent that this interrogatory requests that precise information over the specified period, it is unavailable.

Although Precision Pine does not keep track of the volume of timber or other material that is processed through this mill by source, an approximation of the total input volume can be determined by applying an overrun factor to the volume of lumber produced by this mill by month. Precision Pine has used an overrun factor of 1.25 in its damages calculations. Precision Pine contends that this is a very conservative overrun factor. By dividing this mill's monthly production totals for each month from June 1991 to July 2000 by 1.25, one can derive the total volume of timber or other material that was processed by this mill for each of those months.

Precision Pine states, pursuant to RCFC 33(d), that the monthly lumber production totals, in mbf, for this mill can be ascertained from the monthly mill production records for this mill, titled "Sawmill Cut," in the column titled "Total Cut," in the row titled "Month Total." Precision Pine has such records for the following months:

January – April 1994; June 1994 – February 1995; April – September 1995; November 1995 – June 1996; October 1997 – January 1999; August 1999 – January 2000.

Precision Pine also has yearly reports listing monthly volume totals for this mill for the years April 1995- March 1996 and April 1998 – March 1999.

Precision Pine further states that it has produced all such records that it was able to locate, and that to the best of its knowledge, this is the entire set of such records in its possession. Any unavailable dates are the result of such records not existing or the mill not operating, or are due to missing or misplaced records. The mill production records noted above are contained within a single redwell labeled "Heber Production," at the offices of Saltman & Stevens in Washington, DC. These documents were so organized when the government reviewed documents at the offices of Saltman & Stevens on August 28, 2003. The government requested that this entire set of documents be copied, and therefore, it has copies of the entire set in its possession. Further reasonable assistance required in identifying or reading these documents will be provided if requested. Likewise, the original set of these documents are available for additional review at the offices of Saltman & Stevens, if such additional review is required.

As noted, Precision Pine does not track the exact volume of timber or other material from a particular source nor the exact time of processing of timber or other material from a particular source, as it is processed through a particular mill. However, a rough approximation of this information can be ascertained based on the volume of timber or other material that is removed from a particular source at a particular time. Timber or other material from each source is

generally brought to a particular mill, and will eventually be processed into rough lumber at that mill. Pursuant to RCFC 33(d), as it stated in its original answer to this interrogatory, Precision Pine states that responsive information on a sale-by-sale basis regarding the volume removed from (including the timing thereof) and destination mill for each contract is contained within the individual contract files for each contract. Moreover, responsive information regarding volume removed from Forest Service sales is contained within the TSSAs for each contract.

With regard to the 14 contracts at issue, the contract files and TSSAs for each contract are located at the offices of Saltman & Stevens in Washington, DC. The TSSAs that Precision Pine has available for each contract are located within individual file folders, labeled by contract, grouped together in a single box. The entire set of original documents was provided to the government on September 30th. Moreover, the majority of the same TSSAs were produced to Precision Pine by the government, therefore the government should have copies of these documents in its possession. The TSSAs for each contract state the volume of timber removed from that particular sale for the month covered by that TSSA. The contract files for the 14 contracts at issue are contained within three boxes, labeled "Contracts Brann – Jersey Horse," "Contracts Kettle – O.D Ridge," and "Contracts Sag Ken – U-Bar." The files are organized alphabetically, and were so organized when the government reviewed documents at the offices of Saltman & Stevens on August 28th. The logger and hauler pay records that are located within an individual contract file will provide additional information as to the volume of timber removed from that particular sale at a particular time.

Many of the logger and hauler records for each contract also state to which mill the timber from that contract was taken. This information can also be ascertained from other documents within the contract files, such as correspondence and timber sale appraisals. Precision Pine generally attempted to bring timber to the mill that the timber was originally scheduled to go to. However, with the mill closures caused by the suspensions and the Winslow fire, this was not always possible. With this fact noted, Precision Pine states that the timber from the following contracts at issue was supposed to be processed at the Heber sawmill:

Brookbank, Jersey Horse, Salt, Manaco, and St. Joe.

Further reasonable assistance required in identifying or reading the documents contained within the individual contract files will be provided if requested. Likewise, the original set of these documents is available for additional review at the offices of Saltman & Stevens, if such additional review is required.

**Eagar Sawmill**

Precision Pine does not keep track of the volume of timber or other material that is processed by this mill from each source on a monthly basis. Therefore, to the extent that this interrogatory requests that precise information over the specified period, it is unavailable.

