HAY-1116

**PRECISION PINE & TIMBER, INC.**

P.O. BOX 70
HEBER, ARIZONA 85928
(602) 535-9112 • FAX (602) 535-9196

Robert Leaverton - C.O.
Apache Sitgreaves N.F.

9 Dec 96

RE: Hay T.S.

Bob,

In order to keep our Winslow Mill in logs we anticipate needing to haul some of the Hay Volume to Winslow.

Will you please designate our Winslow Mill yard as an Alternate Scaling Site for this Timber Sale?

We are not sure at this time how long we may need to haul Hay to Winslow.

Thank you for your attention to this Matter.

Sincerely,

John B. Smith
Pur. Rep.

Faxed

HAY- 1123

United States Department of Agriculture | Forest Service | Springerville Ranger District | P.O. Box 760
Springerville, AZ 85938
520-333-4372 TTY 333-6335
FAX 520-333-4182

File Code: 2450 Date: December 13, 1996
Route To:

Subject: Hay Timber Sale

To: Robert Leaverton, Contracting Officer

This letter is to inform you of the cutting of undesignated timber on the Hay Timber Sale (Contract No. 001152), which occurred on December 6, 1996. The trees cut were boundary trees, which are not included timber, as per C2.351# of the timber sale contract. The incident consisted of two Ponderosa Pine trees (440 bd. ft.). The current contract price of the volume is valued at $174.63. As per B3.42 of the timber sale contract Precision Pine should be billed $174.63, which is double the stumpage of the timber cut. The amount should be reflected on the billing for December volume.

Gayle Richardson Acting for
JAMES L. COOLEY
Forest Service Representative

cc:
F. Martin
[redacted]ille
J. Quisenberry

GR:krg



Printed on Recycled Paper
FS-6200-28b (12/93)

HAY-1146

COPY

United States Department of Agriculture
Forest Service
Apache-Sitgreaves NFs
P.O. Box 640
Springerville, AZ 85938
520 333-4301

Reply To: 2450

Date: January 29, 1997

Lewis N. Tenney, Jr.
Precision Pine & Timber, Inc.
P.O. Box 70
Heber, AZ 85938

Dear Lewis:

The Hay Timber Sale Contract contains R3 - C6.314# - Timing Of Logging Operation clause, which precludes logging within many cutting units during the time period of January 31 to September 1 for protection of the Mexican Spotted Owl breeding season. The specified cutting units were included in this restriction based on their proximity to a MSO core and territory.

Since the finalization of the MSO Recovery Plan, the 450 acre core areas, and the 2,000 acre territories have been converted to 900 acre PAC's. The Recovery Plan also changed the restricted time period for the breeding season to March 1 through September 1. Based on these changes, the Forest Service Biologists feel that there would be no biological affect to the MSO if logging operations continued through February 28. I am therefore waiving the timing of logging restriction for those units restricted in the contract from January 31 to September 1, to allow operation to continue until February 28. This waiver is for this year only, we will consider future waivers on an as needed basis.

If you have any questions concerning this letter, please feel free to contact me.

Sincerely,

Robert J. Leaverton

ROBERT J. LEAVERTON
Contracting Officer



Printed on Recycled Paper
FS-6200-28b (12/93)

HBD 520

LOIS J. SCHIFFER
Assistant Attorney General

EILEEN SOBECK
ELINOR COLBOURN - D.C. Bar No. 430428
Attorneys, U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7369
Benjamin Franklin Station
Washington, D.C. 20044-7369
Telephone: (202) 272-9887

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DR. ROBIN SILVER, et al., Plaintiffs, v. BRUCE BABBITT, et al., Defendants. | CIV-94-0337-PHX-CAM<br>CIV-94-1610-PHX-CAM<br>(Consolidated) |
| DR. ROBIN SILVER, et al., Plaintiffs, v. JACK WARD THOMAS, et al., Defendants. | STIPULATION CONCERNING PLAINTIFFS' CLAIMS AGAINST THE UNITED STATES FOREST SERVICE |

