**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, | ) | |
| v. | ) | No. 98-720C (Judge George W. Miller) |
| THE UNITED STATES, Defendant. | ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: December 30, 2004

# TABLE OF CONTENTS

**PAGE**


Table of Authorities .......... ii

INTRODUCTION .......... 1

STANDARD FOR RECONSIDERATION .......... 2

ARGUMENT .......... 3

I. The Court Was Manifestly In Error In Finding That Precision Pine Had Not Established A Genuine Issue Of Material Fact That Its Increased Costs Of Interest Were A Foreseeable Result Of The Forest Service's Breach Of Contract .......... 3

II. The Court Made A Manifest Error of Law In Not Concluding That The Recovery Of Increased Interest Costs On Both Existing And New Borrowing Is Not Prohibited As An Item Of Common Law Damage .......... 5

III. Additionally And In the Alternative, The Court Was Manifestly In Error In Failing To Conclude That Precision Pine Had Submitted Sufficient Evidence To Go To Trial On The Issue Of Whether The Increased Costs Of Interest Are Recoverable Under The Contract .......... 15

IV. Precision Pine Seeks Clarification As To The Status Of Its Claim Preparation Cost Damages .......... 22

CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**CASES** **PAGE**

Anderson v. Lloyd's Feed Service,
443 N.W.2d 208 (Minn. Ct. App. 1989) ........ 9-10

Automation Fabricators & Engineering Co.,
PSBCA No. 2701, 90-2 BCA ¶ 22,943 ........ 19

Bank United of Texas, F.S.B. v. United States,
50 Fed. Cl. 645 (2001), aff'd in part, rev'd in part, 80 Fed. Appx. 633
(Fed. Cir. 2003), cert. denied, 126 S.Ct. 33 (Oct. 4, 2004)) ........ 5, 8

Blue Cross Assoc. and Blue Shield Assoc.,
ASBCA No. 21113, 82-2 BCA ¶ 15,966 ........ 19

Bluebonnet Sav. Bank, F.S.B. v. United States,
47 Fed. Cl. 156 (2000) ........ 6, 7

Bluebonnet Sav. Bank, F.S.B. v. United States,
266 F.3d 1348 (Fed. Cir. 2001) ........ *passim*

England v. Contel Advanced Systems,
384 F.3d 1372 (Fed. Cir. 2004) ........ 13

Entwistle Co. v. United States,
6 Cl. Ct. 281 (1984) ........ 18

Everett Plywood Corp. v. Unites States,
651 F.2d 728 (Ct. Cl. 1981) ........ 9

Excavation-Construction, Inc.,
ENGBCA No. 3858, 82-1 BCA ¶ 15,770 ........ 19

Hoffman Construction Co. v. United States,
7 Cl. Ct. 518 (1985) ........ 19

Holland v. United States,
59 Fed. Cl. 735 (2004) ........ 7

Holland v. United States,
2004 WL 2827932 (Fed. Cl. Dec. 2, 2004) ........ 2, 8

Imdieke v. Blenda-Life, Inc.,
363 N.W.2d 121 (Minn. Ct. App. 1985) ....................9

JGB Enterprises, Inc. v. United States,
No. 01-680C (Fed. Cl. Dec. 21, 2004) ....................9

Joseph Bell v. United States,
186 Ct. Cl. 189, 404 F.2d 975 (1968) ....................16, 17, 19

Little River Lumber Co. v. United States,
21 Cl. Ct. 527 (1990) ....................19

Mass. Bay Transp. Auth. v. United States,
129 F.3d 1226 (Fed. Cir. 1997) ....................3, 22

Max Drill, Inc. v. United States,
427 F.2d 1233 (Ct. Cl. 1970), quoting Kraus v. United States, 366 F.2d 975 (Ct. Cl. 1966) ....................21

Myerle v. United States,
33 Ct. Cl. 1 (1897) ....................7, 11, 12, 13

Newell Companies, Inc. v. Kenney Mfg. Co.,
864 F.2d 757 (Fed. Cir. 1988), cert. denied, 493 U.S. 814 (1989) ....................15

Olin Jones Sand Co. v. United States,
225 Ct. Cl. 741 (1980) ....................3

Precision Pine & Timber, Inc. v. United States,
No. 98-720C, 2004 WL 2717480 (Nov. 23, 2004) .................... *passim*

Ramsey v. United States,
101 F. Supp. 353 (Ct. Cl. 1951), cert. denied, 343 U.S. 977 (1952) ....................12

Reidhead Bros. Lumber Mill, Inc.,
AGBCA No. 2000-126-1, 01-2 BCA ¶ 31,846 ....................20, 23

S.S. Silberblatt v. United States,
3 Cl. Ct. 644 (1983) ....................16, 18, 19, 22

S.S. Silberblatt, Inc. v. United States,
228 Ct. Cl. 729, 731 (1981) ....................16, 17

S.S. Silberblatt, Inc.,
PSBCA No. 297, 80-1 BCA ¶ 14,263 ....................17

S.S. Silberblatt, Inc.,
PSBCA No. 297, 82-2 BCA ¶ 16,096, aff'd, 3 Cl. Ct. 644 (1983)............................17, 18

Scott Timber Co. v. United States,
No. 94-784C (Fed. Cl. July 11, 2001) ....................................................................21

Scott Timber Co. v. United States,
No. 94-784C (Fed. Cl. July 8, 2002).......................................................................22

Sullivan, Inc. v. Double Seal Glass,
480 N.W.2d 623 (Mich. Ct. App. 1981), appeal denied, 498 N.W.2d
7373 (Mich. 1993) ...................................................................................................9

Tomahawk Const. Co.,
ASBCA No. 45071, 94-1 BCA ¶ 26, 312 ...............................................................19

Wells Fargo Bank, N.A. v. United States,
88 F.3d 1012 (Fed. Cir. 1996)...........................................................................3, 11

Wells Fargo Bank, N.A. v. United States,
33 Cl. Ct. 233 (1992), aff'd in part, rev'd in part, 88 F.3d 1012 (Fed. Cir. 1996),
cert. denied, 520 U.S. 1116 (1997) ................................................................. 10-11

