No. 98-720C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

Lori Polin Jones
Patricia L. Disert
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

Dated: January 25, 2005

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 2

I. Standard Of Review . . . . . . . . . . 2

II. Precision Pine Has Shown No Manifest Injustice Meriting Relief . . . . . . . . . . 4

A. The Court Correctly Ruled That Precision Pine's Claim For "Unanticipated Interest" Is Based Upon Precision Pine's Alleged Inability To "Pay Down" Existing Debt . . . . . . . . . . 4

B. Precision Pine's Argument Concerning Foreseeability Is Both Inapposite and Incorrect . . . . . . . . . . 6

C. The Court Correctly Ruled That Precision Pine's Unanticipated Interest Cost Claim Is Based Upon Independent And Collateral Undertakings . . . . . . . . . . 8

D. The Court Correctly Ruled That Precision Pine Is Not Entitled To Reimbursement Of Its Alleged Unanticipated Interest Costs Under CT 6.01 . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**Cases:**


Anderson v. Lloyd's Feed Service,
443 N.W.2d 208 (Minn. Ct. App. 1989) . . . . . . . . . . 14

Appeal of Superior Timber,
IBCA No. 3459, 00-2, B.C.A. ¶ 31,070 (Aug. 14, 2000) . . . . . . . . . . 17-18

Bank of China v. NBM, LLC,
359 F.3d 171 (2d Cir. 2004) . . . . . . . . . . 8

Bank United of Texas, F.S.B. v. United States,
50 Fed. Cl. 645 (2001),
rev'd, 80 Fed. App. 663, 2003 WL 22177282 (Fed. Cir. Sept. 22, 2003) . . . . . . 10-11

Bank United of Texas, F.S.B. v. United States,
80 Fed. App. 663, 2003 WL 22177282 (Fed. Cir. Sept. 22, 2003) . . . . . . . . . . 10

Bighorn Lumber Co. v. United States,
49 Fed. Cl. 768 (2001) . . . . . . . . . . 6

Bluebonnet Savings Bank, F.S.B. v. United States,
266 F.3d 1348 (Fed. Cir. 2001) . . . . . . . . . . 10-11

Bluebonnet Savings Bank, F.S.B. v. United States,
339 F.3d 1341 (Fed. Cir. 2003) . . . . . . . . . . 11

Bishop v. Unites States,
26 Cl. Ct. 281 (1992) . . . . . . . . . . 2-3

Bohac v. Department of Agriculture,
239 F.3d 1334 (Fed. Cir. 2001) . . . . . . . . . . 6

California Federal Bank, FSB v. United States,
245 F.3d 1342 (Fed. Cir. 2001) . . . . . . . . . . 9-10

California Federal Bank v. United States,
___ F.3d ___, 2005 WL 95171 (Fed. Cir. Jan. 19, 2005) . . . . . . . . . . 6, 15

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 6

Chain Belt Co. v. United States,
127 Ct. C 115 F. Supp. 701 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Circle K Corp. v. United States,
23 Cl. Ct. 659 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

Clary v. United States,
333 F.3d 1345 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Coast Federal Bank v. United States,
323 F.3d 1035 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

England v. Contel Advanced Systems, Inc.,
384 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

Estee Lauder, Inc. v. L'oreal S.A.,
129 F.3d 588 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Gelco Builders & Burjay Construction Corp. v. United States,
369 F.2d 992 (Ct. Cl. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

General Electric Co. v. United States,
189 Ct. C 416 F.2d 1320 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 10, 15

IBM v. United States,
201 F.3d 1367 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Imdieke v. Blenda-Life, Inc.,
363 N.W.2d 121 (Minn. Ct. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

J.D. Hedin Construction Co. v. United States,
197 Ct. Cl. 782, 456 F.2d 1315 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

J.F. Allen & Co. v. United States,
25 Cl. Ct. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Landmark Land Co. v. United States,
256 F.3d 1365 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

LeVan v. United States,
382 F.3d 1340 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Library of Congress v. Shaw,
478 U.S. 310, 315 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14, 19-20

M.A. Mortenson Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Marathon Oil Co. v. United States,
374 F.3d 1123 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19-20

Metric Constructors, Inc. v. National Aeronautics & Space Admin.,
169 F.3d 747 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Myerle v. United States,
33 Ct. Cl. 1 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 14-15, 17

NVT Technologies, Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Olin Jones Sand Co. v. United States,
225 Ct. Cl. 741 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 15

Precision Pine & Timber, Inc. v. United States,
No. 98-720C, slip op. (Jan. 27, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 14

Precision Pine & Timber, Inc. v. United States,
63 Fed. Cl. 122 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Quiman v. United States,
39 Fed. Cl. 171 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ramsey v. United States,
121 Ct. Ct. ___, 101 F. Supp. 353 (1951),
cert. denied, 343 U.S. 977 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rocky Mountain Construction Co. v. United States,
218 Ct. Cl. 665 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

Rumsfeld v. Freedom NY, Inc.,
329 F.3d 1320 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sandstrom v. Principi,
358 F.3d 1376 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

Scott Timber, Inc. v. United States,
No. 94-784C (July 11, 2001),
aff'd, 333 F.3d at 1372 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Scott Timber, Inc. v. United States,
333 F.3d 1358 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

Shaw v. Principi,
281 F.3d 1384 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Silberblatt v. United States,
3 Cl. Ct. 644 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

Smokey Bear, Inc. v. United States,
31 Fed. Cl. 805 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

Strickland v. United States,
36 Fed. Cl. 651 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Sullivan, Inc. v. Double Seal Glass,
480 N.W.2d 623 (Mich. Ct. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Wells Fargo, N.A. v. United States,
88 F.3d 1012 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10, 14

Wilner v. United States,
24 F.3d 1397 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION**

**INTRODUCTION**

In this action, plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), seeks compensation in connection with the suspension of 14 Forest Service timber sale contracts, including, among other things, "unanticipated interest costs." According to Precision Pine, it incurred such interest costs when it was unable to invest profits that would allegedly have been generated from the sale of lumber products (lumber products that, in turn, would allegedly have been produced from logs from the suspended timber sales) to "pay down" pre-existing corporate debt.

