**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 98-720C
(Judge George W. Miller)

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**

## INTRODUCTION

Because the Defendant's Response In Opposition To Plaintiff's Motion For Reconsideration And Clarification ("D's Response") does not respond directly to many of the points raised by plaintiff in its Motion for Reconsideration ("PP's Motion") but rather either twists plaintiff's arguments and then expounds thereon or addresses points having no relevance to Precision Pine's claims, plaintiff is obliged to submit this short memorandum to assist the Court in resolving the issues truly before it as to Precision Pine's claim for increased interest costs.

## I. The Recoverability of Increased Interest Costs for Breach of Contract.

From the very first page of its Response and frequently thereafter, the government improperly casts Precision Pine's claim for increased interest costs as one arising from a plan to

"invest profits." See, e.g., D's Response at 1, 6, 13. Defendant is incorrect.[1] As explained in Precision Pine's Motion and as supported by the record at summary judgment, Precision Pine's claim is for increased interest costs on existing loans, the terms of which had to be refinanced and extended because of the Forest Service's suspension and for the interest cost on loans entered into because of the suspension. PP's Motion at 3-4. Not surprising, defendant has provided no evidence for its assertion that Precision Pine's claim for increased interest costs is really part of an "investment" plan on the part of Precision Pine or, for that matter, that they are interest on lost profits.[2]

The government's fundamental misunderstanding of Precision Pine's claim is further exposed by the government's reliance on cases like Sandstrom v. Principi, 358 F.3d 1376 (Fed. Cir. 2004), which address attempts to recover pre-judgment interest **on** a claim rather than

---

[1]Indeed, defendant asserts that Precision Pine's claim for increased interest costs actually incurred "is fundamentally indistinguishable from a claim that Precision would have invested its profits in interest bearing bonds or, for that matter, from a claim for prejudgment interest." D's Response at 13. At other points, the government attempts to re-characterize Precision Pine's increased interest costs as "interest on lost profits." E.g., D's Response at 18. This too is incorrect.

[2]The government does take one quote of counsel for Precision Pine out of context as "evidence" in support of its interpretation (see D's Response at 4), however, in the sentence immediately preceding the sentence quoted by the government, counsel for plaintiff rejected the very proposition that defendant seeks to support:

> Your Honor, the government talks about the fact that Precision is not entitled to this unanticipated interest cost because it wasn't foreseeable and that Precision Pine is seeking to recover profits that supposedly would have been earned by investing those anticipated profits. I think that we all would agree that the latter is simply not true.

Tr. at 131, lines 10-15. (August 10, 2004) (emphasis added).

interest as a claim, i.e., here, as an item of damage imposed on Precision Pine as result of the government's protracted suspension and breach of contract. As Precision Pine explained in its Response to Defendant's Motion for Summary Judgment (at p. 81) and again in its Motion for Reconsideration (at p. 12), Precision Pine is not seeking pre-judgment interest on a claim for some other item of damage. Defendant is certainly free to ignore the factual predicate of Precision Pine's claim and rely instead on copious authority relating to the recoverability of pre-judgment interest **on** costs incurred, however, by doing so, it certainly does nothing to undermine Precision Pine's claim in the instant case.

The same is true with respect to the government's reliance on Marathon Oil Co. v. United States, 374 F.3d 1123 (Fed. Cir. 2004), *petition for Cert. filed* (January 05, 2005) (No. 04-923), where the Federal Circuit said:

> We hold that the Oil Companies have not demonstrated a waiver of sovereign immunity for **post-judgment interest on final judgments against the United States** in the Federal Circuit that unambiguously extends to encompass their contract judgment.

Id. at 1125 (emphasis supplied). Of course, by contrast in the instant case, Precision Pine is not seeking post-judgment interest for the obvious reason that there has not yet been any final judgment. Thus, the holding in Marathon Oil is as unexceptional as it is irrelevant to Precision Pine's claim for increased costs of interest as an item of damage.[3]

[3]Of course, in the instant case, the Contract Disputes Act provides an express waiver of sovereign immunity for interest on amounts found to be owed to contractors, which Precision Pine will be seeking in this case from the submission of its claims in 1997. See 41 U.S.C. § 611.

