No. 98-720C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

LORI POLIN JONES
PATRICIA L. DISERT
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

Dated: February 3, 2005

# TABLE OF CONTENTS


INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

I. Standard Of Review . . . . . . . . . . 2

II. The Court Committed A Manifest Error Of Law In Failing To Apply The "But For" Standard of Causation . . . . . . . . . . 3

III. Precision Pine Cannot Satisfy The "But For" Standard Of Causation And, Therefore, The Court Should Grant Summary Judgment Upon Precision Pine's Lost Profits Claims . . . . . . . . . . 5

A. Summary Judgment Is Designed To Secure The Just, Speedy And Inexpensive Determination of Every Action . . . . . . . . . . 6

B. Precision Pine Cannot Demonstrate That It Would Have Harvested Each Of The Suspended Timber Sale Contracts But For The MSO Suspension . . . . . . . . . . 7

1. Precision Pine Has Proffered No Evidence Whatsoever Establishing Which Contracts Would Have Been Operated But For The MSO Suspension . . . . . . . . . . 7

2. Precision Pine Asks The Court To Draw An Inference That Is Contrary To Undisputed Facts . . . . . . . . . . 9

IV. The United States Respectfully Requests That The Court Clarify Its Ruling Regarding Precision Pine's "Lost Volume Seller" Claim . . . . . . . . . . 11

A. The United States Seeks Clarification Regarding What "Subsequent Transaction" May Constitute "A Substitute" For A Broken Timber Sale Contract . . . . . . . . . . 12

B. The United States Seeks Clarification As To Whether Precision Pine May Pursue Alleged Damages Premised Upon Timber Sales That It Was Never Awarded . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Cases:**


Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 11

Bill's Coal Co., Inc. v. Board of Public Utilities of Springfield, Mo.,
887 F.2d 242 (10th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bluebonnet Savings Bank, FSB v. United States,
47 Fed. Cl. 156 (2000),
rev'd, 266 F.3d 1348 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bluebonnet Savings Bank, FSB v. United States,
266 F.3d 1348 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

California Federal Bank v. United States,
___ F.3d ___, 2005 WL 95171 (Fed. Cir. Jan. 19, 2005) . . . . . . . . . . . . . . . . . passim

Everett Plywood Corp. v. United States,
206 Ct. Cl. 244, 512 F.2d 1082 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hi-Shear Tech. Corp. v. United States,
356 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re S.N.A. Nut Co.,
247 B.R. 7, 19 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

La Van v. United States,
382 F.3d 1340 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Myerle v. United States,
33 Ct. Cl. 1 (1897)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-5, 7

Olin Jones Sand Co. v. United States,
225 Ct. Cl. 741 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Precision Pine & Timber, Inc. v. United States,
63 Fed. Cl. 122 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Purina Mills, L.L.C. v. Less,
295 F. Supp. 2d 1017 (N.D. Iowa 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rocky Mountain Construction Co. v. United States,
218 Ct. Cl. 665 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rumsfeld v. Applied Cos.,
325 F.3d 1328 (Fed. Cir.),
cert. denied, 540 U.S. 981 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rumsfeld v. Freedom NY, Inc.,
329 F.3d 1320 (Fed. Cir. 2003),
cert. denied, 124 S. Ct. 2016 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Samaritans Inns, Inc. v. District of Columbia,
114 F.3d 1227 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

San Carlos Irrigation & Drainage District v. United States,
111 F.3d 1557 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Smokey Bear, Inc. v. United States,
31 Fed. Cl. 805 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Strickland v. United States,
36 Fed. Cl. 651 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Technical Assistance International, Inc. v. United States,
150 F.3d 1369 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Techsearch, L.L.C. v. Intel Corp.,
286 F.3d 1360 (Fed. Cir.),
cert. denied, 537 U.S. 995 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

Third Fifth Bank of W. Ohio v. United States,
52 Fed. Cl. 637 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

Tigg Corp. v. Dow Corning Corp.,
962 F.2d 1119 (3d Cir. 1992) . . . . . . . . . . 11

