**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PARTIAL MOTION TO DISMISS FOR LACK OF JURISDICTION**

Pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), the United States respectfully requests that the Court dismiss for lack of jurisdiction plaintiff's claims for increased log hauling costs and employee claim preparation costs. In support of this motion, we rely upon the complaint, plaintiff's memorandum of facts and law, the appendix to this motion, and the following brief.[1]

**QUESTION PRESENTED**

Whether the Court possesses jurisdiction to entertain claims for increased log hauling costs and employee claim preparation costs where such claims were never submitted to the contracting officer pursuant to the Contract Disputes Act.

---

[1] A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may be raised at any time. RCFC 12(h)(3); see also McCurty v. United States, 30 Fed. Cl. 108, 111 (1993). Additionally, in deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court may properly consider evidentiary matters outside the pleadings. E.g., Indian Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985); Information Sys. & Networks Corp. v. United States, 17 Cl. Ct. 527, 529 (1989).

# STATEMENT OF THE CASE

## I. Nature Of The Case

This action concerns 14 timber sale contracts that were awarded or transferred to plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), between 1991 and 1995. On August 25, 1995, the Forest Service suspended Precision Pine's contracts in order to comply with an injunction issued by a Federal district court following the listing of the Mexican Spotted Owl as an endangered species. The suspension of Precision Pine's contracts was lifted by the Forest Service on or before December 4, 1996.

Subsequently, pursuant to the Contract Disputes Act of 1978 ("CDA), 41 U.S.C. § 601 et seq., Precision Pine submitted 14 claim letters to Forest Service contracting officers asserting various, distinct claims for compensation as a result of the MSO suspension. Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 51 (2001); DX23 (O.D. Ridge); DX52 (Kettle); DX101 (Hay); DX123 (Brookbank); DX144 (Jersey Horse); DX173 (Salt); DX207 (Manaco); DX236 (St. Joe); DX281 (Hutch-Boondock); DX316 (Mud); DX340 (Saginaw-Kennedy); DX393 (Brann); DX432 (U-Bar); DX452 (Monument).[2] In response, Forest Service contracting officers issued final decisions that granted in part, and denied in part, Precision Pine's various claims. Precision Pine, 50 Fed. Cl. at 51; DX25 (O.D. Ridge); DX53 (Kettle); DX104 (Hay); DX124 (Brookbank); DX148 (Jersey Horse); DX175 (Salt); DX210 (Manaco); DX237 (St. Joe); DX283 (Hutch-Boondock); DX317 (Mud); DX341 (Saginaw-Kennedy); DX394 (Brann); DX434 (U-Bar); DX453 (Monument). On September 11, 1998, Precision Pine filed this action challenging the contracting officers' final decisions.

---

[2] "DX__" refers to exhibit identified upon defendant's preliminary exhibit list. All cited exhibits are contained in an appendix being filed in conjunction with this motion.

## II. Statement Of Facts

Precision Pine currently asserts, among other things, claims for (1) increased log hauling costs in connection with the Hay timber sale contract, and (2) reimbursement for time allegedly spent by Precision Pine employees in preparing claim letters. Pl.'s Mem. of Facts & Law at 49-52, 54-57 (filed Mar. 7, 2005). However, Precision Pine's claim letter with respect to the Hay contract contains no claim for increased log hauling costs. See DX101. Similarly, none of Precision Pine's claim letters assert claims for employee claim preparation costs. See DX23; DX52; DX101; DX123; DX144; DX173; DX207; DX236; DX281; DX316; DX340; DX393; DX432; DX452.

## ARGUMENT

## I. Standard of Review

The United States Court of Federal Claims is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

A waiver of sovereign immunity, and thus consent to be sued, must be expressed unequivocally and cannot be implied. Library of Congress v. Shaw, 478 U.S. 310 (1986); United States v. King, 395 U.S. 1, 4 (1969). Any grant of jurisdiction to this Court must be construed strictly, and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980); Cosmic Constr. Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982). As the United States Court of

Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

The provisions of the CDA constitute a limited waiver of sovereign immunity, and, as such, "the limitations and conditions under which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Id.; King, 395 U.S. at 3-5; Brookfield Construction Co., Inc. v. United States, 228 Ct. Cl. 551, 560, 661 F.2d 159, 165 (1981). Accordingly, the requirements of the CDA are jurisdictional prerequisites. W.M. Schlosser Co. v. United States, 705 F.2d 1336, 1338-39 (Fed. Cir. 1983).

To withstand a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the plaintiff bears the burden of proving the allegations supporting jurisdiction. Alaska Pulp Corp. v. United States, 38 Fed. Cl. 141, 144 (1997); American Pacific Roofing Co. v. United States, 21 Cl. Ct. 265, 267 (1990) ("where the court's jurisdiction is put in question, plaintiff 'bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence'") (quoting Reynolds v. Army & Air Force Exchange Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)); accord Thomson v. Gaskill, 315 U.S. 442, 446 (1942). If a motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, this Court may consider relevant evidence to resolve the disputed facts. Reynolds, 846 F.2d at 747; accord Thomson, 315 U.S. at 446 ("if a plaintiff's allegations of jurisdictional facts are challenged . . . , [it] bears the burden of supporting the allegations by competent proof"); see also Morris v. United States, 33 Fed. Cl. 733, 742 (1995).

