SALTMAN & STEVENS, P.C.

1801 K Street, N.W., Suite M-110, Washington, D.C. 20006

(202) 452-2140
Fax: (202) 775-8217
Email: rgoeken@saltmanandstevens.com

February 14, 2005

**VIA EMAIL**

David A. Harrington, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530

Re: Precision Pine & Timber, Inc. v. United States, CoFC No. 98-720C

Dear David:

This letter will memorialize our telephone conversation of today which focused on the matters raised in your letter that was faxed to us on the afternoon of Friday, February, 11, 2005. I will address each point in the order that it was raised in your letter:

**Point 1 - Robert Ness**: As we discussed, Precision Pine will produce Mr. Ness for deposition any day during the week of February 21, 2005 in Eugene, Oregon, except Wednesday, February 23, 2005. We are flexible as to the location of the deposition in Eugene, and note that there is a U.S. Forest Service office in Eugene that may have a room available. Please contact us at your earliest convenience to finalize the details about Mr. Ness's deposition.

In response to your inquiry with respect to the documents used by Mr. Ness in preparing his most recent report, I identified the following documents to you that Mr. Ness has indicated that he relied on. In his cover letter dated February 7, 2005, Mr. Ness's phrase "Internal Financial Statements for the FYE 3/31/98 – FYE 3/31/01," as one would expect, refers to:

For FYE 3/31/97 and 3/31/98

Lead Schedules for Sales Revenue, Other Income, Other Expense, Cost of Sales, General and Administrative Expenses, Income Tax Expense prepared by Precision Pine's accountants, Baldwin Jones & Co.

"Reviewed Financial Statement Precision Pine and Timber, Inc. Financial Statements for the Years Ended March 31, 1998 and 1997" prepared by Precision Pine's accountants, Baldwin Jones & Co.

154-98-720
(03)

For FYE 3/31/99-3/31/01

In these years, no reviewed financial statements were prepared and Mr. Ness used Precision Pine and Timber, Inc. Financial Statements for the Years Ended March 31, 1999, 2000 and 2001.

In Mr. Ness's cover letter, his phrase "The Lumber Invoices from the post-suspension period" is self-explanatory and includes year-end inventory summaries in the post-suspension period.

In Mr. Ness's cover letter his phrase "TSSAs for the Breached Contracts" is self-explanatory and refers to the Timber Sale Statements of Account prepared by the Forest Service.

In Mr. Ness's cover letter, his phrase "Precision Pine Sales Journals for 1997-2000" is self-explanatory and includes the Winslow and Heber journals.

All of these documents have been made available to the government for inspection and copying during discovery in this case, and, of course, the TSSAs are documents originally prepared by the Forest Service. We are currently in the process of preparing copies of documents for use as exhibits at trial, which will likely include at least some of these documents and I reiterate my offer to provide copies of those documents identified above that you cannot readily locate in your files.

**Point 2 – Martin Devere**: I informed you that Mr. Devere has been unable to secure the release of any other portions of the Beck Report, which is proprietary. We believe that Mr. Devere may testify as to that portion of the Beck Report which has been provided and/or that he may also offer those opinions in his expert report that do not rely on the Beck Report.

**Point 3 – Doug McDonald and Timber Data Co.**: Mr. McDonald has identified the post-suspension timber sale offerings that were made on the relevant National Forests in Region 3 in 1996-1998. (In fact, this information regarding timber sales offered in December of 1996 and all of 1997 was provided to the government in Precision Pine's Appendix to its Response to the Government's Motion for Summary Judgment). As part of his routine business activities, Mr. McDonald was provided with this information by the Forest Service during those years. Accordingly, as this is essentially the Forest Service's own data, I have little doubt that we will be able to stipulate to the pertinent facts about these timber sale offerings and, as requested, I will provide you with a proposed stipulation to accomplish before March 10, 2005.

As you requested, the address for Timber Data Co. is: 576 Olive Street, #303, Eugene, Oregon 97440.

**Point 4 – Errata Sheets**: Enclosed with your letter were errata sheets for Messrs. Maurer, Panks, and Adkins. As we discussed, to the extent that we were previously given these errata sheets as provided for by Rules of the Court of Federal Claims, we will have no objection to appropriate, non-substantive corrections made by the deponents. I further note, however, that Mr. Adkins's errata sheet was not signed within 30 days of the notice of the availability of his deposition as is required by the rules and is, therefore, invalid.

**Point 5 – Verification of Interrogatory Answers**: As we discussed, Precision Pine is willing to verify its answers. We also reiterate our long-standing request that the government do the same with respect to its answers to Precision Pine's discovery requests, which we anticipate including on our preliminary exhibit list. Please advise me when the government has accomplished its verification so that we may exchange verifications.

**Point 6 – Stipulations of Fact**: I have only had a chance to review briefly the proposed stipulations you provided on Friday. I was disappointed, however, that virtually none of the stipulations that Precision Pine had proposed last October, that I thought to be quite innocuous, were included. I do appreciate your stated willingness to reconsider Precision Pine's proposed stipulations and I will be contacting you about them in the near future.

**Point 7 – Stipulations as to Documents**: I also appreciate your suggestion that we stipulate as to authenticity/admissibility of certain documents. My current preference would be that we wait and see what documents are on the proposed/final witness lists and then stipulate to the authenticity/admissibility of these documents to the greatest extent possible.

In closing, I believe our conversation today was productive. If I have inadvertently not accurately stated the substance of our conversation or have omitted something you believe to be important, please let me know.

Very truly yours,

SALTMAN & STEVENS, P.C.

Richard W. Goeken

RWG/ecf