**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE "PRODUCT MIX" TESTIMONY FROM LORIN PORTER**

Plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), intends to offer evidence regarding the volume of various lumber products ("product mix") that allegedly could have been produced from sawtimber harvested from each of the contracts at issue. Precision Pine's evidence about product mix comes from an analysis performed by company president, Lorin Porter. Mr. Porter has not been identified as an expert and, as a result, has produced no expert report or work papers regarding his expert testimony. Moreover, Precision Pine cannot establish that Mr. Porter's estimates of product mix are "the product of reliable principles and methods" such that they are admissible under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Finally, testimony from Mr. Porter regarding product mix is not admissible as lay opinion testimony. See Fed. R. Evid. 701.

Accordingly, pursuant to Federal Rules of Evidence 701 and 702, defendant, the United States respectfully requests that the Court exclude testimony from Mr. Porter regarding the mix of lumber products that allegedly would have been derived from the contracts at issue.

## BACKGROUND

Precision Pine did not track timber from its respective timber sale contracts through the manufacturing process. DX781 (interrog. no. 18). As a result, Precision Pine has no reports or other contemporaneous documents showing what mix of lumber products was derived from sawtimber from any of the contracts at issue.[1] Lacking direct evidence of product mix, Precision Pine has proffered product mix estimates developed by Mr. Porter during the course of this litigation. See DX784 (interrog. no. 41).[2]

Mr. Porter's analysis is not based upon first-hand observations. DX784 at 1-2. Rather, the starting point for Mr. Porter's analysis is specific data drawn from the record of lumber sales from Precision Pine's Winslow sawmill, i.e., the "Winslow Sales Record." DX784 at 1-2. Using this sales data, Mr. Porter purports to develop a mix of lumber products produced from Ponderosa Pine for six of the contracts at issue. DX784 at 2 (providing alleged product mixes for the Brann, Brookbank, Hutch-Boondock, Mud, St. Joe, and U-Bar contracts). Precision Pine describes the methodology used by Mr. Porter as follows:

> Lorin Porter reviewed TSSAs, timber sale status reports, and the Winslow Sales Record in order to identify months when the sale of lumber products actually made from timber harvested on contracts at issue in this case occurred. (In doing so, Mr. Porter took into

---

[1] It is undisputed that numerous factors affect the mix of lumber products derived from the harvest of a timber sale. These factors include, but are not limited to, the species of trees harvested, tree size (usually expressed as the average diameter at breast height ("dbh")), and tree quality (often expressed in terms of "percent grade").

[2] DX784 contains Precision Pine's supplemental answer to several interrogatories. Each supplemental answer is separately numbered. Unless otherwise specified, where pinpoint cites to DX784 are used, the page number refers to a page of the supplemental answer to interrogatory number 41.

> account lag time from timber harvest to lumber sale.) The [Winslow] Sales Record lists sales in board feet for specific lumber products as well as for all lumber products sold by month. By taking the total board footage for each product actually sold, and dividing that figure by the total board footage of all lumber products sold in that period, Mr. Porter determined the percentage of the total lumber production that each product represented for that period.

DX784 at 1.

With respect to the remaining eight contracts (i.e., the Hay, Jersey Horse, Kettle, Manaco, Monument, O.D. Ridge, Saginaw-Kennedy and Salt contracts), insufficient sales data is available in the Winslow Sales Record to perform this analysis. See DX784 at 2. Rather than turning to industry-wide data, Mr. Porter simply alters the product mix that he came up with for contracts where sales data is available. See DX784 at 2-5. Precision Pine does not describe a methodology for making these alterations other than to state that changes are based upon Mr. Porter's "experience." Id.

Precision Pine also proffers alleged product mixes for products made from Douglas Fir and Engleman's Spruce. DX784 at 5-7. Once again, Precision Pine offers no explanation of the methods and principles used to derive Douglas Fir and Engleman's Spruce product mixes other than to say that Mr. Porter is "utilizing his experience."[3] Id.

---

[3] For each contract upon which Precision Pine seeks lost lumber profits, Precision Pine's expert, Robert Ness, performed calculations using a mix of products that would allegedly have been derived from processing sawtimber from the relevant contract. See PX131 (Ness Report). Mr. Ness did not perform his own analysis to determine product mix. Rather, he was provided and used the product mix allegedly developed by Mr. Porter. See Ness Dep. at 116 (attached as Exhibit B).

