**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, | ) | |
| v. | ) | No. 98-720C (Judge George W. Miller) |
| THE UNITED STATES, Defendant. | ) | |

**MOTION *IN LIMINE* TO EXCLUDE AFFIRMATIVE DEFENSE OF RELEASE**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 18, 2005

# TABLE OF CONTENTS

**PAGE**


Table of Authorities ..... iii

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The Government Waived the Affirmative Defense of Release ..... 2

1. Release is an Affirmative Defense ..... 2

2. Defendant Waived the Release When it Failed to Plead it as an Affirmative Defense in its Answer ..... 3

3. Defendant Also Failed to Adequately Notice Release as an Affirmative Defense Subsequent to Filing its Amended Answer ..... 5

a. Summary Judgment Regarding Liability ..... 6

b. Discovery Regarding Damages ..... 6

c. Summary Judgment on Quantum ..... 10

4. Precision Pine has been Substantially and Unduly Prejudiced by Defendant's Failure to Provide Notice of its Intent to Assert the Affirmative Defense of Release ..... 11

a. Defendant's Undue Delay in Raising the Affirmative Defense of Release is Prejudicial ..... 11

b. Defendant Has Effectively Denied Precision Pine an Opportunity to Develop a Strategy to Oppose the Affirmative Defense of Release ..... 12

c. Allowing Defendant to Assert its Affirmative Defense on the Eve of Trial Would Require Precision Pine to Expend Significant Additional Resources to Conduct Discovery and Significantly Delay the Resolution of this Dispute ..... 14

B. The Law-of-the-Case Doctrine Also Precludes Defendant from Relitigating Liability Under the Guise of the Alleged Releases ..... 16

III. CONCLUSION ........................................................................................................19

## TABLE OF AUTHORITIES

**CASES** **PAGE**

Ashe v. Corley,
992 F.2d 540 (5th Cir. 1993) ....................14

Blonder-Tounge Labs, Inc. v. Univ. of Illinois Found.,
402 U.S. 313 (1971) ....................12

Cannon v. H.K. Porter Co., Inc.,
705 F. Supp. 288 (E.D. Va. 1989) ....................3

Cities Serv. Helex, Inc. v. United States,
211 Ct. Cl. 222 (1976) ....................3

Crocker v. United States,
127 F. Supp. 568 (Ct. Cl. 1955) ....................3

First Interstate Bank of Billings. v. United States,
61 F.3d 876 (Fed. Cir. 1995) ....................14

First Nationwide Bank v. United States,
48 Fed. Cl. 248 (2000) ....................2, 3, 5, 10

Foster Wheeler Corp. v .United States,
513 F.2d 588 (Ct. Cl. 1975) ....................2

Haskell v. Washington Township,
864 F.2d 1266 (6th Cir. 1988) ....................14

John D. Hensler, Inc. v. United States,
5 Cl. Ct. 92 (1984), aff'd, 765 F.2d 158 (Fed. Cir. 1985) ....................2, 3 5

Nossen v. United States,
416 F.2d 1362 (Ct. Cl. 1969), cert. denied, 400 U.S. 823 (1970) ....................11

Perkin-Elmer Corp. v. Computervision Corp.,
732 F.2d 888 (Fed. Cir. 1984) ....................17

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) ....................1, 16, 19

Precision Pine & Timber, Inc. v. United States,
No. 98-720C (Fed. Cl. Sept. 25, 2001) ....................17, 18

Precision Pine & Timber, Inc. v. Untied States,
No. 98-720C (Fed. Cl. Jan. 27, 2004) ........................................................................17

Precision Pine & Timber, Inc. v. United States,
No. 98-720C (Fed. Cl. Feb. 7, 2005) .........................................................................17

Research, Analysis and Development, Inc. v. United States,
8 Cl. Ct. 54 (1985) ..................................................................................................11

Spaulding & Son, Inc. v. United States,
22 Cl. Ct. 678 (1991) ...............................................................................................15

Suel v. Secretary of Health and Human Services,
192 F.3d 981 (Fed. Cir. 1999)....................................................................................19

Tenneco Resins, Inc. v. Reeves Brothers, Inc.,
752 F.2d 630 (Fed. Cir. 1985)................................................................................11, 15

Todd v. United States,
292 F.2d 841 (Ct. Cl. 1961) ..........................................................................................3

Toth v. Glazer,
163 F.R.D. 549 (E.D. Wis. 1995) .........................................................................15, 16

Trans Ocean Van Service v. United States,
470 F.3d 604 (Ct. Cl. 1972) ........................................................................................17

