IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 98-720C
(Judge George W. Miller)

**PLAINTIFF'S OBJECTIONS TO THE ADMISSION INTO EVIDENCE OF CERTAIN OF THE EXHIBITS ON DEFENDANT'S FINAL EXHIBIT LIST**

For the reasons set forth below, Precision Pine objects to the admission of the following exhibits of defendant's nearly 800 proposed exhibits in the trial of quantum in this matter.[1]

| Exhibit number | Description | Basis for objection |
|---|---|---|
| DX 454 | March 22, 1996 letter from Lorin Porter to Milo Larson requesting separation of the sawlog - pulpwood component from future timber sale planning and layout | Absence of Authentication; draft for which relevance has not been established. |
| DX 457 | October 21, 1991 pulpwood purchase agreement between Precision Pine and Stone Container Corporation re: the Limestone Timber sale | Relevance. This document relates to a transaction that occurred nearly four years prior to the breach here in issue and does not relate to any of the contracts in issue. |
| DX 465 third document | Appears to be part of a draft letter dated May 29, 1996 to Mr. Turley | Absence of Authentication; draft for which relevance has not been established. |

[1]Plaintiff's failure to object to seemingly similar type documents should in no way be construed as a waiver of its belief that the documents noted herein should not be admitted into evidence.

| | | |
|---|---|---|
| DX 468 | October 21, 1991 pulpwood purchase agreement between Precision Pine and Stone Container Corporation re: the Limestone Timber sale | Duplicative of DX 457. |
| 470 | October 11, 1993 topwood purchase agreement between Precision Pine and Stone Container Corporation | Relevance. This document relates to a transaction that occurred nearly two years prior to the breach here in issue and does not appear to relate to any of the contracts in issue. |
| 471 | August 9, 1993 pulpwood purchase agreement between Precision Pine and Stone Southwest, Inc. | Relevance. This document relates to a transaction that occurred more than two years prior to the breach here in issue and does not relate to any of the contracts in issue. |
| 557 | February 22, 1993 letter to Dan Derrick from John Smith re: 1993 operating plan for Winslow Mill | Relevance. This document is a formal operating plan that Precision Pine submitted for the 1993 season, i.e., two years prior to the breach, with respect to timber sales on which the sawlogs were to be hauled to Precision's Winslow sawmill. |
| 572 | March 1993 Draft Press Release re: Kaibab Industries closing Payson Sawmill and selling sawmill equipment to Precision Pine | Absence of Authentication; draft for which relevance has not been established. |
| 573 first document | Annual Mill Operating Summary 1990 | Relevance. This document indicates Precision Pine's total lumber production and shipments at its Heber mill in 1990, five years prior to the suspension. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the document is probative of very little. |

| | | |
|---|---|---|
| 574 starting with second document | Monthly Dues Statements For Grading Subscribers from January to December 1991 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine at its Heber mill by month in 1991 and the amount of dues it paid to Western Wood Products Assoc. The production of lumber products in question occurred four years before the breach. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little. |
| 575 first three documents | Annual Mill Operating Summaries 1993 | Relevance. These three documents indicate Precision Pine's total lumber production and shipments in 1993, two years prior to the suspension. Moreover, given the fact that the volume of items produced is cumulated by mill and not shown by category, the documents are probative of very little. |
| 575 fourth and fifth documents | Annual Mill Operating Summary 1994 | Relevance. These documents indicate Precision Pine's total lumber production and shipments at only two of Precision Pine's three mills in 1994, the year prior to the suspension. Moreover, given the fact that the volume of items produced is cumulated by mill and not shown by category, the documents are probative of very little. |
| 576 | Monthly Dues Statements For Grading Subscribers from January to December 1994 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine by month in 1994 at its Heber mill and the amount of dues it paid to Western Wood Products Assoc. The production of lumber products in question occurred a year before the breach. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little.<br><br>The exhibit also contains two copies of the page related to June 1994. |

