IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-720C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION *IN LIMINE* WITH RESPECT TO DEFENDANT'S CONTENTIONS OF LAW THAT ARE BARRED BY THE LAW OF THE CASE DOCTRINE**

## I. INTRODUCTION

Plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), respectfully submits the instant motion *in limine* to strike certain contentions of law made in Defendant's Pretrial Memorandum of Contentions of Fact and Law that have already been decided against it in prior opinions in this case and to preclude defendant from making these legal arguments at trial and in subsequent briefing. Pursuant to the law of the case doctrine, defendant is precluded from rearguing points of law already lost by it: "As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988) (internal brackets omitted) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). As applied in this Circuit:

> Law of the case is a judicially created doctrine, the purpose of which is to prevent relitigation of issues that have been decided. See Gould, Inc. v. United States, 67 F.3d 925, 927-28 (Fed. Cir. 1995). The doctrine operates to protect the settled

> expectations of the parties and promote orderly development of the case. See Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1582 (Fed. Cir. 1994); Little Earth of the United Tribes v. Department of HUD, 807 F.2d 1433, 1441 (8th Cir. 1986). It "ensures judicial efficiency and prevents endless litigation. Its elementary logic is matched by elementary fairness - a litigant given one good bite at the apple should not have a second." Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 890 (Fed. Cir. 1984). Under law of the case, then, a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation. See Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 761 F.2d 649, 657 (Fed. Cir. 1985); see also In re Resyn Corp., 945 F.2d 1279, 1281 (3rd Cir. 1991).

Suel v. Secretary of Health and Human Services, 192 F.3d 981, 984-85 (Fed. Cir. 1999). Accordingly, Precision Pine respectfully requests that this Court strike those contentions from defendant's Memorandum that have already been decided against it and enter an order precluding defendant from raising any such contentions at trial and in any subsequent briefing.

## II. ARGUMENT

### A. Defendant's Contention That Scott Timber Holds That Increased Sawmill Costs Are Unrecoverable At Common Law Has Already Been Decided Against It

In its Memorandum, defendant claims that "even if such [increased sawmill costs] could be traced back to a breach of one or more of Precision Pine's contracts, they would not be recoverable under the common law. See Scott Timber, 333 F.3d at 1372 " D's Memo at 48 n.19. Of course, the government raised this same groundless argument at summary judgment, an argument that this court correctly rejected, stating unequivocally that Scott Timber "did not hold that sawmill costs are per se unrecoverable in a common-law suit for breach of contract." Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 136 (2004). Because this Court has already decided that Precision Pine's sawmill costs are potentially recoverable at common law, as well as the fact that Scott Timber dealt with the recoverability of sawmill costs under a

contract clause, and not at common law, this Court should strike defendant's contentions on this point and bar defendant from making any such arguments at trial and in future briefing contending that Precision Pine's increased sawmill costs are unrecoverable at common law.

B. The Forest Service's Contention Regarding The Cause Of The Suspension Of Precision Pine's Timber Sale Contracts Has Already Been Decided Against It

At page 20 of its Pretrial Memorandum, the government argues that "[t]his action concerns suspensions of 14 different timber and multi-product sale contracts that resulted from the listing of the Mexican Spotted Owl as an endangered species." D's Memo at 20 (emphasis supplied). This Court has already found, however, that the suspensions occurred not because of the listing of the Mexican Spotted Owl but because the Forest Service failed "to submit its LRMPs upon the Ninth Circuit's decision in Pacific Rivers until ordered to do so by the Arizona district court. . . ." Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 70 (2001). As this Court noted, it was this unreasonable action by the Forest Service, and not the listing of the Mexican Spotted Owl, that led to the suspensions. Id. Moreover, it was the Forest Service's unreasonable and dilatory conduct during the consultation from 1995-1996 that further breached the contracts. Id. at 70-71. Of course, the listing of the Mexican Spotted Owl under the ESA in 1993 did not cause the breach of contracts, the Forest Service did.[1] Therefore, law of the case bars the defendant from arguing that the suspensions were "the result of" the listing of the Mexican Spotted Owl and not the Forest Service's own failure to submit its LRMPs for consultation and then to complete that consultation in a timely fashion.

[1]Defendant's repeated reference to the Forest Service's suspension of Precision Pine's contracts as the "MSO suspensions" is similarly incorrect.

