**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY FROM CHARLES P. ADKINS**

Plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), has moved to exclude testimony from Charles P. Adkins. Mr. Adkins is well-qualified to provide expert analysis and testimony in this action. Mr. Adkins received a B.S. degree in engineering from the United States Military Academy (West Point) in 1968. He earned post-graduate degrees in mechanical engineering in 1973 and civil engineering in 1974. And Mr. Adkins earned an M.B.A. in business/financial management in 1978. Since that time, Mr. Adkins has used his engineering and business administration experience in numerous contexts.

As explained below, Precision Pine's objection that Mr. Adkins did not receive a Forestry degree and has not worked in the timber industry is misplaced. In this action, Mr. Adkins applies his engineering and business administration education and experience to reach conclusions based upon Precision Pine's actual business practices and records. Such testimony is admissible and will aid the Court to gauge the validity of Precision Pine's damages claims.

More fundamentally, a motion *in limine* is an unsuitable vehicle for challenging expert witness credentials. Before an expert witness may testify at trial, the witness's expertise must be established. Precision Pine will be able to question Mr. Adkins and raise any challenge to his

credentials as part of this process. Further, the Court will be far better equipped to assess Mr. Adkins' qualifications after hearing live testimony and the give-and-take of *voir dire*. Indeed, the superiority of live *voir dire* testimony is a principal reason that appellate courts afford trial judges discretion concerning the admissibility of expert testimony.

Precision Pine's challenge to Mr. Adkins' qualifications is without merit and, moreover, should be entertained only after *voir dire* at trial.

## DISCUSSION

### I. Mr. Adkins Is Well-Qualified To Provide Expert Testimony In This Action

#### A. The Combination Of Mr. Adkins' Engineering And Business Administration Credentials Make Him Uniquely Qualified

Mr. Adkins is a well-qualified expert. He has received undergraduate and advanced degrees in civil and mechanical engineering. Additionally, Mr. Adkins holds an M.B.A. in business and financial management. A copy of Mr. Adkins' current *curriculum vitae* is attached as Exhibit A.

Civil and mechanical engineering are multi-disciplinary fields that require a background in, among other things, applied mathematics, scheduling principles and industrial processes. Furthermore, engineering principles are not limited to a particular business or industry, but apply across the board to virtually all industrial processes, including the harvesting of timber and the manufacturing of lumber products. In addition to his acknowledged engineering prowess, Mr. Adkins holds a post-graduate degree in the areas of finance and business administration. This combination of disciplines – engineering, finance, and business administration – gives Mr. Adkins the ability to provide particularly valuable insights concerning Precision Pine's business operations, manufacturing processes, and damages claims.

Furthermore, Mr. Adkins has over 30 years experience applying his engineering and business management expertise in a variety of settings. Mr. Adkins has been qualified as an expert in numerous cases concerning a variety of businesses. See Ex. A. In those cases, Mr. Adkins addressed various complex issues that required expertise in applied engineering, scheduling, business finance and administration, and other areas. As a result, Mr. Adkins is amply qualified to provide expert testimony in this action.

Precision Pine admits that Mr. Adkins has broad experience in the fields of engineering and construction. See Mot. at 6-9. Indeed, at the January 4, 2005 status conference in this action, Mr. Saltman conceded that Mr. Adkins is qualified as an expert in engineering. Tr. at 40 (Jan. 4, 2005) ("Mr. Adkins is a very qualified gentleman in the area of . . . engineering.") (attached as Exhibit B). Nevertheless, Precision Pine argues that Mr. Adkins should not be permitted to apply his expertise in this action. Precision Pine characterizes Mr. Adkins as providing opinions on "the appropriate manner of harvesting timber," "the manufacture of the resulting sawlogs in to lumber at a sawmill," and "lumber sales." Mot. at 4. These characterizations inaccurately depict the analysis performed and the opinions proffered by Mr. Adkins.

Mr. Adkins will explain at trial that Precision Pine's actual operations – both before and after the MSO suspensions – demonstrate that its claimed damages are based upon unrealistic projections and assumptions and, therefore, are overstated. DX778; DX797. For instance, in his original report, Mr. Adkins compares Precision Pine's damages allegations with the company's past operational practices and results. DX778. Mr. Adkins' engineering expertise is central to this analysis, which shows that key aspects of Precision Pine's damages claims are not consistent

with its actual past performance. Id. Additionally, in seeking lost lumber profits, Precision Pine's expert has used a complex "but for" timber harvesting and sawmill operating schedule. Mr. Adkins uses his expertise in engineering and scheduling to assess this hypothetical schedule. Id.

In his supplemental report on post-suspension profits, Mr. Adkins performs calculations that are based almost exclusively upon the original and supplemental reports of Precision Pine's damages expert. DX797. These calculations require no background in the timber industry. Rather, Mr. Adkins uses Precision Pine's own numbers and demonstrates that the company was better off harvesting timber in the post-suspension period than during the period of the MSO suspensions. Id.

Precision Pine takes a cramped view of the areas of expertise that could potentially aid the Court and distorts the analysis and opinions offered by Mr. Adkins. Mr. Adkins' expertise in engineering, scheduling, finance, and business administration, and his analysis of Precision Pine's actual business practices and records, will aid the Court in evaluating the damages claims asserted in this action. His testimony is, therefore, admissible.[1]

**B. Mr. Adkins Was Free To Obtain Background Information From Forest Service Personnel Or Other Sources**

Precision Pine asserts that Mr. Adkins' testimony should be excluded because his testimony is "based on the opinions of others." Mot. at 16. According to Precision Pine, it was

[1] Precision Pine's motion also contains several pages of discrete opinions that Mr. Adkins supposedly is not qualified to offer. See Mot. at 12-16. Mr. Adkins' opinions are taken out of context and Precision Pine characterization of the opinions is frequently incomplete or inaccurate. See id. Additionally, Precision Pine completely disregards supporting documents in Mr. Adkins' reports and offers no explanation why Mr. Adkins analysis is not sound. Id.

improper for Mr. Adkins to have discussions with Forest Service personnel about certain terms used in the timber industry. See id. at 16-17. Precision Pine is incorrect.

