**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* REGARDING LAW OF THE CASE**

Plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), has filed a motion that, while styled a motion *in limine*, seeks rulings on legal issues and asks the Court to strike certain aspects of the United States' pretrial memorandum. It raises no evidentiary issues that are the proper focus of a motion *in limine*. For this reason alone, it should be rejected.

Furthermore, Precision Pine's motion presents no basis for striking the United States' pretrial memorandum. The United States' pretrial memorandum was filed in accordance with Court rules and orders. A pretrial memorandum states a party's position regarding facts expected to be shown at trial and the governing legal framework. The appropriate avenue for a response is through evidence at trial and legal argument during post-trial briefing. Any legal arguments should be presented at that time – not in a pretrial response brief.[1] Nevertheless, a rebuttal of Precision Pine's various arguments is set forth below.

---

[1] By contesting legal positions in the United States' pretrial brief and asking the Court to rule as a matter of law on these issues, Precision Pine has filed a response to the United States' pretrial memorandum effectively seeking summary judgment. Because court rules do not authorize a response to pretrial briefs, and because the deadline for seeking summary judgment was April 16, 2004, Precision Pine's motion is not properly before the Court.

## ARGUMENT

The doctrine of law of the case provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 815-16 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). The law of the case doctrine, however, "merely expresses the practice of courts generally to refuse to reopen what has been decided, [and is] not a limit to their power." Christianson, 486 U.S. at 817 (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912)). A court "has the power to reconsider its decisions until a judgment is entered." Exxon Corp. v. United States, 931 F.2d 874, 876 (Fed. Cir. 1991); LaSalle Talman Bank, F.S.B. v. United States, 64 Fed. Cl. 90, 97 (2004).

Precision Pine's attempt to use the doctrine of law of the case to strike contentions in the United States' pretrial memorandum and to preclude legal arguments in future filings is misplaced. As explained below, Precision Pine has misconstrued or mischaracterized the rulings upon which this motion is based. More fundamentally, even if Precision Pine were correct about the Court's prior rulings, law of the case does not provide a basis for an order barring future legal arguments as the Court retains the "power to reconsider its decisions until a judgment is entered." See Exxon, 931 F.2d at 876; LaSalle Talman, 64 Fed. Cl. at 97.

### I. The Decision In *Scott Timber* Is Relevant And Governs This Action

Precision Pine first objects that the United States has cited the United States Court of Appeals for the Federal Circuit's decision in Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003), for the proposition that Precision Pine should not recover alleged increases in sawmill costs under the common law. Mot. at 2. In Scott Timber, the Federal Circuit rejected

the plaintiff's claim for increased sawmill costs under contract clause CT 6.01 as remote and unrecoverable. See 333 F.3d at 1371. While this Court has concluded that Scott Timber did not create a *per se* rule, see Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 136 (2004), the United States is aware of no factual basis for reaching a different result here. Thus, as explained in more detail in our pretrial memorandum, the Scott Timber decision supports the United States' argument that Precision Pine should recover no damages under the common law.

## II. The MSO Suspensions Resulted From The Listing Of The Mexican Spotted Owl Under The Endangered Species Act

Precision Pine also complains that the United States describes the suspensions at issue as resulting from the listing of the Mexican Spotted Owl as "threatened" under the Endangered Species Act ("ESA"). Mot. at 3. The United States' description is correct.

Precision Pine argues that the suspensions resulted not from the Mexican Spotted Owl's listing, but from the Forest Service's failure to timely consult with the Fish and Wildlife Service. See Mot. at 3. However, no duty to consult with the Fish and Wildlife Service existed until the listing under the ESA occurred. See 16 U.S.C. § 1536(a)(1). Indeed, the environmental litigation that led to the MSO suspensions was premised upon the Forest Service's duties under the ESA to protect the Mexican Spotted Owl. Put simply, but for the listing of the Mexican Spotted Owl under the ESA, the suspensions at issue would not have occurred.

## III. The Court's Ruling In This Action Regarding CT 6.25 Has Been Superceded By Binding Federal Circuit Precedent

Next, Precision Pine objects that the United States mentions in a footnote its position that liability premised upon a "warranty" in CT 6.25 is erroneous and contrary to the law. Mot. at 4. As we have previously explained, Scott Timber is "directly contrary" to the Court's liability

decision in this case, because, in Scott Timber, the court of appeal held that liability stemming from a misrepresentation will be found only where there has been justifiable reliance, 333 F.3d at 1371, whereas in this action the Court ruled that Precision Pine need not show justifiable reliance to establish its breach of warranty claim, Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 66 (2001). See Def.'s Motion for Partial Reconsideration, at 4 (filed Nov. 14, 2003). While the Court elected not to act upon our November 2003 motion for reconsideration, the Federal Circuit's decision in Scott Timber remains binding precedent. The United States is not waiving this argument and, if warranted, may raise the issue in the event that an appeal of this action ensues.

## IV. Whether The Milling, Planing, Drying And Selling Of Lumber Products Constitute A "Collateral Undertaking" Is An Open Question

Precision Pine asserts that the Court has rejected the argument that the milling, planing, drying and selling of lumber derived from a timber sale contract constitutes a collateral undertaking. Mot. at 5. As authority, Precision Pine cites a single passage from the Court's November 2003 ruling on the United States' motion for partial summary judgment. Id. (citing Precision Pine, 63 Fed. Cl. at 131). The cited passage is inapposite. The Court was discussing the legal foreseeability of lost profits – not whether the manufacture and sale of lumber products constitute a collateral undertaking. See Precision Pine, 63 Fed. Cl. at 131. Furthermore, the Court concluded that legal foreseeability must be resolved at trial. Id.

