No. 98-720C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE THE DEFENSE OF RELEASE

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

LORI POLIN JONES
PATRICIA L. DISERT
Office of General Counsel
U.S. Department of Agriculture

Dated: April 18, 2005

# TABLE OF CONTENTS

BACKGROUND . . . . . 1

I. "Substantial Overriding Public Interest" Contract Term Adjustments . . . . . 1

II. The Contract Modifications At Issue Have Been Identified By Both Parties As Trial Exhibits . . . . . 2

ARGUMENT . . . . . 3

I. Standard Of Review . . . . . 3

II. Precision Pine Has Shown No Prejudice . . . . . 5

A. An Allegation Of Undue Delay, Without More, Is Insufficient . . . . . 6

B. Extrinsic Evidence Is Not Admissible To Modify, Alter Or Vary The Terms Of The Contract Amendments At Issue . . . . . 7

C. Precision Pine Seeks To Bar The Court From Considering The Legal Effect Of Evidence Admitted At Trial . . . . . 10

III. The Doctrine Of Law Of The Case Is Inapplicable . . . . . 11

CONCLUSION . . . . . 14

# TABLE OF AUTHORITIES

**Cases:**

Al-Kurdi v. United States,
25 Cl. Ct. 599 (1992) . . . . . . . . . . 3-4

Alaska Pulp Corp. v. United States,
59 Fed. Cl. 400 (2004) . . . . . . . . . . 13

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . 8

Arizona v. California,
460 U.S. 605 (1983) . . . . . . . . . . 11

Barron Bancshares, Inc. v. United States,
366 F.3d 1360 (Fed. Cir. 2004) . . . . . . . . . . 5, 7, 8

Beta Sys., Inc. v. United States,
838 F.2d 1179 (Fed. Cir. 1988) . . . . . . . . . . 8

Blonder-Tongue Labs. Inc. v. University of Illinois Found.,
402 U.S. 313 (1971) . . . . . . . . . . 3

Brock & Blevins Co. v. United States,
170 Ct. Cl. ___, 343 F.2d 951 (1965) . . . . . . . . . . 6

Christianson v. Colt Industries Operating Corp.,
486 U.S. 800 (1988) . . . . . . . . . . 11

Cities Service Helex, Inc. v. United States,
211 Ct. Cl. ___, 543 F.2d 1306 (1976) . . . . . . . . . . 3

City of Gettysburg v. United States,
64 Fed. Cl. 429 (2005) . . . . . . . . . . 3, 4

City of Tacoma v. United States,
31 F.3d 1130 (Fed. Cir. 1994) . . . . . . . . . . 8

Columbia First Bank, FSB v. United States,
60 Fed. Cl. 97 (2004) . . . . . . . . . . 13

Eminence Capital, LLC v. Aspeon, Inc.,
316 F.3d 1048 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Erickson v. United States,
159 Ct. Cl. ___, 309 F.2d 760 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Exxon Corp. v. United States,
931 F.2d 874 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Foman v. Davis,
371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 10

Hassan v. United States Postal Serv.,
842 F.2d 260 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Howey v. United States,
481 F.2d 1187 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lowrey v. Texas A & M University System,
117 F.3d 242 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

M.A. Mortenson Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Middle Atlantic Util. Co. v. S.M.W. Development Corp.,
392 F.2d 380 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Patton v. United States,
___ Fed. Cl. ___, 2005 WL 681241 (Mar. 23, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Principal Mutual Life Ins. Co. v. United States,
26 Cl. Ct. 616 (1992),
aff'd, 50 F.3d 1021 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rodriquez v. United States,
286 F.3d 972 (7th Cir.), cert. denied, 537 U.S. 938 (2002) . . . . . . . . . . . . . . . . . . . . . . . 4

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002),
cert. denied, 539 U.S. 910 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Senza-Gel Corp. v. Seiffert,
803 F.2d 661 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Siemens Aktiengesellschaft v. United States,
26 Cl. Ct. 312 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

St. Paul Fire & Marine Ins. Co. v. United States,
31 Fed. Cl. 151 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State Teachers Retirement Bd. v. Fluor Corp.,
654 F.2d 843 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Hougham,
364 U.S. 310 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Unitherm Food Sys., Inc. v. Swift Eckrich, Inc.,
375 F.3d 1341 (Fed. Cir. 2004),
cert. granted in part, 125 S. Ct. 1396 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Other Authority:**

