**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-720C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY FROM RONALD D. LEWIS**

Defendant seeks to exclude Mr. Lewis' proposed testimony on the ground that it is not based on his firsthand knowledge and observations. However, nothing can be further from the truth. The testimony that Mr. Lewis will give is based on his knowledge and understanding of what he, his colleagues in leadership positions in the Forest Service's commercial timber sale program, and the Forest Service as an organization believed in the years leading up to the suspension here in issue would be the effect on contractors of a lengthy suspension by the Forest Service of their existing Forest Service timber sale contracts. Mr. Lewis is fully qualified to testify to his personal knowledge and observations in this regard.

As the declaration that Mr. Lewis submitted earlier in this case indicated, in the course of his 30 years of employment with the Forest Service he was involved in nearly every aspect of the Forest Service's commercial timber sale program, having not only served as a contracting officer, but also in several staff positions overseeing a great many aspects of the program on a Forest, Regional and later National level. Declaration of Ronald D. Lewis, Appendix to

Plaintiff's Response to Defendant's Motion for Partial Summary Judgment Regarding Damages at 632, ¶ 2, appended hereto as Attachment A. More particularly, from February 1989 through September 1994, he served as the Staff Specialist, Timber Sale Contract Administration in the Forest Service's Washington D.C. Office, Timber Products Group – the group within the Forest Service that was most knowledgeable about the agency's commercial timber sale program. See id. In that capacity, among other things, he regularly provided information and advice to regional and forest level personnel on matters regarding commercial timber sale contract preparation, interpretation and administration. Id. at ¶ 2.

Defendant attempts to paint Mr. Lewis as a low or mid-level civil servant who was holed-up in the Pacific Northwest. However, the fact of the matter is that during his 5½-year tenure in the Washington Office from 1989 to 1994 he had much broader responsibilities and knowledge with respect to the Forest Service's commercial timber sale program and timber sale contracts (not to mention a higher pay grade) than any Forest Service witness that defendant proposes to call had either at the time or even now. In fact, some of the individuals that defendant will call would have looked to Mr. Lewis for advice on timber sale contract matters. Moreover, during his time on the Washington Office staff of the Forest Service, Mr. Lewis was the primary author of contract clause C(T)6.01 in 1990, which was an attempt by the Forest Service to limit its liability for the damages that would be experienced by contractors as a result of a suspension.

Moreover, based on his knowledge and observations in his declaration, Mr. Lewis stated and will testify at trial that:

> The Forest Service knew that in making commercial timber sales it was selling sawlogs to companies that had sawmills and who needed those sawlogs to supply those mills and produce lumber to fulfill orders from lumber buyers.

Declaration ¶ 12.

And that:

> Such being the case, my colleagues and I in the Forest Service were at all times aware that unexpected delays in harvesting could have a substantially negative effect on the profitability of a timber sale and could increase the purchaser's per mbf sawmill costs. That is, it was understood that an ordered suspension or other sudden interruption of harvesting operations on one or more sales could very well necessitate a purchaser's reducing or halting sawmill activity, either of which would result in lost profits and increased costs to the purchaser. He and they were also very much aware of the fact that such negative impacts to a purchaser would be exacerbated if the suspension were a prolonged one, all sales that the contractor held were suspended, and/or at the same time the Forest Service timber sale program in the area were halted for any length of time.

Declaration ¶ 13.

Defendant sets forth a litany of specifics that Mr. Lewis did not know about Precision Pine, the contracts at issue and the suspension. Motion at 2-3. This, however, begs the question of Mr. Lewis' ability to testify as to his knowledge in the late 1980's and early 1990's about the kinds of damages that could be anticipated to be incurred by Forest Service timber sale contractors as a result of a unilateral suspension of the contract and his observation that this knowledge was shared by his colleagues in the Forest Service. Indeed, defendant does not allege that Mr. Lewis lacks knowledge about the kinds of damages that could be anticipated that a Forest Service timber sale contractor would experience if one or more of its timber sale contracts were suspended or his observation that this knowledge was common within the Forest Service.

For the reasons set forth herein, defendant's motion should be dismissed.

Respectfully submitted,

s/Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 28, 2005