**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-720C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS FOR LACK OF JURISDICTION</u>**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 28, 2005

# TABLE OF CONTENTS

**PAGE**


Table of Authorities ........................................................ ii

I. INTRODUCTION ........................................................ 1

II. STATEMENT OF FACTS ........................................................ 1

III. ARGUMENT ........................................................ 3

A. This Court has Jurisdiction over Precision Pine's Claim ........................................................ 3

1. Precision Pine has met the Prerequisites for Subject Matter Jurisdiction .... 3

2. This Court has Jurisdiction over Precision Pine's Increased Log Hauling Costs and Employee Claim Preparation Costs ........................................................ 4

a. The Costs Associated with Increased Log Hauling and Claim Preparation do not Present New "Claims" ........................................................ 6

b. The Costs Associated with Increased Log Hauling and Claim Preparation are based on the same set of Operative Facts Underlying the Claims Presented to the Contracting Officers ......... 8

3. Croman is Factually Inapposite to Precision Pine's Claim ........................ 11

IV. CONCLUSION ........................................................ 12

# TABLE OF AUTHORITIES

**CASES** **PAGE**

Cerberonics, Inc. v. United States,
13 Cl. Ct. 415 (1987) ....................5

Croman Corp. v. United States,
44 Fed. Cl. 796 (1999) ....................11, 12

E.C. Schleyer Pump Co., Inc.,
ASBCA No. 33900, 87-3 BCA ¶ 19,986 ....................5

J.F. Shea Co., Inc. v. United States,
4 Cl. Ct. 46 (1983) ....................5, 7, 9

Lloyd Kidder,
AGBCA Nos. 84-352-3, 84-353-3, 85-3 BCA ¶ 18,247 ....................5

Miller Elevator Co., Inc. v. United States,
30 Fed. Cl. 662 (1994) ....................5, 6, 7, 9, 10

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) ....................2, 3, 4

Santa Fe Eng'rs, Inc. v. United States,
818 F.2d 856 (Fed. Cir. 1987)....................6, 7

Spradlin Corp.,
ASBCA No. 23974, 81-2 BCA ¶ 15,423 ....................5

Tecom, Inc. v. United States,
732 F.2d 935 (Fed. Cir. 1984)....................4, 9, 10

**STATUTES AND REGULATIONS**

41 U.S.C. § 605(a) ....................3

41 U.S.C. § 605(c) ....................3

41 U.S.C. § 609(a) ....................3

41 U.S.C. § 609(a)(3)....................4

## I. INTRODUCTION

On April 4, 2005, defendant filed a Partial Motion to Dismiss for Lack of Jurisdiction ("Def.'s Mot.") in the above-captioned matter. In its motion, defendant asserts that this Court lacks jurisdiction over Precision Pine & Timber, Inc.'s ("Precision Pine") costs for increased log hauling and claim preparation because these costs constitute new claims that were not presented or certified to the contracting officers. Def.'s Mot. at 5. As explained more fully below, defendant's argument is without merit. Courts have repeatedly held that, after certification is complete, a contractor may increase the amount of its claim or produce additional data in support of increased damages provided the increase does not constitute a new claim. The costs for increased log hauling and claim preparation do not represent additional compensation for new claims, but for new matters inherent in the claims previously presented to and decided by the contracting officers. Indeed, these costs arise from the same operative facts as the improper suspension claims presented to and decided by the contracting officers in their final decisions. As such, there is no jurisdictional bar to considering Precision Pine's increased claim. Accordingly, Precision Pine respectfully requests that this Court deny the government's motion to dismiss.

## II. STATEMENT OF FACTS

Precision Pine submitted properly certified claim letters under the Contract Disputes Act ("CDA") seeking damages from the suspensions of 14 of its Forest Service timber sale contracts. See PX194 (Salt); PX 196 (Brookbank); PX 198 (Manaco); PX 200 (St. Joe); PX 202 (Jersey Horse); PX 204 (Hay); PX 206 (Kettle); PX 208 (O.D. Ridge); PX 210 (Brann); PX 212 (Saginaw-Kennedy); PX 214 (U-Bar); PX 216 (Monument); PX 218 (Mud); PX 220 (Hutch-

Boondock);[1] see also Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 51 (2001) (listing claim letters and dates submitted). All of the letters submitted to the contracting officers asserted, among other things, that the claim was based on the Forest Service's improper suspension of the timber sale contracts. See, e.g., PX 194. All of the claim letters also asserted that the suspensions were unauthorized and unreasonable. See id. at 23. Finally, all of the letters asserted that damages were incurred as a result of the Forest Service's wrongful suspension. Id.

