**PLAINTIFF'S RESPONSES TO DEFENDANT'S OBJECTIONS**
**TO EXHIBITS ON PLAINTIFF'S FINAL EXHIBIT LIST**

***Precision Pine and Timber, Inc. v. United States*, No. 98-720 C**

| PX NO. | DESCRIPTION | DATE | DEFENDANT'S OBJECTIONS | PLAINTIFF'S RESPONSES |
|---|---|---|---|---|
| 1 | Appraisal Summary for the Hay timber sale with attached:<br>Data Sheet for Appraisal Summary (Form R3-2400-17);<br>Report of Timber Sale - Convertible and Nonconvertible Products | 01/10/1989 | Relevance – Precision Pine was not the high bidder on the Hay contract. | The fact that Precision Pine was not the high bidder for this timber sale contract does not affect the relevance of this document in any way. There is no question that prior to the suspension Precision Pine was the holder of the contract. There is also no question that as indicated in the document the Forest Service was indicating an anticipated mill overrun factor of 1.3390 for Ponderosa Pine which is considerably more in line with the 1.25 overrun factor that Precision Pine has indicated it would have achieved than the overrun factor proffered by defendant's putative expert Mr. Adkins. |
| 2 | Appraisal Summary for the Jersey Horse timber sale | 10/19/1993 | No objection. | NA |
| 3 | Appraisal Summary for the O.D. Ridge timber sale with attached:<br>Data Sheet for Appraisal Summary (Form R3-2400-17) | 10/18/1991 | Relevance – Precision Pine was not the high bidder on the O.D. Ridge contract. | The fact that Precision Pine was not the high bidder for this timber sale contract does not affect the relevance of this document in any way. There is no question that prior to the suspension Precision Pine was the holder of the contract. There is also no question that as indicated in the document the Forest Service was indicating an anticipated mill overrun factor of 1.2767 for Ponderosa Pine which is considerably more in line with the 1.25 overrun factor that Precision Pine has indicated it would have achieved than the overrun factor proffered by defendant's putative expert Mr. Adkins. |
| 4 | Appraisal Summary for the Brookbank timber sale with attached:<br>Converted Scribner Appraisal Summary | 03/06/1995 | No objection. | NA |
| 5 | Converted Scribner Appraisal Summary for the Kettle timber sale with attached:<br>Converted Scribner Report of Timber Sale - convertible and nonconvertible products | 06/16/1995 | Exhibit contains multiple documents. | It is unclear whether the Government has an objection or is simply noting that multiple documents were combined into a single exhibit, because the Government points to no rule that prohibits combining related and relevant documents into a single exhibit. Accordingly, Plaintiff cannot respond unless the Government can point to such a rule. |

| | | | | |
|---|---|---|---|---|
| 6 | Appraisal Summary for the U-Bar timber sale with attached:<br>T.E.A. Appraisal Bulletin No. 08 CY 92 2nd (Aug) | 08/24/1992 | No objection. | NA |
| 7 | Appraisal Summary for the Mud timber sale | 07/25/1994 | No objection. | NA |
| 8 | Appraisal Summary for the Monument timber sale | 08/22/1994 | No objection. | NA |
| 9 | Appraisal Summary for the Salt timber sale with attached:<br>Converted Scribner Appraisal Summary | 12/12/1993 | No objection. | NA |
| 10 | Appraisal Summary for the Manaco timber sale with attached:<br>Report of Timber Sale - Convertible and Nonconvertible Products;<br>Converted Scribner Appraisal Summary;<br>Converted Scribner Report of Timber Sale - Convertible and Nonconvertible Products | 12/04/1994 | Exhibit is comprised of multiple documents. | It is unclear whether the Government has an objection or is simply noting that multiple documents were combined into a single exhibit, because the Government points to no rule that prohibits combining related and relevant documents into a single exhibit. Accordingly, Plaintiff cannot respond unless the Government can point to such a rule. |
| 11 | Appraisal Summary for the Saginaw-Kennedy timber sale | 08/02/1994 | No objection. | NA |
| 12 | Appraisal Summary for the St. Joe timber sale with attached:<br>Data Sheet for Appraisal Summary (Form R3-2400-17) | 10/30/1991 | No objection. | NA |
| 13 | Appraisal Summary for the Brann timber sale with attached:<br>Converted Scribner Appraisal Summary | 07/28/1994 | No objection. | NA |
| 14 | Appraisal Summary for the Hutch-Boondock timber sale with attached:<br>Converted Scribner Appraisal Summary | 05/19/1994 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 15 | Appraisal Summary for the Outlaw timber sale | 09/25/1990 | Relevance – the Outlaw timber sale is not at issue in this action. | This document is relevant because it demonstrates a belief by the Forest Service as to the achievability of a mill overrun factor of 1.3293 on Ponderosa Pine sawlogs larger than the sawlogs on the breached sales. |
| 16 | Pre-Sale Report and Appraisal Summary for the Barber timber sale | 08/20/1993 | Relevance – the Barber timber sale is not at issue in this action. | This document is relevant because it demonstrates a belief by the Forest Service as to the achievability of a mill overrun factor of 1.2772 on Ponderosa Pine sawlogs larger than the sawlogs on the breached sales. |
| 17 | Appraisal Summary for the Campbell timber sale | 08/30/1993 | Relevance – the Campbell timber sale is not at issue in this action. | This document is relevant because it demonstrates a belief by the Forest Service as to the achievability of a mill overrun factor of 1.3138 on Ponderosa Pine sawlogs larger than the sawlogs on the breached sales. |
| 18 | Winslow Sawmill Production Reports:<br>yearly reports: 1/94-12/94, 4/93-3/94, 4/94-3/95, 4/95-3/96, 4/96-3/97<br>quarterly report: Apr, May, June 95<br>3/94, 4/94, 5/94, 6/94, 7/94, 8/94, 9/94, 10/94, 11/94 12/94<br>1/95, 2/95, 3/95, 4/95, 5/95, 6/95, 7/95, 8/95, 8/95 (fir cut), 9/95, 10/95 11/95, 12/95<br>1/96, 2/96, 3/96, 4/96, 5/96, 6/96, 7/96, 8/96, 9/96, 10/96, 11/96, 12/96<br>1/97, 2/97, 3/97, 4/97, 5/97, 6/97, 7/97, 8/97 | | No objection. However, monthly production reports from 9/97 through the mill's closure in 9/98 are omitted. | NA |
| 19 | Heber Sawmill Production Reports:<br>yearly reports: 4/95-3/96, 4/98-3/99<br>1/94, 2/94, 3/94, 4/94, 6/94, 7/94, 8/94, 9/94, 10/94, 11/94, 12/94<br>1/95, 2/95, 4/95, 5/95, 6/95, 7/95, 8/95, 9/95, 11/95, 12/95<br>1/96, 2/96, 3/96, 4/96, 5/96, 6/96<br>10/97, 11/97, 12/97<br>1/98, 2/98, 3/98, 4/98, 5/98, 6/98, 7/98, 8/98, 9/98, 10/98, 11/98, 12/98<br>1/99, 6/99, 8/99, 9/99, 10/99, 11/99, 12/99<br>1/00 | | Heber sawmill production records are incomplete. Monthly production reports for 3/95, 10/95, 2/99-5/99 and 7/99 are omitted. Monthly production reports appear to come from two sources, as reports from 10/97 to 12/98 have written entries, whereas all other monthly reports are typed. Monthly reports for 10/97, 3/98, 7/98, 8/98 and 12/19 provide no data. The year for | It is unclear whether the Government has an objection as to admissibility, or is arguing the weight and sufficiency of the documents. Accordingly, Plaintiff has difficulty responding. However, if the Government is challenging the foundation of the exhibits, Plaintiff responds that the identity and authenticity of the production reports, including any handwritten corrections or notations, can be established by the testimony of Precision Pine employees at trial.<br><br>As for Defendant's specific observations, Plaintiff responds as follows:<br><br>Some of the monthly production reports that are missing or blank indicate that the mill did not operate at the time, and thus no report has made or no data was recorded.<br><br>As for the fact that some reports are typed and others handwritten, that fact does |

| | | | | |
|---|---|---|---|---|
| | | | monthly reports ostensibly for 7/97, 8/94, 10/94 and 11/94 has been altered by hand. Exhibit supposedly contains, but is missing the 4/98-3/99 yearly reports and monthly reports from 1/94 to 4/94. | not affect admissibility, because proper foundation can be laid for both types. Apparently, Precision simply did not have or use computer systems at certain times.<br><br>As for the 4/98-3/99 yearly report, it is included as the second page of the exhibit. The 1/94 monthly report is the third page — the year is noted after the handwritten line beginning "Week 1." The 4/94 monthly report is the eighth page of the exhibit. It is unclear how the government overlooked these reports. However, Plaintiff intends to provide a copy of all of its exhibits to the Government in addition to the copies it provided at the early meeting of counsel. |
| 20 | Eagar Sawmill Production Reports:<br>yearly reports: 4/95-3/96<br>1/94, 2/94, 7/94, 8/94, 9/94, 10/94, 11/94 12/94<br>1/95, 2/95, 3/95, 4/95, 5/95, 6/95, 7/95, 8/95, 9/95, 10/95, 11/95, 12/95<br>2/97, 3/97, 4/97, 5/97, 6/97, 7/97 | | Eagar sawmill production records are incomplete. Monthly production reports for 3/94-6/94, 1/96-1/97 and after 7/97 are omitted. Monthly production reports appear to come from two sources, as reports for 1/94 and 2/94 have handwritten entries, whereas all other monthly reports are typed. The monthly reports are typed. The monthly production report ostensibly for 2/95 has an altered date of unknown origin. | It is unclear whether the Government has an objection as to admissibility, or is arguing the weight and sufficiency of the documents. Accordingly, Plaintiff has difficulty responding. However, if the Government is challenging the foundation of the exhibits, Plaintiff responds that the identity and authenticity of the production reports, including any handwritten correction or notations, can be established by the testimony of Precision Pine employees at trial.<br><br>As for Defendant's specific observations, Plaintiff responds as follows:<br><br>Some of the monthly production reports that are missing or blank indicate that the mill did not operate at the time, and thus no report has made or no data was recorded.<br><br>As for the fact that some reports are typed and others handwritten, that fact does not affect admissibility, because proper foundation can be laid for both types. Apparently, Precision simply did not have or use computer systems at certain times. |
| 21 | Purchaser's Certification of Timber Domestically Processed and Exported for CY 1992 (Saginaw-Kennedy) | 07/13/1993 | No objection. | NA |
| 22 | Purchaser's Certification of Timber Domestically Processed and Exported (Contract #000642) | 05/15/198? | Document is illegible. | The document is offered for the proposition that the Forest Service required Precision to complete and file this form, and that Precision did so. The document is sufficiently legible for that purpose. Alternatively, any foundational deficiencies presented by the legibility of the document can be remedied by direct testimony at trial. |

| | | | | |
|---|---|---|---|---|
| 23 | Purchaser's Certification of Timber Domestically Processed and Exported (Contract #000790) | 12/??/?? | Document date is cut off. | The document is offered for the proposition that the Forest Service required Precision to complete and file this form, and that Precision did so. The document is sufficiently legible for that purpose. Alternatively, any foundational deficiencies presented by the legibility of the document can be remedied by direct testimony at trial. |
| 24 | Purchaser's Certification of Timber Domestically Processed and Exported for CY 1989 (Horseshoe Salvage) | 11/07/1990 | No objection. | NA |
| 25 | Purchaser's Certification of Timber Domestically Processed and Exported for CY 1992 (Merritt Blowdown) | 07/09/1993 | Document contains handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 26 | Letter from Leaverton to Precision Pine re: Forest Service needs "Certification of Disposition of Timber" before Contract #001228 (Hidden) can be closed; also stating cash balance remaining on bond for sale. | 01/03/1995 | Relevance: the Hidden contract is not at issue in this action. | This document is relevant because it demonstrates the Forest Service's interest in, at least as early as 1995, and knowledge of, where timber removed pursuant to its timber sales contract was being manufactured into lumber. Based on the Forest Service's interest and knowledge as to whether bidders like Precision Pine were manufacturers of timber into lumber, the Forest Service simply cannot credibly assert that the impact of a long term suspension of all of Precision Pine's Forest Service timber sale contracts on its sawmill operations was not foreseeable. |
| 27 | Letter from Porter to Leaverton re: transferring balance, with attached:<br>Purchaser's Certification of Timber from National Forest Sale for Contract #001228. | undated | Relevance: the Hidden contract is not at issue in this action; second page appears to be a separate document. | Precision Pine's records indicate that both pages of this exhibit were sent to the Forest Service, in the person of Mr. Leaverton, at the same time. Page two of the document, a January 1, 1994 certification of where Precision Pine processed timber from the Hidden timber sale, is relevant to show that contrary to defendant's arguments, the Forest Service had both knowledge and substantial interest in what its commercial timber sales customers did with the timber harvested pursuant to timber sale contracts. |
| 28 | Precision Pine Production & Sales Report | 9/94-2/95 | No objection. | NA |
| 29 | Precision Pine Production & Sales Report | 01/1995 | Handwritten notes of unknown origin; otherwise no objection. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 30 | Precision Pine Production & Sales Report | 02/1995 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 31 | Portions of Kaibab Forest Plan: cover, pp. 3-5, 16, 20-23, 240 | | Document is incomplete. | It is unclear whether the Government has an objection or is simply noting that only the relevant portions of the document were included as an exhibit. Under the Federal Rules of Evidence, there is nothing objectionable to introducing only the relevant portions of a document, and the Government does not point to any rule providing such an objection. Accordingly, Plaintiff has some difficulty responding.<br><br>However, if the Government is alluding to the "completeness doctrine" enshrined in FRE 106, Plaintiff would respond simply by noting that FRE 106 does not require the use of all or none of the document. United States v. Ricks, 882 F.2d 885, 893 (4th Cir. 1989). Indeed, introducing the entirety of a voluminous document that contains only a few pages of probative evidence might run afoul of FRE 402 as irrelevant and/or 403 as unnecessarily cumulative. FRE 106 simply allows an opponent to have other portions of a document "which ought in fairness to be considered contemporaneously" with the portion that the proponent is introducing, be introduced at the same time.<br><br>In this case, Plaintiff is simply introducing the relevant portions of the document, and the Government has not identified any portions of the document which, in the Government's view, "ought in fairness to be considered contemporaneously with" Plaintiff's exhibit. Accordingly, there is no basis for the Court to consider an objection, because the Government has not asserted that any omitted pages must be admitted in Plaintiff's exhibits under the completeness doctrine.<br><br>Also, since the complete document is in the Government's possession, the Government can present any additional pages from the document as an exhibit during its case-in-chief to further define, clarify, or place in context the evidence in the pages Plaintiff is offering, and Government has not demonstrated why such a remedy would be inadequate. See United States v. Spearman, 186 F.3d 743, 55 (6th Cir. 1999) (Declining to require proponent to include entirety of videotape during its case-in-chief, because opponent could simply play the other portions of the tape during its case); Wright & Graham, 21 Federal Practice and Procedure, § 5077 (2004). |
| 32 | Portions of Apache-Sitgreaves Forest Plans: cover, pp: 11-12, 283 | | Document is incomplete. | |
| 33 | Portions of Coconino Forest Plan: cover, pp: 7, 17-18, 21 (as amended 12/87), 28-32, 263 | | Document is incomplete. | |
| 34 | Portions of Wiggins Analysis Area Environmental Assessment: pages: i, 15 | 02/03/1998 | Document is incomplete. | |
| 35 | SBA Form 723 (1-76): Small Business Certification for Duran Multiproduct timber sale | 03/15/1993 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 36 | Letter from Jill Leonard, District Ranger, North Kaibab District to Precision Pine & Timber, Attn: John Smith; re: planned sales in the district for CY's '97 - '00 | 03/07/1997 | Relevance. | This document is relevant for several independent reasons. First, it demonstrates the Forest Service's knowledge of what was actually happening in Arizona in the mid '90's, i.e., that as timber sale offerings declined, several large mills had closed and in their place mills (owned by Precision Pine) with a reduced capacity had moved in. Second, it shows the continuing desire of the Forest Service to be responsive to the needs of the sawmills who were its commercial timber sale customers thus once again dispelling the myth that defendant seeks to perpetuate that the Forest Service had no knowledge or interest in what its commercial timber sales customers did with the timber harvested. Third, it is evidence that in the wake of the suspension the Forest Service was intent on restarting its commercial timber sale program. |
| 37 | Forest Service Resource Bulletin Int-55, "Arizona's Timber Production Mill Residue, 1984" | 07/1988 | No objection. | NA |
| 38 | Appraisal Report for Manaco Timber Sale | 12/09/1994 | Document is incomplete. | See response at PXs 31-34, supra. |
| 39 | Appraisal Report for Salt Timber Sale | 01/21/1994 | Document is incomplete and contains highlighting of an unknown origin. | With respect to the government's assertion that the document is incomplete, Plaintiff relies on its response at PXs 31-34, supra.<br><br>With respect to the highlighting, it was added prior to litigation by employees or agents of Plaintiff and accordingly cannot be removed now for trial. Plaintiff does not intend to offer any arguments based on the fact that certain portions were highlighted or based on the highlighting itself. Accordingly, there is no basis for objecting to the fact the document contains highlighting, and Plaintiff would not object to the Court simply disregarding the highlighting. Alternatively, even if Plaintiff were attempting to make some substantive point from the highlighting, any foundational issues presented by the highlighting can be established at trial. |
| 40 | Forest Service Form 2400-46 (12/86), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '92, Tonto National Forest | undated | Foundation: document is unsigned. | The Foundation for the document can be established by direct testimony of Precision Pine's employees at trial. |

