**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION**
**OF THE COURT ORDER ALLOWING PLAINTIFF TO WITHDRAW**
**ITS ANSWER TO REQUEST FOR ADMISSION NUMBER 10**

## INTRODUCTION

On April 29, 2005, the Court granted plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), leave to file "a response to a new and unexpected matter" allegedly raised by the United States in its pretrial memorandum. Order of Judge George W. Miller at 1 (Apr. 29, 2005) (docket no. 339). Additionally, without affording the United States an opportunity to respond on the merits, the Court granted Precision Pine's underlying motion, which sought leave to withdraw an admission made at the outset of damages discovery nearly two years ago. Id.

Because the United States had no opportunity to respond to the merits of the underlying motion,[1] because the Court's order is based upon a manifest mistake of fact, and because the United States will be severely prejudiced if Precision Pine is allowed to withdraw its admission on the eve of trial, the United States seeks reconsideration of the Court's April 29, 2005 order allowing Precision Pine to amend its answer to request for admission number 10.

---

[1] The same order that granted Precision Pine leave to file also granted the relief sought in the underlying motion. See Order at 1.

## ARGUMENT

### I. Standard of Review

"A [motion for] reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity as between private parties in the courts of the United States." RCFC 59(a). "For a movant to prevail, he must point to a 'manifest error of law, or mistake of fact' and demonstrate that the motion 'is not intended to give an unhappy litigant an additional chance to sway the court.'" Strickland v. United States, 36 Fed. Cl. 651, 657 (1996) (quoting Circle K Corp. v. United States, 23 Cl. Ct. 659, 664-65 (1991)); see also Third Fifth Bank of W. Ohio v. United States, 52 Fed. Cl. 637, 638-39 (2002).

The Court's order is based upon a manifest mistake of fact, namely, that the "focus on post-suspension harvesting" in this action is "relatively recent." Order at 1. Further, because the Court granted the underlying relief sought by Precision Pine before a response on the merits could be filed, this motion constitutes the United States' first opportunity to be heard. This motion for reconsideration should, therefore, be granted.

### II. The Court's Order Is Based Upon A Manifest Mistake Of Fact

The Court stated that it was allowing Precision Pine to withdraw its answer to request for admission number 10 because "of the relatively recent focus on post-suspension harvesting." Order at 1. Apparently, the Court took at face value Precision Pine's representation that "post-suspension harvesting" is a new issue. See Pl.'s Response to a New & Unexpected Matter, at 1 (stating that "[a]t that time no issue had been raised regarding Precision Pine's post-suspension operations"). Precision Pine's representation to the Court is false.

On June 20, 2003, the United States served its first interrogatories, requests for production, and requests for admission regarding damages.[2] See Def.'s First Set of Interrogs. & Requests for Production of Docs. Regarding Damages (served June 20, 2003) (attached, in pertinent part, as Exhibit A); Def's First Set of Requests for Admission on Damages (served June 20, 2003) (attached as Exhibit B). In the instructions section, the United States explicitly stated that the "discovery requests relate to the period between June 1991 and July 2000, inclusive." Ex. A at iii (emphasis added). Additionally, the United States' discovery requests specifically inquired about post-suspension operations.[3] In interrogatory number 34, for instance, the United States asked Precision Pine to explain in detail why "it did not harvest timber . . . after the suspension of a contract was lifted." Ex. A at 34 (emphasis added). Similarly, interrogatory number 6 asked Precision Pine to identify and describe the timber sale contracts it entered into "between June 24, 1991 and July 31, 2000." Ex. A at 6. Other interrogatories were keyed to interrogatory number 6 in order to obtain information about post-suspension operations, see Ex. A (interrog. nos. 7-9, 15-17, 23-24), or expressly asked about the post-suspension period, see id (interrog nos. 18-20, 26-28, 30). The United States' requests for production of documents likewise sought information about the post-suspension period. See id. (request for production nos. 4-5, 9, 11, 14-15 & 17).

