IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS REGARDING DAMAGES**

Pursuant to the Rules of the United States Court of Federal Claims ("RCFC"), the defendant, the United States, requests that plaintiff respond fully to each of the following interrogatories and requests for production of documents within 30 days.

These interrogatories and requests for production of documents (collectively, "discovery requests") shall be deemed continuing to the full extent contemplated by the RCFC, so as to require supplementation if you obtain responsive information, discover responsive documents, or add new claims after your original responses. Supplemental responses should be provided within the time provided by the RCFC.

In responding to these discovery requests, you should be guided by the following instructions and definitions.

154-98-720
(05)

## INSTRUCTIONS

Responses to these discovery requests must include information and documents, wherever located, that are possessed or controlled by the plaintiff, its affiliates, joint ventures, directors, officers, partners, employees, agents, subcontractors without limitation, attorneys, investigators, successors, assignees, and any and all other persons who are acting or who have acted for or upon behalf of either plaintiff. If you can provide only part of the information sought by a discovery request, provide all the information you can and state why you cannot provide the remainder.

Responses may incorporate by reference other responses that supply or identify the same information or documents.

If you object to any portion of a discovery request, provide all information or documents sought by that portion of the request to which you do not object. Whenever an interrogatory calls for the identity of a document or oral communication that you assert is privileged, state the identity of such document or other communication, the fact of such claim of privilege, and the basis for the claim.

If any document referred to in these discovery requests no longer exists or is otherwise destroyed or disposed of, identify each document; state the date of, the circumstances, and reason for such destruction or disposal; identify the persons responsible for the destruction or disposal; and provide all information which would help us to obtain that document or a copy of it. If any responsive document was destroyed or disposed of, describe plaintiff's procedures and policies concerning document destruction/retention in effect since its receipt of the solicitation for the contract.

Except as otherwise specified, defendant's discovery requests relate to the period between June 1991 and July 2000, inclusive.

## DEFINITIONS

For the purposes of these discovery requests, the following definitions apply:

1. "Document" is defined in the broadest terms currently recognized pursuant to the RCFC and the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. The term shall include, without limitation, any written or other compilation of information, whether printed, handwritten, recorded, encoded, produced, reproduced, or reproducible by any other process, drafts, revisions, or final versions, original or preliminary notes, and documents summarizing other documents, inter-company, inter-agency, intra-company or intra-agency communications of any type, computer tapes, and computer files, and all of their contents. "Document" includes, but is not limited to: correspondence, memoranda, contractual documents, specifications, drawings, affidavits, agreements, analysis, appointment books, appointment calendars, bank checks, bills, blueprints, bookkeeping entries, calculations, canceled checks, cashiers checks, charts, checks, check stubs, communications, computer printouts, contracts, correspondence, court filings, day books, declarations, depositions, desk calendars, diagrams, diaries, drafts, drawings, expense reports, files, forecasts, graphs, invoices, interview notes, ledgers, letters, lists, log books, mailgrams, memoranda, minutes, notebooks, note pads, notes, papers, photographs, plans, projections, proposals, receipts, records, reports, sketches, sound recordings, statements, studies, summaries, surveys, tape recordings, telefax, telegrams, telephone logs, time records, time sheets, transcripts, travel vouchers, vouchers, working papers, work sheets, and all other papers, writings, drawings, recordings, or physical things containing

information, including all original and amended versions of the documents, preliminary and subsequent drafts or marginal notes appearing upon any documents, however denominated or described by the party to whom the interrogatory and/or request for production of documents is directed. "Document" shall further collectively include the original, duplicate original and any or all copies or reproductions of the original document, to the extent that any or all copies are different in any way from the original document, whether by interlineation, receipt stamps, notation, indication of copies sent or received or otherwise, which are within your possession, custody or control.

2. The "Government" refers to the United States of America and all agencies, departments, and subsidiary units thereof, including without limitation the Department of Agriculture ("Agriculture").

3. "You," "your," and "Precision Pine" refer to plaintiff Precision Pine & Timber, Inc., any entity owned, in whole or in part, or controlled by Precision Pine, and all present and past owners, employees, contractors, subcontractors, agents, consultants, investigators, directors, officers, experts, and representatives, including counsel and all other persons or entities acting or purporting to act upon Precision Pine's behalf.

4. "Person" means any natural person, corporation, partnership, other business association, or entity recognized by law, and the employees or independent contractors thereof, and any domestic or foreign government body, commission, board, agency, branch, department, component, or element thereof.

5. "And" and "or" are to be construed conjunctively or disjunctively in order to afford the defendant's discovery request its broadest scope.

6. "Each" means each and every.

