**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, | ) | |
| v. | ) | No. 98-720C (Judge George W. Miller) |
| THE UNITED STATES, Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S "SUMMARY" EXHIBITS**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: May 2, 2005

# TABLE OF CONTENTS

**PAGE**


Table of Authorities ........ ii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. The Summaries Noted By Defendant Are Not Inadmissible On The Grounds That the Underlying Documents Are Inadmissible ........ 3

B. Plaintiff's Summaries Are Not Inadmissible On The Ground That The Underlying Records Are Not Sufficiently Voluminous ........ 7

C. None Of Precision Pine's Summaries Improperly Incorporate Conclusions, Opinions, And Inferences That Do Not Reflect The Underlying Record ........ 11

1. PX 57-60 ........ 14

2. PX 102, 158 and 263 ........ 17

3. PX 61 ........ 19

4. PX 156 ........ 20

5. PX 233 ........ 20

6. PX 247 ........ 21

7. PX 268 ........ 21

8. PX 288 ........ 22

D. Summary Exhibits May Be Prepared By Someone Other Than The Witness Who Will Testify To Them ........ 23

SUMMARY ........ 28

# TABLE OF AUTHORITIES

**CASES** **PAGE**

Bannum, Inc. v. United States,
59 Fed. Cl. 241 (2003) ....................7

Bath Iron Works Corp. v. United States,
34 Fed. Cl. 218 (1995), aff'd, 98 F.3d 1357 (Fed. Cir. 1996) ....................7, 24

Bristol Steel & Iron Works v. Bethlehem Steel Corp.,
41 F.3d 182 (4th Cir. 1994) ....................2

Condus v. Howard Savings Bank,
986 F. Supp. 914 (D.N.J. 1997) .................... 5-6

Crowder v. Aurora Co-operative Elevator Co.,
223 Neb. 704 (1986) ....................27

Ford Motor Co. v. Auto Supply Co., Inc.,
661 F.2d 1171 (8th Cir. 1981) .................... 8-9

Gulf States Utilities Co. v. Ecodyne Corp.,
635 F.2d 517 (5th Cir. 1981) ....................14

Jean Doe v. DeBuono,
193 F.R.D. 117 (S.D.N.Y. 2000) ....................18

Schultz v. Butcher,
24 F.3d 626 (4th Cir. 1994) ....................14

United States v. Bertoli,
854 F. Supp. 975 (D.N.J. 1994), aff'd in part, vacated in part on other grounds,
40 F.3d 1384 (3rd Cir. 1994) .................... 24-25, 26

United States v. Blackwell,
954 F. Supp. 944 (D.N.J. 1997) ....................5

United States v. Bray,
139 F.3d 1104 (6th Cir. 1998) ....................7

United States v. Briscoe,
896 F.2d 1476 (7th Cir. 1990), cert. denied, 498 U.S. 863 (1990) ....................7

United States v. Caswell,
825 F.2d 1228 (8th Cir. 1987) ....................................................................................25

United States v. Dobbs,
63 F.3d 391 (5th Cir. 1995) ........................................................................................18

United States v. Duncan,
919 F.2d 981 (5th Cir. 1990) ........................................................................................7

United States v. Frazier,
53 F.3d 1105 (10th Cir. 1995) ......................................................................................5

United States v. Grajales-Montoya,
117 F.3d 356 (8th Cir. 1997), cert. denied, 522 U.S. 1007 (1997)..............................26, 27

United States v. Jennings,
724 F.2d 436 (5th Cir. 1984), cert. denied, 467 U.S. 1227 (1984)................................6, 18

United States v. Lemire,
720 F.2d 1327 (D.C. Cir. 1983), cert. denied, 467 U.S. 1226 (1984)..............................25

United States v. North American Reporting, Inc.,
740 F.2d 50 (D.C. Cir. 1984)......................................................................11, 12, 13

United States v. Possick,
849 F.2d 332 (8th Cir. 1988) ....................................................................................7, 9

United States v. Robinson,
774 F.2d 261 (8th Cir. 1985) ......................................................................................18

United States v. Scales,
594 F.2d 558 (6th Cir. 1979) ......................................................................................25

United States v. Strissel,
920 F.2d 1162 (4th Cir. 1990) ......................................................................................2

**STATUTES AND REGULATIONS**

RCFC
11(b).........................................................................................................................2

Fed. R. Evid.
403.........................................................................................................13, 14, 19
701...............................................................................................................4, 7, 18

803(6) .......... 5
803(17) .......... 3, 5
807 .......... 3
1006 .......... passim

**MISCELLANEOUS**

31 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 8042 (2000) .......... 2

P. Fishman, "Summary Evidence," 25 No. 3 Litigation 38, Spring, 1999 .......... 25

## I. INTRODUCTION

In its motion of April 20, 2005, defendant, on a variety of bases, seeks to exclude each and every one of plaintiff's "summary" exhibits. By "Revised Objections to Exhibits on Plaintiff's Final Exhibit List" dated April 20, 2005, defendant, although erroneously claiming that PX 103, 138, 157, and 280 were described on plaintiff's final exhibit list as "summaries", presumably pursuant to Fed. R. Evid. 1006, also announced that it had come to the determination that these exhibits are not governed by Fed. R. Evid. 1006. This revelation is hardly surprising given that PX 103, 138, and 280 are documents prepared by the Forest Service – a fact that was the subject of discussion between counsels during a meeting on April 14, 2005 to explain how plaintiff had prepared its Fed. R. Evid. 1006 summaries. PX 157 consists of business records of Timber Data Corp.

