**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-720C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF RICHARD W. GOEKEN**

1. I, Richard W. Goeken, declare under penalty of perjury that the following is true and correct to the best of my personal knowledge and belief:

2. I am providing this declaration in response to the Court's request of Friday, May 20, 2005 in order to describe the role that I played in assisting Mr. Lorin D. Porter, President of Precision Pine, in categorizing the invoices for Ponderosa Pine lumber products during the period of the suspension at issue in this case, i.e. August 24, 1995 to December 4, 1996.

3. Several years ago, in recalculating the Precision Pine's damages following the Court's ruling on liability, Precision Pine's actual lumber invoices for each of the categories of lumber products produced and sold by Precision Pine were sent to the Washington DC offices of Precision Pine's counsel, Saltman & Stevens, P.C. Saltman & Stevens agreed to provide Mr. Porter with assistance in physically categorizing these invoices in order to produce as accurately

as possible the average lumber product prices in effect during the period of Precision Pine's Forest Service timber sale suspensions.

4. Saltman & Stevens is a small law firm with limited clerical and paralegal resources, and since our paralegal and clerical personnel were committed to other tasks at that time, I provided Mr. Porter with assistance in categorizing the invoices in accordance with his instructions.

5. At the time I assisted Mr. Porter in this task I had no experience in milling timber into lumber nor any expertise as to what products could or would be produced from ponderosa pine, or what lumber products Precision Pine could have produced. Accordingly, I was instructed by Mr. Porter as to how to read the invoices and what information on the invoices would reliably indicate the proper category of the products in question. I could not and did not exercise any independent judgment in categorizing these invoices and the information shown on these invoices by product category. Rather, I simply followed the instructions given to me orally by Mr. Porter and periodically reviewed my results with him over the telephone. In addition, whenever I encountered information on an invoice that was not covered by the instructions from Mr. Porter, I called him for further instructions. On these occasions Mr. Porter told me how to categorize the invoices or invoice information in question and sometimes modified his oral instructions so that I could handle like cases in the future. The only advice I received on how to categorize these invoices came from Mr. Porter. I followed his directions to the best of my ability.

6. I was told by Mr. Porter that Precision Pine typically produced the following thirteen categories of lumber products:

1. Molding & Better
2. #1 Shop
3. #2 Shop
4. #3 Shop
5. Paragraph 99 Redress
6. RWL Radius Edge
7. #2, #3, #4 & Better
8. #3 Common Utility
9. #4 Common Economy
10. #5 Common
11. Rough
12. Timbers
13. Miscellaneous Shop Outs

7. Precision Pine provided Saltman & Stevens with in excess of 1100 lumber sale invoices from the relevant time period. A chronological set of all of these lumber sales invoices is contained in PX 227. Additionally, all of these invoices were produced to the government during discovery.

8. The above-described process of categorizing the invoices was not continuous and took, off and an on, several weeks of effort and many telephone conversations between me and Mr. Porter. All of my instructions from Mr. Porter were oral and were not reduced to writing. At one time my memory of these instructions was very good, but now, years later, I am unable to recall the specifics of the directions that he gave me.

9. I worked very closely with Mr. Porter in categorizing invoices in accordance with his directions. We spoke over the telephone many times as I was doing this work. I believe we met once or twice face-to-face.

10. The results of my work under Mr. Porter's direction, i.e., a summary of the invoices by category showing average prices by category are set forth in proposed PX 180, at pages C0093-C0116 (which is incorporated in this declaration by reference). The average prices from PX 180 were placed in the record by Mr. Porter during his testimony at trial. The pages showing how the individual invoices were used to arrive at a quarterly product price in PX 180, at pages C-0093-C0116, were produced to the government on February 26, 2003. In PX 180, at pages C-0093-C0016 each invoice is identified by date, product category and price. Thus, the government has a written record of the category to which each invoice was assigned and the role played by each invoice in the plaintiff's computation of average product prices.

11. Mr. Porter testified at trial that he decided not to use 31 of the invoices because they were clearly aberrational and would have skewed a simple average price either too high or two low. All of these invoices are identified under a separate tab at the back of PX 227 entitled inapplicable invoices from the period of the suspension. An explanation as to why each invoice was not used is set forth in proposed PX 295 - Plaintiff's Supplemental Response to Interrogatory 28, at pp. 3-19.

12. Because of the clerical and ministerial nature of the assistance that I gave to Mr. Porter in organizing the lumber product invoices, I did not foresee that I would be a witness in this matter. I also do not believe that I am a necessary witness or the best witness for any substantive matters related to the categorization of the above-referenced Precision Pine lumber product invoices. Mr. Porter is by far the individual with the best substantive knowledge on this subject.

Respectfully submitted,

22nd day of May, 2005.

s/ Richard W. Goeken

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140
(202) 775-8217 – facsimile