**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS OBJECTIONS TO PLAINTIFF'S COUNTER-DESIGNATIONS FROM THE DEPOSITION OF JOHN B. SMITH**

As the Court will recall, during pretrial proceedings the United States declined to designate any deposition testimony by Mr. Smith. Rather, the United States included Mr. Smith on its witness list, served a trial subpoena upon Mr. Smith, and sought to elicit live testimony from Mr. Smith regarding certain, limited aspects of the work he performed for Precision Pine. See Def.'s Preliminary Witness List (Feb. 22, 2005); Def.'s Final Exhibit List (Apr. 4, 2005). Precision Pine, on the other hand, sought to prevent the Court from hearing testimony from Mr. Smith. Not only did Precision Pine decline to designate deposition testimony, and choose to omit Mr. Smith from its preliminary and final witness lists, see Pl.'s Final Exhibit List (Mar. 7, 2005), Precision Pine's counsel, Alan Saltman, referred Mr. Smith to an attorney in an attempt to quash the United States' trial subpoena. Tr. 5313-14. Indeed, Mr. Smith testified that Precision Pine may pick up the legal fees incurred by his attorney in that effort. Id.

The United States, in order to alleviate any possible hardship that might have resulted from Mr. Smith traveling to provide in-person testimony at trial, ultimately agreed to use deposition and telephonic testimony from Mr. Smith in lieu of in-person testimony. However, this does not constitute a basis for deviating from the general rule that cross-examination is

limited to the scope of direct testimony. Fed. R. Evid. 611(b) ("Cross-examination should be limited to the subject matter of the direct examination.").[1]

Precision Pine argues that a trial court can, in the exercise of reasoned discretion, allow cross-examination to exceed the scope of direct. Opp. at 2 (citing FRE 611). However, it provides no basis for exercising such discretion in this instance. Precision Pine intentionally omitted Mr. Smith from its "will call" and "may call" witness lists despite the fact that the United States had already identified Mr. Smith as a witness. Moreover, Precision Pine worked to prevent Mr. Smith from testifying. This almost certainly was for the reason that Precision Pine knew Mr. Smith – one of Precision Pine's own employees – would give damaging testimony regarding the log inventory Precision Pine sought to maintain at its sawmills and the overrun that actually was achieved by Precision Pine. See, e.g., Smith Dep. 24-27 (testifying, for instance, that Precision Pine wanted no more than a two or three week log inventory during summer months); Smith Dep. at 245-58 (discussing DX547, which shows that Precision Pine actually achieved an overrun of 1.08 at Winslow between April 1995 and March 1996). Only when it

[1] In discussing the admissibility of deposition testimony, Precision Pine cites incorrectly to RCFC 32. See Opp. at 3-4. Neither the United States, nor Precision Pine, designated deposition testimony pursuant to RCFC 32 during pretrial proceedings. Nor did the United States designate testimony pursuant to RCFC 32 during trial. To the contrary, as Mr. Saltman recognized, the telephonic and deposition testimony of Mr. Smith was in lieu of live direct testimony. Tr. 4717; see also Tr. 4713-16; FRE 801 (making party admissions, such as Mr. Smith's deposition testimony, admissible). Precision Pine's reliance on RCFC 32 is, therefore, misplaced. In any event, Precision Pine should not be able to admit direct testimony through the expedient of RCFC 32, when that very testimony would be inadmissible under FRE 611. This would evade the requirement that Rule 32 designations be made before trial, which the Court has required in this action, and, moreover, would penalize the United States for its willingness to accommodate Mr. Smith's medical concerns, as this issue would not have arisen had the United States insisted that all of Mr. Smith's testimony be given in person.

became apparent that testimony from Mr. Smith was in fact going to be heard did Precision Pine take a different tack.

As set forth in the United States' motion, Precision Pine's counter-designations frequently exceed the scope of Mr. Smith's direct testimony. Indeed, many counter-designations relate to deposition exhibits that (1) were not included on the parties' exhibit lists, (2) were not admitted into evidence, and (3) were not discussed in the United States' designations. See, e.g., Smith Dep. 221:9-222:11; 261:21-262:17; 262:23-263:2; 268:15-270:22; 278:22-24. Even if the United States' designations are viewed broadly, Precision Pine's counter-designations are outside the scope of Mr. Smith's direct and Precision Pine should not in any event be permitted to elicit testimony about unidentified, inadmissible documentary evidence. Precision Pine knew when it declined to list Mr. Smith as a witness that the United States planned to call Mr. Smith at trial, and that the testimony that Mr. Smith could provide on cross-examination would therefore be limited. Precision Pine's attempt to change course after the close of its case-in-chief should not be countenanced.

For these reasons, the United States respectfully requests that the Court grant its motion and strike those counter-designations listed in the attachment to the United States' motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 307-0277
Fax: (202) 307-0972

Attorneys for Defendant

July 25, 2005