**APPENDIX OF ARGUMENTS WHICH DEFENDANT RAISES ON MULTIPLE OCCASIONS IN ITS BRIEF AND PLAINTIFF'S RESPONSE TO THEM**

| D's Argument | Page of D's Brief Where First Raised | Additional Pages of D's Brief Where the Argument was also Used | Page in Plaintiff's Response Brief Where the Argument is Rebutted | Brief Summary of Plaintiff's Position |
|---|---|---|---|---|
| Government had the ability to suspend Precision Pine's contracts with impunity for a period not substantially exceeding 135 days. | 6 | 24<br><br>25 (re: damages due to the suspension of the Mud sale);<br><br>26 (re: damages due to the suspension of Manaco);<br><br>33 (re: the calculation of lost profits generally);<br><br>50 (re: sawmill damages) | 5 | Government has no such right here and this Court never held that it did. |
| Precision Pine's mill inefficiencies were due to the cancellation of the Campbell and Barber contracts. | 8 | 54 | Precision Pine's initial brief at page 54 | The cancellation of these controversial sales allowed other sales to be released. |
| Precision Pine's mill inefficiencies include claims for the brief unavailability of St. Joe and Hutch-Boondock. | 15 | 55 | 56 | These sales were harvested during the suspension, thereby reducing Precision Pine's mill inefficiency claim. Thus, no mill inefficiency claim is made for these sales. |
| Precision Pine's mill inefficiencies were due to its "deferral" of harvesting on other contracts. | 15 | 55 | Precision Pine's initial brief at 53 | To the extent that available timber was not harvested during the suspension, this mitigated Precision Pine's damages. |



**APPENDIX 1**

| D's Argument | Page of D's Brief Where First Raised | Additional Pages of D's Brief Where the Argument was also Used | Page in Plaintiff's Response Brief Where the Argument is Rebutted | Brief Summary of Plaintiff's Position |
|---|---|---|---|---|
| Precision Pine's mill inefficiencies were due to Precision Pine's friendly default of the Park timber sale with the State of Arizona. | 21 | 54 | Precision Pine's initial brief at 55 | There was a dispute as to the volume on the sale; defendant presented no evidence that any volume remained to be harvested. |
| Increased sawmill costs are not recoverable at common law under Scott Timber. | 22 | 51, 52, 53 | 58 | Defendant has already lost on this issue twice; Scott Timber is limited to its facts and was decided under clause C6.01. |
| Various of Precision Pine's damages are not recoverable because Precision Pine had no long-term operating plans. | 24 | 51 (Precision Pine had no long term plan for operating its sawmills) | 15 | Flexibility was an asset to Precision Pine, Precision Pine operated profitably every year for more than a decade with no such long-term plans. |
| The Mud sale could not been harvested due to the pendency of other litigation. | 25 | 54 | 18 | No other litigation prevented Mud from being harvested. |
| The Manaco sale could not have gone forward due to contractual restrictions. | 26 | 54 | 19 | The evidence is to the contrary. |
| Many contracts were unavailable during the months in which timber harvesting was projected. | 27 | 54 | Precision Pine's initial brief at 53 | To the extent that available timber was not harvested, this mitigated Precision Pine's damages. |

| D's Argument | Page of D's Brief Where First Raised | Additional Pages of D's Brief Where the Argument was also Used | Page in Plaintiff's Response Brief Where the Argument is Rebutted | Brief Summary of Plaintiff's Position |
|---|---|---|---|---|
| The lumber market was depressed during "most" of the suspension period. | 33 | 22, 32, 54 | 12 | The market bottomed in January-February 1996, i.e., in the first third of the suspension, and rose steadily thereafter. |
| "Most" of the contracts were unprofitable during the suspension period. | 42 | 22 (based on depressed lumber prices and no outlet for roundwood);<br><br>43 (erroneously attributing roundwood logging & hauling costs to Precision Pine);<br><br>54 | 12 | See Precision Pine's comments on DPFF ¶¶ 583-91, demonstrating that defendant has not shown that any contract was unprofitable. |
| It had become apparent that Precision Pine was almost certainly going to have to close one of its sawmills. | 50 | 54 | 28 n.40 | The letter to which defendant cites, DX 463, says nothing of the sort. |
| Defendant is entitled to a credit for any profits made (or benefit achieved) by Precision Pine's processing of the breached timber in the post-suspension period because the suspension merely delayed performance and Precision Pine is not a lost volume seller. | 50 | 20 (suspension merely delayed Precision Pine's performance);<br><br>29, 30 (lost profits not foreseeable because suspension merely delayed Precision Pine's performance);<br><br>55 (re: entitlement to recoup hypothetical "gains" in efficiency on post-suspension period) | 8 | Precision Pine lost the opportunity to operate profitably during the suspension. Absent the suspension, Precision Pine could have operated profitably on the breached sales and on new sales thereafter, thus earning a second profit. Precision Pine was, by definition, a lost volume seller. |

| D's Argument | Page of D's Brief Where First Raised | Additional Pages of D's Brief Where the Argument was also Used | Page in Plaintiff's Response Brief Where the Argument is Rebutted | Brief Summary of Plaintiff's Position |
|---|---|---|---|---|
| Precision Pine should have derived rates for logging and hauling on each sale by referencing the total amount indicated in its financial statement for the fiscal year and dividing that number by the total volume estimated by the Forest Service removed during the fiscal year. | 50 | 60-61 | 41 | Rates set out on individual logger pay sheets are more reliable.<br><br>Defendant's approach compares apples (costs on Precision Pine's financial statements) with oranges (Forest Service TSSA volumes). |
| In one form or another Precision Pine lost profits should be tied to Mr. Porter's July 17, 1995 profit projections. | 50 | 31, n. 17 (Mr. Ness should have based his calculations on them) | 15, 25 | The projections were a worst case scenario and were never supposed to assess the actual profitability of the sales. |
| Restitution and a suit for damages are alternative remedies. | 50 | 62 | 10-11 | Precision Pine does not seek restitution. Its damage claims are fully compatible. |
| The fact that three contracting officers of limited experience never received claims for certain items proves that those items were not foreseeable by the Forest Service. | 52 | 59 (increased log hauling cost after an suspension) | 58 | Precision Pine's damages were foreseeable to it (and foreseen by) the Forest Service at the time of contracting and at the time of breach. The limited experience of these contracting officers is irrelevant. |