**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

PRECISION PINE & TIMBER, INC., )
)
Plaintiff, )
)
v. ) No. 98-720C
) (Judge George W. Miller)
THE UNITED STATES, )
)
Defendant. )
)

**PLAINTIFF'S COMMENTS ON DEFENDANT'S**
**CORRECTED PROPOSED FINDINGS OF FACT**

Precision Pine concurs in defendant's decision to delete its citations to the following twenty-four exhibits throughout its Corrected Proposed Finding of Fact (DPFF): DX 41, DX 54, DX 81, DX 82, DX 85, DX 96, DX 131, DX 279, DX 300, DX 316, DX 333, DX 403, DX 406, DX 468, DX 469, DX 471, DX 477, DX 566, DX 587, DX 709, DX 717, DX 722, DX 784 and DX 795.

Precision Pine also agrees with defendant that DPFF 37, which is not supported by any exhibit that was admitted into evidence, should be stricken.

Precision Pine further notes that the "corrected" redline version of DPFF continues to cite to at least three other exhibits that were never admitted into evidence: DX 2, DX 436, in DPFF 76, as well as DX 287 in DPFF 299. Precision Pine requests that the Court disregard any citation to these exhibits. Moreover, because these exhibits were never admitted, defendant's DPFF 76,

which relies in part on DX 2 and DX 436, with respect to its claim that Precision Pine requested extensions on "several contracts" is not supported by the evidence.

Additionally, defendant has significantly revised the exhibits it cites in support of its Proposed Finding of Fact 120, by adding some new exhibits, while dropping others. However, despite these revisions, defendant has still not provided the Court with evidence that Precision Pine did anything with the sawlogs that it harvested from its Forest Service timber sales except manufacture them into lumber products at its sawmills. Defendant adds a citation to DX 47 as evidence that Precision Pine sometimes did not use the "logs" from its Forest Service sales to produce lumber. However, DX 47 only shows that Precision Pine transferred the contract rights, with Forest Service approval, to standing timber on the Kettle sale to another lumber manufacturer, after Precision Pine had removed much of the sawtimber from the sale. Similarly, other of defendant's assertions of fact about what happened to "logs" from Forest Service sales are supported by new citations which concern the disposition of pulpwood and topwood from the sales, something for which Precision Pine had no use at its sawmills. See DX 457, DX 470.[1] More importantly, defendant's proposed finding ignores the fact that Precision Pine used the sawlogs from its Forest Service sales at its sawmills, and that Precision Pine certified this fact to the Forest Service on a regular basis. Plaintiff's Corrected Proposed Findings of Fact in Support of Plaintiff's Post-Trial Brief (PPFF) at 177-181. Accordingly, an attempt to intimate that sawlogs harvested from Forest Service timber sales were put to a variety of uses by Precision Pine remains unsupported and is untrue.

---

[1]Defendant's addition of a cite to the entirety of PX 182, Mr. Ness' expert report regarding post-suspension harvesting supports the fact that Precision Pine used the logs harvested from its Forest Service timber sales to manufacture lumber at its sawmills.

With respect to DPFF 295, defendant deleted all of its previous citations and substituted new citations. However, the new citations do not support defendant's contentions that there was a "settlement in the Southwest Center lawsuit", rather the exhibits show that Forest Service's eventual completion of the terms of the settlement agreement in Silver v. Babbitt (PX 106 at ¶ 5) resulted in the release of the Mud contract, not any settlement in Southwest Center. Moreover, despite defendant's claim that as of March 11, 1996 it made the Mud sale "available for harvesting by Precision Pine," the terms and conditions of the Mud contract referred to in DPFF 295 prevented harvest of the Mud contract for several more months. See PPFF 402.

With respect to DPFF 299, because DX 287 was not admitted into evidence, the only citation supporting the first sentence claiming that "Precision Pine began harvesting the Mud sale in July 1996" is DX 291, i.e. the TSSAs for the Mud sale. However, DX 291 does not contain a July TSSA showing harvest taking place in that month, and the August TSSA does show that the first 1051.60 CCF of timber were removed from the Mud sale area in August, as claimed by Precision Pine. See PPFF 402.

With respect to DPFF 437, defendant dropped its citation to DX 70 in favor of "PX 515," however, there is no PX 515, thus, the first sentence of DPFF 437 is unsupported. Moreover, assuming that defendant intended to cite DX 515, defendant's claim that Precision Pine used the Forest Service conversion factor "for a number of significant calculations" is not supported by the cited calculations as both DX 515 and PX 117 are essentially examples of the same calculation of timber remaining on the Kettle contract in 1997, i.e, after the suspension had been lifted.

Finally, with respect to DPFF 603, defendant has replaced a cite to DX 131 with a cite to PX 131, App. A at 4, for the contention that Precision Pine would have moved off of the Brookbank sale had the Forest Service not suspended the contracts. In fact, however, Precision Pine was operating on the Brookbank sale at the time of the suspension and PX 131, App. A at 4 shows that Precision Pine would have completed the sale in the third quarter of 1995. However, because the Forest Service's suspension prevented Precision Pine from completing the sale as it would have, Precision Pine incurred additional move-in and move-out costs that it would have avoided had there been no suspension and the sale had been completed in 1995. The Forest Service has already recognized this fact and compensated Precision Pine for its costs PX 131 at Ex. 2 at p. 2 "Move Out Costs". As payment of this sum was not appealed by Precision Pine, it is therefore, not at issue in this case. Precision Pine's claim for overhead and profit on the move-out costs, however, remains at issue. Id.

Respectfully submitted,

s/Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
Bryan T. Bunting
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: January 23, 2006