# In the United States Court of Federal Claims

| | |
|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 98-720 C<br>Filed February 1, 2006 |

ORDER

In the Court's Order of January 23, 2006, the Court identified questions that it would like the parties in this case to address during the closing argument scheduled for February 17, 2006. The Court stated that it anticipated that it would identify additional questions and would endeavor to inform the parties of these questions with as much advance notice as possible prior to closing argument. The Court ORDERS that the parties shall be prepared to address the following additional questions during closing argument:

**Defendant**

1. Please discuss and explain the basis for defendant's position that plaintiff is seeking a "double recovery" of increased sawmill costs. *See* Def.'s Post-Trial Brief at 48 n.30.

2. Please describe with particularity any other instances in which defendant believes plaintiff is seeking a "double recovery" through both profits and increased costs. *See* Def.'s Post-Trial Brief at 16.

3. Please identify what additional information defendant believes would be needed to derive net profits as opposed to gross profits in this case. *See* Def.'s Post-Trial Brief at 18.

**Plaintiff**

1. Please discuss and explain the basis for plaintiff's position that plaintiff should incorporate increased sawmill costs into its calculation of post-suspension profits as well as part of its increased manufacturing costs during the suspension. *See* Pl.'s Resp. To Def.'s Post-Trial Brief at 56 n.76.

2. Please explain why plaintiff believes that net profits are not the appropriate measure of

damages in this case. *See* Pl.'s Resp. To Def.'s Post-Trial Brief at 9-10.

3. Why didn't the harvesting schedule employed by Mr. Ness take into account restrictions on the operating season or fire closures? (Trial transcript at 2848-49). Isn't the date that sales would have been harvested important to the extent that it would affect the stumpage price that Precision Pine would have paid?

4. Even if Precision Pine could have delayed harvesting some of the pulpwood by operating on the three largest payment units for those sales containing pulpwood and not removing the pulpwood until there was a market for it, wouldn't Precision Pine ultimately have had an obligation to remove the pulpwood? Wouldn't delayed harvesting simply have delayed the costs to Precision Pine?

5. The Eagar mill was permanently closed at the end of July 1997 due to a shortage of logs caused by the *Forest Guardians* suspension. *See* Pl.'s Corrected Post-Trial Brief at 59. How does Precision Pine harmonize this with its lost volume seller theory? Doesn't the closure of the Eagar mill due to a shortage of logs suggest that Precision Pine had the capacity to process additional sales (other than the sales that had been suspended) into lumber?

6. Even assuming that the milling schedule utilized by Mr. Ness would not have created a "cash crunch" for Precision Pine, why would Precision Pine have chosen to build up such a large log inventory? *See* Pl.'s Resp. To Def.'s Post-Trial Brief at 32-33.

7. To determine the product mix for sales where there had not been any harvesting prior to the suspension, how did Mr. Porter determine which sales that had been harvested to use as a comparison? *See* Pl.'s Corrected Post-Trial Brief at 29.

8. In calculating increased mill costs, why didn't Mr. Ness use a baseline period containing the same number and type of seasons as the actual suspension? *See* Pl.'s Resp. To Def.'s Post-Trial Brief at 58-59.

It is possible that the Court may identify additional questions that it would like the parties to address during closing argument. If the Court identifies such questions, it will endeavor to inform the parties of these questions with as much advance notice as possible prior to closing argument. The Court also reserves the right to pose additional questions to the parties at closing argument without advance notice.

In setting forth specific questions the answers to which the Court believes it would find helpful in resolving the case, the Court does not mean to suggest that counsel should limit their presentations to responding to the questions identified by the Court in advance of oral argument. To the contrary, the Court would hope and expect that counsel for each side would present a complete and coherent argument in plain English setting forth the essential factual and legal

bases on which counsel believes his side should prevail, and responding to the essential factual and legal contentions of his adversary. Ideally, each counsel should incorporate the answers to the Court's questions into such a comprehensive, affirmative presentation on behalf of his client.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge