**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-720C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

On May 25, 2006, the United States Court of Appeals for the Federal Circuit issued a decision in Old Stone Corp. v. United States, No. 05-5059. A copy of the court's slip opinion in Old Stone is attached hereto as Exhibit A.

The court's decision in Old Stone addressed at least two issues that are before the Court in this action: (1) the effect of electing to continue a contract after a material breach; and (2) the requirement that damages be foreseeable at the time of contracting in order to be recoverable. See Ex. A at 19, 21, 23-26.

**The Election Doctrine**

In Old Stone, the court reaffirmed that "a non-breaching party [that] elects to continue performance" of a contract "is said to elect to treat the breach as partial rather than total." Ex. A at 17. Additionally, the court described the reason for the election doctrine as follows:

> The election doctrine is designed to avoid the very kind of moral hazard that would result here if the thrift could postpone repudiation of the contract for several years, bet that it could make the thrift profitable, but secure restitution if the thrift failed. Our predecessor court, the Court of Claims, has recognized (in the waiver context), that "as a general proposition, one side cannot continue after a material breach by the other . . . act as if the contract remains fully in force . . . , run up damages, and then go suddenly to court."

Ex. A at 21 (citing Northern Helix Co. v. United States, 455 F.2d 546, 551 (Ct. Cl. 1972)). As explained in our briefs and at closing argument, the "very kind of moral hazard" that the election doctrine is designed to avoid is present in this action. Def.'s Post-Trial Br. at 27-28 ("While Precision Pine was free to play the market once the MSO suspensions ended, the Forest Service did not become a guarantor of Precision Pine's profits. The fact that Precision Pine['s] . . . post-suspension deferral of harvesting did not work out is not chargeable to the Forest Service."); see also Def.'s Post-Trial Response Br. at 12-15 (explaining that by virtue of its election to continue performance of the contracts, Precision Pine is not entitled to lost profits).

**Legal Foreseeability**

In Old Stone, the Federal Circuit also reversed the trial court's award of damages because the plaintiffs had not adequately established legal foreseeability. Ex. A at 23-26. The court first observed that it has "repeatedly held" that the "plaintiff's loss must have been foreseeable to the party in breach at the time of contract formation" in order to be recoverable. Ex. A at 24 (citing cases). The court then addressed the plaintiff's "primary theory" that the breach "required [plaintiff] to sell its crown jewels in order to [raise] additional capital . . . and that the sale of the crown jewels caused long-term adverse consequences." Ex. A at 25. Addressing the question of legal foreseeability, the court explained:

> Here the Court of Federal Claims did find that the loss was foreseeable both because the capital shortfall as a result of the breach was foreseeable and because "[i]t was also foreseeable that regulators subsequently would demand that [Old Stone] prop up its failing subsidiary with infusions of capital once [Old Stone] fell short of its capital requirements." Old Stone II, 63 Fed. Cl. at 89-90. In other words the Court of Federal Claims found that the need for additional replacement capital infusions from [Old Stone] to the thrift as a result of the breach was foreseeable. **But, even if the need for replacement capital was foreseeable, that hardly**

> **establishes that the adverse consequences alleged to flow from the need to make infusions were foreseeable**. As the Restatement of Contracts explains, "[t]he mere circumstance that some loss was foreseeable, or even that some loss of the same general kind was foreseeable, will not suffice if the loss that actually occurred was not foreseeable." Restatement (Second) of Contracts § 351 cmt a. (1981) (emphasis added).
>
> For the damages from the sale of the crown jewels to be foreseeable, the parties, at the time of contract formation, would have had to foresee: (1) that the thrift would have other problems that would require additional infusions of regulatory capital; (2) that the crown jewels would be the only source of additional capital because neither the holding company nor the thrift would have access to alternative capital; (3) that the thrift's other problems would be so severe that the thrift would be seized; and (4) that the availability of the crown jewels would have been sufficient to avoid the seizure. [Old Stone] has not called our attention to any testimony in the record that will support the foreseeability of any of these assumptions, and we have been unable to locate any. **Here we think that under established principles of foreseeability [Old Stone] has completely failed to establish that this extended chain of causation was foreseeable at the time of contract formation**.

Ex. A at 25-26 (emphasis added). This is the very point made in our post-trial briefs with respect to the foreseeability of Precision Pine's claims for profits and increased sawmill costs. Def.'s Post-Trial Br. at 27, 51-53.

Additionally, in footnote 15, the Federal Circuit discussed what it called an "instructive example" from the Restatement of Contracts:

> A, a carrier, contracts with B, a miller, to carry B's broken crankshaft to its manufacturer for repair. B tells A when they make the contract that the crankshaft is part of B's milling machine and that it must be sent at once, but not that the mill is stopped because B has no replacement. Because A delays in carrying the crankshaft, B loses profit during an additional period while the mill is stopped because of the delay. A is not liable for B's loss of profit.

> That loss was not foreseeable by A as a probable result of the breach at the time the contract was made because A did not know that the broken crankshaft was necessary for the operation of the mill.
>
> Restatement (Second) of Contracts § 351 cmt a., ill. 1 (1981). As in the illustration, the government did not have reason to know that the replacement capital was necessary [for Old Stone] to save the thrift from its other problems. See also id. at § 351, cmt d. (inability of injured party to make substitute arrangements must be foreseeable).

Ex. A at 26 n.15. Thus, in Old Stone, the Federal Circuit held that the inability to make "substitute arrangements" must itself be foreseeable at the time of contracting. Id. In our post-trial briefs, relying upon the very authority cited by the Federal Circuit, we explain that Precision Pine failed to establish legal foreseeability because the Forest Service was not aware that Precision Pine needed to harvest particular timber sale contracts at particular times and, moreover, because Precision Pine's supposed inability to obtain sufficient replacement timber was not foreseeable at the time of contracting.[1] See Def.'s Post-Trial Br. at 52 (citing Restatement (Second) of Contracts § 351 cmt d); Def.'s Post-Trial Resp. Br. at 24-25, 54-55 & n.31 (citing Restatement (Second) of Contracts § 351 cmts a & d).

Lastly, the Federal Circuit confirmed in Old Stone that claims for lost profits can be, and frequently are, denied as "too speculative."

> [Old Stone's] foreseeability argument is analogous to a Winstar claim for lost profits. In numerous cases we have rejected claims for lost profits on the ground that lost profits are too speculative to be recovered. See Cal. Fed. Bank v. United States, 395 F.3d 1263,

[1] Precision Pine in fact had a large volume of timber available that it chose not to harvest and mill during the MSO suspensions. Def.'s Post-Trial Response Br. at 51-52. Furthermore, timber was at all times available from the State of Arizona, Indian tribes and private landowners. Def.'s Post-Trial Br. at 53.

> 1272-73 (Fed. Cir.2005) (“ Cal Fed II”); Glendale, 239 F.3d at 1380; Glendale Fed. Bank, FSB v. United States, 378 F.3d 1308 (Fed. Cir.2004) (“ Glendale II”).

Ex. A at 28.

Respectfully submitted,

PAUL D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

/s David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

OF COUNSEL:

Patricia L. Disert
Lori Polin Jones
Office of the General Counsel
U.S. Department of Agriculture

June 9, 2006

Attorneys for Defendant