**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-720C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S NOTICE REGARDING**
**SUPPLEMENTAL AUTHORITY**

Defendant has submitted a "notice" of the recent decision in Old Stone Corp. v. United States, __ F.3d. __, 2006 WL 1420817 (Fed.Cir. 2006) purportedly in support of its position at trial with respect to the so-called election doctrine and foreseeeablity of damages. Plaintiff provides the instant notice to advise the Court that Old Stone presents nothing new in the law of this Circuit and deals with a situation that is wholly inapplicable to that presented by Precision Pine.

First, defendant cites Old Stone with respect to the so-called election doctrine, i.e. the choice a non-breaching party has to end a contract and seek restitution or to continue the contract and seek its non-restitution damages. Id., slip op. at 17-18. As Old Stone recognizes:

> When a non-breaching party elects to continue performance, that party is said to elect to treat the breach as partial rather than total. The consequence is that restitution is not available and the non-breaching party must pursue a claim for damages instead.

Id. (Citations omitted). In the instant case, Precision Pine does not contend that it put the contracts at an end at the time of the breach nor does it seek restitution, however, these facts do

not limit the damages which Precision Pine is seeking to recover that resulted from the breach. Of course, there is no dispute here that damages such as those sought by Precision Pine, including but not limited to lost profits, are intended to provide "[t]he benefits that were expected from the contract" in the absence of a breach to the non-breaching party. Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1380 (Fed.Cir. 2001). Precision Pine has presented ample authority in support of its position that it is entitled to recover all of the damages it actually sustained as a result of the government's partial breach of contract, including lost profits. See Plaintiff's Post-Trial Brief at 13-16; Plaintiff's Post-Trial Response Brief at 6-7. Indeed, Old Stone expressly supports Precision Pine on this point. Id., slip op. at 17-18. (Upon a breach of contract a party "can either elect to allege a total breach, terminate the contract and bring an action [for restitution], or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach …." quoting 13 Williston § 39:32 (4th ed.2000)). Defendant has provided this Court with no applicable authority demonstrating that where a partial breach of contract has occurred plaintiff should recover less than all of the damages it sustained and the case law is directly contrary to such a view. In fact, in Old Stone, a Winstar case in which damages have been notoriously difficult ascertain, the Federal Circuit affirmed the trial court's award of $74.5 million in post-breach mitigation damages sustained by the plaintiff bank, even though it had "elected" to keep the contract in place. Id. slip op. at 10-15.

In light of the court's award of mitigation damages for the partial breach that took place in Old Stone, the Federal Circuit denied plaintiff's attempt to also recover restitution damages by repudiating the contract long after the breach occurred and following the seizure of bank assets

by federal regulators. Id., slip op. at 22. It is only in this factual context that Old Stone discusses the "moral hazard" that could arise if a plaintiff were allowed to keep a contract in place until sometime long after a breach occurred and then seek to terminate the contract and "rush suddenly to court" to obtain restitution damages along with mitigation damages. Id., slip op. at 21. No such moral hazard is present here as Precision Pine notified the Forest Service just weeks after the suspension was first imposed and while the suspension was still in place that it considered the suspension to be a breach, and that it was going to hold the Forest Service responsible for all of the damages that it had sustained as a result. Moreover, Precision Pine did not delay, then attempt declare a total breach and "rush into court" to recover restitution damages. Rather, shortly after the suspensions were lifted Precision Pine filed its claims and then brought suit for the non-restitution damages that it sustained during the suspension period. The recovery of those damages that Precision Pine sustained due to the government's breach is perfectly proper, as Old Stone recognizes.[1] Thus, in Old Stone the court's denial of plaintiff's attempt to declare a total breach and recover restitution long after the breach occurred provides no insight into the resolution of Precision Pine's damages.

.

