# In the United States Court of Federal Claims

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 98-720 C

Filed September 20, 2006

**ERRATA**

Pursuant to Rule 60(a) of the Rules of the United States Court of Federal Claims, the Court, *sua sponte*, corrects the Opinion and Order filed September 19, 2006, in this case in the following respect:

On page 27, in the last line of the first full paragraph, delete the word "plaintiff's" and substitute the word "defendant's".

Attached is a substitute page 27, which incorporates the foregoing correction.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge

Defendant was also aware that plaintiff intended to offer the lumber that it manufactured for sale. As discussed at Section I., *supra*, contract clause CT8.212 provided purchasers with additional time to harvest the timber on a contract in the event of a downturn in the lumber market. *See* PX 170 at JRH-112; PX 171 at ODR-90; PX 172 at BRB-88. Commercial contracts, especially those for resale, create the inference of lost profits as a probable result of breach by the nature of the contracts themselves. *See* Section III., *infra*; *see also Lewis v. Mobil Oil Corp.*, 438 F.2d 500, 510 (8th Cir. 1971) ("Where a seller provides goods . . . with knowledge that they are to be used in the manufacturing process . . . loss of profits is a natural consequence . . . ."); ROBERT L. DUNN, RECOVERY OF DAMAGES FOR LOST PROFITS § 1.16, at 45-46 (6th ed. 2005) ("The seller's knowledge that the sale is for resale has been sufficient, in most cases, to demonstrate foreseeability of loss."). Comment 6 to U.C.C. § 2-715 states, "In the case of sale of wares to one in the business of reselling them, resale is one of the requirements of which the seller has reason to know . . . ."[17] Accordingly, lost lumber profits were a foreseeable result of defendant's breach.

As discussed at Section 3.B. of the Background section, *supra*, defendant asserts that no loss of profits was expected because it anticipated that the "very same contracts" would be available to Precision Pine after the suspensions were lifted. *See* Def.'s Post-Trial Brief at 29. Specifically, because the suspensions only delayed operations, as opposed to cancelling the contracts entirely, defendant argues that "there was no reason to think that delay caused by a suspension would have resulted in a loss of profits, as opposed to the mere deferral of profits." *Id.* at 30. By the very nature of a breach due to a delay in delivery, defendant knew the timber would be delivered at a later time than the plaintiff had expected. The resulting loss would therefore be foreseeable if defendant was aware that lumber prices would likely fluctuate over the period of the suspensions and that there was a substantial risk that plaintiff's performance would be forced into a time period where it was more expensive or less profitable.

The record reflects that there was reason for defendant to foresee that the price of lumber would change over time. For instance, as discussed in Section I., *supra*, several of the contracts at issue contained stumpage prices that were linked to the lumber market. For the these contracts, it is impossible to determine the price to be paid for the Forest Service timber under contract without reference to an index of lumber product prices. *See* PX 170 at JRH-29. In addition, as discussed in Section I., *supra*, contract clause CT8.212 provided purchasers with additional time to harvest timber sales if there was a significant downturn in the lumber market. The escalated and de-escalated pricing clauses and contract clause CT8.212 demonstrate that it was foreseeable to defendant that the price of lumber would change over time, and that this

[17] The Federal Circuit has found that in the context of a government contract, the U.C.C. and the concepts discussed therein, although not governing, provide "useful guidance in applying general contract principles." *See Hughes Comm. Galaxy, Inc. v. United States*, 271 F.3d 1060, 1066 (Fed. Cir. 2001); *see also Citizens Fed. Bank, FSB v. United States,* 59 Fed. Cl. 507, 514 n.6 (2004).