# In the United States Court of Federal Claims

| | |
|---|---|
| PRECISION PINE & TIMBER, INC.,<br><br>Plaintiff,<br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 98-720 C<br><br>Filed October 3, 2007 |

**FURTHER ERRATA**

Pursuant to Rule 60(a) of the Rules of the United States Court of Federal Claims, the Court, *sua sponte*, corrects the Opinion and Order filed September 14, 2007 in this case (docket entry 440) in the following respects:

On page 40, in the 17th, 20th, and 24th lines of text, substitute the number "618" for "623" and on the 5th line from the bottom and bottom line, substitute "20%" for "19%."

On page A-1, in Appendix A, change the volume of timber harvested from the breached contracts for October 1996 from 3843 Mbf(LS) to 3849 Mbf(LS).

On pages B-1 and B-2, in Appendix B, change the figures set forth in the following tables: "1995 4th Quarter," "1996 2nd Quarter," "1996 3rd Quarter," and "1996 4th Quarter" to conform to the figures shown on the substitute pages B-1 and B-2 attached.

The revisions described above result from a clerical error made in the creation of the tables. The error impacts more than one value because the calculations in the fields of the tables and the numerical references on page 40 are interrelated.

Attached are substitute pages 40, A-1, B-1, and B-2, which incorporate the foregoing corrections.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge

#### e. Manaco Sale

The Manaco contract provided that no harvesting was to occur between July 15 and August 15. PX 178 (AT 17). In addition, Manaco was subjected to an additional suspension because a Mexican Spotted Owl was identified in nearby forest land in the summer of 1996, requiring the Forest Service to undertake additional consultations with the FWS. Trial Tr. at 4625–27 (Dils). The Forest Service did not lift that suspension until March of 1997. *Id.* at 4625 (Dils). In June of 1997, the Manaco contract was subjected to a further partial suspension which lasted until December of 1997. DX 800 at 19. Defendant argues that the MSO suspension did not prevent plaintiff from harvesting the Manaco contract because plaintiff would not have been able to harvest it even absent its breach. Def.'s Br. at 26 (docket entry 382, Sept. 2, 2005). Plaintiff argues that notwithstanding the further suspensions, plaintiff would have "conducted substantial harvesting." Pl.'s Resp. Br. at 19–20 (docket entry 396, Nov. 14, 2005). The Court finds that plaintiff would have had an opportunity to harvest a substantial amount of the Manaco contract.[1] Nonetheless, based on the Court's revised harvesting schedule described below and set forth in the appendices to this Opinion and Order, plaintiff would not have completely harvested the Manaco sale during the suspension period. Under the Court's harvesting contract apportionment table, on July 15, 1995, the date on which the Manaco sale would have entered its break in the harvesting season, Manaco would have had 618 Mbf (LS) of timber remaining on the sale. *See* Appendix B, at B-2; *see also infra,* Section II.A.2.f (explanation of Appendix B). In the actual world, plaintiff harvested 769 Mbf (LS) in the post-suspension period. Although plaintiff may not recover lost profits on the 618 Mbf (LS) that the Court finds it likely would not have harvested during the suspension period in the absence of the breach, this amount is excluded from the computation of its profits in the post-suspension period which the Court, *supra*, Section I.B, requires plaintiff to deduct from its lost profits in the suspension period. The Court finds that plaintiff likely would have harvested at least 618 Mbf (LS) from the Manaco sale in the post-suspension period irrespective of the breach. Put another way, only 20% of the total 769 Mbf (LS) that plaintiff actually harvested from the Manaco sale in the post-suspension period consists of timber that plaintiff would not have harvested in the post-suspension period absent the breach. Thus, for the Manaco sale, plaintiff need only reduce its lost profits during the suspension period by 20% of its actual profits in the post-suspension period.

---

[1] Defendant's argument is partially based on the assertion that the breach of the Manaco sale did not occur for the first 135 days of the suspension. *Id.* Def.'s Br. at 26 (docket entry 382, Sept. 2, 2005). The Court has already held that for those contracts upon which defendant breached its implied duty to cooperate, including Manaco, the breach arose at the time that those contracts were executed. *Supra,* Section II.A.1.d. Thus, the Court finds that but for the breach, plaintiff would have had the timber from the Manaco sale available to it for those periods up until July 15, 1996, during the normal Manaco operating season with the exception of the period corresponding the fire closure.

