# EXHIBIT 1

**e. Manaco Sale**

The Manaco contract provided that no harvesting was to occur between July 15 and August 15. PX 178 (AT 17). In addition, Manaco was subjected to an additional suspension because a Mexican Spotted Owl was identified in nearby forest land in the summer of 1996, requiring the Forest Service to undertake additional consultations with the FWS. Trial Tr. at 4625–27 (Dils). The Forest Service did not lift that suspension until March of 1997. *Id.* at 4625 (Dils). In June of 1997, the Manaco contract was subjected to a further partial suspension which lasted until December of 1997. DX 800 at 19. Defendant argues that the MSO suspension did not prevent plaintiff from harvesting the Manaco contract because plaintiff would not have been able to harvest it even absent its breach. Def.'s Br. at 26 (docket entry 382, Sept. 2, 2005). Plaintiff argues that notwithstanding the further suspensions, plaintiff would have "conducted substantial harvesting." Pl.'s Resp. Br. at 19–20 (docket entry 396, Nov. 14, 2005). The Court finds that plaintiff would have had an opportunity to harvest a substantial amount of the Manaco contract.[1] Nonetheless, based on the Court's revised harvesting schedule described below and set forth in the appendices to this Opinion and Order, plaintiff would not have completely harvested the Manaco sale during the suspension period. Under the Court's harvesting contract apportionment table, on July 15, 1996, the date on which the Manaco sale would have entered its break in the harvesting season, Manaco would have had 624 Mbf (LS) of timber remaining on the sale. *See* Appendix B, at B-2; *see also infra,* Section II.A.2.f (explanation of Appendix B). In the actual world, plaintiff harvested 769 Mbf (LS) in the post-suspension period. Although plaintiff may not recover lost profits on the 624 Mbf (LS) that the Court finds it likely would not have harvested during the suspension period in the absence of the breach, this amount is excluded from the computation of its profits in the post-suspension period which the Court, *supra*, Section I.B, requires plaintiff to deduct from its lost profits in the suspension period. The Court finds that plaintiff likely would have harvested at least 624 Mbf (LS) from the Manaco sale in the post-suspension period irrespective of the breach. Put another way, only 19% of the total 769 Mbf (LS) that plaintiff actually harvested from the Manaco sale in the post-suspension period consists of timber that plaintiff would not have harvested in the post-suspension period absent the breach. Thus, for the Manaco sale, plaintiff need only reduce its lost profits during the suspension period by 19% of its actual profits in the post-suspension period.

---

[1] Defendant's argument is partially based on the assertion that the breach of the Manaco sale did not occur for the first 135 days of the suspension. *Id.* Def.'s Br. at 26 (docket entry 382, Sept. 2, 2005). The Court has already held that for those contracts upon which defendant breached its implied duty to cooperate, including Manaco, the breach arose at the time that those contracts were executed. *Supra,* Section II.A.1.d. Thus, the Court finds that but for the breach, plaintiff would have had the timber from the Manaco sale available to it for those periods up until July 15, 1996, during the normal Manaco operating season with the exception of the period corresponding the fire closure.