# In the United States Court of Federal Claims

No. 98-720
Filed May 2, 2008
TO BE PUBLISHED

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) ) ) ) ) ) ) | Timber Sale Contracts; Motion for Reconsideration of Interlocutory Order Directing Plaintiff to Recalculate Its Damages in Light of Court's Findings After Trial; Plaintiff's Damages Model; Plaintiff's Use of New Input Values Based on Court's Findings; Declaration of Defendant's New |
| Plaintiff, | ) ) | Expert Witness, Proffered in Response to Plaintiff's Revised Damages Calculations |
| v. | ) ) ) ) ) | and in Support of Defendant's Contentions Relating to Causation and Alleged Failure to Mitigate; Lack of Basis for Court's Consideration of Declaration for Such |
| THE UNITED STATES, | ) ) ) ) | Purposes After Trial; Profits Earned on Breached Contracts in Post-Breach Period Discounted to Present Value in Plaintiff's Revised Damages Calculations But Not |
| Defendant. | ) ) ) ) | Subject of Proof at Trial; Plaintiff's Damages Reduced to Eliminate Effect of Discounting, Which Defendant Had No Opportunity to Contest at Trial. |

Alan I. Saltman, Saltman & Stevens, P.C., Washington, D.C., for plaintiff. Richard W. Goeken and David J. Craig, Saltman & Stevens, P.C., Washington, D.C., of counsel.

David A. Harrington, Marla T. Conneely, Trial Attorneys, Bryant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, Jeffrey S. Bucholtz, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Lori Polin Jones and Patricia L. Disert, U.S. Department of Agriculture, Washington, D.C., of counsel.

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR RECONSIDERATION AND DIRECTING THE
ENTRY OF FINAL JUDGMENT IN FAVOR OF PLAINTIFF**

GEORGE W. MILLER, Judge.

On April 18, 2008, defendant filed a motion for reconsideration ("Def.'s Mot. for Reconsideration") (docket entry 460) of certain aspects of this Court's Opinion and Order filed September 14, 2007 (docket entry 440) ("Opinion and Order"). In addition, in accordance with the Court's Order of March 13, 2008 (docket entry 458), defendant also filed its response to plaintiff's further revised damages calculations, filed March 18, 2008 (docket entry 459).[1]

I.    **Introduction — The Adversarial Process**, **Plaintiff's Computation of Damages, and Whether the Court Must Reopen the Record**

The Court rejects defendant's contention that the Court created a new "damages model" in its Opinion and Order. *See* Def.'s Mot. for Reconsideration at 3 ("the Court . . . created its own damages model -- a model that was neither presented at trial, nor vetted by the adversarial process.") On the contrary, the Court in its Opinion and Order and thereafter in a further order (docket entry 458) directed plaintiff to submit a revised calculation of damages using the same damages model that plaintiff utilized at trial[2] but using different input values consistent with the Court's Opinion and Order. *See Precision Pine & Timber, Inc. v. United States*, __ Fed. Cl.__, 2007 WL 5030766, at *1 (Sept. 14, 2007) ("the Court has determined that certain of the input values used by plaintiff in its calculation of lost profits require modification, and as a result, plaintiff's damages must be recalculated in light of the Court's findings"); *see also* Order Denying Plaintiff's Motion for Reconsideration and Directing Plaintiff to Submit Further Revised Damages Calculation at 5 (docket entry 458) (directing plaintiff, in submitting its further revised damages calculation, to "accept as given" the Court's Alternative Harvesting and Milling Schedule). The plaintiff's task, pursuant to the Court's direction, was simply a matter of computation. *See American Federal Bank, FSB v. United States*, 74 Fed. Cl. 208 (2006) (denying defendant's motion for reconsideration where court adopted parameters for calculating damages that flowed specifically from the facts proven at trial and asked the parties to recalculate damages based on the Court's specifications); *see also Principal Life Insurance Company v. United States*, 70 Fed. Cl. 144, 171 (2006) (in a procedure which "loosely track[ed] Rule 155 of the U.S. Tax Court's Rules

---

[1] This Opinion and Order assumes familiarity with both the Court's September 19, 2006 Opinion and Order, *Precision Pine & Timber, Inc. v. United States*, 72 Fed. Cl. 460 (2006)), and its September 14, 2008 Opinion and Order. *Precision Pine & Timber, Inc. v. United States*, __ Fed. Cl.__, 2007 WL 5030766 (Sept. 14, 2007).