Although Precision Pine does not keep track of the volume of timber or other material that is processed through this mill by source, an approximation of the total input volume can be determined by applying an overrun factor to the volume of lumber produced by this mill by month. Precision Pine has used an overrun factor of 1.25 in its damages calculations. Precision Pine contends that this is a very conservative overrun factor. By dividing this mill's monthly

production totals for each month from June 1991 to July 2000 by 1.25, one can derive the total volume of timber or other material that was processed by this mill for each of those months.

Precision Pine states, pursuant to RCFC 33(d), that the monthly lumber production totals, in mbf, for this mill can be ascertained from the monthly mill production records for this mill, titled "Sawmill Cut," in the column titled "Total Cut," in the row titled "Month Total." Precision Pine has such records for the following months:

October 1993 – February 1994; July 1994 – December 1995; February – July 1997.

Precision Pine also has a yearly report listing monthly volume totals for this mill for the year of April 1995 – March 1996.

Precision Pine further states that it has produced all such records that it was able to locate, and that to the best of its knowledge, this is the entire set of such records in its possession. Any unavailable dates are the result of such records not existing or the mill not operating, or are due to missing or misplaced records. The mill production records noted above are contained within a single redwell labeled "Eagar Production," at the offices of Saltman & Stevens in Washington, DC. These documents were so organized when the government reviewed documents at the offices of Saltman & Stevens on August 28, 2003. The government requested that this entire set of documents be copied, and therefore, it has copies of the entire set in its possession. Further reasonable assistance required in identifying or reading these documents will be provided if requested. Likewise, the original set of these documents are available for additional review at the offices of Saltman & Stevens, if such additional review is required.

As noted, Precision Pine does not track the exact volume of timber or other material from a particular source nor the exact time of processing of timber or other material from a particular source, as it is processed through a particular mill. However, a rough approximation of this information can be ascertained based on the volume of timber or other material that is removed from a particular source at a particular time. Timber or other material from each source is generally brought to a particular mill, and will eventually be processed into rough lumber at that mill. Pursuant to RCFC 33(d), as it stated in its original answer to this interrogatory, Precision Pine states that responsive information on a sale-by-sale basis regarding the volume removed from (including the timing thereof) and destination mill for each contract is contained within the individual contract files for each contract. Moreover, responsive information regarding volume removed from Forest Service sales is contained within the TSSAs for each contract.

With regard to the 14 contracts at issue, the contract files and TSSAs for each contract are located at the offices of Saltman & Stevens in Washington, DC. The TSSAs that Precision Pine has available for each contract are located within individual file folders, labeled by contract, grouped together in a single box. The entire set of original documents was provided to the government on September 30th. Moreover, the majority of the same TSSAs were produced to Precision Pine by the government, therefore the government should have copies of these documents in its possession. The TSSAs for each contract state the volume of timber removed from that particular sale for the month covered by that TSSA. The contract files for the 14 contracts at issue are contained within three boxes, labeled "Contracts Brann – Jersey Horse," "Contracts Kettle – O.D Ridge," and "Contracts Sag Ken – U-Bar." The files are organized alphabetically, and were so organized when the government reviewed documents at the offices of

Saltman & Stevens on August 28th. The logger and hauler pay records that are located within an individual contract file will provide additional information as to the volume of timber removed from that particular sale at a particular time.

Many of the logger and hauler records for each contract also state to which mill the timber from that contract was taken. This information can also be ascertained from other documents within the contract files, such as correspondence and timber sale appraisals. Precision Pine generally attempted to bring timber to the mill that the timber was originally scheduled to go to. However, with the mill closures caused by the suspensions and the Winslow fire, this was not always possible. With this fact noted, Precision Pine states that the timber from the following contracts at issue was supposed to be processed at the Eagar sawmill:

Hay, Kettle, and O.D. Ridge.

Further reasonable assistance required in identifying or reading the documents contained within the individual contract files will be provided if requested. Likewise, the original set of these documents is available for additional review at the offices of Saltman & Stevens, if such additional review is required.

**Winslow Sawmill**

Precision Pine does not keep track of the volume of timber or other material that is processed by this mill from each source on a monthly basis. Therefore, to the extent that this interrogatory requests that precise information over the specified period, it is unavailable.