Defendants Jack Ward Thomas, in his official capacity as Chief of the United States Forest Service, and the United States Forest Service, and plaintiffs Dr. Robin Silver, the Forest Conservation Council, Forest Guardians, Southwest Center for Biological Diversity, Biodiversity Legal Foundation, Carson Forest Watch, Greater Gila Biodiversity Project, Maricopa Audubon Society, and Dine Citizens Against Ruining Our Environment, through their undersigned counsel, stipulate and agree as follows with respect to the claims in Civil Action Number CIV-94-1610-PHX-CAM, subject to approval of the Court:

1. The parties to this Stipulation agree that this Stipulation and the order to be entered thereon consist of a compromise of disputed claims for the purpose of settlement in CIV-94-

HBD 521

1610-PHX-CAM, and shall not constitute any admission of fact or law by any party. The parties agree that they shall not cite, rely upon, or mention this settlement, this Stipulation, the Order approving this Stipulation or the Judgment entered thereon, in any other litigation. If a person cites the entry of the injunction in this case in some other litigation, the fact that this case was thereafter settled may be made known to that court. The parties agree that they shall not cite or rely upon this settlement, this Stipulation, the Order approving this Stipulation, or the Judgment entered thereon concerning the construction or application of the Endangered Species Act.

2. The United States Forest Service agrees to complete the ongoing process of consultation with the United States Fish and Wildlife Service concerning the Mexican Spotted Owl for the existing Land and Resource Management Plans ("LRMPs") and the LRMPs as amended. The United States Forest Service and its Chief agree to waive their rights to appeal in this case from the August 24, 1995 injunction Order, this Stipulation, the Order to be entered approving this Stipulation and the Judgment to be entered thereon.

9th Circuit favored the Fund →

3. The Forest Service will suspend implementation or approval of all projects involving the cutting of trees in Region 3 until consultation [illegible] amended are complete [illegible]), [illegible] Service may proceed with all projects and activities set forth in subparagraphs a th[illegible] below, during the consultation on the existing LRMPs and on the LRMPs as amended, provided that they meet the following restrictions. If a project has been omitted from Exhibit A by oversight of the Forest Service, the parties agree to discuss same and to determine if it may proceed by further stipulation.

a. Christmas tree cutting projects, involving any species, can proceed outside of riparian areas whether in or outside of designated critical habitat for the Mexican spotted owl (hereinafter



Exhibit A – "No Effects" projects we sent in. All of the "no effects" projects.

HBD 522

"critical habitat"), provided no tree greater than 6 inches DBH is cut. If inside critical habitat, trees may only be cut within designated areas.

b. Outside critical habitat, commercial timber sales (harvest for which a fee is paid and which is intended for resale), that are listed in Exhibit A, may proceed, if the trees are located in pinyon-juniper cover type and outside of riparian areas. Within critical habitat, commercial timber sales that are listed in Exhibit A may proceed if the trees are located in pinyon-juniper cover type, are outside riparian areas, and the dispersal habitat rule is followed.

c. Hazard tree felling can proceed only where there is immediate danger to human life or property. Routine or scheduled hazard tree removal remains suspended.

d. Cutting live trees for personal use (not intended for resale) products such as latillas, ldpl poles or fence poles, other than vigas and firewood, may occur in designated areas that are located outside of riparian areas and outside of critical habitat. Dead and down timber may be gathered for such personal use products other than vigas and firewood, from designated areas that are located outside riparian areas, but may be located either inside or outside critical habitat.

e. Personal use firewood activity may proceed outside of critical habitat from general areas. Dead and down timber may be gathered from designated areas inside and outside critical habitat.