Westfed Holdings, Inc. v. United States,
52 Fed. Cl. 135 (2002) ......................................................................................9, 12

Westfed Holdings, Inc. v. United States,
55 Fed. Cl. 544 (2003) ........................................................................................5, 9

**STATUTES AND REGULATIONS**

28 U.S.C. § 2516(a) ..........................................................................................12

RCFC 59 ..................................................................................................................1

Rev. Stat. § 1901 ....................................................................................................12

**MISCELLANEOUS**

*Application Of 28 USCS § 2516(a) To A Government Contractor's Claim For Interest Expense Or For Loss Of Use Of Its Capital Caused By Delay Attributable To Government*, 59 A.L.R. Fed. 905 (1982).................................................18

RESTATEMENT (SECOND) OF CONTRACTS § 344(a) (1981) ....................6

RESTATEMENT (SECOND) OF CONTRACTS § 351, cmt. a....................3

U.C.C. § 2-715 ....................9

Pursuant to Rule 59 of the Rules of the Court of Federal Claims ("RCFC"), Plaintiff Precision Pine & Timber, Inc. ("Precision Pine") respectfully submits the following Motion For Reconsideration and Clarification of the Court's November 23, 2004 ruling on Defendant's Motion for Partial Summary Judgment Regarding Damages. The instant motion seeks reconsideration solely with respect to that portion of the Court's ruling which denied Precision Pine's claim for increased interest costs and also seeks clarification with respect to the issue of the recoverability of the cost of the time Precision Pine's employees spent in preparing its claims.

**INTRODUCTION**

In deciding Defendant's Motion For Partial Summary Judgment Regarding Damages, the Court found that, as a matter of law, Precision Pine could not recover its increased interests costs as an item of damage. Precision Pine & Timber, Inc. v. United States, No. 98-720C, slip op. at 17-19, 2004 WL 2717480 (Nov. 23, 2004). The Court's opinion was founded on the premise that:

> [T]he interest payments incurred by Precision Pine were on outstanding debt, which was not incurred as a result of, or in connection with, the MSO suspension. *See* Def's Opp. at 79.

Id. at 18. From this premise, the Court found that such interest payments could not be recovered as a matter of law under a common-law, breach of contract theory finding that:

> The outstanding loans constitute independent and collateral undertakings and the increased interest payments are too remote and speculative to be recoverable. *See generally Wells Fargo*, 88 F.3d at 1022; *Olin Jones Sand Co.*, 225 Ct. Cl. 741, 742-743 (1980).

Id. The Court also determined that Precision Pine's interest damages could not be recovered under contract clause CT 6.01:

> The Court also holds that Precision Pine cannot recover these damages under clause CT6.01 of the contracts. The increased interest payments on the outstanding debt are not "a direct result of . . . [the] delay," within the meaning of CT 6.01. *Scott Timber*, slip op. at 9.

Id. However, as demonstrated below, the Court's factual predicate is mistaken and its legal holdings are manifestly incorrect and therefore Precision Pine should be afforded an opportunity to present evidence at trial as to its increased interest costs.[1]

## STANDARD FOR RECONSIDERATION

The appropriate standard for review of a motion for reconsideration in this Court has recently been restated as follows:

> United States Court of Federal Claims Rule ("RCFC") 59 provides that "reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The decision to grant a motion for reconsideration is within the Court's sound discretion. Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). To prevail upon such a motion in this court, the movant must point to a manifest error of law or mistake of fact. Coconut Grove Entm't, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999).

Holland v. United States, 2004 WL 2827932, at *1 (Fed. Cl. Dec. 2, 2004).[2]

---

[1]As the Court will recall, on July 26, 2004, Precision Pine sought leave to file a sur-reply in support of its opposition to defendant's motion. Among the issues Precision Pine sought to address were defendant's misleading treatment of Bluebonnet Sav. Bank, F.S.B. v. United States, 266 F.3d 1348 (Fed. Cir. 2001), and defendant's misstatement of the evidence related to the foreseeability of damages; however, the Court denied Precision Pine's motion.

[2]The instant motion is timely because Precision Pine seeks reconsideration of the Court's ruling on a motion for partial summary judgment, a non-final order, "which can be the subject of motion for reconsideration at any time before final judgment." Rules of the United States Court of Federal Claims, Rule 59, note.

## ARGUMENT

I. The Court Was Manifestly In Error In Finding That Precision Pine Had Not Established A Genuine Issue Of Material Fact That Its Increased Costs of Interest Were A Foreseeable Result Of The Forest Service's Breach of Contract

Precision Pine's claim for increased interest costs simply seeks the recovery of damage it sustained as a result of the government's prolonged suspension. That is, Precision Pine does not seek to recover interest that it would have paid had there been no suspension, but rather seeks those increased amounts of interest incurred and paid by it that were caused by the Forest Service's breach of 11 timber sale contracts. As such, the recovery of these damages is governed by the well-established law of this Circuit regarding the recovery of consequential damages. As Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741 (1980), a case cited with approval by this Court, found:

> [I]t is clear from *Gardner* and *Ramsey, supra,* that [consequential] damages are barred only when they are remote or speculative and are available where they are directly and proximately caused by the contract breach. . . .

Id. at n.3.[3]

In the instant case, Precision Pine presented considerable evidence that its increased interest costs was an item of damage that it incurred as a direct result of the Forest Service's prolonged suspension and breach of 11 of its timber sale contracts. Plaintiff's expert, Mr. Ness,

[3]This formulation has been adhered to by the Federal Circuit which has consistently found that damages which result from the government's breach of a contract and "are not 'too remote, speculative or consequential'" are recoverable. Mass. Bay Transp. Auth. v. United States, 129 F.3d 1226, 1232 (Fed. Cir. 1997) (emphasis added) (citing Wells Fargo Bank, N.A. v. United States, 88 F.3d 1012, 1022-22 (Fed. Cir. 1996)); see also RESTATEMENT (SECOND) OF CONTRACTS § 351, cmt. a ("It is enough . . . that the loss was foreseeable as a probable, as distinguished from a necessary, result of his breach").

in his report (Appendix to Plaintiff's Response at 221, 224 [hereinafter "P. App."]) and at his deposition (P. App. 533-34), testified that Precision Pine incurred increased interest costs on existing loans, the terms of which had to be refinanced and extended because of the suspension. Moreover, in order to finance its operations Precision Pine also had to enter into several new loans as a result of the suspension.