On April 16, 2004, defendant, the United States, filed a motion for partial summary judgment with respect to Precision Pine's claim for unanticipated interest costs. On November 22, 2004, the Court, after receiving a 100-page response from Precision Pine, and entertaining a full day of oral argument, issued a decision granting summary judgment upon Precision Pine's unanticipated interest costs claim. See Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 136-37 (2004).

On December 30, 2004, pursuant to Rule 59 of the Rules of the Court of Federal Claims, Precision Pine filed a motion for reconsideration. On January 6, 2005, the Court directed the United States to respond to Precision Pine's motion. Order of Judge George W. Miller (Jan. 6, 2005). Accordingly, pursuant to the Court's order, the United States files this response in opposition to Precision Pine's motion for reconsideration.

## STATEMENT OF THE ISSUE

Whether the Court's decision upon Precision Pine's "unanticipated interest costs" claim is based upon a manifest error of law or contains a manifest mistake of fact.

## ARGUMENT

### I. Standard of Review

Rule 59(a)(1) of the Rules of the Court of Federal Claims ("RCFC") states: "A new trial or rehearing or reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." However, it is well-settled that the Court "has a right to know before it decides [the controversy at hand] whether the parties have anything further to present." General Electric Co. v. United States, 189 Ct. Cl. 116, 118, 416 F.2d 1320, 1322 (1969). Indeed, the litigation process rests upon the assumption that the parties will present their case once, to their best advantage. Bishop v. Unites States, 26 Cl. Ct. 281, 286 (1992). Because motions for reconsideration are not intended to give a disappointed party a second bite at the litigation apple, Circle K Corp. v. United States, 23 Cl. Ct. 659, 664-65 (1991), motions for reconsideration are disfavored, General Electric, 189 Ct. Cl. at 117-118, 416 F.2d at 1321.

"For a movant [seeking reconsideration] to prevail, he must point to a 'manifest error of law, or mistake of fact' and demonstrate that the motion 'is not intended to give an unhappy

litigant an additional chance to sway the court.'" Strickland v. United States, 36 Fed. Cl. 651, 657 (1996) (citing Circle K Corp., 23 Cl. Ct. at 664-65); accord Precision Pine & Timber, Inc. v. United States, No. 98-720C, slip op. at 3 (Jan. 27, 2004) (citing Bishop, 26 Cl. Ct. at 286, Circle K Corp., 23 Cl. Ct. at 664-65, and Franconia Assocs. v. United States, 44 Fed. Cl. 315, 316 (1999)). To meet this heavy burden, the movant must show (1) an intervening change in controlling law, (2) that previously unavailable evidence has been discovered, or (3) that the motion is necessary to prevent manifest injustice. Strickland, 36 Fed. Cl. at 657 (citing Bishop v. United States, 26 Cl. Ct. at 286). Additionally, because "[a] motion for reconsideration 'is not intended to give an unhappy litigant an additional chance to sway the court,'" the movant is not "permitted to present new legal theories or facts that could have been raised earlier." Precision Pine, slip op. at 5 (Jan. 27, 2004); see also Bishop, 26 Cl. Ct. at 286; Circle K Corp., 23 Cl. Ct. 664-65; Gelco Builders & Burjay Constr. Corp. v. United States, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1966) ("Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive re-trial based upon evidence which was manifestly available at the time of the hearing.").

Here, Precision Pine simply rehashes failed arguments and labels the Court's ruling manifestly unjust.[1] Precision Pine's motion for reconsideration is nothing but an attempt "to give an unhappy litigant an additional chance to sway the court." Strickland, 36 Fed. Cl. at 657. It should, therefore, be denied.

---

[1] Precision Pine does not contend that there has been an intervening change in the law or that it has discovered previously unavailable evidence. See Strickland, 36 Fed. Cl. at 657.

## II. Precision Pine Has Shown No Manifest Injustice Meriting Relief

### A. The Court Correctly Ruled That Precision Pine's Claim For "Unanticipated Interest" Is Based Upon Precision Pine's Alleged Inability To "Pay Down" Existing Debt

Precision Pine opens its motion for reconsideration with the assertion that the Court's decision is based upon a false "factual predicate." Pl.'s Mot. for Reconsideration and Clarification at 2 ("Mot. at __."). Specifically, Precision Pine cites the Court's statement that additional "interest payments incurred [by Precision Pine] were incurred on outstanding debt, which [debt] was not incurred as a result of, or in connection with, the MSO suspension," and asserts that this statement "is not grounded in any facts of record and ignores considerable factual evidence presented by Precision Pine." Mot. at 4. Precision Pine is mistaken. Indeed, it is unclear what good faith basis Precision Pine has for disputing the Court's statement.