With respect to the issue of the foreseeablity of Precision Pine's increased costs of interest, defendant repeats its mantra that, because Precision Pine "failed to apprise the Forest Service" that, if it breached the contracts, Precision Pine would sustain increased costs of interest, such costs are not recoverable. D's Response at 7 and 8. Apparently, defendant continues to seek to equate "foreseeability" with "actual knowledge" of the specific damage that occurred. However, such is not the law and this Court has already rejected defendant's proffered redefinition of foreseeability. ("A plaintiff's recovery is not contingent on defendant's having actually foreseen the injury that occurred." Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 130 and 134 (2004)). Thus, at summary judgment, the issue with respect to foreseeablity for this Court to decide is whether Precision Pine has submitted sufficient evidence to create a genuine issue of material fact that the Forest Service could have foreseen the possibility that increased interest costs would result from the sixteen-month suspension of Precision Pine's timber sale contracts. As demonstrated in Precision Pine's Motion for reconsideration, the record before the Court at summary judgment is more than sufficient to support this inference. PP's Motion at 4-5, 13-15.[4] Indeed, the government has presented no evidence to the contrary.

Additionally, defendant continues to misstate the holdings of several key, controlling cases, which recognize the recoverability of interest as an item of damage caused by a breach of

---

[4]Among this evidence presented at summary judgment was the opinion of Plaintiff's accounting expert that the claimed increased costs of interest were the direct result of the breach and the sworn testimony of a long-time Forest Service employee that the Forest Service was "fully aware" that purchasers frequently carried debt which required ongoing operations to service. PP's Motion at 4-5.

contract. That is, the trial court's decision in Bank United of Texas, FSB v. United States, 50 Fed. Cl. 645, 665 (2001), unequivocally awarded interest to plaintiffs:

> The total amount plaintiffs claim for conversion of the subordinated debt is $4,884,283 comprised of $181,000 in legal fees, $1,693,283 **in interest paid** on a BONY bridge loan and $3,010,000 **in interest paid** on the Senior Notes. We find that plaintiff's would not have incurred such **added interest cost** had defendant not breached.

Id. at 665. (Emphasis supplied). Unable to dispute the fact that increased costs of interest were awarded against the United States by the Court of Federal Claims in Bank United, defendant resorts to arguing that Bank United was "reversed" on appeal and that "As a result, Bank United recovered no interest on its claim against the United States." D's Response at 10. However, on appeal, only a single aspect of Bank United, having nothing whatever to do with the trial court's above-quoted award of interest to the plaintiffs was reversed. 80 Fed. Appx. 663. Specifically, the Federal Circuit only reversed the trial court's award of mitigation damages in the amount of $3,942,500 that had been awarded for certain transaction costs incurred as part of stock issuance. Compare 50 Fed. Cl. at 665, with 80 Fed. Appx. at 672. Thus, this entire award of interest as an item of damage by the trial court remained intact following the Federal Circuit's ruling on appeal. Such a result, which would be impossible under defendant's espoused interpretation of the putative "no interest rule," amply supports Precision Pine's position that when increased interest costs are incurred as an item of damage caused by the government's breach, they are recoverable in this Circuit to the same extent as any other consequential damage.[5]

[5]Apparently unable to distinguish the case, the government fails to address Precision Pine's reliance on Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544 (2003), in support of its position that increased costs of interest resulting from a breach of contract are recoverable.

Indeed, the government's own discussion of Bluebonnet (see D's Response at 11) wholly support's Precision Pine's position that increased interest costs are recoverable. That is, the government concedes (as it must) that "In Bluebonnet, the court held merely that increased financing costs resulting directly from a breach caused by passage of FIRREA were potentially recoverable." Id. (emphasis in original). The parties are in agreement: The law is that where, as here, increased interest costs actually incurred can be shown to have resulted from a breach of contract, they are recoverable. Because Precision Pine has already presented sufficient factual evidence to overcome defendant's motion for summary judgment on this issue, Precision Pine is, therefore, entitled to make its showing for this item of damage at trial. See PP's Motion at 4.

**II. The Recoverability of Increased Interest Costs Under Contract Clause CT6.01.**

Even assuming that Precision Pine's increased interest costs were not recoverable as an item of damage for the government's breach of contract (which, as demonstrated above, they are), Precision Pine is entitled to recover its increased cost of interest incurred under contract clause CT6.01 and the government's arguments to the contrary remain unconvincing. That is, defendant argues that because the Suspension of Work clause at issue in Silberblatt v. United States, 228 Ct. Cl. 729 (1981) is a clause other than clause CT6.01, the case cannot support Precision Pine's position that such costs are recoverable here. D's Response at 18. ("As a result, the discussion in Silberblatt, which necessarily turns on specific contractual language, does not inform the Court's decision here.") However, defendant ignores the fact that the operative language of the Suspension of Work clause at issue in Silberblatt and CT6.01 are functionally identical. That is, clause CT6.01 provides for the recovery of out-of-pocket expenses that are "incurred as **a direct result** of interruption or delay of operations under this provision"

(emphasis supplied). In this same regard, the ruling of the Court of Claims in Silberblatt, which is binding on this Court, found that under the Suspension of Work clause there at issue,

> that the contractor is entitled to recover extra interest paid or incurred on existing loans as **a direct result** of the Government's delay.