Trans World Metals, Inc. v. Southwire Co.,
769 F.2d 902 (2d Cir.1985) . . . . . . . . . . 11

**Statutes and Regulations:**

U.C.C. § 2-708(2) . . . . . . . . . . 12

U.C.C. § 2-712 . . . . . . . . . . 12

U.C.C. § 2-713 . . . . . . . . . . 12

**Other Authority:**

Restatement (Second) of Contracts § 347 . . . . . . . . . . 11-12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION**

**INTRODUCTION**

This action concerns 14 timber sale contracts that were suspended by the Forest Service following the listing of the Mexican Spotted Owl as an endangered species (the "MSO suspension"). In this action, plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), seeks to recover alleged lost profits in connection with 11 of the 14 contracts.

On April 16, 2004, the United States filed a motion seeking summary judgment with respect to, among other things, Precision Pine's 11 lost profits claims. Following briefing and oral argument, the Court issued an opinion and order that addressed Precision Pine's claims for lost profits. See Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 128-29 (2004). The Court first ruled that the "substantial factor" test is the appropriate standard of causation in this circuit. Id. at 129. Then, applying the substantial factor test, the Court concluded that there exist "issues of material fact as to whether the [MSO suspension] was a 'substantial factor' in causing the lost profits that [Precision Pine] is seeking." Id. Consequently, the Court denied the United States' motion for summary judgment with respect to Precision Pine's claims for lost profits.

On January 19, 2005, the United States Court of Appeals for the Federal Circuit issued a decision in California Federal Bank v. United States, ___ F.3d ___, 2005 WL 95171 (Fed. Cir.

Jan. 19, 2005). In its decision, the Federal Circuit rejected the "substantial factor" test and endorsed the trial court's use of the stringent "but for" standard of causation enunciated in Myerle v. United States, 33 Ct. Cl. 1 (1897). California Federal, 2005 WL 95171, at *3 ("lost profits must 'inevitably and naturally, not possibly nor even probably' flow from the defendant's breach"). The Court's use of the "substantial factor" test in this action is, therefore, contrary to binding Federal Circuit authority.

Accordingly, pursuant to Rule 59 of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully seeks reconsideration and clarification in connection with the Court's November 23, 2004 Order and Opinion.[1]

## ARGUMENT

### I. Standard of Review

"A [motion for] reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity as between private parties in the courts of the United States." RCFC 59(a). "For a movant to prevail, he must point to a 'manifest error of law, or mistake of fact' and demonstrate that the motion 'is not intended to give an unhappy litigant an additional chance to sway the court.'" Strickland v. United States, 36 Fed. Cl. 651, 657 (1996) (quoting Circle K Corp. v. United States, 23 Cl. Ct. 659, 664-65 (1991)); see also Third Fifth Bank of W. Ohio v. United States, 52 Fed. Cl. 637, 638-39 (2002).

In this action, there has been a manifest error of law. Specifically, as explained below, the Court has applied an incorrect standard with respect to causation. See California Federal, 2005 WL 95171, at *3 (rejecting the "substantial factor" test of causation). The present motion

---

[1] The United States also seeks clarification with respect to the "lost volume seller" concept recognized by the Court in its November 23, 2004 decision. See section IV, infra.

for reconsideration should, therefore, be granted. See Third Fifth, 52 Fed. Cl. at 639 (reconsideration is appropriate if the movant shows a "change in the controlling law" or "manifest injustice").[2]

## II. The Court Committed A Manifest Error Of Law In Failing To Apply The "But For" Standard of Causation

On January 19, 2005, the Federal Circuit clarified that the "but for" standard of causation is to be applied in breach of contract actions for expectancy damages. California Federal, 2005 WL 95171, at *2 ("the plaintiff must establish that there would have been a profit but for the breach"). In reaching its decision, the Federal Circuit rejected CalFed's argument that it had endorsed a "less exacting" standard in Bluebonnet Savings Bank, FSB v. United States, 266 F.3d 1348 (Fed. Cir. 2001).