## II. The Court Does Not Possess Jurisdiction To Entertain Precision Pine's Claims For Employee Claim Preparation Costs and Increased Hauling Costs

In order to maintain an action pursuant to the CDA, a plaintiff must first certify and submit its claims to a contracting officer for a final decision. See 41 U.S.C. § 605(a). Upon obtaining the contracting officer's final decision, see 41 U.S.C. §§ 605, 609(a)(1), an action challenging the decision may be filed in this Court. See 41 U.S.C. § 609(a)(3). Such an action, however, "may not raise any new claims not presented and certified to the contracting officer." Croman Corp. v. United States, 44 Fed. Cl. 796, 800 (1999) (quoting Sante Fe Engineers, Inc. v. United States, 818 F.2d 856, 858 (Fed. Cir. 1987)); see also Contract Cleaning Maintenance, Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987) (it is a jurisdictional requirement that the contractor "submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."). Indeed, "[i]t would subvert the statutory purpose of requiring contractors first to submit their claims to the contracting officer if plaintiffs were allowed first to submit a claim based on an unexamined factual premise and then permitted later to . . . set forth an altered factual basis for a claim before this court." Croman, 44 Fed. Cl. at 802.

Precision Pine's claim letters certify numerous, distinct claims such as, for instance, (1) "value of logs/lost opportunity including milling profit chips," (2) "performance bond costs during the suspension," (3) "mill impact costs," (4) "attorney fees," (5) "idle equipment costs," (6) "cost of maintaining key employees," (7) "security," (8) "unabsorbed corporate G&A," (9) "unabsorbed interest cost," and (10) "unemployment insurance costs." E.g., DX23 (page

ODR457). However, none contain a certified claim for employee claim preparation costs.[3] See DX23; DX52; DX101; DX123; DX144; DX173; DX207; DX236; DX281; DX316; DX340; DX393; DX432; DX452. Nor does Precision Pine certify a claim for increased hauling costs in the claim letter addressing the Hay contract. See DX101. The Court, therefore, lacks jurisdiction to entertain such claims at trial.

### A. Precision Pine's Certified Claims Do Not Seek Employee Claim Preparation Costs

Each of Precision Pine's claim letters contains a claim for attorney fees, which is contained in a standard section that reads in pertinent part:

> As a result of the suspension, we were also forced to incur substantial legal expenses in part because when we inquired of the Forest Service how the Forest Service was going to "pay us for the cost we incurred" as a result of the delay (as the Acting Chief said would happen) we were simply advised to submit claims. Given the extent, length and implications of the suspensions to the operations of our company, preparing any such claims mandated that we hire specialized counsel. . . . For this reason, we have included and are entitled to the attorney's fees that we have incurred as a result of the suspension.

E.g., DX23 (page ODR457) (emphasis added). Thus, the operative fact alleged in the claim letters is the hiring of "specialized counsel." Precision Pine does not assert that company employees were involved in claim preparation, much less certify a claim for reimbursement of

---

[3] On November 23, 2004, the Court granted the Government's motion for summary judgment upon Precision Pine's claims for attorney fees. Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 139-41 (2004). Precision Pine subsequently filed a motion seeking clarification as to whether the Court's ruling included costs that Precision Pine allegedly had incurred in having its employees assist in the preparation of CDA claims letters. Addressing Precision Pine's motion, the Court directed that "further legal arguments regarding recovery of pre-litigation claim preparation costs be included in the parties' pre-trial memoranda. See Order of Judge Miller at 1 (Jan. 6, 2005). In accordance with the Court's order, the United States addresses this claim in its pretrial memorandum, as well as in this motion.

any time that its employees expended. Id. Consequently, Precision Pine failed to submit "a clear and unequivocal statement that put the contracting officer on sufficient notice of the basis for the claim currently before the court." Croman, 44 Fed. Cl. at 801 (citing Contract Cleaning, 811 F.2d at 592). As a result, the Court is without jurisdiction to entertain Precision Pine's employee claim preparation cost claim.

### B. Precision Pine's Certified Claim With Respect To The Hay Contract Does Not Seek Increased Hauling Costs

On November 10, 1997, Precision Pine submitted a claim concerning the Forest Service's suspension of the Hay contract from August 25, 1995 to December 4, 1996.[4] DX101. Precision Pine asserted claims for various alleged damages. DX101 (page HAY1190) (asserting claims for, among other things, lost market opportunity, interest on deposits, and idle equipment costs). However, Precision Pine's claim letter does not mention, much less seek compensation for, an increase in log hauling costs. To the contrary, in its summary of claims for the Hay contract, Precision Pine expressly disclaims any claim for increased delivered log costs – a category that would include any claim for increased log hauling expenses. Id. (stating that "increased DLC" are "n/a").

Plainly, Precision Pine has failed to submit "a clear and unequivocal statement that put the contracting officer on sufficient notice of the basis [of the increased log hauling cost] claim

[4] Precision Pine did not assert claims for increased hauling costs in connection with any of the other suspended contracts. See DX23; DX52; DX123; DX144; DX173; DX207; DX236; DX281; DX316; DX340; DX393; DX432; DX452. However, Precision Pine's expert, Robert Ness, includes increased logging and hauling costs in his supplemental expert report on post-suspension harvesting. At his deposition, Mr. Ness stated that the alleged increase in logging and hauling costs in his supplemental report were not based upon his own analysis, but rather, were supplied by counsel for Precision Pine. The United States will address this issue during the course of trial.

currently before the court." Croman, 44 Fed. Cl. at 801 (citing Contract Cleaning, 811 F.2d at 592). The Court is therefore without jurisdiction to entertain the increased log hauling cost claim in this action.

**CONCLUSION**

For these reasons, the United States respectfully requests that the Court dismiss for lack of jurisdiction Precision Pine's claims for employee claim preparation costs and increased log hauling costs.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

Lori Polin Jones
Patricia L. Disert
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

Dated: April 4, 2005