## ARGUMENT

### I. Mr. Porter's Product Mix Testimony Is Not Admissible Under Rule 702

#### A. The Methods And Principles Used To Derive A Product Mix For The Brann, Brookbank, Hutch-Boondock, Mud, St. Joe, and U-Bar Contracts Are Not Reliable

Precision Pine has neither identified Mr. Porter as an expert, nor provided a report, workpapers or other backup documentation supporting his product mix estimates.[4] However, Mr. Porter's estimates of product mix clearly constitute expert testimony. See, e.g., Fed. R. Evid. 701 (limiting non-expert testimony to "opinions or inferences" that are "rationally based upon the perception of the witness" and that are "not based on scientific, technical or other specialized knowledge"); Lifewise Master Funding v. Telebank, 374 F.3d 917 (10th Cir. 2004) ("a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person") (citing Doddy v. Oxy USA, Inc., 101 F.3d 448, 460 (5th Cir. 1996)); Cuyahoga Metropolitan Housing Authority v. United States, 60 Fed. Cl. 481, 482-83 (2004).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. This rule was significantly modified in 2000 to expressly incorporate the "gatekeeping function" established by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). Fed. R. Evid. 702 advisory committee notes (2000).

---

[4] Precision Pine did describe Mr. Porter's methods and conclusions in response to an interrogatory. See DX784. The United States subsequently deposed Mr. Porter. As a result, unless Precision Pine's interrogatory answer does not fully and accurately describe the methods and principles employed by Mr. Porter, the United States does not seek to exclude Mr. Porter's testimony on this basis. See RCFC 37(c)(1) (barring undisclosed expert testimony).

Under Daubert and Kumho Tire, the trial judge acts as a gatekeeper to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152; accord Daubert, 509 U.S. at 597 (the trial judge must act as a "gatekeeper" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"); see also Micro Chemical, Inc. v. Lextron, Inc., 317 F.3d 1387, 1391 (Fed. Cir. 2003) (Daubert "provides the analytical framework for determining the admissibility of expert testimony under Rule 702"). Accordingly, under Rule 702, expert testimony is admissible only after the trial court has verified that: (1) "the [expert's] testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the witness has applied the principles and methods reliably to the facts of the case."[5] Fed. R. Evid. 702.

In determining the admissibility of nonscientific expert testimony under Rule 702, courts properly consider: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high rate of error and whether there are standards controlling the technique's operation; and (4) whether the

---

[5] The proponent of expert testimony has the burden of establishing its admissibility under Rule 702. 4 Weinstein's Federal Evidence § 702.05[1][a] (2d ed. 2005) (citing Daubert, 509 U.S. at 592 (the qualification of an expert witness and the admissibility of expert testimony "should be established by a preponderance of proof"), and Maryland Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780, 783 (4th Cir. 1998) (Daubert requires, as a precondition to admissibility, evidence from which the trial court can determine that proffered expert testimony is both relevant and reliable). Challenges to the reliability of expert testimony are commonly addressed through a motion *in limine*. Id. § 702.05[5] (citing Goebel v. Denver & Rio Grande Western R.R., 215 F.3d 1083, 1087 (10th Cir. 2000) ("[t]he most common method for fulfilling this function [of gatekeeper] is a Daubert hearing")).

theory or technique enjoys a general acceptance within the scientific community. See Kumho Tire 526 U.S. at 149-50 (citing Daubert, 509 U.S. at 592- 94); see also Fed. R. Evid. 702. None of these considerations support the admissibility of Mr. Porter's testimony. Mr. Porter consulted no textbooks, treatises or studies in developing his methodology or his product mix estimates. Porter Dep. at 26 (attached as Exhibit A). Mr. Porter's methodology is untested, has not been subjected to peer review, and has never been published. Id. And Mr. Porter could not say whether his technique enjoys a general acceptance because he does "not know what is recognized by the industry." Id. Indeed, Mr. Porter was unable to describe key aspects of his own method for deriving a product mix. Id. at 29-36 (testifying that he could not recall, and knew of no way to ascertain, what "lag time" between the harvesting of timber and the sale of lumber was used in preparing the estimate product mix).

Moreover, Mr. Porter's method cannot be expected to reliably predict the actual product mix. Mr. Porter uses Precision Pine's Winslow Sales Record as the starting point for his estimates. DX784 at 1-2. The Winslow Sales Record contains information about the sale of various categories of lumber products from Precision Pine's operations in Winslow, Arizona. See DX764. It contains no information about where the logs used to make such lumber came from. Id. As a result, Mr. Porter simply assumes that the overall mix of lumber products sold by Precision Pine in a given month (as shown in the Winslow Sales Record) is identical to the overall mix of lumber products derived from logs from one of the contracts at issue. DX784 at 1-12.