Trout v. Garrett,
780 F. Supp. 1396 (D.D.C. 1991) .........................................................................17, 18

United States v. Turtle Mountain Bank of Chippewa Indians,
612 F.2d 517 (Ct. Cl. 1979) ..................................................................................... 16-17

Venters v. City of Delphi,
123 F.3d 956 (7th Cir. 1997) ......................................................................................11

**STATUTES AND REGULATIONS**

RCFC
8(c) ...................................................................................................................1, 2, 3, 12
15........................................................................................................................................5

Fed. R. Civ. P.
8..........................................................................................................................................2

**MISCELLANEOUS**

5 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE
§ 1270....3
§ 1278 (2nd ed 1990) ....3

## I. INTRODUCTION

At trial, defendant seeks to allege, for the first time, that Precision Pine & Timber, Inc. ("Precision Pine") released the government from any and all liability arising from the suspensions of the Brann, Monument, Mud and Saginaw-Kennedy contracts.[1] This argument is an affirmative defense that pursuant to Rule 8(c) of the Rules of the United States Court of Federal Claims ("RCFC") the government was required to plead in its answer to Precision Pine's complaint. Defendant did not, however, raise this affirmative defense in its answer. The affirmative defense of release was not raised, either expressly or impliedly, until defendant filed its Pretrial Memorandum of Contentions of Fact and Law on April 4, 2005 – nearly six years after defendant filed its first answer to Precision Pine's complaint and just over one month before trial. Because Precision Pine has suffered undue prejudice by defendant's repeated failure to raise this defense previously, defendant must be viewed as having waived the affirmative defense of release. Alternatively, Precision Pine submits that issues of release are also precluded under the law of the case established by Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001). As such, Precision Pine respectfully requests that this Court grant its motion *in limine* to preclude defendant from raising this defense and to exclude any evidence relating to the alleged release of liability from the suspensions of the Brann, Monument, Mud and Saginaw-Kennedy contracts.

[1]Defendant also alleges that Precision Pine released the government from liability arising from the suspension of the Hutch-Boondock contract. Defendant's Pretrial Memorandum of Contentions of Fact and Law at 23. The court did not, however, find that the Forest Service had breached this contract in its decision on liability. See Precision Pine, 50 Fed. Cl. at 73-74 (2001). Accordingly, it will not be discussed here.

## II. ARGUMENT

### A. The Government Waived the Affirmative Defense of Release

#### 1. Release is an Affirmative Defense

In its Pretrial Memorandum of Contentions of Fact and Law ("Def.'s Pretrial Mem."), defendant alleges that Precision Pine "release[d]" the government of liability from the suspensions of the Brann, Monument, Mud and Saginaw-Kennedy contracts. Def.'s Pretrial Mem. at 23. However, RCFC 8(c) requires that "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively . . . release . . . and any other matter constituting an avoidance or affirmative defense." RCFC 8(c) (emphasis added).[2] Consistent with the explicit language of this rule, the Court of Federal Claims has consistently found that release is an affirmative defense that must be pled in defendant's answer to a complaint. See, e.g., First Nationwide Bank v. United States, 48 Fed. Cl. 248, 256 (2000) (barring government from raising release where government's answer did not set forth affirmative defense of release); John D. Hensler, Inc. v. United States, 5 Cl. Ct. 92 (1984), aff'd, 765 F.2d 158 (Fed. Cir. 1985) (finding government defense of release cannot be considered against a contractor where government's answer did not set forth release as an affirmative defense).[3] Indeed, there is no question but that the defendant was required to raise this defense in its answer.

---

[2]Except for minor changes, RCFC 8(c) was drafted to conform to Fed. R. Civ. P. 8. See RCFC 8(c) Rules Committee Note (2002).

[3]To the extent defendant's allegations that Precision Pine released the government of liability from the suspensions of the Brann, Monument, Mud and Saginaw-Kennedy contracts constitute additional defenses (e.g., waiver or accord and satisfaction), these would also be considered affirmative defenses. See, e.g., Foster Wheeler Corp. v. United States, 513 F.2d 588, 602 (Ct. Cl. 1975) (waiver); Hensler, 5 Cl. Ct. at 94 (accord and satisfaction); RCFC 8(c) (listing waiver and accord and satisfaction as affirmative defenses). To the extent the government seeks to assert other defenses based on the alleged release of liability from the suspensions of the