| | | |
|---|---|---|
| 577 | Monthly Dues Statements For Grading Subscribers from January to December 1994 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine by month in 1994 at its Heber Mill and the amount of dues it paid to Western Wood Products. The production of lumber products in question occurred a year before the breach. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little. |
| 578 | Monthly Dues Statements For Grading Subscribers from January to December 1995 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine at its Winslow facility by month in 1995 and the amount of dues it paid to Western Wood Products Assoc. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little. |
| 579 | Monthly Dues Statements For Grading Subscribers from January to December 1996 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine at its Winslow facility by month in 1996 and the amount of dues it paid to Western Wood Products Assoc. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little. |

| | | |
|---|---|---|
| 580 | Monthly Dues Statements For Grading Subscribers from January to December 1997 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine at its Winslow facility by month in 1997, the year after the suspension was lifted and the amount of dues it paid to Western Wood Products Assoc. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little. |
| 581 | Monthly Dues Statements For Grading Subscribers from January to December 1998 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine at its Winslow facility by month in 1998, the second year after the suspension was lifted and the amount of dues it paid to Western Wood Products Assoc. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little. |
| 582 | Monthly Dues Statements For Grading Subscribers from January to December 1999 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine at Winslow and Heber facility by month in 1999, the third year after the suspension was lifted and the amount of dues it paid to Western Wood Products. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little. |

| | | |
|---|---|---|
| 583 | Monthly Dues Statements For Grading Subscribers from January to December 2000 | Relevance. These documents indicate the total monthly shipments of lumber, box stock, millwork and moulding items shipped by Precision Pine at its Heber facility by month in 2000, the fourth year after the suspension was lifted and the amount of dues it paid to Western Wood Products. Moreover, given the fact that the volume of items produced is cumulated and not shown by category, the documents are probative of very little. |
| 594 | Forest Product Market Prices & Statistics – Yearbook 2000 | The plaintiff objects to the admission of this document because, despite several requests that plaintiff has made for a copy of the document, defendant has yet to provide a copy as required by Par 13(a) Appendix A so that plaintiff could assess its admissibility. |
| 595 | Forest Product Market Prices & Statistics – Yearbook 2001 | The plaintiff objects to the admission of this document because, despite several requests that plaintiff has made for a copy of the document, defendant has yet to provide a copy as required by Par 13(a) Appendix A so that plaintiff could assess its admissibility. |
| 596 | The Buyers and Sellers Directory of the Forest Products Industry 2001 | The plaintiff objects to the admission of this document because, despite several requests that plaintiff has made for a copy of the document, defendant has yet to provide a copy as required by Par 13(a) Appendix A so that plaintiff could assess its admissibility. |
| 660 first two pages | U.S. Dept. of Interior Report of Timber Cut for C-16 Timber Sale for August 1, 1995 – November 13, 1995 | Absence of Authentication; Relevance. This is the report of a very small volume of timber cut on a sale of timber on the Hualapai Indian Reservation two months after the breach took place. It does not in any way involve any of the sales in issue. |

| | | |
|---|---|---|
| 660 starting at the third page | USDA Forest Service Monthly Sample Scaling Volume Determination Worksheet (Load Count) – October 1995 | Absence of Authentication; Relevance. Plaintiff is at a loss to see any relationship between timber on an Indian timber sale and these USDA spreadsheets which purport to show some 460 MBF coming off that sale in Oct/Nov. 1995. The relevance of these documents has been raised with government counsel but no response has been forthcoming.<br><br>Even if there were some relationship between these documents and the very small volume of timber cut on a sale of timber on the Hualapai Indian Reservation two months after the breach took place, they do not in any way involve any of the sales in issue and they appear to have absolutely no relevance to the matters in issue before this Court.<br><br>Moreover, contrary to Par 13(a) of Appendix A, defendant has neither indicated the source(s) for this summary nor who prepared it. |
| 661 first two pages | U.S. Dept. of Interior Report of Timber Cut for C-16 Timber Sale for November 1, 1994 – July 1, 1995 | Absence of Authentication; Relevance. This exhibit involves the same timber sale on the Hualapai Indian Reservation as in DX 660. This is the report of a very small volume of timber cut on that sale well before the breach. It does not in any way involve any of the sales in issue. |