C. Defendant's Arguments That Contract Clause CT6.25 Does Not Contain A Warranty Have Been Decided Against It – Two Times

At footnote 1 on page 21 of its Memorandum, the government cites to this Court's opinion on liability which held that that the Forest Service "breached a warranty in clause CT6.25 in seven of the contracts," and then argues that "the Court erred in finding clause CT6.25 contains an express warranty." D's Memo at 21 n.1. The government then further claims that the Federal Circuit's subsequent decision in Scott Timber Co. v. Unites States, 333 F.3d 1358 (Fed. Cir. 2003), invalidates this Court's ruling on the warranty issue. Id. The government, however, has already raised precisely these same arguments in Defendant's Motion for Partial Reconsideration of the Court's July 30, 2001 Ruling Upon Liability dated November 14, 2003. There, the government argued that "the liability decision [with respect to the existence of a warranty in clause CT6.25] in the present case is contrary to the recent Federal Circuit decision in Scott Timber. . . ." See Order and Opinion dated January 27, 2004 at 3. This Court rejected this argument, holding that Scott Timber did not effectuate a change in controlling law and that "[p]laintiff . . . adequately supported its position that Scott Timber did not change the law." Id. at 4.

This Court also rejected the defendant's "new legal theories and facts" as to its liability for breach of warranty and reaffirmed the Court's ruling that the Forest Service was liable for breaching the warranty in clause CT6.25. Id. at 5-6. Law of the case thus bars the defendant from continuing to challenge the existence of an express warranty in contract clause CT6.25 already found to exist by the Court on two occasions in this case.

D. Defendant's Arguments That The Processing, Manufacturing, And Selling Of Timber Have Already Been Decided Against It

At page 24-27 of its Pretrial Memorandum, defendant argues that Precision Pine cannot recover lumber lost profits on an action for breach of a timber cutting contract because the processing and manufacturing of timber into lumber is a collateral undertaking. D's Memo at 24-27. This Court, however, has already held that these activities are not collateral and that Precision Pine "has submitted ample evidence sufficient to raise a genuine issue of material fact regarding what damages the Forest Service . . . could have reasonably foreseen would flow inevitably or in the ordinary course of business from the suspensions." Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 131 (2004). This Court, then, has already decided that the processing and manufacturing of timber from Forest Service timber into lumber was not a collateral undertaking and that the only question that remains is whether lost profits flowing from that activity were foreseeable. Id. As this Court noted, the evidence submitted by Precision Pine "demonstrates that the Forest Service may have actually foreseen the types of lost profits sustained by Precision Pine as a result of the suspensions." Id. The law of the case doctrine thus bars the government from claiming that these lost profits are unrecoverable because they are the product of a collateral undertaking.

E. Defendant's Argument That The First 135 Days Of The Suspension Were Not A Breach Has Already Been Decided Against It

At page 47 of its Pretrial Memorandum, the government argues that "Mr. Ness fails to allocate inefficiency costs between the first 135 days of the MSO suspensions (which were not a breach) and the remainder of the suspensions (which the Court concluded were a breach)." D's Memo at 47. In the opinion on liability, however, the Court did not hold that if the suspension

had lasted less 135 days no breach would have occurred. To the contrary, with respect to all 11 of the breached contracts at issue here, the Court ruled that even the Forest Service's two-month delay in starting formal consultation after the suspension had been imposed was unreasonable:

> While the delay is itself inexplicable, it is particularly egregious because the Forest Service reasonably could have gathered the necessary information for consultation at any time between the Ninth Circuit's decision in *Pacific Rivers* and the district court's order in *Silver v. Thomas*. This 2-month delay was unreasonable.

Id. at 70 (emphasis supplied). Thus, contrary to defendant's contention in its Memorandum, with respect to the breached contracts at issue in this case, the Court did not find that a suspension of less than 135 days was per se reasonable and, therefore, not a breach. See also id. at 61 n.34 ("If, for example, the delays in this case lasted for only a few days, the delays could hardly be characterized as unreasonable").

## III. CONCLUSION

This Court has already fully considered and rejected (sometimes more than once) each of the legal arguments made by defendant in its Memorandum of Contentions of Fact and Law noted above, and these decisions constitute the law of the case. Defendant is thus barred from presenting these arguments again to this Court. Consequently, plaintiff respectfully requests that this Court grant its motion, strike these arguments from defendant's Memorandum, and order defendant not to raise these arguments at trial and in any subsequent briefings in this case.

Respectfully submitted,

s/Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 18, 2005