"The facts or data . . . upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing . . . [and] need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703; see also Health Ins. Plan of Greater N.Y. v. United States, 62 Fed. Cl. 33, 44 n.20 (2004) (citing LaCombe v. A-T-O, Inc., 679 F.2d 431, 436 (5th Cir.1982) ("when the expert witness has consulted numerous sources, and uses that information together, with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise."); United States v. Sims, 514 F.2d 147, 149 (9th Cir.1975) ("the expert synthesizes the primary source material—be it hearsay or not—into properly admissible evidence in opinion form")). The Advisory Committee clearly contemplated that experts can base opinions on the opinions of others. See Advisory Committee's Note, Rule 703 ("Thus a physician in his own practice bases his diagnosis on . . . opinions from nurses, technicians, and other doctors . . . ."); Barris v. Bob's Drag Chutes & Safety Equipment, Inc., 685 F.2d 94, 102 n.10 (3d Cir. 1982) ("Under Rule 703, an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts."); Seese v. Volkswagenwerk A.G., 648 F.2d 833, 845 (3d Cir.) (Rule 703 permits accident-reconstruction expert to base opinion on facts, data and conclusions expressed by medical doctor.), cert. denied, 454 U.S. 867 (1981).

Simply put, Mr. Adkins was free to obtain background information from Forest Service personnel in preparing his expert report.

## II. The Court Should Defer Ruling Upon Mr. Adkins' Qualification To Testify As An Expert Until After *Voir Dire*

Precision Pine seeks to use a motion *in limine* to exclude testimony from Mr. Adkins. Precision Pine does not contend that the United States has failed to disclose the areas or bases for Mr. Adkins testimony. See RCFC 26(a)(2). Nor does Precision Pine contend that Mr. Adkins has failed to employ reliable methods and principles. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); RCFC 702.[2] Instead, as explained above, Precision Pine argues that Mr. Adkins is not qualified by education and experience to testify in this action. See section I.A., supra; see also Tr. at 39-40.

Precision Pine's argument is not appropriately raised through a motion *in limine*. Before Mr. Adkins may testify at trial, his qualification as an expert must be established by the United States during the *voir dire* process. Precision Pine will be able to question Mr. Adkins and raise challenges to his qualification at that time. Moreover, as this Court has recognized, the *voir dire* process is a preferable vehicle for assessing witness qualifications. Tr. at 40-41 (stating that "to the degree that the question is one of the qualifications of the witness there may well be some benefit in awaiting the testimony at trial and making a judgment as to whether the testimony is indeed inadmissible"). During *voir dire* the Court will hear live testimony from Mr. Adkins concerning his education, his experience, and his qualification as an expert in other matters. The Court will be far better equipped to assess Mr. Adkins' qualifications after the give-and-take of

---

[2] Precision Pine cites Daubert in its motion. Mot. at 5-6. However, the issue in Daubert was not whether an expert had the requisite qualifications to testify. Rather, the Supreme Court addressed whether expert testimony was admissible where the expert was using methods and principles that were not "generally accepted" in the relevant field. 509 U.S. at 586-87. The central holding in Daubert was incorporated into Federal Rule of Evidence 702 in 2000. See Fed. R. Evid. 702 advisory committee notes (2000).

*voir dire* than it would be by reviewing the cold paper record available at this time. Indeed, the superiority of live *voir dire* testimony is a principal reason that trial judges are afforded discretion to admit or exclude expert testimony. See generally Haebe v. Dept. of Justice, 288 F.3d 1288, 1301 & n.29 (Fed. Cir. 2002) (deference is called for where witness demeanor is observed by the factfinder).

In its motion, Precision Pine cites eight cases where an expert witness was excluded at trial. See Mot. at 10-12. According to Precision Pine, these cases support excluding Mr. Adkins testimony in this action. However, in not a single one of the cases cited by Precision Pine was expert testimony barred as the result of a motion *in limine*. Thus, even the authority that Precision Pine cites does not support granting relief at this stage of the proceedings.

In its brief, Precision Pine also provides a laundry list of discrete opinions that it claims Mr. Adkins is not qualified to offer. See Mot. at 12-16. The sound bites cited by Precision Pine are taken out of context, are frequently incomplete or inaccurate, and provide no explanation why the underlying analysis is insufficient. See id. Indeed, Precision Pine completely ignores the numerous supporting documents contained in the comprehensive reports prepared by Mr. Adkins. Id. As explained above, Mr. Adkins' conclusions are based principally upon his analysis of Precision Pine's own business records, which discuss the company's past operations and provide contemporaneous documents that address many of the issues now before the Court. To the extent that Precision Pine believes that its records do not afford Mr. Adkins a sufficient foundation for a particular opinion, it may raise an objection at trial. The Court will be in a superior position to judge objections to discrete opinions after hearing foundational testimony at

trial than at this point in the case. Thus, the Court should defer ruling on objections concerning particular opinions that may (or may not) be offered in the course of trial.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny Precision Pine's motion *in limine* to exclude expert witness testimony from Mr. Adkins.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PATRICIA DISERT
LORI POLIN JONES
Office of the General Counsel
U.S. Department of Agriculture

April 28, 2005