The United States did not seek summary judgment, and the Court did not rule, as to whether the manufacture and sale of lumber products is collateral to the performance of a timber sale contract. See Def.'s Mot. for Partial Summ. J. (filed April 16, 2004); Precision Pine, 63 Fed. Cl. 122. Moreover, because Precision Pine did not seek summary judgment on this (or any

other) issue, the United States could hardly be precluded by "law of the case" from presenting evidence at trial. Thus, it remains an open question whether profits from the sale of lumber result from the "direct and immediate result of fulfillment" of a timber sale contract, or result from collateral undertakings such as sawmill and planing operations.

## V. The Court Held That The MSO Suspensions Were Unreasonable Only Insofar As They "Lasted Much More Than 135 Days"

Lastly, Precision Pine objects to the statement in the United States' pretrial brief that "the first 135 days of the MSO suspensions . . were not a breach." Mot. at 5 (citing Def.'s Pretrial Br. at 47). Precision Pine asserts that this issue "has already been decided against" the United States. Id. Precision Pine is simply wrong.

In ruling on liability, the Court considered whether the MSO suspensions were unreasonably long such that they breached the duty of good faith and fair dealing.[2] Precision Pine, 50 Fed. Cl. at 70-71. The Court ruled that the length of the suspensions of the Brann, Hutch-Boondock, and St. Joe contracts, which were approximately 60 days, were not unreasonable and were not a breach. The suspensions of the other contracts were found to be a breach.[3] The Court explained its reasoning as follows:

> Under the regulations implementing the ESA, formal consultations are to last no more that 90 days. . . . The Biological Opinion is to be issued by the FWS within 45 days. . . . Thus, had the

[2] The Court noted that the implied duty not to hinder is a "subspecies" of the duty of good faith and fair dealing. See Precision Pine, 50 Fed. Cl. at 58-59 & n.31. It discussed the reasonableness of delay in terms of a breach of this subsidiary duty. See id. at 70-71.

[3] In its opinion, the Court incorrectly states that the suspension of the other contracts lasted for 467 days. 50 Fed. Cl. at 70. The suspension of the Mud contract in fact lasted only 198 days, i.e., from August 25, 1995 to March 11, 1996. See PX109; DX300. The Court's error likely affected its ruling on liability.

> suspensions been conducted according to the regulations, the suspension should have not lasted much more than 135 days. In fact, the suspensions lasted from August 25, 1995, until December 4, 1996, for a total of 467 days. Notwithstanding the protracted length of the suspensions, the mere fact that the suspensions remained in effect far longer than provided for in the regulations does not in itself suggest that the length of the delay was unreasonable . . . .

Precision Pine, 50 Fed. Cl. at 70 (citations omitted; emphasis omitted); see also id. at 61 ("even if the Forest Service had violated a statute or regulation, this would not *ipso facto* mean that there was an unreasonable delay"). After discussing the reasons for the delay, the Court turned to the suspensions of individual contracts.

> [T]he Court does not find that the length of the suspensions for the Brann, Hutch-Boondock, and St. Joe timber sale contracts were unreasonable. According to the order approving the joint stipulation between the environmental plaintiffs and the Forest Service in Silver v. Thomas, performance of timber sale contracts could proceed for those three contracts. . . . The two-month suspension of these contracts, in light of the regulations which normally would prescribe consultations to be completed within 135 days, is reasonable.
>
> [T]he Court finds that the length of the suspension was unreasonable and the fault of the Forest Service with respect to all contracts at issue with the exception of the Brann, Hutch-Boondock, and St. Joe contracts.

Precision Pine, 50 Fed. Cl. at 71 (citations omitted). In sum, the Court concluded that suspensions that substantially exceeded 135 days were unreasonable and a breach. On the other hand, no breach was found when the suspensions did "not last[] much more than 135 days." See id. at 70-71.

In its brief, Precision Pine cites a passage suggesting that an alleged two month delay in initiating consultations between the Forest Service and the Fish and Wildlife Service was

"unreasonable." Mot. at 6 (citing Precision Pine, 35 Fed. Cl. at 70). Of course, if this two month delay had constituted a breach, the Court would have found a breach of all 14 contracts. Plainly, it did not. Precision Pine, 35 Fed. Cl. at 71; see also id. at 58 n.32 ("Cedar Lumber teaches that in order to recover, the Plaintiff must show that delays caused material damage. . . . The extent to which the Plaintiff suffered material damages as a result of the beach of the implied duty not to hinder shall be determined during the damages phase of this case.") (emphasis added).

In sum, the Court ruled that only that part of the suspensions that "lasted much more than 135 days" constitutes a breach of contract.[4] Any assessment of damages should take this aspect of the Court's liability ruling into account.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny Precision Pine's motion *in limine* with respect to "law of the case."

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

[4] The contracts were suspended on August 25, 1995. Thus, a suspension of 135 days would have ended on January 6, 1996, i.e., after the end of the 1995 operating season on Precision Pine's contracts.

s/ David A. Harrington

OF COUNSEL:

PATRICIA DISERT
LORI POLIN JONES
Office of the General Counsel
U.S. Department of Agriculture

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys for Defendant

April 28, 2005