6 Charles A. Wright, et al., Federal Practice & Procedure § 1476 (1991) . . . . . . . . . . . . . . . . . 4

3 J. Moore, Moore's Federal Practice § 15.08, 0.835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE***
**TO EXCLUDE THE DEFENSE OF RELEASE**

Plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), has filed a motion *in limine* in which it asks the Court "to exclude the affirmative defense of release." Precision Pine does not seek to exclude evidence. Precision Pine argues that the Court should disregard evidence – namely, the plain language of the contracts at issue – that will be admitted at trial. The law does not require or support such a result. Accordingly, Precision Pine's motion *in limine* concerning the issue of release should be denied.

**BACKGROUND**

**I. "Substantial Overriding Public Interest" Contract Term Adjustments**

In early 1997, the Forest Service offered Precision Pine "substantial overriding public interest" term adjustments of one year on certain timber sale contracts awarded prior to January 1, 1995. See Letter from Ken Broyles to Lorin D. Porter at 1 (Jan. 28, 1997) (with enclosure) (attached as Exhibit A); Letter from David P. Harris to Lorin D. Porter at 1 (Mar. 21, 1997) (attached as Exhibit B). To receive such a term adjustment, Precision Pine was required to make a written request and to execute a contract modification containing a "Release from

Liability Statement." Id. The Forest Service included a copy of the required release with its offer of the term adjustment. Id.

Precision Pine subsequently requested term adjustments for the Brann, Hutch-Boondock, Monument, Mud and Saginaw-Kennedy contracts. E.g., Letter from John Smith to David P. Harris (May 12, 1997) (attached as Exhibit C); Letter from Lorin D. Porter to Dave Harris at 1 (May 21, 1998) (attached as Exhibit D). Contract modifications with the required release were subsequently forwarded to Mr. Porter, e.g., Letter from David P. Harris to Lorin D. Porter at (May 28, 1998) (attached as Exhibit E), who signed the contract modification, executed the accompanying release, and returned the documents to the Forest Service.[1] See Modification and Release for the Brann Multi-Product Sale (attached as Exhibit F); Modification and Release for the Hutch-Boondock Multi-Product Sale (attached as Exhibit G); Modification and Release for the Monument Multi-Product Sale (attached as Exhibit H); Modification and Release for the Mud Multi-Product Sale (attached as Exhibit I); Modification and Release for the Saginaw-Kennedy Multi-Product Sale (attached as Exhibit J).

## II. The Contract Modifications At Issue Have Been Identified By Both Parties As Trial Exhibits

Complete copies of the Brann, Hutch-Boondock, Monument, Mud, and Saginaw-Kennedy contracts, including the contract amendments at issue,[2] are included on Precision Pine's

---

[1] John Smith, a Precision Pine employee who had been designated "purchaser representative," originally executed the modification and release for the Brann contract. See Ex. E. The Forest Service returned these document to Precision Pine and directed that the modification and release be signed by Mr. Porter. Id.

[2] References to the "contract amendments" or the "contract modifications" refer to the five documents attached as Exhibits F – J.

and/or the United States' final exhibit lists. PX175; PX176; PX179; DX238; DX239; DX284; DX285; DX318; DX319; DX342; DX343; DX435; DX436. Neither party has asserted an objection to admitting these documents into evidence. See Pl.'s Objections to Def.'s Exhibits (Apr. 18, 2005) (docket no. 320); Def.'s Revised Objections to Pl.'s Exhibits (Apr. 20, 2005) (docket no. 324). Indeed, the parties agree that the contracts and contract amendments should be submitted as joint exhibits. See Letter from David A. Harrington to Richard W. Goeken at 2 (Mar. 14, 2005) (attached as Exhibit K); Letter from Richard W. Goeken to David A. Harrington at 2 (Mar. 14, 2005) (attached as Exhibit L).