In response to Precision Pine's claims, the contracting officer issued final decisions. See PX 195 (Salt); PX 197 (Brookbank); PX 199 (Manaco); PX 201 (St. Joe); PX 203 (Jersey Horse); PX 205 (Hay); PX 207 (Kettle); PX 209 (O.D. Ridge); PX 211 (Brann); PX 213 (Saginaw-Kennedy); PX 215 (U-Bar); PX 217 (Monument); PX 219 (Mud); PX 221 (Hutch-Boondock). All of the contracting officers' final decisions acknowledged that a basis of Precision Pine's claims were the "alleged damages suffered as a result of the Forest Service's improper suspension" of the 14 contracts. See, e.g., PX 213. However, because the operations on the sales were suspended to comply with a court-ordered injunction, the contracting officers found that Precision Pine's improper suspension claim did not have any merit. See, e.g., PX 205. With the exception of a few minor damages, the contracting officers thus denied Precision Pine's claims and entitlement to damages.[2]

[1] All of Plaintiff's Exhibits ("PX") cited herein were hand delivered to the Court in a CD-ROM format on April 20, 2005. See Letter from B. Bunting to A. Pusgley of 04/20/2005.

[2] The contracting officers' final decisions did not find any entitlement to damages arising from Precision Pine's claim associated with the suspension of the St. Joe and Hay contracts. See PX 201 (St. Joe); PX 205 (Hay). They did acknowledge entitlement to a small portion of damages under Precision Pine's claim associated with the suspension of the other contracts.

After the contracting officers issued their final decisions, Precision Pine appealed these decisions by filing a complaint in this Court alleging, among other things, that the wrongful, unauthorized and unreasonable suspension of the 14 contracts resulted in damages to Precision Pine. See, e.g., Compl. ¶¶ 59, 77, 91, 108, 127, 142, 157, 172, 188, 208, 223, 238, 253, 269, 284 and 297. On July 30, 2001, this Court found that the Forest Service was liable for breaching 11 of the 14 timber sale contracts at issue. Precision Pine, 50 Fed. Cl. at 73-74. During the course of this litigation, Precision Pine increased the amount of its damages for the improper suspensions by adding (1) increased log hauling costs in connection with the Hay timber sale and (2) certain claim preparation costs that Precision Pine incurred as a result of having to file claim letters to the contracting officers. See PX 180.

## III. ARGUMENT

### A. This Court has Jurisdiction over Precision Pine's Claim

#### 1. Precision Pine has met the Prerequisites for Subject Matter Jurisdiction

In order for a Court to have jurisdiction under the CDA, the claims at issue must first be certified and submitted in writing to the contracting officer pursuant to 41 U.S.C. §§ 605(a), 605(c). Once the claim has been submitted, the contracting officer must issue a final decision. Id. § 605(a). A contractor can later appeal the contracting officer's final decision by bringing an action directly on the claim in the United States Court of Federal Claims. Id. § 609(a). Precision Pine has met all of these jurisdictional prerequisites: It submitted its certified claims to the contracting officers for the 14 contracts at issue, the contracting officers issued final decisions on

Precision Pine's claims, and Precision Pine timely appealed these decisions by filing a complaint with this Court.[3]

Defendant appears to concede that Precision Pine has met these prerequisites for jurisdiction,[4] but half-heartedly asserts that this Court does not have jurisdiction with regard to Precision Pine's additional costs associated with log hauling and claim preparation because these damage amounts represent new "claims" which were not presented to the contracting officer. See Def.'s Mot. at 5-7. This argument misconstrues the jurisdictional requirements of the CDA.

2. This Court has Jurisdiction over Precision Pine's Increased Log Hauling Costs and Employee Claim Preparation Costs

The Courts have repeatedly held that, after certification is complete, a contractor may increase the amount of its claim or produce additional data in support of increased damages provided the increase does not constitute a new claim. See Tecom, Inc. v. United States, 732 F.2d 935, 937 (Fed. Cir. 1984) (rejecting government's jurisdictional argument and finding, after final decision had been issued, plaintiff could assert increased damages before ASBCA because relief did not change the basis of recovery and was merely a reevaluation of the original

[3]The claim letters appear at PX194, PX 196, PX 198, PX 200, PX 202, PX 204, PX 206, PX 208, PX 210, PX 212, PX 214, PX 216, PX 218, and PX 220; see also Precision Pine, 50 Fed. Cl. at 51 (2001). The contracting officers' final decisions appear at PX 195, PX 197, PX 199, PX 201, PX 203, PX 205, PX 207, PX 209, PX 211, PX 213, PX 215, PX 217, PX 219, and PX 221. Precision Pine filed a complaint in this Court on September 11, 1998, well within the twelve months from the date of receipt of the contracting officers' final decisions. See 41 U.S.C. 609(a)(3).