| | | | | |
|---|---|---|---|---|
| 41 | Forest Service Form 2400-46 (12/86), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '92, Apache-Sitgreaves National Forest | undated | Foundation: document is unsigned and undated. | The Foundation for the document can be established by direct testimony of Precision Pine's employees at trial. |
| 42 | Forest Service Form 2400-46 (12/86), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '92, Coconino National Forest | undated | Foundation: document is unsigned and undated. | The Foundation for the document can be established by direct testimony of Precision Pine's employees at trial. |
| 43 | Forest Service Form 2400-46 (12/86), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '92, Kaibab National Forest | undated | Foundation: document is unsigned. | The Foundation for the document can be established by direct testimony of Precision Pine's employees at trial. |
| 44 | Blank Forest Service Form 2400-14 (9/91), "Bid for Advertised Timber Sale" with attached "Instructions to Bidders" | | Foundation; relevance. | This is the Forest Service standard bid form for advertised timber effective 3/31/94, and is self-authenticating under FRE 902(5) and admissible under RCFC 44(a) as an official publication of a government entity. Alternatively, the identity and authenticity of the document can be established at trial through a variety of witnesses. It is relevant because it is the from pursuant to which Precision Pine bid on several of the timber sale contracts here in issue and because it requires each bidder to indicate whether or not it is a manufacturer. Based on the Forest Service's interest and knowledge as to whether bidders like Precision Pine were manufacturers of timber into lumber, the Forest Service simply cannot credibly assert that the impact of a long-term suspension of all of Precision Pine's Forest Service timber sale contracts on its sawmill operations was not foreseeable. |

| | | | | |
|---|---|---|---|---|
| 45 | Blank Forest Service Form 2400-43 (2/91), "Certification of Nonsubstitution of Timber Purchased and Disposition of Domestically Processed and Exported Timber." | | Foundation; relevance. | This is a portion of the Forest Service standard bid package for advertised timber effective 02/91, and is self-authenticating under FRE 902(5) and admissible under RCFC 44(a) as an official publication of a government entity. Alternatively, the identity and authenticity of the document can be established at trial through a variety of witnesses. It is relevant because it is the form pursuant to which Precision Pine bid on several of the timber sale contracts here at issue and because it requires each bidder to, among other things, furnish the name and address of the plant(s) to which the timber on the sale will be delivered and to furnish, prior to hauling the timber to a different location, similar data about that location. Based on the Forest Service's interest and knowledge as to the plant(s) where companies like Precision Pine hauled the timber from Forest Service timber sale contracts, the Forest Service simply cannot credibly assert that the impact of a long-term suspension of all of Precision Pine's Forest Service timber sale contracts on its sawmill operations was not foreseeable. |
| 46 | Blank Forest Service Form 2400-44 (2/91), "Export of Private Timber" | | Foundation; relevance. | This is a Forest Service standard form effective February 1994 on which its purchasers must report the export of any private timber in the geographical area surrounding each of the contractor's plants. It is self-authenticating under FRE 902(5) and admissible under RCFC 44(a) as an official publication of a government entity. Alternatively, the identity and authenticity of the document can be established at trial through a variety of witnesses. It is relevant because it is a form that demonstrates the level of Forest Service's interest not only in the timber that was processed through the contractor's sawmill but also what timber owned by the contractor could have been processed through that mill. Based on the Forest Service's interest and knowledge as to where companies like Precision Pine manufactured all timber harvested tributary to a sawmill, the Forest Service simply cannot credibly assert that the impact of a long term suspension of all of Precision Pine's Forest Service timber sale contracts on its sawmill operations was not foreseeable. |

| | | | | |
|---|---|---|---|---|
| 47 | Blank Forest Service Form 2400-45 (2/91), "Purchase of National Forest System Timber" | | Foundation; relevance. | This is a Forest Service standard form effective February 1994 on which its contractors were required to annually report the plant(s) to which it delivered the timber from a sale. It is self-authenticating under FRE 902(5) and admissible under RCFC 44(a) as an official publication of a government entity. Alternatively, the identity and authenticity of the document can be established at trial through a variety of witnesses. It is relevant because it demonstrates the level of Forest Service interest in where timber removed pursuant to its timber sales contracts was being manufactured into lumber. Based on the Forest Service's interest and knowledge as to the plants where timber companies like Precision Pine hauled each species of timber from each sale, the Forest Service simply cannot credibly assert that the impact of a long term suspension of all of Precision Pine's Forest Service timber sale contracts on its sawmill operations was not foreseeable. |
| 48 | Blank Forest Service Form 2400-46 (2/91), "Purchaser Certification of Timber Domestically Processed and Exported" | | Foundation; relevance. | This is a Forest Service standard form effective February 1994 on which its contractors were required to annually report the plant(s) where timber from timber sale contracts on a given National Forest were processed into lumber. It is self-authenticating under FRE 902(5) and admissible under RCFC 44(a) as an official publication of a government entity. Alternatively, the identity and authenticity of the document can be established at trial through a variety of witnesses. It is relevant because it further demonstrates the level of Forest Service interest in where timber removed pursuant to its timber sale contract was being manufactured into lumber. Based on the Forest Service's interest and knowledge as to timber where companies like Precision Pine hauled timber removed from its timber sales contracts, the Forest Service simply cannot credibly assert that the impact of a long term suspension of all of Precision Pine's Forest Service timber sale contracts on its sawmill operations was not foreseeable. |

| | | | | |
|---|---|---|---|---|
| 49 | Declaration of Milo Larson in Forest Guardian v. Dombeck | 05/28/1997 | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | This document, as an exhibit in a law suit, is self authenticating pursuant to FRE 901 (b) (7) in that it was authorized by law to be recorded or filed and in fact was filed in the referenced court proceedings. Contrary to defendant's allegation it is not hearsay. Rather it constitutes the admission of a party-opponent that:<br><br>1. under the terms of the timber sale contract the Forest Service is liable for interest on deposits;<br><br>2. When many timber sale contracts in a large geographic area are suspended for a long period of time, there is the potential to destroy businesses that cannot operate any of their contracts and consequently their manufacturing plants; and<br><br>3. In such circumstances, the government could face broad damages for businesses being unable to operate enough of their contracts to avoid loss from mill closings—something which could result in millions of dollars in damages being paid by the government.<br><br>See FRE 801.<br><br>Even if it is hearsay, it is also admissible as an exception to the hearsay rule under FRE 807 because of strong guarantees of trustworthiness that exist due to the fact that it is a statement from a government official made under penalties of perjury. (Indeed, we believe that even defendant would have to agree that a statement made by a Forest Service official under penalties of perjury in a federal court proceeding should have an extremely high guarantee of trustworthiness.) Also, the statement is offered as evidence of a material fact, it is more probative than any other evidence for the point intended, and the interests of justice would best be served by its admission. |
| 50 | Affidavit of Alan Lucas in Greater Gila Biodiversity v. USFS | 02/14/1995 | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | This document, as an exhibit in a law suit, is self authenticating pursuant to FRE 901 (b)(7) in that it was authorized by law to be recorded or filed and in fact was filed in the referenced court proceedings. Contrary to defendant's allegation, it is not hearsay. Rather it constitutes the admission of a party-opponent that in event of a unilateral suspension of operations on a sale that pursuant to C6.01 the Forest Service would be responsible for:<br><br>1. expenses involved in maintaining cash deposits; |

| | | | | |
|---|---|---|---|---|
| | | | | 2. legal counsel expenses; and<br><br>3. expenses associated with the interruption or shutdown and start up of the purchaser's sawmill.<br><br>See FRE 801.<br><br>Even if it is hearsay, it is also admissible as an exception to the hearsay rule under FRE 807 because of strong guarantees of trustworthiness that exist due to the fact that it is a statement from a government official made under penalties of perjury, (Indeed, we believe that even defendant would have to agree that a statement made by a Forest Service official under penalties of perjury in a federal court proceeding should have an extremely high guarantee of trustworthiness.), it is offered as evidence of a material fact, it is more probative than any other evidence for the point intended, and the interests of justice would best be served by its admission. |
| 51 | Expert Report of Martin L. Devere | 11/14/2003 | Addressed in a separately filed motion *in limine.* | NA |
| 52 | Resume of Martin L. Devere | 11/14/2003 | Hearsay. | Pursuant to RCFC 26 (a) (2) this document is a part of Mr. Devere's report. As such it is admissible to the same extent as the report. |
| 53 | Expert Report of James L. Matson | 11/16/2003 | Hearsay. | This "objection" is both hypocritical and so frivolous so as to warrant sanctions pursuant to Rule 11. The document is an expert report which the plaintiff was required by RCFC 26(2)(B) to prepare with respect to a witness employed to give expert testimony. In this respect it is identical to no less than **six** reports prepared by putative experts employed by the defendant which the defendant seeks to put in evidence, i.e. DX numbers 775, 776, 777, 778, 796, 797. It is also admissible under FRE 807 in that not only is it more probative on the point of the financial impact of the permanent loss of an outlet for pulpwood and chips to timber companies operating in Arizona than mere testimony but the interests of justice and judicial economy will be best served by the introduction of the document into evidence rather than by plaintiff having to essentially recreate the document through lengthy testimony from Mr. Matson. |
| 54 | Resume of James L. Matson | 11/16/2003 | Hearsay. | Pursuant to RCFC 26(a)(2) this document is a part of Mr. Matson's report. As such it is admissible to the same extent as the report. |

| | | | | |
|---|---|---|---|---|
| 55 | Resume of Ronald D. Lewis | undated | Relevance; hearsay. | This document has sufficient guarantees of trustworthiness, having been attached to a declaration made earlier in these proceedings under the penalties of perjury to be admitted under FRE 807. It is relevant to show the positions that he held within the Forest Service in particular his position in the Forest Service headquarters in the 5 ½ years leading up to the suspension here in issue. |
| 56 | Curriculum Vitae of Robert Ness | 11/14/2003 | Hearsay. | Pursuant to RCFC 26 (a)(2) this document is a part of Mr. Ness' report. As such it is admissible to the same extent as the report. |
| 57 | Summary Comparison of Precision Pine's Prices v. Random Length's Prices: Moulding & Better | | Authenticity; foundation; underlying documents are inadmissible (hearsay); exhibit does not accurately represent underlying documents; exhibit not based upon voluminous documents (2 documents); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 58 | Summary Comparison of Precision Pine's Prices v. Random Length's Prices: 5/4 #2 Shop | | Authenticity; foundation; underlying documents are inadmissible (hearsay); exhibit does not accurately represent underlying documents; exhibit not based upon voluminous documents (2 documents); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |

| | | | | |
|---|---|---|---|---|
| 59 | Summary Comparison of Precision Pine's Prices v. Random Length's Prices: 5/4 #3 Shop | | Authenticity; foundation; underlying documents are inadmissible (hearsay); exhibit does not accurately represent underlying documents; exhibit not based upon voluminous documents (2 documents); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 60 | Summary Comparison of Precision Pine's Prices v. Random Length's Prices: Paragraph 99 | | Authenticity; foundation; underlying documents are inadmissible (hearsay); exhibit does not accurately or fairly represent underlying documents; exhibit not based upon voluminous documents (2 documents); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 61 | Summary Comparison of Bids on 14 suspended sales | | Authenticity; foundation; exhibit includes comments and footnotes that are not properly part of a summary; exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 62 | Western Wood Products Assoc. (WWPA) Inland Index Logs | 01/1995 | Hearsay. | Pursuant to FRE 803 (17) commercial publications like this that contain market quotations, compilations, etc., and that are generally used and relied on by persons in particular occupations, are not excluded by the hearsay rule. |
| 63 | Profit Projection Sheets for Bunger Timber Sale (2 pages) | 12/12/1990 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 64 | Profit Projection Sheets for Holder Timber Sale (3 pages) | 06/28/1988 | Document contains handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 65 | Profit Projection Sheets for Ridge Timber Sale (4 pages) | 09/26/1989 | Document contains illegible handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 66 | Profit Projection Sheets for Limestone Timber Sale (4 pages) | 05/23/1989 | Document contains handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 67 | Profit Projection Sheets for Limestone Timber Sale (2 pages) | 09/12/1991 | No objection. | NA |
| 68 | Profit Projection Sheets for Cap Mamie Timber Sale (2 pages) | 03/22/1990 | No objection. | NA |
| 69 | Profit Projection Sheet for Hidden Timber Sale (1 page) | 12/27/1990 | No objection. | NA |
| 70 | Profit Projection Sheets for Hidden Timber Sale (2 pages) | 02/26/1990 | Document contains handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 71 | Profit Projection Sheets for Red Lake Timber Sale (3 pages) | 11/30/1989 | Document contains handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 72 | Profit Projection Sheets for Aspen Lake Timber Sale (3 pages) | 09/25/1991 | No objection. | NA |
| 73 | Profit Projection Sheets for Barber Timber Sale (2 pages) | 09/27/1993 | Document contains handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 74 | Profit Projection Sheet for Kettle Timber Sale (1 page) | 03/23/1997 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 75 | Profit Projection Sheets for McNeil Timber Sale (3 pages) | 03/07/1990 | No objection. | NA |
| 76 | Profit Projection Sheet for McNeil Timber Sale (1 page) | 03/14/1990 | No objection. | NA |
| 77 | Profit Projection Sheet for Gamma Timber Sale (1 page) | 06/29/1993 | No objection. | NA |
| 78 | Profit Projection Sheets for Kendrick-Saddle Timber Sale (2 pages) | 11/24/1997 | Document contains handwriting of unknown origin. | The handwriting on the document is limited to a circle drawn around the header of one page of the document. Precision does not intend to make any arguments or ask the Court to draw any conclusions based on the handwritten circle. Precision would not object to the Court simply disregarding the handwritten circle. |
| 79 | Profit Projection Sheet for All Fir under contract (1 page) | 09/22/1994 | No objection. | NA |
| 80 | Profit Projection Sheet for Saginaw-Kennedy Timber Sale, Smallwood (1 page) | 09/17/1994 | No objection. | NA |
| 81 | Profit Projection Sheets for Canyon Timber Sale (3 pages) | 01/18/1989 | Document contains handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 82 | Profit Projection Sheets for St. Joe Timber Sale (2 pages) | 12/11/1991 | Document contains handwriting of unknown origin. | The authorship and other foundational elements of the handwritten portions of the document can be established at trial through the direct testimony of Precision Pine employees. |
| 83 | Profit Projection Sheet for Hutch-Boondock Timber Sale (1 page) | 10/31/1995 | No objection. | NA |
| 84 | Profit Projection Sheets for Manaco Timber Sale (2 pages) | 01/11/1995 | No objection. | NA |
| 85 | Profit Projection Sheet for Saginaw-Kennedy Timber Sale (1 page) | 09/17/1994 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 86 | Letter from Clifford Dils to Lorin Porter, re: suspension of Manaco | 08/14/1995 | Document is incomplete and unsigned. | This is a two page document, and the second page contains the signature of the author. The copy of the letter included in Plaintiff's trial exhibits, as well as the copy presented and produced to the Government, contained the second page. Moreover, Plaintiff intends to provide the Defendant with a copy of its exhibits for trial, which will include the second page of the Exhibit. |
| 87 | Letter from John Smith to Patty Bennett, re: Jersey Horse Operating Schedule | 08/23/1995 | No objection. | NA |
| 88 | Letter from Keith Pajkos to John Smith, re: Park Multi-product sale, Precision out of compliance therewith | 07/17/1996 | No objection. | NA |
| 89 | Letter from John Smith to Keith Pajkos, re: requesting one-year extension on Park timber sale | 08/29/1996 | No objection. | NA |
| 90 | Letter from Keith Pajkos to John Smith, re: extension for Park timber sale will be granted upon certain conditions | 09/04/1996 | No objection. | NA |
| 91 | Letter from John Smith to Keith Pajkos, re: can State estimate cost of contract. | 09/26/1996 | No objection. | NA |
| 92 | Letter from Keith Pajkos to John Smith, re: cost of contract | 10/03/1996 | No objection. | NA |
| 93 | Fragment of Letter from John Smith to Keith Pajkos, re: reasons Precision would want to complete sale. | 10/07/1996 | Foundation; relevance. | This document is relevant because it is a contemporaneous indication that Precision Pine needed timber during the suspension and that it in fact wanted to complete the Park timber sale contract. The requisite foundation can be established at trial by Precision Pine employees. |
| 94 | Letter from Keith Pajkos to John Smith, re: reduced costs of contract | 10/09/1996 | No objection. | NA |
| 95 | Letter from John Smith to Keith Pajkos, re: accepting terms of State's proposal | 10/10/1996 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 96 | Memo from John Smith to Lon Porter, re: State agreed to lesser payment | 10/11/1996 | No objection. | NA |
| 97 | Letter from John Smith to Keith Pajkos, re: payment, with photocopy of check | 10/17/1996 | No objection. | NA |
| 98 | Letter from Keith Pajkos to John Smith, re: lesser payment due; contains handwritten memo from "J" re: check in the mail. | 10/17/1996 | No objection. | NA |
| 99 | Letter from Lewis Tenney to Milo Larson, re: Forest Service's proposed settlement with Enviro plaintiffs is not economically feasible for timber companies | 09/27/1995 | Hearsay. | This document is not hearsay; rather it is evidence that early in the suspension period Precision Pine offered to cancel or modify certain of its existing sales in exchange for the lifting of the suspension on its other sales. The document, as an offer to cancel or modify several of Precision Pine's existing contracts, is also admissible under FRE 803(6) as business record. |
| 100 | Stone Forest Products Corp computer-generated settlement statements for Tri-Star delivery of pulpwood to Snowflake for weeks ending: 9/17, 9/24, 10/01, 10/08, 10/15, 10/26, 11/03, 11/19, 11/26 in 1995. | various | Foundation; hearsay; relevance. Exhibit is comprised of multiple documents. To the extent this document was generated directly from computer records, it was not produced to the United States in discovery and should be excluded. E.g., RCFC 37. | This document is admissible pursuant to FRE 803(6). The records in question were compiled in the normal course of Stone Forest Product's business to record pulpwood shipments received at its plant in Snowflake, Arizona and transmitted to Tri-Star Logging. In the normal course of its business, the information thereon was then adopted by Tri-Star and incorporated into its business records as the volumes which it sold to Stone and on which it expected payment. Indeed, modern decisions suggest that common commercial records such as these can be admitted to prove that a company bought or sold goods. See Christopher B. Mueller and Laird C. Kirkpatrick, 4 Federal Evidence § 449 (2d ed.)(2004). See United States v. Flom, 558 F2d 1179, 1182 (5th Cir. 1997) (invoices prepared and sent by one company and held by another were adequately authenticated by testimony of official of the latter company without testimony by anyone from preparing company; where circumstances demonstrate trustworthiness, testimony by one who kept record or supervised preparation is unnecessary). These documents can easily be authenticated by the president of Tri-Star Logging at trial. |

| | | | | |
|---|---|---|---|---|
| 101 | Handwritten "Logger Pay" memos for Tri-Star hauling pulpwood to Stone from various sales dated in 1995: 8/2 (Dutch Joe), 8/17 (Merritt), 8/17 (Dutch Joe), 9/7 (Brookbank), 9/7 (Merritt), 9/7 (Dutch Joe), 9/21 (Brookbank) | various | Exhibit is comprised of multiple documents. With the exception of documents relating to the Brookbank contract, the exhibit is irrelevant. | These logger pay records document the fact that, in the time just prior to the suspension, Tri-Star Logging was hauling pulpwood from timber sales owned by Precision Pine to Stone. |
| 102 | Harvest projection for the volume remaining as of August 25, 1995 on the 11 Forest Service sales that were breached and summary of volume of sawlogs by payment unit on specified sales | | Authenticity; foundation; underlying documents are inadmissible (hearsay); exhibit presents argument and inferences that are not properly included in a summary; exhibit not based upon voluminous documents (5 documents); exhibit prepared by counsel. Addressed in separately filed motion *in limine.* | NA |
| 103 | Summary Effects of Mexican Spotted Owl Injunction | 09/14/1995 | Foundation; hearsay. | **As described in the text of the pleading to which this chart is attached, defendant's objection to this exhibit is untimely and thus should be considered to have been waived.** Without prejudice to this position, defendant's "objections" are totally frivolous and, in fact, sanctionable under Rule 11. That is, not only is the document self authenticating under FRE 901(7) as a report, statement or data compilation from the Forest Service itself and not hearsay as an admission of a party-opponent under FRE 801(d)(2), but this Court has already accepted this document as an assessment by the Forest Service of the impact of the suspension on the timber industry in Region 3. See Precision Pine & Timber v. United States, 50 Fed. Cl. 35, 47 (2000). |

| | | | | |
|---|---|---|---|---|
| 104 | Map of Arizona | | Hearsay. | Defendant's "objection" is frivolous and possibly sanctionable under Rule 11. That is, it is well-settled that a court may take judicial notice of geographical boundaries. Boyce Motor Lines v. United States, 342 U.S. 337, 344 (1952) Under the FRE 201, a court to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Here the government cannot reasonably question that this map represents the geography of the State of Arizona. Accordingly, this court should take judicial notice of PX 104. See Jaffe v. Pallotta TeamsWorks, 374 F.3d 1223, 1228 (D.C. Cir. 2004) (taking judicial notice of a map of Virginia and Washington, D.C. in wrongful death action for purposes of reviewing the territory covered by a 300-mile bicycle ride to raise funds for charity); Hartford Fire Ins. Co. v. Orient Overseas Containers Lines, Ltd., 230 F.3d 549, 556 (2d Cir. 2000) (taking judicial notice of Rand McNally & Co. atlas to account for distances traveled on trucking and rail transports); Government of Canal Zone v. Burjan, 6 F.2d 690, 693-95 (5th Cir. 1979) ("This court has on several occasions taken judicial notice, or has approved a trial court's taking judicial notice of geographical locations and boundaries."). Moreover, maps, even those made prior to trial by a third party are admissible if authenticated by a person with personal knowledge to attest to its correctness. |
| 105 | Excerpts from The Dictionary of Forestry (John A. Helms, Ed., 1998): cover, title page, 18-19, 88,144-145, 160-161 | | Hearsay. | This document is admissible under FRE 803(18) which, among other things allows for the admission of documents if they are shown in some other way to be authoritative. Christopher B. Mueller and Laird C. Kirkpatrick, 4 Federal Evidence § 468 (2d ed., 2004). This exception to the hearsay rule is based on traditional notions regarding trustworthiness. Id. In this regard, there is an assurance of trustworthiness in that books and articles are written by people with special training and skills and read by others in the field, so pressures of competition and criticism and the impulse to secure and preserve professional stature provide incentives toward care and accuracy. Id. (citations omitted). The instant document was edited by John A. Helms, professor emeritus at the University of California–Berkley and chairman of the Forest and Science and Technology Board of the Society of American Foresters and was published by the latter organization. Based on these two facts the document is eminently trustworthy. If the court desires more before admitting this document, plaintiff will, as permitted by FRE 803(18), call the document to the attention of one of its forestry experts, who can attest to its reliability as an authority. |

| | | | | |
|---|---|---|---|---|
| 106 | Stipulation from Silver v. Babbitt | 10/18/1995 | No objection. | NA |
| 107 | Order Approving Stipulation from Silver v. Babbitt | 10/18/1995 | No objection. | NA |
| 108 | Agreement to Modify Mud Timber Sale | 08/29/1996 | No objection. | NA |
| 109 | Letter from Ken Broyles to Lorin Porter, re: Mud sale release from injunction | 03/11/1996 | No objection. | NA |
| 110 | Letter from John Smith to Dan Panks, requesting some Payment Units on the Mud sale be open for harvest | 03/25/1996 | No objection. | NA |
| 111 | Letter from John Smith to Richard Stevens, requesting waiver of the "1 June restriction" on Mud | 04/05/1996 | No objection. | NA |
| 112 | Letter from Richard Stevens to John Smith, declining to waive clause CT6.314# (Timing of Logging Operations) in Mud Contract | 04/12/1996 | No objection. | NA |
| 113 | Letter from Richard Stevens to John Smith, re: operations suspended do due increased fire risk | 05/24/1996 | No objection. | NA |
| 114 | Timber Sale Inspection Report for Mud Timber Sale, re: opening some units for harvest; waiving certain restrictions for 1996 season | 08/01/1996 | No objection. | NA |
| 115 | Letter from Lorin Porter to Chip Cartwright, re: sawmill operations being closed as result of suspension | 06/25/1996 | Hearsay. | This document is not hearsay it is merely an indication that on June 25, 1996 Precision Pine made inquiry of the Forest Service as to (a) what it was doing to get the injunction lifted and (b) what compensation Precision Pine could expect from the Forest Service as a result of the suspension. The document is also admissible under FRE 803(6) as business record. |

| | | | | |
|---|---|---|---|---|
| 116 | Letter from Lorin Porter to Chip Cartwright, re: Precision's situation as a result of suspension/ injunction | rec'd 06/26/1996 | Hearsay. | As a document that put the Forest Service on notice that its suspension of Precision Pine's contracts was a breach of contract that was resulting in substantial financial harm, this document is not hearsay. In any event it is admissible both under FRE 803(6) as a business record and under FRE 803(1) as an explanation of an event or condition, Precision Pine's substantial financial harm owing to the Forest Service's breach, that was occurring at the time that the document was written. |
| 117 | Agreement between Stone Container Corp. and Precision Pine - transfer of Kettle Timber Sale from Precision to Stone, with attached Letter from Lorin Porter to Gary Yantis, dated Dec. 29, 1997, re: remaining balance on sale due. | 08/15/1997 | No objection. | NA |
| 118 | Forest Service Form 2400-12 (9/72) - Third-party Agreement (Timber Sale) between Precision and Stone for transfer of Kettle Timber Sale | 11/03/1997 | No objection. | NA |
| 119 | Letter from Robert Leaverton to Lorin Porter, re: Forest Guardians suspension of the Hay and O.D. Ridge Timber Sales | 06/04/1997 | Relevance – compensation as a result of the *Forest Guardians* suspension in 1997 is the subject of another action filed by Precision Pine. | This letter from the Forest Service is relevant to show that in the early part of the post-suspension period, this sale was again suspended by the Forest Service. |
| 120 | Letter from David Harris to Lorin Porter, re: Forest Guardians suspension of the Saginaw-Kennedy Timber Sale | 06/06/1997 | Relevance – compensation as a result of the *Forest Guardians* suspension in 1997 is the subject of another action filed by Precision Pine. | This letter from the Forest Service is relevant to show that in the early part of the post-suspension period, this sale was again suspended by the Forest Service. |
| 121 | Letter from David Harris to Lorin Porter, re: Forest Guardians the suspension of the Brann Timber Sale | 06/06/1997 | Relevance – compensation as a result of the *Forest Guardians* suspension in 1997 is the subject of another action filed by Precision Pine. | This letter from the Forest Service is relevant to show that in the early part of the post-suspension period, this sale was again suspended by the Forest Service. |