Plaintiff's counsel is well aware that the United States was seeking information about post-suspension operations at the outset of damages discovery. Indeed, Precision Pine argued

---

[2] The United States discovery requests were served simultaneously by hand delivery.

[3] The United States did not receive answers to certain interrogatories as the Court ruled that Precision Pine could make business records available pursuant to RCFC 33(d) in lieu of providing interrogatory answers. See Order of Chief Judge Damich (Oct. 9, 2003).

repeatedly that the United States' discovery requests were too broad for this very reason. For instance, on the very day that Precision Pine admitted request for admission number 10, Precision Pine complained that the United States' "discovery requests . . . are extremely broad . . . as to time frame." See Pl.'s Resp. to Def's First Set of Interrogs. & Requests for Production of Docs. Regarding Damages at 1 (served Aug. 25, 2005) (attached, in pertinent part, as Exhibit C). And Precision Pine objected repeatedly that the United States' discovery "related to . . . numerous contracts by which Precision Pine secured timber for its operations from June 24, 1991 to August 1, 2000 . . . [and, therefore,] is both overly broad and unduly burdensome." Id. at 8 (objecting to, among others, interrogatories 6-8, 15-17, 19, 23-24 & 30). Precision Pine reiterated complaints about the broad time frame of the United States' discovery requests in response to a subsequent motion for discovery sanctions, see Pl.'s Response to Def's Mot. for Sanctions at 2 (filed Sept. 16, 2003) (stating that "the United States chose to serve exceedingly broad . . . [discovery requests] many of which seek information about Precision Pine . . . over nearly a ten year period.") (attached, in pertinent part, as Exhibit D) – complaints that were repeated once again by plaintiff's counsel, Mr. Saltman, at oral argument.

In responding to Mr. Saltman at oral argument, on October 1, 2003, the United States specifically apprised both Precision Pine and the Court that information about post-suspension operations was needed because post-suspension profits should be offset from alleged lost profits:

> MR. HARRINGTON: Just touching on Interrogatory No. 27, this is central to the lost-profits claim. I would like to note that in their brief in response to our motion [for discovery sanctions], they say that they have no contention during periods outside of the suspension. And I would like to suggest that, first of all, if that is, in fact, the case, their lost-profits claim necessarily fails because in order to maintain their lost-profits claim, they do not merely need to show what they could have sold the lumber for during the period

> of the suspension, but they need to show that that number is higher than what they could have sold it for after the suspension . . . because if that's not the case, then they haven't been harmed by the suspension. . . .
>
> THE COURT: You can make that argument at trial. . . .
>
> MR. HARRINGTON: My point is simply that we anticipated receiving a full answer for the full period of time . . . that we're asking [about].

Tr. at 172-73 (Oct. 1, 2003) (attached as Exhibit E).

Chief Judge Damich rejected Precision Pine's objections to the scope of the United States' discovery and ordered Precision Pine to provide additional information, including information about the post-suspension period. See Order of Chief Judge Damich at 3 (Oct. 2, 2003) (ordering Precision Pine to "provid[e] all information requested through the end of each contract"). When Precision Pine failed to provide full information about the post-suspension period in accordance with the Court's October 2, 2003 order, the Court again ordered that the information be provided and, ultimately, awarded sanctions as a result of Precision Pine's intransigence. See Order of Chief Judge Damich at 1 (Oct. 20, 2003) (ordering to Precision Pine to "further supplement its answers" to provide, among other things, alleged lumber sale prices in the post-suspension period); Order of Chief Judge Damich at 1 (Oct. 23, 2003) (stating that Precision Pine "shall explain in detail why it did not harvest timber that it anticipated harvesting during the suspension, after the suspension was lifted") (emphasis in original); Order of Chief Judge Damich (Jan. 30, 2004) (awarding sanctions against Precision Pine).