7. "Relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, or in any way pertaining to the subject specified.

8. The "complaint" means the operative complaint filed in case No. 98-720C in the United States Court of Federal Claims.

9. "Identify" and "identity," with respect to a <u>document</u>, means to state:

(a) the name of the person who prepared it;

(b) the name of the person who signed it or over whose name it was issued;

(c) the name of each person to whom it was addressed or distributed;

(d) its nature and substance with sufficient particularity to enable it to be identified;

(e) its date and the date it was prepared;

(f) each of its identifying numbers, titles, and designations;

(g) its physical location and the identity of its custodian or custodians; and

(h) whether it has been or will be, without the necessity of a formal motion for production, made available to defendant for inspection and copying, and if it will not be made available, why not.

10. "Identify" and "identity," with respect to any <u>course of action or conduct</u> referred to, means to identify each act, event, transaction, occasion, incident, or matter that is part of the course of action or conduct, including:

(a) the date, time, and place that it occurred;

(b) the identity of each person participating and a statement of capacity, title, or job description of such person;

(c) a statement of the subject matter; and

(d) a statement whether any notes, minutes, or other memoranda were made and, if so, a statement identifying the notes, minutes or other memoranda.

11. "Identify" and "identity," with respect to a natural person, means to state his or her:

(a) full name;

(b) present residence address and telephone number; if unknown, state the last known residence address and telephone number, and the last known date the person resided there;

(c) present employer, business address, telephone number, and job title; if unknown, state the last known business address and telephone number, and the last known date the person was employed there;

(d) employer, address, telephone number, and job title at the time of the event, transaction, or occurrence to which the interrogatory relates.

12. "Identify" and "identity," with respect to other than a natural person, means to state the:

(a) full name;

(b) present or last known address;

(c) date of incorporation;

(d) place(s) of business at the present time and at all times relevant to the interrogatory involved;

(e) type(s) of business(es) in which it is engaged at present and was engaged at all times relevant to the interrogatory involved;

(f) nature or customary business description (e.g., corporation, trust, etc.);

(g) person or persons who acted upon behalf of such entity with respect to the subject matter of the interrogatory; and

(h) any ownership interest of Precision Pine & Timber, Inc. in such entity.

13. An interrogatory asking you to "explain in detail," "describe in detail," "state each fact," or to "state all facts" seeks disclosure of each and every fact, circumstance, condition, and thing you know about the subject of that interrogatory and full identification and description of the source(s) of such facts, circumstances, conditions, and things, including, but not limited to, identification of each person having knowledge of, and each document containing information relating to, such fact, circumstance, condition, or thing.

14. The phrase "mills at issue" refers to the Precision Pine's Eagar, Heber and Winslow sawmills, Precision Pine's Winslow planer, Precision Pine's pellet mill, and any other facility with respect to which Precision Pine seeks to recover damages in this action.

15. The phrase "contracts at issue" refers to the contracts identified in paragraph 4 of the amended complaint in this action, *i.e.*, the O.D. Ridge (contract no. 001574), Kettle (contract no. 001830), Hay (contract no. 001152), Brookbank (contract no. 001822), Jersey Horse (contract no. 001756), Salt (contract no. 005937), Manaco (contract no. 004625), St. Joe (contract no. 001582), Hutch-Boondock (contract no. 005465), Mud (contract no. 005556),

Saginaw-Kennedy (contract no. 006585), Brann (contract no. 006577), U-Bar (contract no. 005051) and Monument (contract no. 005564) timber sale contracts.

16. The phrase "*Silver v. Thomas* litigation" refers to case no. 94-1610 in the United States District Court for the District of Arizona.

17. The phrase "suspension of the contracts at issue" refers to the suspension of the contracts at issue by the Forest Service on August 25, 1995 as a result of the *Silver v. Thomas* litigation.

**INTERROGATORY NO. 6.**

Describe in detail each contract, agreement or other arrangement by which Precision Pine purchased or was entitled to procure timber, from whatever source, public or private, between June 24, 1991 and August 1, 2000, including but not limited to: the date that the contract, agreement or other arrangement was entered into or acquired by Precision Pine; the date that the contract, agreement or other arrangement terminated or was transferred, assigned or sold by Precision Pine; any name commonly used to identify the contract, agreement or arrangement (*e.g.*, O.D. Ridge); the identity of the seller of the timber; the location of the timber; the total volume of timber available for purchase; the species of timber available for purchase (*e.g.*, Ponderosa Pine); the volume of each species and size class of timber available for purchase; and the price to be paid for each species and size class of timber available for purchase.