Given that PX 103, 138, 157, and 280 are clearly not summaries under Fed. R. Evid. 1006, were never identified as such, and that defendant knew at least as early as, and more probably well before, April 14, 2005, any objections to them were required, by order of the Court dated January 4, 2005, to have been raised by April 18, 2005. The objections to PX 103, 138, 157, and 280 that were raised in a revised set of objections dated April 20, 2005 are therefore untimely. As such, those "objections" should be considered to have been waived. Without prejudice to this position, plaintiff's responses to defendant's untimely objections to PX 103, 138, 157 and 280 are set forth in Plaintiff's Response to Defendant's Objections to Exhibits on Plaintiff's Final Exhibit List filed on April 28, 2005.

With respect to items to which defendant has submitted timely, albeit once again numerous and, at best, picayune objections,[1] to the summaries which plaintiff has prepared, the cases provide practical reasons for there use. That is, compiling and introducing a legion of documents to establish a point can be a "Herculean task that drains judicial resources." Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 189 (4th Cir. 1994), citing United States. v. Strissel, 920 F.2d 1162, 1163 (4th Cir. 1990) (per curiam). Moreover, the commentators have indicated that requiring proof in the form of a large number of originals can also present a danger to accurate fact-finding. See 31 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 8042, at 517 (2000). Each of the above noted reasons for the use of summaries is present here. Moreover, as discussed in greater detail below, the maximum use of summaries makes sense here because this trial of quantum will not be before a jury, the Court is well qualified to hear relevant evidence, weigh its probative value and exclude any improper inferences from the decision making process, and the calculation of Precision Pine's damages due to the breach of 11 contracts simply involves many numbers.

That said, plaintiff will address each of the bases on which defendant has raised an objection.

---

[1]Unfortunately on several occasions defendant's "objections" are so meritless as to constitute a violation of the representation made to the Court pursuant to RCFC 11(b) that:

(1) the motion or any part of it is not being presented for any improper purpose, such as to cause needless increase in the cost of litigation;

(2) the legal contentions in it are warranted by existing law; and,

(3) the factual contentions have evidentiary support.

## II. ARGUMENT

### A. The Summaries Noted By Defendant Are Not Inadmissible On The Grounds That the Underlying Documents Are Inadmissible

Defendant has moved to exclude 10 of plaintiff's summaries on the ground that the underlying source material is inadmissible. Defendant is in error. In each instance, the underlying documents are admissible.

| | **Defendant's objection re: underlying data** | **Plaintiff's Response** |
|---|---|---|
| PX 57-60 | Random Lengths 2000 yearbook (PX 228-232) is hearsay | Pursuant to Fed. R. Evid. 803(17) commercial publications like Random Lengths yearbook, which contain market quotations, compilations, etc., are generally used and relied on by persons in particular occupations and are not excluded by the hearsay rule. |
| PX 102 | Precision Pine's interrogatory answers are hearsay | The underlying material for this exhibit, PX 130, is not inadmissible. Rather, it is admissible on several bases. First, it is admissible pursuant to Fed. R. Evid. 807 in that, at the very insistence of the defendant, plaintiff submitted a specific statement from its president that each interrogatory was answered under oath. <u>See</u> Defendant's Status Report of March 15, 2005. As such, it has the requisite minimum circumstantial guarantee of trustworthiness so as not to be excluded as hearsay. Moreover, the statement is more probative on the point than simply the recollection of the company's president on the likely manner the company would have harvested numerous sales during the suspension period. Lastly, admitting this exhibit, the topic of which was the subject of substantial questioning at deposition and will likely be the |

| | | |
|---|---|---|
| | | subject of both substantial direct and cross-examination at trial, will no doubt serve the interests of justice. This is particularly true because such examination in the absence of this document will consume a great deal of time in a trial where the Court has indicated that it intends to limit the amount of time that each party has to litigate its case.<br><br>Stripped of its label as an answer to an interrogatory, PX 130 is also admissible pursuant to Fed. R. Evid. 701 as opinion evidence of a lay witness as to the manner in which, as of August 24, 1995, Precision Pine could and would have harvested the timber on the breached sales between August 25, 1995 and December of 1996.<br><br>The same holds true of PX 102 in that it too is opinion evidence of a lay witness as to the manner in which, as of August 24, 1995, Precision Pine could and would have harvested the timber on the breached sales between August 25, 1995 and December of 1996. |
| PX 156 | Material compiled and provided by Timber Data Corp. (PX 157 ) is hearsay | **As described in the text of plaintiff's Response to Defendant's Objections to Exhibits on Plaintiff's final Exhibit List, defendant's objection to Exhibit 157 is untimely and thus should be considered to have been waived. As such, defendant should also be considered to have waived any object to a summary based on the alleged inadmissibility of PX 156.** Without prejudice to this position, the plaintiff will establish the necessary |

| | | |
|---|---|---|
| | | foundation at trial by calling Mr. McDonald, the president of the company that prepared these documents. Moreover, these documents are admissible under Fed. R. Evid. 803(6). Indeed, Timber Data Company's principle activity is to receive data from the Forest Service with regard to timber sales offered, awarded and performed, to record that information and to prepare data compilations/reports of the type represented by this exhibit. |
| PX 168 | Material obtained from Western Wood Products Association (included in PX 295) is hearsay | Pursuant to Fed. R. Evid. 803(17), commercial publications, like the WWPA Indexes, which contain market quotations, tabulations or other compilations, etc., generally used and relied on by persons in particular occupations are not excluded by the hearsay rule. More specifically, this material is used by the Forest Service in many of the contracts in issue to escalate the price payable for timber under the contract. |
| PX 246 | CPA work papers (PX 291-292) are hearsay | The work papers of Precision Pine's CPA which accompany the annual reviewed financial statement it prepared are admissible under Fed. R. Evid. 803(6) as a memorandum or data compilation, which can be in any form of events, conditions or opinions made by agents for Precision Pine which are kept in the normal course of Precision Pine's business. See generally United States v. Frazier, 53 F.3d 1105, 1109-10 (10th Cir. 1995) (audit report of accountant admitted as business record); United States v. Blackwell, 954 F. Supp. 944, 973-74 (D.N.J. 1997) (financial audit of bank admitted as business record); Condus |