Defendant also claims to rely on Old Stone for its treatment of the issue of foreseeablity, however, defendant's reliance is, once again, misplaced. In Old Stone the court ruled that the

[1]Because Precision Pine was a lost volume seller, but for the suspension, it would have earned profits on the breached contracts during the suspension period and then entered into new contracts in the post-suspension period and thereby earned a separate, second set of profits in the post-suspension period. Here, defendant seeks to reduce Precision Pine lost profits during the suspension period by deducting profits made on the breached contracts during the post-suspension period. In the context of this case such an offset is inappropriate and results in putting Precision Pine into a significantly worse position than it would have been in but for the breach. See Plaintiff's Post-Trial Brief at 44-47; Plaintiff's Post-Trial Response Brief at 8-10.

foreseeability of reliance damages (one bank's lost investment in another bank that was seized by federal regulators) had not been established. Id., slip op. at 28. Indeed, in overturning part of the trial court's award of damages, the Federal Circuit stated that, "the Court of Federal Claims did not explain how the breach … caused the seizure [of the thrift]." Id., slip op. at 23. Moreover, the Federal Circuit noted that the plaintiff in Old Stone had not "called [the court's] attention to any testimony in the record that will support the foreseeability of any of the[ ] assumptions" necessary to prove foreseeability. Id., slip op. at 26. Accordingly, based on the record before the Federal Circuit "[t]here was no proof that the attenuated claim of causation on which the [plaintiff] relies was foreseeable." Id., slip op. at 29.[2]

Of course, defendant previously moved for judgment on the issue of foreseeablity as a matter of law in the instant case at summary judgment and this Court correctly and readily rejected that motion finding that the issue of foreseeablity typically involves a factually intensive inquiry and noted that the record at summary judgment already demonstrated that the dire impacts of a prolonged suspension on area sawmill operators was likely long known by the Forest Service. Precision Pine & Timber, Inc. v. United States, 63 Fed.Cl.122, 130-31 (2004). The proof at trial fully supports the conclusion that the Forest Service had reason to foresee and

[2]The damages at issue in Old Stone were not expectancy damages such as the lost profits being sought by Precision Pine. Moreover, even in the context of damages litigation in Winstar cases, the remote nature of the damages claimed and the complete lack of any proof on the issue of foreseeability that was present in Old Stone has already been recognized as an anomaly. See Fifth Third Bank v. United States, __ Fed.Cl.__, 2006 WL 1494995 at *36 (May 26, 2006).(" The instant case is distinguishable from Old Stone, as both the causal link is not attenuated, see id., slip op. at 29, and the evidence is specific, definite, and persuasive, that the regulators foresaw the damages caused by the sale of the Cincinnati division and premature conversion.)

actually foresaw the damages sustained by Precision Pine. See Plaintiff's Post-Trial Brief at 16, 56, 60; Plaintiff's Post-Trial Response Brief at 21, 57, 62.[3]

Moreover, even if plaintiff in Old Stone had offered some proof on the foreseeability of its damages (which the Federal Circuit found it had not done), the claim that plaintiff ("OCS") was pursuing was not one for lost profits such as Precision Pine seeks here. Id., slip op. at 28. Rather, the court characterized OCS's claim as being much more attenuated than one for lost profits:

> A lost profits claim in a Winstar case typically assumes that it was foreseeable the breach would force the plaintiff to sell assets that otherwise would have generated profits and seeks to recover the profits. See, e.g., Cal Fed, 245 F.3d at 1349-50. OSC does not seek to recover lost profits. See Pl's Br. at 27. (Quotation omitted). Nonetheless, OSC's theory does not merely assume that the loss of profits was

---

[3]As this Court correctly determined at summary judgment:

A plaintiff's recovery is not contingent on defendant's having actually foreseen the injury that occurred. Rather,