## Appendix A: The Court's Alternative Harvesting and Milling Schedule

| | Timber Harvested From Breached Contracts (Mbf (L S)) | Vol. Milled from Breached Contracts (Mbf (L T)) | Vol. Milled from Other Contracts (Mbf (L T)) | Total Mill Production (Mbf (L T)) |
|---|---|---|---|---|
| Sept. 1995 | 1598 | 853 | 1827 | 2680 |
| Oct. 1995 | 2061 | 1431 | 1249 | 2680 |
| Nov. 1995 | 1856 | 1175 | 1505 | 2680 |
| Dec. 1995 | 2070 | 1442 | 1408 | 2850 |
| Jan. 1996 | 0 | 1114 | 1836 | 2950 |
| Feb. 1996 | 0 | 826 | 2124 | 2950 |
| Mar. 1996 | 0 | 1827 | 1123 | 2950 |
| Apr. 1996 | 2317 | 1744 | 1206 | 2950 |
| May. 1996 | 629 | 1064 | 1886 | 2950 |
| Jun. 1996 | 0 | 1689 | 1258 | 2947 |
| Jul. 1996 | 3359 | 2019 | 446 | 2465 |
| Aug. 1996 | 1555 | 1944 | 1006 | 2950 |
| Sept. 1996 | 4138 | 2139 | 811 | 2950 |
| Oct. 1996 | 3849 | 1993 | 957 | 2950 |
| Nov. 1996 | 0 | 2122 | 828 | 2950 |
| Dec. 1996 | 0 | 2286 | 664 | 2950 |
| Jan. 1997 | 0 | 1916 | 1034 | 2950 |
| Feb. 1997 | 0 | 1708 | 952 | 2660 |
| *TOTAL:* | 23432 | 29290 | | |

# Appendix B: The Volume of Timber That, Pursuant to the Court's Alternative Approach, the Court Treats As the Volume That Plaintiff Would Have Harvested From Each of the Breached Contracts During the Suspension Period

| 1995 3rd Quarter (September) | Total Volume Remaining in Mbf (LS) | Harvesting Days | Vol. x No. Days | Fractional Portion | Apportioned Volume |
|---|---|---|---|---|---|
| Brookbank | 1355.5 | 30 | 40665 | 0.127 | 203 |
| Hay | 3819 | 0 | 0 | 0.000 | 0 |
| Jersey Horse | 1520 | 0 | 0 | 0.000 | 0 |
| Kettle | 2851 | 30 | 85530 | 0.267 | 427 |
| Manaco | 2503 | 30 | 75090 | 0.235 | 375 |
| Monument | 730.5 | 30 | 21915 | 0.069 | 110 |
| Mud | 2086.5 | 30 | 62595 | 0.196 | 313 |
| O.D. Ridge | 2626 | 0 | 0 | 0.000 | 0 |
| Saginaw-Kennedy | 1134 | 30 | 34020 | 0.106 | 170 |
| Salt | 2230 | 0 | 0 | 0.000 | 0 |
| U-Bar | 3194 | 0 | 0 | 0.000 | 0 |
| *TOTAL:* | 24050 | | 319815 | | 1598 |

| 1995 4th Quarter | Total Volume Remaining in Mbf (LS) | Harvesting Days | Vol. x No. Days | Fractional Portion | Apportioned Volume |
|---|---|---|---|---|---|
| Brookbank | 1152 | 46 | 53006 | 0.097 | 582 |
| Hay | 3819 | 0 | 0 | 0.000 | 0 |
| Jersey Horse | 1520 | 0 | 0 | 0.000 | 0 |
| Kettle | 2424 | 31 | 75132 | 0.138 | 825 |
| Manaco | 2128 | 61 | 129795 | 0.238 | 1425 |
| Monument | 621 | 61 | 37881 | 0.069 | 416 |
| Mud † | 1774 | 91.05 | 161497 | 0.296 | 1774 |
| O.D. Ridge | 2626 | 0 | 0 | 0.000 | 0 |
| Saginaw-Kennedy † | 964 | 91.05 | 87773 | 0.161 | 964 |
| Salt | 2230 | 0 | 0 | 0.000 | 0 |
| U-Bar | 3194 | 0 | 0 | 0.000 | 0 |
| *TOTAL:* * | 22451 | | 545083 | | 5986 |