[2] Plaintiff's damages model, presented at trial by its accounting expert witness, Robert A. Ness, is described at pages 31-32 of the Opinion and Order.

of Practice and Procedure," the court directed the parties to submit computations of the amount of the judgment to be entered consistent with the court's rulings on the issues).

The Court also rejects defendant's contention that there was a failure of proof with respect to damages at trial. *See* Def.'s Mot. for Reconsideration at 3-4.[3] On the contrary, although the Court rejected a number of both parties' contentions with respect to certain of the input values, the Court made its own findings with respect to each of such input values. *See* Opinion and Order at 32-69.[4] The Court's findings and assumptions, which it directed plaintiff to use in presenting its revised calculation of its damages, were based on ample evidence of record, which the defendant had a full and fair opportunity to contest.

The fact is that (with one exception discussed at Part VI, *infra*) plaintiff produced its further revised damages calculations (docket entry 459) using the same damages model that Mr. Ness described at trial but using different input values as required by the Court's Opinion and Order. Accordingly, the Court **DENIES** defendant's motion for reconsideration insofar as it argues that the Court's Opinion and Order "undercuts the adversarial process," (*i.e.,* part II of defendant's motion for reconsideration). Similarly, the Court **DENIES** that portion of defendant's response insofar as it argues that the "Court cannot award the damages claimed by Precision Pine without reopening the record and holding a new trial" (*i.e.,* part III of defendant's motion for reconsideration).

## II.  Timeliness of Defendant's Requests for Reconsideration

With respect to defendant's requests for reconsideration set forth in part III of defendant's motion and in parts II. C. and D. of defendant's response, the Court notes that defendant's requests for reconsideration come seven months after the filing of the Court's Opinion and Order that defendant now asks the Court to reconsider. Those requests also come after plaintiff has already been required to submit two calculations of damages (docket entries 449 and 459). Permitting reconsideration at this time could require plaintiff to undertake yet a third iteration of its damages calculation. Recognizing that the Court's Opinion and Order is not a final judgment, the Court's

---

[3] Indeed, in its Opinion and Order the Court stated: "[h]aving listened to 24 days of trial testimony and having reviewed hundreds of trial exhibits -- many exhibits individually consisting of hundreds of pages -- the Court concludes that plaintiff has established that it sustained damages as a direct and foreseeable result of defendant's breach." *Precision Pine*, __Fed. Cl.__, 2007 WL 5030766 at *32.

[4] For example, the Court rejected plaintiff's calculation of certain logging and hauling costs that were based on records relating to payment for those services. Instead the Court determined that plaintiff's logging and hauling costs could be more accurately calculated from other evidence of record. *Precision Pine*, __Fed. Cl.__, 2007 WL 5030766 at *48. Those costs so calculated became one of the inputs to plaintiff's calculation of damages. *Id*.

discretion to reconsider interlocutory orders is, as defendant notes, subject to the principle that questions once decided ought not to be subject to continued re-argument. Judge Horn put the matter well in a case in which defendant moved for reconsideration after she had filed her opinion but before she had entered judgment. In denying the motion, Judge Horn stated: "Post-opinion motions to reconsider are not favored," and "[t]he litigation process rests on the assumption that both parties present their case once, to their best advantage." *Bishop v. United States*, 26 Cl. Ct. 281, 285-86 (1992). This case amply demonstrates the costs to the parties and to the Court of "continued re-argument" of questions once decided. Indeed, the Court believes it would be justified in denying the relief defendant seeks in part III of its motion and part II of its response on the basis of the considerations described in this paragraph alone. *See Heritage of America, LLC v. U.S.*, 77 Fed. Cl. 81, 82-83 (2007). Nevertheless, the Court has considered the arguments advanced by defendant on their merits.