Although Precision Pine does not keep track of the volume of timber or other material that is processed through this mill by source, an approximation of the total input volume can be determined by applying an overrun factor to the volume of lumber produced by this mill by month. Precision Pine has used an overrun factor of 1.25 in its damages calculations. Precision Pine contends that this is a very conservative overrun factor. By dividing this mill's monthly production totals for each month from June 1991 to July 2000 by 1.25, one can derive the total volume of timber or other material that was processed by this mill for the relevant month over that time period.

Precision Pine states, pursuant to RCFC 33(d), that the monthly lumber production totals, in mbf, for this mill can be ascertained from the monthly mill production records for this mill, titled "Sawmill Cut," in the column titled "Total Cut," in the row titled "Month Total." Precision Pine has such records for the following months:

January 1994, March 1994 – August 1997.

Precision Pine also has a yearly report listing monthly volume totals for this mill for the year April 1993 – March 1994 and April 1996 – March 1997.

Precision Pine further states that it has produced all such records that it was able to locate, and that to the best of its knowledge, this is the entire set of such records in its possession. Any unavailable dates are the result of such records not existing or the mill not operating, or are due to missing or misplaced records. The mill production records noted above are contained within a single redwell labeled "Winslow Production," at the offices of Saltman & Stevens in

Washington, DC. These documents were so organized when the government reviewed documents at the offices of Saltman & Stevens on August 28, 2003. The government requested that this entire set of documents be copied, and therefore, it has eopies of the entire set in its possession. Further reasonable assistance required in identifying or reading these documents will be provided if requested. Likewise, the original set of these documents are available for additional review at the offices of Saltman & Stevens, if such additional review is required.

As noted, Precision Pine does not track the exact volume of timber or other material from a particular source nor the exact time of processing of timber or other material from a particular source, as it is processed through a particular mill. However, a rough approximation of this information can be ascertained based on the volume of timber or other material that is removed from a particular source at a particular time. Timber or other material from each source is generally brought to a particular mill, and will eventually be processed into rough lumber at that mill. Pursuant to RCFC 33(d), as it stated in its original answer to this interrogatory, Precision Pine states that responsive information on a sale-by-sale basis regarding the volume removed from (including the timing thereof) and destination mill for each contract is contained within the individual contract files for each contract. Moreover, responsive information regarding volume removed from Forest Service sales is contained within the TSSAs for each contract.

With regard to the 14 contracts at issue, the contract files and TSSAs for each contract are located at the offices of Saltman & Stevens in Washington, DC. The TSSAs that Precision Pine has available for each contract are located within individual file folders, labeled by contract, grouped together in a single box. The entire set of original documents was provided to the

government on September 30th. Moreover, the majority of the same TSSAs were produced to Precision Pine by the government, therefore the government should have copies of these documents in its possession. The TSSAs for each contract state the volume of timber removed from that particular sale for the month covered by that TSSA. The contract files for the 14 contracts at issue are contained within three boxes, labeled "Contracts Brann – Jersey Horse," "Contracts Kettle – O.D Ridge," and "Contracts Sag Ken – U-Bar." The files are organized alphabetically, and were so organized when the government reviewed documents at the offices of Saltman & Stevens on August 28th. The logger and hauler pay records that are located within an individual contract file will provide additional information as to the volume of timber removed from that particular sale at a particular time.

Many of the logger and hauler records for each contract also state to which mill the timber from that contract was taken. This information can also be ascertained from other documents within the contract files, such as correspondence and timber sale appraisals. Precision Pine generally attempted to bring timber to the mill that the timber was originally scheduled to go to. However, with the mill closures caused by the suspensions and the Winslow fire, this was not always possible. With this fact noted, Precision Pine states that the timber from the following contracts at issue was supposed to be processed at the Winslow sawmill:

Monument, Mud, Saginaw Kennedy, Brann, Hutch Boondock, and U-Bar.

Further reasonable assistance required in identifying or reading the documents contained within the individual contract files will be provided if requested. Likewise, the original set of these documents is available for additional review at the offices of Saltman & Stevens, if such additional review is required.

One other source of responsive information regarding the approximate volume of timber brought to the Winslow mill, by source, is a small number of Winslow log inventory records. Preparing such inventory records was not the standard practice of Precision Pine, however a small number have been located for the Winslow mill, apparently using old Duke City Lumber forms. These records state an estimated volume of timber from each sale brought to the mill, and the beginning and end log inventory for the month of the record. However, these records only state the estimated volume of timber that is entered into the inventory for the mill, and do not give any indication of the volume of timber from each source that is actually processed in a given month. These records are located within a single file folder titled "Miscellaneous Mill Documents," in box # 102 of the 147 boxes in storage at Heber, AZ, labeled "Miscellaneous, Correspondence, Contract Documents, Duplicate Financials." The government marked this entire folder to be copied, therefore the government should already possess the entire set of these documents. Further reasonable assistance required in identifying or reading these documents will be provided if requested.