HBD 5223

Dead standing timber may be taken only from pinyon-juniper cover type, outside riparian areas. On the Carson National Forest, all firewood must come from designated areas outside of critical habitat and riparian areas, except for existing slash piles. Dead standing timber may be taken only from pinyon-juniper cover type, outside riparian areas.

f. Vigas must come from designated areas outside critical habitat and riparian areas. They may be cut in Ponderosa Pine cover type in critical habitat only if the dispersal habitat rule is followed.

g. Roads and facilities projects listed on Exhibit A may proceed outside of critical habitat, except new road corridors in forested areas remain suspended. Inside critical habitat, roads and facilities projects listed on Exhibit A may proceed, if tree-cutting is confined to existing areas of disturbance (i.e. road right-of-way, administrative site, current boundary of recreation site, microwave site, etc.). Routine maintenance of Service Level C and D Forest Development roads (local and unimproved roads) that involves tree-cutting will remain suspended. Routine maintenance of Arterial, Collector and Service Level A and B Forest Development roads may proceed with the above restrictions.

h. Fences and survey line projects listed on Exhibit A may proceed outside of critical habitat. They may proceed in critical habitat provided no trees in excess of 6 inches DBH are felled.

i. Outside critical habitat and riparian areas, silvicultural work listed on Exhibit A, such as precommercial thinning ("TSI"), meadow clearing, wildlife projects, vegetation management, and aspen treatment may proceed. Inside critical habitat and outside riparian areas, such silvicultural work listed on Exhibit A may proceed provided no tree larger than 6 inches DBH is felled and provided the dispersal habitat rule is met. Riparian wildlife habitat improvement projects may proceed in riparian areas subject to the above limitations.

j. Outside critical habitat, prescribed burns listed on Exhibit A may proceed. Inside critical habitat, prescribed burns listed on Exhibit A may proceed provided no trees larger than 6 inches DBH are felled for firelines, fuelbreaks or other purposes and provided that the dispersal habitat rule is followed. Any control lines will be hand dug. The Forest Service will protect snags where practical.

k. Tree-cutting projects listed on Exhibit A associated with mining/minerals activities may proceed in pinyon-juniper cover type.

l. The following projects listed on Exhibit A may proceed: Manaco (after the Forest Service requests concurrence by the United States Fish and Wildlife Service on the "no effect" finding by the United States Forest Service, and the United States Fish and Wildlife Service either concurs or declines to consider the matter), Ojos Ryan, Fence-Bagnall, Lons, and Yarro.

HBD525

m. The following additional projects may proceed: Sunspot National Solar Observatory, Hutch Boondock, Black Fire (including Bank and Aspen) Salvage, Bridge Salvage, Scott Able Salvage, Brann, Mount Lemmon Federal Highway, Saint Joseph, Payment Unit One of Isabelle, Filipito Unit 4, Filipito Unit 9, Filipito Unit 8 (which has not been sold, except that within Unit 8, trees larger than 18 inches DBH shall not be commercially harvested within ten (10) years from the date of entry of the Judgment to be entered herein), Paris, and Hay on the Lincoln National Forest.

n. Emergency responses to prevent immediate, irreparable harm to human life or property caused by unforeseeable events such as wildfire, floods and storms, can be taken.

4. The Campbell Sale on the Apache-Sitgreaves National Forest and the Barber Sale on the Coconino National Forest will be cancelled by the Forest Service. The Forest Service agrees that in the absence of a catastrophic event that leaves no reasonable doubt that treatment is necessary, trees larger than 12 inches DBH will not be commercially harvested from the Campbell and Barber sale areas during the 15 years after the date of entry of the Judgment in this action. During this 15 year period, the Forest Service will not permit any precommercial thinning that removes trees over 6 inches DBH or reduces the canopy closure below 40%, nor construction of any new roads, in these sale areas.

5. The Mud Timber Sale on the Coconino National Forest is the subject of other litigation under the National Environmental Policy Act (NEPA), captioned Southwest Center for Biological Diversity, et al. v. United States Forest Service, et al., CIV-95-1927-PCT-RCB (District of Arizona). The Forest Service will modify Cutting Units 1, 4 and 16 of the Mud Timber Sale. In those Cutting Units trees larger than 12 inches DBH will not be harvested pursuant to the existing timber sale contract. The plaintiffs in that case, who are among the

plaintiffs in this case, will forthwith dismiss that case voluntarily, with prejudice. The Forest Service will pay plaintiffs' reasonable attorneys' fees and costs in that litigation, the amount to be determined, if possible, through further negotiations.