Thus, it is not factually correct to say, as this Court found, that "the interest payments incurred were on outstanding debt, which was not incurred as a result of, or in connection with, the MSO suspension. See Def's Opp. at 79." Precision Pine, slip op. at 18. Indeed, the origin of this citation, the only citation to the record in the Court's treatment of Precision Pine's increased interest claim, is unclear. That is, defendant did not file any "opposition," and neither defendant's Moving Brief nor its Reply Brief was 79-pages in length. Additionally, nothing at page 79 of the appendices filed by defendant supports this finding of fact. Although, Precision Pine's brief at page 79 does discuss the issue of interest as an item of damages, at a page earlier in its brief, Precision Pine makes clear that it is seeking **increased** interest on existing loans and loans refinanced **due to** the suspension. (See Plaintiff's Response at 78-79 [hereinafter "Pl's Resp."]). Thus, the Court's ruling is not grounded in any facts of record and ignores considerable contrary factual evidence presented by Precision Pine.

Indeed, on the issue of foreseeability, Precision Pine also presented, among other things, the sworn declaration of Ronald D. Lewis, a thirty-year veteran of the Forest Service timber sale program, who testified without contradiction that:

> The Forest Service was also fully aware, given the capital-intensive nature of the timber business (i.e., the need for a substantial investment in sawmill plant and equipment), that purchasers frequently had substantial amounts of outstanding debt which they paid off out of the proceeds of their operations.

(Declaration of Ronald D. Lewis at ¶ 18 [hereinafter "Lewis Decl."]; P. App. 636-37).[4] This unrebutted testimony that such damages were foreseeable by the Forest Service, coupled with the testimony of Precision Pine's expert, Mr. Ness, that the increased interest costs resulted from the suspensions, is sufficient to raise a genuine of material fact. Defendant pointed to no facts of record demonstrating that it did not have reason to foresee increased borrowing by Precision Pine as a result of a breach of the magnitude and duration of the breach that was imposed on Precision Pine. In any event, such questions of foreseeability are fact intensive and therefore best resolved at trial; accordingly, plaintiff should be permitted to go to trial on the issue.

II. The Court Made A Manifest Error Of Law In Not Concluding That The Recovery Of Increased Interest Costs On Both Existing And New Borrowing Is Not Prohibited As An Item Of Common Law Damage

In opposing the government's motion for partial summary judgment, Precision Pine cited authority, including binding authority of the Federal Circuit, recognizing the recoverability of increased interest costs as an item of damage. See, e.g., Bluebonnet Sav. Bank, F.S.B. v. United States, 266 F.3d 1348 (Fed. Cir. 2001); Bank United of Texas, F.S.B. v. United States, 50 Fed. Cl. 645 (2001), aff'd in part, rev'd in part, 80 Fed. Appx. 633. (Fed. Cir. 2003), cert. denied, 126 S.Ct. 33 (Oct. 4, 2004) (Mem.); Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544 (2003). The Court's attempt to distinguish these cases does not undercut the central point for which they

[4] In this regard, this Court also observed it was likely long known to the Forest Service that ". . . the logging season is restricted and a suspension can cause a contractor to lose an entire year of production and such a loss can result in lost profits and several sawmills going out of business permanently." Precision Pine, slip. op. at 10.

were cited, i.e., that the recovery of increased interest costs as an item of damage is not prohibited as a matter of law and recovery of such damages may be had at trial.

In Bluebonnet, the Court of Federal Claims denied Bluebonnet's increased cost of financing damages, however, it did so only after a trial. Bluebonnet Sav. Bank, F.S.B. v. United States, 47 Fed. Cl. 156, 186 (2000). In reviewing and reversing the trial court's decision, the Federal Circuit described the damages that plaintiff sought to recover:

> Bluebonnet seeks to recover the increase in financing costs caused by the passage of FIRREA which breached the capital, subordinated debt, and dividend forbearances. Bluebonnet argues that the government knew or should have known that Fail and CFSB lacked adequate capital to acquire Bluebonnet and intended to rely on dividends distributed from Bluebonnet to CFSB to help finance the cost of acquisition. The breach of the three forbearances, it argues, increased the risk of the acquisition, making financing harder to find and ultimately more expensive (including additional interest on indebtedness, higher fees paid to lenders, and the cost of the EBA and its successor agreements).

Bluebonnet, 266 F.3d at 1355 (emphasis added).[5] Thereafter, the Federal Circuit analyzed the claim seeking the recovery of increased interest costs just as it would any other item of damages and, having determined that the damages were caused by the breach and were foreseeable, awarded the additional interest costs to plaintiffs. Id. at 1355-57.[6]

---

[5]The court also noted that a party's expectation interest is the "interest in having the benefit of the bargain by being put in as good a position as he would have been in had the contract been performed." Id. (quoting RESTATEMENT (SECOND) OF CONTRACTS § 344(a) (1981)). Precision Pine, in seeking to recover the benefit of its bargain, simply seeks the opportunity to demonstrate at trial that its increased cost of interest claim meets the test for expectation damages.