Precision Pine's response brief, which the Court relied upon in reaching its decision,[2] repeatedly refers to the unanticipated interest claim as involving "additional interest incurred on existing loans." Summ. J. Opp. at 79 (emphasis added).[3] Similarly, at oral argument, Mr. Saltman stated that Precision Pine's "interest expenses were incurred because [Precision Pine] didn't get the profits to pay down existing debt." Tr. at 131 (Aug. 10, 2004) (emphasis added). Precision Pine's interrogatory answers and its damages expert, Robert Ness, likewise

---

[2] The Court's opinion cites to "Def.'s Opp. at 79," rather than "Pl.'s Opp. at 79," as support for this statement. Precision Pine, 63 Fed. Cl. at 137. In its motion for reconsideration, Precision Pine feigns confusion. See Mot. at 4. However, given that only Precision Pine filed an opposition brief, given that only Precision Pine's brief contains 79 pages, and given that page 79 of Precision Pine's brief specifically discusses the "unanticipated interest" claim, Precision Pine's supposed confusion appears to be nothing more than a rhetorical device. See id.

[3] The United States motion for summary judgment is cited as "Summ. J. Mot. at __." Precision Pine's response is cited as "Summ. J. Opp. at __." The United States' reply in support of summary judgment is cited as "Summ. J. Reply at __."

confirm that its unanticipated interest claim is based upon the supposed inability to pay down pre-existing corporate debt. See DA455, 463 (alleging, in response to interrogatory no. 36, that "the loss of profits that [the company] was denied . . . precluded Precision Pine from paying down outstanding loans that it had, . . . which resulted in unanticipated interest payments") (emphasis added); PA534 (testifying that the Precision Pine "incurred increased interest cost . . . because it didn't have the profitability to pay down the principal on outstanding loans") (emphasis added).[4]

In its motion for reconsideration, without citation to any record evidence, Precision Pine asserts for the first time that it "had to enter into several new loans as a result of the suspension." Mot. at 4; see also Mot. at 14. An unsupported assertion of counsel is not evidence. Estee Lauder, Inc. v. L'oreal S.A., 129 F.3d 588, 595 (Fed. Cir. 1997) ("arguments of counsel cannot take the place of evidence lacking in the record"). Furthermore, as the litigation process rests upon the assumption that the parties will present their case once, to their best advantage, arguments presented for the first time in a motion for reconsideration are properly disregarded. E.g., Precision Pine, slip op. at 5 (Jan. 27, 2004) (citing Gelco Builders, 369 F.2d at 1000 n.7) (In a motion for reconsideration, the movant "cannot be permitted to present new legal theories or facts that could have been raised earlier.")); General Electric, 189 Ct. Cl. at 118, 416 F.2d at 1322 (the Court "has a right to know before it decides [the controversy at hand] whether the parties have anything further to present."). Precision Pine is bound by its repeated and consistent assertion that its unanticipated interest claim concerns "outstanding loans," i.e., loans that were

[4] The appendix to the United States' motion for summary judgment is cited as "DA__." The appendix to Precision Pine's response is cited as "PA__." The supplemental appendix submitted with the United States' reply is cited as "DSA__."

incurred before, not as a result of, the MSO suspension. The factual argument advanced by Precision Pine's counsel in seeking reconsideration does not provide any basis for calling into question the Court's summary judgment ruling, much less establish that summary judgment would somehow constitute a manifest injustice. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); J.F. Allen & Co. v. United States, 25 Cl. Ct. 312, 325 (1991). Accordingly, Precision Pine's motion for reconsideration should be denied.

**B. Precision Pine's Argument Concerning Foreseeability Is Both Inapposite and Incorrect**

Precision Pine next argues that issues of fact as to "foreseeability" preclude summary judgment on its increased interest costs claim. Because the Court did not grant summary judgment upon foreseeability grounds, Precision Pine's argument is inapposite. See Precision Pine, 63 Fed. Cl. at 136-37 (granting summary judgment because Precision Pine's claim that it would have invested profits from the sale of lumber products in paying down corporate debt concerns a collateral undertaking). Furthermore, if the Court had addressed the foreseeability of Precision Pine's claim for unanticipated interest costs, summary judgment would have been warranted.

Consequential damages are recoverable only if they were legally foreseeable at the time of contracting.[5] Bighorn Lumber Co. v. United States, 49 Fed. Cl. 768, 773 (2001) (citing

---

[5] In its decision, Court suggested that "[t]here may be . . . valid reason to assess foreseeability at the time of the breach rather than at the time of the agreement." Precision Pine, 63 Fed. Cl. at 130 (citing Gardner Displays Co. v. United States, 171 Ct. Cl. 497, 505, 346 F.2d 585, 589 (1965)). The law in this circuit is both settled and clear: the foreseeability of alleged consequential damages is assessed "at the time of contracting." Bohac v. Dept. of Agriculture, 239 F.3d 1334, 1340 (Fed. Cir. 2001) ("The concept of 'consequential damages' in contract law relates to the concept of foreseeability at the time the contract is executed, not, as the petitioner would have it, foreseeability at the time of the breach"); see also California Federal Bank v.

(continued...)

Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854)). Damages are legally foreseeable only if they "follow from breach (a) in the ordinary course of events, or (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know." E.g., Landmark Land Co. v. United States, 256 F.3d 1365, 1378 (Fed. Cir. 2001).