Id. (emphasis added). As the Claims Court also rephrased the matter in subsequent, related litigation:

> It is further established that [under the Suspension of Work clause] that additional interest incurred on existing loans as **a direct result** of delay in contract performance also constitutes a reimbursable cost of performance.

S.S. Silberblatt, Inc. v. United States, 3 Cl. Ct. 644, 646 (1983) (emphasis supplied). Thus, the Silberblatt opinions directly support Precision Pine's claim that its increased interest costs incurred on existing loans as a direct result of the suspension are recoverable under CT6.01. Moreover, whether interest incurred on existing loans was a "direct" result of a delay in contract performance is a question of fact. Id. Accordingly, under Silberblatt, the recovery of interest under a Suspension of Work clause is not prohibited as a matter of law, but rather involves the resolution of a question of fact, i.e., whether the increased cost of interest was a "direct result" of the suspension. Exactly the same analysis applies with respect to the recoverability of such costs under clause CT6.01.[6]

With respect to whether interest costs are recoverable under CT6.01, the government also seeks to ignore the contemporaneous practice of the parties which recognized that interest costs

---

[6]Defendant also argues that CT6.01 precludes the reimbursement of "anticipatory losses" such as interest upon a claim for lost profits. Defendant fails to note, however, that Precision Pine is not seeking interest on a claim for lost profits. (Indeed, interest on a claim is covered by the Contract Disputes Act.) What Precision Pine is seeking is the cost of additional interest that it actually incurred as a direct result of the suspension.

are the direct result of a suspension and therefore are recoverable under the clause. Indeed, the government does not dispute, nor could it, that Precision Pine's President interpreted the clause as providing for the payment of interest (Porter Decl. at 12, P. App. 645, 656) and, even more importantly, that the Forest Service in fact paid interest costs under CT6.01 to Precision Pine on claims in this case (see, e.g., contracting officer's final decisions for Mud, Monument, Jersey Horse, Kettle, P. App. 350-57), as well as to other contractors in other cases. PP's Motion at 20 n.20. Thus, the parties' pre-litigation and mutually held interpretation of the clause was that interest costs due to a suspension under CT6.01 were recoverable. Accordingly, this custom and practice of the parties should be upheld by the Court.

In an effort to avoid this common sense result flowing from its own actions in routinely paying interest costs under the clause, the government now argues that "a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision." D's Response at 20. The government again misses the point. Precision Pine does not seek the application of a presumption in its favor, but rather the recognition by this Court that due to the **fact** that the Forest Service did pay interest to Precision Pine pursuant to CT6.01, the parties' pre-litigation and harmonious interpretation of the clause is reasonable and should be upheld. As the binding authority of this Circuit recognizes:

> If plaintiff's error was so glaringly obvious or patent that he should have discovered it or made inquiry of the contracting officer, we find it difficult to understand why such a well-qualified representative of the defendant made the same mistake. Even if the inspector had no authority to supply a binding interpretation of the contract, his actions constitute highly persuasive evidence of the reasonableness of plaintiff's interpretation.

Max Drill, Inc. v. United States, 427 F.2d 1233, 1245 (Ct. Cl. 1970), quoting Kraus v. United States, 366 F.2d 975, 981 (Ct. Cl. 1966). Here, prior to the filing of the instant litigation both parties reasonably interpreted clause CT6.01 to provide for payment of interest costs incurred and acted under that interpretation. The government should not now be permitted to alter those facts by adopting an unsupported litigating position that is directly to the contrary.

**CONCLUSION**

In light of the foregoing, Precision Pine respectfully requests that the Court enter an Order holding that:

1. Precision Pine is permitted to present evidence at trial establishing that its increased costs of interest were an item of consequential damage as the result of the government's breach of contract; or, in the alternative, that

2. Precision Pine is permitted to present evidence at trial establishing that its increased costs of interest are recoverable as an out-of-pocket expense incurred as a direct result of the suspension.

Respectfully submitted,

s/ Alan I. Saltman
Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140
(202) 775-8217 – facsimile

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Washington, D.C. 20006
(202) 452-2140
(202) 775-8217 – facsimile

Dated: January 31, 2005