> CalFed . . . argues that the trial court used the wrong standard in determining whether CalFed proved that the government's breach caused the bank to [suffer lost profits.] The [trial] court relied on Myerle v. United States, 33 Ct. Cl. 1, 27 (1897), for the standard of causation that lost profits must "inevitably and naturally not possibly or even probably" flow from the defendant's breach. Citing Bluebonnet Savings Bank, F.S.B. v. United States, 266 F.3d 1348 (Fed. Cir. 2001), CalFed argues for a less exacting standard; it contends that the breach need only be a "substantial factor" contributing to the loss. . . .
>
> The passage from the Bluebonnet case on which CalFed relies does not state or imply that the causation requirement is satisfied any time the breach is a "substantial factor" in causing the claimed lost profits. The court in Bluebonnet noted that the trial court had found that the breach "was a substantial factor in Bluebonnet's increased financing costs," 266 F.3d at 1356, reflecting the way the trial court characterized its finding. See Bluebonnet Sav. Bank, FSB v. United States, 47 Fed. Cl. 156, 173, 180 (2000). Importantly, however, the court upheld the trial court's ruling on

[2] California Federal restates and clarifies, but does not alter, existing law. For this reason, the United States seeks reconsideration on the ground that the Court committed a manifest error.

> causation only after concluding that "[t]he government's various arguments regarding alternative causes for the damages lack merit." 266 F.3d at 1356. That statement is consistent with the standard applied by this court and its predecessor in numerous cases, that the causal connection between the breach and the loss of profits must be "definitely established." La Van v. United States, 382 F.3d [1340, 1351 (Fed. Cir. 2004)]; Hi-Shear Tech. Corp. v. United States, 356 F.3d 1372, 1379 n.2 (Fed. Cir. 2004).

California Federal, 2005 WL 95171, at *3. The "but for" standard and the requirement that causation be "definitely established" ensure that a plaintiff "will not be awarded more than it would have received if the contract had been performed." Id. (citing Rumsfeld v. Applied Cos., 325 F.3d 1328, 1339 (Fed. Cir. 2003)). Thus, in California Federal, the Federal Circuit held that "the Court of Federal Claims correctly rejected the 'substantial factor' test." Id.

Here, as in California Federal, the United States urged the Court to apply the "but for" standard for causation. Precision Pine, 63 Fed. Cl. at 128; see also Summ. J. Reply at 5 (explaining that "the party seeking lost profits must prove that the breach caused the damages sought 'inevitably and naturally, not possibly or even probably'") (quoting Myerle v. United States, 33 Ct. Cl. 1, 27 (1897)).[3] Precision Pine, like the plaintiff in California Federal, argued that the Court should apply the less stringent "substantial factor" test. Precision Pine, 63 Fed. Cl. at 128; see also Summ. J. Opp. at 21-23 (citing Bluebonnet Sav. Bank, FSB v. United States, 266 F.3d 1348, 1356 (Fed. Cir. 2001)). After hearing the parties' arguments, this Court ruled that "the appropriate standard for determining causation is the 'substantial factor' test." Precision Pine, 63 Fed. Cl. at 129.

---

[3] The United States' motion for partial summary judgment regarding damages is cited as "Mot. Summ. J. at __." Precision Pine's response is cited as "Summ. J. Opp. at __." The United States' reply is cited as "Summ J. Reply at __."

The Federal Circuit in California Federal has clarified that plaintiffs seeking expectancy damages, which include common law claims for lost profits, must satisfy the "but for" standard of causation. California Federal, 2005 WL 95171, at *2. In allowing Precision Pine to meet a "less exacting" standard, see Precision Pine, 63 Fed. Cl. at 129, this Court committed a manifest error. The Court should, therefore, grant the United States' motion for reconsideration.