There exists no rational basis for such an assumption. The mix of products sold by Precision Pine is a function of the needs of its customers. For example, a builder who needs

lumber (perhaps 2x4's) for a construction project is going to purchase that lumber regardless of whether Precision Pine's milling and planing operations have produced a large volume of moulding from the Hay timber sale. Because customer needs are unrelated to the mix of products produced from a given timber sale, it is unreasonable to assume that customer purchases will precisely match the lumber products derived from logs from a particular sale.

In addition, Mr. Porter's method is valid only if it correctly accounts for "lag time," i.e., the time it takes to obtain logs from a timber sale, produce lumber products from the logs, and sell the resulting products on the open market. Mr. Porter does not know and cannot determine what lag time was used in preparing his product mix estimates. Porter Dep. at 29-36 (stating that he could not recall, and knew of no way to ascertain, what lag time was used to come up with product mix estimates for the Brann, Brookbank, Hutch-Boondock, Mud, St. Joe, U-Bar contracts). As the Seventh Circuit recently explained, the witness "may be the world's leading student [in the field,] but if he could not or would not explain how his conclusions met . . . Rule [702's] requirements, he [is] not entitled to give expert testimony." Zenith Electronics Corp. v. WH-TV Broadcasting Corp., 395 F.3d 416, 419 (7th Cir. 2005).

Finally, the lumber sold to customers in a given month would exactly reflect the mix of lumber products from a specific timber sale only if (1) Precision Pine carried no inventory of lumber from month to month, and (2) lumber was being produced exclusively from logs from a single timber sale. It is undisputed that Precision Pine did carry lumber inventories from month to month. See DX478-500. Additionally, because Mr. Porter does not know what lag time was used, Precision Pine cannot show that logs from other timber sales were not being harvested and made into lumber at the same time.

The methods and principles used by Mr. Porter are unsound and, therefore, Mr. Porter's product mix testimony is inadmissible under Rule 702 and Daubert. This Court should exercise its gatekeeping function to ensure that expert testimony rests on a reliable foundation by excluding Mr. Porter's product mix estimates for the Brann, Brookbank, Hutch-Boondock, Mud, St. Joe, and U-Bar contracts.

**B. Precision Pine Cannot Establish That Reliable Methods And Principles Were Used To Derive A Mix Of Ponderosa Pine Lumber Products For The Hay, Jersey Horse, Kettle, Manaco, Monument, O.D. Ridge, Saginaw-Kennedy And Salt Contracts**

With respect to the remaining eight contracts, Precision Pine does not describe the method or principles used by Mr. Porter to derive a mix of Ponderosa Pine products. See DX784. Instead, Precision Pine proffers tables containing a product mix and asserts that Mr. Porter "utilized his experience" to come up with the alleged mix. Id.

A witness who simply invokes his "expertise" or "experience" rather than "analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." Zenith, 395 F.3d at 419 (the witness "may be the world's leading student [in the field,] but if he could not or would not explain how his conclusions met the Rule's requirements, he was not entitled to give expert testimony"). This is because "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." Id. at 719-20 (citing numerous cases). see also General Electric Corp v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a . . . court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").

Here, Mr. Porter's assertion regarding the product mix that should be used for the Hay, Jersey Horse, Kettle, Manaco, Monument, O.D. Ridge, Saginaw-Kennedy and Salt contracts are supported by nothing but the bare assertion that he is "utilizing his experience." DX784. Unsupported conclusory assertions based solely upon Mr. Porter's "experience" do not satisfy Rule 702 or Daubert, and should therefore be excluded. E.g., Zenith, 395 F.3d at 419; Salgado v. General Motors Corp., 150 F.3d 735, 742 n.6 (7th Cir. 1998) (An expert "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions."); see also Imperial Tobacco Ltd. v. Phillip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990) (unsupported conclusory assertions are not sufficient to raise an issue of material fact) (citing Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1564 (Fed. Cir. 1987)). See generally 4 Weinstein's Federal Evidence § 702.05.