2. Defendant Waived the Release When it Failed to Plead it as an Affirmative Defense in its Answer

Generally, a failure to plead an affirmative defense as required by RCFC 8(c) results in the waiver of that defense and its exclusion from the case. Crocker v. United States, 127 F. Supp. 568, 573 (Ct. Cl. 1955); Todd v. United States, 292 F.2d 841, 844-45 (Ct. Cl. 1961) (quoting Crocker); see generally 5 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278, p. 477 (2nd ed. 1990) [hereinafter "WRIGHT & MILLER"]. "[B]y requiring defendant to plead his defense or risk waiving it, [Rule 8(c)] serves the purpose of giving the opposing party notice of the defense and an opportunity to argue why his claim should not be barred completely." WRIGHT & MILLER, supra, § 1270. Although the COFC and other federal courts maintain that liberal pleading rules do not always require waiver of an untimely raised affirmative defense, Cities Serv. Helex, Inc. v. United States, 211 Ct. Cl. 222, 234 n.14 (1976), where a party's failure to adequately notice the defense amounts to unfair surprise or causes prejudice to the plaintiff, the COFC has found waiver and has excluded the defense from the case. See Hensler, 5 Cl. Ct. at 94 (precluding government from raising defense of release). Courts have also made clear that a failure to plead an affirmative defense of release at the earliest possible opportunity results in a waiver of that defense. See, e.g., First Nationwide Bank, 48 Fed. Cl. at 256 (barring government from raising affirmative defense of release and finding that defense should have been raised in government's answer because "the only notice necessary to alert defendant to the possibility of this defense is that this case is Winstar-related, something obvious from the start"); see also Cannon v. H.K. Porter Co., Inc., 705 F. Supp. 288,

---

Brann, Monument, Mud and Saginaw-Kennedy contracts, Defendant has also waived these defenses.

291 (E.D. Va. 1989) (finding defendant waived affirmative defense of release because it failed to raise it as soon as it became known).

In this case, defendant alleges that the Forest Service offered contract term adjustments to Precision Pine for certain contracts in 1997. Def.'s Pretrial Mem. ¶ 78, p. 17. Defendant further alleges that the contract modifications granting these adjustments contained releases, which were executed in 1997 by the Forest Service and Precision Pine's president, Lorin Porter. Id. at 23. Assuming *arguendo* that these allegations are correct, the government was therefore certainly aware of the issue of release even before this litigation began on September 11, 1998.

In spite of its knowledge, no final decision issued thereafter with respect to Precision Pine's claims raised this point. More importantly, defendant failed to assert this or any other affirmative defense either in its initial answer or in its amended answers thereafter. That is, nowhere in defendant's initial answer and counterclaim of May 19, 1999 does it allege any affirmative defenses or in any way assert that Precision Pine released the government from liability from the suspensions of the Brann, Monument, Mud or Saginaw-Kennedy contracts. Moreover, it should be noted that in response to the Court's opinion and order of October 7, 1999, defendant filed an amended answer with the Court, but again did not raise any affirmative defenses or raise the issue of release. Defendant also missed a third opportunity to raise the affirmative defense of release when it filed a second amended answer on May 5, 2000 where, again, defendant failed to assert any affirmative defenses or otherwise allege that Precision Pine had released the government from liability.

Because defendant missed numerous opportunities to raise the affirmative defense of release in its answer and amended answers, this defense has been waived and must be excluded from this case. See First Nationwide Bank, 48 Fed. Cl. at 256 (barring government from raising affirmative defense of release and finding defense should have been raised in government's answer); Hensler, 5 Cl. Ct. at 94 (precluding government from raising defense of release because it was not filed in its answer).

### 3. Defendant Also Failed to Adequately Notice Release as an Affirmative Defense Subsequent to Filing its Amended Answer

Despite its prior knowledge of the alleged release, defendant also did not raise the affirmative defense of release at summary judgment regarding liability, discovery with regard to damages or in its extensive motion for summary judgment regarding damages. A review of the record makes clear that the affirmative defense of release was not raised, either expressly or impliedly, until defendant filed its Pretrial Memorandum of Contentions of Fact and Law on April 4, 2005 – nearly six years after defendant filed its first answer to Precision Pine's complaint and just over one month before trial. As noted above, defendant has been aware throughout the litigation of the potential affirmative defense of release, but never sought leave from the Court to further amend its answer under RCFC 15 or otherwise give adequate notice to Precision Pine of this affirmative defense. As the following review of the record shows, defendant repeatedly missed various opportunities to adequately raise this defense.