| | | |
|---|---|---|
| 661 second and third pages | USDA Forest Service Monthly Sample Scaling Volume Determination Worksheet (Load Count) – July 1995 | Absence of Authentication; Relevance. Plaintiff is at a loss to see any relationship between timber on an Indian timber sale and these USDA spreadsheets which purport to show some 33 MBF coming off that sale in July of 1995. The relevance of these documents has been raised with government counsel but no response has been forthcoming.<br><br>Even if there were some relationship between these documents and the very small volume of timber cut on a sale of timber on the Hualapai Indian Reservation in the month preceding the one in which the breach took place, they do not in any way involve any of the sales in issue and they appear to have absolutely no relevance to the matters in issue before this Court.<br><br>Moreover, contrary to Par 13(a) of Appendix A, defendant has neither indicated the source(s) for this summary nor who prepared it. |
| 662 pages one and two | U.S. Dept. of Interior Report of Timber Cut for C-16 Timber Sale for October 1, 1994 – October 31, 1994 | Absence of Authentication; Relevance. This exhibit involves the same timber sale on the Hualapai Indian Reservation as in DX 660. This exhibit involves the harvesting of a small volume of timber on that sale by Precision Pine nearly a year before the breach. It does not in any way involve any of the sales in issue. |
| 662 third and fourth pages | Two page Forest Service document with heading "Escalated Sales" | Absence of Authentication; Relevance. Plaintiff is at a loss to see any relationship between timber on an Indian timber sale and these Forest Service (R-3) summaries and spreadsheets which purport to show some volume coming off that sale at various times. The relevance of these documents has been raised with government counsel but no response has been forthcoming.<br><br>Even if there were some relationship between these documents and the very small volume of |

| | | |
|---|---|---|
| | | timber cut on a sale of timber on the Hualapai Indian Reservation prior to the breach, they do not in any way involve any of the sales in issue and they appear to have absolutely no relevance to the matters in issue before this Court.<br><br>Moreover, contrary to Par 13(a) of Appendix A, defendant has neither indicated the source(s) for these summaries nor who prepared them. |
| 663<br>first page | U.S. Dept. of Interior Report of Timber Cut for C-16 Timber Sale for September 1, 1994 – September 30, 1994 | Absence of Authentication; Relevance. This exhibit involves the same timber sale on the Hualapai Indian Reservation as in DX 660. This exhibit involves the harvesting of a small volume of timber on that sale by Precision Pine nearly a year before the breach. It does not in any way involve any of the sales in issue. |
| 667 | November 30, 1995 Forestry & Resources Conservation Division Commercial Harvest Field Inspection Form re: Stone Container not accepting pulpwood until 1996 | Absence of Authentication. |
| 700 | January 21, 1998 letter to Susan Lee from John Smith re: anticipated logging schedule for 1998 season | Relevance. This document is a formal operating plan that Precision Pine submitted for the 1998 season, i.e., the second operating season after the suspension had been lifted. |
| 707 | September 2, 1994 letter to Dan Derrick from John Smith re: anticipated logging schedule for fall season | Relevance. This document is a formal operating plan that Precision Pine submitted in the fall of 1994, i.e., the operating season prior to the one in which the breach occurred, with respect to timber sales on which the sawlogs were to be hauled to Precision Pine's Winslow sawmill. |

| | | |
|---|---|---|
| 708 | February 22, 1993 letter to Dan Derrick from John Smith re: Winslow operating plan for 1993 season | This document is duplicative of DX 557. |
| 709 | January 21, 1998 letter to Dave Harris from John Smith re: 1998 operating plan for Winslow | Relevance. This document is a formal operating plan that Precision Pine submitted for the 1998 season, i.e., the second operating season after the suspension had been lifted.<br><br>Moreover, shortly after this letter was sent there was a substantial change in circumstances as Stone announced that its pulp plant at Snowflake would no longer be using pulpwood and chips and that as of February 12, 1998 it would therefore no longer be purchasing pulpwood or chips from any outside source. |
| 771 | September 29, 2000 USDA Forest Service – Precision Pine Breach History | Absence of Authentication; Contrary to Par13(a) of Appendix A, defendant has neither indicated the source(s) for this summary nor who prepared it. |
| 778 | Expert Report by Charles Adkins (with exhibits) | See Plaintiff's Motion *in Limine* August 6, 2004. |
| 797 | Supplemental Expert Report by Charles Adkins | See Plaintiff's Motion *in Limine* August 6, 2004. |

I. Certain Government Exhibits Must be Excluded Because They Have Not Been Properly Authenticated

Under Federal Rule of Evidence (FRE) 901, evidence must be properly authenticated before it can be admitted into evidence. To properly authenticate a document, someone with firsthand knowledge must testify that the document is what the proponent claims it to be.