## ARGUMENT

### I. Standard Of Review

Under Rule 8(c) of the Rules of the United States Court of Federal Claims, affirmative defenses are to be included in the defendant's responsive pleading. RCFC 8(c). "The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that a party is prepared to properly litigate it." City of Gettysburg v. United States, 64 Fed. Cl. 429, 449 (2005); accord Al-Kurdi v. United States, 25 Cl. Ct. 599, 604 (1992) (quoting Hassan v. United States Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988) (citing Blonder-Tongue Labs. Inc. v. University of Illinois Found., 402 U.S. 313, 350 (1971))). However, "[t]he failure to plead an affirmative defense does not automatically extinguish the defense." City of Gettysburg, 64 Fed. Cl. at 449 (citing Cities Service Helex, Inc. v. United States, 211 Ct. Cl. 222, 234 n.14, 543 F.2d 1306, 1313 (1976), and Erickson v. United States, 159 Ct. Cl. 202, 210, 309 F.2d 760, 764 (1962)); accord Al-Kurdi, 25 Cl. Ct. at 604. To the contrary, a non-pled affirmative defense generally may be raised so long as it would not result in

prejudice to the opposing party. City of Gettysburg, 64 Fed. Cl at 449; see also Al-Kurdi, 25 Cl. Ct. at 604 (citing Johnson v. United States, 15 Cl. Ct. 169, 172 (1988)).

This is consistent with permissive standard in Rule 15, which provides that "leave [to amend an answer] shall be freely given when justice so requires." RCFC 15(a); see also RCFC 15(b) ("If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleading to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would [result in] prejudice"). Courts applying this standard, including the Supreme Court, have construed Rule 15's language "quite liberally" and placed particular emphasis upon the element of prejudice to the opposing party. Principal Mutual Life Ins. Co. v. United States, 26 Cl. Ct. 616, 623 (1992) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)), aff'd, 50 F.3d 1021 (Fed. Cir. 1995); United States v. Hougham, 364 U.S. 310, 316 (1960) ("Rule 15 of the Federal Rules of Civil Procedure . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result."); and 6 Charles A. Wright, et al., Federal Practice & Procedure § 1476 (1991) ("If no prejudice is found, then leave normally will be granted.")). Indeed, Rule 15 has been held to create a "presumption" in favor of granting motions to amend in the absence of prejudice. E.g., Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, (9th Cir. 2003) ("there exists a presumption under Rule 15(a) in favor of granting leave to amend"); Rodriquez v. United States, 286 F.3d 972, 980 (7th Cir.) (referring to "the presumption in favor of liberality in granting motions to amend under Rule 15(a)") (brackets omitted), cert. denied, 537 U.S. 938 (2002); Lowrey v. Texas A & M University System, 117 F.3d 242, 245 (5th Cir. 1997) ("The discretion

of the [trial] court is limited . . . by Fed. R. Civ. P. 15(a), which provides that 'leave shall be freely given when justice so requires.' Rule 15(a) expresses a strong presumption in favor of liberal pleading.").

## II. Precision Pine Has Shown No Prejudice

The United States' position regarding Precision Pine's releases is simple: the plain language of the respective contracts absolve the United States from paying damages or other compensation. See Def.'s Pretrial Mem. at 23 (docket no. 302). The United States relies solely upon the respective amendments to the Brann, Hutch-Boondock, Monument, Mud and Saginaw-Kennedy contracts. Id. at 18, 23 (citing DX239; DX285; DX319; DX343; DX436). Not only are these contract amendments on the parties' respective exhibit lists, there is no dispute concerning their authenticity or admissibility. See Pl.'s Objections to Def.'s Exhibits (Apr. 18, 2005) (docket no. 320). Moreover, in construing the contract amendments, the Court's proper focus is on the amendments' "plain language" – not extrinsic evidence. E.g., Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004); M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004).

Although Precision Pine has been in possession of the contracts and contract amendments throughout this litigation,[3] has included them on its exhibit list, and has conceded their admissibility into evidence, Precision Pine nevertheless argues that it will be prejudiced if the

---

[3] During discovery in the first phase in this action, the United States produced an "administrative record" that contains all contracts, contract amendments, and relevant correspondence organized by contract. Precision Pine asserts that two pages (the executed release forms accompanying the Monument and Mud contract amendments) were not produced until April 6, 2005. See Pl.'s Mot. at 13 n.6. Precision Pine, however, had its own corporate records that contained the contracts and contract amendments.

Court considers the legal effect of the respective amendments. See Pl.'s Mot. at 11-16. Precision Pine's arguments are meritless.