[4]See Def.'s Mot. at 2 (noting Precision Pine submitted 14 claim letters, the Forest Service issued final decisions on these claims, and that Precision Pine filed this action challenging the contracting officers' final decisions).

estimate); Miller Elevator Co., Inc. v. United States, 30 Fed. Cl. 662, 701 (1994) (rejecting government's jurisdictional argument and finding additional material and labor costs were properly before the court because these costs were for new matters inherent in the claims previously presented); J.F. Shea Co., Inc. v. United States, 4 Cl. Ct. 46, 54-55 (1983) (rejecting government's motion to dismiss for lack of jurisdiction where additional damages were added after the contracting officer's final decision was issued where the contractor submitted additional evidence of damages springing from the same factual claim).[5]

Whether the increase constitutes a new claim generally is determined by whether the increase is based on the same set of operative facts underlying the claim presented to the contracting officer. See J.F. Shea Co, 4 Cl. Ct. at 54-55; Cerberonics, Inc. v. United States, 13 Cl. Ct. 415, 417 (1987). In addition, courts will look at whether "the scheme of adjudication prescribed by the CDA is undermined by the contractor's claim on appeal – that is, by circumventing the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim." Cerberonics, 13 Cl. Ct. at 418.

---

[5]Various Boards of Contract Appeals have also allowed a contractor to change the amount of its claim or produce additional data in support of increased damages after certification is complete. See, e.g., E.C. Schleyer Pump Co., Inc., ASBCA No. 33900, 87-3 BCA ¶ 19,986 (allowing contractor to increase the amount of its claim to include delay costs even though these costs were not submitted to contracting officer for final decision); Lloyd Kidder, AGBCA Nos. 84-352-3, 84-353-3, 85-3 BCA ¶ 18,247 (allowing contractor to increase amount of its claim to include lost profits even though these damages were not included in claim letter because lost profits arose from the same operative facts as underlying claim); Spradlin Corp., ASBCA No. 23974, 81-2 BCA ¶ 15,423 at 76,430-31 (allowing a contractor to increase its damages after certification for "additional areas of alleged damages all of which arose from the complaints which formed the basis of the appellant's claims to the contracting officer").

a. The Costs Associated with Increased Log Hauling and Claim Preparation do not Present New "Claims"

As an initial matter, the government asserts that the costs associated with log hauling and claim preparation represent new "claims" that were not submitted to the contracting officer. See Def.'s Mot. at 5-8. With little or no discussion of the operative facts that gave rise to these costs, the government then proceeds to list what it believes are examples of Precision Pine's "claims":

> Precision Pine's claim letters certify numerous, distinct claims such as, for instance, (1) "value of logs/lost opportunity including milling profit chips," (2) "performance bond costs during the suspension," (3) "mill impact costs," (4) "attorney fees," (5) "idle equipment costs," (6) "cost of maintaining key employees," (7) "security," (8) "unabsorbed corporate G&A," (9) "unabsorbed interest cost," and (10) "unemployment insurance costs." E.g., DX23 (page ODR457). However, none contain a certified claim for employee claim preparation costs. See DX23, DX52, DX101, DX123, DX144, DX173, DX207, DX236, DX281, DX316, DX340, DX393, DX432, DX452. Nor does Precision Pine certify a claim for increased hauling costs in the claim letter addressing the Hay contract. See DX101. The Court, therefore, lacks jurisdiction to entertain such claims at trial.

Def.'s Mot. at 5-6. Defendant's characterization of these costs, including the log hauling and claim preparation costs, as "claims," with little or no discussion of the operative facts that gave rise to them, misconstrues the jurisdictional requirements of the CDA. The focal point of the Court's jurisdictional analysis is not on the sums recited in the claim, but rather the basis of the contractor's claim. Miller Elevator, 30 Fed. Cl. at 701.