| | | | | |
|---|---|---|---|---|
| 122 | Letter from Clifford Dils to Lorin Porter, re: Forest Guardians suspension of the Salt Timber Sale | 06/06/1997 | Relevance – compensation as a result of the *Forest Guardians* suspension in 1997 is the subject of another action filed by Precision Pine. | This letter from the Forest Service is relevant to show that in the early part of the post-suspension period, this sale was again suspended by the Forest Service. |
| 123 | Letter from Ken Broyles to Lorin Porter, re: Forest Guardians suspension of the U-Bar Timber Sale | 06/03/1997 | Relevance – compensation as a result of the *Forest Guardians* suspension in 1997 is the subject of another action filed by Precision Pine. | This letter from the Forest Service is relevant to show that in the early part of the post-suspension period, this sale was again suspended by the Forest Service. |
| 124 | Letter from Clifford Dils to Lorin Porter, re: Forest Guardians suspension of the Manaco Timber Sale | 06/06/1997 | Relevance – compensation as a result of the *Forest Guardians* suspension in 1997 is the subject of another action filed by Precision Pine. | This letter from the Forest Service is relevant to show that in the early part of the post-suspension period, this sale was again suspended by the Forest Service. |
| 125 | Letter from Steve Bennet to Precision Pine & Timber, re: Stone is closing Snowflake Pulpmill; will no longer accept pulpwood | 02/12/1998 | Relevance; hearsay. | The document is not hearsay in that it is not an assertion nor is it offered to prove the truth of the matters contained therein. Rather it is offered merely to confirm that on Feb 12, 1998 Stone gave notice of its intent to terminate its practice of purchasing pulpwood. Even if this document were hearsay, it is also admissible pursuant to FRE 803(1). First, it is a document explaining several events or conditions; Stone's closing down of its Kraft Pulping System and its providing notice of a change in operating procedures, i.e., to no longer purchase pulpwood, that was made at or shortly after the time of the event or condition. As such, it is admissible under FRE 803(1). Second, as a notice of intent by a customer to terminate an existing business relationship, it is a business record admissible under FRE 803(6). It is relevant because it shows that in early 1998 Precision Pine lost its major market for pulpwood thus making the profitable harvesting of its existing multi-product sales more difficult. |

| | | | | |
|---|---|---|---|---|
| 126 | Letter from Steve Bennet to Lon Porter, re: Stone's ending chip purchases | 02/12/1998 | Relevance; hearsay. | The document is not hearsay in that it is not an assertion nor is it offered to prove the truth of the matters contained therein. Rather it is offered merely to confirm that on Feb 12, 1998 Stone gave notice of its intent to terminate its chip purchase contract with Precision Pine. Even if this document were hearsay, it is also admissible pursuant to FRE 803(1). First, it is a document explaining several events or conditions, Stone's closing down of its Kraft Pulping System and it's providing required notice to terminate its chip purchase agreement with Precision Pine that was made at or shortly after the time of the event or condition. As such, it is admissible under FRE 803(1). Second, as a notice of intent by a customer to terminate an existing contract, it is a business record admissible under FRE 803(6). It is relevant because it shows that in early 1998 Precision Pine lost its major market chips thus making the profitable harvesting and processing of all sales less profitable. |
| 127 | Letter from Steve Bennett to John Kirkpatrick, Acting Regional Forester, re: Stone is notifying Forest Service that it will no longer accept chips or pulpwood at Snowflake | 02/12/1998 | Relevance; hearsay. | The document is not hearsay in that it is not an assertion nor is it offered to prove the truth of the matters contained therein. Rather it is offered merely to confirm that on Feb. 12, 1998 Stone gave notice of its intent to get out of the kraft pulping business. Even if this document were hearsay it is also admissible pursuant to FRE 803. It is a document explaining an event or condition, Stone's closing down of its Kraft Pulping System that was made at or shortly after the time of the event or condition. As such, it is admissible under FRE 803(1). It is relevant because it shows that in early 1998 Precision Pine lost its major market for pulpwood thus making the profitable harvesting of its existing multi-product sales more difficult. |
| 128 | Memorandum from John Bedell to Timber Purchasers, re: Precision's Winslow mill destroyed by fire on Sept. 17, 1998 | 11/09/1999 | Relevance. | This document is relevant because it is evidence of the significance of the destruction of the Winslow sawmill. |
| 129 | Letter from Lorin Porter to Steve Gunzel, re: Winslow fire of Sept. 17, 1998 | 09/24/1998 | Relevance; hearsay. | The document is admissible pursuant to FRE 803(1) because it is a document explaining an event or condition, that Precision Pine suffered a fire at its Winslow mill on Sept. 17, 1998 that was made at or shortly after the time of the event or condition. As such, it is admissible under FRE 803(1). To the extent that it also lays out a basis for Precision Pine to receive contract term adjustment under clause B8.21 (b) of certain of its contracts (delay in processing timber due to damage to primary timber processing facility) it is also admissible as a business record under FRE 803(6). The document is relevant to show date of the fire at the Winslow sawmill. |

| | | | | |
|---|---|---|---|---|
| 130 | Precision Pine's harvest projection, "Anticipated Quantity of Wood Per Contract (in MBF (log scale)," as provided in Plaintiff's Answers to Interrogatories. | | Foundation; hearsay. | This exhibit is admissible pursuant to FRE 807 in that, at the very insistence of the defendant, plaintiff submitted a specific statement from its president that each interrogatory was answered under oath. <u>See</u> Defendant's Status Report of March 15, 2005. As such, it has the requisite minimum circumstantial guarantee of trustworthiness so as not to be excluded as hearsay. Moreover, the statement is more probative on the point than simply the recollection of the company's president on the likely manner the company would have harvested numerous sales during the suspension period. Lastly, admitting this exhibit, the topic of which was the subject of substantial questioning at deposition and will likely be the subject of both substantial direct and cross-examination at trial, will no doubt serve the interests of justice. This is particularly true since such examination in the absence of this document will consume a great deal of time in a trial where the Court has indicated that it intends to limit the amount of time that each party has to litigate its case.<br><br>Stripped of its label as an answer to an interrogatory, this document is also admissible pursuant to FRE 701 as opinion evidence of a lay witness as to the manner in which, as of August 24, 1995, it could and would have harvested the timber on the breached sales between August 25, 1995 and December of 1996. |
| 131 | Expert Report on Damages by Robert Ness ("Ness Report" on Suspension Period Damages) | 11/14/2003 | Hearsay. | This "objection" is both hypocritical and so frivolous so as to warrant sanctions pursuant to Rule 11. The document is an expert report which the plaintiff was required by RCFC 26(2)(B) to prepare with respect to a witness employed to give expert testimony. In this respect it is identical to no less than **<u>six</u>** reports prepared by putative experts employed by the defendant that the defendant seeks to put in evidence, <u>i.e.</u>, DX numbers 775, 776, 777, 778, 796, and 797. The document is also admissible under (a) FRE 703 as the bases of the opinion of an expert (b) FRE 807 in that not only is it more probative on the point of the damages that Precision Pine suffered during the suspension than mere testimony but the interests of justice and judicial economy will be best served by the introduction of the document into evidence rather than by plaintiff having to essentially recreate the document through lengthy testimony from Mr. Ness and (c) as a summary and calculation under FRE 1006. Indeed, the admission of this summary of voluminous books and records offers the only practicable means of making their contents available to the Court. |

| | | | | |
|---|---|---|---|---|
| 132 | Forest Service Manual § 2430.2, effective February 12, 1990 | 02/12/1990 | Document is incomplete. | The documents are complete for what their description state — the version of Section 2430.2 of the Forest Service Manual that became effective on the respective date noted.<br><br>With respect to the fact that Plaintiff is only introducing one part of the Forest Service Manual, Plaintiff responds at it did at PXs 31-34 — in sum, the Government has not alleged that any other portions of the Manual "ought in fairness to be considered contemporaneously" with Section 2340.2 under FRE 106, and even if certain other portions of the Forest Service Manual help to further define, clarify, or place Section 2340.2 in context, the Government has not shown that other remedies are not adequate. |
| 133 | Forest Service Manual § 2430.2, effective April 5, 2004 | 04/05/2004 | Document is incomplete. | |
| 134 | Forest Service Manual § 2430.2, 5/83 Amendment 129 | 05/1983 | Document is incomplete. | |
| 135 | Forest Service Form 2400-14 (5/91) "Bid for Advertised Timber," (Bid Form) for U-Bar sale with attached: "Instructions to Bidders" Forest Service Form 2400-43 (2/91), "Certification of Nonsubstitution of Timber Purchased and Disposition of Domestically Processed and Exported Timber" for U-Bar sale. | | No objection. | NA |
| 136 | Forest Service Form 2400-14 (3/94) "Bid for Advertised Timber," (Bid Form) for Kettle sale with attached: "Instructions to Bidders" Blank Forest Service Form 2400-43 (2/91), "Certification of Nonsubstitution of Timber Purchased and Disposition of Domestically Processed and Exported Timber." | | No objection. | NA |
| 137 | Forest Service Form 2400-43 (2/91), "Certification of Nonsubstitution of Timber Purchased and Disposition of Domestically Processed and Exported Timber" for Saginaw-Kennedy Timber Sale for CY 92. | 07/13/1993 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 138 | Forest Service Regional Summary, "Effects of Injunction on Timber Harvest Activities on Region Three's Existing and Planned Timber Sale Program" | 08/28/1995 | Foundation. | **As described in the text of the pleading to which this chart is attached, defendant's objection to this exhibit is untimely and thus should be considered to have been waived.** Without prejudice to this position, defendant's "objection" is totally frivolous and, in fact, sanctionable under Rule 11. That is, not only is the document self authenticating under FRE 901 (7) as a report, statement or data compilation from the Forest Service itself but this Court has already concluded that "On August 28, 1995, the Forest Service prepared a document called "Summary Of Effects Of Injunction On Timber Harvest Activities On Region Three's Existing And Planned Timber Sales Program." Precision Pine & Timber v. United States, 50 Fed. Cl. 35, 46 (2000). |
| 139 | Forest Service Form 2400-46 (12/86), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '92, Tonto National Forest | undated | Foundation: document unsigned. Same as PX 40. | Due to administrative error, Plaintiff included a handful of exhibits (12) that are duplicates of at least portions of other exhibits. However, Plaintiff has already completed copying and scanning its exhibits and much pre-trial work product that refers to one or both iterations of the exhibit at various places. Replacing all references would be burdensome and time consuming. Also, all of the duplicates are known to the Government, and so there is no prejudice to the Government. Also, the mere 12 duplicate exhibits are not excessive out of 301 exhibits, and so are not overly duplicative. Other objections are answered at PX 40. |
| 140 | Forest Service Form 2400-46 (12/86), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '92, Apache-Sitgreaves National Forest | undated | Foundation: document unsigned, undated and contains handwriting of unknown origin. Same as PX 41. | Due to administrative error, Plaintiff included a handful of exhibits (12) that are duplicates of at least portions of other exhibits. However, Plaintiff has already completed copying and scanning its exhibits and much pre-trial work product that refers to one or both iterations of the exhibit at various places. Replacing all references would be burdensome and time consuming. Also, all of the duplicates are known to the Government, and so there is no prejudice to the Government. Also, the mere 12 duplicate exhibits are not excessive out of 301 exhibits, and so are not overly duplicative. Other objections are answered at PX 41. |
| 141 | Forest Service Form 2400-46 (12/86), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '92, Coconino National Forest | undated | Foundation: document unsigned and undated. Same as PX 42. | Due to administrative error, Plaintiff included a handful of exhibits (12) that are duplicates of at least portions of other exhibits. However, Plaintiff has already completed copying and scanning its exhibits and much pre-trial work product that refers to one or both iterations of the exhibit at various places. Replacing all references would be burdensome and time consuming. Also, all of the duplicates are known to the Government, and so there is no prejudice to the Government. Also, the mere 12 duplicate exhibits are not excessive out of 301 exhibits, and so are not overly duplicative. Other objections are answered at PX 42. |

| | | | | |
|---|---|---|---|---|
| 142 | Forest Service Form 2400-46 (12/86), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '92, Kaibab National Forest | undated | Foundation: document unsigned and undated. Same as PX 43. | Due to administrative error, Plaintiff included a handful of exhibits (12) that are duplicates of at least portions of other exhibits. However, Plaintiff has already completed copying and scanning its exhibits and much pre-trial work product that refers to one or both iterations of the exhibit at various places. Replacing all references would be burdensome and time consuming. Also, all of the duplicates are known to the Government, and so there is no prejudice to the Government. Also, the mere 12 duplicate exhibits are not excessive out of 301 exhibits, and so are not overly duplicative. Other objections are answered at PX 43. |
| 143 | Letter from Clifford Dils to Lorin Porter, re: Purchaser Certification Forms needed for Salt and Manaco sales for CY '95 | 03/26/1996 | Relevance. | This document is relevant to show that, contrary to defendant's arguments, the Forest Service always had substantial interest in what its commercial timber sales customers did with the timber harvested pursuant to timber sale contracts. |
| 144 | Forest Service Form 2400-46 (4/94), Purchaser Certification of Timber Domestically Processed and Exported, for Precision Pine & Timber, Inc., CY '95, Tonto National Forest (Salt and Manaco sales) | 04/09/1996 | No objection. | NA |
| 145 | Purchaser's Certification of Timber Domestically Processed and Exported (Contract #000642) | 05/15/1988 | Document is illegible. Same as PX 22. | Due to administrative error, Plaintiff included a handful of exhibits (12) that are duplicates of at least portions of other exhibits. However, Plaintiff has already completed copying and scanning its exhibits and much pre-trial work product that refers to one or both iterations of the exhibit at various places. Replacing all references would be burdensome and time consuming. Also, all of the duplicates are known to the Government, and so there is no prejudice to the Government. Also, the mere 12 duplicate exhibits are not excessive out of 301 exhibits, and so are not overly duplicative. Other objections are answered at PX 22. |
| 146 | Purchaser's Certification of Timber Domestically Processed and Exported (Contract #000790) | 12/??/???? | Document is cut off. Same as PX 23. | Due to administrative error, Plaintiff included a handful of exhibits (12) that are duplicates of at least portions of other exhibits. However, Plaintiff has already completed copying and scanning its exhibits and much pre-trial work product that refers to one or both iterations of the exhibit at various places. Replacing all references would be burdensome and time consuming. Also, all of the duplicates are known to the Government, and so there is no prejudice to the Government. Also, the mere 12 duplicate exhibits are not excessive out of 301 exhibits, and so are not overly duplicative. Other objections are answered at PX 23. |