No good faith basis exists for Precision Pine's representation to the Court that "no issue had been raised regarding post-suspension operations" at the outset of quantum discovery. See RCFC 11(b); see also RCFC 11(c)(1)(B) ("On its own initiative, the court may enter an order

describing the specific conduct that appears to violate subdivision (b) and directing an attorney to show cause why it has not violated subdivision (b).”). Precision Pine’s contention that it “reasonably construed Request Number 10 to refer exclusively to the period during which Precision Pine’s sales were suspended” is equally incorrect. See Ex. A at iii (stating explicitly that the United States’ “discovery requests relate to the period between June 1991 and July 2000, inclusive.”).

The Court apparently relied upon Precision Pine’s inaccurate representations. See Order at 1 (referring to the supposed “relatively recent focus on post-suspension harvesting”). As a result, the Court’s order is based upon a manifest mistake of fact.

## III. The Court’s Order Works A Manifest Injustice

Not only is the Court’s order based upon a false factual predicate, allowing Precision Pine to withdraw its admission a mere two weeks before trial severely prejudices the defense in this action. Put simply, the Court’s order works a manifest injustice.

On August 25, 2003, Precision Pine admitted that it had not foregone any opportunity to obtain additional timber for its operations as a result of the MSO suspensions. DX780. As a result, when the United States took depositions of key Precision Pine personnel during damages discovery, no testimony was elicited about what additional contracts Precision Pine would have bid on and entered into “but for” the MSO suspensions. This was for a simple reason: Precision Pine’s admission had obviated the need for such testimony. See RCFC 36 (“Any matter admitted under this rule is conclusively established.”); SAI Indus. Corp. v. United States, 63 Fed. Cl. 1, 4 n.8 (2003) (citing E.C. McAfee A/C Bristol Metal Industries of Canada v. United States, 832 F.2d 152, 154 (Fed. Cir. 1987)).

If it had not been conclusively established that Precision Pine did not forego the purchase of timber as a result of the MSO suspensions, the United States would have sought discovery concerning potential post-suspension timber purchases including, but not limited to, (1) the amount of timber Precision Pine would have attempted to have under contract, (2) the standards Precision Pine would have used to select contracts to bid on, (3) the contracts that Precision Pine contends it would have bid on, (4) the contracts that Precision Pine contends it would have been awarded, and (5) the profits that Precision Pine would have been able to earn upon such contracts. Because the United States did not obtain discovery upon these issues, the United States lacks the information necessary to prepare an effective cross-examination of Precision Pine's trial witnesses.

The United States is further prejudiced by the timing of Precision Pine's request to withdraw its admission. Precision Pine recognized (or should have recognized) long ago that its admission was inconsistent with the "lost volume seller" claim it now asserts. Yet Precision Pine waited to file a motion until after the United States invoked the admission in its pretrial brief. The timing of Precision Pine's request (less than a month before trial) has foreclosed any chance of conducting additional discovery without a continuance of trial. Moreover, if the trial proceeds on schedule, allowing Precision Pine to withdraw its admission two weeks before trial would exacerbate the prejudice faced by the United States. The United States relied upon Precision Pine's admission in conducting discovery, in preparing witness and exhibit lists, and in developing a strategy for trial. Permitting Precision Pine admission to be withdrawn at this late date would give the United States no opportunity to develop facts or testimony to rebut Precision Pine's contentions. Because of the severe prejudice to the United States that would result,

Precision Pine's request to withdraw the admission to request for admission number 10 should be denied. See, e.g., RCFC 36 (allowing withdrawal or amendment of an admission only where no prejudice will result); Republic Sav. Bank v. United States, 57 Fed. Cl. 73, 74-75 (2003) (denying leave to amend admissions where the opposing party "ha[d] already relied heavily on these admissions in the development of their litigation strategy [and] used the admissions to shape discovery, which [had] ended years ago"); Health Ins. Plan of Greater N.Y. v. United States, 56 Fed. Cl. 718, 719 (2003) (explaining that withdrawal should not be allowed where a party will be prejudiced because it "will find it difficult to prove its case, for example, because of the sudden need to obtain evidence with respect to questions previously answered by the admissions").

## CONCLUSION

Accordingly, the United States respectfully requests that the Court grant this motion for reconsideration and deny Precision Pine's request to withdraw its answer to request for admission number 10.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

May 2, 2005