**ANSWER:**

**INTERROGATORY NO. 7.**

If any contract, agreement or other arrangement identified in response to interrogatory no. 6 was sold, assigned or otherwise transferred by Precision Pine, describe the transaction in detail, including, but not limited to, the transaction's date, the identity of the purchaser, assignee or transferee, the sale price, the amount of timber or other material that remained to be harvested at the time of the transaction, and the identity of all persons who negotiated, approved or were otherwise involved with the transaction on behalf of Precision Pine or otherwise.

**ANSWER:**

**INTERROGATORY NO. 8.**

With respect to each contract, agreement or other arrangement identified in response to interrogatory no. 6, describe in detail the actual harvest of timber or other material obtained by Precision Pine, including, for each month in which any timber or other material was harvested, the total volume of timber or other material harvested, the species and size class of timber or other material harvested, the volume of each species and size class of timber or other material harvested, and the mill or other facility to which the harvested timber or other material was shipped for processing.

**ANSWER:**

**INTERROGATORY NO. 9.**

With respect to each contract, agreement or arrangement identified in response to interrogatory no. 6, describe in detail Precision Pine's plan for operating each mill at issue and harvesting remaining timber and other material as of August 24, 1995, including, but not limited to, the months in which Precision Pine anticipated to harvest and, for each month in which harvesting was anticipated, the species and size class of timber or other material that Precision Pine expected to harvest, the volume of each species and size class of timber or other material that Precision Pine expected to harvest, and the mill at which Precision Pine expected to process the timber or other material that it harvested.

**ANSWER:**

**INTERROGATORY NO. 15.**

For each contract, agreement or other arrangement identified in response to interrogatory no. 6, identify each contractor, subcontractor, subsidiary or other person that performed or was engaged to perform any logging or timber harvesting work on behalf of Precision Pine.

**ANSWER:**

**INTERROGATORY NO. 16.**

For each contractor, subcontractor, subsidiary or other person identified in response to interrogatory no. 15, describe in detail all work performed on behalf of Precision Pine, including, but not limited to, the contract, agreement or other arrangement upon which work was performed, the periods during which work was performed on each contract, and for each month in which work was performed, the nature of the work and the amount owed by Precision Pine for such work.

**ANSWER:**

**INTERROGATORY NO. 17.**

For each contractor, subcontractor, subsidiary or other person identified in response to interrogatory no. 15, describe in detail their capacity to harvest timber on behalf of Precision Pine, including, but not limited to, a description of all equipment and personnel assigned or dedicated to harvest the contracts at issue in each month between August 1993 and December 1998.

**ANSWER:**

**INTERROGATORY NO. 18.**

For each of the mills at issue, state the total volume of timber or other material from each source that was processed by the facility during each month between June 1991 and July 2000.

**ANSWER:**

**INTERROGATORY NO. 19.**

For each of the mills at issue, identify the volume of each product for which Precision Pine seeks the recovery of lost profits that was produced during each month between June 1991 and July 2000.

**ANSWER:**

**INTERROGATORY NO. 20.**

For each sawmill that Precision Pine bought, sold, opened or closed between June 1991 and July 2000, identify that date on which the mill was bought, sold, opened or closed.

**ANSWER:**

**INTERROGATORY NO. 23.**

For each contract, agreement or other arrangement identified in response to interrogatory no. 6, identify each contractor, subcontractor, subsidiary or other person that hauled timber or other material on behalf of Precision Pine.

**ANSWER:**

**INTERROGATORY NO. 24.**

For each contractor, subcontractor, subsidiary or other person identified in response to interrogatory no. 23, describe in detail the services provided to Precision Pine, including, but not limited to, the months in which work was performed, and for each contract serviced in a given month, the distance that timber or other material from the contract was hauled, the volume of timber or other material hauled, and the sum paid by Precision Pine.

**ANSWER:**

**INTERROGATORY NO. 26.**

For each of the mills at issue, describe in detail all plant costs and expenses, including, but not limited to, operating costs, rental expenses, labor costs, fuel costs, and repair costs, for each month between June 1991 and July 2000.

**ANSWER:**

**INTERROGATORY NO. 27.**

For each product for which Precision Pine seeks the recovery of lost profits (*i.e.*, "lost market opportunity" damages), identify the price at which Precision Pine contends that it could have sold the product in each month between August 1993 and December 1998.

**ANSWER:**

**INTERROGATORY NO. 28.**

Describe in detail the methodology used and any sources of information or market data used, relied upon or consulted in determining the prices provided in your response to interrogatory no. 27.