| | | |
|---|---|---|
| | | v. Howard Savings Bank, 986 F. Supp. 914, 918 (D.N.J. 1997) (report prepared by outside company hired by bank to provide assessment of loss reserves admissible as business record). |
| PX 263 | The "overrun factor" used is inadmissible | Defendant has proffered no basis why the overrun factor clearly set out in the exhibit is inadmissible. As discussed in detail below, contrary to defendant's argument, Fed. R. Evid. 1006 does not require the finder of fact to accept the information presented on the summary chart as true and the cases indicate that summaries may be admitted under Fed. R. Evid. 1006 even though they admittedly embody the proponent's theory or make certain factual assumptions. See United States v. Jennings, 724 F.2d 436, 441-42 (5th Cir. 1984), cert. denied, 467 U.S. 1227 (1984). |
| PX 288 | Exhibit 4 of report of Robert Ness of (PX 182 ) which is based on the product mix taken from Precision Pine's interrogatory answers is hearsay | As indicated in a letter on April 15, 2005 (attached hereto as Ex. 1), the information on page 2 of Ex. 4 of Report of Robert Ness dated February 7, 2005 (PX 182) in the column headed "Production % Projected by Lon Porter for Breached Sales" represents a weighted average of the information based on the total footage for each contract. It also represents the information on Ex. 6 of his original report (PX 131) with both the volume of the each product and the volume of all products totaled.<br><br>To the extent that the underlying information is also set out in whole or in part in Precision Pine's |

| | | |
|---|---|---|
| | | interrogatory answers relating to product mix, when stripped of its label as an answer to an interrogatory, that information is also admissible pursuant to Fed. R. Evid. 701 as opinion evidence of a lay witness as to the product mix that, as of August 24, 2005, Precision Pine could and would have achieved had it harvested the timber on the breached sales between August 25, 1995 and December of 1996. |

### B. Plaintiff's Summaries Are Not Inadmissible On The Ground That The Underlying Records Are Not Sufficiently Voluminous

In an argument that consumes all of two paragraphs on page 6 if its motion, defendant seeks to exclude all of plaintiff's summaries on the basis that the underlying data for each is insufficiently voluminous. Defendant's argument should be dismissed. For a summary to be admitted under Fed. R. Evid. 1006, the underlying evidence need not be so voluminous as to be impossible for the Court to handle. United States v. Possick, 849 F.2d 332, 339 (8th Cir. 1988); United States v. Bray, 139 F.3d 1104, 1109 (6th Cir. 1998); United States v. Duncan, 919 F.2d 981, 988 (5th Cir. 1990); United States v. Briscoe, 896 F.2d 1476, 1495 (7th Cir. 1990), cert. denied, 498 U.S. 863 (1990). Rather, the documents need only be so voluminous so as to be unable to be conveniently examined by the court. Bannum, Inc. v. United States, 59 Fed. Cl. 241, 244 (2003); Bath Iron Works Corp. v. United States, 34 Fed. Cl. 218, 232 (1995), aff'd, 98 F.3d 1357 (Fed. Cir. 1996). In this case, despite defendant's assertions, the underlying evidence for each of plaintiff's summaries is sufficiently voluminous such that it would be inconvenient for in-court examination.

Defendant avers that certain of plaintiff's exhibits only summarize a handful of underlying documents. Def.'s Mot. at 6. However, the defendant makes no mention of the size of these underlying documents, some of which contain thousands of pages (e.g., PX 290, Timber Sale Statements of Account (TSSAs)). For example, one of the underlying documents for PXs 57, 58, 59, 60 and 288 is the Winslow sales journal (PX 294). While the sales journal is technically "one document," it actually contains 350 pages of 18" x 24" ledger sheets, each containing multiple rows and columns of data. PXs 57, 58 and 59 rely on specific prices set forth on various pages of that ledger, over a five-year period, and then plot those figures so as to summarize the change in prices over time. PX 60 does the same for a four-year period, and PX 288 summarizes data from two subsets of months during a two-year period. Finding and plotting each point at trial would be hugely time-consuming and cumbersome. Thus, to say that it would not be convenient for the Court to have to deal with various entries spread throughout 350 pages of data is an understatement.

In this regard, the cases, not surprisingly, recognize that voluminousness, so as to make examination of the underlying data inconvenient for in-court examination, does not depend solely on the on the number of pages involved but also on the complexity of the data contained therein. See, e.g., Ford Motor Co. v. Auto Supply Co., Inc., 661 F.2d 1171 (8th Cir. 1981) (Summary of four spreadsheets each containing a yearly compilation of Ford's "parts by product line's performance" admissible). In Ford, the court noted that spreadsheets compiling a large amount of complex data for each of the four years was "clearly the kind of 'voluminous writings' that the drafters of the federal rules anticipated when they allowed a summary to be admissible."

Id. at 1175 n.10. Moreover, in Possick, 849 F.2d at 339, the court noted that even if the quantity of underlying documents is not large, the real test is whether or not in-court examination would be inconvenient. In-court examination of the underlying documents for the summaries here in issue meet this test whether they number many or relatively few documents.

PX 158, to which the defendant also objects, summarizes the remaining volume on each of the sales in issue as of the date of the suspension, and requires more than mere reference to 14 simple documents as the defendant suggests. That is, in-court examination of the underlying data for PX 158 would require (1) reference to the total estimated volume of timber on each sale as reflected in 11 separate contracts (which, in turn, collectively are composed of hundreds of pages and fill three 5-inch binders) and (2) finding the appropriate page(s) of TSSA for each sale (each of which are composed of hundreds of pages and which also collectively fill three 5-inch binders). Only after all of this data has been sifted would the production of the data shown on the summary become simple. Having a witness at trial attempt to recreate this summary (the effect of granting defendant's motion) would be incredibly inefficient. Indeed, the convenience of having the underlying evidence summarized is unquestionable.