> The existing rule requires only reason to foresee, *not actual foresight.* It does not require that the defendant should have had the resulting injury actually in contemplation or should have promised either impliedly or expressly to pay therefor in case of breach. It is erroneous, therefore, to refuse damages for an injury merely because its possibility was not in fact in contemplation of the parties at the time they made the contract. 11 CORBIN ON CONTRACTS § 1009 at 66 (Interim ed.) (emphasis added); see also Bluebonnet Sav. Bank, FSB v. United States, 266 F.3d 1348, 1355 (Fed.Cir.2001) ( "expectation damages are recoverable provided they are actually or reasonably foreseeable ····") (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 347, 351, 352 (1981)) (emphasis added). Anchor Sav. Bank, FSB v. United States, 59 Fed.Cl. 126, 146 (2003). In that regard, Precision Pine need not show that a particular type of breach was foreseeable, but must prove that both the general magnitude and type of damages were foreseeable. Franconia, 61 Fed. Cl at 751 (citing Landmark Land Co. v. FDIC, 256 F.3d 1365, 1378 (Fed.Cir.2001)).

Precision Pine, 64 Fed.Cl. at 130. Emphasis in original. See also Old Stone, slip op. at 24 (For damages to be recoverable, breaching party must have "reason to foresee" that damages will be "a probable result" of the breach.)

> foreseeable; it also assumes it was foreseeable that those profits (or the revenues from asset sales) would have resolved problems not caused by [the breach] and that neither OSC nor OSB would be able to resolve those problems by raising funds from other sources. There was no proof that the attenuated claim of causation on which OSC relies was foreseeable. Cal Fed, 245 F.3d at 1349-50.

Old Stone, slip op. at 28-29. (Emphasis supplied).

Finally, defendant reasserts it reliance on a line of Winstar cases denying lost profits. See Notice at 4-5. Obviously, part of the problem with the foreseeability of lost profits claims in the context of Winstar, as is made clear by the cases defendant cites, is that foreseeablity hinges on whether the government knew or should have known that the Winstar plaintiff would be forced to sell other corporate assets at a reduced profit as a result of the breach, i.e., the government's change in favorable regulatory treatment. Here, by contrast, the breach was the protracted suspension of Precision Pine's Forest Service timber sale contracts and the lost profits that Precision Pine seeks are due directly to the fact that the subject matter of the contracts themselves was unavailable. The Federal Circuit has repeatedly found that lost profits on the subject matter of a breached contract are recoverable. Plaintiff's Post-Trial Brief at 4-8; Plaintiff's Post-Trial Response Brief at 7-8.

That proposition is even more applicable in the instant case because an acknowledged purpose of the Forest Service timber sale program at all times relevant to this case was to supply raw material to be manufactured into lumber products local sawmills. See Plaintiff's Post-Trial Brief at 4-8, 16; Plaintiff's Post-Trial Response Brief at 7-8, 21. Indeed, for more than a decade prior to the suspension the Forest Service had supplied the vast majority of Precision Pine's raw material, and Precision Pine was required to advise the Forest Service at the time of contracting

whether it was a manufacturer, where the timber was to hauled before it was harvested and subsequently to advise the Forest Service where Precision Pine had actually taken the timber for processing. Id. These and myriad other facts adduced at trial establish that it was entirely foreseeable to Forest Service and, in fact, was foreseen by it that a suspension of the protracted and region-wide magnitude such as took place between August of 1995 and December of 1996 would have devastating impacts on local sawmills, including Precision Pine. Id.[4] For this reason, defendant's attempt to analogize the instant case to an illustration in the Restatement where a crankshaft manufacturer simply did not know that plaintiff's one time order of a crankshaft was necessary for its mill to operate is wholly inapposite to the instant case where the Forest Service was engaged in an decade-long business relationship with Precision Pine that was specifically intended to supply raw material to Precision Pine's sawmills.

Respectfully submitted,

s/Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140
Counsel for Plaintiff

OF COUNSEL:
Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 14, 2006

[4] In a footnote, defendant broadly asserts that other sources of timber may have been available to Precision Pine during the period of the suspension. Notice at 4, n.1. Precision Pine, however, has rebutted this contention in considerable detail in its post-trial papers. See e.g., Plaintiff's Post-Trial Response Brief at 15-21 and proposed findings of fact set forth therein.