† By contract, the Mud and Saginaw-Kennedy sales would have provided for 92 harvesting days in the 4th Quarter of 1995. However, neither sale would have contained enough timber to last for a full 92 days, using the Court's methodology. Thus, for each of those contracts, the number of harvesting days was adjusted downward, so that at the end of the 4th Quarter of 1995, each contract would have exactly 0 Mbf (LS) remaining timber. As the Court found, *supra,* Section II.A.1.a, ¶ 2, plaintiff would have managed its inventory of standing timber so as to maximize its harvesting season.

*There is a difference of one Mbf (LS) for the 1995 4th quarter as shown in Appendix A (5987 Mbf (LS)) and that value as shown in Appendix B (5986 Mbf (LS)). This difference is caused by the rounding of decimal points in performing the calculations.

| 1996 2nd Quarter | Total Volume Remaining in Mbf (LS) | Harvesting Days | Vol x No. Days | Fractional Portion | Apportioned Volume |
|---|---|---|---|---|---|
| Brookbank | 570 | 21 | 11974 | 0.057 | 168 |
| Hay | 3819 | 21 | 80199 | 0.382 | 1124 |
| Jersey Horse | 1520 | 21 | 31920 | 0.152 | 448 |
| Kettle | 1599 | 0 | 0 | 0.000 | 0 |
| Manaco | 702 | 5 | 3512 | 0.017 | 49 |
| Monument | 205 | 21 | 4305 | 0.020 | 60 |
| Mud | 0 | 0 | 0 | 0.000 | 0 |
| O.D. Ridge | 2626 | 0 | 0 | 0.000 | 0 |
| Saginaw-Kennedy | 0 | 0 | 0 | 0.000 | 0 |
| Salt | 2230 | 5 | 11150 | 0.053 | 156 |
| U-Bar | 3194 | 21 | 67074 | 0.319 | 940 |
| *TOTAL:* | 16466 | | 210135 | | 2946 |

| 1996 3rd Quarter | Total Volume Remaining in Mbf (LS) | Harvesting Days | Vol. x No. Days | Fractional Portion | Apportioned Volume |
|---|---|---|---|---|---|
| Brookbank | 402 | 83 | 33392 | 0.033 | 300 |
| Hay | 2695 | 83 | 223645 | 0.222 | 2010 |
| Jersey Horse | 1072 | 83 | 89013 | 0.088 | 800 |
| Kettle | 1599 | 83 | 132679 | 0.132 | 1192 |
| Manaco †† | 653 | 6 | 3919 | 0.004 | 35 |
| Monument | 145 | 83 | 12005 | 0.012 | 108 |
| Mud | 0 | 0 | 0 | 0.000 | 0 |
| O.D. Ridge | 2626 | 83 | 217958 | 0.216 | 1958 |
| Saginaw-Kennedy | 0 | 0 | 0 | 0.000 | 0 |
| Salt †† | 2074 | 52 | 107831 | 0.107 | 969 |
| U-Bar | 2254 | 83 | 187044 | 0.186 | 1681 |
| *TOTAL:* * | 13519 | | 1007486 | | 9053 |

| 1996 4th Quarter | Apportioned Volume |
|---|---|
| Brookbank | 102 |
| Hay | 685 |
| Jersey Horse | 273 |
| Kettle | 406 |
| Manaco | 0 |
| Monument | 37 |
| Mud | 0 |
| O.D. Ridge | 668 |
| Saginaw-Kennedy | 0 |
| Salt | 1105 |
| U-Bar | 573 |
| *TOTAL:* * | 3848 |

†† The Manaco and Salt contracts provided that no harvesting occur between July 15 and August 15.

* There is a difference of one Mbf (LS) for the 1996 3rd quarter as shown in Appendix A (9052 Mbf (LS)) and that value as shown in Appendix B (9053 Mbf(LS)), as well as a difference of one Mbf (LS) for the 1996 4th quarter as shown in Appendix A (3849 Mbf (LS)) and that value as shown in Appendix B (3848 Mbf (LS)). These differences are caused by the rounding of decimal points in performing the calculations.