### III.  Part III of Defendant's Motion

First, the Court reviewed the arguments and citations set forth in part III of defendant's motion. Those arguments relate to (1) plaintiff's obligation *vel non* to harvest roundwood and, in that regard, whether doing so would have been economically impracticable; (2) the alleged allocation of profits on the Manaco contract between the suspension and post-suspension periods; and (3) the prices plaintiff would have realized on sales of lumber products made from Douglas Fir and Engelmann Spruce. Having again considered the evidentiary record and the applicable law, the Court is unpersuaded that any revisions to its findings with respect to those issues are warranted.

#### A.  Economic Impracticability of Harvesting Roundwood

With respect to roundwood, defendant asks the Court to reconsider its finding that Precision Pine's contractual obligation to harvest roundwood was excused by "gross economic impracticability." *See Precision Pine*, __Fed. Cl.__, 2007 WL 5030766 at *40-43. Defendant argues that "[t]he Court's statement that there existed 'no market for roundwood' during the MSO [Mexican Spotted Owl] suspensions is clearly erroneous," and that "[n]either Precision Pine, nor the United States, presented any such evidence." Def.'s Mot. for Reconsideration 5. This argument is inconsistent with the argument advanced by defendant at trial and in its post-trial briefing. In its post-trial brief defendant argued that "Precision Pine had no use for the roundwood component of its multi-product sale contracts," and "Precision Pine had no outlet for roundwood during the period of the MSO suspensions." Def.'s Post-Trial Memorandum of Law at 43 (filed Sept. 2, 2005, docket entry 382). Defendant's position at trial, *i.e.*, that Precision Pine had no sales outlet for roundwood, is amply supported by the evidence and is the very position adopted by the Court that defendant now attacks. Defendant also asserts that "Precision Pine's recently-filed damages calculations show that each contract would have been profitable even if roundwood harvesting were not excused." Def.'s Mot. for Reconsideration at 7. Defendant argues that Precision Pine claims lost profits of $5.5 million, while losses attributable to roundwood would "only" have been $1.4 million, thereby "rebut[ting] the conclusion that roundwood harvesting

would constitute a gross economic impracticability." *Id*. at 8.  Defendant's contention in this regard is also in opposition to the position it urged at trial, namely, that the obligation to harvest roundwood would have rendered it uneconomical for plaintiff to have harvested the suspended contracts.  This contention was a foundation stone of defendant's overarching argument that plaintiff suffered no damages due to the suspensions.  Indeed, the Government contended that it did Precision Pine a favor by preventing it from harvesting the contracts in question during the suspension period because lumber prices were higher in the post-suspension period than in the suspension period.[5]

### B.     Allocation of Post-Suspension Manaco Profits

With respect to the Manaco contract, defendant argues that the Court should use a "pro rata" allocation of the post-suspension profits actually earned by Precision Pine.  Def's Mot. for Reconsideration at 9.  Defendant's argument, though characterized as contesting the allocation of post-suspension profits, actually takes issue with the alternative harvesting schedule as set forth by the Court in its Opinion and Order.  *See Precision Pine*, __Fed. Cl.__, 2007 WL 5030766 at *31-34 and Appx B.  The Court's starting point for determining the schedule as it relates to the Manaco contract was its determination that Precision Pine would have harvested the entire 2503 Mbf (LS)[6] available on the contract in the "but-for" world.  *Id*. at *32-34 and Appx. B.  Because the Manaco contract prohibited harvesting between July 15 and August 15 and was affected by a fire closure from May 6 to July 9, 1996, the Court estimated that Precision Pine would have harvested only 75 percent of available timber during the suspension period (1879 Mbf (LS)), and the remaining 25 percent in the post suspension period (624 Mbf (LS)).  In the real world, however, Precision Pine harvested 769 Mbf (LS) (all during the post-suspension period), 145 Mbf (LS) *more* than the 624 Mbf (LS) that the Court estimated Precision Pine would have harvested in the post-suspension period.  Therefore, to award lost profits on the entire 1879 Mbf (LS) that Precision Pine would have harvested during the suspension period, in addition to permitting Precision Pine to keep all the profits it earned on the 769 Mbf (LS) it actually harvested in the post-suspension period, would result in a windfall of the profits it earned on the additional 145 Mbf (LS), the equivalent of 19 percent of the profits Precision Pine actually earned in the post-suspension period.  To put it another way, Precision Pine reduced its damages to some extent by harvesting an additional 145 Mbf (LS) in the post-suspension period, and the Court took this into account by requiring plaintiff to make a corresponding reduction in profits that plaintiff would have earned on the Manaco