**Winslow Planer**

Precision Pine does not keep track of the volume of timber or other material that is processed by its planer mill from each source on a monthly basis. Therefore, to the extent that this interrogatory requests that precise information over the specified period, it is unavailable.

A planer, by definition, processes rough lumber into finished lumber. There is virtually no loss of volume in this process. Therefore, the volume of rough lumber that is processed by this planer will essentially be the same as the volume of finished lumber that this planer

produces. Precision Pine does not, however, keep track of the volume of finished lumber that is produced by this planer in the manner that is requested by this interrogatory. Rather, Precision Pine keeps a sales record of the volume of each lumber product that is sold from this planer on a monthly basis.

Precision Pine states, pursuant to RCFC 33(d), that an accurate approximation of the volume of each lumber product produced at this planer, on a monthly basis, can be ascertained from these sales records, titled "Winslow Sales Record." Although these records do not account for the time lag between planing and sale, they are the best available source of information for answering this interrogatory. The total monthly volume for each lumber product in mbf is stated at the bottom of the record in the row titled "Month Total," under the individual column for each lumber product. Precision Pine has such records for April 1994 through July 1999.

Precision Pine further states that it has produced all such records that it was able to locate, and that to the best of its knowledge, this is the entire set of such records in its possession. Any unavailable dates are the result of such records not existing or the mill not operating, or are due to missing or misplaced records. The mill sales records noted above are contained within a single redwell labeled "Winslow Sales," at the offices of Saltman & Stevens in Washington, DC. These documents were so organized when the government reviewed documents at the offices of Saltman & Stevens on August 28, 2003. The government requested that this entire set of documents be copied, and therefore, it has copies of the entire set in its possession. Further reasonable assistance required in identifying or reading these documents will be provided if

requested. Likewise, the original set of these documents are available for additional review at the offices of Saltman & Stevens, if such additional review is required.

As noted, Precision Pine also does not keep a source by source record of the precise volume of rough lumber processed by this planer. All rough lumber that was produced by the mills at issue and sent to a planer, from approximately April 1, 1995 to sometime in the fall of 1999, was processed at the Winslow planer. No rough lumber was processed by the Winslow planer after it was closed permanently sometime in the fall of 1999. Prior to April or May 1995, a portion of Precision Pine's rough lumber was processed at its planer in Snowflake, AZ.

Precision Pine processed some rough lumber at the Winslow Planer that it acquired from sources other than its own mills. Precision Pine did not keep track of the total volume of this rough lumber, nor the exact month when such lumber was processed through the planer. The only records specifying volumes of rough lumber obtained from outside sources are the invoices from the purchases. Therefore, to the extent that this interrogatory requests a precise, separate volume of rough lumber purchased from an outside source that was processed by this planer on a month by month basis, that information is unavailable.

To the best of Lorin Porter's recollection, at different times, Precision Pine purchased some rough Mexican lumber, and some rough lumber from Merritt Lumber. The rough lumber from Merritt was not a significant source, which sold a load of rough lumber every few months. Some Mexican lumber was purchased prior to the suspension of the contracts at issue from Sierra Madre Lumber, Inc. Lorin Porter believes that some Mexican lumber may have been

purchased during the suspensions of the contracts at issue, however, he does not recall exact details or amounts, and no invoices were located regarding any such purchases.

Precision Pine states, pursuant to RCFC 33(d), that the limited information it has regarding rough lumber purchased from outside sources can be ascertained from the invoices that it has located. Precision Pine has several invoices for Mexican Lumber, from Sierra Madre Lumber, Inc., dated between September 15, 1993 and June 23, 1994 identifying volumes of rough lumber purchased on the date of the invoice. These invoices are contained in a folder titled "Lumber Received Rough," in a box titled "Stone Container Documents," which is located at the offices of Saltman & Stevens in Washington, DC. Precision Pine has several invoices from Merritt Lumber, dated between January 4, 1990 and May 19, 1994, identifying volumes of rough lumber purchased on the date of the invoice. These invoices are contained in a folder titled "Merritt Lumber," also in the box titled "Stone Container Documents" referenced above. The entire contents of this box were copied for and sent to the government, with the contents of each folder banded and marked as such. Therefore, the government should already possess these documents. Further reasonable assistance required in identifying or reading these documents will be provided if requested. Likewise, the original set of these documents are available for additional review at the offices of Saltman & Stevens, if such additional review is required.