6. The United States Forest Service will provide plaintiffs at least five (5) days advanced notice of the completion of consultation on the existing LRMPs and the LRMPs as amended. At that time the Forest Service will provide the plaintiffs with a copy of the most current draft of the Biological Opinion for such LRMP in its possession. The suspension of activities pursuant to the Order to be entered on this stipulation terminates when such consultations are completed (i.e. the biological opinions are issued).

7. The United States Forest Service agrees that the Rocky Mountain Research Station will conduct a literature review of the status of knowledge of songbirds in the ponderosa pine type in Arizona and New Mexico. This review will include, but not be limited to, a synthesis of existing research on songbirds and identification of research needs. The review will be subject to a blind peer review by three professional societies, including at least one society with expertise in the conservation of songbird populations. The results of the review will be published by the Station after peer review and within 18 months of entry of the Judgment herein. In addition, the Rocky Mountain Research Station will conduct a workshop to identify research needs for forest resource management in Arizona and New Mexico, including but not limited to, the research needs for federally listed species. The Station will publish this report within 18 months of the entry of the Judgment herein. The parties acknowledge that the projects provided for in this paragraph are not a substitute for, nor a prerequisite to, initiation of consultations by the United States Fish and Wildlife Service under the Endangered Species Act, nor a source of information necessary for the completion of any such consultations.

8. Regarding the notice of intent to sue dated October 11, 1994, sent by the Greater Gila Biodiversity Project and the Southwest Center for Biological Diversity regarding

HBD 526

consultation on the LRMP level on some species listed as threatened or endangered pursuant to the Endangered Species Act, the parties agree to a "cooling off period" of thirty (30) days, beginning when the United States Forest Service receives from potential plaintiffs written notice that they intend to pursue in court their notice of intent to sue. During the cooling off period, plaintiffs will not file the suit contemplated in the notice letter and representatives of the potential plaintiffs and the United States Forest Service will meet and engage in alternative dispute resolution.

9. With approval of this Stipulation and entry of the Judgment herein, the United States Forest Service withdraws its pending Motion for Clarification and the plaintiffs dismiss any remaining claims stated in their Complaint against the United States Forest Service and its Chief, other than for attorneys' fees and costs.

10. Subject to the Court's approval of this stipulation and entry of the Judgment, the United States Forest Service agrees to pay plaintiffs' reasonable attorneys fees and costs incurred in relation to plaintiffs' claims against the United States Forest Service in this case, such amount to be determined, if possible, through further negotiations. If not resolved through negotiations, the Court will decide how much the Forest Service will pay in reasonable fees and costs to the plaintiffs.

11. The parties acknowledge that the issues concerning plaintiffs' claims against the Bureau of Indian Affairs, Department of the Interior (BIA) remain pending.

12. The parties agree to entry of the Order Approving Stipulation Concerning Plaintiffs' Claims Against the United States Forest Service and the Judgment lodged herewith. The parties agree that upon entry of the Judgment in this action the Court shall retain jurisdiction to award attorneys' fees and costs, enforce the provisions of the Order approving this

Stipulation and the Judgment, and to resolve plaintiffs' claims against the BIA in this action.

Respectfully submitted this 18 day of October, 1995.

LOIS J. SCHIFFER
Assistant Attorney General

EILEEN SOBECK, Attorney
U.S. Department of Justice
Michael A. Johns
Assistant U.S. Attorney, for

ELINOR COLBOURN, Attorney
D.C. Bar No. 430428
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7369
Benjamin Franklin Station
Washington, D.C. 20044-7369
(202) 272-5887
Attorneys for Defendants

STEVEN SUGARMAN, Attorney
612 Old Santa Fe Trail
Santa Fe, New Mexico 87501

Mark Hughes

MARK HUGHES, Attorney
Earthlaw
University of Denver - Foote Hall
7150 Montview Boulevard
Denver, Colorado 80220

Attorneys for Plaintiffs

HBD 528

Copy of the foregoing mailed this
_____ day of October, 1995, to:

Mark Hughes
Earthlaw
1845 Bellaire Street
Denver, Colorado 80220
Attorneys for Plaintiffs

Steven Sugarman
612 Santa Fe Trail, Suite B
Sante Fe, New Mexico 87501
Attorney for Plaintiffs

Grant Woods
Attorney General
Mary Mangotich Grier
Assistant Attorney General
Civil Division
1275 West Washington
Phoenix, Arizona 85007
Attorneys for State of Arizona

Norman James
Jay Shapiro
Ryley, Carlock & Applewhite
101 North First Avenue, Suite 2700
Phoenix, Arizona 85003-1973
Attorneys for Apache County
and White Sands Forest Products, Inc.