[6]The Court also reiterated the blackletter law of this Circuit that foreseeability is a question of fact. Id. at 1355. As this Court has also observed, the award of the increased financing costs (i.e., interest) in Bluebonnet turned on the issue of foreseeability. Precision Pine, slip op. at 18 ("The government is not persuasive when it asserts that is was unforeseeable at the time of contract execution that the breach of the forbearances would lead to increased financing

Additional evidence that the Federal Circuit treats a claim of interest damage just as it would as any other item of expectation damages is also found in Bluebonnet. That is, in Bluebonnet, following a trial, the Court of Federal Claims had also denied another aspect of plaintiffs' damage claim seeking what the court had termed "interest and fees" simply because: "The law of this circuit prohibits plaintiffs from recovering interest paid on money borrowed as result of defendant's breach." 47 Fed. Cl. 156, 183 (citing, Myerle v. United States, 33 Ct. Cl. 1, 25 (1897)). As an alternative ground for denying the interest claim, the trial court also found that the evidence presented at trial on this item of damage was flawed. Id. at 184. On appeal, the Federal Circuit affirmed the court's ruling denying the interest on borrowing caused by the breach, not on the basis that such costs were too remote, but rather, solely because the evidence presented at trial on this point had been insufficient. Bluebonnet, 266 F. 3d at 1358. Indeed, the Federal Circuit expressly refused to affirm the trial court's alternative holding that such interest damages were unrecoverable as a matter of law stating "We need not address and express no opinion on the court's alternative grounds for denying an award of non-EBA [i.e., interest on borrowing] damages." Id. Thus, in addition to reversing the trial court and awarding interest as an item of expectation damages in Bluebonnet, the Federal Circuit also expressly declined to affirm a blanket rule that other interest damages were not recoverable as a matter of law.[7]

costs for [plaintiffs]" (citing Bluebonnet, 266 F.3d at 1355)). As demonstrated in the opening section, Precision Pine has presented ample evidence establishing a genuine issue of material fact as to the foreseeability of Precision Pine's increased interest damages to the Forest Service and, therefore, Precision Pine is entitled to a similar factual investigation here.

[7]This Court has recognized that Bluebonnet addressed claims for "additional interest on indebtedness and higher fees to lenders" and has applied Bluebonnet to allow a plaintiff to pursue its increased interest costs beyond summary judgment. Holland v. United States, 59 Fed. Cl. 735, 741 (2004). Although this Court recently reconsidered its ruling in Holland, it did so on the basis that a corporate entity, and not plaintiff Holland, had sustained the increased interest

A similar result was reached in Bank United of Texas where the Court of Federal Claims, again after a trial, found that due to the government's breach of contract by passing legislation that changed the treatment of regulatory goodwill for accounting purposes, Bank United had been temporarily prevented from acquiring other banks. 50 Fed. Cl. at 661. During that time, plaintiffs had entered into new transactions to borrow funds, set up an entirely new corporate entity, and infused the new entity with the borrowed funds so that that the new entity could acquire banks. Id. As part of its breach of contract damages, plaintiffs sought to recover the interest paid on borrowed funds and were awarded millions of dollars in what were indisputably interest costs incurred as a result of collateral borrowing obtained to enter into new business transactions following the government's breach. Id. at 665. This ruling was not disturbed on appeal. See Bank United of Texas, 80 Fed. Appx. 663.[8]

The situation in Bank United of Texas applies directly to the instant case because Precision Pine is not attempting to recover either interest costs for which it would have been responsible had there been no breach or interest that it would have earned on the profits of the contracts had there been no suspension, but rather seeks to only recoup as damages those

costs. Holland v. United States, 2004 WL 2827932, *3. No such impediment exists in the instant case and the reasoning of the Court's original opinion in Holland should be applied here.

[8]As this Court correctly observed, Bank United of Texas treated the interest payments it awarded as a cost of "mitigating" the breach. Precision Pine, slip op. at 18 (citing 50 Fed. Cl. at 665). Of course, the same can be said of Precision Pine's increased cost of interest damages. That is, during the 16 months that its primary source of timber was suspended, Precision Pine could have refused to refinance its outstanding debt, defaulted on its loans and sought to recover the increased damages it would have sustained as a result from the government. It did not do so, but rather refinanced its debt and continued to make some interest payments in an effort to weather the government's improper suspension, thereby, mitigating the damages it sustained. In any event, simply renaming interest payments as "mitigation costs" seems to be a distinction without a difference with respect to how such costs should be treated under the law.

increased interest costs that were foisted on it as a direct result of the government's protracted suspension and breaches of 11 of its contracts.[9]

In directly analogous circumstances, several cases decided under U.C.C. § 2-715 governing the recovery of a buyer's incidental and consequential damages have awarded increased interest costs as an item of damage where such costs were incurred due to a seller's breach of contract.[10] In Anderson v. Lloyd's Feed Service, 443 N.W.2d 208, 210-11 (Minn. Ct. App. 1989), plaintiffs, pig farmers, were awarded interest payments on three general business loans that plaintiffs claimed would have been paid-off sooner but for defendant's sale of defective pig feed which resulted in business losses. See also Imdieke v. Blenda-Life, Inc., 363 N.W.2d 121, 125 (Minn. Ct. App. 1985) (Plaintiff, dairy farmer, allowed to recover interest on loan to cover operating expenses that was made necessary by defendant's sale of feed which killed a number of the farmer's dairy cows); Sullivan, Inc. v. Double Seal Glass, 480 N.W.2d 623, 633 (Mich. Ct. App. 1991), appeal denied, 498 N.W.2d 7373 (Mich. 1993) (Plaintiff

---

[9]In Westfed Holdings, Inc. v. United States, 52 Fed. Cl. 135, 163-64 (2002), the court denied the government's motion for summary judgment with respect to increased costs of interest for which, as here, plaintiff had presented evidence that it was foreseeable to the government that plaintiff would incur increased interest cost as a result of the breach. The court noted that plaintiff would not be allowed to recover claims for interest that had not actually been paid, but left that issue to be resolved at trial. Id. Based on proof at trial, the court awarded $43.696 million in increased interest that plaintiff had paid as a result of the government's breach. Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544, 560 (2003).