Plainly, "unanticipated interest costs" do not follow from breach "in the ordinary course of events." See id. Precision Pine responds that it had, at the time of contracting, a business plan to channel any profits from the sale of lumber products derived from logs from its Forest Service timber sale contracts into paying down outstanding corporate debt.[6] Precision Pine, however, failed to apprise the Forest Service of its putative business plan at the time of contracting.[7] Pl'.s Resp. to Def.'s PFUF ¶¶ 4-15, 17, 19; see also DA1-6. Precision Pine's "unanticipated interest costs" are therefore legally unforeseeable. See Hughes Communications, 271 F.3d at 1066 ("the damages must have been foreseeable at the time the parties entered the contract").

In its motion for reconsideration, Precision Pine points the Court to an "unrebutted" declaration from Ronald D. Lewis. Mot. at 4-5. However, Mr. Lewis has absolutely no personal knowledge about Precision Pine, Precision Pine's contracts, or the MSO suspension. See Summ.

---

[5](...continued)
United States, ___ F.3d ___, 2005 WL 95171, at *2 (Fed. Cir. Jan. 19, 2005); Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1066 (Fed. Cir. 2001); Chain Belt Co. v. United States, 127 Ct. Cl. 38, 59, 115 F. Supp. 701, 714 (1953).

[6] Precision Pine has failed to produce any contemporaneous documents reflecting a business plan to "pay down" outstanding loans – much less with revenues from the sale of lumber derived from any of the breached timber sale contracts.

[7] This is not surprising because Precision Pine had not incurred the debt it was allegedly going to pay down when it was awarded many of the contracts at issue. Because the foreseeability of damages must be measured at the time of contracting, this is yet another reason why "unanticipated interest costs" are not legally foreseeable.

J. Reply at 15. Not only did Mr. Lewis retire from the Forest Service before the MSO suspension, he was: (1) never assigned to Forest Service Region 3 (i.e., Arizona and New Mexico); (2) had no involvement in the preparation or award of any of Precision Pine's contracts; (3) had no role in the administration of any of Precision Pine's contracts; and (4) had no contacts with personnel in Region 3 regarding Precision Pine or its contracts. DSA35-38. Mr. Lewis's declaration is properly disregarded. See J.F. Allen & Co. v. United States, 25 Cl. Ct. 312, 325 (1991) (an affidavit used in connection with summary judgment must demonstrate that the affiant is competent to testify); Bank of China v. NBM, LLC, 359 F.3d 171, 181 (2d Cir. 2004) (lay witness opinion testimony must be based upon personal knowledge) (citing Fed. R. Evid. 701). Moreover, Mr. Lewis does not assert that the Forest Service was informed of Precision Pine's putative business plan at the time of contracting. See Mot. at 5.

Accordingly, had the Court addressed the legal foreseeability of Precision Pine's claim for unforeseen interest costs, summary judgment on this alternative ground would have been warranted.

**C. The Court Correctly Ruled That Precision Pine's Unanticipated Interest Cost Claim Is Based Upon Independent And Collateral Undertakings**

The Federal Circuit and its predecessor court, the Court of Claims, have consistently rejected claims for "independent and collateral undertakings" as too remote and speculative to be recoverable as common law damages. See, e.g., Rumsfeld v. Freedom NY, Inc, 329 F.3d 1320, 1333 (Fed. Cir. 2003) (holding that profits on future contracts which plaintiff alleged it would have been awarded absent the Government's breach were too remote and uncertain); Wells Fargo, N.A. v. United States, 88 F.3d 1012, 1022 (Fed. Cir. 1996) (rejecting as a matter of law plaintiff's claim for interest on loans that allegedly would have made but for the Government's

breach); Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741 (1980) (denying a contractor's claim that the Government's failure to make timely payments under the contract prevented it from obtaining bonding that would have resulted in other profitable contracts); Rocky Mountain Construction Co. v. United States, 218 Ct. Cl. 665 (1978) (rejecting a claim for lost profits on contracts that plaintiff would have bid on had the contract at issue not been delayed by the Government); Ramsey v. United States, 121 Ct. Cl. 426, 101 F. Supp. 353 (1951) (holding that "plaintiffs could not recover an amount in addition to that provided by the contract by designating their claim as one for damages, consisting of interest on amounts paid out by plaintiffs' corporation to third persons"), cert. denied, 343 U.S. 977 (1952); see also Smokey Bear, Inc. v. United States, 31 Fed. Cl. 805, 808 (1994) ("Damages for the loss of future profits and lost profitable business opportunities arising from potential contracts with others are per se unrecoverable."). As the Federal Circuit explained in California Federal:

> "If the profits are such as would have accrued and grown out of the contract itself, as the direct and immediate results of its fulfillment, then they would form a just and proper item of damages, to be recovered against the delinquent party upon a breach of the agreement. . . . But if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit."

California Fed. Bank, FSB v. United States, 245 F.3d 1342, 1349 (Fed. Cir. 2001) (quoting Wells Fargo, 88 F.3d at 1023 (emphasis added)); accord LeVan v. United States, 382 F.3d 1340, 1351 (Fed. Cir. 2004); see also Myerle v. United States, 33 Ct. Cl. 1, 26 (1897).