## III. Precision Pine Cannot Satisfy The "But For" Standard Of Causation And, Therefore, The Court Should Grant Summary Judgment Upon Precision Pine's Lost Profits Claims

In denying the United States' motion for summary judgment with respect to Precision Pine's 11 lost profits claims, the Court stated, without elaboration, that Precision Pine had raised genuine issues of material fact "as to whether the [MSO suspension] was a 'substantial factor' in causing" lost profits. Precision Pine, 63 Fed. Cl. at 129 (emphasis added). Because the Court applied the wrong standard for causation, and because Precision Pine cannot definitely establish "the causal connection between the breach and lost profits" under the more exacting "but for" standard, summary judgment should be entered upon each of Precision Pine's claims for lost profits. California Federal, 2005 WL 95171, at *2 ("The inability to prove by a preponderance of evidence that profits would have been made but for the breach will . . . preclude recovery on a lost profits theory."); San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1997) (requiring strict "but for" causation); Myerle, 33 Ct. Cl. at 27 (holding that lost profits must "inevitably and naturally, not possibly nor even probably" flow from the defendant's breach).

### A. Summary Judgment Is Designed To Secure The Just, Speedy And Inexpensive Determination of Every Action

Summary judgment is properly regarded not as a disfavored shortcut, but rather as "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)); see also Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989). Summary judgment should be entered when no genuine issues of material fact are in dispute. RCFC 56(b); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Facts are "material" only if they "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. And a dispute regarding a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

While the party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof . . . at trial." Celotex, 477 U.S. at 322. As the Federal Circuit has explained, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." Sweats Fashions, 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court of Federal Claims] – that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325). In such circumstances, the burden then shifts to the non-moving party to establish, by going beyond the pleadings, that there is a genuine issue of material fact. Celotex, 477 U.S. at 331.

### B. Precision Pine Cannot Demonstrate That It Would Have Harvested Each Of The Suspended Timber Sale Contracts But For The MSO Suspension

Precision Pine is asserting 11 independent lost profit claims involving 11 timber sale contracts. Precision Pine bears the burden of proof with respect to each claim. Technical Assistance Int'l, Inc. v. United States, 150 F.3d 1369, 1373 (Fed. Cir. 1998). Consequently, with respect to each contract, Precision Pine must "definitely establish" that it would have profitably harvested the contract to completion but for the MSO suspension. See California Federal, 2005 WL 95171, at *2-*3; San Carlos, 111 F.3d at 1563. Further, with respect to each contract, Precision Pine must establish that the alleged lost profits were the direct result of the MSO suspension. E.g., Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1071 (Fed. Cir. 2001) ("There must not be two steps between cause and damage."); La Van v. United States, 382 F.3d 1340, 1351 (Fed. Cir. 2004) ("For a damage to be direct there must appear no intervening incident . . . ; the cause must produce the effect inevitably and naturally, not possibly nor even probably.") (quoting Myerle v. United States, 33 Ct. Cl. 1, 26 (1897)).

#### 1. Precision Pine Has Proffered No Evidence Whatsoever Establishing Which Contracts Would Have Been Operated But For The MSO Suspension

Precision Pine cannot as a matter of law meet the "but for" standard of causation. Under the "but for" standard, Precision Pine must establish that a timber sale contract would have been profitably harvested to completion had it not been for the MSO suspension. California Federal, 2005 WL 95171, at *2-*3. Far from meeting this standard, Precision Pine proffers no evidence showing which contracts would have been harvested between August 1995 and December 1996 – at either a profit or a loss – had the suspension not occurred.

It is undisputed that Precision Pine prepared no business plan, scheduling plan, operating plan, or other document describing anticipated timber harvesting. DA137, 157, 178; see also Summ. J. Opp. at 26. As a result, Precision Pine possesses no documentary evidence that shows company plans for harvesting and processing timber in 1995 and 1996. Moreover, Precision Pine's potential trial witnesses are unable to provide this essential information.[4] DA161A, 171. At Precision Pine, decisions concerning the harvesting of timber were made solely by company President Lorin Porter. DA134, 156, 171. Mr. Porter did not involve other company officials in the decision making process. DA156, 171-72, 174. Mr. Porter is unable to identify, however, which contracts would have been harvested in 1995 and 1996 if the MSO suspension had not occurred. DA161A. Indeed, when specifically asked at his deposition, Mr. Porter responded: "[T]hat's a mystery. I mean I don't know." DA161A.[5]

Because no documentary or testimonial evidence identifies which timber sales would have been harvested during the MSO suspension, Precision Pine cannot demonstrate that any particular contracts would in fact have been harvested – much less operated at a profit – but for MSO suspension. This total failure of proof is fatal to Precision Pine's lost profits claims. See Celotex, 477 U.S. at 331.