### C. Precision Pine Cannot Establish That Reliable Methods And Principles Were Used To Derive A Mix Of Douglas Fir And Engleman's Spruce Lumber Products

Precision Pine also relies upon Mr. Porter's opinion regarding the mix of lumber products that allegedly would have been derived from Douglas Fir and Engleman's Spruce. Mr. Porter's opinion regarding lumber mix from Douglas Fir and Engleman's Spruce is completely unmoored. See DX784 at 5-7. No analysis of any kind accompanies these product mix estimates, nor does Mr. Porter provide any explanation of the basis for his conclusions. Id. Essentially, Mr. Porter says, "just trust me." It is well-established that such unsupported, conclusory statements are insufficient as a matter of law. E.g., Zenith, 395 F.3d at 419; Salgado, 150 F.3d at 742 n.6; Imperial Tobacco, 899 F.2d at 1581 (citing Sweats Fashions, 833 F.2d at 1564); see also General Electric, 522 U.S. at 146 ("[N]othing in either Daubert or the Federal

Rules of Evidence requires a . . . court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."). Accordingly, testimony from Mr. Porter about alleged Douglas Fir and Engleman's Spruce product mixes should be excluded.

## II. Mr. Porter's Product Mix Testimony Is Not Admissible Under Rule 701

The United States argued that Mr. Porter's product mix estimates are inadmissible in seeking summary judgment.[6] In responding to this argument, Precision Pine conceded that Mr. Porter has not been identified as an expert and that his proposed testimony is inadmissible under Rule 702 and Daubert. See Pl.'s Response to Def.'s Mot. for Partial Summ. J. at 50-51 (filed June 9, 2004) (docket no. 244). However, Precision Pine argued that Mr. Porter's product mix analysis is admissible as the opinion of a lay witness. See id. at 51 (citing Fed. R. Evid. 701).

The admissibility of lay witness opinions is governed by Rule 701 of the Federal Rule of Evidence, which "requires that a lay witness's opinion be: (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness's testimony, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Cuyahoga, 60 Fed. Cl. at 482. Mr. Porter's product mix analysis satisfies none of the requirements for the admissibility of lay opinion testimony.

The first requirement of Rule 701, that lay opinion be rationally based upon the witness's perceptions, is nothing more than the familiar requirement that testimony be based upon "first-

---

[6] Although not granting summary judgment on this issue, the Court noted that "[d]efendant will have ample opportunity via motions *in limine* . . . to challenge the sufficiency of Precision Pine's [product mix] evidence." Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 132 (2004).

hand knowledge or observation." Cuyahoga, 60 Fed. Cl. at 482 (citing Weinstein's Federal Evidence § 701.03[1]); Bank of China v. NBM LLC, 359 F.3d 171, 181 (2d Cir. 2004); United States v. Garcia, 291 F.3d 127, 140 (2d Cir. 2002). Mr. Porter's opinion does not meet this requirement. During his deposition, Mr. Porter explained that the Winslow Sales Record – the starting point for his analysis – was created by a secretary in Precision Pine's sales office. Porter Dep. at 363-64. Mr. Porter was not involved in this process. Id. at 364 (Our secretary "was the one who decided what went where [in the sales record] generally speaking, and I didn't pay any attention to that."). Indeed, Mr. Porter was unsure what sales information was recorded in the Winslow Sales Record. Id. at 364-65. Thus, by Mr. Porter's own admission, he lacks the first-hand knowledge required by Rule 701. Bank of China, 359 F.3d at 181 (holding that "the admission of . . . testimony pursuant to Rule 701 was error because it was not based entirely on [the witness's] perceptions"); Cuyahoga, 60 Fed. Cl. at 482 (citing DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 685-86 (5th Cir. 2003) (ruling that a lay witness could not testify regarding lost profits based on information received from a third party)); United States v. Oleander, 338 F.3d 629, 637-38 (6th Cir. 2003) (lay testimony based upon information supplied by witnesses was inadmissible under Rule 701 because "firsthand knowledge or observation is essential"); Baumgart v. Transoceanic Cable Ship Co., 2003 WL 22520034 at *2 (S.D.N.Y. Nov. 7, 2003) (a lay witness study of wage and benefits was not admissible under FRE 701 where it was based on information supplied by third parties). Mr. Porter's testimony is, therefore, inadmissible. See Garcia, 291 F.3d at 140 (explaining that the first-hand knowledge requirement "goes to the admissibility of evidence, not merely its weight").

The second prong of Rule 701 requires that the proposed opinion be "helpful" to the trier of fact. Fed. R. Evid. 701; see also Advisory Committee Notes to Rule 704 ("opinions [under Rules 701 and 702] must be helpful to the trier of fact"). As we explained above, Mr. Porter's methodology is not based upon a reliable methodology, is based upon faulty assumptions, and suffers from other incurable flaws. See section I, supra. An opinion based upon an unreliable methodology is not helpful to the trier of fact. Consequently, Mr. Porter's opinion evidence is inadmissible under Rule 701.