a. Summary Judgment Regarding Liability

On July 12, 2000, defendant filed a motion for summary judgment regarding liability. In its brief defendant argued the Court lacked jurisdiction to hear Precision Pine's complaint, that Precision Pine's timber sale contracts authorized the Forest Service to suspend performance and that the Sovereign Act defense barred Precision Pine's claims. See generally Defendant's Motion to Dismiss Or In The Alternative For Summary Judgment. Defendant did not, however, raise any issues of release. Likewise, on November 17, 2000, when it filed its reply and opposition to Precision Pine's motion for summary judgment, defendant again did not raise the affirmative defense of release. See generally Defendant's Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply to Plaintiff's Response to Defendant's Motion to Dismiss Or in the Alternative For Summary Judgment.

b. Discovery Regarding Damages

Defendant also did not raise the alleged releases during damages discovery. For example, defendant did not raise issues of alleged release of liability in its Response to Plaintiff's First Set of Interrogatories and Requests for Production of Documents Regarding Damages ("Def.'s Resp. to Pl.'s Inter. on Quantum"). That is, on May 29, 2003, Precision Pine served defendant with Plaintiff's First Set of Interrogatories and Request For the Production of Documents on Quantum ("Pl.'s Inter. on Quantum"). Interrogatory No. 1 asked defendant to identify "each and every" disagreement that it had with the amount of damages described in Precision Pine's revised damages calculations that were served on defendant on February 26, 2003. Pl.'s Inter. on Quantum at 5. In its response, defendant listed seventeen detailed reasons why it disagreed with the amount of damages claimed by Precision Pine:

(1) Precision Pine is entitled to no damages in connection with Hutch-Boondock and St. Joe contracts because those contracts were not breached.

(2) Precision Pine is entitled to no damages for breach of the Brann contract because the suspension of that contract did not affect Precision Pine's planned harvesting of timber.

(3) Precision Pine is entitled to no "sawmill expenses" because such expenses are indirect, remote and speculative, and therefore, not recoverable.

(4) Precision Pine fails to provide adequate supporting documentation for its lost profits claims, i.e., the subsections entitled "lost market opportunity," and accordingly, lost profits cannot be demonstrated with the requisite certainty and are unrecoverable.

(5) Precision Pine's revised damages claim fails to credit against its damages the sums that were or could have been obtained by harvesting timber pursuant to the contracts after the respective suspensions were lifted.

(6) Precision Pine's revised damages claim is inadequate because Precision Pine presents no evidence that it took reasonable steps to mitigate its loss such as, for example, harvesting timber on contracts that were not suspended or by obtaining timber form other sources during the suspensions.

(7) The overhead rate used in the revised damages claim is overstated and is not supported by the documentation produced by Precision Pine.

(8) The profit rate used in the revised damages claim is overstated in that Precision Pine has failed to demonstrate that it achieved such profits before or after the suspensions.

(9) Precision Pine's revised damages claim is not based upon a single coherent theory of damages, e.g., expectancy damages.

(10) Precision Pine's revised damages claim fails to identify the specific contractual breach upon which each of Precision Pine's demands for consequential damages is based.

(11) Precision Pine's revised damages claim fails to present any evidence that the consequential damages sought were foreseeable and in reasonable contemplation of the parties at the time of contracting.

(12) Precision Pine improperly seeks to recover overhead and profits on alleged consequential damages such as bond costs.

(13) Precision Pine is entitled to no damages for "increased logging and hauling costs" in connection with the Brewer, Delgado or Highway Salvage contracts because those contracts were neither breached nor suspended.

(14) Precision Pine is entitled to no damages for "increased logging and hauling costs" in connection with Hay and O.D. Ridge in 1996 because those contracts were suspended during the 1996 operating season.

(15) Precision Pine fails to show that the "cost of unemployment insurance" and "out-of-pocket costs to financial institutions" in the company-wide expenses section of its revised claims were caused, directly or indirectly, by suspension of the contracts at issue.

(16) All of the "company-wide expenses" in Precision Pine's revised damages claim are indirect, remote, and speculative, and therefore are not recoverable as consequential damages.

(17) Precision Pine is not entitled to the recovery of attorneys fees in this action.

Def.'s Resp. to Pl.'s Inter. on Quantum at 3-6. Although defendant could and should have raised the alleged releases during the liability phase of this case, defendant could and should have also listed the alleged releases as a basis for disagreeing with Precision Pine's assertions regarding the amount of damages in this interrogatory. It did neither. This is significant given defendant's new allegation that the releases bar any amount of damages for the Brann, Monument, Mud and Saginaw-Kennedy contracts. See Def.'s Pretrial Mem. at 23. Because these interrogatories are continuing, Pl.'s Inter. on Quantum at 4, defendant should also, at a minimum, have supplemented its responses with information regarding the alleged releases. Furthermore, because Precision Pine's interrogatories required that defendant produce all documents relating to its response to Interrogatory No. 1, Pl.'s Inter. on Quantum at 7, defendant also had a continuing duty to supply any documents relating to the alleged releases that it now asserts.