Government's proposed exhibit DX 454 is an unsigned March 22, 1996 draft of a letter from Lorin Porter to Milo Larson. This document has not been properly authenticated by the government to the extent that the government has provided no testimony indicating that the document is what defendant purports it to be. Where, as here, a piece of evidence is not properly authenticated, it is inadmissible under the FRE. United States v. Martin, 434 F.2d 275, 279 (5th Cir. 1970). Additionally, as in Kincaid v. Gibson, 236 F.3d 342, 350 n.10 (6th Cir. 2001), the government has not shown that the letter, as a mere draft, has any relevance to the present case. See also Figures v. Board of Public Utilities of the City of Kansas City, Kansas, 967 F.2d 357 (10th Cir. 1992). The Court should find that the draft letter is inadmissible or, at a minimum, inadmissible pending authentication and establishment of its relevance.

Similarly, the third document in proposed exhibit DX 465 appears to be part of a draft letter from a person unknown dated May 29, 1996 to a Mr. Turley. As with DX 454, this document has not been properly authenticated under FRE 901. United States v. Martin, 434 F.2d at 279. Additionally, as in Kincaid, the government has not shown that the letter, as a mere draft, has any relevance to the present case. See also Figures v. Board of Public Utilities of the City of Kansas City, Kansas, 967 F.2d 357 (10th Cir. 1992). Therefore, this Court should find that the draft letter is inadmissible or, at a minimum, inadmissible pending authentication and establishment of its relevance.

Under this same reasoning, this Court should also exclude DX 572, the March 1993 Draft Press Release regarding Kaibab Industries closing Payson Sawmill and selling sawmill

equipment to Precision Pine. This draft letter had not been authenticated by the government, and the government has not shown how this draft letter has any relevance to the present case.

The government similarly has not authenticated the following documents, and this Court should exclude these documents for failure to comply with FRE 901:

- DX 660
- DX 661
- DX 662
- DX 663
- DX 664
- DX 771

II. Certain Government Exhibits Must Be Excluded Because They Are Legally Irrelevant To The Matter At Issue

FRE 402 states that evidence that is not relevant is not admissible. Moreover, under FRE 403, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Government's proposed exhibit DX 457 is the October 21, 1991 pulpwood purchase agreement between Precision Pine and Stone Container Corporation regarding the Limestone Timber sale. This document relates to a transaction that occurred nearly four years prior to the breach here in issue and does not relate to any of the contracts in issue. As such, this document is inadmissible either under FRE 402 because it is irrelevant or under FRE 403 because its probative value is substantially outweighed by the danger that it will confuse the issues or simply waste time. Indeed, courts generally find that documents that relate to transactions occurring

years before the matter at issue, after the transaction at issue, or that are unrelated to the matter at issue are inadmissible under FRE 403. See, e.g., Kincaid, 236 F.3d at 350 n.10; Shearson Hayden Stone, Inc. v. Leach, 583 F.2d 367, 372 (7th Cir. 1978) (affirming the district court's decision to exclude a document concerning activities that occurred two years before the transactions in the case before it).

Similarly, government's proposed exhibit DX 468, the October 21, 1991 pulpwood purchase agreement between Precision Pine and Stone Container Corporation regarding the Limestone Timber sale, relates to a transaction that occurred nearly four years prior to the breach here in issue and does not relate to any of the contracts in issue. For the same reasons that DX 457 is inadmissible either under FRE 402 or under FRE 403, this exhibit is also inadmissible.