### A. An Allegation Of Undue Delay, Without More, Is Insufficient

Precision Pine first asserts that it has been harmed by the United States' delay.[4] Pl.'s Mot. at 11-12 (citing Tenneco Resins, Inv. v. Reeves Bros., Inc., 752 F.2d 630, 634 (Fed. Cir. 1985)). Precision Pine's allegation of delay, standing alone, is an insufficient basis for granting its motion. See, e.g., State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 851 (2d Cir. 1981) ("Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."); Middle Atlantic Util. Co. v. S.M.W. Development Corp., 392 F.2d 380, 384 (2d Cir. 1968) (a multi-year delay between filing the complaint and a motion to amend, without prejudice or bad faith, was, standing alone, an inadequate basis for denying the motion). It is well-established that "[t]he mere fact that an amendment is offered late in the case is . . . not enough to bar it; amendments may be offered at trial, or even after reversal and remand." Senza-Gel Corp. v. Seiffert, 803 F.2d 661, 667 (Fed. Cir. 1986) (quoting Howey v. United States, 481 F.2d 1187, 1191, n.3 (9th Cir. 1973); 3 J. Moore, Moore's Federal Practice § 15.08, 0.835)); see also Brock & Blevins Co. v. United States, 170 Ct. Cl. 52, 59, 343 F.2d 951, 955 (1965) (granting defendant's request to raise a defense four months after the trial court's opinion and findings of fact was issued); Siemens Aktiengesellschaft v. United States, 26 Cl. Ct. 312 (1992) (granting leave to amend answer to add defenses after motion for summary judgment).

> As the Supreme Court in Foman explained, "The Federal Rules reject the approach that pleading is a game of skill in which one

---

[4] The United States does not contest that its responsive pleading does not assert release as an affirmative defense.

> misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 154 (1994) (quoting Foman, 371 U.S. at 181-82).

Here, the asserted defense relies strictly upon the Court's construction of the plain language of the respective contracts. See, e.g., Barron Bancshares, 366 F.3d at 1375; M.A. Mortenson, 363 F.3d at 1206. Consequently, the mere passage of time results in no prejudice. Precision Pine's allegation of "undue delay" is, therefore, an insufficient basis for granting its motion *in limine*. See Senza-Gel Corp., 803 F.2d at 667 ("Where there is lack of prejudice to the opposing party . . . , it is an abuse of discretion to deny . . . a motion" to amend.).

**B. Extrinsic Evidence Is Not Admissible To Modify, Alter Or Vary The Terms Of The Contract Amendments At Issue**

Precision Pine also asserts that it was prevented from developing evidence regarding the releases during discovery. See Pl.'s Mot. at 12-14. Precision Pine's claim that it was somehow prejudiced is undercut by the parol evidence rule.

"The parol evidence rule is a rule of substantive law that prohibits the use of external evidence to add to or otherwise modify the terms of a written agreement 'in instances where the written agreement has been adopted by the parties as an expression of their final understanding.'" Barron Bancshares, 366 F.3d at 1375. "The rule thus renders inadmissible evidence introduced to modify, supplement, or interpret" the terms of such an agreement. Id. Evidence of the parties' course of dealing constitutes the kind of parol evidence that is prohibited by the rule. Id. (citing Alves v. United States, 133 F.3d 1454, 1549 (Fed. Cir. 1998)).

"When construing a contract, a court first examines the plain meaning of its express terms." Barron Bancshares, 366 F.3d at 1375. "If the terms of a contract are clear and unambiguous, they must be given their plain meaning – extrinsic evidence is inadmissible to interpret them." Id. (citing McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996)). Additionally, extrinsic evidence may not be received to create an ambiguity where the contract is clear on its face. City of Tacoma v. United States, 31 F.3d 1130, 1134 (Fed. Cir. 1994) ("Outside evidence may not be brought in to create an ambiguity where the language is clear."); Beta Sys., Inc. v. United States, 838 F.2d 1179, 1183 (Fed. Cir. 1988) ("[E]xtrinsic evidence will not be received to change the terms of a contract that is clear on its face.").

Here, the terms of the contract amendments are clear. See Exs. F-J. Thus, under the parol evidence rule, Precision Pine cannot use extrinsic evidence to modify, supplement or interpret the terms of the respective releases. E.g., Barron Bancshares, 366 F.3d at 1375. Any evidence developed in discovery for this purpose would be inadmissible. Id.

In its brief, Precision Pine alludes to the possibility of fraud by the Forest Service. Pl.'s Mot. at 13 (suggesting that the release was a "trap for the unwary" and that it would have sought discovery concerning fraud). Fraud constitutes a limited exception to the bar of the parol evidence rule. See Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002), cert. denied, 539 U.S. 910 (2003). However, a party alleging fraud must do so with specificity and overcome the strong presumption that Government officials perform their duties in good faith. Patton v. United States, ___ Fed. Cl. ___, 2005 WL 681241 at *8 (Mar. 23, 2005) (citing Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002)); RCFC 9.