This Court explained this important distinction in Miller Elevator. In that case, the government relied on Santa Fe Eng'rs, Inc. v. United States, 818 F.2d 856 (Fed. Cir. 1987) to argue that the costs associated with additional material and labor costs sought by the plaintiff represented new "claims" that were outside the jurisdiction of the court because they were not presented to or considered by the contracting officer in his final decision. The Court rejected the

government's jurisdictional argument, however, finding that the "plaintiff seeks only additional costs under the same claim(s)":

> The focal point of *Santa Fe* involves the claim and not the finiteness of the sums recited in the claim(s). In the instant case, the plaintiff seeks additional compensation not for new claims (e.g., acceleration, improper specifications, misrepresentation, etc.) but for new matters inherent in the claims previously presented (e.g., additional material, labor costs, etc.). The claims court has long recognized this distinction.

Miller Elevator, 30 Fed. Cl. at 701 (citations omitted). Accordingly, the court allowed the plaintiff's claim to include damages for additional material and labor, and rejected the government's argument that the court lacked jurisdiction.

Like in Miller Elevator, the government again cites to Santa Fe and argues that Precision Pine's costs associated with increased log hauling and claim preparation represent new "claims" that were not submitted to the contracting officer. See Def.'s Mot. at 5. Like the plaintiff in Miller Elevator, however, Precision Pine is not seeking additional compensation for new claims (e.g., damages based on misrepresentation), but for new matters (i.e., increased log hauling costs and claim preparation costs) inherent in the improper suspension claims previously presented to and decided by the contracting officers. In other words, the costs for increased log hauling and claim preparation merely represent "additional evidence pertaining to damages springing from that same factual claim." J.F. Shea Co., 4 Cl. Ct. at 55. Defendant's repeated and conclusory characterization of these costs as "claims" does not change that fact. Indeed, as the following analysis makes clear, the costs associated with log hauling and claim preparation arise from the same operative facts as the claims presented to the contracting officers.

### b. The Costs Associated with Increased Log Hauling and Claim Preparation are based on the same set of Operative Facts Underlying the Claims Presented to the Contracting Officers

The claim before the contracting officers and before this Court is and always has been based on the same operative facts: The Forest Service improperly suspended the timber sale contracts, all of the suspensions were unauthorized and unreasonable, and damages were incurred as a result of the Forest Service's improper suspensions. Indeed, all of the contracting officers' final decisions recognize that the basis of Precision Pine's claim was the Forest Service's improper suspension of the 14 timber sale contracts. See, e.g., PX 205 at 1. The contracting officers therefore received, considered and passed judgment on all of the operative facts relating to Precision Pine claim. Accordingly, Precision Pine has not circumvented the contracting officers' statutory role of receiving and passing judgment on its claim.

The additional damages of increased log hauling costs associated with the Hay timber sale are based on these same operative facts. That is, the increased log hauling costs associated with the Hay timber sale spring from Precision Pine's claim that the improper, unauthorized and unreasonable suspension of this sale damaged Precision Pine. Indeed, in its final decision on the Hay timber sale, the contracting officer concluded that the suspension was not improper or unreasonable because "[o]perations on this sale were interrupted in order to comply with a court-ordered injunction on all tree cutting issued by Judge Muecke on August 24, 1995, in Silver v. Thomas, Case No. CB 94-1610-PHX-CAM." PX 205. The contracting officer then concluded that "no portion of [Precision Pine's] claim is valid under the Contract Disputes Act (CDA)." Id. The contracting officer thus considered and rejected the basis of Precision Pine's improper suspension claim. Although Precision Pine did not include the increased log hauling costs with

its other damages like lost market opportunity, idle equipment and mill impact costs, the contracting officer expressly denied entitlement to any damages for the improper suspension. See id. ("[N]o portion of [Precision Pine's] claim is valid."). Id. Therefore, whether or not these costs were included in the claim letter is immaterial because the contracting officer considered all of the operative facts and denied the validity of Precision Pine's claim.

The government also asserts that Precision Pine's claim letter "expressly disclaims any claim for increased delivered log costs – a category that would include any claim for increased log hauling expenses." Def.'s Mot. at 7. Precision Pine did not disclaim these costs. In its claim letter of November 10, 1997 (PX 205), Precision Pine merely indicated in its summary of damages that the amount set forth as damages did not contain any increased delivered log costs. This does not, however, preclude Precision Pine from increasing the amount of its claim and producing additional data in support of increased damages, in this regard, after certification is complete. See Tecom, Inc., 732 F.2d at 937; Miller Elevator, 30 Fed. Cl. at 701. Indeed, this Court has acknowledged that "[i]t would be most disruptive of normal litigation procedure if any increase in the amount of a claim based upon matters developed in litigation before the court had to be submitted to the contracting officer before the court could continue to a final resolution on the claim." J.F. Shea Co., 4 Cl. Ct. at 54.