| | | | | |
|---|---|---|---|---|
| 147 | Letter from Leaverton to Precision Pine re: Need "Certification of Disposition of Timber" before Contract #001228 (Hidden) can be closed & cash balance on sale. | 01/03/1995 | Relevance: the Hidden contract is not at issue in this action. Same as PX 26. | Due to administrative error, Plaintiff included a handful of exhibits (12) that are duplicates of at least portions of other exhibits. However, Plaintiff has already completed copying and scanning its exhibits and much pre-trial work product that refers to one or both iterations of the exhibit at various places. Replacing all references would be burdensome and time consuming. Also, all of the duplicates are known to the Government, and so there is no prejudice to the Government. Also, the mere 12 duplicate exhibits are not excessive out of 301 exhibits, and so are not overly duplicative. Other objections are answered at PX 26. |
| 148 | Purchaser's Certification of Disposition of Timber from National Forest Sale for Contract #001228. | undated | Relevance: the Hidden contract is not at issue in this action. Same as second page of PX 27. | Due to administrative error, Plaintiff included a handful of exhibits (12) that are duplicates of at least portions of other exhibits. However, Plaintiff has already completed copying and scanning its exhibits and much pre-trial work product that refers to one or both iterations of the exhibit at various places. Replacing all references would be burdensome and time consuming. Also, all of the duplicates are known to the Government, and so there is no prejudice to the Government. Also, the mere 12 duplicate exhibits are not excessive out of 301 exhibits, and so are not overly duplicative. Other objections are answered at PX 27. |
| 149 | Excerpt from "Government's Response to Appellant's May 9th Reply Regarding Appellant's motion for summary judgment, and Government's Motion for Summary Judgment" in Reidhead Bros. Lumber Mill, Inc. v. Dept. of Agriculture, AGBCA No. 200-126-1: pages: 1, 4-5 | 06/05/2000 | Relevance; parol evidence rule; document is incomplete. | The parol evidence rule is a substantive rule of law, not a rule of evidence, which prohibits prior or contemporaneous statements and negotiations that are inconsistent with a final, integrated agreement from altering the terms for that agreement. California Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 25 (1990); Gutz v. United States, 45 Fed. Cl. 291, 297 (1999). The rule does not bar evidence of statements regarding the contract made after the written agreement is made. California Sand & Gravel, 22 Cl. Ct. at 26. Thus, the rule would not bar the Government's statements in 2000 regarding agreements it made in the mid-'90's. Further, Plaintiff is not offering PX 149 to alter or add to the written terms of the timber sale contracts here at issue. Rather, the statements contained in PX 149 are probative of the meaning that the parties ascribed to the contract terms, and are therefore admissible for that purpose. Applied Co. v. United States, 37 Fed. Cl. 749, 759 (1997).<br><br>As to the completeness of the document, Plaintiff responds at it did at PXs 31-34. In sum, the Government has not alleged that under FRE 106 any other portions of the document "ought in fairness to be considered contemporaneously" with the portion Plaintiff selected, and even if certain other portions of the document help to further define, clarify or place the selected portion in context, the Government has not shown that other remedies are not adequate. |

| | | | | |
|---|---|---|---|---|
| 150 | Excerpt from Scott Timber Co. v. United States, Nos. 94-784C, 96-204C, slip op. pages 1, 7-9 (Fed. Cl. July 11, 2001) | 07/11/2001 | Relevance. Court decision constitutes legal authority and is not properly part of an exhibit list. | A copy of the Court's previous decision is included merely for the Court's convenience. Plaintiff intends to rely on the previous decision as precedent. Under RCFC 44(a)(1), an official publication of an official record may be admitted for any purpose. Under FRE 902(c), official publications of a public authority are self-authenticating. The excerpts of the slip opinion shown at Exhibit 150 are a copy of the Court's official publication of its decision, and therefore self-authenticating under FRE 902(c) and admissible under RCFC 44(a)(1). |
| 151 | Judgment, Scott Timber Co. v. United States, No. 94-784C (Fed. Cl. July 8, 2002) | 07/08/2002 | Inadmissible offer of compromise. FRE 418. Use of the stipulated settlement in *Scott Timber* is a violation of settlement agreement in that case. | The document is not an inadmissible offer of compromise. It is a public record bearing the signature of a Judge of the United States Court of Federal Claims and is admissible pursuant to FRE 1005 and RCFC 44(a)(1). |
| 152 | Letter from Lewis Tenney to Eddie Alford, re: requesting compensation for delays | 12/31/1996 | No objection. | NA |
| 153 | Letter from Robert Leaverton to Lewis Tenney, re: compensation under clauses CT6.01 and C9.2 | 01/24/1997 | No objection. | NA |
| 154 | Letter from Ken Broyles to Lewis Tenney, re: compensation under clauses CT6.01 and C9.2 | 01/30/1997 | No objection. | NA |
| 155 | Letter from Clifford Dils to Lewis Tenney, re: compensation under clauses CT6.01 and C9.2 | 02/07/1997 | No objection. | NA |
| 156 | Summary of Forest Service Timber Sale Offerings on Tonto, Apache-Sitgreaves, Coconino, Kaibab National Forests 8/25/95-12/31/98 | | Authenticity; foundation; relevance; underlying documents are inadmissible (hearsay); exhibit does not accurately and fairly summarize post-suspension timber sale offerings by the Forest Service; exhibit prepared by counsel. | NA |

| | | | | |
|---|---|---|---|---|
| | | | Addressed in a separately filed motion *in limine.* | |
| 157 | Forest Service Timber Sale Offering Data as Provided by Timber Data Corp. 1995-1998 | | Foundation; hearsay | **As described in the text of the pleading to which this chart is attached, defendant's objection to this exhibit is untimely and thus should be considered to have been waived.** Without prejudice to this position, the plaintiff will establish the necessary foundation at trial by calling Mr. McDonald, the president of the company that prepared these documents. Moreover, these documents are admissible under FRE 803(6). Indeed, Timber Data Company's principle activity is to receive data from the Forest Service with regard to timber sales offered and awarded and performed, to record that information and to prepare data compilations/reports of the type represented by this exhibit. |
| 158 | Summary of Total Remaining Volume on Sales in Issue as of August 25, 1995 | | Authenticity; foundation; exhibit does not accurately and fairly summarize the underlying documents; exhibit not based upon voluminous documents (14 documents); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 159 | Letter from Robert Leaverton to Val Reidhead, re: transfer of Hay and Hidden Timber Sales | 06/04/1991 | No objection. | NA |
| 160 | Letter from Ronald Tissaw to John Holmes re: completed roadwork on the Saginaw-Kennedy Timber Sale | 12/06/1995 | No objection. | NA |
| 161 | Specified Road Final Acceptance Report for Monument Timber Sale | 09/07/1995 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 162 | Letter from John Smith to Nancy Kehret re: Salt Timber Sale road completion | 05/17/1995 | Hearsay. | In its regular course of business, Precision kept handwritten records of payments that were approved for disbursement to its subcontractors. The Logger Pay Sheets included in PXs 234-238 are examples of these records of payments. Payments to other sub-contractors performing work on a sale (road construction work, for example) were approved in the same manner. Simply comparing this document to the logger pay sheets in PXs 234-238 (to which the government does not object on hearsay grounds) shows that this document is this type of payment record. It therefore falls under the hearsay exception contained in FRE 803(6) for the records of a regularly conducted activity. |
| 163 | Summary of mill shutdowns greater than one week in duration | | Authenticity; foundation; exhibit does not accurately and fairly summarize the underlying documents; exhibit not based upon voluminous documents (3 documents); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 164 | Letter from John Smith to David Cummings, re: Forest Service reducing its pulpwood price to $0.73/ccf | 02/23/1999 | Relevance. | This document is relevant to show that the Forest Service's administratively reducing the price of pulpwood on new sales to $0.73 per ccf in the wake of Stone's closure, was adversely affecting Precision Pine 's ability to find an outlet for pulpwood on its existing contracts for which it was obligated to pay $9.40 per ccf. |
| 165 | Letter from John Smith to David Cummings, re: operating plan for Manaco in '99 | 02/24/1999 | Relevance. | This document is relevant to show that the Forest Service's administratively reducing the price of pulpwood on new sales to $0.73 per ccf in the wake of Stone's closure, was adversely affecting Precision Pine 's ability to find an outlet for pulpwood on its existing contracts for which it was obligated to pay $9.40 per ccf. |
| 166 | Letter from David Cummings to John Smith, re: inquiring about reducing pulpwood price on Precision's contracts | 03/05/1999 | Relevance. | This document is relevant to show that upon learning that it's administratively reducing the price of pulpwood on new sales to $0.73 per ccf in the wake of Stone's closure was adversely affecting Precision Pine's ability to find an outlet for pulpwood on its existing sales, the Forest Service refused to do anything to obviate the situation. |
| 167 | Letter from John Smith to Susan Lee, re: requesting 1 year C.T.A. for Brookbank sale | 01/05/2000 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 168 | Summary comparison of WWPA index and stumpage price on U-Bar | | Authenticity; foundation; relevance; underlying documents are inadmissible (hearsay); exhibit is unclear and misleading; exhibit not based upon voluminous documents (2 documents); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 169 | Hay timber sale contract including modifications and sale area maps (Bates stamps HAY 1-182) | | No objection. | NA |
| 170 | Jersey Horse timber sale contract including modifications and sale area maps (Bates stamps JRH 1 - 158) | | No objection. | NA |
| 171 | OD Ridge timber sale contract including modifications and sale area maps (Bates stamps ODR 1-129) | | No objection. | NA |
| 172 | Brookbank timber sale contract including modifications and sale area maps (Bates stamps BRB 1 - 116) | | No objection. | NA |
| 173 | Kettle timber sale contract including modifications and sale area maps (Bates stamps KET 1 - 120) | | No objection. | NA |
| 174 | U-Bar timber sale contract including modifications and sale area maps (Bates stamps U-B 1 - 246) | | No objection. | NA |
| 175 | Mud timber sale contract including modifications and sale area maps (Bates stamps MUC 1 - 206) | | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 176 | Monument timber sale contract including modifications and sale area maps (Bates stamps MON 1 - 142) | | No objection. | NA |
| 177 | Salt timber sale contract including modifications and sale area maps (Bates stamps SLT 1 - 186) | | No objection. | NA |
| 178 | Manaco timber sale contract including modifications and sale area maps (Bates stamps MCO 1 - 206) | | No objection. | NA |
| 179 | Saginaw-Kennedy timber sale contract including modifications and sale area maps (Bates stamps S-K 1 - 276) | | No objection. | NA |
| 180 | Precision Pine's Calculation Binder | 02/26/2003 | Hearsay. | This exhibit is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages (i.e. the calculation of damages which Mr. Ness subsequently audited). Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government on Feb 26, 2003, and the individual who supervised its preparation was identified at deposition at which time defendant could have deposed him with regard to it. Moreover, plaintiff was required by RCFC 26 (a)(C) to provide this exhibit to the defendant along with the documents contained in PX 181.<br><br>These documents are also admissible as opinion evidence under FRE 701. See Teen-Ed, Inc. v. Kimball International, Inc., 620 F.2d 399, 462-64 (3d Cir. 1980). See also, State Office Systems v. Olivetti Corp of America, 762 F.2d 843, 845-46 (10th Cir. 1985), where an exhibit purported to be a summary of both actual damages and loss of future profits and it was held that the summary was admissible as a business record under FRE 1006 and 803(b) as to actual damages, and admissible under opinion testimony under FRE 701 as to loss of future profits. |

| | | | | |
|---|---|---|---|---|
| 181 | Binder (Volume I) of Supporting Documents to Precision Pine's Calculation Binder | 02/26/2003 | Hearsay; document combines numerous, unrelated exhibits. | This exhibit contains numerous documents summarized in PX 180 which plaintiff has proffered in lieu of the Court's having to order their production in court. Moreover, plaintiff was required by RCFC 26(a)(C) to provide this exhibit to the defendant along with the calculation of its damages contained in PX 180.<br><br>Just as with PX 180 these documents are also admissible as opinion evidence under FRE 701.<br><br>Moreover, the exhibit is composed of numerous business records which in and of themselves admissible under FRE 803 (6), i.e.:<br><br>Timber Sale Statement of Accounts<br><br>Invoices<br><br>Chip contracts between Precision Pine and Stone<br><br>Precision Pine's Bark Journal<br><br>Precision Pine's Shavings Journal<br><br>Profit and Loss Statement's of Tri-Star Logging<br><br>Precision Pine's Cost Comparison Reports<br><br>Precision Pine's Income Statements. |