**ANSWER:**

**INTERROGATORY NO. 30.**

Describe in detail all sales of by-products (*i.e.*, chips, grindings, shavings, or bark) by Precision Pine between August 1993 and December 1998, including, but not limited to, the date of the sale, the identity of the purchaser, the type of material sold, the volume of material sold, the price of the sale, the mill from which the product sold was produced, and the amount of any costs incurred by Precision Pine in connection with the sale (*e.g.*, transportation costs).

**ANSWER:**

**INTERROGATORY NO. 34.**

With respect to each of the contracts at issue, explain in detail why did Precision Pine did not harvest timber that it anticipated harvesting during the suspension at issue (*see*, *e.g.*, the "harvest dates" in page C-0064 to -0066 of Precision Pine's February 26, 2003 damages calculations), after suspension of the contract was lifted.

**ANSWER:**

**DOCUMENT REQUEST NO. 4:**

Produce all audited and unaudited financial statements (*e.g.*, balance sheets, income statements, cash flow statements) for Precision Pine, with all accompanying notes, schedules, data and supporting documents, whether monthly, quarterly, annual, or otherwise, for the fiscal year ending March 31, 1992 though the fiscal year ending March 31, 2000.

**RESPONSE:**

**DOCUMENT REQUEST NO. 5:**

For the fiscal year ending March 31, 1992, though the fiscal year ending March 31, 2000, produce the statement of income for Precision Pine in the form provided by document VIII-1 to VIII-8 of Precision Pine's February 26, 2003 damages binders.

**RESPONSE:**

**DOCUMENT REQUEST NO. 6:**

To the extent that contracts, agreements or other arrangements identified in response interrogatory no. 6 are not between Precision Pine and the United States Forest Service, produce all such contracts, agreements or arrangements, including any amendments or modifications thereto, and all other documents relating to such contracts, agreements or other arrangements.

**RESPONSE:**

**<u>DOCUMENT REQUEST NO. 9</u>:**

Produce all contracts, invoices, receipts, cost, accounting or management reports, or other documents relating to the cost of hauling timber, lumber, or other material or products, by or on behalf of Precision Pine, between August 1993 and December 1998, whether in connection with timber harvesting, transportation between the mills at issue, in connection with the sale of products, or otherwise.

**<u>RESPONSE</u>:**

**<u>DOCUMENT REQUEST NO. 10</u>:**

Produce all contracts, invoices, cost, accounting or management reports, or other documents that relate to Precision Pine's logging costs, hauling costs, transportation costs, slash costs, and rock replacement costs, as those terms are used in Precision Pine's February 26, 2003 damages calculations.

**<u>RESPONSE</u>:**

**<u>DOCUMENT REQUEST NO. 11</u>:**

Produce all documents that show volume of each product produced by the mills at issue between August 1993 and December 1998.

**<u>RESPONSE</u>:**

**DOCUMENT REQUEST NO. 12:**

Produce all contracts, invoices, receipts, cost, accounting or management reports, or other documents relating to sales of timber, lumber, roundwood, by-products (*i.e.*, chips, grindings, shavings, and bark) or other material between August 1993 and December 1998.

**RESPONSE:**

**DOCUMENT REQUEST NO. 13:**

Produce all contracts, invoices or other documents relating to sales of any products between August 1993 and December 1998 for which Precision Pine seeks the recovery of lost profits in this action.

**RESPONSE:**

**DOCUMENT REQUEST NO. 14:**

Produce Precision Pine's "cost comparison reports" – the report produced with Precision Pine's February 26, 2003 damages calculation as document no. VI.(a)-4 – for each month from June 1991 to July 2000.

**RESPONSE:**

**DOCUMENT REQUEST NO. 15:**

Produce all "goal" reports – the report produced with Precision Pine's February 26, 2003 damages calculation as document no. VI(a)-23 – for each month from June 1991 to July 2000.

**RESPONSE:**

**DOCUMENT REQUEST NO. 16:**

Produce all documents relating to Precision Pine's plan and schedule for harvesting the contracts, agreements and other arrangements identified in response to interrogatory no. 6.

**RESPONSE:**

**DOCUMENT REQUEST NO. 17:**

Produce all invoices, receipts, cost, accounting or management reports, or other documents that show costs for labor, fuel, repairs or other costs for the mills at issue between August 1993 and December 1998.

**RESPONSE:**

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

Patricia Disert
Lori Polin Jones
Office of the General Counsel
U.S. Department of Agriculture

June 20, 2003

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 20th day of June 2003, I caused to served by hand delivery a copy of Defendant's First Set of Interrogatories and Requests for Production of Documents Regarding Damages, addressed as follows:

Alan I. Saltman
Saltman & Stevens
1801 K Street, N.W., Suite 110
Washington, D.C. 20006