Similarly, PX 102 (which the defendant alternatively avers is based on three or five underlying documents) is in fact based, in part, on the same evidence underlying PX 158, i.e., the TSSAs and all of the contracts that are, again, bound in large, bulky binders. Further, other portions of PX 102 summarize Lon Porter's lay witness opinion evidence as to when remaining volume would have been harvested during the suspension period, by fiscal quarter. As such, the

exhibit summarizes data involving multiple species and types of timber on 11 sales in six different quarters. Such being the case, it is far more convenient to summarize these figures in a chart as shown on PX 102 than to have the figures verbally recited in court.

Furthermore, PX 168, like PXs 57 though 60, summarizes actual price and index price data over a five-year period into a chart to show changes in both over time. Examining underlying information set out in the TSSAs for the sale, and the A Section of the U-Bar timber sale contract, and information calculated pursuant to the formula for determining the quarterly stumpage price for Ponderosa Pine set forth elsewhere in the contract and taken from the applicable index reports published by the Western Wood Products Association over a five-year period, would hardly be convenient. Indeed, having this data summarized in this form if PX 168 is far more convenient than having a witness simply refer to different prices at different times or having a witness attempt to reconstruct the chart at trial by searching through binders full of TSSAs for the appropriate ones reflecting the price at certain times.

As for PX 268, a summary comparison of Precision Pine logger pay memos for four separate periods in the fall of 1998 with the Forest Service's TSSAs for the Hay sale in the same periods, by the defendant's count, involves a reference to eight documents. However, defendant neglects to advise the Court that half of those documents are complex, consist of approximately six unnumbered 18" x 24" pages each and constitute only a small portion of a much larger grouping consisting of 40 or 50 similarly large and unwieldy documents. Given the above, referencing each of the underlying documents for in-court examination would again be

enormously time-consuming and inconvenient. Clearly, having the volumes harvested and hauled during the period and summarized side-by-side in a single document is more convenient than having a witness sift through hundreds of pages to locate these figures at trial.

For these reasons set forth above, the Court should find that with regard to each of plaintiff's summary exhibits the underlying evidence is sufficiently voluminous so as to make in-court examination inconvenient and thus permit plaintiffs' summary of that evidence to be admitted.

**C. None of Precision Pine's Summaries Improperly Incorporate Conclusions, Opinions, and Inferences That Do Not Reflect the Underlying Record**

Defendant seeks to preclude the admission of 13 of plaintiff's proposed summary exhibits, PX 57-61, PX 102, PX 156, PX 158, PX 163, PX 233, PX 247, PX 263 and PX 288 asserting they are not "accurate and non-prejudicial." As the primary authority for excluding the above summaries, defendant relies on United States v. North American Reporting, Inc., 740 F.2d 50, 54 (D.C. Cir. 1984). The facts of that case, as they relate to summaries, are, however, quite different than those in the instant case. That is, in North American, a criminal case before a jury which involved alleged overbilling for hours worked by the company's employees, the prosecution presented a summary exhibit that compared the hours entered by the defendant's employees on their time sheets to the hours submitted by the defendant on vouchers submitted to the government. In response, the defendant attempted to introduce an exhibit "purporting to summarize, in the same manner as the prosecution's summary chart, numerous instances in which [the defendant] under billed. . . ." Id. at 52. As noted by the Court of Appeals, unlike the

prosecution's summary chart – which relied primarily upon the authenticated time sheets of employees – the defendants' exhibit relied upon a "hodge-podge collection of personal memory, unauthorized evidence, surmise and *post hoc* contract interpretation." Id. at 53.

For example:

> - Seventeen entries on the defendant's exhibit relied entirely on defendant's undocumented assertion that he was working on a given day, but did not bill for the time worked.[2] Id.
>
> - In another entry, defendant listed overtime for three employees because a fourth employee worked overtime that day, and defendant therefore "presumed [that the other three were] in also." However, the authenticated time sheet for at least one of those employees shows that the employee worked a normal eight hours that day. Moreover, the voucher submitted by defendant for that day shows a normal workday for *all* four employees. Id.
>
> - A vast number of the entries in the defendant's chart relied upon a highly questionable interpretation of the North American's contract, i.e., defendant maintained that he would have been entitled to bill the government for overtime, in addition to the regular contract amount for a workday, whenever an employee began work before 10 a.m. or left work after 7 p.m., *regardless of whether the total hours worked by the employee exceeded the nine hour period specified in the contract.* Id. (emphasis in original).

As the Court concluded, "for these, and additional, reasons"[3] the trial judge had an ample basis for excluding the defendant's chart on the ground that it was confusing. In this regard, the

[2]Defendant testified that he "assumed he worked on some of those days because he and Carol DeHaven, whom he married in 1981, were 'inseparable,' and since Ms. DeHaven was working on those days, he 'would have been there' also." Id.

[3]For example, the defendant's "underbilling" for employees on certain dates relied on entries on a wall sheet kept in defendant's office. However, the wall sheet for the relevant time period was not offered into evidence, and the employees implicated in the "underbilling" had not affirmed the wall sheet entry at trial. Accordingly, defendant's "summary" chart, in fact, contained information not properly in evidence. Id. at 53 n.4.

court in North American noted that evidence may be excluded, even though it is relevant, if "'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Id. at 53 (quoting Fed. R. Evid. 403). Indeed, in North American, the trial judge was clearly concerned that the exhibit could influence the jury, i.e., that the jury might "treat the summary as additional evidence of the truth of the underlying testimony." Id. at 54 (citations omitted).