---

[5] Accepting for the sake of argument the figures set forth on page 8 of defendant's response based on the late-arriving declaration of defendant's new accounting expert (see Part IV, *infra*), the Court remains of the view that harvesting roundwood for which there was no market at a cost equal to $1.4 million or 26 percent of plaintiff's claimed lost profits would constitute "gross economic impracticability" within the meaning of contract clause BT 6.4.

[6] "Mbf" refers to "thousand board feet."  "LS" refers to "log scale," and "LT" refers to "lumber tally."  For an explanation of these terms, *see Precision Pine*, __Fed. Cl.__, 2007 WL 5030766 at *24.

contract during the suspension period. *See Precision Pine*, __Fed. Cl.__, 2007 WL 5030766 at *31.

Defendant argues that the amount of timber Precision Pine actually harvested on the Manaco contract in the real world during the post-suspension period (769 Mbf (LS)) must itself be allocated: 75 percent (578 mbf (LS)) to the suspension period and 25 percent (191 Mbf (LS)) to the post-suspension period. *See* table, Def.'s Mot. for Reconsideration at 10. The result of defendant's proposed "allocation" would be that Precision Pine would neither be compensated by recovering lost profits nor by receiving profits actually realized from 433 Mbf (LS) of the 2503 Mbf (LS) that the Court determined would be harvested on the contract.[7] Defendant's proposed "allocation," when viewed in this light, actually represents a refusal to accept the Court's underlying harvesting schedule; *i.e.*, in lieu of harvesting 2503 Mbf (LS) on the Manaco contract, Precision Pine (under defendant's approach) would be assumed to have harvested only 2070 Mbf (LS).

The Court is not persuaded that the calculation of lost profits on the Manaco contract, which was based on the harvesting schedule set forth in Appendix B to the Opinion and Order, was in any way erroneous or inappropriate, or that defendant's approach would yield a more accurate estimate. The Court therefore sees no reason to alter its analysis or its alternative harvesting schedule as set forth in the Opinion and Order. *See Precision Pine*, __Fed. Cl.__, 2007 WL 5030766 at *31-34, Appx. B.

### C.    Prices of Douglas Fir and Engelmann Spruce Products

With respect to the prices plaintiff would have realized on sales of lumber products from Douglas Fir and Engelmann Spruce, defendant argues that "[t]he Court erred in applying the Random Lengths data in this action" and "Precision Pine failed to correctly use the Random Lengths price as the basis for its lost profits claim." Def.'s Mot. for Reconsideration at 12-13. Specifically, defendant takes issue with the addition Precision Pine made to the prices listed in Random Lengths (an authoritative industry source of prices of lumber products) to take account of a freight advantage that Precision Pine would have had based on the fact that the prices listed in Random Lengths were "F.O.B. Portland, Oregon." At trial, Precision Pine argued that it could sell its Douglas Fir and Engelmann spruce products made in Arizona for an additional $50 to $60 per Mbf (LT) (the approximate cost of shipment from Oregon to Arizona). Plaintiff offered testimony

---

[7] The net effect of defendant's so-called allocation results in a schedule whereby 433 Mbf (LS) of timber is unaccounted for and uncompensated. Defendant may be arguing that the 433 Mbf (LS) (which it describes as the "uncut volume" in the post-suspension period) could be less valuable than timber that would have been cut earlier during the suspension period in the "but-for" world. *See* Def.'s Mot. for Reconsideration at 11, n.7. Defendant has failed to provide any support for such an argument, nor has it proposed any meaningful way of estimating the profits that would have been earned from harvesting those 433 Mbf (LS).

by its president explaining why such increased prices were warranted (Trial Tr. at 458-464), testimony that defendant had ample opportunity to rebut but did not. In its post-trial Opinion and Order, the Court specifically noted that "[d]efendant d[id] not address plaintiff's argument that it would have had a freight advantage on Engelmann Spruce and Douglas Fir." *Precision Pine & Timber, Inc. v. United States*, __ Fed. Cl.__, 2007 WL 5030766, at *38. Thus, the evidence of record supports the Court's findings, and defendant did not seek to contest that evidence either at trial or in post-trial briefing. Accordingly, the Court sees no reason to reconsider its findings relating to the price plaintiff would have realized on sales of lumber products made in Arizona from Engelmann Spruce and Douglas Fir.