**Winslow Pellet Mill**

The Winslow Pellet Mill uses shavings produced at Precision Pine's planers or acquired from outside sources to produce pellets. Precision Pine generally does not keep track of this information.

To the best of his recollection, the President of Precision Pine, Lorin Porter, states that approximately 95% of the shavings produced by the Winslow Planer went to the pellet mill. Moreover, Precision Pine also acquired some amount of shavings from outside sources. Precision Pine cannot state precise volumes of shavings produced by its planers over the specified time period, nor can it state precise volumes of shavings purchased from outside sources. The only such source that Lorin Porter remembers Precision Pine purchasing shavings from is Smith Moulding. A box containing paid invoices from Smith Moulding from approximately September 1995 through August 1998, titled "Smith Moulding," was produced to the government as part of the 147 boxes that were in storage in Heber, AZ. Precision Pine believes that the defendant copied these documents in their entirety. Precision Pine also purchased small quantities of shavings in a piecemeal fashion from various entities that provided small loads of shavings, however, no documents regarding such purchases were located.

Precision Pine has available three monthly pellet mill production reports that state the total tonnage of raw material processed at the pellet mill for that month. Although Precision Pine already produced these records pursuant to RCFC 33(d) which are located at the offices of Saltman & Stevens in Washington, DC in a single redwell titled "Pellet Mill Production," and the government has copies of these records pursuant to its request after its review of these documents on August 28, 2003, Precision Pine notes that these records state that the following tonnage of raw material was processed through the pellet mill for the following months:

December 1994, 482 tons
June 1995, 505 tons
July 1995, 484 tons

Precision Pine states that it has produced all such records that it was able to locate, and that to the best of its knowledge, this is the entire set of such records that it has in its possession.

**INTERROGATORY NO. 19**

For each of the mills at issue, identify the volume of each product for which Precision Pine seeks the recovery of lost profits that was produced during each month between June 1991 and July 2000.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 19**

**Winslow Planer**

Precision Pine seeks recovery of lost profits only with regard to finished lumber products. All such finished lumber products would have been produced at this planer. Precision Pine does not, however, keep track of the volume of finished lumber that is produced at this planer at the time it is produced, in the manner that is requested by this interrogatory. Rather, Precision Pine keeps a sales record of the volume of each lumber product that is sold from this planer on a monthly basis.

Precision Pine states, pursuant to RCFC 33(d) that the closest and most accurate approximation of the volume of each lumber product produced at this planer on a monthly basis, can be ascertained from these sales records, titled "Winslow Sales Record." Although these records do not account for the time lag between planing and sale, they are the best available source of information for answering this interrogatory. The monthly total volume for each lumber product in mbf is stated at the bottom of the record in the row titled "Month Total," under the individual column for each lumber product. Precision Pine has such records for April 1994 through July 1999.

Precision Pine states that it has produced all such records that it was able to locate, and that, to the best of its knowledge, this is the entire set of such records that it has in its possession. Any unavailable dates are due to the fact that the Winslow facility was purchased in December 1991, such records not existing, mill closure or missing records. These mill sales records are contained within a single redwell labeled "Winslow Sales," at the offices of Saltman & Stevens in Washington, DC. These documents were so organized when the government reviewed documents at the offices of Saltman & Stevens on August 28, 2003. The government requested that this entire set of documents be copied, and therefore, it has copies of the entire set in its possession. Further reasonable assistance required in identifying or reading these documents will be provided if requested. Likewise, the original set of these documents are available for additional review at the offices of Saltman & Stevens, if such review is required.

Precision Pine also seeks lost profits for the shavings produced at this planer. Precision Pine does not, however, keep a record of total volume of shavings produced by the Winslow planer on a monthly basis or in any other aggregate form, therefore, to the extent that this interrogatory requests this information in such a format, it is unavailable.

Precision Pine states, pursuant to RCFC 33(d), that the best approximation of the volume of shavings produced by the Winslow planer can be ascertained from a ledger titled "Shavings." This ledger has monthly entries from January 1992 through September 1997, listing shipments of shavings, in tons sent from the mill. These entries do not precisely indicate the monthly production of shavings for this mill, but they serve as an approximation of the minimum volume of shavings produced around the same time period.