Stephen G. Udall
Russell H. Burdick
Apache County Attorney
P.O. Box 637
St. Johns, Arizona 85936-0637

Christopher L. Callahan
Robert D. Anderson
Joseph P. Mikitish
Fennemore Craig
Two North Central Avenue
Suite 220
Phoenix, Arizona 85004-2390
Attorneys for Stone Container Corporation

Alan I. Saltman
Gary G. Stevens
Saltman & Stevens
1800 M. Street, N.W.
Suite 700 South
Washington, D.C. 20036
Attorneys for Precision Pine & Timber, Inc.

Richard A. Segal
Gust Rosenfeld
201 North Central Avenue
Suite 3300
Phoenix, Arizona 85073-3300
Attorneys for Precision Pine & Timber, Inc.

______________________________

STJ-2

U. S. DEPARTMENT OF AGRICULTURE
FOREST SERVICE

# THIRD PARTY AGREEMENT

(Timber Sale) St. Joe T.S. #001582

THIS AGREEMENT by and between Grand Canyon Forest Industries, Inc.
(hereinafter referred to as the purchaser) and Precision Pine & Timber, Inc.
Address P.O. Box 70 Heber AZ 85928.
(hereinafter referred to as the third party) witnesseth that:

WHEREAS, the purchaser entered into a contract, with the United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, for the purchase of timber on Apache-Sitgreaves National Forest, dated the 14th day of April, 1992, designated as shown above, and

WHEREAS, the third party desires to assume all of the obligations of the purchaser which have accrued or will accrue and to receive the rights and benefits under said contract, and

WHEREAS, the purchaser desires to arrange for performance of said contract by the third party,

NOW, THEREFORE, in consideration of the third party hereby assuming all of said obligations and receiving said rights and benefits under said contract it is agreed as follows:

1. The purchaser agrees:

   a. That the Forest Service may if it approves of this agreement deal solely thereafter with the aforesaid third party in the purchaser's stead and without notice to the purchaser in all matters pertaining to the aforesaid timber sale contract, including any modifications thereof.

   b. To request the Forest Service to transfer any balance on deposit with the United States to the purchaser's credit in connection with such contract to the credit of the transferee.

   c. That it is understood that the purchaser is not to be released from any obligations to the United States under said timber sale contract.

2. The third party agrees:

   a. That the third party, its heirs, executors, administrators, successors and assigns will complete the performance of said contract in accordance with the terms thereof.

   b. To furnish the Forest Service with an acceptable bond assuring the performance of said contract, or consent by the surety on the performance bond heretofore furnished by the purchaser which in effect will continue the bond with respect to any liability of the purchaser and will extend the provisions of the said bond to the transferee as a principal thereunder.

We hereby request that the Forest Service recognize and approve this agreement.

The purchaser authorizes the Forest Service upon its approval of this application to deal solely thereafter with the aforesaid third party in the purchaser's stead and without notice to the purchaser in all matters pertaining to the aforesaid timber sale contract, including any modification thereof, and requests that any balance on deposit with the United States to the purchaser's credit in connection with such contract be transferred to the credit of the third party.

The purchaser agrees that it shall not by reason of the requested recognition and approval be released from any obligation to the United States under the timber sale contract.

The third party in consideration of the recognition and approval by the Forest Service of this agreement hereby accepts the rights and assumes [illegible] and requirements of the purchaser under the timber sale contract and hereby binds its hei[illegible], successors, and assigns in the same manner as if the third party were the original sign[illegible] the aforesaid timber sale contract.