[10]The U.C.C. has frequently been used as an aid to the proper interpretation of Forest Service timber sale contracts. See, e.g., Everett Plywood Corp. v. United States, 651 F.2d 728 (Ct. Cl. 1981). Moreover, this Court has just found that "a contract with the United States is to be construed and the rights and duties of the parties determined by application of the same principles of law as if the contract were between private individuals. . . ." JGB Enterprises, Inc. v. United States, No. 01-680C, slip op. at 16 (Fed. Cl. Dec. 21, 2004).

allowed to recover interest on money borrowed as a result of costs incurred due to defective windows provided by defendant). The rationale governing the recoverability of interest as an item of a buyer's damage under the U.C.C. has been stated as follows:

> [I]nterest as an item of damages is generally interest incurred and paid by a plaintiff as a result of additional borrowings made necessary by defendant's breach of contract. It is recoverable in Michigan, . . . under general principles governing damages where the seller had reason to know of the borrowing . . . or where the parties could reasonably foresee the additional interest incurred as potential loss in event of the breach at the time the contract was made.

Id. at 633 (emphasis added, numerous citations omitted). In the instant case, as a direct result of the breach, Precision Pine's level of borrowings were higher than they otherwise would have been. Concomitantly, its cost for interest on outstanding borrowings was also higher than it otherwise would have been. It also incurred interest costs on borrowing that would not have occurred in the absence of the government's breach. These are the increased interest costs that Precision Pine seeks to recover.

Under the well-established law of this circuit, as well as in everyday commercial transactions under the U.C.C., increased interest costs are recoverable and, where as here, plaintiff has presented evidence that such damages were foreseeably caused by defendant's breach of contract, plaintiff is entitled to go to trial on the merits of its claim.

The other cases cited by the Court in denying Precision Pine's claim for increased costs of interest as an item of common-law damages do not prevent Precision Pine from going to trial on the merits of its claim. That is, in Wells Fargo Bank, N.A. v. United States, 33 Cl. Ct. 233, 236 (1992), aff'd in part, rev'd in part, 88 F.3d 1012, 1023 (Fed. Cir.1996), cert. denied, 520

U.S. 1116 (1997), the Court of Federal Claims only reached the question of interest after a trial on the merits. Indeed, there plaintiff was permitted to go to trial on a "lost interest" claim that was based on loans which, because of the government's breach, plaintiff had never even entered into. Id. at 236.[11]

In denying Precision Pine's claim, this Court also quoted at length from the decision in Myerle v. United States, 33 Ct. Cl. 1 (1897), regarding the recoverability of lost profits (not increased interest costs), which the Court then analogized to Precision Pine's claim for interest as an item of damage. Precision Pine, slip op. at 18. The Court's analogy is, however, flawed because Precision Pine is not seeking the recovery of estimated profits it purportedly would have made on subsequent transactions that it was precluded from entering into. Rather, Precision Pine seeks only to recover the amounts it actually paid in interest on that portion of its borrowing that remained or came into existence as a result of the government's breach.

Moreover, no recourse by way of analogy to Myerle's treatment of lost profits is necessary, as Myerle, 33 Ct. Cl. 1, itself actually addressed the issue of interest on borrowings as follows:

> As to the interest on borrowed money: The delay forced the contractor to borrow money to carry on his contract; for this he was forced to pay interest, an extra expense. The recovery of this sum in this court is forbidden by statute: whether it be claimed in the guise of a damage caused by delay, or in some other form, it remains in fact a claim for interest, and such a claim we are prohibited from allowing. (Rev. Stat., § 1091). The distinction by plaintiff sought to be made, is one of terms only, not of substance.

---

[11] Although the Federal Circuit in Wells Fargo reversed the award of interest on loans that were never made, it did so on the grounds that the amount of such loans was speculative, a problem not present in the instant case. See Wells Fargo, 88 F.3d at 1023-23.

Id.

Rev. Stat. § 1091 relied upon by the court in Myerle has been recodified and provides that "Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof." 28 U.S.C. § 2516(a) (emphasis added). Obviously, had Congress sought to do so, it could have simply denied the recoverability of all "interest" against the United States, including interest when it is a cost actually incurred and paid that is otherwise recoverable as an item of common law breach damages. However, it did not do so, and thereby clearly left open the ability of a damaged contractor to recover such increased interest costs as a traditional item of consequential damages available at common law. In any event, it is established that the statutory prohibition against interest on a claim does not preclude the recovery of interest as a claim, i.e., as an item of damage. Westfed Holdings, Inc. v. United States, 52 Fed. Cl. 135, 163 (2002). Thus, Myerle, whether in its discussion of lost profits or interest damages, does not preclude Precision Pine's claim here.

It is important to note that the law in this Circuit suggesting that interest is not recoverable as an item of damage originated in the traditional procurement context, i.e., where the government, as a buyer, is either late or fails altogether to make payment for goods or services for which it has contracted. See Ramsey v. United States, 101 F. Supp. 353, 355 (Ct. Cl. 1951), cert. denied, 343 U.S. 977 (1952) ("The performance of the Government consisted of its obligation to pay the amount of money finally found to be due the corporation, and the breach of

the contract which resulted in the alleged damage to the corporation was the failure of the Government to pay the amounts allegedly due the corporation within a reasonable time after . . . the caskets were delivered"). In such cases where the government is acting as a buyer (i.e., its contractual obligation is to pay money), it may well be that the seller did not incur or pay any interest for which it seeks reimbursement.[12] Moreover, in that circumstance the seller's increased costs of interest are more likely to be neither the direct result of the breach nor foreseeable to the government.[13] Additionally, in most instances, such claims are also more appropriately characterized as "interest on an underlying claim" (the unpaid purchase price), the recovery of which has long been barred by statute. Of course, the instant situation is quite different. Here, the Court is presented with a common law breach of contract action in which the government had contracted to supply raw material to an ongoing business as part of a relationship between the parties stretching back more than a decade prior to the breach. The government was aware that Precision Pine was substantially dependant upon the Forest Service timber sale program as its primary source of raw material (Declaration of Robert Leaverton at 63 [hereinafter "Leaverton Decl."], P. App. 508; Declaration of Lewis Tenney at 163 [hereinafter "Tenney Decl."], P.610; Declaration of Lorin Porter at 5 [hereinafter "Porter Decl."], P. App.

---

[12]I.e., the seller may simply be seeking compensation for the delay in being paid.