Applying this line of cases, the Court correctly concluded that Precision Pine's claim that it would have taken any profits from the sale of lumber products – lumber products that allegedly

would have been produced from logs from Forest Service timber sales – to pay down outstanding corporate debt constitutes an independent and collateral undertaking.[8] See Precision Pine, 63 Fed. Cl. at 137 (citing Wells Fargo, 88 F.3d at 1022, and Olin Jones Sand Co., 225 Ct. Cl. at 743). Consequently, summary judgment was property granted.[9]

In its motion for reconsideration, Precision Pine challenges the Court's conclusion in several respects. Precision Pine first asserts that interest is recoverable as an item of damages. See Mot. at 5-9 (discussing Bank United of Texas, F.S.B. v. United States, 50 Fed. Cl. 645 (2001), rev'd, 80 Fed. App. 663, 2003 WL 22177282 (Fed. Cir. Sept. 22, 2003), and Bluebonnet Savings Bank, F.S.B. v. United States, 266 F.3d 1348 (Fed. Cir. 2001)). This is the very same argument that Precision Pine previously presented – and the Court rejected – in addressing the United States' motion for summary judgment. See Summ. J. Opp. at 79-80 (citing Bank United, 50 Fed. Cl. at 665, and Bluebonnet, 266 F.3d at 1355).

As we explained in our reply, the cited decision in Bank United was reversed on appeal. See Bank United, 80 Fed. App. 663. As a result, Bank United recovered no interest as part of its claim against the United States. Id. Furthermore, the trial court found only that costs reasonably

---

[8] As explained above, Precision Pine's loans are completely unrelated to the suspension except insofar as Precision Pine contends that they would have been "paid down" with anticipated profits from the suspended sales. See pp. 3-5, supra.

[9] In addition, damages sought from the United States under the common law "must be direct and not the result of any intervening incident." Quiman v. United States, 39 Fed. Cl. 171, 183 (1997); see also Hughes Communications, 271 F.3d at 1065; California Federal, 245 F.3d at 1349 (only damages that result from "the direct and immediate fulfillment" of the contract at issue "form a just and proper item of damages"). Precision Pine's "unanticipated interest costs" claim is based upon a complex chain of causation having no fewer than six steps. See Summ. J. Reply at 34. Thus, the Court's summary judgment ruling is correct for the additional reason that Precision Pine's unanticipated interest costs are not a direct result of the MSO suspension.

incurred in mitigating the effect of a breach are recoverable.[10] See 50 Fed. Cl. at 665. Here, in contrast to Bank United, Precision Pine is not seeking interest on loans taken out to weather the MSO suspension. E.g., DA455, 463; PA534. Rather, Precision Pine is seeking interest on loans taken out before the MSO suspension to expand its business and for other purposes. Id. Because Precision Pine's loans did not result from an effort to mitigate damages, even if Bank United were still good law, it would not authorize the recovery of "unanticipated interest" here.

Bluebonnet similarly fails to aid Precision Pine's argument. In Bluebonnet, the court held merely that increased financing costs resulting directly from a breach caused by the passage of FIRREA were potentially recoverable. 266 F.3d at 1355. The Federal Circuit did not, as Precision Pine contends, "award[] . . . additional interest costs to plaintiffs." See Bluebonnet Savings Bank, F.S.B. v. United States, 339 F.3d 1341 (Fed. Cir. 2003) (vacating a subsequent award of damages as a misinterpretation of the appellate mandate). Moreover, Precision Pine's loans, and the resulting financing expenses, were not incurred as a result of the MSO suspension. See, e.g., DA455, 463; PA534. Unlike the plaintiff in Bluebonnet, Precision Pine seeks interest incurred on "outstanding loans" – loans that it allegedly was unable to "pay down" with profits derived from the suspended timber sale contracts. Id. Bluebonnet is therefore inapposite.

In its motion for reconsideration, Precision Pine argues for the first time that Bluebonnet also supports its claim because the Federal Circuit "declined to affirm a blanket rule" that interest and fees damages "were not recoverable as a matter of law." Mot. at 7. Precision Pine fails to mention that, during the past year, the Federal Circuit has on three separate occasions affirmed

[10] The plaintiff in Bank United alleged that it had incurred additional financing costs (for a bridge loan and for high interest debt) in order to continue as a going concern after "FIRREA's prohibition of counting [certain] debt as regulatory capital." 50 Fed. Cl. at 657.

the "no-interest rule," which bars the recovery of interest in the absence of an explicit waiver of sovereign immunity. See England v. Contel Advanced Systems, Inc., 384 F.3d 1372 (Fed. Cir. 2004); Marathon Oil Co. v. United States, 374 F.3d 1123 (Fed. Cir. 2004); Sandstrom v. Principi, 358 F.3d 1376 (Fed. Cir. 2004). In Contel, for instance, the Federal Circuit explained:

> The no-interest rule is an aspect of the basic rule of sovereign immunity. See [Library of Congress v.] Shaw, 478 U.S. [310, 315 (1986)]; see also Shaw v. Principi, 281 F.3d 1384 (Fed. Cir. 2002). It has been construed broadly to claims for interest. In Shaw the Supreme Court explained that:
>
>> [T]he force of the no-interest rule cannot be avoided simply by devising a new name for an old institution: "[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no-interest rule applies to it."
>
> Shaw, 487 U.S. at 321 (quoting United States v. Mescalero Apache Tribe, 207 Ct. Cl. 369, 518 F.2d 1309, 1322 (1975) (alteration in original)). The rule has been held not only to bar the recovery of interest on substantive claims against the government, . . . but also interest costs incurred on money borrowed as a result of the government's breach or delay in payment, see, e.g., J.D. Hedin Constr. Co. v. United States, 197 Ct. Cl. 782, 456 F.2d 1315, 1330 (1972) . . . . For example, in J.D. Hedin, our predecessor court held that, like interest on substantive claims against the government, "[i]nterest paid on bank loans made because of financial stringency resulting from a breach by the Government of a contract between it and the borrower is not recoverable." 456 F.2d at 1330. The court noted that had the plaintiff "used his own money and so lost the interest which it might have earned for him, the claim . . . would not have differed in principle. Id. (quoting Myerle, 33 Ct. Cl. at 25).