---

[4] Precision Pine has identified on its preliminary witness list only two individuals – Lorin Porter and Lewis Tenney – who were at Precision Pine at the time of the MSO suspension. Mr. Tenney was not involved in decisions about when and where to harvest. See DA174 (testifying that "Lon [Porter] had total control of that").

[5] In addition, Mr. Porter was unable to identify any documents that might shed light upon this "mystery." DA171A.

**2. Precision Pine Asks The Court To Draw An Inference That Is Contrary To Undisputed Facts**

In opposing summary judgment, Precision Pine attempted to finesse this lack of evidence. Specifically, Precision Pine suggested that the Court infer that the company would have harvested to completion, at some point during the MSO suspension, all of its outstanding timber sale contracts (whether with the Forest Service, the state, Indian tribes or private parties), as well as timber contracts that were obtained during the suspension.[6] See Summ. J. Opp. 25-26. Such an inference is unreasonable as it runs contrary to undisputed facts.

The fallacy of Precision Pine's argument is illustrated most vividly by its claim for lost profits upon the Mud contract. The Mud contract was released from the suspension in March 1996. Pl.'s Add'l PFUF ¶ 27; DSA80-82. As a result, the Mud contract was in fact available to Precision Pine during the entire 1996 operating season – a period when, according to Precision Pine, it was in desperate need of logs to use in its sawmills. Precision Pine chose not to harvest the Mud contract to completion.[7] Pl.'s Add'l PFUF ¶ 29. Nevertheless, in opposing summary judgment, Precision Pine asked the Court to infer that the Mud contract would have been harvested to completion at some point between August 1995 and December 1996. See Summ. J. Opp. at 26. Such an inference is contrary to undisputed facts.

---

[6] Precision Pine also asserted that it "had the ability" to harvest the sales, haul logs to its mills, and manufacture lumber products. Summ. J. Opp. 23-24. This argument misses the point. The question to be answered is not what could have been done, but what would have been done but for the MSO suspension. See California Federal, 2005 WL 95171, at *2 ("the plaintiff must establish that there would have been a profit but for the breach") (emphasis added).

[7] The Mud contract is not the only contract that Precision Pine failed to harvest upon being released from the MSO suspension. The suspension of the Hutch-Boondock and Brann contracts were lifted in October 1995. Despite the availability of these contracts and the supposed urgent need for timber, Precision Pine failed to harvest the Hutch-Boondock and Brann contracts to completion.

In sum, the Mud contract was available and was not fully harvested during the period of the MSO suspension, i.e., between August 24, 1995 and December 4, 1996. As a result, Precision Pine cannot demonstrate that it would have fully harvested timber and roundwood from Mud contract but for the MSO suspension. Summary judgment with respect to Precision Pine's claim for lost profits upon the Mud multi-product sale contract should, therefore, be granted.

Precision Pine's other lost profits claims (i.e., claims with respect to the O.D. Ridge, Kettle, Hay, Brookbank, Jersey Horse, Salt, Manaco, Saginaw-Kennedy, U-Bar and Monument contracts) are equally unsound. It is undisputed Precision Pine did not complete harvesting when it had only four Forest Service sales available and was supposedly in dire need of logs. Pl.'s Add'l PFUF ¶ 29. It is, therefore, unreasonable to infer that Precision Pine would have completely harvested those four sales, plus ten additional Forest Service sales and all non-Forest Service sales, when it had no urgent need for logs.[8] Because Precision Pine has proffered no evidence establishing which contracts would have been harvested to completion but for the MSO suspension, and because Precision Pine is only entitled to reasonable inferences, e.g., Techsearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir.), cert. denied, 537 U.S. 995 (2002), the Court should grant summary judgment with respect to Precision Pine's claim for lost profits upon the O.D. Ridge, Kettle, Hay, Brookbank, Jersey Horse, Salt, Manaco, Saginaw-Kennedy, U-Bar and Monument contracts.[9]

---

[8] Had Precision Pine actually cut all of its sales during the suspension, it would have developed a large log inventory at its mills. In part, because such an inventory would degrade without special care that Precision Pine was unable to provide, Precision Pine's own expert concluded that Precision Pine would not have conducted its business in this manner. DSA49, 51.