The third prong of Rule 701 was added in 2000 "to eliminate the risk that the reliability requirements of Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Cuyahoga, 60 Fed. Cl. at 483 (citing Advisory Committee Notes to Rule 701). The Advisory Committee explains:

> Under the [2000] amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge . . . . By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 . . . by simply calling an expert witness in the guise of a layperson. . . . [T]he distinction between lay testimony and expert witness testimony is that lay testimony "results from a process of reasoning familiar in every day life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field."

Advisory Committee Notes to Rule 701 (2000 amendment). Mr. Porter's analysis of product mix attempts to use Precision Pine's sales records to determine what lumber products could be produced from specific stands of timber. DX784 at 1-2. Such an analysis is not the result of reasoning familiar in every day life; it is necessarily based upon scientific, technical or other

specialized knowledge. By proffering Mr. Porter's complex product mix analysis as a lay opinion under Rule 701, Precision Pine seeks to evade scrutiny under Rule 702 and Daubert. This is precisely what the 2000 amendment to Rule 701 is designed to prevent. See, e.g., Cuyahoga, 60 Fed. Cl. at 483-84. Accordingly, Mr. Porter's analysis in not admissible as a lay opinion.

In response, Precision Pine may cite cases that allow company officers to offer opinions about the overall profitability of their business without being identified as experts. As an initial matter, Precision Pine is not proffering an opinion from Mr. Porter about overall profitability or value. Moreover, cases that allow corporate officers to given an opinion about overall corporate profitability are not an exception to the requirements of Rule 701. See Advisory Committee Notes to Rule 701 ("Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.").

Where opinion testimony "involves extrapolations and judgments," it is "fundamentally different" and raises "sufficient reliability concerns to bring [the opinion] within the scope of Rule 702." Cuyahoga, 60 Fed. Cl. at 484. As one court of appeals recently explained:

> Rule 701 applies only "[i]f the witness is not testifying as an expert." Fed. R. Evid. 701. Indeed the rule expressly prohibits the admission of testimony as lay witness opinion if it is based on "specialized knowledge." Id. In other words, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." Doddy v. Oxy USA, Inc., 101 F.3d 448, 460 (5th Cir. 1996).

Lifewise Master Funding, 374 F.3d at 929. Consequently, the court concluded that opinion testimony from plaintiff's corporate president about "technical, specialized subjects" was not admissible under Rule 701. Id.

The court of appeals then went on to distinguish cases "allowing a business owner to opine as to value." Id. at 929-30. These cases fall into two groups. In one group of cases, courts admit business owner testimony "under Rule 701 because the owners has sufficient personal knowledge of their respective businesses and of the factors on which they relied to estimate lost profits." Id. at 929 (emphasis in original). Here, Mr. Porter lacks personal knowledge about the sales record data that he relied upon for his product mix analyses. See, e.g., Porter Dep. at 363-64. Thus, Mr. Porter's testimony is not admissible.

In the second group of cases, "the owners offered valuations based on straightforward, common sense calculations." Lifewise Master Funding, 374 F.3d at 930. Mr. Porter's product mix analyses do not rely upon straightforward calculations or reasoning familiar in every day life. They are based upon "scientific, technical or other specialized knowledge," and are, therefore, inadmissible as lay opinion testimony under Rule 701. Cuyahoga, 60 Fed. Cl. at 484; see Lifewise Master Funding, 374 F.3d at 929-30; see also Zenith, 395 F.3d at 420 (Rule 701 does not assist a party whose "claimed losses depend on the inferences to be drawn from the raw data, rather than [upon] these . . . data themselves. Reliable inferences depend on more than say-so, whether the person doing the saying is a corporate manager or a putative expert.").

Thus, while cases have allowed lay opinion testimony from business owners as to overall profitability or value, these cases do not authorize lay opinion testimony about "technical,

specialized subjects." See Lifewise Master Funding, 374 F.3d at 929-30; see also Cuyahoga, 60 Fed. Cl. at 484.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court grant this motion *in limine* and exclude testimony from Lorin Porter regarding alleged product mix pursuant to Federal Rules of Evidence 701 and 702.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

Patricia Disert
Lori Polin Jones
Office of the General Counsel
U.S. Department of Agriculture

March 15, 2005