Defendant did not, however, produce such documents through discovery and instead waited until the eve of trial to raise the issue in its Pretrial Memorandum of Contentions of Fact and Law on April 4, 2005.[4]

Defendant also did not raise the issue of alleged releases during depositions on damages. For example, during the three days of deposition of Lorin Porter, Precision Pine's president, defendant did not ask Mr. Porter any questions regarding the alleged releases of liability. This is significant given that Mr. Porter signed all of the alleged releases. See Def.'s Pretrial Mem. at 23. If defendant had raised questions regarding the release at Mr. Porter's deposition, Precision Pine would have made inquiry of Mr. Porter and the Forest Service with regard to the understanding of the alleged releases, Mr. Porter's communications with the government and any other information that may have had a bearing on this issue. In addition, had the affirmative defense of release been properly raised, Precision Pine would have sought discovery regarding this issue by document requests, interrogatories and depositions. For example, had the issue of release been properly raised in defendant's answer or amended answers, Precision Pine would have also sought to depose Forest Service personnel involved with the alleged releases. Precision Pine did not seek such discovery, however, because Precision Pine's alleged release of the government had not been identified as one bearing on this case.[5]

---

[4]Additionally, defendant did not produce documentation of the alleged releases of the Mud and Monument contracts until April 6, 2005. See Letter from D. Harrington to A. Saltman of 04/08/05 (Ex. 1).

[5]Defendant also did not raise the affirmative defense of release in the following pleadings and motions during the damages phase of this case: Defendant's Supplemental Brief dated May 30, 2001; Joint Statement of Issues of Fact or Law dated October 10, 2002; Defendant's First Set

c. Summary Judgment on Quantum

In addition to failing to raise the alleged releases during summary judgment on liability and during discovery, defendant also failed to raise the issue of the alleged releases in its extensive motion for summary judgment on quantum. That is, in its summary judgment briefs regarding quantum, defendant argued issues of lost profits, consequential damages, Precision Pine's pass-through claims, recovery under contract clause CT6.01, attorney's fees and other costs, but made no mention of any release for any contract at issue. See generally Defendant's Motion For Partial Summary Judgment Regarding Damages dated April 15, 2004; Defendant's Reply in Support Of Its Motion For Partial Summary Judgment Regarding Damages dated July 23, 2004. Defendant's failure to raise the potential affirmative defense of release after this second round of summary judgment is particularly egregious given Chief Judge Damich's numerous attempts in the time after the issuance of the decision on liability in 2001 to have the parties identify issues of law to narrow the damages proceedings. See, e.g., Precision Pine & Timber, Inc. v. United States, No. 98-720C (Fed. Cl. Feb. 27, 2002) (order requiring parties to file a joint status report by May 17, 2002 setting out questions of law by each party).

By failing to raise this issue either in its motions for summary judgment on liability or quantum, defendant has waived the affirmative defense of release. First Nationwide Bank, 48 Fed. Cl. at 256 (barring government from raising affirmative defense of release and finding defense should have been raised in government's answer where defense was not presented until oral argument on summary judgment and where government knew of the defense at the start of

of Requests for Admissions on Damages dated June 20, 2003; and Defendant's Response to Plaintiff's Additional Proposed Findings of Fact dated July 23, 2004.

the case three years earlier); see also Research, Analysis and Development, Inc. v. United States, 8 Cl. Ct. 54, 61 n.3 (1985) (finding that when the government fails to address affirmative defenses in its motion for summary judgment it will be "deemed to have abandoned [them]"), quoting Nossen v. United States, 416 F.2d 1362, 1371 (Ct. Cl. 1969), cert. denied, 400 U.S. 823 (1970).