For the same reasons that this Court should find these exhibits to be admissible, this Court should also deem these documents to be inadmissible:

- DX 469
- DX 470
- DX 471
- DX 557
- DX 573, the first document
- DX 573, starting with the third document
- DX 574, the first document
- DX 574, starting with the second document
- DX 575, the first three documents
- DX 575, the fourth and fifth documents
- DX 576
- DX 577
- DX 578
- DX 579
- DX 580
- DX 581
- DX 582

- DX 583
- DX 660, the first two pages
- DX 660, starting at the third page
- DX 661, the first two pages
- DX 661, the second and third pages
- DX 662, the first and second pages
- DX 663, the first page
- DX 663, the second and third pages
- DX 663, the fourth and fifth pages
- DX 700
- DX 707
- DX 709

These proposed exhibits all involve transactions that occurred before the events giving rise to the present matter, after the relevant transactions, or they relate to matters that are unrelated or tangentially related to the issues in the present case. Several of these proposed exhibits, such as DX 663, do not in any way involve any of the sales in issue, and they appear to have absolutely no relevance to the matters in issue before this Court. These proposed exhibits are thus also irrelevant and/or have a very low probative value that is substantially outweighed by the danger of confusion of the issues and/or wasting time. This Court should, accordingly, find these proposed exhibits to be inadmissible.

III. Certain Government Exhibits Must Be Excluded Because They Are Duplicative Or Cumulative

As previously noted, even relevant evidence can be excluded if it is cumulative. FRE 403. Government's proposed exhibit DX 708, the February 22, 1993 letter to Dan Derrick from John Smith regarding the Winslow operating plan for 1993 season, is duplicative of DX 557. Similarly, government's proposed exhibit DX 468, the October 21, 1991 pulpwood purchase agreement between Precision Pine and Stone Container Corporation regarding the Limestone Timber sale, is duplicative of DX 457.

IV. Certain Government Exhibits Must Be Excluded Because The Government Has Not Provided Plaintiff With Copies Of These Exhibits So That The Defendant Could Assess Their Admissibility

Paragraph 13(a) of Appendix A in the present case requires that the each party will provide copies of proposed exhibits to the opposing party so that the opposing party can assess the admissibility of these exhibits and determine whether objections should be made. With regard to the government's proposed exhibits DX 594, 595, and 596, the plaintiff has made several requests that the government provide copies of these exhibits so that the plaintiff could assess admissibility. Despite these repeated requests, the government has not provided copies of any of these proposed exhibits. Because the failure by the government to provide these copies has deprived the plaintiff of the opportunity to assess the admissibility of these proposed exhibits, this Court should find that these proposed exhibits are inadmissible in the present case.

V. Certain Government Exhibits Must Be Excluded Because They Consist of Unhelpful Charts That Do Not Contain Relevant Categories

To be admissible as evidence, documents must be helpful to the trier of fact. Havinga v. Crowley Towing and Transp. Co., 24 F.3d 1480, 1489 n.18 (1st Cir. 1994). When documents merely list totals or cumulations without breaking the raw data down into categories, courts have excluded them from evidence because they are not helpful to the trier of fact, and they are thus irrelevant. Id. ("The chart merely lists the total economic damages claimed by each plaintiff, with no hint as to how the total figure was derived"). In the present case, several of the government's documents are mere cumulations of volume without relevant categories:

- DX 573, the first document
- DX 573, starting with the third document
- DX 574, the first document
- DX 574, starting with the second document

- DX 575, the first three documents
- DX 575, the fourth and fifth documents
- DX 576
- DX 577
- DX 578
- DX 579
- DX 580
- DX 581
- DX 582
- DX 583

For the same reasons that the chart in Havinga was excluded, this Court should find that these documents are not helpful to the trier of fact and that they are thus inadmissible.

VI. Certain Government Exhibits Must Be Excluded Because They Are Alleged Expert Testimony By Witnesses That The Government Has Not Properly Qualified As Expert Witnesses

Government's proposed exhibit DX 778, the Expert Report by Charles Adkins, and DX 797, the Supplemental Expert Report by Charles Adkins, should be excluded because Mr. Adkins has not properly been identified as an expert witness. As the plaintiff indicated in its August 6, 2004 Motion *In Limine* to exclude Mr. Adkins' testimony, (1) Mr. Adkins' own *curriculum vitae* indicates that he lacks the educational and professional experience to be an expert in the present matter; (2) Mr. Adkins cannot assist the trier of fact to better understand the evidence in the present case; and (3) Mr. Adkins improperly relied upon the opinions of others in formulating several of his opinions. As stated in the Motion *In Limine*, for these reasons, Mr. Adkins was not qualified to testify as an expert witness under FRE 703, and his testimony should be declared inadmissible.

Respectfully submitted,

s/Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 18, 2005