Precision Pine proffers no valid basis for an allegation of fraud against the Forest Service. See Unitherm Food Sys., Inc. v. Swift Eckrich, Inc., 375 F.3d 1341 (Fed. Cir. 2004) (the elements of fraud include: (1) a representation of material fact; (2) the falsity of that representation; (3) the intent to deceive (i.e., scienter); (4) justifiable reliance; and (5) injury as a result of reliance), cert. granted in part, 125 S. Ct. 1396 (2005). It is undisputed that the Forest Service's offer of "substantial overriding public interest" term adjustments specifically stated that the timber purchaser would be required to execute a release. See Ex. A & B; Pl.'s Mot., Ex. 1. Additionally, the Forest Service enclosed with its offer a copy of the required release. Id. Thus, a timber purchaser that requested a "substantial overriding public interest" term adjustment was fully informed. In such circumstances, there is no colorable basis for a claim of fraud. As this Court recently noted, for over 50 years the Federal Circuit has emphasized that "we are 'loath to find to the contrary [of good faith], and it takes, and should take, well-nigh irrefragable proof to induce us to do so.'" Id. (quoting Am-Pro, 281 F.3d at 1239, and Schaefer v. United States, 224 Ct. Cl. 541, 633 F.2d 945, 949 (1980)).

Precision Pine also argues that it unable to prepare for trial and address this new matter. Precision Pine avers it would need to "serve interrogatories, take depositions, and interview potential witnesses" to prepare a defense. Pl.'s Mot. at 15. Precision Pine's contention is absurd on its face. This supposed "new matter" concerns the plain language of the contracts that are central to Precision Pine's claim – contracts that both Precision Pine and the United States have proffered as exhibits. Moreover, under the parol evidence rule, witness testimony and other

extrinsic evidence is barred.[5] Precision Pine can hardly claim prejudice resulting from the inability to obtain information in discovery that would be excluded at trial.

**C. Precision Pine Seeks To Bar The Court From Considering The Legal Effect Of Evidence Admitted At Trial**

Precision Pine does not attempt to justify the anomalous result sought by its motion *in limine*, namely, that Precision Pine seeks to admit the contracts into evidence, but bar the Court from considering the legal effect of the contracts' plain language upon its claims. The contracts are essential to Precision Pine's damages claims, Precision Pine seeks to admit them into evidence, and the United States has not objected to their admissibility. See Pl.'s Final Exhibit List (Mar. 7, 2005) (PX169-79); Def.'s Revised Objections to Pl.'s Exhibits (Apr. 20, 2005). Indeed, neither party disputes that the contracts are admissible.[6] Given that the contracts are admissible and central to Precision Pine's claims, the United States should be free to argue that contract terms rebut Precision Pine's claims for compensation. Precision Pine identifies no authority that would require the Court to disregard the particular contractual provisions once the contracts have been admitted into evidence. See RCFC 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). And nothing less than the consideration of all contract terms would "facilitate a proper decision on the merits." Foman, 371 U.S. at 182.

---

[5] Even if witness testimony were not barred by the parol evidence rule, Mr. Porter, who executed each of the amendments contracts upon behalf of Precision Pine, has been identified as a principal trial witness and is undoubtedly available. The contracting officers for the contracts at issue also have been identified as trial witnesses by the parties.

[6] Similarly, the United States included the contracts (and amendments) on its final exhibit list and Precision Pine has asserted no objection. Def.'s Final Exhibit List (Apr. 4, 2005); Pl.'s Objections to Def.'s Exhibits (Apr. 18, 2005).

In sum, because extrinsic evidence regarding the respective contract amendments is inadmissible at trial, and because Precision Pine is free to present any arguments concerning contract construction during post-trial briefing, Precision Pine has shown no prejudice. Moreover, Precision Pine has presented no authority that would permit it to admit the contracts into evidence as the basis for its claims, yet require the Court to disregard the plain language of the contracts in assessing damages. Accordingly, the defense of release, which is premised upon the plain language of the contracts at issue in this action, is properly before the Court.[7]

## III. The Doctrine Of Law Of The Case Is Inapplicable

Precision Pine asserts that the argument that bilateral contract amendments free the Forest Service from paying compensation is barred by the doctrine of law of the case. The doctrine of law of the case provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 815-16 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). The law of the case doctrine, however, "merely expresses the practice of courts generally to refuse to reopen what has been decided, [and is] not a limit to their power." Christianson, 486 U.S. at 817 (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912)). A court "has the power to reconsider its decisions until a judgment is entered." Exxon Corp. v. United States, 931 F.2d 874, 876 (Fed. Cir. 1991).