Based on the foregoing, the costs associated with increased log hauling are not new "claims" as they are based on these same operative facts that were presented, certified and decided by the contracting officers. Accordingly, this Court has jurisdiction over Precision Pine's costs associated with increased log hauling in connection with the Hay timber sale.

Similarly, the operative facts underlying the costs associated with claim preparation are also based on the unauthorized, unreasonable and otherwise improper suspensions of the 14 timber sale contracts. The government asserts, however, that claim preparation costs were not considered because the "operative fact alleged in the claim letters is the hiring of 'specialized counsel.'" Def.'s Mot. at 6. This argument is a red herring. The government overlooks the fact that all of the damages asserted in this case flow from the same operative facts, i.e., that the government improperly suspended Precision Pine's contracts and that all of the contracting officers reviewed and passed judgment on the merits of the Precision Pine's claim. Even if the claim preparation costs were included in the claim letters, the contracting officers would have denied these additional damages because they believed Precision Pine's improper suspension claim was not valid. Furthermore, the fact that Precision Pine hired outside counsel and did not mention that employees were also involved in preparing its claim letters does not imply or otherwise prove that Precision Pine did not incur these costs. To the contrary, Precision Pine employees expended significant time and resources preparing these claims. See PX 180 at C-0149. Finally, like the increased log hauling costs associated with the Hay timber sale, the mere fact that these costs were not raised until after the claim letters were submitted does not create a jurisdictional bar to this Court considering them now and at trial. See Tecom, Inc., 732 F.2d at 937; Miller Elevator, 30 Fed. Cl. at 701.

Based on the foregoing, the costs associated with claim preparation are not new "claims" as they are based on these same operative facts that were presented, certified and decided by the contracting officers. Accordingly, this Court has jurisdiction over Precision Pine's costs associated with claim preparation.

3. Croman is Factually Inapposite to Precision Pine's Claim

The government repeatedly cites to Croman Corp. v. United States, 44 Fed. Cl. 796 (1999) as a basis for finding that this Court does not have jurisdiction over Precision Pine's costs associated with increased log hauling and claim preparation. See Def.'s Mot. at 5-8. Croman is inapposite to this case. The plaintiff in Croman initially asserted in its claim letter that the Forest Service's unilateral suspension of Croman's timber sale contract on September 28, 1992, which immediately followed the listing of the marbled murrelet as a threatened species, caused it to suffer damages. Croman, 44 Fed. Cl. at 801. After it submitted this claim to the contracting officer, the plaintiff changed the factual basis of its claim in court and argued that it was not just the September 28, 1992 suspension that caused it damage, but rather that it was also damaged by the Forest Service's unilateral suspension of the contract in July of 1992. Id. The court found that the contracting officer did not have before her any claims of suspension or surrounding facts relating to the July 1992 suspension, and thus did not have notice of the plaintiff's new claim. The court therefore found it lacked jurisdiction to consider any claims based on the July 1992 suspension. Croman thus stands for the unremarkable proposition that a court will lack jurisdiction where a plaintiff's new claim is not based on the same operative facts as those submitted to the contracting officer.

Croman is distinguishable and factually inapposite to the case presented here. First, Precision Pine has not changed the factual basis for its claim since it submitted its claim letters to the contracting officers. Indeed, Precision Pine's claim is and always has been that the Forest Service improperly suspended the timber sale contracts, all of the suspensions were unauthorized and unreasonable, and damages were incurred as a result of the Forest Service's wrongful

suspensions. Second, and unlike Croman, the costs associated with increased log hauling and claim preparation are not new "claims" as they are based on these same operative facts that were presented, certified and decided by the contracting officers in their final decisions. As previously stated, the costs for increased log hauling and claim preparation merely represent additional evidence of damages springing from the same claim. Croman is therefore inapposite.

## IV. CONCLUSION

Based on the foregoing, Precision Pine respectfully requests the Court deny defendant's motion to dismiss for lack of jurisdiction and find that this Court has jurisdiction over Precision Pine's increased log hauling costs and employee claim preparation costs.

Respectfully submitted,

s/Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 28, 2005