| | | | | |
|---|---|---|---|---|
| 182 | Robert Ness's report regarding post-suspension harvesting | 02/07/2005 | Hearsay. | Just as the "objection" to PX 13, defendant's objection to this exhibit is both hypocritical and so frivolous so as to warrant sanctions pursuant to Rule 11. The document is an expert report which the plaintiff was required to prepare by order of the Court dated Jan. 4, 2005 Moreover, it is identical to no less than **six** reports prepared by putative experts employed by the defendant which the defendant seek to put in evidence, i.e. DX numbers 775, 776, 777, 778, 796, 797. The document is also admissible under (a) FRE 703 as the bases of opinion testimony of an expert (b) FRE 807 in that not only is it more probative as to the financial impact to Precision Pine of the breach sales in the post-suspension period than mere testimony but the interests of justice and judicial economy will be best served by the introduction of the document into evidence rather than by plaintiff having to essentially recreate the document through lengthy testimony form Mr. Ness and (c) as a summary and calculation under FRE 1006. Indeed, the admission of this summary of voluminous books and records offers the only practicable means of making their contents available to the Court. |
| 183 | Kaibab Timber Sale Prospectus | Bid date: 09/22/1994 | Document descriptive inaccurate. | It is unclear whether the Government has an objection or is simply noting that the description of the document on the Exhibit List is inaccurate. Accordingly, Plaintiff has some difficulty responding. However, Plaintiff will point out to the Court that the document produced and presented to the Government for inspection at the early meeting of counsel was the Saginaw-Kennedy Timber Sale Prospectus, which was located in the Kaibab National Forest. Due to a clerical error, the name of the Forest instead of the name of the sale was indicated on Plaintiff's Final Exhibit list. However, the Government has not pointed to a procedural or evidentiary rule that calls for exclusion of an otherwise relevant, admissible and timely-produced document based simply on an inaccurate description of the document on an Exhibit List. |
| 184 | Salt Timber Sale Prospectus | Bid date: 01/08/1999 | No objection. | NA |
| 185 | O.D. Ridge Timber Sale Prospectus | Bid date: 12/11/1991 | No objection. | NA |
| 186 | Mud Timber Sale Prospectus | Bid date: 09/13/1994 | No objection. | NA |
| 187 | Monument Timber Sale Prospectus | Bid date: 09/27/1994 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 188 | Manaco Timber Sale Prospectus | Bid date: 01/13/1995 | Exhibit is comprised of multiple documents: the last page is not part of the Manaco prospectus. | It is unclear whether the Government has an objection to this exhibit, because it cites no rule of evidence to exclude the last page. Accordingly, Plaintiff has some difficulty responding. Moreover, the Government is factually incorrect. The last page of the exhibit is a small map of the Manaco sale area, which the Forest Service included in the Timber Sale Prospectus. The fact that maps were either not included with the other prospectuses or not included as part of an exhibit of those prospectuses does not affect the admissibility of the map of this sale unless the Government can point to an exclusionary rule that would so provide. |
| 189 | Hay Timber Sale Prospectus | Bid date: 03/08/1989 | Exhibit is comprised of multiple documents: the exhibit contains additional forms and the documents that are not part of the other prospectuses. | It is unclear whether the Government has an objection to this exhibit, because it cites no rule of evidence to exclude the last page. Accordingly, Plaintiff has some difficulty responding. Moreover, the blank forms included in the exhibit are the forms that a purchaser would have to fill-out and return in order to submit a bid on the sale. The fact that such forms were either not included with the other prospectuses or not included as part of an exhibit of those other prospectuses does not affect the admissibility of the forms for this sale unless the Government can point to an exclusionary rule that would so provide. |
| 190 | Kettle Timber Sale Prospectus | Bid date: 07/19/1995 | Document contains handwritten notes of unknown origin. | The handwritten notes were added prior to litigation by employees or agents of Plaintiff and accordingly cannot be removed now for trial. Plaintiff does not intend to offer any arguments based on the fact the notes exist or based on the contents of the notes. Accordingly, there is no basis for objecting to the fact the document contains such notes, and Plaintiff would not object to the Court simply disregarding the notes. |
| 191 | Jersey Horse Timber Sale Prospectus | Bid date: 12/08/1993 | No objection. | NA |
| 192 | U-Bar Timber Sale Prospectus | Bid date: 09/29/1992 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 193 | Brookbank Timber Sale Prospectus | Bid date: 04/12/1995 | Exhibit is comprised of multiple documents: the last page is not part of the Brookbank prospectus. | It is unclear whether the Government has an objection to this exhibit, because it cites no rule of evidence to exclude the last page. Accordingly, Plaintiff has some difficulty responding. Moreover, the Government is factually incorrect. The last page of the exhibit is the form that a purchaser would have to fill out and return in order to submit a bid on the Brookbank sale. The fact that such a form was either not included with the other prospectuses or not included as part of an exhibit of those other prospectuses does not affect the admissibility of the forms for this sale unless the Government can point to an exclusionary rule that would so provide. |
| 194 | Claim letter for Salt Timber Sale | 11/17/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 195 | Contracting Officer's final decision for Salt Timber Sale | 03/16/1998 | No objection. | NA |
| 196 | Claim letter for Brookbank Timber Sale | 11/17/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 197 | Contracting Officer's final decision for Brookbank Timber Sale | 03/16/1998 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 198 | Claim letter for Manaco Timber Sale | 11/17/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 199 | Contracting Officer's final decision for Manaco Timber Sale | 03/16/1998 | No objection. | NA |
| 200 | Claim letter for St. Joe Timber Sale | 11/17/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 201 | Contracting Officer's final decision for St. Joe Timber Sale | 03/16/1998 | No objection. | NA |
| 202 | Claim letter for Jersey Horse Timber Sale | 11/17/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 203 | Contracting Officer's final decision for Jersey Horse Timber Sale | 03/16/1998 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 204 | Claim letter for Hay Timber Sale | 11/10/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 205 | Contracting Officer's final decision for Hay Timber Sale | 03/16/1998 | No objection. | NA |
| 206 | Claim letter for Kettle Timber Sale | 11/10/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 207 | Contracting Officer's final decision for Kettle Timber Sale | 03/16/1998 | No objection. | NA |
| 208 | Claim letter for O.D. Ridge Timber Sale | 11/10/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 209 | Contracting Officer's final decision for O.D. Ridge Timber Sale | 03/16/1998 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 210 | Claim letter for Brann Timber Sale | 08/15/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine’s damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 211 | Contracting Officer's final decision for Brann Timber Sale | 11/28/1997 | No objection. | NA |
| 212 | Claim letter for Saginaw-Kennedy Sale | 08/15/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine’s damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 213 | Contracting Officer's final decision for Saginaw-Kennedy Sale | 12/04/1997 | No objection. | NA |
| 214 | Claim letter for U-bar Timber Sale | 08/15/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine’s damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |

| | | | | |
|---|---|---|---|---|
| 215 | Contracting Officer's final decision for U-bar Timber Sale | 12/01/1997 | No objection. | NA |
| 216 | Claim letter for Monument Timber Sale | 08/15/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 217 | Contracting Officer's final decision for Monument Timber Sale | 12/01/1997 | No objection. | NA |
| 218 | Claim letter for Mud Timber Sale | 08/15/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |
| 219 | Contracting Officer's final decision for Mud Timber Sale | 12/01/1997 | No objection. | NA |
| 220 | Claim letter for Hutch-Boondock Timber Sale | 08/15/1997 | Hearsay. | Since the document in question is being offered for the fact that a claim was made on the date specified and not for the purpose of proving the truth of the matters contained therein it is not hearsay. See FRE 801(c). In any event, the portion of the document relevant to these proceedings is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages. Please be advised that in this regard the requirements laid out in ¶ 13 (a) of Appendix A have been met in that the document was provided to the government, and the individual who supervised its preparation was identified at or before deposition at which time defendant deposed him or could have deposed him with regard to it. |

| | | | | |
|---|---|---|---|---|
| 221 | Contracting Officer's final decision for Hutch-Boondock Timber Sale | 12/01/1997 | No objection. | NA |
| 222 | 55 Fed. Reg. 50,643 | 12/07/1990 | Hearsay. | A copy of the Federal Regulation is included merely for the Court's convenience. Under RCFC 44(a)(1), an official publication of a relevant government document may be admitted for any purpose. Under FRE 902(c), official publications of a public authority are self-authenticating. The Federal Register is an official publication of the United States, and therefore self-authenticating under FRE 902(c) and admissible under RCFC 44(a)(1). |
| 223 | Agreement with Stone for 3500 Cords of Pulpwood from Mud | 11/04/1997 | No objection. | NA |
| 224 | Letter from Rick Goeken to David Harrington, re: discovery issues | 09/15/2003 | Relevance; hearsay. | PX 224, 225 and 226 are an exchange of letters between counsel for the parties between September 15, 2003 to February 20, 2004 concerning the defendant's providing certain documents whose existence became known during depositions taken by the plaintiff. Most notable among the documents requested was the Eagar mill study referenced in deposition by the Forest Service employed in charge of appraisals in Region 3, Mr. Paul Fink as forming the basis for the Forest Service's calculation and publication of an overrun factor of 1.25 or greater with respect to each of the timber sale contracts here in issue. Deposition testimony by another Forest Service witness on Feb. 13, 2004 indicated that not only was the Eagar mill study available within the Forest Service's Regional office but that the Forest Service had also conducted mill studies of each of the Precision Pine mills involved in this case. PX 224, 225 and 226 contain no written assertions and thus are not hearsay within FRE 801. In any event, given that PX 224, 225 and 226 represent correspondence between two officers of the Court there is no doubt that they have the requisite circumstantial guarantees of trustworthiness and, pursuant to FRE 807, they are not excludable as hearsay. The documents are relevant to show that plaintiff has made the requisite requests for this material to defendant but that defendant has failed to provide, thus laying the foundation for a request that the Court draw an adverse inference from the government's non-production of the Eagar mill study and the studies of each of the Precision Pine mills involved in this case. (i.e., that the overrun factor at Precision Pine's mills would have been equal to, if not greater than, the overrun factor published by the Forest Service for each sale on the basis of the Eagar Mill study). |
| 225 | Letter from David Harrington to Rick Goeken, re: discovery issues | 02/09/2004 | Relevance; hearsay. | |
| 226 | Letter Rick Goeken to David Harrington, re: discovery issues | 02/20/2004 | Relevance; hearsay. | |

| | | | | |
|---|---|---|---|---|
| 227 | Precision Pine's lumber sale invoices during the period of the suspension | | No objection. | NA |
| 228 | Random Lengths 2000 Yearbook, 175: Ponderosa Pine, Kiln Dried, 4/4, #1, Shop | | Hearsay. | Pursuant to FRE 803 (17) commercial publications like this which contain market quotations, compilations, etc., generally used and relied on by persons in particular occupations are not excluded by the hearsay rule. |
| 229 | Random Lengths 2000 Yearbook, 176: Ponderosa Pine, Kiln Dried, 5/4, #2, Shop | | Hearsay. | |
| 230 | Random Lengths 2000 Yearbook, 178: Ponderosa Pine, Kiln Dried, 5/4, #3, Shop | | Hearsay. | |
| 231 | Random Lengths 2000 Yearbook, 179: Ponderosa Pine, Kiln Dried, 5/4, Para 99, Shop | | Hearsay. | |
| 232 | Random Lengths 2000 Yearbook, 180: Ponderosa Pine, Kiln Dried, 5/4, Moulding & Btr, 10/15% C & Btr, Rough | | Hearsay. | |
| 233 | Summary of Sales with Comparable Anticipated Log and Haul Costs | | Authenticity; foundation, exhibit contains analysis, argument and inferences not appropriate in a summary; exhibit does not accurately represent underlying documents; exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |

<table>
<tr>
<td>234</td>
<td>Logger Pay Records for Brann:<br>computer generated: 2/1-2/29/96<br>handwritten: 2/19/96, 2/19/96 (deduction), 3/4/96</td>
<td></td>
<td>Foundation (regarding printed pages). To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. Exhibit is comprised of selected documents and is not complete.</td>
<td rowspan="3">The foundation for the computer-printed business records can be established in an identical fashion to the foundation for the hard-written business records. Specifically, under FRE 901(b)(1) and 803(6), a Precision Pine employee familiar with the record keeping of the firm can testify to the identity and authenticity of those records at trial.<br><br>Plaintiff disclosed all of these documents, including the computer-generated documents, to the Government in discovery. Accordingly, the Government's oblique reference to RCFC 37 is sorely misplaced, because the Government never moved to compel discovery of electronic versions of the documents. A discovery sanction to exclude evidence under RCFC 37(b)(2)(B) is an extreme sanction that can be imposed only after a party has refused to comply with an order compelling discovery. Morris v. United States, 37 Fed. Cl. 207, 213 (1997). In its Motion for Discovery Sanctions, the Government sought no order concerning the disclosure of the underlying electronic versions of the computer-generated documents, and the Court entered no such order. See Precision Pine & Timber, Inc. v. United States, 2001 WL 1819224, *7 (Fed. Cl. 2001). Accordingly, any motion to now exclude the computer print-outs from evidence based on RCFC 37 is improper, and must be overruled.<br><br>As to the completeness of the documents, the Plaintiff avers that each document is complete and notes that the Government has not identified in what way any individual document is incomplete.<br><br>As for the fact that the exhibit contains selected documents, FRE 106 would allow the Government to have other documents introduced during Plaintiff's case-in-chief if the Government can show that those documents "ought in fairness to be considered contemporaneously with" the documents that Plaintiff is proffering here. (See, supra, responses to objections to PXs 31-34.) However, the Government has not proffered any such documents. Thus, there is no objection for the Court to consider based on the completeness doctrine.</td>
</tr>
<tr>
<td>235</td>
<td>Logger Pay Records for Brookbank:<br>computer generated: 6/1-6/30/95; 9/1-9/15/95<br>handwritten: 6/8/95, 6/19/95, 6/22/95, 7/5/95, 7/6/95 (Reg. logs), 7/6/95 (Reg. logs - w. correction), 7/6/95 (Little logs), 7/6/95 (TW/PW to Zellner), 7/14/95, 7/18/95, 7/19/95 (PW to Stone), 7/19/95 (Haul to Zellner), 7/20/95, 8/2/95 (no annotation), 8/2/95 (TW/PW to Stone), 8/4/95, 8/17/95, 9/5/95, 9/7/95, 9/14/95, 9/21/95</td>
<td></td>
<td>Foundation (regarding printed pages). To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. Exhibit is comprised of selected documents and is not complete.</td>
</tr>
<tr>
<td>236</td>
<td>Logger Pay Records for Hay:<br>computer generated: 12/1-12/31/94 ($4,149.99 due); 12/1-12/31/94 ($42,991.47 due); 1/1-1/15/95; 3/1-3/15/95; 5/15-5/31/95; 6/1-6/30/95; 7/1-7/17/95<br>handwritten: 10/1/98, 10/16/98 (first 1/2 Oct), 10/16/98 (Sept. Correction), 11/3/98, 11/17/98, 11/20/98 (correcting 1-16 Nov), 11/20/98 (Scale information for October), 12/2/98, 12/11/98, 12/17/981/21/99</td>
<td></td>
<td>Foundation (regarding printed pages). To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. Exhibit is comprised of selected documents and is not complete.</td>
</tr>
</table>