The facts and circumstances on the instant case are substantially different. First, as described in detail below, many of the summaries to which defendant objects most strenuously are based on data from the Forest Service's own records (i.e., the contracts in issue and TSSAs) that plaintiff intends to introduce into evidence. In order to present the data on these documents in identical units of measure, plaintiff has used the conversion factor which it believes is applicable. In this sense, any complaint that the summaries are unfairly prejudicial are overblown in that defendant can easily reference other documents in evidence and/or elicit testimony to reflect defendant's view of the appropriate conversion factor and volumes. Indeed, certain exhibits that defendant seeks to enter into evidence do just that. Furthermore, since the present case does not, of course, involve a jury trial and the likelihood that the trier of fact will be confused by or mislead by the conversion factor which the plaintiff has utilized is virtually non-existent.

Indeed, contrary to defendant's assertion, numerous courts have held that the portion of Fed. R. Evid. 403 invoked in North American should not be used to exclude evidence in the

context of a bench trial. E.g., Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994); Gulf States Utilities Co. v. Ecodyne Corp., 635 F.2d 517 (5th Cir. 1981). Indeed, in Gulf States, the court called the exclusion of evidence on the basis of "unfair prejudice" in a bench trial, as defendant seeks to do, "a useless procedure." 635 F.2d at 519. In these cases, the appellate courts have noted that Fed. R. Evid. 403 has no logical application in a bench trial because of the ability of the trial judge to hear relevant evidence, weigh its probative value and exclude any improper inferences from the decision making process. There is absolutely no basis to think that this Court cannot and will not do the same. As such, defendant's "objections" should be dismissed.

Both as an aid to the Court in doing so and in the event that the Court nonetheless wishes to review the merits of these objections, plaintiff will discuss them.

1. PX 57-60

Each of these exhibits (a) summarizes and displays the monthly price at which Precision Pine sold a particular lumber product (e.g., a particular grade of moulding) between August 1993 and December 1998 and (b) summarizes and displays corresponding published prices for those products. Defendant's entire objection to these four exhibits is its cryptic assertion on page 7 of its motion that Precision Pine's prices are not the same as those used by its expert to calculate damages and that the published prices used are not for the same category of lumber products.

With regard to defendant's first allegation, as defendant was advised, each of these exhibits summarizes the prices set forth in Precision Pine's Winslow sales journal (PX 294)

(a/k/a the Winslow sales record) during the specified period for a particular lumber product. Indeed, defendant has not indicated that they do not. What defendant, however, asserts, albeit both erroneously and without support, is that figures set forth in the exhibit are inconsistent with figures contained in the report of plaintiff's expert. On this basis, defendant asks this Court to deny its admission into evidence.

Defendant's objection is wholly misplaced. The exhibit summarized Precision Pine's Winslow sales journal and the defendant takes no issue with that. As such, there is no basis to exclude it. If defendant believes, as it apparently does, that there are differences between the exhibit and the figures contained in Mr. Ness's report, it is free to try to elicit testimony to that effect at trial and to cross-examine Mr. Ness about the propriety of the numbers that he used in his report.

As to defendant's assertion that the categories used by Precision Pine and Random Lengths are not the same, as defendant was advised, PX 57 is a summary of the prices at which Precision Pine sold its 5/4 Moulding and Better during the relevant period and the published prices for the relevant time frame set forth in Random Lengths 2000 Yearbook at 180, setting forth monthly prices for Ponderosa Pine, Kiln Dried, 5/4, Moulding & Btr, 10/15% C& Btr, Rough. (PX 232). Plaintiff is aware of no basis for defendant's conclusion that the products being compared are not identical and defendant has provided none.

Likewise as defendant was also advised, PX 58 is a summary of the prices at which Precision Pine sold its 5/4 #2 Shop during the relevant period and the published prices for the relevant time frame set forth in Random Lengths <u>2000 Yearbook</u> at 176, setting forth monthly prices for Ponderosa Pine, Kiln Dried, 5/4, #2, Shop. (PX 229). Plaintiff is aware of no basis for defendant's conclusion that the products being compared are not identical and the defendant has provided none.

Similarly as defendant was also advised, PX 59 is a summary of the prices at which Precision Pine sold its 5/4 #3 Shop during the relevant period and the published prices for the relevant time frame set forth in Random Lengths <u>2000 Yearbook</u> at 178, setting forth monthly prices for Ponderosa Pine, Kiln Dried, 5/4, #3, Shop. (PX 230). Plaintiff is aware of no basis for defendant's conclusion that the products being compared are not identical and the defendant has provided none.

Similarly as defendant was also advised, PX 60 is a summary of the prices at which Precision Pine sold its Paragraph 99 products during the relevant period and the published prices for the relevant time frame set forth in Random Lengths <u>2000 Yearbook</u> at 179, setting forth monthly prices for Ponderosa Pine, Kiln Dried, 5/4, Para 99, Shop. (PX 231). Plaintiff is aware of no basis for defendant's conclusion that the products being compared are not identical and the defendant has provided none.

2. PX 102, 158 and 263

PX 102 is a summary dealing only with the 11 breached sales for which Precision Pine is seeking lost profits of the projection prepared by Precision Pine with respect to the harvesting during the 16-month suspension period. As indicated, page one summarizes the volume remaining on the 11 breached sales at the time of the suspension based on the volumes stated in the Forest Service's timber sale contracts and the volume removed from the sales as of the date of the breach and indicates how Precision Pine projected the harvesting of that volume during the period of the suspension, August 25, 1996 through early December 1996.[4] As indicated, sawlog volume on page one is stated in MBF (thousand board feet) and pulpwood volume is stated in cords. Page two summarizes data from the noted contracts regarding the volume of sawlogs contained in each payment unit. As indicated, the Forest Service estimates are set forth in "ccf" (hundred cubic feet).