### IV.   Parts II.A and II.B of Defendant's Response — Causation and Mitigation

The Court has also considered the arguments made by defendant in parts II.A. and B. of defendant's response. These arguments, although contained in defendant's response, are actually additional requests that the Court reconsider certain aspects of its Opinion and Order insofar as the Court made findings with respect to whether plaintiff's damages were caused by defendant's breach (II.A.) and whether plaintiff failed to mitigate its damages (II.B.). With respect to the causation issue, defendant argues that the Court should have faulted plaintiff for having failed to undertake the same level of harvesting and for having failed to realize profits of the same magnitude in the post-suspension period in the real world as the Court found plaintiff would have harvested and realized in the but-for world. Plaintiff's failure to realize such profits by harvesting more timber, defendant contends, means that plaintiff's damages were caused by its own independent business decisions in the post-suspension period, not by defendant's breach. However, this argument fails to take account of the evidence of record with respect to the debilitating effect of the suspensions on plaintiff's post-suspension performance in the real world. *See, e.g.*, Pl.'s Post-Trial Memorandum of Law, Filed Oct. 17, 2006 (docket entry 430) at 6, 10-13.

With respect to mitigation, the Court has no quarrel with defendant's recitation of the "black letter law" relating to that doctrine (except that defendant omits to state that the burden of proof to establish failure to mitigate rests on defendant). The Court does, however, reject defendant's assertion that plaintiff failed to mitigate its damages. Among other defects, that claim suffers from the same infirmity that underlies defendant's argument on causation, *i.e.*, defendant's argument fails to take account of the evidence with respect to the effect of the suspensions on plaintiff's post-suspension performance in the real world.

In addition, to the degree that defendant relies upon the declaration of a new accounting expert witness, Todd D. Menenberg of Navigant Consulting, Inc., to support its argument in part III.A. of its motion (relating to the economic impact of harvesting roundwood), and its contentions in parts II.A. and B. of its response (relating to causation and failure to mitigate), the Court notes that its Opinion and Order did not contemplate that the parties would, in their submissions relating to plaintiff's revised calculations of damages, proffer new evidence regarding issues such as whether plaintiff would have been required to harvest roundwood, causation, and failure to mitigate. *See First Federal Savings and Loan Association of Rochester v. United States*, 76 Fed.

Cl. 106, 156-57 (2007), and *First Federal Savings and Loan Association of Rochester v. United States,* 76 Fed.Cl. 765, 766-67 (2007).  Plaintiff has not done so.  To the extent that defendant seeks to do so through Mr. Menenberg's declaration, the Court fails to see any basis upon which the Court could properly consider the declaration for such purposes at this point in the litigation.  For the Court to do so would, indeed, undercut the adversarial process, and the Court rejects defendant's contention that it must reopen the record and take additional testimony.

### V.        Parts II.C and II.D of Defendant's Response — Sawmill Costs and Defendant's Affirmative Claim

Finally, the Court has considered the arguments set forth in parts II.C. and D. of defendant's response, relating to (1) the recoverability of increased sawmill costs due to the breach and (2) whether defendant is entitled to offset $19,313.42 in alleged payments by defendant to plaintiff against $14,950.94 in damages that defendant does not dispute, with the result that "Precision Pine owes the Forest Service $4,362.48."  Def.'s Mot. for Reconsideration at 21-22.

Defendant's argument relating to increased sawmill costs has been made and rejected before.  *See* Def.'s Post-Trial Memorandum of Law, filed Sept. 2, 2005 (docket entry 382), at 48-56; *Precision Pine & Timber, Inc. v. United States*, __ Fed. Cl.__, 2007 WL 5030766, at *55-56.  The Court sees no reason to reach a different result based on defendant's April 18, 2008 submission.