434

 STJ-3

And as a further guarantee of the performance of the timber sale contract and the obligations thereunder, the third party delivers herewith:

STRIKE OUT ONE

A bond in the sum of Two-hundred and Ten Thousand Dollars ($210,000.00)

Consent of surety for continuance of a bond in the sum of x x x x x x x x x x x x x Dollars ($x x x x x x) executed ______ by purchaser as principal and ______ ______ as surety, and extending provisions of said bond to third party as a principal thereunder.

IN WITNESS WHEREOF, the parties hereto have executed this third party agreement as of the 16 day of Oct., 1992.

| | |
|---|---|
| 1/ WITNESS (Two) ______ (Signature)<br>______ (Signature) | NAME OF PURCHASER 2/ Grand Canyon Forest Industries, Inc.<br>BY (Signature) [signature]<br>TITLE President |
| 1/ WITNESS (Two) ______ (Signature)<br>______ (Signature) | NAME OF THIRD PARTY 2/ Precision Pine & Timber, Inc.<br>BY (Signature) [signature]<br>TITLE President |

*1/ Witnesses required if party is other than a corporation.* *2/ Execute applicable certificate below if party is a corporation.*

**CERTIFICATION OF PURCHASER**

I, Thomas F. Fitzgerald certify that I am the assistant Secretary of the corporation named as the purchaser herein; that Robert T. Hitchcock who signed this agreement on behalf of the purchaser was then President of said corporation; that said agreement was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

CORPORATE SEAL

[signature]
SIGNATURE

Thomas F. Fitzgerald

**CERTIFICATION OF THIRD PARTY**

I, Tonita Porter certify that I am the ______ Secretary of the corporation named as third party herein; that Lorin D. Porter who signed this agreement on behalf of the third party was then President of said corporation; that said agreement was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

[signature]
SIGNATURE

CORPORATE SEAL

Tonita Porter

**APPROVAL**

The aforesaid agreement between the purchaser and third party is hereby recognized and approved at Springerville AZ, under the conditions stated therein this 16 day of October, 1992.

| SIGNATURE OF APPROVING OFFICER | TITLE |
|---|---|
| [signature] | C.O. |

STJ-4

FS-2400-6T, Page 101 (10/73)

| U.S. DEPARTMENT OF AGRICULTURE<br>FOREST SERVICE<br>**TIMBER SALE CONTRACT**<br>(Applicable to Sales to be Measured Before Felling) | | NAME OF PURCHASER<br>Precision Pine and Timber, Inc. Mod #5<br>P.O. Box 70<br>Heber AZ 85928 | |
|---|---|---|---|
| NATIONAL FOREST<br>Apache-Sitgreaves N.F. | RANGER DISTRICT<br>Heber 05 | REGION<br>Southwestern 03 | CONTRACT NO.<br>001582 |
| SALE NAME<br>St. Joe Timber Sale | | SUBREGION | AWARD DATE 04/14/92 / TERMINATION DATE 12/31/96 |

The parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and Precision Pine and Timber, Inc. P.O. Box 70, Heber AZ 85928 a corporation organized and existing under the laws of the State of Arizona, and hereinafter called Purchaser.

2/ Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit, was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement; and the parties hereto desiring to record their agreement; now therefore,

In consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

This contract consists of three Divisions: AT - Specific Conditions, BT - Standard Provisions, and CT - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division CT. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division CT-Special Provisions.

**IN WITNESS WHEREOF**, the parties hereto have executed this contract as of the award date.

**UNITED STATES OF AMERICA**

BY Robert J. Leaverton

Contracting Officer
(Title)

Two Witnesses: 3/

(Name)

(Address)

(Name)

(Address)

Precision Pine and Timber, Inc.
(Purchaser) 4/

BY [signature]

* President
(Title)

P.O. Box 70
(Business Address)
Heber AZ 85928

I, 5/ Tonita Porter, certify that I am the ______

Secretary of the corporation named as Purchaser herein; that * who signed this contract on behalf of Purchaser, was then * of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

Tonita Porter

CORPORATE SEAL 6/

1