[13]Such was also the case in England v. Contel Advanced Systems, 384 F.3d 1372, 1379 (Fed. Cir. 2004), where the "[plaintiff] is seeking to recover interest it paid on money it was forced to borrow as a result of the Navy's delay in reconciling the LTO price." Moreover, the cases relied on by the court in Contel stand for the same proposition. (The no interest rule has been held to bar ". . . interest costs incurred on money borrowed as a result of the government breach or delay in payment." Id. (string citation, including Myerle, omitted).) By contrast, as noted, Precision Pine primarily seeks to recover the increased cost of interest on existing loans caused by the government's failure as seller to timely deliver raw materials vital to the ongoing business entity, something not precluded by Contel.

649) and that a lengthy suspension (albeit one considerably shorter than the one that actually occurred) would likely have a substantial negative effect on the businesses with whom it had contracts. Precision Pine, slip op. at 10. Moreover, it is also the law of the case that the government's protracted 16-month suspension breached the contracts at issue. In such circumstances, as the Winstar-line of cases make clear, the law of this Circuit as to the recovery of consequential damages applies and a cost is not unrecoverable simply because it is interest.[14]

Here, due to the suspension, Precision Pine had to refinance its loans and pay them off over a longer period, thereby incurring greater interest expense. It also incurred new loans that it otherwise would not have incurred had there been no suspension. Thus, where as here, such increased costs of interest are plainly foreseeable as a probable result of the breach, they are recoverable.[15] Because Precision Pine has presented evidence both that Forest Service personnel

---

[14]In the Winstar cases, the government's breach was its failure to continue to provide banks with certain preferential treatment to regulatory capital, a situation which is only slightly removed from the traditional procurement setting where the government breaches a contract by failing to make payment. Nevertheless, increased costs of interest have been found to be recoverable in the Winstar cases. In the instant case, where the government's breach is the failure to provide raw material which the government foresees will necessarily halt the contractor's business operations in substantial part, increased costs of interest should be even more readily recoverable.

[15]Contel Advanced Systems suggests that a "no interest rule" exists which is "an aspect of the basic rule of sovereign immunity." 384 F.3d at 1379. However, a finding that sovereign immunity precludes interest as an item of damage (rather than just interest on a claim) would render impossible the award of what is indisputably interest in the Federal Circuit cases cited by Precision Pine. Neither of these cases is discussed in Contel, however, as explained in the persuasive dissent of Judge Newman in Contel, 384 F.3d at 1381-83, sovereign immunity, properly understood, does not shield the government from liability from costs, including interest, which its breach of contract imposes on contractors. Id. at 1382. Thus, the split-decision of the panel in Contel cannot be squared with the unanimous decisions of the panel in Bluebonnet, 266 F.3d 1348. In this regard, the Federal Circuit:

were, not surprisingly, aware that increased interest costs could be incurred due to a protracted suspension and that Precision Pine's increased costs of interest were, in fact, caused by the protracted suspension, i.e., that, at a minimum, the suspension was a substantial factor in causing Precision Pine to incur and pay interest costs far greater than would have been the case had there been no suspension. Precision Pine should, at least, be permitted to go to trial on this item of damage.

## III. Additionally And In The Alternative, The Court Was Manifestly In Error In Failing To Conclude That Precision Pine Had Submitted Sufficient Evidence To Go To Trial On The Issue Of Whether The Increased Costs Of Interest Are Recoverable Under The Contract

Forest Service clause CT6.01 (6/90) provides in part that:

> Purchaser agrees that in event of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (1) Contract Term Adjustment . . ., or (2) . . . Contract Term Adjustment . . . plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do not include lost profits, replacement costs of timber, or any other anticipatory losses suffered by the Purchaser. Purchaser agrees to provide receipts and other documentation to the Contracting Officer which clearly identify and verify actual expenses.

Clause CT6.01 indicates that the government both foresaw that a suspension would impose out-of-pocket costs on a contractor and agreed to compensate the contractor for such

---

> has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc.* [Citations omitted]. Where there is direct conflict, the precedential decision is the first.

Newell Companies, Inc. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed. Cir. 1988), cert. denied, 493 U.S. 814 (1989). Accordingly, the earlier decided opinion in Bluebonnet permitting the recovery of interest as an item of damage remains the law of this Circuit and are binding on this Court.

costs. Moreover, although the Forest Service disclaimed liability for certain specific expenses such as lost profits, it failed to disclaim liability for increased interest costs. Indeed, there can be no doubt that the increased interest paid by Precision Pine is an "out-of-pocket" expense, that is not precluded by the categories of damages excluded under the clause. In such circumstances, it is well-established that increased interest incurred on existing loans as a direct result of delay in contract performance due to the government's invocation of a suspension of work clause is a reimbursable cost of performance. See S.S. Silberblatt v. United States, 3 Cl. Ct. 644, 646 (1983) (citing S.S. Silberblatt, Inc v. United States, 228 Ct. Cl. 729, 731 (1981)); see also Joseph Bell v. United States, 186 Ct. Cl. 189, 404 F.2d 975, 987 (1968) (awarding increased interest costs under the Changes clause).[16] As demonstrated below, in circumstances applicable here, the courts have awarded increased costs of interest under the contract.

---

[16]In Bell, the Changes clause provided that:

> If such changes cause an increase or decrease in the amount of work under this contract or in the time required for its performance an equitable adjustment shall be made.

404 F.2d at 977. From this, the Court of Claims determined that recovery could be had under that clause where the claim presented was not interest on money that the government had delayed in paying, but rather increased costs imposed by the government:

> The "Changes" article thus contemplated that increased costs on borrowed money could be "in the very same category as more tangible costs of construction." [Citations omitted]. Conversely, the amounts sought by these plaintiffs are not compensation for the Government's delay in making payment, as in . . . "breach" cases [where] claimants had to borrow money because the Government did not timely pay them sums due and owing.

Id. at 984 (emphasis added).