Contel, 384 F.3d at 1379. Accordingly, in Contel, the Court held that the no interest rule barred the recovery of interest damages against the United States. Id. (denying recovery of interest "paid on the extra money [the plaintiff] was forced to borrow" due to a Government delay).

Similarly, in Sandstrom, the Federal Circuit rejected a claim for a cost of living adjustment ("COLA"), finding that the requested COLA was functionally equivalent to prejudgment interest, which was barred by the no-interest rule. 358 F.3d at 1380. The court explained:

> Sandstrom contends that because his request is for a COLA, rather than for interest, the no-interest rule should not apply. This argument elevates form over function. Economists use interest, COLAs, indices and various other mechanisms to translate time series of nominal dollars into meaningful constant dollars. They may apply different labels at different times, but the purpose of all such adjustment mechanisms is identical. The government relies on its sovereign immunity shield to deny all prejudgment interest-type payments.

Sandstrom, 358 F.3d at 1380 (emphasis added).

Precision Pine's claim for "unanticipated interest" is functionally indistinguishable from a claim that Precision Pine would have invested its profits in interest bearing bonds or, for that matter, from a claim for prejudgment interest. Precision Pine's claim, if it were allowed, would eviscerate the no-interest rule, as it would enable any plaintiff to obtain interest simply by alleging that it would have used lost profits to pay down outstanding debt. Sandstrom makes clear that – regardless of how creatively Precision Pine may disguise a claim for prejudgment interest – such interest is barred by the no-interest rule. Id.; see also Shaw, 487 U.S. at 321.

Recognizing the bar of the no-interest rule, Precision Pine argues that the rule does not apply to its claim for "unanticipated interest." See Mot. at 12-13. According to Precision Pine, the no-interest rule does not operate where the Government is a seller of goods – as opposed to a buyer of goods and services. Id. at 13. Precision Pine cites no case law accepting this dubious proposition. Further, given that the no-interest rule is premised upon the need for an explicit waiver of sovereign immunity, the proposed distinction between buyers and sellers that Precision

Pine asks the Court to draw is logically irrelevant. See, e.g., IBM v. United States, 201 F.3d 1367, 1369 (Fed. Cir. 2000) (requiring an explicit waiver of sovereign immunity to recover interest from the United States) (citing Library of Congress v. Shaw, 478 U.S. 310, 314 (1986)).

Precision Pine next identifies three state cases that it characterizes as "directly analogous." Mot. at 9-10 (citing Anderson v. Lloyd's Feed Service, 443 N.W.2d 208, 210-11 (Minn. Ct. App. 1989), Imdieke v. Blenda-Life, Inc., 363 N.W.2d 121,125 (Minn. Ct. App. 1991), and Sullivan, Inc. v. Double Seal Glass, 480 N.W. 2d 623, 633 (Mich. Ct. App. 1991)). None of the cited cases are new, see id., none were cited in Precision Pine's opposition to summary judgment, Summ. J. Opp. at 78-82, and Precision Pine offers no explanation for this failure, Mot. at 9-10. Accordingly, the cases are not properly before the Court. See Precision Pine, slip op. at 5 (Jan. 27, 2004). In any event, each case concerns whether interest is payable under state law in a dispute between private parties. The key issue of sovereign immunity is not relevant and is not discussed.[11] Consequently, the cases do nothing to advance Precision Pine's argument that it is entitled to interest in an action against the United States.

Lastly, Precision Pine contends that neither Wells Fargo, 88 F.3d 1012, nor Myerle, 33 Ct. Cl. 1, support summary judgment upon its unanticipated interest claim. Mot. at 10-12. While Precision Pine notes that a trial occurred in Wells Fargo, the Federal Circuit rejected damages premised upon independent and collateral undertakings as a matter of law. 88 F.3d at 1023 (holding that "Wells Fargo's loss of interest on additional loans it allegedly could have made . . . is too uncertain and remote to be taken into consideration"). The fact that the case in

---

[11] The cases are distinguishable for other reasons as well. For instance, in Imdieke and Sullivan, the plaintiff sought interest, not for an outstanding loan, but for a new loan that was necessitated by the breach. See Mot. at 9-10. And in Anderson, the plaintiff's suit was not an action for common law breach, but rather, was an action for breach of an implied warranty of fitness for a particular purpose. 443 N.W. at 208.

Wells Fargo went to trial before the plaintiff's claim was rejected as a matter of law is of no moment. See, e.g., Olin Jones Sand Co., 225 Ct. Cl. at 743 (granting summary judgment upon claims "which, even if proven at trial, would be too remote or speculative"); Rocky Mountain Construction, 218 Ct. Cl. at 665 (dismissing a claim for lost profits on collateral undertakings, i.e., contracts that plaintiff allegedly would have bid on had the contract at issue not been delayed by the Government); Smokey Bear, 31 Fed. Cl. at 808 (ruling that "[d]amages for the loss of future profits and lost profitable business opportunities arising from potential contracts with others are per se unrecoverable.").