[9] In opposing summary judgment, Precision Pine points out that causation "ordinarily" is an issue of fact to be resolved at trial. Summ. J. Opp. at 21. It is not enough, however, simply to aver that causation usually is an issue of fact. Precision Pine bears the burden of establishing

(continued...)

## IV. The United States Respectfully Requests That The Court Clarify Its Ruling Regarding Precision Pine's "Lost Volume Seller" Claim

"Lost volume" damages have traditionally been available only to an aggrieved seller upon breach of a contract by the buyer of goods or services. E.g., Bill's Coal Co., Inc. v. Bd. of Public Utilities of Springfield, Mo., 887 F.2d 242, 245 (10th Cir.1989) ("Sellers fall into section 2-708(2) only if they can demonstrate that they would receive inadequate damages under 2-708(1)"); Trans World Metals, Inc. v. Southwire Co., 769 F.2d 902, 908 (2d Cir.1985) ("nothing in the language or history of section 2-708(2) suggests that it was intended to apply to cases in which section 2-708(1) might overcompensate the seller"); Purina Mills, L.L.C. v. Less, 295 F. Supp. 2d 1017, 1035 (N.D. Iowa 2003) ("courts in most instances reject the application of the lost profits formula unless there is a showing that the contract/market formula results in an inadequate, or lesser, recovery for the seller."); In re S.N.A. Nut Co., 247 B.R. 7, 19 (N.D. Ill. 2000) ("The seller may not receive lost profits unless it has demonstrated that the market price remedy provided in § 2-708(1) would be inadequate."); see also Samaritans Inns, Inc. v. Dist. of Columbia, 114 F.3d 1227, 1236 (D.C. Cir. 1997); Tigg Corp. v. Dow Corning Corp., 962 F.2d 1119, 1129 (3d Cir. 1992).[10] Indeed, it is in this context that lost volume damages are recognized

---

[9](...continued)
"but for" causation in this action. See Technical Assistance, 150 F.3d at 1373; California Federal, 2005 WL 95171, at *3 ("the causal connection between the breach and the loss of profits must be 'definitely established'"). Consequently, under Celotex and its progeny, Precision Pine must "go beyond the pleadings" and proffer evidence sufficient for a reasonable factfinder to rule in its favor. Celotex, 477 U.S. at 331; see also Techsearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir. 2002) (although an issue "is a factual matter normally reserved for a factfinder, the trial court should grant summary judgment in any case where no reasonable factfinder could find" for the plaintiff). As we have demonstrated, Precision Pine has made no such showing.

[10] Plaintiff has identified no case in which lost volume damages have been awarded by this Court. Further, the Federal Circuit has neither discussed nor endorsed the lost volume concept in actions against the United States.

by the Restatement (Second) of Contracts ("Restatement") and the Uniform Commercial Code ("U.C.C."). See Restatement § 347, illus. 16; U.C.C. § 2-708(2) (entitled "Seller's Damages for Non-Delivery or Repudiation"). Where, as here, breach is by the seller of goods, the aggrieved buyer's damages are measured as the cost of cover, U.C.C. § 2-712, or the differential between the market value and contract price, U.C.C. § 2-713. See Everett Plywood Corp. v. United States, 206 Ct. Cl. 244, 512 F.2d 1082 (1975).

Nevertheless, this Court, addressing what it described as the "offset issue," ruled that "[i]t is not necessary that Precision Pine be the seller vis-a-vis the Government." Precision Pine, 63 Fed. Cl. at 132. Because the Court is applying the "lost volume seller concept" in a new and novel context, the United States seeks clarification of the parameters of the concept discussed in the Court's November 23, 2004 decision.