4. Precision Pine has been Substantially and Unduly Prejudiced by Defendant's Failure to Provide Notice of its Intent to Assert the Affirmative Defense of Release

Once the availability of the affirmative defense of release became apparent, defendant should have alerted both plaintiff and the Court to his intent to pursue that defense. Indeed, "[a] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." Venters v. City of Delphi, 123 F.3d 956, 967-68 (7th Cir. 1997) (citations omitted). The foregoing review of the record confirms, however, that defendant has not given Precision Pine adequate notice of its affirmative defense of release and thus has deprived Precision Pine the opportunity to respond meaningfully to it. In view of the extensive discovery that has occurred regarding liability and damages, the duration of the government's delay in giving notice of its intent to rely on this defense, and the imminent trial date, Precision Pine has been substantially and unduly prejudiced by defendant's belated allegations of release.

a. Defendant's Undue Delay in Raising the Affirmative Defense of Release is Prejudicial

The Federal Circuit has noted that the "'[t]he risk of substantial prejudice increases with the passage of time.'" Tenneco Resins, Inc. v. Reeves Brothers, Inc., 752 F.2d 630, 634 (Fed

Cir. 1985) (citation omitted). In this case, despite its knowledge of the releases in 1997, defendant neglected to raise this issue, either expressly or impliedly, until defendant filed its Pretrial Memorandum of Contentions of Fact and Law on April 4, 2005. Given that defendant was aware of the alleged releases in 1997, this nearly six-year delay is both excessive and inexcusable. Defendant did not raise this affirmative defense in its answer or amended answers, during discovery, or during its summary judgment motions regarding liability or damages. Defendant's decision to wait to raise this issue at the eleventh hour when Precision Pine is in the midst of trial preparations has prejudiced Precision Pine's ability to both prepare for trial and to address issues raised by the alleged releases of liability. This delay, coupled with defendant raising the defense on the eve of trial is, as described further below, unduly prejudicial.

b. Defendant Has Effectively Denied Precision Pine an Opportunity to Develop a Strategy to Oppose the Affirmative Defense of Release

If defendant were allowed to raise the issue of release at this late stage of the proceedings, Precision Pine would have no opportunity to revise its litigation strategy for trial. As previously stated, the reason why affirmative defenses under Rule 8(c) must be pled in the answer is to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert that defense. See Blonder-Tounge Labs, Inc. v. Univ. of Illinois Found., 402 U.S. 313, 350 (1971). Because defendant failed to raise the affirmative defense of release in its answer, during discovery and summary judgment or at other time during this six-year litigation, defendant has effectively prevented Precision Pine from preparing and developing

evidence to rebut this allegation.[6] Indeed, had the government raised this affirmative defense in a timely manner, Precision Pine would have, among other things, sought discovery with regard to why the Forest Service appears to have deliberately misled Precision Pine with respect to the scope of the release. That is, Precision Pine would have made inquiry into the reasons why the Forest Service specifically advised it in 1997 and 1998 that this standard release pertained only to events that occurred after execution of the release. For example, in the cover letter accompanying one of the releases, the contracting officer explained the scope of the release as follows: "To receive the extension and periodic payment deferral, purchasers are required to release the Forest Service from damages for the replacement cost of timber if the contract is canceled in the future." See Letter from Ken Broyles to Lorin Porter of 01/28/1997 (emphasis added) (Ex. 2 hereto). However, now the government asserts that it interprets the release to also cover damages for suspensions that had already occurred. See Def.'s Pretrial Mem. at 23. It appears that if the Forest Service actually interpreted the release as the defendant now asserts, that the Forest Service was laying a trap to ensnare the unwary – something requiring substantial inquiry.

Because defendant did not timely raise its affirmative defense, Precision Pine has not had a chance to discover evidence as to whether the Forest Service misled Precision Pine with respect to the scope of the releases. Indeed, Precision Pine did not even have an opportunity to put letters like Ex. 2 hereto into its Final Exhibit List. Without discovery, Precision Pine cannot

[6]As stated above, defendant did not even produce documentation of the alleged releases of the Mud and Monument contracts until April 6, 2005, i.e., approximately one month before trial. See Letter from D. Harrington to A. Saltman of 04/08/05 (Ex. 1). The six-year delay in raising the issue of release combined with defendant's belated document production of the actual releases for Mud and Monument contracts is prejudicial.

prepare a trial strategy to rebut this issue or know if there are other counterarguments that it may be able to assert at trial. With trial less than one month away, Precision Pine simply does not have the time to restructure its case and develop a strategy to oppose defendant's belated allegations of release.