The doctrine of law of the case has no applicability to this motion. In its July 2001 decision, the Court ruled that the Forest Service breached 12 of the 14 contracts at issue.

---

[7] For these reasons, the United States also respectfully requests leave to file an amended answer pursuant to RCFC 15.

Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 73-74 (2001). The Court did not rule on the issue of compensation.

> The extent to which the [suspensions] of the Plaintiff's operations translates into recoverable money damages is another issue entirely. Nothing in this Court's [July 30, 2001] decision should be construed as . . . precluding the Defendant from challenging the amount of monetary harm suffered by the Plaintiff as a result of the suspensions. In challenging the amount of damages that the Plaintiff may recover, the Court CLARIFIES that the Defendant may raise arguments during the quantum phase such as whether other sources of timber were available, whether it would have been economical for Precision Pine to harvest the timber sales at issue given current economic conditions, even if there had been no suspensions, and whether Precision Pine had adequate resources to harvest the timber in the absence of the suspension. The Defendant may also argue in the quantum phase that the suspensions were in some respects fortuitous for the Plaintiff, and therefore it suffered no material damage.

Order of Chief Judge Damich (Nov. 21, 2001) (clarifying the Court's July 30, 2001 ruling). To the contrary, the Court suggested that Precision Pine may have been benefitted by the MSO suspensions. Precision Pine, 50 Fed. Cl. at 73 (suggesting that the timing of the suspensions may have benefitted Precision Pine).

The "Release from Liability Statement" that was incorporated into the Brann, Hutch-Boondock, Monument, Mud and Saginaw-Kennedy contracts states that the Government is released "from any and all liability." See Exs. F-J. This concerns the quantum owed to Precision Pine as a result of the MSO suspensions. Because the issue of quantum has not been addressed by the Court, Precision Pine's attempt to invoke law of the case is inapposite.

Precision Pine argues that the United States is engaging in "a transparent attempt to get the Court to reconsider its conclusion as to liability." Pl.'s Mot. at 17. This is not correct. As explained above, the Court has issued a decision on the issue of breach; it has made no ruling on

quantum. At this juncture, the Court has issued no ruling on "liability" for damages or other compensation. See Random House College Dictionary at 771 (rev. ed. 1975) (defining "liability" as "moneys owed; debts or pecuniary obligations"); Black's Law Dictionary at (6th ed. 1991) (defining liability as, among other things, "all character of debts and obligations" and "any kind of debt or liability"); see also Alaska Pulp Corp. v. United States, 59 Fed. Cl. 400 (2004) (awarding no damages upon plaintiff's $8.7 billion claim notwithstanding the Government's breach of a 50-year timber sale contract); Columbia First Bank, FSB v. United States, 60 Fed. Cl. 97 (2004) (rejecting plaintiff's damages claims, including a claim for lost profits, where a breach had previously been established).

The "Release from Liability Statements" executed by Precision Pine do not pertain to the question of breach. Rather, they pertain to the issue of compensation due in the event of a breach – the issue that is squarely before the Court in the upcoming trial. The Hutch-Boondock modification provides perhaps the clearest illustration. The Hutch-Boondock contract was not breached by the Forest Service. Precision Pine, 50 Fed. Cl. at 72. Precision Pine nevertheless seeks compensation pursuant to clause CT 6.01. Because Precision Pine has released the Government from any and all liability arising from the suspension . . . of [the Hutch-Boondock] contract," no compensation under CT 6.01 is due. More significantly for present purposes, given that there was no breach of the Hutch-Boondock, this release necessarily pertains to quantum – not breach.

In sum, the Court has not yet ruled as to whether the United States has any liability for damages or other compensation as a result of the MSO suspensions. Accordingly, the doctrine of law of the case is inapplicable.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny Precision Pine's motion *in limine* concerning the issue of release.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PATRICIA DISERT
LORI POLIN JONES
Office of the General Counsel
U.S. Department of Agriculture

April 28, 2005