| | | | | |
|---|---|---|---|---|
| 237 | Logger Pay Records for Hutch-Boondock (all handwritten):<br>11/20/95, 12/5/95, 12/19/95, 1/3/96, 1/17/96, 2/2/96, 2/19/96, 8/20/96, 11/15/96, 12/2/96, 5/5/97, 5/16/97, 7/1/98, 7/17/98, 8/3/98, 8/17/98, 8/28/98 | | Exhibit is comprised of selected documents and is not complete. | See response at PX 234-36, supra. |
| 238 | Logger Pay Records for U-Bar (all computer-generated):<br>5/1-5/31/94; 10/1-10/31/95; 11/1-11/30/94; 12/1-12/31/94; 5/1-5/31/95 | | Foundation (regarding printed pages). To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. Exhibit is comprised of selected documents and is not complete. | See response at PXs 234-36, supra. |
| 239 | Logger Pay memo: Pulpwood from Eagar to Stone | 09/05/1997 | No objection. | NA |
| 240 | Logger Pay memo: Pulpwood U-Bar to Stone | 05/21/1997 | No objection. | NA |
| 241 | Logger Pay memo: Pulpwood U-Bar to Stone | 06/04/1997 | No objection. | NA |
| 242 | Logger Pay memo: Whether Stone or Precision owes balance due to Tri-Star | 12/18/1997 | No objection. | NA |
| 243 | Summary of breached sales not containing Douglas Fir showing award date, average dbh and overrun factor | | Authenticity; foundation; exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 244 | Binder of Precision Pine's lumber sales invoices for CY's '97 & '98 | | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 245 | Binder of Precision Pine's lumber sales invoices for CY's '99 & '00 | | No objection. | NA |
| 246 | Summary of Precision Pine's lumber production 1993-1997 | | Authenticity; foundation; underlying documents are inadmissible (hearsay); Precision Pine did not make the exhibits author, Robert A. Ness, available to discuss how the summary was prepared as required by RCFC App. A. Addressed in a separately filed motion *in limine.* | NA |
| 247 | Summary of Precision Pine's net income for FYE 3/31/92 through FYE 3/31/00 | | Authenticity; foundation; exhibit is inaccurate, misleading and contains expert analysis not appropriate in a summary; exhibit prepared by counsel. Addressed in a separately filed motion *in limine*. | NA |
| 248 | Precision Pine's Income Statements FYE 3/31/92-3/31/01; Statement of Income for 5 months ended August 1995 | | Exhibit is comprised of multiple documents; some documents contain handwriting of unknown origin; the exhibit contains extraneous pages. Foundation (regarding the statement of income for part of 1995). | The fact that the exhibit contains multiple documents is not objectionable, and the Government points to no rule that prohibits combining related and relevant documents into a single exhibit. All the documents are relevant, and the Government raises no objection on those grounds. Even if the Government's assertion that some of the pages are "extraneous" is intended to be an objection based on relevance, the Government still has not identified which pages it considers to be "extraneous." Accordingly, Plaintiff cannot respond to such an objection.<br><br>The foundation for the handwritten portions of the sheets and for the income statements for part of 1995 can be established through the direct testimony of Precision Pine employees at trial. |

| | | | | |
|---|---|---|---|---|
| 249 | Winslow Sales Ledger for August 1995 | 08/1995 | Foundation; hearsay. To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. | The document is admissible pursuant to FRE 803(6) as a record or data compilation kept in the normal course of business.<br><br>The President of Precision Pine can testify at trial as to how the sales ledger was produced and stored as well as how the data shown was recorded. Moreover, the identity and authenticity (foundation) of the ledger can be established under FRE 901(b)(1) by the President's testimony.<br><br>Finally, Plaintiff disclosed the ledger to the Government in discovery. Accordingly, the Government's oblique reference to RCFC 37 is sorely misplaced, because the Government never moved to compel discovery of electronic versions of the ledger. A discovery sanction to exclude evidence under RCFC 37(b)(2)(B) is an extreme sanction that can be imposed only after a party has refused to comply with an order compelling discovery. Morris v. United States, 37 Fed. Cl. 207, 213 (1997). In its Motion for Discovery Sanctions, the Government sought no order seeking the disclosure of the underlying electronic version of the ledger, and the Court entered no such order. See Court's Opinion of Oct. 9, 2003. Accordingly, any motion to now exclude the ledger from evidence based on RCFC 37 is improper, and must be overruled. |
| 250 | Logger Pay Records for Brann:<br>computer generated: 2/1-2/29/96<br>handwritten: 2/19/96, 2/19/96 (deduction for trespass), 3/4/96 | | Foundation (regarding printed pages). To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. Exhibit is comprised of selected documents and is not complete. Same as PX 234. | PX 250 is a duplicate of PX 234. Plaintiff therefore withdraws PX 250 and submits only PX 234. Objections to PX 234 are addressed there. |

| | | | | |
|---|---|---|---|---|
| 251 | Logger Pay Records for Hutch-Boondock (all handwritten):<br>11/20/95, 12/5/95, 12/19/95, 1/3/96, 1/17/96, 2/2/96, 2/19/96, 8/20/96, 11/15/96, 12/2/96, 5/5/97, 5/16/97, 7/1/98, 7/17/98, 8/3/98, 8/17/98, 8/28/98. | | Foundation (regarding printed pages). To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. Exhibit is comprised of multiple documents and is not complete. Same as PX 237. | PX 251 is a duplicate of PX 237. Plaintiff therefore withdraws PX 251 and submits only PX 237. Objections to PX 237 are addressed there. |
| 252 | Logger Pay Records for St. Joe:<br>computer-generated: 6/1-6/31/93, 7/1-7/31/93, 8/1-8/31/93, 4/1-4/30/93, 7/1-7/15/94, 12/1-12/31/94, 1/1-1/31/95, 4/24-4/30/95, 5/1-5/31/95, 6/1-6/30/95, 11/16-11/30/95, 12/1-12/31/95, 1/1-1/31/96, 2/1-2/29/96, 3/1-3/15/96, 4/1-4/30/96, 5/1-5/31/96<br>handwritten: 5/18/95, 6/22/95, 7/5/95, 7/6/95, 12/5/95, 1/5/96, 1/17/96, 2/2/96, 2/12/96, 2/19/96, 3/4/96, 3/8/96, 3/18/96, 3/19/96, 4/16/96, 5/3/96, 5/16/96, 5/16/96 (April correction), 6/4/96 | | Foundation (regarding printed pages). To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. Exhibit is comprised of multiple documents. | See response at PXs 234-36, supra. |
| 253 | Logger Pay memo: Pulpwood from Eagar to Stone | 09/05/1997 | Same as PX 239. | PX 253 is a duplicate of PX 239. Plaintiff therefore withdraws PX 253. |
| 254 | Letter from Tri-Star to John Smith: pulpwood tickets from Jersey Horse left unpaid | 12/15/1997 | Hearsay; relevance. The Court addressed and rejected Precision Pine's "pass-through" claim. | This exhibit is admissible under FRE 803 (6) as a business record of Tri-Star Logging Inc. It is relevant to show that at times Stone bought pulpwood believing that it was from Precision Pine when in fact the pulpwood was Tri-star's and as such that pulpwood on the breached sales could have been sold to Stone both directly by Precision Pine and through Tri-Star to Stone. |

| | | | | |
|---|---|---|---|---|
| 255 | Corrected page C-0048 to Calculations Binder, dated February 26, 2003 re: calculation of damages--grindings | | Foundation; hearsay. | This exhibit is admissible pursuant to FRE 1006 as a calculation of Precision Pine's damages (i.e., the calculation of damages which Mr. Ness subsequently audited. Please be advised that in this regard the requirements laid out in ¶ 13(a) of Appendix A have been met in that the document was provided to the government on Feb. 26, 2003, and the individual who supervised its preparation was identified at deposition at which time defendant could have deposed him with regard to it. Plaintiff can provide a foundation for it at trial. |
| 256 | Government's discovery responses (Defendant's Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents on Quantum) | 07/14/2003 | No objection. | NA |
| 257 | Letter from Smith to Leaverton, re: Hay volume to Winslow | 12/09/1996 | No objection. | NA |
| 258 | Letter from Smith to Leaverton, requesting alternate haul route | 12/09/1996 | No objection. | NA |
| 259 | Letter from Porter to Cartwright, re: status of contracts in region- built Eagar Mill especially for Hay | 06/26/1996 | Hearsay. | As a document that put the Forest Service on notice that its suspension of Precision Pine's contracts was a breach of contract which was resulting in substantial financial harm, this document is not hearsay. In any event, it is admissible both under FRE 803(6) as a business record and under FRE 803(1) as an explanation of an event or condition, Precision Pine's substantial financial harm owing to the Forest Service's alleged breach, that was occurring at the time that the document was written. |
| 260 | Letter from Tenney to Denton, re: plan to haul Hay timber to Eagar | 11/23/1994 | No objection. | NA |
| 261 | Scaling reports at Eagar mill: 6/15/95,12/22/94 | | Foundation; hearsay. | These documents are Forest Service scaling reports, and are not hearsay pursuant to FRE 801(d)(2)(D). Rather, they are the Forest Service's own statements, made by Forest Service employees (i.e., scalers) concerning a matter within the scope and time of their employment--namely the amount of timber weight scaled on the day noted. Alternatively, even if the scaling reports are hearsay, they fall within the exceptions in FRE 803(8) and 803(6). The scaling sheets were prepared by Forest Service employees and presented to Precision Pine as part of the employees' official duties. They are therefore public records under FRE 803(8). Once delivered to Precision Pine, Precision filed the scaling reports with its other |

| | | | | |
|---|---|---|---|---|
| | | | | business records. This fact, coupled with the fact that the scaling records are a data compilation of the amount of timber removed from the sale for which the Forest Service would bill Precision Pine during the regular course of their business, meets the requirements for FRE 803(6).<br><br>The foundations for the documents can be established at trial by the direct testimony or Precision Pine employees. |
| 262 | Letter from Lewis Tenney to Chip Cartwright, re: ability to harvest Hay in winter. | 10/25/1996 | Hearsay. | This letter is a request that the Forest Service take action (i.e., petition the district court to lift the existing injunction at least in part ) so as to permit Precision Pine to re-commence harvesting on several of the suspended sales that would support harvesting in the late fall. As such, it is a business record admissible under FRE 803(6). |
| 263 | Summary of lumber produced at Eagar Mill from timber harvested on Hay Sale | | Authenticity; foundation; underlying documents are inadmissible (hearsay); exhibit purports to summarize inadmissible witness testimony (hearsay); exhibit contains argument and inferences not appropriate in a summary; exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 264 | Excerpts from Eagar production ledger: Feb., Mar. and Apr. 1997 | | Document is incomplete. Same as PX 20. | PX 264 is a duplicate of PX 20. Plaintiff therefore withdraws PX 264. Objections to PX 20 are addressed there. |
| 265 | Letter Smith to Leaverton, re: will haul Hay volume to Eagar starting 2/3/97 | 01/30/1997 | No objection. | NA |
| 266 | Agreement between Precision and Forest Service to scale logs at Heber Mill with attached scale area sketch | 03/04/1998 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 267 | Logger Pay Records for Hay:<br>computer generated: 12/1-12/31/94 ($4,149.99 due); 12/1-12/31/94 ($42,991.47 due); 1/1-1/15/95; 3/1-3/15/95; 5/15-5/31/95; 6/1-6/30/95; 7/1-7/17/95<br>handwritten: 10/1/98, 10/16/98 (first 1/2 Oct), 10/16/98 (Sept. Correction), 11/3/98, 11/17/98, 11/20/98 (correcting 1-16 Nov), 11/20/98 (Scale information for October), 12/2/98, 12/11/98, 12/17/98, 1/21/99 | | Foundation (regarding printed pages). To the extent this document was generated directly from computer records, the records were not produced to the United States in discovery and should be excluded. E.g., RCFC 37. Exhibit is comprised of selected documents and is not complete. | See response at PXs 234-36, supra. |
| 268 | Summary of Hay volume hauling in 1998 | | Authenticity; foundation; relevance; exhibit contains analysis, argument and inferences not appropriate in a summary; exhibit does not accurately represent underlying documents; exhibit not based upon voluminous documents (8 documents); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |

| | | | | |
|---|---|---|---|---|
| 269 | Form ASNF 2400-30, pg.2 "3P Computation Sheet-Volume" for Hay Sale, Sept., 1998, with attached Forest Service Scale data sheets dated 9/30/98 and 10/1/98 | | Foundation; hearsay. | These documents are Forest Service scaling reports, and are not hearsay pursuant to FRE 801(d)(2)(D). Rather, they are the Forest Service's own statements, made by Forest Service employees (i.e., scalers) concerning a matter within the scope and time of their employment--namely the amount of timber weighed at the scale on the day noted. Alternatively, even if the scaling reports are hearsay, they fall within the exceptions in FRE 803(8) and 803(6). The scaling sheets were prepared by Forest Service employees and presented to Precision Pine as part of the employees' official duties. They are therefore public records under FRE 803(8). Once delivered to Precision Pine, Precision filed the scaling reports with its other business records. This fact, coupled with the fact that the scaling records are a data compilation of the amount of timber removed from the sale for which the Forest Service would bill Precision Pine during the regular course of their business, meets the requirements for FRE 803(6).<br><br>The foundations for the documents can be established at trial by the direct testimony or Precision Pine employees. |
| 270 | Excerpts from State of AZ Land Dept. fact sheet | | Hearsay. | Pursuant to FRE 803(8), the document is not excluded by the hearsay rule because it is a statement of a public agency, i.e., the Arizona State Land Department, concerning the activities of that agency and matters over which it has a duty to report. |
| 271 | Precision Pine's Answers to the Government's Requests for Admissions | | Hearsay. | To the extent that the general rule that a party's own responses to a request for admissions are hearsay is applicable, the answers to request for admissions in question are not hearsay vis-à-vis Precision Pine since they were provided by Mr. Porter who had been designated to testify as to matters known or reasonably known to the corporation pursuant to FRCP 30(b)(6). See Pugh v. City of Attica, 259 F.3d 619, 627 n.7 (7th Cir. 2001).<br><br>Moreover, the exhibit is not hearsay under FRE 801 because the plaintiff is not offering it to show the truth of the matter asserted in answers. Rather, it is offered to show that defendant made the indicated requests and that a response was made. |
| 272 | Deposition Transcript (including exhibits) of Leaverton | | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | Pursuant to FRE 801, admissions by a party-opponent, which are contained in this document, are not hearsay. Concomitantly, RCFC 32(a)(2) provides that a deposition of an officer, director or managing agent, such as a contracting officer like Mr. Leaverton, may be used by an adverse party "for any purpose." |