The crux of defendant's objection is the fact that not all of the contracts and TSSAs for the sales indicated on page one set forth volume data in "mbf." For those sales where the Forest Service contracts and TSSAs referenced volume in "ccfs," as the defendant was advised pursuant to ¶13(a) of Appendix A, for purposes of page 1 of the exhibit the volume in ccf was converted to a volume in mbf by application of a conversion of 2, i.e., both pages of this exhibit contain

[4]Page one also summarized (1) data from the 11 breached contracts as to the number of payment units on each sale and (2) data from the Forest Service's monthly Timber Sale Statements of Account for each sale as to the number of payment units that had been opened by Precision Pine as of the date of the suspension.

plaintiff's factual assumption that dividing by a conversation factor of 2 is the appropriate way to convert log volume from ccf to MBF.[5]

In this regard, we note that Fed. R. Evid. 1006 does not require the finder of fact to accept the information presented on the summary chart as true and the cases indicate that summaries may be admitted under Fed. R. Evid. 1006 even though they admittedly embody the proponent's theory or make certain factual assumptions. See Jennings, 724 F.2d at 441-42.[6]

PX 158 is a summary of the volume of sawlogs remaining on each of the breached sales at the time of the breach. Just as with PX 102, this exhibit contains plaintiff's factual assumption that dividing by a conversation factor of 2 is the appropriate way to convert log volume from ccf to MBF where that is necessary. For all of the reasons noted with regard to PX 102, there is also neither a basis nor necessity to preclude the admission of PX 158 into evidence.

---

[5]To the extent that the Court believes that plaintiff's use of a conversion factor of 2 need be made more explicit, adding such a note is both entirely permissible, see, e.g., United States v. Dobbs, 63 F.3d 391, 398 (5th Cir. 1995); United States v. Robinson, 774 F.2d 261, 275-76 (8th Cir. 1985), see generally Jean Doe v. DeBuono, 193 F.R.D. 117, 129-30 (S.D.N.Y. 2000), and a far more appropriate means of dealing with this exhibit than simply excluding it.

[6]Defendant also objects to the admission of PX 102 on the basis that it presents substantive evidence of allegations made by Precision Pine in interrogatory answers rather than data summarized from contemporaneous documents. As noted above, striped of its label as being based on an answer to an interrogatory, PX 102 is in and of itself admissible pursuant to Fed. R. Evid. 701 as opinion evidence of a lay witness as to the manner in which, as of August 24, 1995, Precision Pine could and would have harvested the timber on the breached sales between August 25, 1995 and December of 1996.

PX 263 is a summary of the lumber that was produced at Precision Pine's Eagar sawmill during February, March and April of 1997. In this regard, the totaling of the lumber actually produced at Eagar during this period came directly from Precision Pine's Eagar Mill Production records. The lumber volume figures were not in any way compiled through the use of "controversial" conversion and overrun factors.[7] As such, defendant's objection is totally baseless.

3. PX 61

Defendant seeks to exclude this exhibit which summarizes the prices bid by Precision Pine for the suspended timber sales and the bid of the second high bidder. The document includes several "comment[s] on contracts" such as the fact that the high bid on the Hay sale was assumed by Reidhead from whom Precision Pine later accepted assignment of the sale and that the Ponderosa Pine timber was appraised in two groups, large and small on the Kettle timber sale. There are, however, no "conclusions or inferences" contained on the exhibit. Indeed, defendant does not assert that the comments are argumentative or erroneous. As noted above, neither Fed. R. Evid. 403 nor 1006 require that summaries be as pristine as defendant asserts in order to be admitted even in a jury trial, let alone a bench trial on quantum. Indeed, we simply fail to see how any of the "comments" on the exhibit should have the least bearing on its admissibility in a bench trial.

[7]Plaintiff notes, although not part of defendant's objection, that in indicating how great a volume of logs was used to produce the volume of lumber indicated, plaintiff used a logs-to-lumber overrun factor of 1.25. That fact is, however, plainly set out and explained on PX 263. As such, there is no way in which the Court could be confused or mislead by anything in the exhibit.

4. PX 156

PX 156 is a summary of volume of sawlogs offered by the Forest Service from August 25, 1995 through December 31, 1998 on the four forests where Precision Pine operates. The basis upon which defendant seeks to exclude this exhibit is that it does not include roundwood volumes. Of course, the exhibit is clearly marked as only showing sawlog volume. To the extent that defendant believes that the roundwood volumes are relevant, it can easily elicit testimony in this regard. In fact, information regarding roundwood volumes is included in PX 157.[8]

5. PX 233

Defendant neglects to advise the Court that by letter dated April 15, 2005, plaintiff indicated that its does not intend to offer PX 233 as a stand alone exhibit at trial. See Ex. 1 at 4.

[8]In footnote 4 on page 8 of defendant's motion, it asserts that PX 156 (plaintiff's summary of volume of sawlogs offered by the Forest Service from August 25, 1995 through December 31, 1998 on the four forests where Precision Pine operates) "is simply incorrect." What defendant fails to advise the Court is that it has advised plaintiff that the actual volume of sawlogs offered by the Forest Service during the post-suspension period was in fact somewhat **greater** than the amounts set forth on PX 156. Indeed, counsel for the government has advised counsel for the plaintiff that the Forest Service did not report all offered sawlog volume to Timber Data Corporation. Letter from Mr. Harrington dated March 10, 2005 ("The actual volumes offered for sale on the Coconino Nation Forest in 1997 and 1998 are somewhat higher [than indicated in the data provided by Timber Data Corporation, i.e., they are 13,803 mbf of sawlogs in 1997 and 11,660 mbf of sawlogs in 1998]") (attached hereto as Ex. 2). (This is respectively 10,400 mbf and 7,042 mbf **more** than the Forest Service reported to Timber Data Corporation for timber offered on the Coconino.) By letter of March 18, 2005 (attached hereto as Ex. 3), plaintiff's counsel asked defendant to provide information to support these numbers. To date defendant has not done so.