Defendant has not previously argued that plaintiff owes the Government $4,362.48, and that claim does not appear to the Court to be supported by the trial exhibit relied upon by defendant.  *See* PX 131, Exhibit 2.  In addition, defendant's claim to recover $19,313.42 for amounts allegedly paid to plaintiff pursuant to contract clause CT 6.01 was never asserted by defendant in a counter-claim, by way of a claimed setoff defense, or in any other pre-trial filing.  Defendant introduced no evidence in support of this claim at trial and never mentioned it in any post-trial filing.  The Court therefore has no basis for evaluating the claim, which simply comes too late.[8]  *See Principal Life Insurance Company v. United States*, 76 Fed. Cl. 326, 328 (2007).

In light of the foregoing, the Court **DENIES** the relief sought in part III of defendant's motion for reconsideration and in part II of defendant's response.

---

[8] The Court would also be justified in rejecting defendant's claim at this stage by reference to the maxim *de minimis non curat lex*.  *See, e.g.*, *Christensen Mach. Co. v. United States*, 50 F.2d 282, 287 (Ct. Cl. 1931) (court relied on maxim *de minimis non curat lex* in rejecting defendant's argument that finding of Board of Tax Appeals should be reduced by the value of certain agreements because the evidence showed that the value of the agreements, although indeterminate, was not large enough to make a substantial difference in the amount due).  Here, the amount sought by defendant amounts to approximately one tenth of one percent of plaintiff's damages.

VI.    **Part I of Defendant's Response — Plaintiff's Discounting of Profits Earned in Post-Suspension Period**

As indicated earlier, the Court has concluded that there is one respect in which plaintiff failed to utilize the same damages model that it used at trial in making its further revised calculation of damages. That aspect is described in part I of defendant's response and relates to plaintiff's use of a discounted cash flow methodology to reduce offsetting post-suspension profits. In its Opinion and Order the Court ruled that Precision Pine "must reduce the profits it would have earned on the suspended contracts [during the suspension period] by the profits it actually earned on such contracts in the post-suspension period." *Precision Pine & Timber, Inc. v. United States*, __ Fed. Cl.__, 2007 WL 5030766, at *12 (rejecting Precision Pine's "modified lost volume seller theory"). Precision Pine realized profits in the amount of $2,232,276 from harvesting the suspended contracts in the post-suspension period. *See* Plaintiff's Further Revised Damages Calculations at Ex. 8. Deducting this amount from plaintiff's lost profits during the suspension period ($5,561,037) leaves net lost profits damages in the amount of $3,328,761. *Id*. However, in its computation of damages, Precision Pine discounted the profits it realized on the suspended contracts in the post-suspension period back to present value as of April 15, 1996. *Id*. The effect of that discounting is to reduce Precision Pine's post-suspension profits -- and thereby increase its damages -- by $166,209. *Id*.

The problem with plaintiff's use of discounting is that plaintiff produced no evidence at trial demonstrating such discounting was appropriate, nor did it produce any evidence as to how such discounting should be performed or establishing an appropriate discount rate. Because discounting was not the subject of proof at trial, defendant had no opportunity to challenge the propriety of plaintiff's use of discounting or its methodology. Accordingly, in computing plaintiff's damages the Court has eliminated the effect of discounting, with the result that plaintiff's recalculated damages, $3,509,921, are reduced by $166,209 to $3,343,712. *See id*. at 2 and Ex. 8; *see also First Federal Savings and Loan Association of Rochester v. United States,* 76 Fed.Cl. at 766 (court disregarded declaration of plaintiff's expert witness submitted after trial to support recovery of an item of damages not the subject of proof at trial).

VII.   **Conclusion**

For the reasons stated herein, in the Court's Opinion and Order, in the Court's subsequent orders, and in plaintiff's further revised calculation of damages, and having considered the defendant's April 18, 2008 response to plaintiff's revised calculation, the Court determines that plaintiff is entitled to recover of defendant damages in the amount of $3,343,712. The Court therefore directs the Clerk to **ENTER JUDGMENT** in favor of plaintiff and against defendant in that amount.

 **IT IS SO ORDERED.**

                                                s/ George W. Miller
                                               GEORGE W. MILLER
                                               Judge