In S.S. Silberblatt, Inc v. United States, 228 Ct. Cl. 729 (1981), the government had suspended a contractor's operations under the a suspension of work clause[17] and the contractor claimed its increased interest payments resulting from the delay as a cost of performance under the contract. An underlying Postal Board decision denied the claim:

> a contractor is entitled to receive payment for interest on borrowings only when the contractor clearly demonstrates that its borrowings were incurred or increased as the direct result of a requirement for additional funds to finance a contract change or a government caused delay.

Id. (emphasis added).

In reversing the Board's decision, the Court of Claims held that:

> We hold that the Board has misconstrued our decision in the cited cases; that our decision in Bell has not been modified or limited, and that the contractor is entitled to recover extra interest paid or incurred on existing loans as a direct result of the Government's delay.

Id. (emphasis added). On remand for a determination of the amount of recovery allowable for the two loans at issue, the Postal Board found that the contractor had not suffered any increased interest cost on a $17 million loan because it was a fixed rate, 30-year loan for which neither the start-date nor the pay-off date was altered by the 3½ month delay. S.S. Silberblatt, Inc., PSBCA No. 297, 82-2 BCA ¶ 16,096, at 79,916-17, aff'd, 3 Cl. Ct. 644 (1983). However, the Board did

[17] The clause at issue in Silberblatt was titled "Price Adjustment For Suspension, Delay Or Interruption Of The Work" which provided that:

> an adjustment will be made in the contract price by the Contracting Officer for any increase in the cost of performance of the contract (excluding profit) necessarily caused by the unreasonable period of such delay, suspension or interruption.

S.S. Silberblatt, Inc., PSBCA No. 297, 80-1 BCA ¶ 14,263, at 70,256.

permit recovery of more than $29,000 in interest on a one million dollar loan which, but for the delay, would have been paid off. Id.; see also Entwistle Co. v. United States, 6 Cl. Ct. 281, 287-88 (1984) (contractor whose operations were delayed for 15 months on a contract with an original term of only 14 months was entitled to recover "excess" borrowings over its "normal" level of borrowing during the final nine months of the delay under Changes clause). The Board also found that for interest costs to be compensable, "appellant's increased interest costs must have increased the cost of contract performance." S.S. Silberblatt, 82-2 BCA ¶ 16,096, at 79,916. However, in deciding a second appeal, the Claim Court phrased the matter slightly differently:

> It is further established that [under the Suspension of Work clause] that additional interest incurred on existing loans as a direct result of delay in contract performance also constitutes a reimbursable cost of performance.

S.S. Silberblatt, Inc. v. United States, 3 Cl. Ct. 644, 646 (1983).[18] Moreover, and perhaps most importantly, whether interest incurred on existing loans was a direct result of a delay in contract

---

[18]See also *Application Of 28 USCS § 2516(a) To A Government Contractor's Claim For Interest Expense Or For Loss Of Use Of Its Capital Caused By Delay Attributable To Government,* 59 A.L.R. Fed. 905, 907 (1982) ("So long as the increased interest expense is a direct result of a government caused delay, the Court of Claims has ruled that a contractor may recover interest on loans existing before the delay as well as interest paid on loans incurred as a result of the delay").

This, plus the cases cited above, such as Silberblatt, regarding recoverability of interest costs incurred with respect to existing loans point out an apparent error in the Court's decision. That is, it appears that the Court's conclusion that defendant was entitled to summary judgment on this item of damages was based, at least in substantial part, on the erroneous legal conclusion that interest can be recovered only with respect to debt that was incurred as a direct result of, or in connection with the wrongful suspension. See Precision Pine, slip op. at 18. As the case law makes clear, contrary to the Court's view of the law, whether the debt was initially incurred as a result of the suspension is not the determinative factor, i.e., interest as an increased cost is recoverable on pre-existing debt which could not be retired as a result of the delay, S.S. Silberblatt, Inc., 3 Cl. Ct. at 646, and on debt that was incurred a result of the delay. Entwistle Co., 6 Cl. Ct. at 287-88.

performance is a question of fact. Id. Accordingly, under Silberblatt, the recovery of interest under a suspension of work clause is not prohibited as a matter of law, but rather involves the resolution of a question of fact.[19]

In the wake of such decisions, a number of government agencies adopted regulations and contract clauses specifically prohibiting the recovery of increased interest costs. See, e.g., Tomahawk Const. Co., ASBCA No. 45071, 94-1 BCA ¶ 26,312, and amendments to FAR Part 31 limiting the recovery of such increased interest costs. However, the FAR does not apply to Forest Service timber sale contracts (see, e.g., Little River Lumber Co. v. United States, 21 Cl. Ct. 527, 534 (1990)) and the Forest Service not only did not preclude the recovery of increased interest costs as an out-of-pocket expense under clause CT6.01 (6/90) in any of the contracts at issue but as discussed supra actually paid interest under CT6.01. Indeed, the Forest Service only included a provision limiting recovery of increased interest of the type which Precision Pine

---

[19]See also Excavation-Construction, Inc., ENGBCA No. 3858, 82-1 BCA ¶15,770, at 78,069 ("It is well-established that, absent a contractual prohibition, interest paid on borrowed funds can be included in increased performance costs for which an owner is responsible under an appropriate contract clause, provided that the borrowings were incurred or extended because of delay or to finance additional work") (emphasis added); Blue Cross Assoc. and Blue Shield Assoc., ASBCA No. 21113, 82-2 BCA ¶15,966, at 79,918 ("[W]e have found that like the out-of-pocket interest on borrowings in Bell, the ROI [Return On Investment] was 'under generally accepted principles' a 'cost of contract performance.' In no sense is the ROI compensation for the Government's delay in making payment. It was a normal cost of doing business that accrued on a day-to-day basis during contract performance. The amount is undisputed and therefore readily ascertainable. Incurrence of the ROI was not dependant upon when the Government made payments under the contract. In addition the ROI was not in the risk factor and cannot be regarded as an element of profit") (emphasis added); Hoffman Construction Co. v. United States, 7 Cl. Ct. 518, 529 (1985) (stating *in dicta* that an equitable adjustment includes compensation for extra interest expenses incurred during a delay); Automation Fabricators & Engineering Co., PSBCA No. 2701, 90-3 BCA ¶ 22,943 (holding that contractor's increased interest costs caused by government delays are compensable).

seeks recovery in a subsequent revision of the clause issued some 11 years later. (Forest Service Timber Sale Contract Clause B6.02 (7/01)).