Precision Pine's attempt to distinguish Myerle is equally unavailing. According to Precision Pine, Myerle concerns only claims for lost profits – not claims such as its claim for "unanticipated interest." Mot. at 11. Precision Pine is mistaken. Not only does Myerle remain good law, it has been broadly applied, see, e.g., California Federal Bank, FSB v. United States, ___ F.3d ___, 2005 WL 95171 at *3 (Fed. Cir. Jan. 19, 2005) (affirming the Myerle standard for causation); Hughes Communications, 271 F.3d at 1071 (citing Myerle for the proposition that damages must be direct, i.e., the must be no intervening incident), and was recently cited by the Federal Circuit as support for applying the no-interest rule, see Contel, 384 F.3d at 1379 (citing Myerle).[12]

In sum, the Court correctly held that Precision Pine's unanticipated interest claim concerns "an independent and collateral undertaking" and, therefore, is barred as a matter of law.

---

[12] Precision Pine's suggestion that Myerle leaves the door open for the recovery of interest against the United States, see Mot. at 11-12, is rebutted by the outcome in that case. In Myerle, the court specifically rejected the plaintiff's claim that he should recover interest that "he was forced to pay" as a result of defendant's breach of contract. 33 Ct. Cl. at 25; see also Contel, 384 F.3d at 1379.

Furthermore, summary judgment is warranted under the no-interest rule. Accordingly, Precision Pine's motion for reconsideration should be denied

**D. The Court Correctly Ruled That Precision Pine Is Not Entitled To Reimbursement Of Its Alleged Unanticipated Interest Costs Under CT 6.01**

Precision Pine also challenges the Court's ruling that its claim for unanticipated interest is unrecoverable under contract clause CT 6.01. Mot. at 15-22. CT 6.01 contains no express authorization for the payment of interest. Rather, CT 6.01 allows the payment of "out-of-pocket expenses" where such expenses are "incurred as the direct result of [an] interruption or delay of operations." DA283-84. Out-of-pocket expenses exclude "lost profits" or "any other anticipatory losses." Id.[13]

As explained in our reply brief, Precision Pine alleges that: (1) its timber harvesting was delayed by the MSO suspension; (2) the suspension eventually resulted in an insufficient supply of logs at Precision Pine's sawmills because it was unable to obtain logs from other sources; (3) this in turn delayed the production of lumber; (4) as a result, Precision Pine was (at least temporarily) prevented from the earning profits from the sale of such lumber; (5) this meant that Precision Pine was unable to use profits to pay down existing loans (as it supposedly planned to do); and (6) this caused Precision Pine to pay more interest upon existing loans, i.e., "unanticipated interest costs." Summ. J. Reply at 34; see also DA455, 463. As a result, the Court correctly held that Precision Pine's claim for "increased interest payments on outstanding debt are not 'a direct result of . . . [the] delay,' within the meaning of CT 6.01." Precision Pine, 63 Fed. Cl. at 137.

---

[13] In addition, claimed out-of-pocket expenses must be established by receipts or other documentation verifying actual expenditures. DA283-84.

Precision Pine's counsel insists repeatedly that "unanticipated interest costs" were in fact a "direct result" of the MSO suspension. See Mot. at 3, 9, 16, 20. Counsel's repetition does not change the fundamental flaw in Precision Pine's argument, namely, that Precision Pine's own allegations demonstrate that the chain of causation involves no fewer than six steps. Indeed, as a result, the recovery of such "unanticipated interest" under CT 6.01 was specifically rejected by this Court in Scott Timber. PA361 (Scott Timber, Inc. v. United States, No. 94-784C, slip op. at 9 (July 11, 2001) ("Scott III") ("interest payments on . . . outstanding debt [is] remote and speculative and therefore not recoverable"), aff'd, 333 F.3d 1358 (Fed. Cir. 2003)). Consequently, under Precision Pine's own theory, "unanticipated interest costs" are not recoverable under CT 6.01 as the "direct result" of an interruption of timber harvesting operations. Scott III, slip op at 9; see also Scott Timber, 333 F.3d at 1372 (holding that increased sawmill costs, allegedly resulting from a reduced supply of logs, are not the "direct result" of a Forest Service suspension and, therefore, are not recoverable under CT 6.01); Appeal of Superior Timber, IBCA No. 3459, 00-2 BCA ¶ 31,070, at 23-24 (Aug. 14, 2000) (rejecting a claim for interest on outstanding loans); Myerle, 33 Ct. Cl. at 27 ("For a damage to be direct there . . . must not be two steps between cause and damage.").[14]

Precision Pine responds with a series of arguments. First, citing Silberblatt v. United States, 3 Cl. Ct. 644, 646 (1983), Precision Pine argues that "increased interest incurred on existing loans due to the government's invocation of a suspension of work clause" is reimbursable. Mot. at 16. Precision Pine's reliance upon Silberblatt is misplaced for several

---

[14] Furthermore, Precision Pine's interest costs allegedly arose from an inability to use lost profits to pay down its outstanding debt. Given that "lost profits" and "other anticipatory losses" are outside the scope of CT 6.01, Precision Pine's unanticipated interest claim, which is even more remote than the loss of profits, is barred by CT 6.01.

reasons, including, most significantly, that the Silberblatt contract does not contain CT 6.01.[15] As a result, the discussion in Silberblatt, which necessarily turns on specific contractual language, does not inform the Court's decision here. See Appeal of Superior Timber, IBCA No. 3459, 00-2 BCA ¶ 31,070, at 23-24 (Aug. 14, 2000) (rejecting a claim for interest on outstanding loans, distinguishing Silberblatt, and noting that the FAR suspension of work clause in Silberblatt has been changed "to disallow interest on borrowings").