**A. The United States Seeks Clarification Regarding What "Subsequent Transaction" May Constitute "A Substitute" For A Broken Timber Sale Contract**

In denying summary judgment, the Court explained that the question of "[w]hether a subsequent transaction is a substitute for the broken contract sometimes raises difficult questions of fact." Precision Pine, 63 Fed. Cl. at 133 (quoting Restatement § 347 cmt. f) (emphasis added). It is unclear, however, what "subsequent transaction" the Court deemed to be a potential substitute for Precision Pine's timber sale contracts. The United States is unaware of any "substitute" contracts or transactions identified by Precision Pine in its opposition to summary judgment. Further, the Court's ruling does not appear to reference potential substitutes for the suspended timber sale contracts.[11] See id. at 133. Accordingly, the United States seeks

---

[11] The Court states that "there are genuine issues of material fact as to whether Precision (continued...)

clarification regarding (i) what "subsequent transactions" may be deemed a "substitute" for the suspended timber sale contracts pursuant to the Court's ruling, and (ii) what transactions Precision Pine has identified that potentially qualify as substitute transactions. Clarification of this aspect of the Court's ruling is necessary in order for the United States to prepare a defense to the lost volume seller claim that the Court is allowing to proceed to trial.

### B. The United States Seeks Clarification As To Whether Precision Pine May Pursue Alleged Damages Premised Upon Timber Sales That It Was Never Awarded

With respect to substitute transactions, the United States seeks further clarification as to whether Precision Pine may pursue alleged damages based upon timber sale contracts that it was not awarded, but allegedly would have been awarded but for the Government's breach.

In this action, based upon well-established precedent, the Court ruled that Precision Pine is not authorized to recover damages based upon "independent and collateral undertakings." Precision Pine, 63 Fed. Cl. at 137 (citing Wells Fargo, N.A. v. United States, 88 F.3d 1012, 1022 (Fed. Cir. 1996)). Indeed, pursuant to this line of authority, claims based upon contracts that allegedly would have been awarded but for a Government breach are properly dismissed. See Rocky Mountain Construction Co. v. United States, 218 Ct. Cl. 665 (1978) (rejecting a claim for lost profits on contracts that plaintiff would have bid on had the contract at issue not been delayed by the Government); Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320, 1333 (Fed. Cir.

[11](...continued)
Pine would have manufactured the sawlogs into lumber products in 1995, 1996 and early 1997, sold those products, and would still have entered into subsequent lumber sales in 1997 and 1998 using other sawlogs to manufacture that lumber." Precision Pine, 63 Fed. Cl. at 133 (emphasis in original). However, a contract for the sale of lumber cannot feasibly serve "a substitute" for a broken timber sale contract. Not only are timber and lumber distinctly different products, Precision Pine is a purchaser of Forest Service timber and is a seller of lumber products.

2003) (holding that profits on future contracts which plaintiff alleged it would have been awarded absent the Government's breach were too remote and uncertain), cert. denied, 124 S. Ct. 2016 (2004); Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741 (1980) (denying a contractor's claim that the Government's failure to make timely payments under the contract prevented it from obtaining bonding that would have resulted in other profitable contracts); Smokey Bear, Inc. v. United States, 31 Fed. Cl. 805, 808 (1994) ("Damages for the loss of future profits and lost profitable business opportunities arising from potential contracts with others are per se unrecoverable.").

While the Court relied upon this line of authority in its decision, the Court has not addressed the interaction of Precision Pine's lost volume claim and the Federal Circuit's prohibition of damages based upon contracts that a plaintiff would allegedly have been (but was not) awarded. Accordingly, the United States respectfully seeks clarification as to whether Precision Pine's "lost volume seller" claim can be premised upon contracts that Precision Pine was not awarded, but allegedly would have been awarded had the MSO suspension not occurred.

**CONCLUSION**

Accordingly, the United States respectfully requests that the Court grant its motion for reconsideration and provide clarification regarding the parameters of Precision Pine's lost volume seller claim.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

February 3, 2005