In this regard, courts have consistently acknowledged this type of prejudice and have denied attempts to raise new issues where the opposing party has little time to prepare a counterargument before trial. See First Interstate Bank of Billings v. United States, 61 F.3d 876, 881-82 (Fed. Cir. 1995) (upholding lower court's granting motion in limine to preclude the government from raising defense where government did not express a clear intention to raise defense until three weeks before trial), see also Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993) (concluding that adding a new cause of action one week before trial would prejudice opposing party); Haskell v. Washington Township, 864 F.2d 1266, 1273 (6th Cir. 1988) (finding defendant could not raise defense after extensive trial preparation and discovery had taken place). We see no reason why this rationale should not be applied here.

c. Allowing Defendant to Assert its Affirmative Defense on the Eve of Trial Would Require Precision Pine to Expend Significant Additional Resources to Conduct Discovery and Significantly Delay the Resolution of this Dispute

Since receipt of defendant's memorandum, Precision Pine has to digest the memorandum, prepare motions *in limine*, prepare objections to over 800 exhibits, respond to defendant's motion to dismiss certain claims for lack of jurisdiction, respond to defendant's anticipated motions *in limine* and objections and continue to prepare for a six-week long trial.

Needless to say, the latter is an ongoing and considerable task. Under the circumstances, Precision Pine cannot possibly address all these matters and address this new issue of the alleged releases. Because defendant has effectively denied Precision Pine an opportunity to develop a strategy to oppose this new defense, and there is precious little time to serve interrogatories, take depositions, interview potential witnesses and otherwise develop a record to rebut this argument before trial, Precision Pine clearly has been prejudiced by defendant's dilatoriness. In this regard, courts have acknowledged that a party is prejudiced where delay required a party to perform additional discovery on the eve of trial. See, e.g., Tenneco, 752 F.2d at 634 ("The trial court may properly consider the possibility of prejudice to a party stemming from the burden of additional discovery after a long delay") (citations omitted); Spaulding & Son, Inc. v. United States, 22 Cl. Ct. 678, 681 (1991) (finding prejudice where issue raised on the eve of trial would require additional discovery by depositions and interrogatories); Toth v. Glazer, 163 F.R.D. 549, 550 (E.D. Wis. 1995) (finding prospect of having to reopen discovery constituted prejudice to deny leave to amend to assert an affirmative defense not previously pleaded).

As noted above, in order to adequately defend against what charitably can be described as an eleventh-hour defense, Precision Pine would have to interview witnesses and also conduct discovery of what has the appearance of a Forest Service trap to ensnare the unwary.

Finally, if defendant is allowed to maintain the affirmative defense of release at this late date, and given the prospect that this Court would have to reopen discovery in order to develop a record on the issue of alleged releases, a postponement of the trial will be required. This would be extremely prejudicial to Precision Pine. See Spaulding & Son, 22 Cl. Ct. at 681 (finding

prejudice where the prospect of having to reopen discovery would require a postponement of the trial); Toth, 163 F.R.D at 550 (prejudice includes the delay resulting in a continuance of the trial). A postponement would require Precision Pine to focus its resources on discovery relating to the alleged releases and force Precision Pine to suspend its numerous aforementioned pre-trial preparations. Precision Pine would thus lose all of the momentum it gained preparing for trial.

Precision Pine cannot state with any certainty how long a postponement would be needed, except to note that it would likely be for months given the discovery schedules associated with document requests, interrogatories and depositions, not to mention the Court's trial schedule as well as the availability of the parties and witnesses. In sum, given the significant additional resources Precision Pine would have incur to seek additional discovery regarding the issue of releases and the likelihood of a postponement of the trial given the amount of work necessary to perform this discovery, Precision Pine would be unduly prejudiced if defendant were allowed to maintain the affirmative defense of release at this late date.

B. The Law-of-the-Case Doctrine Also Precludes Defendant from Relitigating Liability Under the Guise of the Alleged Releases

It is law of the case that the Forest Service is liable for breaching 11 timber sales contracts at issue in this litigation, including the Brann, Monument, Mud and Saginaw-Kennedy contracts. Precision Pine, 50 Fed. Cl. at 73-74. The law-of-the-case doctrine rests upon the important public policy that "[n]o litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time." United States v. Turtle Mountain Band of Chippewa

Indians, 612 F.2d 517, 520 (Ct. Cl. 1979) (citations omitted). The law of the case doctrine thus "ensures judicial efficiency and prevents endless litigation. Its elementary logic is matched by elementary fairness – a litigant given one good bite at the apple should not have a second." Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 900 (Fed. Cir.1984) (citation omitted). Accordingly, issues fully resolved at the liability stage are not open for reargument in later stages. Turtle Mountain, 612 F.2d at 520, citing Trans Ocean Van Service v. United States, 470 F.2d 604 (Ct. Cl. 1972). Here, defendant's attempt to raise the issue of release of liability on the eve of trial is nothing more than a transparent attempt to make the court reconsider its conclusion as to liability, because the government through mistake, inadvertence or because it knew that the argument was meritless, did not raise certain issues when it had the opportunity. See Trout v. Garrett, 780 F. Supp. 1396, 1425 n.77 (D.D.C. 1991) ("[U]nder the doctrine of law of the case a party cannot forego its opportunity to raise an issue or object at one point in the litigation only to raise it later").