| | | | | |
|---|---|---|---|---|
| 273 | Deposition Transcript (including exhibits) of Lee | | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | Pursuant to FRE 801, admissions by a party-opponent, which are contained in this document, are not hearsay. Concomitantly, RCFC 32(a)(2) provides that a deposition of an officer, director or managing agent, such as a contracting officer like Ms. Lee, may be used by an adverse party "for any purpose." |
| 274 | Deposition Transcript (including exhibits) of Wagonfehr | | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | Pursuant to FRE 801, admissions by a party-opponent, which are contained in this document, are not hearsay. Concomitantly, RCFC 32(a)(2) provides that a deposition of an officer, director or managing agent, such as Mr. Wagonfehr, may be used by an adverse party "for any purpose." |
| 275 | Deposition Transcript (including exhibits) of Broyles | | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | Pursuant to FRE 801, admissions by a party-opponent, which are contained in this document, are not hearsay. Concomitantly, RCFC 32(a)(2) provides that a deposition of an officer, director or managing agent, like a contracting officer such as Mr. Broyles, may be used by an adverse party "for any purpose." |
| 276 | Deposition Transcript (including exhibits) of Harris | | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | Pursuant to FRE 801, admissions by a party-opponent, which are contained in this document, are not hearsay. Concomitantly, RCFC 32(a)(2) provides that a deposition of an officer, director or managing agent, such as Mr. Harris, may be used by an adverse party "for any purpose." |
| 277 | Deposition Transcript (including exhibits) of Fink | | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | Pursuant to FRE 801, admissions by a party-opponent, which are contained in this document, are not hearsay. Concomitantly, RCFC 32(a)(2) provides that a deposition of an officer, director or managing agent, such as Mr. Fink, may be used by an adverse party "for any purpose." |
| 278 | Deposition Transcript (including exhibits) of Hogg | | Hearsay – under FRE 804 a prior sworn statement is admissible only if the witness is unavailable. | Pursuant to FRE 801, admissions by a party-opponent, which are contained in this document, are not hearsay. Concomitantly, RCFC 32(a)(2) provides that a deposition of an officer, director or managing agent, such as a contracting officer like Mr. Hogg, may be used by an adverse party "for any purpose." |

| | | | | |
|---|---|---|---|---|
| 279 | Kettle Pre-sale report and Appraisal | Prepared: 06/07/1995 | Document is incomplete. | As to the completeness of the document, Plaintiff responds as it did at PXs 31-34. In sum, the Government has not alleged that under FRE 106 any other portions of the document "ought in fairness to be considered contemporaneously" with the portion Plaintiff selected, and even if certain other portions of the document help to further define, clarify or place the selected portion in context, the Government has not shown that other remedies are not adequate. |
| 280 | Excerpt from Brann Cruise Report: Sale Summary page 5 | 09/21/1994 | Document is incomplete. | **As described in the text of the pleading to which this chart is attached, defendant's objection to this exhibit is untimely and thus should be considered to have been waived.** Without prejudice to this position, Plaintiff responds to the government's assertion that the document is incomplete by relying on its response at PXs 31-34, supra. In sum, the Government has not alleged that under FRE 106 any other portions of the document "ought in fairness to be considered contemporaneously" with the portion Plaintiff selected, and even if certain other portions of the document help to further define, clarify or place the selected portion in context, the Government has not shown that other remedies are not adequate. |
| 281 | Contracting Officer's final decision for Jersey Horse | 03/16/1998 | Same as PX 203. | Exhibit No. 281 of Plaintiff's Final Exhibit List incorrectly refers to the date of the Contracting Officer's Final Decision for Precision Pine's Claim against the Forest Service for the Forest Service's breach of the Jersey Horse timber sale (dated March 16, 1998). As shown on Plaintiff's Preliminary Exhibit List (Preliminary Exhibit No. 120), the exhibit was intended to refer to the Contracting Officer's Final Decision for Precision Pine's default of the Jersey Horse timber sale (dated March 1, 2001).<br><br>The correct Final Decision is referenced in the Court's decision of October 29, 2004 in Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635, 639. |

| | | | | |
|---|---|---|---|---|
| 282 | Contracting Officer's final decision for Monument | 08/15/1997 | Same as PX 217. | Exhibit No. 282 of Plaintiff's Final Exhibit List incorrectly refers to the date of the Contracting Officer's Final Decision for Precision Pine's Claim against the Forest Service for the Forest Service's breach of the Monument timber sale (dated Aug. 15, 1997). As shown on Plaintiff's Preliminary Exhibit List (Preliminary Exhibit No. 120), the exhibit was intended to refer to the Contracting Officer's Final Decision for Precision Pine's default of the Monument timber sale (dated Feb. 21, 2001).<br><br>The correct Final Decision is referenced in the Court's decision of October 29, 2004 in <u>Precision Pine & Timber, Inc. v. United States</u>, 62 Fed. Cl. 635, 639. |
| 283 | Contracting Officer's final decision for O.D. Ridge | 03/16/1998 | Same as PX 209. | Exhibit No. 283 of Plaintiff's Final Exhibit List incorrectly refers to the date of the Contracting Officer's Final Decision for Precision Pine's Claim against the Forest Service for the Forest Service's breach of the O.D. Ridge timber sale (dated March 16, 1998). As shown on Plaintiff's Preliminary Exhibit List (Preliminary Exhibit No. 120), the exhibit was intended to refer to the Contracting Officer's Final Decision for Precision Pine's default of the O.D. Ridge timber sale (dated March 1, 2001).<br><br>The correct Final Decision is referenced in the Court's decision of October 29, 2004 in <u>Precision Pine & Timber, Inc. v. United States</u>, 62 Fed. Cl. 635, 639. |
| 284 | Contracting Officer's final decisions for Saginaw-Kennedy | 12/04/1997 | Same as PX 213. | Exhibit No. 284 of Plaintiff's Final Exhibit List incorrectly refers to the date of the Contracting Officer's Final Decision for Precision Pine's Claim against the Forest Service for the Forest Service's breach of the Saginaw-Kennedy timber sale (dated Dec. 4, 1997). As shown on Plaintiff's Preliminary Exhibit List (Preliminary Exhibit No. 120), the exhibit was intended to refer to the Contracting Officer's Final Decision for Precision Pine's default of the Saginaw-Kennedy timber sale (dated March 1, 2001).<br><br>The correct Final Decision is referenced in the Court's decision of October 29, 2004 in <u>Precision Pine & Timber, Inc. v. United States</u>, 62 Fed. Cl. 635, 639. |

| | | | | |
|---|---|---|---|---|
| 285 | Contracting Officer's final decisions for Salt | 03/16/1998 | Same as PX 195. | Exhibit No. 285 of Plaintiff's Final Exhibit List incorrectly refers to the date of the Contracting Officer's Final Decision for Precision Pine's Claim against the Forest Service for the Forest Service's breach of the Salt timber sale (dated March 16, 1998). As shown on Plaintiff's Preliminary Exhibit List (Preliminary Exhibit No. 120), the exhibit was intended to refer to the Contracting Officer's Final Decision for Precision Pine's default of the Salt timber sale (dated April 15, 1999).<br><br>The correct Final Decision is referenced in the Department of Agriculture Board of Contract Appeals' decision of May 22, 2000 in Precision Pine & Timber, Inc., AgBCA No. 99-160-1, 00-2 BCA 30, 942. |
| 286 | Contracting Officer's final decisions for U-Bar | 12/01/1997 | Same as PX 215. | Exhibit No. 286 of Plaintiff's Final Exhibit List incorrectly refers to the date of the Contracting Officer's Final Decision for Precision Pine's Claim against the Forest Service for the Forest Service's breach of the U-Bar timber sale (dated Dec. 1, 1997). As shown on Plaintiff's Preliminary Exhibit List (Preliminary Exhibit No. 120), the exhibit was intended to refer to the Contracting Officer's Final Decision for Precision Pine's default of the U-Bar timber sale (dated Feb. 21, 2001).<br><br>The correct Final Decision is referenced in the Court's decision of October 29, 2004 in Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635, 639. |
| 287 | Rebuttal Exhibit re: Moosman's use of sales journals | 02/26/2005 | Addressed in a separately filed motion *in limine.* | NA |
| 288 | Summary of Precision Pine's product mix at various times | | Authenticity; foundation; underlying documents are inadmissible (hearsay); exhibit contains analysis, argument and inferences not appropriate in a summary; exhibit not based upon voluminous documents (2 documents); Precision Pine did not make the author of page 1 of the exhibit, Robert A. Ness, available to discuss | NA |

| | | | | |
|---|---|---|---|---|
| | | | how the summary was prepared as required by RCFC App. A; page 2 of the exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | |
| 289 | Summary of Precision Pine's production by lumber product (July 1994 – July 1995) (13 pages) | | Authenticity; foundation; exhibit not based upon voluminous documents (1 document); exhibit prepared by counsel. Addressed in a separately filed motion *in limine.* | NA |
| 290 | TSSA's for the breached sales | | No objection. | NA |
| 291 | Precision Pine's CPA's (Baldwin Jones') work papers: Inventory sheets from "Section F" for FYE 3/31/93, 3/31/94, 3/31/95, 3/31/96, 3/31/97; inventory sheet dated 8/31/95 | | Foundation; hearsay; exhibit is comprised of multiple documents; documents are incomplete. | Plaintiff will lay a proper foundation at trial. The work papers of Precision Pine's CPA which accompany the annual reviewed financial statement it prepares are admissible under FRE 803(6) as a memorandum or data compilation, which can be in any form, of events, conditions or opinions made by agents for Precision Pine which are kept in the normal course of Precision Pine's business. See generally, United States v. Frazier, 53 F.3d 1105, 1110 (10th Cir. 1995) (audit report of accountant admitted as business record); United States v. Blackwell, 954 F.Supp. 944, 973-74 (D.N.J. 1997) (financial audit of bank admitted as business record); Condus v. Howard Savings Bank, 986 F.Supp. 914, 918 (D.N.J. 1997) (report prepared by outside company hired by bank to provide assessment of loss reserves admissible as business record). |

| | | | | |
|---|---|---|---|---|
| 292 | Precision Pine's CPA's (Baldwin Jones') work papers:<br>Lead schedules for FYE 1995 - 1998<br>"Adjusting Journal Entries" FYE 3/31/96<br>Winslow Sales Records: FYE 3/97, FYE 3/96, FYE 3/94<br>Winslow Shipments: FYE 3/95<br>Winslow Production report: FYE 3/94<br>Snowflake Sale Records: FYE 3/95 | | Foundation; hearsay; exhibit is comprised of multiple documents; documents are incomplete. | Plaintiff will lay a proper foundation at trial. The work papers of Precision Pine's CPA which accompany the annual reviewed financial statement it prepares are admissible under FRE 803(6) as a memorandum or data compilation, which can be in any form, of events, conditions or opinions made by agents for Precision Pine which are kept in the normal course of Precision Pine's business. See generally, United States v. Frazier, 53 F.3d 1105, 1110 (10th Cir. 1995) (audit report of accountant admitted as business record); United States v. Blackwell, 954 F.Supp. 944, 973-74 (D.N.J. 1997) (financial audit of bank admitted as business record); Condus v. Howard Savings Bank, 986 F.Supp. 914, 918 (D.N.J. 1997) (report prepared by outside company hired by bank to provide assessment of loss reserves admissible as business record). |
| 293 | Precision Pine's CPA's (Baldwin Jones') financial statements FYE's 3/31/91-3/31/98 | | Foundation; exhibit is comprised of multiple documents; documents contain handwritten notes of unknown origin; exhibit contains extraneous pages; hearsay as to "adjusting journal entries" document. | Plaintiff will lay a proper foundation at trial. The adjusting journal entries are admissible under FRE 803(6) as a memorandum or data compilation, which can be in any form, of events, conditions or opinions made by agents for Precision Pine and kept in the normal course of Precision Pine's business. See United States v. Frazier, 53 F.3d 1105, 1110 (10th Cir. 1995) (audit report of accountant admitted as business record); United States v. Blackwell, 954 F.Supp. 944, 973-74 (D.N.J. 1997) (financial audit of bank admitted as business record); Condus v. Howard Savings Bank, 986 F.Supp. 914, 918 (D.N.J. 1997) (report prepared by outside company hired by bank to provide assessment of loss reserves admissible as business record). |
| 294 | Winslow Sales Journal 1994-2000 | | No objection. | NA |
| 295 | Binder of Precision Pine's Answers and Supplemental Answers to Interrogatories | | Hearsay. | To the extent that the general rule that a party's own responses to a request for admissions are hearsay is applicable, the answers to the request for admissions in question are not hearsay vis-à-vis Precision Pine since they were provided by Mr. Porter who had been designated to testify as to matters known or reasonably known to the corporation pursuant to FRCP 30(b)(6). See Pugh v. City of Attica, 259 F.3d 619, 627 n.7 (7th Cir. 2001). |
| 296 | Letter from John Smith to Susan Lee, with attached copy of contract clause CT3.431 (8/97) | 09/08/1997 | No objection. | NA |

| | | | | |
|---|---|---|---|---|
| 297 | Contract clause CT3.43 (9/91) | | Relevance; incomplete document. | This document is relevant because it is a standard clause developed by the Forest Service in Region 3 in September 1991, which purchasers could request that the Forest Service add to their timber sale contracts that included pulpwood. Under the clause, removal of pulpwood became optional instead of required. By exercising that option, the contractor could thus obviate the considerable cost of hauling pulpwood -- something quite important if there were no market for pulpwood. |
| 298 | Letter from Precision Pine to Eleanor Towns, Regional Forester, re: issues in Region 3 | 05/04/1999 | Hearsay. | This document represents a proposal by Precision Pine seeking the Forest Service's agreement both to modify existing timber sale contracts held by Precision Pine in several significant ways and to make certain changes in future timber sales offered for bid. As such, this document is admissible under FRE 803(6) as a business record. |
| 299 | Letter from Lewis Tenney to Ken Broyles, re: impact of suspension on Precision Pine's operations | 09/05/1995 | Relevance; hearsay. | As a document intended to put the Forest Service on notice that its suspension of Precision Pine's contracts was a breach of contract this document is admissible under FRE 803(6) as a business record. For the same reason it is entirely relevant to this litigation. |
| 300 | Letter from Lorin Porter to David Harris, re: impact of suspensions on Precision Pine's operations | 10/04/1995 | Hearsay. | As a document intended to put the Forest Service on notice that its suspension of Precision Pine's contracts was a breach of contract which was resulting in substantial financial harm, this document is admissible both under FRE 803(6) as a business record and under FRE 803(1) as an explanation of an event or condition, Precision Pine's substantial financial harm owing to the Forest Service's alleged breach, that was occurring at the time that the document was written. |
| 301 | Snowflake sales journal (April 1993-March 1995) | | No objection. | NA |