6. PX 247

PX 247 is a summary of Precision Pine's net income for the fiscal years ending 3/31/92 through 3/31/02. As indicted, the source material for the exhibit was Precision Pine's Income Statements for the years in question which plaintiff proposes to put in evidence as PX 248. Defendant asserts that the document should be excluded because it is the product of plaintiff having extracted data and performed calculations in order to derive net income. This is incorrect. Each income statement in PX 248 has an entry for net income. For the fiscal years ending March 31, 1992 and 1993, PX 248 includes an income statement for Precision Pine's Winslow division and a separate income statement for the company's Heber division. As defendant was advised when this exhibit was reviewed, for these two years, rather than indicate net income of the company on PX 247 by division, the income numbers for the two divisions were added and only the combined number was placed on the summary. Doing so is hardly a basis to exclude the exhibit. Indeed, this objection borders on the frivolous.

7. PX268

Defendant's only reference to PX 268 is made on page 8 of its motion where it asserts that this exhibit like all other of plaintiff's summary exhibits should be excluded because it "go[es] beyond the compilation of information contained in underlying document, and incorporate[s] 'mere surmise, undocumented recollection and questionable assumptions.'" However, as indicated on the exhibit itself, the source material for it was the Forest Service's own TSSAs and certain of Precision Pine's business records, i.e., logger pay memos for the Hay timber sale. The exhibit in no ways goes beyond the compilation of information contained in

underlying documents kept in the normal course of the performance of the timber sale. As such, defendant's assertion that it should be excluded for the reasons given goes beyond being meritless and, in fact, is sanctionable under Rule 11.

8. PX 288[9]

Defendant seeks to exclude this exhibit on the basis that it "present[s] as substantive evidence allegations made by Precision Pine in interrogatory answers rather than data summarized from contemporaneous documents." This exhibit consists of two pages. Each page indicates the source material for it. Neither page indicates that the data came from interrogatory answers. Rather, both pages indicate that the source was the Winslow sales journal (which is PX 294) while page one also references as a source Ex. 4 of the supplemental report of Robert Ness. Moreover, additional explanation of how the summaries were prepared was also provided. See

[9]In footnote 5 on page 8 of defendant's motion *in limine*, defendant asserts that notwithstanding the fact that Precision Pine indicated that its expert, Mr. Robert Ness, prepared a portion of PX 288 and all of PX 246, "Precision Pine never made Mr. Ness available as required by the rules of this Court." **This statement is disingenuous in the extreme and is wholly unworthy of an officer of the court such as Mr. Harrington.** Nevertheless, defendant seeks to have the Court exclude these two documents from evidence on this basis.

The facts of the matter are set out in footnote 1 of the attached letter of April 15, 2005 (Ex. 1). At the meeting held on April 14, 2005 to provide information and explanations necessary for verification of information in plaintiff's summaries, with regard to summaries prepared by Mr. Ness, Mr. Harrington suggested that the undersigned obtain the answer to the one question that he had for Mr. Ness (who resides in Eugene, Oregon) and convey it to Mr. Harrington. The undersigned suggested instead that we simply set up a conference call for the afternoon of the 15th which would include counsel for the plaintiff, Mr. Harrington and Mr. Ness. While setting up the call, Mr. Ness advised that with the 15th being tax day he would be neck-deep in tax matters and not available to discuss defendant's question. (This fact was immediately conveyed to defendant by e-mail.) As such, rather than put off getting defendant the information that it had requested, plaintiff's counsel obtained and transmitted the requested information to defendant by the attached letter of the 15th. See Ex. 1 at 3 n.1.

Ex. 1. In sum, defendant has presented no reason why this exhibit should be excluded on the basis of plaintiff having "Improperly Incorporate[d] Conclusions, Opinions, And Inferences That Do Not Accurately Reflect the Underlying Record."[10]

### D. Summary Exhibits May Be Prepared By Someone Other Than The Witness Who Will Testify To Them

In shotgun fashion, defendant makes four arguments with respect to certain summary exhibits that were prepared under the supervision of counsel at the request of Precision Pine,[11] i.e. that: (1) counsel may not prepare such exhibits; (2) the proponent of a summary must proffer testimony establishing authenticity and appropriate foundation and be available for cross-examination; (3) counsel has not been listed as a trial witness; and (4) if the summary exhibits prepared by counsel are admitted, the government reserves the right to call counsel as a witness and to seek counsel's disqualification.[12]

Defendant's arguments, however, betray a fundamental misunderstanding about the production and introduction of summary exhibits at trial. That is, while the summaries in

[10]Def.'s Mot. at 7. The extent that the "objection" which defendant has raised is a mere placeholder for additional issues, in this regard, that it intends to raise for the first time at oral argument, those issues are untimely, should be considered waived and the Court should not allow them to be presented in any manner.

[11]To the extent that there was any question about this, it was dispelled when the plaintiff met with defendant to provide information and explanation about its summaries per ¶ 13(a) of Appendix A.

[12]Defendant's objections pertain to PX 57-61, PX 102, PX 156, PX 158, PX 163, PX 168, PX 233, PX 243, PX 247, and PX 289. It appears that none of defendant's objections apply to PX 246 or the first page of PX 288. See Def.'s Mot. at 8 n.5.

question were prepared at the client's request under counsel's supervision, Precision Pine intends to introduce the exhibits through witnesses familiar with the underlying documents and the mechanics of the preparation of the summary, not through counsel trying this case. Those witnesses will be available for cross-examination at trial. Such an approach makes eminent practical sense as there is no reason, for example, that the president of a corporation should spend hours with calculator in hand personally preparing a summary exhibit from voluminous business records; nor does it make sense that only a witness who has actually wielded the calculator may testify to the result of such a ministerial act.

In this regard, nothing in Fed. R. Evid. 1006 or Appendix A requires that the person who physically prepared the exhibit be the person through whom the exhibit is introduced at trial.[13] This is likely because the rather mechanical compilation of data from underlying documents on to a summary does not require any particular skill or expertise other than attention to detail. A witness who reviews the summary, and who is familiar with the underlying data that comprises it should, therefore, be allowed to testify to the summary. To rule otherwise would be to exalt form over function.