Moreover, even assuming that there could be some doubt about whether contract clause CT6.01 is ambiguous with respect to the government's obligation to compensate a purchaser for increased interest costs incurred as direct result of the suspension, the record before the Court demonstrates that both parties had a contemporaneous, pre-litigation interpretation of the clause as providing compensation for such costs under the facts of this case. That is, Precision Pine submitted the sworn declaration of its President which stated that, at the time he bid on the contracts at issue, he interpreted CT6.01 as providing compensation for additional interest expenses Precision Pine incurred as a direct result of a suspension. (Porter Decl. at 12, P. App. 645, 656). The government did not rebut this testimony.

Furthermore, Precision Pine presented uncontradicted evidence that where a purchaser made a contractually required cash deposit on a timber sale contract which has been suspended, the Forest Service has consistently compensated the purchaser for interest on that deposit pursuant to CT6.01.[20] In fact, the Forest Service paid such interest to Precision Pine with regard to several of the contracts at issue. (See, e.g., contracting officer's final decisions for Mud, Monument, Jersey Horse, Kettle, P. App. 350-57.) Thus, both parties' pre-litigation and concurrent interpretations of the clause were that interest costs due to a suspension were

[20]For example, the Forest Service paid interest with regard to the suspended contract that was the subject of Reidhead Bros. Lumber Mill, Inc., AGBCA No. 2000-126-1, 01-2 BCA ¶ 31,846. (Defendant's Motion for Summary Judgment in Reidhead Bros. at 5, P. App. 343, 345.)

recoverable. In ruling that interest could not be recovered under clause CT6.01, this Court, however, discussed none of this evidence. This was an error of law. That is, the law of this Circuit makes clear that in the face of such evidence of the parties' controlling interpretation of the contract, a court is not free to substitute its own, factually unsupported, reading of a contract. See Max Drill, Inc. v. United States, 427 F.2d 1233, 1245 (Ct. Cl. 1970) ("If plaintiff's error was so glaringly obvious or patent that he should have discovered it or made inquiry of the contracting officer, we find it difficult to understand why such a well-qualified representative of the defendant made the same mistake. Even if the inspector had no authority to supply a binding interpretation of the contract, his actions constitute highly persuasive evidence of the reasonableness of plaintiff's interpretation") (quoting Kraus v. United States, 366 F.2d 975, 981 (Ct. Cl. 1966)). Similarly here, the unrebutted evidence demonstrates that both parties interpreted clause CT6.01 of the contracts as providing for the payment of interest. Therefore, Precision Pine's interpretation of the contract is reasonable and, at a minimum, it must be permitted an opportunity to prove its damage in this regard at trial.

The lone authority the Court cited in denying Precision Pine's claim is the unpublished, non-binding opinion in Scott Timber Co. v. United States, No. 94-784C (Fed. Cl. July 11, 2001), for the position that the "increased interest payments on the outstanding debt are not 'a direct result of . . . [the] delay' within the meaning of CT6.01." Precision Pine, slip op. at 18. However, regardless of the facts in Scott Timber, the Court's ruling in this case flies in the face of unrebutted record evidence demonstrating that in this instance both parties had interpreted clause CT6.01 as providing for the recovery of interest. Moreover, as noted above, questions as to directness or remoteness in the circumstances presented here is a question of fact. See, e.g.,

S.S. Silberblatt, Inc., 3 Cl. Ct. at 646 whether interest incurred on existing loans was recoverable under Suspension of Work Clause as a direct result of a delay in contract performance is a question of fact); Mass. Bay Transp. Auth., 129 F.3d at 1232 (damages which "are not 'too remote, speculative or consequential'" are recoverable (emphasis added)). Accordingly, the Court's ruling that CT6.01, as a matter of law, does not allow for the recovery of increased costs of interest is belied by both the facts and law in this case.

IV. Precision Pine Seeks Clarification As To The Status Of Its Claim Preparation Cost Damages

As part of its damages claimed under contract clause CT6.01, Precision Pine seeks the recovery of $23,219.04 which is the cost of time Precision Pine's employees spent in preparing the original claim letters submitted to the government pre-litigation. (See Porter Decl. at 15, P. App. 659.) Although the government moved for summary judgment on this item of damage and Precision Pine opposed the motion (Pl's Resp. at 92), the Court's ruling does not expressly address these damages.[21] As set forth in Precision Pine's brief, there is legal authority for allowing the recovery of these pre-litigation costs that were only incurred due to the government's breach of contract. For example, as stated in the Judgment in Scott Timber Co. v. United States, No. 94-784C (Fed. Cl. July 8, 2002) (P. App. 362), payments under CT6.01 for contractor staff compensation with regard to preparing its claims have been made by the

[21]The Court did address Precision Pine's claim for attorney's fees incurred in preparing its claim and denied that claim on the basis that CT6.01 did not mention attorney's fees and therefore under the American Rule, such attorney's fees are not recoverable. Precision Pine, slip op. at 22-23. However, this analysis does not apply to Precision Pine's claim for costs it incurred in preparing the original claims.

government.[22] Accordingly, Precision Pine requests that the Court clarify its order by specifying that Precision Pine may present evidence at trial as to costs it incurred in pre-litigation claim preparation.

**CONCLUSION**

For the reasons set forth, Precision Pine respectfully requests that its motion for partial reconsideration be granted.

Respectfully submitted,

s/Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: December 30, 2004

[22]The Board's logic in Reidhead Bros. Lumber Mill, AGBCA No. 2000-126-1, 01-2 BCA ¶ 31,486, at 155,441, also applies here, i.e., Precision Pine "would not have had to incur [the costs of having its employees prepare claims] if it were not for the fact that the Government suspended the contract operations for at least thirty (30) days pursuant to the [ostensible] authority of clause CT6.01."