Second, Precision Pine suggests that its unanticipated interest claim is payable under clause CT 6.01 because "the Forest Service did not [expressly] preclude the recovery of increased interest costs." Mot. at 19. CT 6.01 expressly precludes the reimbursement of "anticipatory losses," such as interest upon a claim for lost profits. Furthermore, Precision Pine's argument has it backwards. Under the no interest rule, an express and unambiguous waiver of sovereign immunity is necessary.

> As sovereign, the United States, in the absence of consent, is immune from suit. . . . A waiver of sovereign immunity must be unequivocally expressed, or a court must infer that Congress did not intend to create a waiver.
>
> * * *
>
> With respect to waiver of sovereign immunity for interest . . . "[t]he no interest rule provides an added gloss of strictness upon these usual rules. . . . "[T]here can be no consent by implication or use of ambiguous language. Nor can an intent on the part of the framers of a . . . contract to permit the recovery of interest suffice where the intent is not translated into affirmative . . . contractual

---

[15] In addition, the dispute in Silberblatt arose under the Wunderlich Act (not the Contract Disputes Act of 1978), involved a construction contract (under which overhead expenses frequently are recoverable), and concerned a contract governed by the Federal Acquisition Regulations which, as Precision Pine correctly notes, does not govern Forest Service timber sale contracts.

> terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed."

Marathon Oil Co. v. United States, 374 F.3d at 1127 (quoting Shaw, 478 U.S. at 318) (emphasis added, internal cites omitted); see also Clary v. United States, 333 F.3d 1345, 1351-52 (Fed. Cir. 2003) ("absent a waiver of sovereign immunity, no interest may be paid"). Therefore, neither the language of CT 6.01, nor the law, supports Precision Pine's argument.

Third, Precision Pine asserts, without citation to record evidence, that clause CT 6.01 is ambiguous and that "both parties" had an understanding of clause CT 6.01 "as providing compensation for such costs under the facts of this case." Mot. at 20; see also id. at 21 ("both parties had interpreted clause CT 6.01 as providing for the recovery of interest"). The interpretation of a Government contract is a question of law. E.g., NVT Technologies, Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). In resolving disputes involving contract interpretation, the starting point is "the plain language of the contract." M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004); NVT Technologies, 370 F.3d at 1159. The mere fact that "the parties differ in their respective interpretations of a contract term" is insufficient to show an ambiguity. Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin., 169 F.3d 747, 751 (Fed. Cir. 1999). And in the absence of an ambiguity, extrinsic evidence is not properly considered. Coast Federal Bank v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003); M.A. Mortenson, 363 F.3d at 1206-07 (finding no ambiguity and no role for extrinsic evidence where a "party reading th[e] provision of the contract [at issue] would have no reason to believe that the language meant anything other than what it plainly stated"). Consequently, Precision Pine's post hoc claim about the parties supposed subjective understanding is entitled to no weight.

Contract clause CT 6.01 provides, in clear and unambiguous language, for reimbursement of "out-of-pocket expenses" only when they are the "direct result" of a delay or interruption of "operations under the contract." DA283-84. Moreover, it contains no express waiver of sovereign immunity with respect to the payment of interest. Consequently, even if CT 6.01 were deemed ambiguous, Precision Pine's claim would fail because there can be no waiver of sovereign immunity "by implication or use of ambiguous language." Marathon Oil, 374 F.3d at 1127 (quoting Shaw, 478 U.S. at 318).

Fourth, Precision Pine asserts that the Forest Service has "consistently" provided compensation on "contractually required cash deposits." Mot. at 20. As an initial matter, Precision Pine's claim for unanticipated interest does not concern required cash deposits. Further, Precision Pine fails to substantiate the Forest Service's supposed practice. Precision Pine cites contracting officer decisions in this action. However, "a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision. De novo review precludes reliance upon the presumed correctness of the decision." Wilner v. United States, 24 F.3d 1397, 1401 (Fed. Cir. 1994) (en banc). In any event, the supposed practice is irrelevant. As the Federal Circuit recently explained, "an intent on the part of the framers of a . . . contract to permit the recovery of interest [does not] suffice [to waive sovereign immunity] where the intent is not translated into affirmative . . . contractual terms." Marathon Oil, 374 F.3d at 1127.

Lastly, Precision Pine asserts that whether unanticipated interest was a direct result of the MSO suspension is "an issue of fact." Mot. at 21-22. For purposes of this motion, however, the United States has accepted Precision Pine's allegations about how unanticipated interest expenses were incurred. Consequently, no genuine issue of material fact precludes summary disposition.

See Scott Timber, 333 F.3d at 1372 (affirming summary judgment regarding whether an expense was a "direct result" under CT 6.01).

**CONCLUSION**

For these reasons, Precision Pine's motion for reconsideration should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
(202) 307-0277
(202) 307-0972 (fax)

January 25, 2005

Attorneys for Defendant