As an initial matter, defendant has already sought reconsideration of the Court's July 31, 2001 liability decision on at least three separate occasions.[7] In its August 13, 2001 Motion, for example, defendant produced several documents purporting to show that Precision Pine was on

[7] See Defendant's Motion for Reconsideration and Clarification of August 13, 2001 ("August 13, 2001 Motion"); Defendant's Motion For Partial Reconsideration of the Court's July 30, 2001 Ruling Upon Liability of November 14, 2003; Defendant's Motion for Reconsideration and Clarification of February 3, 2005. The court made some clarifications, but with respect to reconsidering liability, denied all three motions. See Precision Pine & Timber, Inc. v. United States, No. 98-720C (Fed. Cl. Feb. 7, 2005); Precision Pine & Timber, Inc. v. United States, No. 98-720C (Fed. Cl. Jan. 27, 2004); Precision Pine & Timber, Inc. v. United States, No. 98-720C (Fed. Cl. Nov. 20, 2001) (order clarifying liability decision); Precision Pine & Timber, Inc. v. United States, No. 98-720C (Fed. Cl. Sept. 25, 2001).

special notice that the warranty contained in clause CT6.25 was vague and that Precision Pine knew of the Forest Service's strategy to consult only on amended Forest Plans. In denying the defendant's motion, the Court refused to consider any arguments on this issue because defendant did not place these documents in the record before summary judgment:

> Defendant included documentary evidence in its motion to reconsider, including written comments submitted by the Plaintiff to the Forest Service, that the Defendant did not previously place on the record to bolster its argument. (App. 47-74). There is no reason why the Defendant could not have placed these documents on the record during dispositive motions. "[L]itigants should not, on a motion for reconsideration, be permitted to attempt an extensive retrial based on evidence which was manifestly available at [the] time of the hearing." Gelco Builders & Burjay Constr. Corp. v. United States, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1996).

Precision Pine & Timber, Inc. v. United States, No. 98-720C, slip op. at 4-5 (Fed. Cl. Sept. 25, 2001) (alterations in original). Like the documentary evidence provided by defendant in its August 13, 2001 Motion, defendant is now attempting to reargue the July 30, 2001 liability decision with a belated defense based on documents that were available at the time dispositive motions regarding liability were filed, but that were not provided to the Court or to Precision Pine.

Defendant has simply not provided any "new" evidence relating to liability to overcome the law of the case. As previously stated, defendant has been aware of the alleged releases since 1997, but out of error, negligence or recognition of the lack of merit to the argument did not raise them during summary judgment on liability. Because defendant should have raised the releases in its pleadings as early as 1999 but repeatedly did not do so, there is no basis to challenge the law of the case. See Trout, 780 F. Supp. at 1425 n.77 (citing cases).

Finally, defendant's allegations of release are not "conclusive" evidence of liability. See Suel v. Secretary of Health and Human Services, 192 F.3d 981, 986 (Fed. Cir. 1999) (finding evidence relied upon to override the law of the case must be "substantial, even conclusive"). Defendant's assertions of release are not substantial or conclusive as to the government's liability for breach of the Brann, Monument, Mud and Saginaw-Kennedy contracts, because at best they relate only to prospective events, i.e., events occurring after 1997. Allowing defendant an opportunity to relitigate issues of liability on these inconclusive allegations of release would defeat the salutary purpose of the law-of-the-case doctrine and undermine judicial efficiency. As such, the law-of-the-case doctrine should preclude defendant from rearguing it at trial.

## III. CONCLUSION

The government should not be allowed, on the eve of trial, to allege for the first time that Precision Pine released the government from liability arising from the suspensions of Brann, Monument, Mud and Saginaw-Kennedy contracts. This argument is an affirmative defense that the government was required to plead in its answer to Precision Pine's complaint. Defendant did not raise this affirmative defense, however, in its answer, during discovery or during summary judgment. Precision Pine would suffer undue prejudice if the government were allowed to raise it now at this late a stage in the proceedings. The government has therefore waived the defense of release. In addition, the defense of release should be precluded under the law of the case established by Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001). Precision Pine respectfully requests that this Court grant its motion *in limine* to preclude defendant from raising this defense and to exclude any evidence relating to the alleged release of liability from the suspensions of the Brann, Monument, Mud and Saginaw-Kennedy contracts.

Respectfully submitted,

s/Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 18, 2005