In recognition of this fact, the case law permits individuals other than the preparer of a summary exhibit to testify to the exhibit at trial. For example, in United States v. Bertoli, 854 F.

[13]For example, in Bath Iron Works, 34 Fed. Cl. at 232-33, the court established a four part test in order for a summary exhibit to be admitted, none of which include a requirement that the person performing the ministerial act of preparing the exhibit be required to testify to it. Defendant has identified no binding or persuasive authority in the Federal Circuit to the contrary.

Supp. 975 (D.N.J. 1994) aff'd in part, vacated in part on other grounds, 40 F.3d 1384 (3rd Cir. 1994), a government witness who had not prepared the summary chart was nevertheless allowed to testify to it at trial. Id. at 1053-54 & n.143. The court held that "charts may be introduced either through a person who prepared the chart or a person who has reviewed the underlying documents and confirmed the accuracy of the chart." Id. at 1055, citing United States v. Caswell, 825 F.2d 1228, 1235-36 (8th Cir. 1987); United States v. Lemire, 720 F.2d 1327, 1349 (D.C. Cir. 1983), cert. denied, 467 U.S. 1226 (1984); United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979). This commonsense approach should be followed here.[14] Indeed, in the instant case, as defendant well knows, most of the pertinent, original documents were long ago shipped from the client's office in Heber, Arizona to counsel's office in Washington, D.C., while witnesses knowledgeable about the exhibits reside across the rural western United States and are largely consumed with other matters. Under the circumstances, it would have made little sense to have required them to somehow summarize the voluminous but otherwise straightforward information on documents with which they are already familiar, especially when that chore could at client's request readily be accomplished by the support staff of counsel. In fact, that is precisely what occurred here.

As the court in Bertoli found with respect to the summary exhibits testified to by a witness other than the person who had prepared the exhibits, such use of the summary exhibits

---

[14]As one noted commentator has observed "It really doesn't matter who actually prepares the exhibit, or even who initially performs the calculations or compiles the data, as long as the witness through whom the exhibit is introduced can personally attest to its accuracy and explain where the information came from." P. Fishman, "Summary Evidence," 25 No. 3 Litigation 38, Spring, 1999.

can be accompanied by the necessary safeguards where the opposing party has "ample opportunity to point out any inaccuracies reflected in the charts during his cross examination," and therefore, the "jury . . . was presented with evidence from both sides and was well-equipped to draw its own conclusions as to whether the information . . . in the charts was accurate." Id. at 1055. Thus, the court in Bertoli correctly focused on the true test for admissibility of a summary exhibit: whether the defendant has a fair opportunity to cross-examine a knowledgeable witness and attempt to rebut the information contained in that exhibit. Precision Pine is prepared to produce such knowledgeable witnesses who can testify to the underlying documents and the accuracy of the summary of them. In the bench trial of this case, the Court will be able to make its own assessments of the summaries and the witnesses offered by Precision Pine to testify regarding them. Accordingly, that some of the witnesses who offer summary exhibits in the instant case may not have prepared those exhibits is hardly a sufficient reason to exclude them.

The single authority relied on by defendant for the proposition that an attorney may not prepare an exhibit is United States v. Grajales-Montoya, 117 F.3d 356 (8th Cir. 1997), cert. denied, 522 U.S. 1007 (1997). Even there, however, the court ruled that it was harmless error for the district court to have admitted into evidence and send to the jury room a summary exhibit prepared by government lawyers that "restated and distilled" the relevant events in the case into a chronology based on evidence that had already been admitted. Id. at 361. In short, the court concluded that the summary exhibit at issue was "written argument" of counsel. Id. Such is not the case here.

Moreover, although it is clear from the opinion that the summary in Grajales-Montoya was prepared by a government attorney, it is not clear through what, if any witness, the summary exhibit was offered. Indeed, because the summary exhibit was based exclusively on other evidence already admitted in the case it may be that the trial court simply admitted it on that basis and not through any witness. In any event, as noted above, Precision Pine intends to offer its summary exhibits through a knowledgeable witness other than counsel who will be available for cross-examination.

Furthermore, it bears noting that the non-binding opinion in Grajales-Montoya was decided in the context of a criminal jury trial which involves heightened concern for cross-examination under the Confrontation Clause of the Sixth Amendment to U.S. Constitution,[15] where there is a greater likelihood of prejudice where a jury is a trier of fact, and a summary exhibit was not prepared under the heightened pretrial procedural safeguards of Appendix A.

---

[15] Although the court in Grajales-Montoya does not expressly mention the concern for the Confrontation Clause of the Sixth Amendment, other cases have alluded to the difference between civil and criminal cases with respect to provisions analogous to Rule 1006. See, e.g., Crowder v. Aurora Co-operative Elevator Co., 223 Neb. 704 (1986):

> Therefore, in criminal cases courts and counsel should consider whether a defendant's constitutional right of confrontation may be violated by admission of a written summary. . . . The constitutional guarantee of a defendant's right of confrontation may require production or availability of the summary's preparer to be interrogated by the defendant or defendant's counsel.

Id. at 261 (citations omitted). The instant civil matter does not implicate the constitutional right to confrontation.

Finally, because plaintiff will present a knowledgeable witness with regard to the documents underlying each of the exhibits in question, these summary exhibits could effectively be recreated on the stand. Doing so would, of course, not make a great deal of sense since (a) they have already been created to aid the Court in rendering its decision and (b) recreating them could waste a fair amount of the Court's time. Conversely, if the Court were to simply exclude them and plaintiff did not attempt to recreate them at trial, the Court would have denied itself a significant aid to its rendering a decision in a case with many, many numbers.

**SUMMARY**

For all of the reason set forth above, defendant's motion should be dismissed.

Respectfully submitted,

s/Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: May 2, 2005